**FILE COPY**

ANDREW M. CALAMARI (AC-4864)
ASSOCIATE REGIONAL DIRECTOR
Alexander M. Vasilescu (AV-2575)
Steven G. Rawlings (SR-0623)
Danielle Sallah (DS-8686)
Philip Moustakis (PM-1748)
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
3 World Financial Center
New York, NY 10281
(212) 336-1100



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

SECURITIES AND EXCHANGE COMMISSION　　　　　:

　　　　　　　　Plaintiff,　　　　　　　　　　　　　　　　:

　　　　　- against -　　　　　　　　　　　　　　　　　　:　　　　08 Civ. 07104 (DC)

　　　　　　　　　　　　　　　　　　　　　　　　　　　　:

STEVEN BYERS, JOSEPH　　　　　　　　　　　　　　:
SHERESHEVSKY, WEXTRUST CAPITAL, LLC,　　　:
WEXTRUST EQUITY PARTNERS, LLC,　　　　　　　:
WEXTRUST DEVELOPMENT GROUP, LLC,　　　　　:
WEXTRUST SECURITIES, LLC, and　　　　　　　　:
AXELA HOSPITALITY, LLC,　　　　　　　　　　　　:

　　　　　　　　　　　　　　　　　　　　　　　　　　　　:

　　　　　　　　Defendants, and　　　　　　　　　　　　:

　　　　　　　　　　　　　　　　　　　　　　　　　　　　:

ELKA SHERESHEVSKY,　　　　　　　　　　　　　　　:

　　　　　　　　　　　　　　　　　　　　　　　　　　　　:

　　　　　　　　Relief Defendant.　　　　　　　　　　　:

-------------------------------------------------------------------x

## FIRST AMENDED COMPLAINT

　　　　Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against

defendants Joseph Shereshevsky ("Shereshevsky"), Steven Byers ("Byers"), Wextrust Capital,

LLC ("Wextrust"), Wextrust Equity Partners, LLC ("WEP"), WexTrust Development Group,

LLC ("WDG"), Axela Hospitality LLC ("Axela") and Wextrust Securities, LLC ("Wextrust

Securities") (collectively "the Defendants"), and relief defendant, Elka Shereshevsky ("E.

Shereshevsky" or "Relief Defendant") alleges:

## SUMMARY

1.      The Commission brings this emergency action to halt ongoing fraudulent

offerings of securities by a convicted felon, Defendant Shereshevsky, and his partner Defendant

Byers (collectively, the "Individual Defendants"). The Individual Defendants, acting through

Wextrust and its affiliated entities, Defendants Wextrust Securities, WEP, WDG and Axela

(collectively, the "Wextrust Entities or Wextrust Entity Defendants"), have raised at least $255

million from at least 1,196 investors throughout the United States and abroad.

2.      Altogether the Defendants have conducted at least 60 private placement offerings

and created approximately 150 entities in the form of limited liability companies or similar

vehicles to act as issuers or facilitators of the offerings (collectively the "LLC Entities"). The

vast majority of these offerings occurred between 2005 and 2008. However, at least four

offerings occurred as early as 2002. Through these private placement offerings, the Defendants

have sold securities to investors in the form of investment contracts, notes or other evidence of

indebtedness.

3.      Defendants have been fraudulently raising money in the various offerings, each of

which purportedly is for a particular investment, without disclosing that funds raised were

actually being used to pay prior investors in unrelated offerings and to make unauthorized

payments to fund the operations of the Wextrust Entities, which were operating at a deficit. An

internal Wextrust combined "balance sheet" shows that as of December 31, 2007, Wextrust

Entities "borrowed" at least $74 million from the LLC Entities and also "lent" at least $54

million to various LLC Entities. The Defendants are raising money and commingling funds in

contravention of specific representations in private placement memoranda that investor funds will be used for specific investments in real estate or other assets identified in offering memoranda.

4. For example, the Defendants falsely represented to investors that more than $9 million raised in a 2005 offering would be used to purchase seven specifically identified real estate properties that were leased by federal government agencies, such as the General Services Administration (the "GSA offering"). In fact, the Defendants never purchased the seven properties identified in the GSA offering documents. Moreover, at the time the offering occurred, Defendants knew or were reckless in not knowing that the seven properties would not be acquired. Significantly, while the offering was ongoing, the Wextrust Entities "borrowed" more than $6 million from the funds raised in the GSA offering and used these funds for purposes unrelated to the GSA offering.

5. In the private placement memoranda distributed to investors, and Wextrust's website, the Defendants have also failed to disclose to investors that Defendant Shereshevsky is a convicted felon who pleaded guilty to bank fraud. Defendants Wextrust Securities, Byers and Shereshevsky are also violating the Commission's broker-dealer registration requirements because the Form BD filings fail to identify Defendant Shereshevsky as a controlling person of Wextrust Securities, and fail to disclose Shereshevsky's felony conviction. Also, Defendant Shereshevsky, while acting as a broker, has failed to register with the Commission or be properly licensed as associated with Wextrust Securities. In addition, while Defendants Byers and Shereshevsky are openly managing Wextrust Securities and soliciting investors for the securities offerings, they have failed to pass proper licensing examinations, such as the Series 7 and 24.

6.    Expedited relief is needed because the Defendants are in the midst of raising funds from new private placement offerings and plan to divert funds raised from new investors to repay moneys owed to investors in prior offerings and to meet other expenses of the Wextrust Entities.  Expedited relief is also needed because Defendant Shereshevsky has hid and is attempting to hide assets of his frauds in the Relief Defendant Elka Shereshevsky's name by placing his assets – including residential real estate, bank accounts, and a share in the ownership of Wextrust – in his wife's name as well as diverting Wextrust funds to accounts held in Relief Defendant Elka Shereshevsky's name.

7.    To halt the ongoing fraud, maintain the status quo and preserve any assets for injured investors, the Commission seeks emergency relief, including temporary restraining orders and preliminary injunctions, and an order: (i) imposing asset freezes against the Defendants and Relief Defendant; (ii) appointing a receiver over the Wextrust Entity Defendants; (iii) allowing expedited discovery and preventing the destruction of documents; and (iv) requiring the Defendants and Relief Defendant to provide verified accountings.  The Commission also seeks permanent injunctions, disgorgement of ill-gotten gains, plus prejudgment interest and civil monetary penalties against all of the Defendants.

## **VIOLATIONS**

8.    By virtue of the conduct alleged herein:

a.    All Defendants directly or indirectly, singly or in concert, have engaged, and are engaging, in acts, practices, schemes and courses of business that constitute violations of Section 17(a) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77q(a) and Section 10(b) of the Securities

4

Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule

10b-5 thereunder, 17 C.F.R. § 240.10b-5;

b.    Wextrust Securities violated, and is continuing to violate, Sections

15(b)(1), 15(b)(7) and 15(c)(1) of the Exchange Act, 15 U.S.C. §§

78o(b)(1)&(7) and 78o(c)(1), and Rules 10b-3, 15b1-1, 15b3-1 and 15b7-1

promulgated thereunder, 17 C.F.R.§§ 240.10b-3, 240.15b1-1, 240.15b3-1

and 240.15b7-1;

c.    Shereshevsky and Byers violated, and are continuing to violate, Section

15(a) or alternatively, aided and abetted, and is continuing to aid and abet,

Wextrust Securities' violations of Sections 15(b)(1), 15(b)(7) and 15(c)(1)

of the Exchange Act, 15 U.S.C. §§78o(b)(1)&(7) and 78o(c)(1), and Rules

10b-3, 15b1-1, 15b3-1 and 15b7-1 promulgated thereunder, 17 C.F.R.§§

240.10b-3, 240.15b1-1, 240.15b3-1 and 240.15b7-1; and

d.    Relief defendant Elka Shereshevsky received unjust enrichment and ill-

gotten gains from the fraudulent sales of securities described herein.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

9.    The Commission brings this action pursuant to the authority conferred upon it by

Section 20(b) of the Securities Act, 15 U.S.C. § 77t(b), and Section 21(d)(1) of the Exchange

Act, 15 U.S.C. § 78u(d)(1), seeking to restrain and enjoin permanently the Defendants from

engaging in the acts, practices and courses of business alleged herein.

10.    In addition to the injunctive and emergency relief recited above, the Commission

seeks: (i) final judgments ordering Defendants and Relief Defendant to disgorge their ill-gotten gains with prejudgment interest thereon; and (ii) final judgments ordering the Defendants to pay civil penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3).

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Sections 21(e) and 27 of the Exchange Act, 15 U.S.C. §§ 78u(e) and 78aa.

12.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391. The Defendants, directly and indirectly, have made use of the means and instrumentalities of interstate commerce, or of the mails, in connection with the transactions, acts, practices and courses of business alleged herein. A substantial part of the events comprising Defendants' fraudulent scheme that gives rise to the Commission's claims occurred in the Southern District of New York, including that Wextrust and Wextrust Securities maintain offices in this District and certain of the Defendants misappropriated investor funds for personal use from bank accounts serviced by banks in this district. Upon information and belief, the Defendants have solicited approximately $17.8 million from 90 investors who either reside in the Southern District of New York or who have chosen to have their distribution checks mailed to an address within this district.

## THE DEFENDANTS AND RELIEF DEFENDANT

13.     **Steven Byers**, age 46, is a resident of Oakbrook, Illinois and owns sixty percent of Wextrust. He is the Chairman of Wextrust and President and Chief Operating Officer of

WEP, the arm of Wextrust focusing on income-producing properties, and is also an owner or controlling person of Wextrust Securities. Offering materials explain that in 1994 Byers founded ASG Financial Services, Wextrust's predecessor, which underwrote debt and equity investments. In 1996, Wexford Bancgroup was formed to focus on the commercial mortgage-backed securities and specialty finance businesses. In 2003, Byers formed the current Wextrust. Offering materials state that Byers has twenty years experience in the finance-related lending and investment business and was a former bank examiner and valuation specialist with a supervisory entity. Byers' sixty percent ownership of Wextrust is comprised of twenty percent outright ownership and forty percent owned through interests in the Brandon Family Limited Partnership and Lindsay Investment Limited Partnership. Together with Defendant Shereshevsky and Partner A, Byers controls the Wextrust Entities. Although records from the broker-dealer, Wextrust Securities, evidence that Byers is managing the broker-dealer and has solicited investors in different offerings and effected securities transactions while associated with that broker-dealer, records from the Financial Industry Regulatory Authority ("FINRA") show that Byers has not passed any licensing exams. Byers was not registered as a broker or dealer, nor was his association with Wextrust Securities disclosed.

14.    **Joseph Shereshevsky**, a/k/a Joseph Heller or "Yossi", age 52, is a resident of Norfolk, Virginia and owns twenty percent of Wextrust through a partnership interest held in the name of his wife. Shereshevsky was, until recently, Wextrust's Chief Operating Officer, and, according to offering materials, has been a key person in building Wextrust's private equity group, has greatly increased Wextrust's access to capital, was instrumental in founding Wextrust Securities, and was responsible for Wextrust's expansion into diamond mining investments in

7

Africa. He has a background in the diamond commodity business and is well known in the

Orthodox Jewish community. In March 1993, Shereshevsky was arrested for bank fraud, among

other things. In June 2003, Shereshevsky pleaded guilty in the Southern District of New York to

one felony count of bank fraud. He was sentenced to time served, 24 months supervised release

and ordered to pay restitution in the amount of $38,797.90, which judgment was satisfied on

February 15, 2005. Although records from the broker-dealer, Wextrust Securities, evidence that

Shereshevsky is managing the broker-dealer and has solicited investors in different offerings and

effected securities transactions while associated with that broker-dealer, there are no records

from FINRA showing that Shereshevsky has passed any licensing exams. Shereshevsky was not

registered as a broker or dealer, nor was his association with Wextrust Securities disclosed.

15.    **WexTrust**, an Illinois limited liability company, was formed by Byers in 2003.

According to the company's website, Wextrust is a globally diversified private equity and

specialty finance company, specializing in investment opportunities ranging from real estate to

specialty finance and investment banking. Wextrust is headquartered in Chicago, Illinois and

maintains offices in New York, New York, Norfolk, Virginia, Atlanta, Georgia, Boca Raton,

Florida, Nashville, Tennessee, Tel Aviv, Israel and Johannesburg, South Africa. Wextrust

purports to have five main areas of business: (1) Wextrust Securities, a registered broker dealer

that acts as selling agent for Wextrust's offerings of units in various limited liability companies;

(2) WEP, which purportedly manages $500 million of real estate owned by various limited

liability companies whose units were sold to investors in offering; (3) Wextrust Commodities

Managers, LLC, which manages various managed futures funds with assets of approximately

$15 million; (4) certain high yield debt funds, which manage assets of approximately $35

8

million; and (5) certain interests in diamond mines and operations in Africa held through Pure

Africa Mining Ltd. and other affiliates, in which Wextrust has a substantial interest.

16.    **WEP** is an Illinois limited liability company headquartered in Chicago, Illinois,

engaged in the business of buying real estate assets, generally though its partially-owned

subsidiaries. According to WEP documents, WEP is the beneficial owner of approximately 120

entities formed for the purpose of owning equity interests in commercial and multi-family real

estate assets. Wextrust owns at least 80% of WEP and is its manager and majority member.

Between September 2006 and December 2007, WEP sold to investors approximately $8.6

million in promissory notes in WEP with varying maturities and terms, of which approximately

$6.2 million in principal remain outstanding. In December 2007, WEP commenced a new

offering of securities in the form of Guaranteed Subordinated Promissory Notes ("GSPNs") in

five varying maturities and terms with corresponding interest rates, each guaranteed by Wextrust.

To date, WEP has raised approximately $4.6 million from investors purchasing GSPNs.

17.    **WDG** is an Illinois limited liability company headquartered in Chicago, Illinois,

in the business of developing real estate assets. Wextrust owns 80% of WDG.

18.    **Wextrust Securities** is a broker-dealer registered with the Commission and a

Virginia limited liability company headquartered in Norfolk, Virginia. It employs thirty-six

registered representatives and maintains branch offices in New York, New York, Norfolk,

Virginia, Chicago, Illinois, Southfield, Michigan, and Ramat Gan, Israel. It was formed in

March 2005, registered with the Commission in March 2006, and has been a licensed broker

dealer since that time. Defendant Wextrust owns 21% of Wextrust Securities. Byers, through

the Byers Family Partnership, owns another 5% of Wextrust Securities. Shereshevsky, though
the Shereshevsky Family Partnership, owns another 7% of Wextrust Securities.

19. **Axela** is an affiliate of WexTrust Capital. Axela, through its LLC subsidiaries,
owns and operates Wextrust's hotel properties, including the Axela Baltimore Hotel and the Park
View Hotel in Chicago, Illinois, and provides asset management services to other Wextrust
affiliated LLCs, such as Crowne-Phoenix Investors LLC.

20. **Elka Shereshevsky**, age 37, is married to Defendant J. Shereshevsky, is a
resident of Norfolk, Virginia and putatively owns twenty percent of Wextrust through
Shereshevsky Family Partnership, of which she is the General Partner. E. Shereshevsky is
employed by Wextrust Securities. She, along with her husband, Defendant Shereshevsky, has
received transaction based compensation for the sales of private placements through Wextrust
Securities.

## FACTS

### A.      The Securities Offerings

21.   The Individual Defendants, Byers and Shereshevsky, formed Wextrust in 2003
with Partner A with the business purpose to find investment opportunities, mainly in undervalued
real estate assets, and fund the acquisition of the assets through loans and the offering of private
placement securities. Wextrust Securities was created in 2005 to act as the selling agent for the
private placement offerings. Byers was Chairman of Wextrust and involved with real estate
investments. Shereshevsky's role was to take the lead in soliciting investors through his wide-
contacts in the Orthodox Jewish community and to manage the offerings and investments

relating to the purchase of real estate and specific assets, including diamond mining interests in Africa.

22.     The Individual Defendants and Defendant Wextrust Entities have conducted at least 60 securities offerings and raised at least $255 million from at least 1,196 investors. Most of these offerings occurred between 2005 and 2008, although at least four offerings occurred as early as 2002. Many of the securities offerings involved the sale of "preferred membership interests" in the LLC Entities, which were limited liability corporations created by Wextrust as the investment vehicle for the specific offering. These investments are securities in the form of investment contracts, notes or other evidence of indebtedness.

23.     Upon information and belief, Wextrust, directly, or through WEP, WDG and Axela, exercises sole ownership or control over the LLC Entities. Wextrust Securities, the registered broker-dealer, acts as a placement agent for most of the private placements. In many of the securities offerings, the private placement memorandum represents that the proceeds raised from the investors, together with a mortgage loan, will be used to purchase and operate a specific commercial real estate property. The offering materials also generally represent that investors will receive a fixed rate of return per annum, together with profits obtained from any sale or operation of the property. In each offering, a Wextrust Entity, managed by Byers, Shereshevsky and others, manages the limited liability investment. In many instances, the offering documents provide that profits from the investments will be shared 30% by the Defendants and 70% by the investors. In many instances, the offering documents promised investors fixed interest payments, such as 8.5% percent over the course of the investment.

11

24.     In addition to conducting securities offerings of preferred interests in LLC

Entities that purchase real estate in the United States, the Defendants have conducted securities

offerings for entities that are investing in real estate abroad. Records obtained from Wextrust

Securities indicate that the Defendants have raised at least $47 million in at least six private

placements, which, according to the private placement memoranda, was to be used to purchase

directly or indirectly interests in certain diamond mines in South Africa and Namibia. The

Defendants have also conducted offerings on behalf of limited liability companies or other

entities that invest in non-real estate assets.

**B.**     **Fraudulent Misrepresentations In the Various Securities Offerings**

25.     The Defendants have knowingly or recklessly made false and material

misrepresentations to investors about the offerings and specifically about the uses for investor

money raised in the offerings. The Defendants have not disclosed that funds raised, purportedly

for specific investments, are actually being diverted to pay investors in prior offerings and to pay

the operating expenses of the various Wextrust Entities. During the past year the inter-fund

transfers have greatly escalated and the Wextrust Entities are running a substantial deficit on

funds owed to various investors.

26.     Records from Defendant Wextrust Securities reveal that the Defendants have

transferred more than $100 million between entities. A combined balance sheet circulated by

email on May 3, 2008, from Wextrust's comptroller to Byers, shows "liabilities" of Wextrust as

of year end 2007. The balance sheet lists 45 "loans", totaling more than $74 million that were

made by LLC entities that had recently raised money in private placements to other LLC entities

that were in need of cash. The same balance sheet includes "negative" liabilities that, on

12

information and belief, reflect "receivables" owed to Wextrust Entities from various LLC

Entities: i.e., loans that the Wextrust Entities made to those investment entities. These transfers

of funds between the bank accounts of the various LLC Entities (which raised funds from

investors) and the bank accounts of the Wextrust Entities are in violation of the offering

documents provided to investors by the Defendants and contrary to representations in the

offering memoranda that proceeds will be used only for specific purposes.

### 1.    The GSA Offering Fraud

27.    In 2005, the Defendants created GSA Investors, LLC to act as the issuer for a $9

million private placement. According to the offering memorandum, the proceeds raised were to

be used to purchase and operate seven commercial properties leased to the U.S. General Services

Administration.

28.    At the time the Defendants were soliciting investors for this private placement,

they knew, or were reckless in not knowing, that the proceeds raised would not be used to

acquire the properties. Instead, the Defendants knew or recklessly disregarded that the proceeds

raised would be diverted to other purposes. In fact, GSA Investors LLC did not acquire any real

property.

29.    GSA Managers, LLC is the manager of GSA Investors, LLC. The GSA private

placement memorandum dated November 22, 2005 ("GSA PPM") represents that Defendant

Byers is the president and Defendant Shereshevsky is an executive officer of GSA Managers.

Defendants Byers and Shereshevsky, together with Wextrust, controlled the issuer, GSA

Investors LLC.

13

30.     GSA Investors, LLC issued the GSA PPM seeking to raise $9 million from investors. According to the GSA PPM, the purpose of the offering was to raise funds that, together with a bank loan, would be used to "acquire, operate, sell, refinance, mortgage and otherwise use and own for profit an undivided indirect interest in the Properties, consisting of seven buildings all leased to the United States of America General Services Administration located in Wisconsin, Illinois, Indiana and Florida."

31.     The GSA PPM represented that the purchase price for the seven properties will be approximately $28.3 million, that GSA Investors, LLC intends to raise $9.2 million by selling interests to "Preferred Members" and intends to assume a mortgage covering the properties in the amount of approximately $21.6 million. The GSA PPM also represented, in the "Use of Proceeds" section, that the $9.2 million raised from investors will be used to pay a portion of the purchase price of the properties, closing costs, commissions and other expenses associated with acquiring the properties and to establish a working capital reserve.

32.     The GSA PPM specifically identifies the mortgages that will be assumed in connection with the purchase, and further represents that "the Company is acquiring the Properties, in the Manager's view, at below replacement cost, thereby creating an immediate margin of safety for its investors."

33.     The GSA PPM also represents that the Manager (GSA Managers, LLC, which is managed by defendant WEP) "believes that the Properties, a government-tenant portfolio with seven office buildings in prime locations: (i) present a superior investment opportunity in terms of offering a stable, government backed return which limits investors' downside; (ii) are located

14

in markets which present sound demand characteristics and property appreciation possibility; and (iii) will be efficiently managed."

34.    All of these representations were false. Moreover, the Defendants knew or were reckless in not knowing they were false. These misrepresentations were also material to investors. In fact, the Defendants acquired no real property with the proceeds of the GSA offering.

35.    Based on these material misrepresentations and omissions and others, in 2005 and 2006, GSA Investors, LLC raised approximately $9 million from 103 investors. In 2007, GSA raised an additional $457,000 through Wextrust Securities. At the time the GSA PPM was used to solicit these investments, the Defendants knew that they had not purchased, and would not be purchasing, any property with the funds raised by GSA Investors, LLC.

36.    The Wextrust combined balance sheet shows that the Defendants diverted to the Wextrust Entity Defendants $6,554,400 from GSA Investors, LLC as of December 31, 2007.

37.    The GSA PPM touts Shereshevsky as "an executive officer of the Manager and is the Director of Operational Services of WexTrust Asset Management. Mr. Shereshevsky has been involved in real estate and multi-family management for the past 15 years and is a Principal of WexTrust Capital." The GSA PPM fails to disclose Shereshevsky's prior felony conviction. Defendants Byers and Shereshevsky knew or were reckless in not knowing of Shereshevsky's conviction.

38.    Wextrust Securities acted as the placement agent in the sale of GSA LLC securities and several registered representatives at Wextrust Securities received commissions in connection with those sales. Shereshevsky and his wife, Relief Defendant E. Shereshevsky,

unlawfully received transaction based compensation in 2007 of approximately $9,890, which is approximately 2.2 percent of the $457,000 raised by Wextrust Securities for GSA.

39.     In a November 16, 2007 email from Partner A to Shereshevsky, Partner A acknowledged that the GSA offering, and other offerings by the Defendants, were frauds stating "You raised $9,000,000 from investors for GSA i.e. properties that never existed phony PPMs, etc. . . . Guys from enron got 20 years for doing that . . . You co-mingled (sic) funds over 100 times. Wiring high yield (another offering) funds for payroll, Africa, etc. is a crime."

### 2.     The Crowne-Phoenix Offering Fraud

40.     Crowne-Phoenix Investors LLC ("CP Investors") is a real estate LLC that the Defendants formed to acquire a "membership interest" in Crowne-Phoenix Holdings LLC ("CP Holdings"). According to the Crowne-Phoenix Investors private placement memorandum dated August 8, 2007 ("Crowne-Phoenix PPM"), CP Holdings was formed to acquire a Crowne Plaza branded hotel in Phoenix, Arizona.

41.     Crowne-Phoenix Managers, LLC is the manager of CP Investors. The Crowne-Phoenix PPM represents that Defendant Byers is the President of Crowne-Phoenix Managers. Defendant WEP is the manager of Crowne-Phoenix Managers and Axela is the common member in Crowne-Phoenix Investors. Axela is also the property manager for the hotel.

42.     Defendants Byers and Shereshevsky, together with Defendants Wextrust and WEP, controlled the issuer, CP Investors.

43.     The Crowne-Phoenix PPM represented that the issuer was seeking to raise $9.3 million to be used to pay part of the purchase of a hotel in Phoenix, Arizona, improvements of

16

the hotel property, acquisition and closing fees, interest reserve and equity costs. Specifically, the Crowne-Phoenix PPM represented that the $9.3 million raised from investors, together with the assumption of a primary mortgage of approximately $21 million, would be used to pay the $24 million purchase price for the hotel, as well as to fund $3.6 million in required property improvements, acquisition costs, fees and the creation of an equity reserve. Moreover, the Crowne-Phoenix LLC agreement, which was annexed to the PPM, specifically forbids any commingling of the funds raised in that offering.

44.    The Defendants knew, or were reckless in not knowing, that the representations in the Crowne-Phoenix PPM were false.

45.    Wextrust email reveal that the Defendants made improper transfers of funds almost immediately after the August 2007 offering had commenced: In an October 9, 2007 email, Shereshevsky instructed various Wextrust employees that all funds for the Crowne-Phoenix offering be deposited directly into Wextrust's house account at Wachovia bank in Virginia. As recorded in a November 20, 2007 email from Wextrust's accounting department, (1) in October and November 2007, Crowne-Phoenix "loaned" Wextrust $650,000 to fund payroll needs; (2) in October and November 2007, Crowne-Phoenix "loaned" Wextrust approximately $1 million "to fund partial distribution check funding;" and (3) in October 2007, Crowne-Phoenix "loaned" Wextrust $600,000 to fund or loan moneys to two other private placement entities, Guaranteed Depository Receipt Fund ("GDR") and Pure Africa Minerals LLC ("PAM").

46.    In early 2008, the Defendants used money from other offerings to pay back the Crowne-Phoenix bank account for all the outward transfers. In an email dated February 25,

17

2008, Byers told Shereshevsky that some of the money raised for a new offering, West 82nd

Street LLC, was used to repay some of the deficit owed to CP Investors:

> We will be closing on W. 82nd [another LLC] very soon.  We can use the
> money but obviously we used $1.1 million for the Gold Coast [another LLC]
> and *another $1.6 million for Crowne for which we raised but never paid back.*

47.    The private placement memoranda for the West 82nd Street offering did not

disclose to investors that some of the money raised would be paid to other Wextrust affiliates.

48.    The Crowne-Phoenix PPM describes Defendant Shereshevsky as a "principal and

integral part of Wextrust," and states that Shereshevsky was "instrumental in the founding of

Wextrust Securities." The Crowne-Phoenix PPM fails to disclose Shereshevsky's prior felony

conviction. Defendants Byers and Shereshevsky knew, or were reckless in not knowing, of

Shereshevsky's conviction.

49.    Defendant Wextrust Securities acted as placement agent for the Crowne-Phoenix

offering. Defendant Shereshevsky and his wife, Relief Defendant E. Shereshevsky, received

$130,953, or approximately one percent of the funds raised by Wextrust Securities in connection

with the Crowne-Phoenix offering.

### 3.    The Block III Offering Fraud

50.    Block III Mines & Minerals, LLC ("Block III") is a Virginia limited liability

company organized to make a loan to and acquire an interest in a Namibian company, Deva

Investments (Pty), Ltd., which owns the exploration and mining rights in a group of diamond

mines in Namibia known as Block III.

51.    Block III Managers, LLC, a Virginia limited liability company, is the manager of Block III. Block III Managers is wholly-owned by Brandon Investments, LLC. The Block III PPM represents that Defendants Byers and Shereshevsky are the co-managers of Brandon Investments, and that Brandon Investments is a wholly-owned subsidiary of Wextrust.

52.    Defendants Byers and Shereshevsky, together with Defendant Wextrust and Brandon Investments, controlled the issuer, Block III.

53.    Block III issued a private placement memorandum dated March 22, 2007 (the "Block III PPM") seeking to raise $11 million from investors. The Block III PPM represents that the proceeds of the offering will be used as follows:  (a) $4.5 million would be used for new equipment and operating capital, (b) $1.5 million would be used to fund a reserve for a purchase option on two other mines, (c) $1.75 million would fund an operating reserve, $300,000 would pay legal and operating expenses, and (d) approximately $2.95 million would be paid in fees to Wextrust and Wextrust Securities.  Moreover, the operating agreement attached to the Block III PPM specifically limited the use of funds to expenses related to Block III.

54.    These representations were false.  Moreover, the Defendants knew, or were reckless in not knowing, the representations were false.  Almost immediately after the money was raised, Defendants diverted the proceeds to unauthorized uses.

55.    The Wextrust balance sheet shows that $3,990,910 of proceeds raised by Block III Mines & Minerals LLC was diverted to Wextrust Entities.

56.    Defendant Wextrust Securities acted as a placement agent in the Block III offering.

57.    The Block III PPM describes Shereshevsky as a "principal and integral part of

19

Wextrust," and states that Shereshevsky was "instrumental in the founding of Wextrust

Securities." The Block III PPM fails to disclose Shereshevsky's prior felony conviction.

Defendants Byers and Shereshevsky knew, or were reckless in not knowing, of Shereshevsky's

conviction.

58.    Defendant Shereshevsky and his wife, Relief Defendant E. Shereshevsky,

received transaction based compensation of $249,577, or approximately two percent of the funds

raised by Wextrust Securities, in connection with the Block III offering. The Shereshevskys also

received $750,000 in bonuses in connection with the Block III offering.

### 4.    The Peoria Offering Fraud

59.    Peoria Office Investors LLC is a real estate limited liability company formed by

the Defendants to own the sole membership interest in Peoria Office Holdings, LLC ("PO

Holdings"). PO Holdings was formed to acquire and operate an office building in Peoria,

Illinois. Peoria Office Investors issued a PPM dated November 9, 2007 (the "Peoria Office

PPM"), seeking to raise $4.7 million from 47 investors.

60.    The manager of Peoria Office Investors is Peoria Office Managers, LLC.

Defendant Byers is the President of Peoria Office Managers. WEP is the manager of Peoria

Office Managers.

61.    Defendants Byers and Shereshevsky, together with Wextrust and WEP, controlled

the issuer, Peoria Office Investors.

62.    The Peoria Office PPM represented to investors that the $4.7 million in proceeds

expected to be raised, together with a mortgage of approximately $11 million, would be used to

pay the $14.75 million purchase price, and the remaining money would pay closing costs, legal

fees, acquisition fees and equity costs. Moreover, the Peoria Office LLC agreement, which was annexed to the PPM, specifically forbids any commingling of the funds raised in that offering.

63.     These representations were false. Moreover, Defendants knew, or were reckless in not knowing, that the representations were false.

64.     At the time the Peoria Investors PPM was issued, the Individual Defendants and Wextrust knew, or were reckless in not knowing, that proceeds raised would be diverted to other Wextrust Entities and for the Individual Defendants' own use. In November 2007, Shereshevsky and Partner A, in an email that was copied to Byers, openly discussed that the Wextrust entities were operating at a loss of $1 million per month and that the diversion of funds would be necessary to pay payroll and other expenses of the various Wextrust Entities.

65.     The Wextrust balance sheet indicates that, as of December 31, 2007, Wextrust had "borrowed" approximately $1,048,863.90 from the Peoria Office Investors LLC offering proceeds.

66.     Defendant Wextrust Securities was the placement agent for the Peoria Office offering.

67.     The Peoria Office Investors PPM describes Shereshevsky as a "principal and integral part of Wextrust," and states that Shereshevsky was "instrumental in the founding of Wextrust Securities." The Peoria Office Investors PPM fails to disclose Shereshevsky's prior felony conviction. Defendants Byers and Shereshevsky knew, or were reckless in not knowing, of Shereshevsky's conviction.

21

68.    In 2007, Defendant Shereshevsky and his wife, Relief Defendant E. Shereshevsky, received $59,462, or approximately two percent of the funds raised by Wextrust Securities, in connection with the Peoria Office Investors offering.

### 5.    Additional Fraudulent Offerings

69.    Other emails among the Individual Defendants retrieved from Defendant Wextrust Securities show that numerous other offerings conducted by the Defendants are also fraudulent. Several emails reveal that during the past year the Individual Defendants have discussed the ever increasing deficit in funds owed to investors and the need to raise additional funds to pay prior investors. The Individual Defendants have staked their ability to extricate themselves from these frauds on the success of their diamond mining investments in Africa.

70.    For example, through an email dated November 15, 2007, Partner A confronted Shereshevsky about wiring $225,000 from the Crowne-Phoenix account to an account for Wextrust affiliates in South Africa, specifically, Pure Africa Minerals (Pty) Ltd., a South African company formed to own mines in South Africa and Namibia. Partner A's concern was that money was needed to pay down a loan from Broadway Bank in connection with the Crowne-Phoenix investment for which Partner A and Byers had signed a personal guarantee. Shereshevsky's response reveals the widespread and deliberate commingling, the inability of the company to make payroll without loans, and that African investments was the "only hope" for getting the Individual Defendants out of the "mess" they're in. Shereshevsky responded, in part, to Partner A (emphasis added):

> U have no idea what u r talking about. *Wextrust borrowed about a month ago 750,000 from Skelton coast* [in Africa]. *Now we needed it so we took back 250,000. we* [sic] *are still owed 450,000 and I will continue to take it out until*

22

*it is paid.*

Partner A forwarded this email to Byers, stating (emphasis added):

> *Why are we paying money to Africa before pay back Broadway Bank.* This is crazy.
> We both signed a personal guarantee here. Not comfortable with Joe having Carte
> Blance with the company's $$$$. If this continues, I will ask for a forensic audit.

Partner A then forwarded his email to Byers to Shereshevsky, who responded in part (emphasis
added):

> *As of today the company owes Africa about 575,000 that is outstanding.* The
> company owes me quite a bit of money including 200,000 that I lent them
> this morning so we can cover payroll including yours.

* * *

> The reason why it is more important to pay back Africa is because our only
> hope of getting out of our mess is Africa. Including you [Partner A]. We
> are in debt and I am working diligently to get us out of it. Go ahead and do
> a forensic audit. It will show that *we spend about 1,000,000 more a month
> than we make,* for the last 3 years especially the last 19 months. Now that
> you know that we take in less than we get by 1,000,000 a month do you still
> want your payroll??????? If no, please let me relieve you of it so you can do
> the right thing.

> [Partner A] . . . we are on the verge of becoming a very strong company.
> However even if we do it will be very hard going for the next 6 months to a year.
> *We may have to maneuver and do things that maybe we would not do if we were
> cash rich.* You want to bicker, go ahead and bicker. It won't do anything for us.
> You want to be a team man then show it.

71.    Emails retrieved from Wextrust Securities also reveal that investors are

complaining that payments to them are being delayed or not paid, and they are concerned about

their investments. To all the queries, a representative from Wextrust Securities has responded

without disclosing that Wextrust was running a deficit and using funds from other entities to

23

make payments to prior investors. In fact, behind the scenes, the Individual Defendants have engaged in frantic communications to drum up money to pay investors.

72.    On May 13, 2008, Investor A filed a complaint with the Illinois Office of the Attorney General, in which he states that he "smells a rat" and that "This is smelling like a giant PONZI scheme. My belie[f] is that Wextrust could be playing a huge, financial shell game. Their financial situation may be so bad that they're delaying distributions to earn the float, and paying our late distributions out of new investor dollars. I fear their house of cards is about to collapse, leaving investors holding the bag."

## C.    Ongoing Fraudulent Offerings

73.    The Defendants are currently in the midst of conducting at least four offerings in investments or instruments which are securities in the form of investment contracts, notes or other evidence of indebtedness: (i) Drake Oak Brook Investors, LLC; (ii) a note offering by Defendant WEP (the "GSPN"); (iii) 625 Paragon Investors, LLC ("625 Paragon"); and (iv) ATM II.

74.    The Drake Oak Brook offering commenced on November 10, 2007 and seeks to raise $14.5 million purportedly to acquire indirectly and develop a Wyndham branded hotel. To date, the offering has raised approximately $11.6 million, with one investor investing $100,000 on July 21, 2008.

75.    The GSPN offering began in December 2007 and has to date raised approximately $4.6 million. The private placement memorandum represents that the proceeds will be used to fund short-term loans to entities affiliated with WEP, to fund security deposits, pay up-front fees and costs related to property acquisitions, provide bridge loans, and provide financing for tenant

improvement costs and construction on currently owned real estate.

76.    The 625 Paragon offering commenced on or about April 17, 2008, seeking to

raise $4.8 million from investors to acquire indirectly and develop a residential complex in

Chicago, Illinois.  The 625 Paragon private placement memorandum represents that the offering

proceeds will be used to make a $3 million contribution to acquire an interest in

Paragon/Division LLC and for placement fees and syndication costs, a development fee, and a

"preferred return reserve."  To date, the offering has raised approximately $1,015,000, with one

investor investing $100,000 on July 2, 2008 and another investing $100,000 on July 10, 2008.

77.    ATM II commenced an offering on April 24, 2008 and seeks to raise $25 million

from investors to acquire 10% of Wextrust's interest in a Wextrust affiliate, a South African

entity called Pure Africa Minerals (Pty) Ltd.  To date, ATM II has raised just over $1 million

with one investor making a $250,000 investment on June 18, 2008.

78.    Upon information and belief, Defendants intend to use some or all of the proceeds

raised by these four LLC Entities to meet obligations of other Wextrust Entities.  The ATM II

offering, in particular, is designed to fund deficits at other Wextrust Entities.  Upon information

and belief, the proceeds of the ATM II offering will go directly to Byers and Shereshevsky as

opposed to buying a property.  The Defendants intend to use funds raised to pay obligations

owed to prior investors in other LLC Entities.

79.    A March 18, 2008 email from Shereshevsky to Byers shows that were both well

aware of fraudulent activities they were engaged in (emphasis added):

> Please remember one thing.  That although I always take care of you and
> myself, my goal in this thing as I have always told you from day one, is to
> get [W]extrust out of all the shit before the end of 09 or 10 at the latest.  that

is my primary concern. *We have faked it until we made it for long enough and now we must clean up.*

As recently as July 2, 2008, Shereshevsky emailed Partner A stating, "We are in business. We are raising money. We received commitments today on atm, drake and paragon to the rune [sic] of over 2.5 million."

### D.    Fraudulent Over-Raising

80.    The Defendants have also resorted to "over-raising" funds in a number of offerings in order to use excess proceeds to meet deficits in other entities. Wextrust Securities' records show that the actual amount raised in at least twenty-one offerings exceeds the amount that the Defendants represented they would raise in the various private placement memoranda by a total of more than $20 million. Upon information and belief, the Defendants never disclosed the over-raises to any investors.

81.    The purpose of the over-raising is made clear by the Defendants' e-mails. In an April 11, 2008 email to Byers, Shereshevsky requests a short telephone conversation to discuss certain agenda items, one of which is "Ideas for cash to survive until I finish this underwriting [sic]." Later that same day, Shereshevsky sends a "follow up" email to Byers, stating, "We have to do some old fashion over raising, raise for the GDR and High Yield (on shore) [another LLC entity] to get through these months."

82.    Byer's view that over-raising translates into "profits" is set out in a previous email to Shereshevsky on March 12, 2008, in which he states:

Also, a big part of what we do is make money, profit, by raising more than the minimum that is required. Yes, it needs to be in reason but we have to have the ability to do this. We must determine with our accountants how we book and treat this and [the then-current CFO] can either get in line or get out of the way.

26

Not surprisingly, the CFO referred to in the email has since resigned.

**E.      The Relief Defendant Has Been Used to Hide Illicit Assets**

83.      Defendant Joseph Shereshevsky placed assets that he owned or controlled –
including residential real estate, bank accounts, and his ownership interest in Wextrust – in the
name of his wife, Relief Defendant Elka Shereshevsky.

84.      Relief Defendant Elka Shereshevsky was compensated as though she were an
employee of Wextrust. However, Elka Shereshevsky (1) performed no substantial services for
Wextrust; (2) had no specific responsibilities with respect to Wextrust; (3) did not keep regular
hours at a Wextrust office; (4) does not currently maintain an office or other work space on the
premises of any Wextrust office; and (5) only visited Wextrust offices on infrequent occasions.
Her role was limited to signing documents as a nominee of her husband. Relief Defendant Elka
Shereshevsky has no source of ordinary income other than Wextrust.

85.      On or about August 1, 2008, a bank in Virginia at which Wextrust accounts were
maintained froze the assets in numerous Wextrust accounts in response to a freeze notice by the
Department of Justice. At that time, Shereshevsky was unable to access certain funds held in
those accounts and he directed his wife, Relief Defendant Elka Shereshevsky, to open an account
with a different bank in Norfolk, Virginia. The account was subsequently opened ("Norfolk
Account") in Elka Shereshevsky's name. The address associated with the account is 720 Maury
Avenue, Norfolk, Virginia 23517. This is the same address of the joint residence of Joseph and
Elka Shereshevsky.

86.      Thereafter, Defendant Joseph Shereshevsky diverted Wextrust funds by

depositing them into the Norfolk Account. The opening deposits in the Norfolk Account consisted of, among other items, two checks designated as "loans" to ATM II, LLC ("ATM"). ATM is an issuer of securities offered by Wextrust Securities at the direction of Joseph Shereshevsky. Numerous other accounts putatively controlled by Elka Shereshevsky contain more than $825,000 in assets that rightfully belong to Shereshevsky or the Wextrust Defendants. The evidence developed to date indicates that, in the last year, Shereshevsky transferred nearly $1 million into the accounts he established in Elka Shereshevsky's name.

**F.    Failure to File Proper Forms BD With
the Commission and Pass Licensing Exams**

87.    Wextrust Securities and the Individual Defendants have failed to make proper filings with the Commission revealing that Shereshevsky is a control person of registered broker-dealer, Wextrust Securities. In addition to Byers, among others, Wextrust Securities' Form BD only discloses Shereshevsky's wife as being a control person associated with Wextrust Securities' parent company, Wextrust.

88.    While acting as brokers, Defendants Shereshevsky and Byers have each not registered with the Commission as a broker. Alternatively, Wextrust Securities, Byers and Shereshevsky have failed to properly license Shereshevsky and Byers as associated with Wextrust Securities.

89.    While Wextrust Securities Form BD filings with the Commission and FINRA, which also regulates Wextrust Securities, makes no mention of Shereshevsky's involvement with the broker-dealer, Shereshevsky is actively involved in management of the broker-dealer and in soliciting investments for the numerous private placement offerings.

28

90.     The emails retrieved from Wextrust Securities demonstrate that Shereshevsky is involved in the every day business of the broker-dealer, which consists almost exclusively of soliciting investors in the private placement offerings.

91.     Records of Defendant Wextrust Securities show that Shereshevsky is assigned credit for having solicited numerous investors. At least one private placement memorandum for Crowne-Phoenix, dated August 8, 2007, touts that "Mr. Shereshevsky was instrumental in the founding of Wextrust Securities, LLC, which is a licensed broker-dealer with registered representatives in the U.S. as well as parts of Europe and Israel."

92.     Defendants Byers and Shereshevsky admitted that Shereshevsky received commissions for soliciting investors in an email exchange between them on April 9-10, 2008. Defendants Byers and Shereshevsky knew it was wrong to conceal Shereshevsky's role in soliciting investors. Instead of disclosure, Byers suggested they "take all history into a positive" by calling Shereshevsky a "Risk Specialist" and compensating him for commissions in another way:

> My recommendation is that nothing should be on your card, just your name, and your position should be "Risk Specialist". Using that can take [sic] all history into a positive. Furthermore, you bring in potential investors and you tell them "what you told management" about the positive AND the RISKS and then turn them over to Mike or someone with a series 7. On compensation, we will have to rework. You will have to get paid salary plus bonus and then ownership distribution through the partnership interests. *Fees and % of fees for raising money will have to stop or we will be shut down. Take it out another way.*

93.     While Defendant Byers is listed as a control person on Wextrust Securities Form BD filings with the Commission and FINRA, which also regulates Wextrust Securities, he is not listed as associated with the broker-dealer, although records from the broker-dealer Wextrust

Securities show that Byers is actively involved in management of the broker-dealer and in soliciting investments for the numerous private placement offerings.

94.    Records at Wextrust Securities show that Defendant Byers has a representative number, actively solicits investors and makes management decisions.

95.    Defendants Byers and Shereshevsky have not taken and passed any required licensing exams required to manage a broker-dealer (the Series 24) or to solicit investments from investors (the Series 7). Byers and Shereshevsky are both engaged in the operation and supervision of Wextrust Securities and in soliciting investors.

### FIRST CLAIM FOR RELIEF

**Violations of Section 17(a)(1) of the Securities Act**
(Against all Defendants)
(Antifraud violations)

96.    Paragraphs 1 through 95 are realleged and incorporated by reference as if set forth fully herein.

97.    From at least 2005 through the present, the Defendants, in the offer and sale of securities, by the use of the means and instruments of transportation and communication in interstate commerce or by the use of the mails, directly and indirectly, have employed and are employing devices, schemes and artifices to defraud.

98.    The Defendants knew or were reckless in not knowing of the activities described above.

99.    By reason of the activities herein described, the Defendants have violated and are violating Section 17(a)(1) of the Securities Act [15 U.S.C. §77q(a)(1)].

30

## SECOND CLAIM FOR RELIEF

### Violations of Section 17(a)(2) and 17(a)(3) of the Securities Act
(Against all Defendants)
(Antifraud violations)

100.    Paragraphs 1 through 95 are realleged and incorporated by reference as if set forth
fully herein.

101.    From at least 2005, the Defendants, in the offer and sale of securities, by the use
of the means and instruments of transportation and communication in interstate commerce or by
the use of the mails, directly and indirectly, have obtained and are obtaining money and property
by means of untrue statements of material fact or omissions to state material facts necessary in
order to make the statements made, in light of the circumstances under which they were made,
not misleading, and have engaged and are engaging in transactions, practices or courses of
business which have operated and will operate as a fraud and deceit upon investors.

102.    By reason of the activities herein described, the Defendants have violated and are
violating Sections 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. §77q(a)(2) and
§77q(a)(3)].

## THIRD CLAIM FOR RELIEF

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5
(Against all Defendants)
(Antifraud violations)

103.    Paragraphs 1 through 95 are realleged and incorporated by reference as if set forth
fully herein.

104.    From at least 2005 through the present, the Defendants, in connection with the
purchase and sale of securities, directly and indirectly, by the use of the means and

31

instrumentalities of interstate commerce or of the mails, have employed and are employing

devices, schemes and artifices to defraud; have made and are making untrue statements of

material fact and have and are omitting to state material facts necessary in order to make the

statements made, in light of the circumstances under which they were made, not misleading; and

have engaged and are engaging in acts, practices and courses of business which operated as a

fraud and deceit upon investors.

     105.    Defendants knew or were reckless in not knowing of the activities described

above.

     106.    By reason of the activities herein described, the Defendants have violated and are

violating Section 10(b) of the Exchange Act [15 U.S.C. §§78j(b)] and Rule 10b-5 [17 C.F.R.

§240.10b-5] promulgated thereunder.

### FOURTH CLAIM FOR RELIEF

**Violations, and Aiding and Abetting Violations, of
Section 15(c)(1) Of The Exchange Act, 15 U.S.C. §78o(c)(1), And
Rule 10b-3, 17 C.F.R. §240.10b-3**
(Against Wextrust Securities, Byers and Shereshevsky)
(Violations of Antifraud Provisions by Brokers)

     107.    Paragraphs 1 through 95 are realleged and incorporated by reference as if set forth

fully herein.

     108.    Wextrust Securities engaged and is engaging in the business of effecting

transactions in securities for the accounts of others, and therefore was and is a broker within the

meaning of Section 3(a)(4) of the Exchange Act, 15 U.S.C. §78c(a)(4).

     109.    Wextrust Securities, while a broker, directly or indirectly, by use of the mails or

the means or instrumentalities of interstate commerce, has effected and is effecting transactions

in, and has induced and attempted to induce and are attempting to induce the purchase or sale of, securities by means of manipulative, deceptive, or other fraudulent devices or contrivances, including: (a) acts, practices, and courses of business that operated or would have operated as a fraud or deceit upon any person, including persons to whom Wextrust Securities offered and/or sold securities; and (b) making untrue statements of material fact and omissions to state a material fact necessary, in order to make the statements made, in light of the circumstances under which they were made, not misleading with knowledge or reasonable grounds to believe that such statements are untrue or misleading.

110.    As part of and in furtherance of this violative conduct, Wextrust Securities offered and/or sold securities by making the material misrepresentations and omissions set forth herein.

111.    Wextrust Securities knew, was reckless in not knowing, or had reasonable grounds to believe that said representations or omissions were false or misleading.

112.    By reason of the foregoing, Wextrust Securities violated, and, unless restrained and enjoined, will again violate Section 15(c)(1) of the Exchange Act, 15 U.S.C. §78o(c)(1), and Rule 10b-3, 17 C.F.R. §240.10b-3.

113.    To the extent Shereshevsky and Byers were associated with Wextrust Securities, and not acting brokers unassociated with a registered broker-dealer, Shereshevsky and Byers each aided and abetted, and, unless restrained and enjoined, will again aid and abet, Wextrust Securities' violations of Section 15(c)(1) of the Exchange Act, 15 U.S.C. §78o(c)(1), and Rule 10b-3, 17 C.F.R. §240.10b-3.

## FIFTH CLAIM FOR RELIEF

**Violations of Section 15(a) of the Exchange Act, 15 U.S.C. §78o(a)**
(Against Shereshevsky and Byers)
(Violations of Registration Provisions By Brokers)

114.    Paragraphs 1 through 95 are realleged and incorporated by reference as if set forth fully herein.

115.    Shereshevsky, when he was neither registered with the Commission as a broker nor a properly licensed associated person of a registered broker-dealer, made use of the mails or means and instrumentalities of interstate commerce to effect transactions in, or to induce or attempt to induce the purchase or sale of securities.

116.    During the time of the transactions and events alleged in this Complaint, Shereshevsky was neither registered with the Commission as a broker nor properly licensed to sell securities as an associated person of any registered broker-dealer.

117.    By reason of the foregoing, Shereshevsky violated and, unless restrained and enjoined, will again violate Section 15(a)(1) of the Exchange Act, 15 U.S.C. §78o(a)(1).

118.    Byers, when he was neither registered with the Commission as a broker nor a properly licensed associated person of a registered broker-dealer, made use of the mails or means and instrumentalities of interstate commerce to effect transactions in, or to induce or attempt to induce the purchase or sale of securities.

119.    During the time of the transactions and events alleged in this Complaint, Byers was neither registered with the Commission as a broker nor properly licensed to sell securities as an associated person of any registered broker-dealer.

120.    By reason of the foregoing, Byers violated and, unless restrained and enjoined,

will again violate Section 15(a)(1) of the Exchange Act, 15 U.S.C. §78o(a)(1).

### SIXTH CLAIM FOR RELIEF

**Violations, and Aiding and Abetting Violations, of Section 15(b) of the Exchange Act
and Rule 15b7-1 thereunder, 15 U.S.C. § 78o(b) and 17 C.F.R. § 240.15b7-1**
(Against Wextrust Securities, Byers and Shereshevsky)
(Against Use of Unregistered Salespersons)

121.    Paragraphs 1 through 95 are realleged and incorporated by reference as if set forth

fully herein.

122.    As set forth above, Wextrust Securities permitted unregistered employees to buy

and sell securities.

123.    As a result of the conduct set forth above, Wextrust Securities willfully violated

Section 15(b) of the Exchange Act and Rule 15b7-1 promulgated thereunder, 15 U.S.C. § 78o(b)

and 17 C.F.R. § 240.15b7-1.

124.    To the extent Shereshevsky and Byers is associated with Wextrust Securities, and

not acting as a broker that is not associated with a registered broker-dealer, Shereshevsky and

Byers each aided and abetted Wextrust Securities' violations of Section 15(b) of the Exchange

Act and Rule 15b7-1 promulgated thereunder, 15 U.S.C. § 78o(b) and 17 C.F.R. § 240.15b7-1.

### SEVENTH CLAIM FOR RELIEF

**Violations, and Aiding and Abetting Violations, of Section 15(b) of the Exchange Act and
Rules 15b1-1 and 15b3-1 thereunder, 15 U.S.C. § 78o(b) and 17 C.F.R. §§ 240.15b1-1,
240.15b3-1**
(Against Wextrust Securities, Byers and Shereshevsky)
(Undisclosed Control Persons)

125.    Paragraphs 1 through 95 are realleged and incorporated by reference as if set forth

fully herein.

126.    As set forth above, Wextrust Securities failed to disclose to the SEC, as required, that Shereshevsky exercised control, directly or indirectly, over Wextrust Securities' management and policies, through agreement or otherwise, and that Shereshevsky had a prior felony conviction for bank fraud.

127.    As a result, Wextrust Securities violated, and Byers and Shereshevsky aided and abetted the violations by Wextrust Securities, of Section 15(b) of the Exchange Act, 15 U.S.C. § 78o(b), and Rules 15b1-1 and 15b3-1 promulgated thereunder, and 17 C.F.R. §§ 240.15b1-1, 240.15b3-1.

## EIGHTH CLAIM FOR RELIEF

(Relief Defendant Elka Shereshevsky)

128.    Paragraphs 1 through 95 are realleged and incorporated by reference as if set forth fully herein.

129.    The Relief Defendant received, directly or indirectly, funds and/or other assets from the Defendant, which either are the proceeds of, or are traceable to the proceeds of, the unlawful activities alleged herein and to which she has no legitimate claim.

130.    The Relief Defendant obtained the funds and assets as part of and in furtherance of the securities violations alleged and under circumstances in which it is not just, equitable, or conscionable for her to retain the funds and assets, and accordingly, the Relief Defendant has been unjustly enriched by ill gotten gains.

131.    The Commission is entitled to an order requiring that the Relief Defendant disgorge these funds and assets plus prejudgment interest thereon.

36

## PRAYER FOR RELIEF

**WHEREFORE**, the Commission respectfully requests that the Court grant the following relief:

### I.

Enter judgment in favor of the Commission finding that the Defendants each violated the securities laws and rules promulgated thereunder as alleged herein;

### II.

An order permanently enjoining the Defendants, their agents, servants, employees and attorneys and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from committing future violations of Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5, 17 C.F.R. § 240.10b-5.

### III.

An order permanently enjoining Wextrust Securities, its agents, servants, employees and attorneys and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from committing future violations of Sections 15(b) and 15(c)(1) of the Exchange Act, 15 U.S.C. §§ 78o(b) and 78o(c)(1), and Rules 10b-3, 15b1-1, 15b3-1 and 15b7-1 promulgated thereunder, 17 C.F.R.§§ 240.10b-3, 240.15b1-1, 240.15b3-1 and 240.15b7-1.

## IV.

An order permanently enjoining Shereshevsky and Byers, their agents, servants, employees and attorneys and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from committing future violations of Section 15(a)(1) of the Exchange Act, 15 U.S.C. § 78o(a)(1), or alternatively, from aiding and abetting future violations of Sections 15(b)(1), 15(b)(7) and 15(c)(1) of the Exchange Act, 15 U.S.C. §§78o(b)(1)&(7) and 78o(c)(1), and Rules 10b-3, 15b1-1, 15b3-1 and 15b7-1 promulgated thereunder, 17 C.F.R.§§ 240.10b-3, 240.15b1-1, 240.15b3-1 and 240.15b7-1.

## V.

An order directing the Defendants and Relief Defendant to disgorge their ill-gotten gains, plus prejudgment interest thereon.

## VI.

A order directing the Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d) and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3).

## VII.

Granting such other and further relief as to this Court seems just and proper.

Dated:    New York, New York
          August 27, 2008

By: _____
          Andrew M. Calamari (AC-4864)
          Associate Regional Director
          Attorney for Plaintiff
          SECURITIES AND EXCHANGE COMMISSION
          3 World Financial Center
          New York, NY 10281-1022
          (212) 336-0178

Of Counsel:

Alexander M. Vasilescu
Steven G. Rawlings
Danielle Sallah

39