**ANDREW M. CALAMARI (AC-4864)**
**ASSOCIATE REGIONAL DIRECTOR**
**Alexander M. Vasilescu (AV-2575 )**
**Doria Bachenheimer (DB-3307)**
**Steven G. Rawlings (SR-0623)**
**Danielle Sallah (DS-8686)**
**Attorneys for Plaintiff**
**SECURITIES AND EXCHANGE COMMISSION**
**New York Regional Office**
**3 World Financial Center**
**New York, New York 10281**
**(212) 336-1100**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------x

**SECURITIES AND EXCHANGE COMMISSION,**

                   **Plaintiff,**

            **- against -**

**STEVEN BYERS, JOSEPH**
**SHERESHEVSKY, WEXTRUST CAPITAL, LLC,**
**WEXTRUST EQUITY PARTNERS, LLC,**
**WEXTRUST DEVELOPMENT GROUP, LLC,**
**WEXTRUST SECURITIES, LLC, and**
**AXELA HOSPITALITY, LLC,**

                   **Defendants.**

-------------------------------------------------------------------------x

__ Civ. __ ( )

## DECLARATION OF TAMARA R. HELLER IN SUPPORT OF COMMISSION'S MOTION FOR EXPEDITED RELIEF

I, Tamara R. Heller, pursuant to 28 U.S.C. § 1746, declare as follows:

1.     I am over 18 years of age and am employed as a Staff Accountant in the examination program ("Examination Staff") at the New York Regional Office of plaintiff Securities and Exchange Commission, a position I have held for approximately 3 years. My duties are to conduct examinations of registered broker-dealers to ensure their compliance with the federal securities laws. I make this declaration to authenticate

documents in exhibits 1-78, which accompany this declaration in three volumes, submit

facts I learned during a recent examination of defendant Wextrust Securities, LLC

("Wextrust Securities"), and support the emergency application to halt ongoing

fraudulent offerings of securities by the defendants, which include a convicted felon,

defendant Joseph Shereshevsky ("Shereshevsky"), and his partner, defendant Steven

Byers ("Byers") (together, "the Individual Defendants".) The Individual Defendants own

or control Wextrust Securities, as well as defendants Wextrust Capital, LLC

("Wextrust"), Wextrust Equity Partners, LLC ("WEP"), Wextrust Development Group,

LLC ("WDG") and Axela Hospitality LLC ("Axela") (these entities are collectively

referred to the "Wextrust Entity Defendants.") I have created an organization chart,

marked as Exhibit 1, which explains the relationship among the Wextrust Entity

Defendants.

2.    From April 14, 2008 through July 31, 2008, I and other members of the

Examination Staff conducted an examination of the New York branch of Wextrust

Securities, a broker-dealer registered with the Commission (the "Examination") which is

located at 114 West 47th Street, 20th Floor, New York, New York 10036.  During the

Examination, I and other members of the staff retrieved documents, including private

placement memoranda, emails, and internal financial documents, some of which I have

included in the accompanying three volumes of exhibits.  I make this declaration based

upon the documents that I and other members of the Examination Staff reviewed, and

interviews that I and other members of the Examination Staff conducted of individuals at

Wextrust Securities.  I and other members of the staff interviewed: (1) Defendant Byers;

(2) Ralph Sabine, the Chief Compliance Officer of Wextrust Securities; (3) Avi Benamu,

a registered representative and the manager of the New York Office of Wextrust Securities; and (4) Amnon Cohen, a principal of Wextrust ("Cohen".)[1]

## The Defendants

3.     **Steven Byers**, age 46, is a resident of Oakbrook, Illinois, and owns sixty percent of Wextrust. He is the Chairman of Wextrust (Ex. 6 (WEP Guaranteed Subordinated Promissory Notes PPM ("WEP PPM") at 11) and President and Chief Executive Officer of WEP (Ex. 21 (Crowne-Phoenix PPM) at 28), the arm of Wextrust focusing on income-producing properties, and also an owner through Byers Family Partnership of Wextrust Securities (Ex. 19 (Schedule of Control of Wextrust Securities).) Offering materials explain that in 1994 Byers founded ASG Financial Services, Wextrust's predecessor which underwrote debt and equity investments. (Ex. 6 (WEP PPM at 10.) In 1996, Wexford Bancgroup was formed to focus on the commercial mortgage-backed securities and specialty finance businesses. (Ex. 6 at 10.) In 2003, Byers formed the current Wextrust. (Ex. 6 (WEP PPM) at 10.) The offering materials state that Byers has twenty years in the finance-related lending and investment business and worked as a former bank examiner and valuation specialist for a government supervisory agency. (Ex. 6 (WEP PPM) at 12.) Byers' sixty percent ownership of Wextrust is comprised of a twenty percent outright ownership and forty percent through interests in the Brandon Family Limited Partnership and Lindsay Investment Limited Partnership. (Ex. 67 (Entity and Status Report) at unnumbered 4.) Together with Shereshevsky, he and other partners control the Wextrust Entities. Although emails from

---

[1]     Because I submit this Declaration for the limited purpose of supporting the Commission's Application for a Temporary Restraining Order, Preliminary Injunction, and Other Relief, I have not set forth each and every fact that I know about this matter.

the broker-dealer, Wextrust Securities, evidence that Byers is managing that broker-dealer, has an internal representative number, has solicited investors and effected securities transactions while associated with that broker-dealer, (Exs. 7 and 15), records from the Financial Industry Regulatory Authority ("FINRA") show that Byers has not passed any licensing exams, such as the Series 7 or 24 examinations. (Ex. 9 (Excerpts from FINRA's Central Registration Depository ("CRD") for Byers); Ex. 10 (Excerpts from FINRA's CRD for Wextrust Securities).) While all brokers are required to register with the Commission or be registered as associated with a registered broker-dealer, there are no records from the Commission showing that Byers is registered or any records from FINRA identifying Byers as a registered representative or a principal with Wextrust Securities. (Ex. 11 (Wextrust Securities Broker-Dealer Registration Form BD).)

4.    **Joseph Shereshevsky**, a/k/a Joseph Heller or "Yossi",[2] age 52, is a resident of Norfolk, Virginia, and owns twenty percent of Wextrust through a partnership named The Shereshevsky Family Trust of which one, Elka Shereshevsky, who I believe to be his wife, is the General Partner. Throughout the relevant time period, Shereshevsky was Wextrust's Chief Operating Officer,[3] and, according to offering materials, has been a key asset in building the private equity group, greatly increasing Wextrust's access to capital. (Ex. 6 (WEP PPM) at 12.) He was also instrumental in founding Wextrust Securities and in Wextrust's expansion into diamond mining investments in Africa. (Ex.

---

[2]    Shereshevsky is sometimes referred to by colleagues as "Yossi." (Exhibit 62 (Email, dated February 15, 2008, from M. Mostofsky to J. Shereshevsky referring to Shereshevsky as "Yossi").)

[3]    Shereshevsky has apparently resigned as Chief Operating Officer. (Exhibit 65 (Email dated June 2, 2008 from Shereshevsky to Byers and Amnon Cohen concerning resignation).)

30 (Block III PPM) at 20.) He has a background in the diamond commodity business,
(Ex. 30 (Block III PPM) at 21), and appears to be involved in the Orthodox Jewish
community. In 1994, Shereshevsky was indicted for conspiracy to defraud a bank of
more than $300,000 by depositing and cashing stolen checks. (Ex. 13, *U.S. v.
Shereshevsky*, 94 Cr. 248 (CSH), 2003 U.S. Dist. LEXIS 10868 at *1 (S.D.N.Y. June 23,
2003).) In June 2003, he pleaded guilty in the Southern District of New York to one
felony count of bank fraud. He was sentenced to time-served, 24 months supervised
release and ordered to pay restitution in the amount of $38,797.90, which judgment was
satisfied on February 15, 2005. (Ex. 14 (Criminal Docket) at 3-4.) Records from the
broker-dealer, Wextrust Securities, evidence that Shereshevsky is essentially managing
the broker-dealer and is acting as a broker because he has solicited investors in different
offerings and effected securities transactions while associated with that broker-dealer
(Ex. 71 (Email, dated March 3, 2008, attaching email from Shereshevsky, dated January
24, 2008, which attaches a Commission Schedule, about which Shereshevsky states
"Only I can make exceptions, no one else."); Ex. 72 (Email exchange, dated April 2-3,
2008, showing Shereshevsky is slated to participate in equity raising discussion); 15 and
16 (Emails with charts referring to Shereshevsky as a representative); Ex. 24 (Email
exchange dated April 9-10, 2008 between Byers and Shereshevsky); Ex. 66 (Email
exchange dated March 11-13, 2008 among Byers, Shereshevsky and a Wextrust
Securities employee evidencing direct role Byers and Shereshevsky had in managing
employees of the broker-dealer).) There are no records from the Commission showing
that Shereshevsky is registered and passed licensing exams such as the Series 7 and 24, or
any records from FINRA identifying Shereshevsky as affiliated with Wextrust Securities

and records from FINRA filed on behalf of Wextrust Securities do not disclose

Shereshevsky's affiliation. (Ex. 11 (Wextrust Securities Broker-Dealer Registration

Form BD).)

      5.      **Wextrust Capital, LLC,** an Illinois limited liability company, was

formed by Steve Byers in 2003. (Ex. 6 (WEP PPM) at 10-11.) According to the

company's website, Wextrust is a globally diversified private equity and specialty finance

company, specializing in investment opportunities ranging from real estate to specialty

finance and investment banking. (Ex. 17 (Snapshot from www.wextrust.com).)

Wextrust is headquartered in Chicago, Illinois, and maintains offices in: New York, New

York; Norfolk, Virginia; Atlanta, Georgia; Boca Raton, Florida; Nashville, Tennessee;

Tel Aviv, Israel; and Johannesburg, South Africa. (Ex. 17 (Snapshot from

www.wextrust.com).) Wextrust purports to have five main areas of business: (1)

Wextrust Securities, a registered broker dealer that acts as selling agent for Wextrust's

offerings of preferred membership interests, also referred to herein as units, in various

limited liability companies; (2) WEP and WDG, which purportedly manage $500 million

of real estate owned by various limited liability companies whose units were sold to

investors in various offerings; (3) Wextrust Commodities Managers, LLC, which

manages various managed futures funds with assets of at least $15 million; (4) certain

high yield debt funds which manage assets of approximately $35 million; and (5) major

interests in diamond mines and operations in Africa held through Pure Africa Mining Ltd.

and other affiliates, in which Wextrust has a substantial interest. (Ex. 18 (Wextrust

Capital, LLC Consolidated Financial Statements for the year ending December 31, 2006)

at unnumbered 6; Ex. 1 (Organization Chart).)

6.      **Wextrust Equity Partners, LLC** is an Illinois limited liability company headquartered in Chicago, Illinois, engaged in the business of buying real estate assets, generally though its partially-owned subsidiaries. (Ex. 6 (WEP PPM) at 10.)  According to WEP documents, WEP is the beneficial owner of over 120 entities formed for the purpose of owning equity interests in commercial and multi-family real estate assets. (Ex. 6 (WEP PPM) at 4.)  I learned during my Examination that Wextrust is WEP's manager and majority member, (Ex. 6 (WEP PPM) at i), and owns the majority and controlling interest in WEP (Ex. 18 (Wextrust Capital, LLC Consolidated Financial Statements for the year ending December 31, 2006) at unnumbered 3, 7, 10.)

7.      **Wextrust Development Group, LLC** (also known by the Defendants as Wexford Development Group) is an Illinois limited liability company headquartered in Chicago, Illinois, in the business of developing real estate assets.  (Ex. 18 (Wextrust Capital, LLC Consolidated Financial Statements for the year ending December 31, 2006) at unnumbered 7.)  Wextrust owns the majority and controlling interest of WDG.  (Ex. 18 (Wextrust Capital, LLC Consolidated Financial Statements for the year ending December 31, 2006) at unnumbered 7; Ex. 1 (Organization Chart).)

8.      **Wextrust Securities, LLC** is a broker-dealer registered with the Commission and a Virginia limited liability company headquartered in Norfolk, Virginia. (Ex. 6 (WEP PPM) at unnumbered 7.)  It employs thirty-six representatives and maintains branch offices in Chicago, Illinois, New York, New York, Norfolk, Virginia, Southfield, Michigan, and Ramat Gan, Israel.  (Ex. 73 (Schedule C of Wextrust Branch Offices).)  It was formed in March 2005 and has been a licensed broker-dealer since March 2006.  (Ex. 11 (Wextrust Securities Broker-Dealer Registration Form BD) at 3;

Ex. 74 (Excerpt from Wextrust Securities CRD indicating registration status effective as of March 2006).)  According to documents obtained from Wextrust Securities and discussions I had with employees of Wextrust Securities, Wextrust Securities is owned by the following individuals and entities:  Wextrust (21%); Byers, through the Byers Family Partnership (5%); Shereshevsky, though the Shereshevsky Family Partnership (7%)[4]; Weldon Turner (CEO, Wextrust Securities) individually and through Aydan Investments, Ltd. (28%); Stuart Jacobowitz (former CFO Wextrust Securities) individually and through Spark Enterprises, Inc. (14%); Avraham Ingber (Managing Director and Principal of Wextrust Securities, Israel, and a registered representative) individually and through Tri Enterprises, Inc. (24%); and Joseph Friedman (registered representative, Wextrust Securities (1%.)  (Ex. 19 (Schedule of Control of Wextrust Securities, LLC); Ex. 11 (Wextrust Securities Broker-Dealer Registration Form BD) at 7-8.)  Wextrust Securities has no disciplinary history.

9.    **Axela Hospitality, LLC** is an affiliate of Wextrust.  Axela, through certain of the LLCs, owns and operates certain Wextrust's hotel properties, including the Axela Baltimore Hotel, (Ex. 20 (Axela Baltimore PPM) at 4), and the Park View Hotel in Chicago, Illinois, (Ex. 22 (Email from Byers dated Nov. 15, 2007 regarding Axela Valuation)), and provides asset management services to other Wextrust affiliated hotel LLCs, such as Crowne-Phoenix Investors LLC.  (Ex. 21 (Crowne PPM) at 28.)

**Other Relevant Entities**

---

[4]    As of April 9, 2008, Shereshevsky claimed to own 13% of Wextrust Securities. (Exhibit 24 (Email chain, dated April 9-10, 2008, between S. Byers and J. Shereshevsky) at 2.)

10.    Approximately 150 limited liability companies (the "LLCs") are owned or controlled by, related to, or associated or affiliated with Wextrust and its principals, Defendants Byers and Shereshevsky, and involved in or related to Wextrust's business. (Ex. 5 (Entity and Status Report).)

11.    A Wextrust combined balance sheet for the year ending December 31, 2007, and found in emails provided to Commission staff by Wextrust Securities (attached hereto as Ex. 23), lists many of these LLCs. I have also attached as Exhibit 3 a list I and other Staff members prepared of these LLCs. I and other Staff members have listed on Exhibit 3 additional entities that are LLCs of Wextrust, according to Wextrust's own admissions, because either the entity received investor money or the entity maintains the same business address as Wextrust.

### The Securities Offerings

12.    Byers formed Wextrust in 2003, and partnered with Shereshevsky, with the business purpose to find investment opportunities, mainly in undervalued real estate assets, and fund the acquisition of the assets through loans and the offering of private placement securities. (Ex. 6 (WEP PPM) at 10-13.)    The Individual Defendants created Wextrust Securities in 2005 to act as the selling agent for the private placement offerings. (Ex. 6 (WEP PPM) at 15.) Byers is Chairman of Wextrust and involved with real estate investments. (Ex. 6 (WEP PPM) at 11.) It appears that Shereshevsky's role was to take the lead in soliciting investors through his wide-contacts in the Orthodox Jewish community and to manage the offerings and investments relating to the purchase of real estate and specific assets, including diamond mining interests in Africa.

13.    According to various documents from Wextrust Securities, the Individual Defendants and the Wextrust Entity Defendants have conducted at least 60 securities offerings and raised at least $255 million from at least 1,196 investors. (*See* Ex. 3 at 5 (Offerings Spreadsheet), Ex. 4 at 27 (Investor Spreadsheet)) and (Ex. 68 (Private Placement List).)[5] The majority of these offerings, which the staff focused on in its examination of Wextrust Securities, occurred during or after 2005 through 2008. At least four offerings occurred as early as 2002. Many of the securities offerings involved the sale of "preferred membership interests" in the LLCs, which were limited liability corporations created by Wextrust as the investment vehicles for the specific offerings. In connection with these 60 private placement offerings, the Defendants have created approximately 150 LLCs or similar vehicles for the offerings. (Ex. 5 at 4 (Entity and Status Report).) Wextrust Securities' revenues are private placement fees derived from its role as a sales agent for private placements promoted, managed or issued by its parent, Wextrust Capital LLC ("Wextrust".) (*See* Ex. 2 (Wextrust Securities Annual Audited Report for year ending 12/31/07).)

14.    Wextrust Securities, the registered broker-dealer, acts as a selling agent for most of the private placements. In many of the securities offerings I reviewed, the private placement memorandum represents that the proceeds raised from the investors, together with a mortgage loan, will be used to purchase and operate a specific commercial real estate property.

---

[5]    Exhibits 4-5 are spreadsheets obtained from Wextrust Securities during the Examination, to each of which I have added a single column for purposes of totaling the figures specified. Exhibit 68 is a list of private placement offerings that I created from information obtained during the Examination from Wextrust Securities.

15.    The offering materials also generally represent that investors will receive a fixed rate of return per annum, together with profits obtained from any sale or operation of the property. As stated in the various private placement documents, in each offering, a Wextrust Entity, managed by Byers and Shereshevsky and others, manage the limited liability investment. In various instances, the offering documents provide that profits from the investments will be shared 30% by the Defendants and 70%, or in similar ratios, by the investors. Typically, for income-producing properties, the offering documents indicate that investors will receive fixed per annum interest payments, such as 8.5% percent, over the course of the investment.

16.    In addition to conducting securities offerings of preferred interests in LLCs that purchase real estate in the United States, the Defendants have conducted securities offerings for entities that are investing in real estate abroad. Records obtained from Wextrust Securities indicate that the Defendants have raised at least $47 million in at least five private placements, which, according to the private placement memoranda available to me, were to be used to purchase directly or indirectly interests in certain diamond mining rights in South Africa and Namibia. The Defendants have also conducted offerings on behalf of limited liability companies or other entities that invest in non-real estate assets.

### False Statements and Diverted Proceeds

17.    The private placement and other offering documents, copies of which were retrieved from Wextrust Securities, contain false representations to investors about the offerings and specifically about the uses for investor money raised in the offerings. The private placement documents do not disclose that funds raised, purportedly for

specific investments, can be diverted to and commingled with funds from other securities

offerings to pay investors in prior offerings and to pay the operating expenses of the

various Wextrust Entities.

18.    Documents obtained from Wextrust Securities reveal that during the past

year the inter-fund transfers have greatly escalated and the Wextrust Entities are running

a substantial deficit on funds owed to various investors. (*See e.g.,* Exs. 43, 46-49.)

19.    Records from Defendant Wextrust Securities reveal that the Defendants

have transferred more than $100 million between entities. A combined balance sheet

circulated by email on May 3, 2008, from a Wextrust controller to Byers, shows

"liabilities" of Wextrust as of year end 2007. (The balance sheet is marked as Ex. 23.)

The balance sheet lists 45 loans, totaling more than $74 million that were made by LLC

entities that had recently raised money in private placements to other LLC entities that

were in need of cash. The same balance sheet includes "negative" liabilities that reflect

"receivables" totaling at least $54 million owed to Wextrust Entities from various LLC

Entities: i.e., loans that the Wextrust Entities made to those investment entities. (Ex. 23 at

13-17.) A residual inter-company loan balance of approximately $19 million as of

December 31, 2007 appears to reflect monies that Wextrust may have used for general

corporate purposes. (Ex. 23 (Email, dated May 3, 2008, from S. Gabriel to S. Byers

attaching Wextrust Capital, LLC Combined Balance Sheet for year ending December 31,

2007) at 17.) I created a spreadsheet, marked as Exhibit 38, that reflects the calculations

I have just described. (*See* Ex. 38 at unnumbered pages 3-4.)

20.    Based on the PPMs that I have reviewed and as described below, transfers

of funds between the bank accounts of the various LLCs that raised funds from investors,

and the bank accounts of the Wextrust Entities are contrary to representations in the offering memoranda that proceeds will be used only for specific purposes. The offering documents also tout Shereshevsky's background, but do not disclose to investors that Defendant Shereshevsky has a felony bank fraud conviction.

### 1.    The GSA Offering

21.    In 2005, the Defendants created GSA Investors, LLC to act as the issuer for a $9.2 million private placement. According to the offering memorandum ("the GSA PPM"), marked as Exhibit 26, the proceeds raised were to be used to purchase and operate seven commercial properties leased to the U.S. General Services Administration. (Exhibit 26 (GSA PPM) at i.) As discussed below, the Defendants' representations in the GSA PPM regarding the purchase of properties are false and misleading. The accompanying declarations reveal that GSA Investors LLC and the Defendants did not acquire any real property. The Defendants used funds raised in the GSA offering for the purpose of diverting those funds to other purposes.

22.    According to the GSA PPM, GSA Managers, LLC is the manager of GSA Investors, LLC. (Ex. 26 (GSA PPM) at 22.) The GSA PPM, which is dated November 22, 2005, represents that Defendant Byers is the president, and Defendant Shereshevsky is an executive officer of GSA Managers. (Ex. 26 (GSA PPM) at 22-23.) By virtue of those positions, the GSA PPM represents that Defendants Byers and Shereshevsky, together with Wextrust, control the issuer, GSA Investors LLC. (Ex. 26 (GSA PPM) at 22-23.)

23.    GSA Investors, LLC issued the GSA PPM seeking to raise more than $9 million from investors. (Ex. 26 (GSA PPM) at i.) According to the GSA PPM, the

purpose of the offering was to raise funds that, together with a bank loan, would be used
to "acquire, operate, sell, refinance, mortgage and otherwise use and own for profit an
undivided indirect interest in the Properties, consisting of seven buildings all leased to the
United States of America General Services Administration located in Wisconsin, Illinois,
Indiana and Florida." (Ex. 26 (GSA PPM) at i.)

24.    The GSA PPM represented that the purchase price for the seven properties
will be approximately $28.3 million; that GSA Investors, LLC intends to raise $9.2
million by selling interests to "Preferred Members" and intends to assume a mortgage
covering the properties in the amount of approximately $21.6 million. (Ex. 26 (GSA
PPM) at 7.)  The GSA PPM also represented, in the "Use of Proceeds" section, that the
$9.2 million raised from investors would be used to pay a portion of the purchase price of
the properties, closing costs, commissions and other expenses associated with acquiring
the properties and to establish a working capital reserve. (Ex. 26 (GSA PPM) at 7.)

25.    The GSA PPM specifically identifies the mortgages that will be assumed
in connection with the purchase, and further represents that "the Company is acquiring
the Properties, in the Manager's view, at below replacement cost, thereby creating an
immediate margin of safety for its investors." (Ex. 26 (GSA PPM) at 20.)

26.    The GSA PPM also represents that the Manager (GSA Managers, LLC,
which is managed by defendant WEP) "believes that the Properties, a government-tenant
portfolio with seven office buildings in prime locations:  (i) present a superior investment
opportunity in terms of offering a stable, government backed return which limits
investors' downside; (ii) are located in markets which present sound demand

14

characteristics and property appreciation possibility; and (iii) will be efficiently managed." (Ex. 26 (GSA PPM) at 20.)

27.    Records from Wextrust Securities, marked as Exhibit 39, show that from 2005 through at least April 2008, GSA Investors, LLC raised approximately $9 million from 103 investors accounts. (Ex. 39 (GSA Investor List) at unnumbered 6.)

28.    At the time the GSA PPM was used to solicit investments, the representations concerning the purchase of seven specified properties were false. The accompanying declarations from representatives of the owner and lessee of seven properties identified in the GSA PPM confirm that the Defendants never purchased or negotiated to purchase the specific properties that they told investors they would purchase. Similarly, declarations from GSA officials, who work for the Federal Agency that leases the seven properties, also confirm that the Defendants never purchased the properties. See the declarations of William Schorsch, dated July 17, 2008 (attached hereto as Ex. A); the declaration of Nannette L. Wauchop, dated June 30, 2008 (attached hereto as Ex. B); and the declaration of Patricia K. Singleton dated July 25, 2008 (attached as Ex. C).) I have also looked at a website maintained by the GSA, which lists the "Lessor/Owners" of the seven properties listed in the GSA private placement memorandum, and none of the lessors/owners is GSA Investors LLC, Wextrust Capital or any other individual or entity that is affiliated with the Defendants. (Ex. 70 (GSA Lease Inventory, as of July 2008, from www.gsa.gov).)

29.    The GSA PPM also contains materially incomplete and inaccurate statements regarding Shereshevsky's biography. The GSA PPM touts Shereshevsky as "an executive officer of the Manager and is the Director of Operational Services of

WexTrust Asset Management. Mr. Shereshevsky has been involved in real estate and multi-family management for the past 15 years and is a Principal of WexTrust Capital." (Ex. 26 (GSA PPM) at 23.) The GSA PPM fails to disclose Shereshevsky's prior felony conviction. (*See* Ex. 14 (Criminal docket evidencing Shereshevsky's June 2003 bank fraud conviction) at 3-4.)

30.    Wextrust Securities earned commissions on the sale of GSA LLC securities and several registered representatives at Wextrust Securities received commissions in connection with those sales. (Ex. 6 (WEP PPM) at 15.) Shereshevsky and his wife received transaction based compensation in 2007 of approximately $9,890, which is approximately 2.2 percent of the $457,000 raised by Wextrust Securities for GSA, (Ex. 40 (Email dated April 9, 2008 from Sheran Gabriel (the Controller for Wextrust Private Equity Group) to Byers attaching property revenue and commission charts, at unnumbered 3)), despite language in the GSA PPM stating that "[n]o commissions or other remuneration will be paid to the Manager in connection with the sale of the Preferred Interests. " (Ex. 26 (GSA PPM) at i.)

31.    The combined balance sheet retrieved from Wextrust Securities shows that the Defendants diverted from GSA Investors, LLC to Wextrust $6,554,400 as of December 31, 2007, while the offering was still ongoing. (Ex. 23 (Email, dated May 3, 2008, from S. Gabriel to S. Byers attaching Wextrust Capital, LLC Combined Balance Sheet for year ending December 31, 2007) at 16.) Under disclosure for "use of proceeds" in the GSA PPM, there is no representation that allows the Defendants to divert funds to Wextrust. (Ex. 26 (GSA PPM) at 7.) The combined balance sheet, in turn, shows that Wextrust loaned money to other LLCs. (Ex. 23 (Email, dated May 3, 2008, from S.

16

Gabriel to S. Byers attaching Wextrust Capital, LLC Combined Balance Sheet for year ending December 31, 2007) at 16-18.) None of the documents I retrieved from Wextrust Securities indicates that the Defendants disclosed to GSA investors that the Defendants were using their funds for purposes other than the purchase of the seven properties. An email retrieved from Wextrust Securities between Shereshevsky and another principal reveals that the GSA Offering was a securities fraud. In the November 16, 2007 email from a Wextrust principal to Shereshevsky, marked as Exhibit 12, a Wextrust principal acknowledges to Shereshevsky that the GSA offering, and other offerings by the Defendants, were fraudulent, stating "You raised $9,000,000 from investors for GSA i.e. properties that never existed phony PPMs, etc. . . . Guys from enron got 20 years for doing that . . . You co-mingled [sic] funds over 100 times. Wiring high yield [another offering] funds for payroll, Africa, etc. is a crime."

32.    Other emails from Wextrust Securities reveal that investors in the GSA Offering have complained to the Defendants that they have not received payments on their GSA Offering investments. (*See* Ex. 50 (Email exchange, dated May 1-2, 2008, between Tennant and Cafazzo); Ex. 51 (Email exchange, dated April 7-8, 2008 between Tennant and the Lindquists).) These emails indicate that the Defendants, rather than seeking to repay the GSA Offering investors using funds raised in other offerings (as they have done in other offerings), have instead tried to fabricate excuses for their failure to pay investor distributions. (Exs. 50 (Email chain, dated May 1-2, 2008, between B. Tennant and investor F. Cafazzo) and 51 (Email chain, dated April 7-8, 2008, between B. Tennant and investors Karl and Karen Lindquist).) For example, on May 1, 2008, an investor in the GSA Offering sent an email to Bryan Tennant, the head of investor

services at Wextrust Securities, stating: "The lack of disclosure invites suspicion. Something as simple as how you schedule distributions or why they never come on a consistent date .... Any more questions are pointless; however there has to be some regulatory body or statute that requires diligence on Wextrust's part to inform me why there are delays or why checks NEVER arrive with any consistency." The next day, Tennant responded: "Distributions are made at such time as cash from the underlying properties is available. Unlike a debt instrument, such as a bond, your equity ownership interest does not require payment by a date certain." (Ex. 50 (Email chain, dated May 1-2, 2008, between B. Tennant and investor F. Cafazzo).) Information retrieved by the staff of the Commission from Wextrust Securities show that the GSA investors and others have had distributions cease from approximately February 2008. The defendants in July again started paying distributions to at least some GSA investors.

### 2. Crowne-Phoenix Offering

33.    According to records the Examination Staff retrieved from Wextrust Securities, Crowne-Phoenix Investors LLC ("CP Investors") is a real estate LLC that the Defendants formed to acquire a "membership interest" in Crowne-Phoenix Holdings LLC ("CP Holdings".) According to the Crowne-Phoenix Investors private placement memorandum dated August 8, 2007 ("Crowne-Phoenix PPM"), marked as Exhibit 21, CP Holdings was formed to acquire, develop, operate and sell a Crowne Plaza branded hotel in Phoenix, Arizona. (Ex. 21 (Crowne-Phoenix PPM) at 4.)

34.    Crowne-Phoenix Managers, LLC is the manager of CP Investors. (Ex. 21 (Crowne-Phoenix PPM).) The Crowne-Phoenix PPM represents that Defendant Byers is the President of Crowne-Phoenix Managers. (Ex. 21 (Crowne-Phoenix PPM) at 28.)

Defendant WEP is the manager of Crowne-Phoenix Managers and Axela is the common member in Crowne-Phoenix Investors. Axela is also the property manager for the hotel. (Ex. 21 (Crowne-Phoenix PPM) at 4, 28.)

35.    Defendants Byers and Shereshevsky, together with Defendants Wextrust, Axela and WEP, control the issuer, CP Investors. (Ex. 21 (Crowne-Phoenix PPM) at 28-29.)

36.    The Crowne-Phoenix PPM represented that the issuer was seeking to raise $9.3 million to be used to pay part of the purchase of a hotel in Phoenix, Arizona, improvement of the hotel property, acquisition and closing fees, interest reserve and equity costs. (Ex. 21 (Crowne-Phoenix PPM) at 8.)  Specifically, the Crowne-Phoenix PPM represented that the $9.3 million raised from investors, together with a primary mortgage of approximately $21 million, would be used to pay the $24 million purchase price for the hotel, as well as to fund $3.6 million in required property improvements, acquisition costs, fees and the creation of an equity reserve. (Ex. 21 (Crowne-Phoenix PPM) at 8.)  Moreover, the Crowne-Phoenix LLC agreement, which was annexed to the PPM, specifically forbids any commingling of the funds raised in that offering. (Ex. 21 (Crowne-Phoenix PPM) at Limited Liability Company Agreement at 30, Article 10.5.)

37.    These statements in the Crowne-Phoenix PPM regarding the use of proceeds are false. Emails retrieved from Wextrust Securities reveal that the Defendants made transfers of funds shortly after the August 2007 offering had commenced:  In an October 9, 2007 email, marked as Exhibit 45, Shereshevsky instructed "the equity raisers that all funds for crowne plaza should now be sent to Norfolk, Wachovia effective immediately. All monies coming in should only be deposited into Wachovia account."

19

(Ex. 45 (Email, dated October 9, 2007, J. Shereshevsky to M. Mostofsky, S. Gabriel, R. Sabine and copy to S. Byers and T. Coorsh).) The Norfolk Wachovia account is where Wextrust maintains some of its house accounts as well as accounts for approximately 60 affiliated LLCs, among which it loaned to and borrowed from as indicated in the combined balance sheet attached as Exhibit 23. As recorded in a November 20, 2007 email from Wextrust's accounting department, marked as Exhibit 43, (1) in October and November 2007, Crowne-Phoenix "loaned" Wextrust $650,000 to fund Wextrust's payroll needs; (2) in October and November 2007, Crowne-Phoenix "loaned" Wextrust approximately $1 million "to fund partial distribution check funding;" and (3) in October 2007, Crowne-Phoenix "loaned" Wextrust $600,000 to fund or loan moneys to two other private placement entities, Guaranteed Depository Receipt Fund ("GDR") and Pure Africa Minerals LLC ("PAM".) (Ex. 43 (Email, dated November 20, 2007, from J. Edminston to S. Byers and copy to J. Shereshevsky and S. Gabriel).)

38.     In early 2008, the Defendants used money from other offerings to pay back the Crowne-Phoenix bank account. In an email dated February 25, 2008, marked as Exhibit 46, Byers told Shereshevsky that some of the money raised for a new offering, West 82nd Street LLC, was used to repay some of the deficit owed to CP Investors (emphasis added):

> We will be closing on W. 82nd [another LLC] very soon. We can use the money but obviously we used $1.1 million for the Gold Coast [another LLC] and *another $1.6 million for Crowne for which we raised but never paid back.*

39.     Significantly, the private placement memoranda for the West 82nd Street offering, marked as Exhibits 28 and 29, did not disclose to investors that some of the money raised would be loaned to other Wextrust affiliates. None of the documents I

retrieved from Wextrust Securities indicate that the Defendants disclosed to Crowne-Phoenix investors that the Defendants were using their funds for purposes other than the purchase of properties identified in the offering documents.

40.     Similar to the GSA PPM, the Crowne-Phoenix PPM makes incomplete statements regarding Defendant Shereshevsky's biography, stating that he is a "principal and integral part of Wextrust," and that Shereshevsky was "instrumental in the founding of Wextrust Securities." (Ex. 21 (Crowne-Phoenix PPM) at 29.) The Crowne-Phoenix PPM does not disclose Shereshevsky's prior felony conviction.

41.     Records the staff retrieved from Wextrust Securities show that Wextrust Securities acted as selling agent for the Crowne-Phoenix offering. (Ex. 21 (Crowne-Phoenix PPM) at unnumbered 2.) Other records from Wextrust Securities, marked as Exhibit 40, reveal that Defendant Shereshevsky and his wife received transaction-based compensation in the amount of $130,953, or approximately one percent of the funds raised by Wextrust Securities in connection with the Crowne-Phoenix offering. (Ex. 40 (Email dated April 9, 2008 from Sheran Gabriel (the Controller for Wextrust Private Equity Group) to Byers attaching property revenue and commission charts, at unnumbered 3).)    **3.     The Block III Offering**

42.     According to records the Staff retrieved from Wextrust Securities, Block III Mines & Minerals, LLC ("Block III") is a Virginia limited liability company organized to make a loan to and acquire an interest in a Namibian company, Deva Investments (Pty), Ltd., which owns the exploration and mining rights in a group of diamond mines in Namibia known as Block III. (Ex. 30 (Block III PPM) at i.)

43.     According to the private placement memorandum for the Block III

Offering, dated March 22, 2007 ("Block III PPM"), marked as Exhibit 30, Block III

Managers, LLC, a Virginia limited liability company, is the manager of Block III.  Block

III Managers is wholly-owned by Brandon Investments, LLC.  The Block III PPM

represents that Defendants Byers and Shereshevsky are the co-managers of Brandon

Investments, and that Brandon Investments is a wholly-owned subsidiary of Wextrust.

(Ex. 30 (Block III PPM) at 3-4.)

44.     Defendants Byers and Shereshevsky, together with Defendant Wextrust

and Brandon Investments, controlled the issuer, Block III.  (Ex. 30 (Block III PPM)

(Block III PPM) at 3-4.)

45.     According to the Block III PPM, the defendants sought to raise $11

million from investors in that offering. (Ex. 30 (Block III PPM) at 4.)  The Block III PPM

represents that the proceeds of the offering will be used as follows:  (a) $4.5 million

would be used for new equipment and operating capital; (b) $1.5 million would be used

to fund a reserve for a purchase option on two other mining locations; (c) $1.75 million

would fund an operating reserve; (d) $300,000 would pay legal and operating expenses;

and (e) approximately $2.95 million would be paid in fees to Wextrust and Wextrust

Securities. (Ex. 30 (Block III PPM) at 7.)  Moreover, the operating agreement attached to

the Block III PPM specifically limited the use of funds to expenses related to Block III.

(Ex. 30 (Block III PPM) Operating Agreement at 26, Article 10.5.)

46.     Within 9 months of the March 2007 offering, Defendants diverted the

proceeds to unauthorized uses.  The combined balance sheet from Wextrust Securities

(Ex. 23 at 16) shows that $3,990,910 of proceeds raised by Block III was "loaned" to

Wextrust.  None of the documents I retrieved from Wextrust Securities indicates that the Defendants disclosed to Block III investors that the Defendants were using their funds for purposes other than the five purposes described in the Block III PPM.

47.    Defendant Wextrust Securities acted as a selling agent in the Block III offering.  (Ex. 30 (Block III PPM) at unnumbered 2.)

48.    Like the Crowne-Phoenix offering, the Block III PPM describes Shereshevsky as a "principal and integral part of Wextrust," and states that Shereshevsky was "instrumental in the founding of Wextrust Securities."  (Ex. 30 at 20-21.)  Similarly, the Block III PPM does not disclose Shereshevsky's prior felony conviction.  (*Compare* Ex. 30 *with* Ex. 14.)

49.    According to records from Wextrust Securities, Defendant Shereshevsky and his wife received transaction based compensation of $249,577, or approximately two percent of the funds raised by Wextrust Securities, in connection with the Block III offering.  (Ex. 40 (Email dated April 9, 2008 from S. Gabriel to Byers attaching property revenue and commission charts, at unnumbered 4-5).)  The Shereshevskys also received $750,000 in bonuses in connection with the Block III offering.

### 4.    The Peoria Offering

50.    According to records the Examination Staff retrieved from Wextrust Securities, Peoria Office Investors LLC is a real estate limited liability company formed by the Defendants to own the sole membership interest in Peoria Office Holdings, LLC ("PO Holdings").  (Ex. 27 (Peoria PPM) at unnumbered 2.)  PO Holdings was formed to acquire and operate an office building in Peoria, Illinois.  Peoria Office Investors issued a PPM dated November 9, 2007 (the "Peoria Office PPM"), marked as Exhibit 27, seeking

to raise $4.7 million from 47 investors.

51.     According to the PPM, the manager of Peoria Office Investors is Peoria Office Managers, LLC.  Defendant Byers is the President of Peoria Office Managers. WEP is the manager of Peoria Office Managers.  (Ex. 27 (Peoria PPM) at 3.)

52.     Defendants Byers and Shereshevsky, together with Wextrust and WEP, controlled the issuer, Peoria Office Investors.  (Ex. 27 (Peoria PPM) at 3-4, 23-25.)

53.     The Peoria Office PPM represented to investors that the $4.7 million in proceeds expected to be raised, together with a mortgage of approximately $11 million, would be used to pay the $14.75 million purchase price and the remaining money would pay closing costs, legal fees, acquisition fees and equity costs.  (Ex. 27 (Peoria PPM) at 7.)  The Peoria Office limited liability agreement, which is annexed to the PPM, specifically forbids any commingling of the funds raised in that offering.  (Ex. 27 (Peoria PPM) at Limited Liability Agreement at 29, Article 10.5.)

54.     The evidence indicates that at the time their representations were made in the November 2007 Peoria PPM, it appears that the Defendants were planning to divert proceeds of the Peoria offering to Wextrust. The Wextrust combined balance sheet indicates that within one month of the Peoria offering – as of December 31, 2007 – Wextrust had "borrowed" approximately $1,048,860 from the Peoria Office Investors LLC offering proceeds.  (Ex. 23 (Email, dated May 3, 2008, from S. Gabriel to S. Byers attaching Wextrust Capital, LLC Combined Balance Sheet for year ending December 31, 2007) at 17.)

55.     Moreover, during that same time, November 2007, the principals controlling the Wextrust Entity Defendants openly discussed that the Wextrust Entity

Defendants were operating at a loss of $1 million per month and that the diversion of funds from offerings would be necessary to meet payroll and other expenses of the various Wextrust Entities. (Ex. 47 (Email dated November 19, 2007 from J. Shereshevsky to a Wextrust principal and copied to S. Byers).)

56.    None of the documents I retrieved from Wextrust Securities indicates that the Defendants disclosed to Peoria investors that the Defendants intended to use their funds for purposes other than the purchase of the office building identified in the offering documents.

57.    Defendant Wextrust Securities acted as the selling agent for the Peoria Office offering. (Ex. 27 (Peoria PPM) at unnumbered 2.)

58.    As with the Crowne-Phoenix and Block III Offering documents, the Peoria Office Investors PPM describes Shereshevsky as a "principal and integral part of Wextrust," and states that Shereshevsky was "instrumental in the founding of Wextrust Securities." (Ex. 27 (Peoria PPM) at 25.) The Peoria Office Investors PPM does not disclose Shereshevsky's prior felony conviction. (*Compare* Ex. 27 *with* Ex. 14.)

59.    Records from Wextrust Securities reveal that in 2007, Defendant Shereshevsky and his wife received $59,462 in transaction-based compensation, or approximately two percent of the funds raised by Wextrust Securities, in connection with the Peoria Office Investors offering. (Ex. 40 (Email dated April 9, 2008 from S. Gabriel to Byers attaching property revenue and commission charts, at unnumbered 3).)

**5.    Misrepresentations in Other Offerings**

60.    Emails among the Individual Defendants retrieved from Defendant Wextrust Securities show that several other offerings conducted by the Defendants

25

involve the same type of misrepresentations concerning the intended use of proceeds. (Exs. 12 (Email, dated November 16, 2007, from a Wextrust principal to J. Shereshevsky (at vendorjoe@aol.com)) and 47 (Email chain, dated November 15-20, 2007, among S. Byers, J. Shereshevsky and a Wextrust principal).) Several emails reveal that during the past year the Individual Defendants have discussed the ever increasing deficit in funds owed to investors and the need to raise additional funds to pay prior investors. (Ex. 60 (Email, dated March 3, 2008, from J. Shereshevsky to S. Byers, P. Knight (Vice-President of Operations, Wextrust), and copy to J. Edminston (Accounting Specialist, Wextrust), M. Van der Merwe (CEO, Pure Africa Minerals Ltd. (Pty.) and T. Lewis (CFO, Pure Africa Holdings Ltd. (Pty.).) The Individual Defendants have staked their ability to extricate themselves from their predicament on the success of their diamond mining investments in Africa. (Ex. 47 (Email chain, dated November 15-20, 2007, among S. Byers, J. Shereshevsky and a Wextrust principal).)

61.    For example, in an email dated November 15, 2007, marked as Exhibit 47, a Wextrust principal confronted Shereshevsky about wiring $225,000 from the Crowne-Phoenix account to an account for Wextrust affiliates in South Africa, specifically, Pure Africa Minerals (Pty) Ltd., a South African company formed to own mining rights in South Africa and Namibia. The email indicates that the Wextrust principal's concern was that money was needed to pay down a loan from Broadway Bank in connection with the Crowne-Phoenix investment for which the Wextrust principal and Byers had signed a personal guarantee. (Ex. 47 (Email chain, dated November 15-20, 2007, among S. Byers, J. Shereshevsky and another Wextrust principal).) Shereshevsky's response reveals the widespread and deliberate commingling, the inability of the company to make payroll

without loans, and that African investments were the "only hope" for getting the

Individual Defendants out of the "mess" they're in. Shereshevsky responded, in part, to

the Wextrust principal (emphasis added):

> U have no idea what u r talking about. *Wextrust borrowed about a month ago 750,000 from Skelton coast* [in Africa]. *Now we needed it so we took back 250,000. we [sic] are still owed 450,000 on that and I will continue to take it out until it is paid.*

The Wextrust principal forwarded this email to Byers, stating (emphasis added):

> *Why are we paying money to Africa before pay back Broadway Bank.* This is crazy. We both signed a personal guarantee here. Not comfortable with Joe [Shereshevsky] having Carte Blance with the company's $$$$. If this continues, I will ask for a forensic audit.

The Wextrust principal then forward his email to Byers to Shereshevsky, who responded

in part (emphasis added):

> *As of today the company owes Africa about 575,000 that is outstanding.* The company owes me quite a bit of money including 200,000 that I lent them this morning so we can cover payroll including yours.

* * *

> The reason why it is more important to pay back Africa is because our only hope of getting out of our mess is Africa. Including you [The Wextrust principal]. We are in debt and I am working diligently to get us out of it. Go ahead and do a forensic audit. It will show that *we spend about 1,000,000 more a month than we make,* for the last 3 years especially the last 19 months. Now that you know that we take in less than we get by 1,000,000 a month do you still want your payroll??????? If not, please let me relieve you of it so you can do the right thing.

> [the Wextrust principal] . . . we are on the verge of becoming a very strong company. However even if we do it will be very hard going for the next 6 months to a year. *We may have to maneuver and do things that maybe we would not do if we were cash rich.* You want to bicker, go ahead and bicker. It won't do anything for us. You want to be a team man then show it.

27

(Ex. 47.)

62.    Emails retrieved from Wextrust Securities, marked as Exhibits 50-55, also reveal that investors are complaining that payments to them are being delayed or not paid, and they are concerned about their investments.  To all the queries, a representative from Wextrust Securities has responded without disclosing that Wextrust was running a deficit and was using funds from other entities to make payments to prior investors. (Exs. 50-55.)  Behind the scenes, the Individual Defendants have engaged in frantic communications to drum up money to pay investors.  (Exs. 24-25, 46-49, 60-61.)

63.    I have also reviewed an investor complaint filed with the Illinois Office of the Attorney General on May 13, 2008, a copy of which is marked Exhibit 78, in which the investor states that he "smells a rat" and that "This is smelling like a giant PONZI scheme.  My belie[f] is that Wextrust could be playing a huge, financial shell game. Their financial situation may be so bad that they're delaying distributions to earn the float, and paying our late distributions out of new investor dollars.  I fear their house of cards is about to collapse, leaving investors holding the bag."

## **Ongoing Offerings**

64.    The Defendants are currently in the midst of conducting at least four offerings in investments or instruments which are securities in the form of investment contracts, notes or other evidence of indebtedness: (i) Drake Oak Brook Investors, LLC; (ii) a note offering by Defendant WEP (the "GSPN"); (iii) 625 Paragon Investors, LLC ("625 Paragon"); and (iv) ATM II.  (Exs. 32-35.)

65.    The Drake Oak Brook offering commenced on November 10, 2007 and seeks to raise $14.5 million purportedly to acquire indirectly and develop a Wyndham

branded hotel. (Ex. 34 (Drake PPM).) According to an investor list for the Drake

offering that indicates amounts committed and received marked as Exhibit 56, as of July

22, 2008, the offering has raised approximately $11.6 million, with one investor investing

$100,000 on July 21, 2008. (Ex. 75 (Drake Oak Brook Investors, LLC Account

Statement showing investment made on July 21, 2008) at 2.)

66.    The GSPN offering began in December 2007 and as of July 15, 2008 had

raised approximately $4.7 million. (Ex. 57 (GSPN Investor List with amounts committed

and received) at unnumbered 2.) The private placement memorandum represents that the

proceeds will be used to fund short-term loans to entities affiliated with WEP to fund

security deposits, pay up-front fees and costs related to property acquisitions, provide

bridge loans, and provide financing for tenant improvement costs and construction on

currently owned real estate. (Ex. 35 (WEP PPM) at 5.)

67.    The 625 Paragon offering commenced on or about April 17, 2008, seeking

to raise $4.8 million from investors to acquire indirectly and develop a residential

complex in Chicago, Illinois. (Ex. 32 (625 Paragon PPM).) The 625 Paragon private

placement memorandum represents that the offering proceeds will be used to make a $3

million contribution to acquire an interest in Paragon/Division LLC and for placement

fees and syndication costs, a development fee, and a "preferred return reserve." (Ex. 32

(625 Paragon PPM) at 8.) According to an investor list for the 625 Paragon offering that

indicates amounts committed and received, marked as Exhibit 58, as of July 22, 2008, the

offering has raised approximately $1,015,000, with one investor investing $100,000 on

July 2, 2008 and another investing $100,000 on July 10, 2008. (Ex. 76 (625 Paragon

Investors, LLC Account Statement showing investments made on July 2, 2008) at 2; Ex.

77 (625 Paragon Investors, LLC Account Statement showing investments made on July 10, 2008) at 2.)

68.    ATM II, commenced on April 24, 2008, seeks to raise $25 million from investors to acquire 10% of Wextrust's interest in a Wextrust affiliate, a South African entity called Pure Africa Minerals (Pty) Ltd.  According to an investor list for the ATM II offering that indicates amounts committed and received, marked as Exhibit 59, as of July 22, 2008, ATM II has raised just over $1 million with one investor making a $250,000 investment on June 18, 2008.

69.    I have reviewed emails retrieved from Wextrust Securities, which show that Byers and Shereshevsky intend to divert moneys raised from the ATM II offering to other investment entities in order to clean up and meet obligations of other Wextrust Entities.  Significantly, a March 18, 2008 email retrieved from Defendant Wextrust Securities, marked as Exhibit 61, shows that Shereshevsky and Byers were well aware of improper activities they were engaged in (emphasis added):

> Please remember one thing.  That although I always take care of you and myself, my goal in this thing as I have always told you from day one, is to get [W]extrust out of all the shit before the end of 09 or 10 at the latest. that is my primary concern. *We have faked it until we made it for long enough and now we must clean up.*

(Ex. 61.)

70.    An email retrieved from Wextrust Securities and marked as Exhibit 25 reveals that as recently as July 2, 2008, Shereshevsky was stating, "We are in business. We are raising money.  We received more commitments today on atm, drake and paragon to the rune [sic] of over 2.5 million."

### Over-Raising In Several Offerings

71.    The Defendants have also engaged in a tactic they call "over-rasing" in

several offerings, using excess proceeds raised for purposes contemplated in the offering documents. That is, they are selling more than 100 percent of the interests in many of their LLC Entities. Wextrust Securities' records confirm that the actual amount raised in at least nineteen offerings exceeds the total amount that the Defendants represented they would raise in the various private placement memoranda by more than $20 million. (Ex. 3 (Offerings Spreadsheet) at 5; Ex. 36 (Wextrust Securities Schedule B, a chart detailing, among other things, amounts offered and actually raised by the Defendants through securities offerings).) The various private placement offering documents that I have reviewed, and which the Examination Staff retrieved from Wextrust Securities, do not disclose to investors the consequence of such over-raising, such as the dilution of their interests. (*See* Exs. 20-21, 26-35.) In reviewing the various documents and emails retrieved from Wextrust Securities, I have not found any communications in which the Defendants inform investors that the amount they have invested as a percentage to any particular offering has been diluted by over-raising, or inform investors of the use of over-raised funds.

72.     Emails obtained during the Examination show that the purpose of the over-raising was to supplement the Defendants' cash flow needs. For example, in an April 11, 2008 email to Byers, Shereshevsky requests a short telephone conversation to discuss certain agenda items, one of which is "Ideas for cash to survive until I finish this underwriting." Later that same day, Shereshevsky sends a "follow up" email to Byers, stating, "We have to do some old fashion over raising, raise for the GDR [the predecessor to the GSPN note] and High Yield (on shore) [another PPM] to get through these months." (Ex. 48 (Email chain, dated April 11, 2008, between J. Shereshevsky and S.

Byers).)  Byers' view that over-raising translates into "profits" is set out in an email to

Shereshevsky on March 12, 2008, in which he states:

> Also, a big part of what we do is make money, profit, by raising more than
> the minimum that is required.  Yes, it needs to be in reason but we have to
> have the ability to do this.  We must determine with our accountants how
> we book and treat this and Coorsh [the then-current CFO] can either get in
> line or get out of the way.

(Ex. 49 (Email chain, dated March 10-12, 2008, between S. Byers and J. Shereshevsky).)

### Failure To File Proper BD Forms
### With the Commisson And Pass Licensing Exams

73.    The Examination that I and other members of the Examination Staff

conducted of Wextrust Securities also revealed that Wextrust Securities, Shereshevsky

and Byers have committed various broker-dealer filing, registration and licensing

violations.

74.    First, Section 15 of the Securities and Exchange Act of 1934 ("Exchange

Act") and rules thereunder require Defendant Wextrust Securities, a registered broker-

dealer, to file a Form BD with the Commission and disclose to the Commission required

information such as (1) the identity of control persons for the broker-dealer; and (2)

whether it or any such control persons have been convicted of a felony in the past ten

years.

75.    Wextrust Securities' broker-dealer registration Form BD, dated July 10,

2007, fails to reveal that Shereshevsky is a control person associated with Wextrust

Securities.  (Ex. 11 (Wextrust Securities Broker-Dealer Registration Form BD) at 7-8.)

Some of the private placement memoranda, such as Crowne-Phoenix, dated August 8,

2007, tout that "Mr. Shereshevsky was instrumental in the founding of Wextrust

Securities, LLC, which is a licensed broker-dealer with registered representatives in the

U.S. as well as parts of Europe and Israel." (Ex. 21 (Crowne-Phoenix PPM) at 29.) The Forms BD filed with the Commission also fail to disclose Shereshevsky's criminal conviction in June 2003, even though the forms require felonies committed in the past ten years to be disclosed.

76.     As evidenced by emails and other records at Wextrust Securities, Shereshevsky has been actively involved in management and control of Wextrust Securities. (*See e.g.*, Ex. 66 (Email chain wherein Shereshevsky terminates the draw of a Wextrust registered representative for performance reasons.) Wextrust Securities' Form BD reveals that, directly or indirectly through the Byers Family Partnership, Byers is a control person. (Ex. 11 (Wextrust Securities Broker-Dealer Registration Form BD) at 7-8.)

77.     Second, Section 15(a) of the Exchange and rules thereunder require any individual or entity offering or selling securities in exchange for compensation to either register with the Commission as a broker, or properly associate with a registered broker-dealer.

78.     Emails I have reviewed that were retrieved from Wextrust Securities demonstrate that Shereshevsky is involved in soliciting investors to invest in the private placement offerings and that Shereshevsky has been paid transaction-based compensation for having solicited numerous investors. (Exs. 15 and 16 (Emails identifying Shereshevsky as a representative of Wextrust Securities).)

79.     Shereshevsky and Byers, who are both acting as brokers by effecting one or more securities transactions for investors, failing to register with the Commission as brokers, or alternatively, to the extent they engaged in such activity while associated with

Wextrust Securities (a registered broker), Shereshevsky and Byers failed to register Shereshevsky and Byers with FINRA as being associated with Wextrust Securities.

80.    Third, Section 15(a) of the Exchange Act and rules thereunder require all individuals associated with a registered broker-dealer who are involved in the solicitation of investments of securities or management to take and pass proper licensing exams.

81.    Records from FINRA show that Byers and Shereshevsky have not taken or passed any appropriate licensing exams, such as the Series 7 exams (for registered representatives) or the Series 24 exam (for principals of a broker-dealer.)

82.    While not properly registered or properly associated with a registered broker, nor having passed any licensing exams, Shereshevsky received transaction based commissions in connection with sales by Wextrust Securities.  For example, in 2007 Shereshevsky and his wife unlawfully received:

- $9,890, or approximately 2.2 percent of commissions based on $457,000 raised by Wextrust Securities for GSA.  (Ex. 40 at unnumbered 2 of chart attached to email);

- $130,953, or approximately 1.25 percent of the funds raised by Wextrust Securities in connection with the Crowne-Phoenix offering.  (Ex. 40 at unnumbered 2 of chart attached to email);

- $249,577, or approximately 2.2 percent of the funds raised by Wextrust Securities, as well as an additional $750,000 in bonuses, in connection with the Block III offering.  (Ex. 40 at unnumbered 4-5 of chart attached to email); and

- $59,462, or approximately 2.0 percent of the funds raised by Wextrust Securities, in connection with the Peoria Office Investors offering.  (Ex. 40 at unnumbered 2 of chart attached to email.)

83.    In an email exchange dated April 9-10, 2008 and marked as Exhibit 24, Byers and Shereshevsky have acknowledged that Shereshevsky received commissions for soliciting investors.  (Ex. 24 at 1, 2 and 4.)  The email exchange further indicates that Defendants

Byers and Shereshevsky knew it was wrong to conceal Shereshevsky's role in soliciting investors. Instead of disclosure, Byers suggested they "take all history into a positive" by calling Shereshevsky a "Risk Specialist" and compensating him for commissions in another way (emphasis added):

> My recommendation is that nothing should be on your card, just your name, and your position should be "Risk Specialist". Using that can take all history into a positive. Furthermore, you bring in potential investors and you tell them "what you told management" about the positive AND the RISKS and then turn them over to Mike or someone with a series 7. On compensation, we will have to rework. You will have to get paid salary plus bonus and then ownership distribution through the partnership interests. *Fees and % of fees for raising money will have to stop or we will be shut down. Take it out another way.*

(Ex. 24 at 3-4.)

84.    Finally, while Defendant Byers is listed as being, indirectly or directly, a control person at Wextrust Securities on the Forms BD filed with the Commission, Byers also has not taken and passed any licensing exams required to manage a broker-dealer (the Series 24) or solicit investments from investors (the Series 7.)

I declare under penalty of perjury that the foregoing is true and correct.

Executed:     New York, New York
              August 10, 2008

                              *Tamara Heller*
                              Tamara R. Heller

**Exhibit List to Declaration of Tamara R. Heller**
*Exhibits Contained in Separately Bound Volumes 1, 2 and 3*

1.   Organization Chart for Wextrust Capital, LLC.

2.   Wextrust Securities Annual Audited Report for year ending 12/31/07.

3.   Offerings Spreadsheet.

4.   Investors Spreadsheet.

5.   Wextrust Affiliated Limited Liability Companies Spreadsheet.

6.   Wextrust Equity Partners, LLC Private Placement Memorandum, dated December 13, 2007.

7.   Email, dated July 20, 2007, from S. Byers to W. Turner, J. Shereshevsky, M, Mostofsky and copy to P. Adrian.

8.   Email chain, dated September 20, 2007, among S. Byers, W. Turner, J. Shereshevsky, M. Mostofsky and B. McClung.

9.   Excerpts from FINRA's Central Records Depository for Steven W. Byers.

10.  Excerpts from FINRA's Central Records Depository for Wextrust Securities.

11.  Wextrust Securities Broker-Dealer Registration Form BD.

12.  Email, dated November 16, 2007, from Amnon Cohen to J. Shereshevsky (at vendorjoe@aol.com).

13.  *United States v. Shereshevsky*, 94 Cr. 248 (CSH), 2003 U.S. Dist. Lexis 10868 (S.D.N.Y. June 23, 2003).

14.  S.D.N.Y. Criminal Docket, *USA v. Shereshevsky*, Case No. 1:94-cr-00248-CSH-1, Filed 5/5/94.

15.  Email, dated August 27, 2007, from R. Sabine to S. Reyes, M. Mayo, C. Hugo, B. Tennant, M. Mostofsky and copy to S. Jacobowitz, A. Ingber, attaching list of internal codes for representatives for Wextrust Securities.

16.  Email, dated January 3, 2008, from B. Tennant to a Wextrust internal email account, attaching a list of investors for Gold Coast, LLC.

17.  Snapshot from www.wextrust.com.

18.     Wextrust Capital, LLC Consolidated Financial Statements for the year ending
        December 31, 2006.

19.     Schedule of Control of Wextrust Securities, LLC.

20.     Axela Baltimore Investors, LLC Private Placement Memorandum, dated May 8,
        2008.

21.     Crowne-Phoenix Investors, LLC Private Placement Memorandum, dated August
        8, 2007.

22.     Email, dated November 15, 2007, from S. Byers to E. Coppoolse.

23.     Email, dated May 3, 2008, from S. Gabriel to S. Byers attaching Wextrust
        Capital, LLC Combined Balance Sheet for year ending December 31, 2007.

24.     Email chain, dated April 9-10, 2008, between S. Byers and J. Shereshevsky.

25.     Email chain, dated July 2, 2008, between J. Shereshevsky and A. Cohen.

26.     GSA Investors, LLC Private Placement Memorandum, dated November 22, 2005.

27.     Peoria Office Investors, LLC Private Placement Memorandum, dated November
        9, 2007.

28.     West 82nd Street Investors, LLC Private Placement Memorandum, dated October
        25, 2006.

29.     West 82nd Street Holdings, LLC Private Placement Memorandum, dated
        November 14, 2006.

30.     Block III Mines & Minerals, LLC Private Placement Memorandum, dated March
        22, 2007.

31.     IDEX Mines & Minerals, LLC Private Placement Memorandum, dated January
        16, 2006.

32.     625 Paragon Investors, LLC Private Placement Memorandum, dated April 17,
        2008

33.     ATM II, LLC Private Placement Memorandum, dated April 24, 2008.

34.     Drake Oak Brook Investors, LLC Private Placement Memorandum, dated
        November 10, 2007.

35.  Wextrust Equity Partners, LLC Private Placement Memorandum for Guaranteed Subordinated Promissory Notes dated December 13, 2007.

36.  Wextrust Securities Schedule B, a chart detailing, among other things, amounts offered and actually raised by the Defendants through securities offerings.

37.  Wexford Principal Protected Fund I, LLC Private Placement Memorandum, dated September 30, 2006.

38.  Wextrust Capital, LLC Combined Balance Sheet as of December 31, 2007, with SEC calculations.

39.  GSA Investors, LLC Investor List.

40.  Email, dated April 9, 2008, from S. Gabriel to S. Byers attaching property revenue and commission charts.

41.  Block III Mines & Minerals, LLC Investor List.

42.  Peoria Office Investors, LLC Investor List.

43.  Email, dated November 20, 2007, from J. Edminston to S. Byers and copy to J. Shereshevsky and S. Gabriel.

44.  Crowne-Phoenix Investors, LLC Investor List.

45.  Email, dated October 9, 2007, J. Shereshevsky to M. Mostofsky, S. Gabriel, R. Sabine and copy to S. Byers and T. Coorsh.

46.  Email, dated February 25, 2008, from S. Byers to J. Shereshevsky.

47.  Email chain, dated November 15-20, 2007, among S. Byers, J. Shereshevsky and A. Cohen.

48.  Email chain, dated April 11, 2008, between J. Shereshevsky and S. Byers.

49.  Email chain, dated March 10-12, 2008, between S. Byers and J. Shereshevsky.

50.  Email chain, dated May 1-2, 2008, between B. Tennant and investor F. Cafazzo.

51.  Email chain, dated April 7-8, 2008, between B. Tennant and investors Karl and Karen Lindquist.

52.  Email chain, dated April 8-9, 2008, between B. Tennant and investor L. Herbst.

53.    Email chain, dated April 8, 2008, between B. Tennant and investors John and Mary Anne Miller.

54.    Email chain, dated April 5 and 8, 2008, between B. Tennant and investor K. Rathbone.

55.    Email chain, dated April 7-8, 2008, between B. Tennant and investor W. Barnett.

56.    Drake Oak Brook Investors, LLC Investor List.

57.    Guaranteed Subordinated Promissory Notes Investor List.

58.    625 Paragon Investors, LLC Investor List.

59.    ATM II, LLC Investor List.

60.    Email, dated March 3, 2008, from J. Shereshevsky to S. Byers, P. Knight, and copy to J. Edminston, M. Van der Merwe and T. Lewis.

61.    Email chain, dated March 18-19, 2008, between J. Shereshevsky and S. Byers.

62.    Email, dated February 15, 2008, from M. Mostofsky to J. Shereshevsky ("Yossi").

63.    Email, dated December 6, 2007, from B. Tennant to P. Knight.

64.    Email chain, dated February 6-8, 2008, among E. Coppoolse, S. Byers, and T. Coorsh.

65.    Email, dated June 2, 2008, from J. Shereshevsky to S. Byers and A. Cohen.

66.    Email chain, dated March 11-13, 2008, among R. Rodriguez, S. Byers, J. Shereshevsky and M. Mostofsky.

67.    Entity and Status Report.

68.    List of Wextrust Private Placements.

69.    Chart of preferred returns for Defendants' securities offerings.

70.    GSA Lease Inventory as of July 2008, from www.gsa.gov.

71.    Email, dated March 3, 2008, from J. Edmiston, attaching email from Shereshevsky, dated January 24, 2008, which attaches a Commission Schedule.

72. Email exchange, dated April 2-3, 2008, showing Shereshevsky is slated to participate in equity raising discussion.

73. Schedule C of Wextrust Branch Offices.

74. Excerpt from Wextrust Securities CRD indicating registration status effective as of March 2006.

75. Drake Oak Brook Investors, LLC Account Statement showing investment made on July 21, 2008.

76. 625 Paragon Investors, LLC Account Statement showing investments made on July 2, 2008.

77. 625 Paragon Investors, LLC Account Statement showing investments made on July 10, 2008.

78. Investor complaint filed with the Illinois Office of the Attorney General on May 13, 2008.

# EXHIBIT

# A

## DECLARATION OF WILLIAM SCHORSCH

I, William Schorsch, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I am 52 years old and am a resident of Lake Forest, Illinois. I am a partner with Simborg Development ("Simborg") located in Homewood, Illinois, a company that purchases, owns and develops commercial real estate. My office is located at 694 Grandview Lane, Lake Forest, Illinois, 60045. I am fully familiar with the facts and circumstances that follow.

2.      Prior to November, 2005, Simborg owned all of the following properties either directly or through the wholly owned limited liability companies or partnerships listed below:

> (i)      117 South Scatterfield Road, Anderson, Indiana the ("Scatterfield Property"), through Anderindy LLC located in Homewood, Illinois;
>
> (ii)     10 South 2nd Street, Lafayette, Indiana (the "South 2nd Property"), through INDYLAF SSA Partnership located in Homewood, Illinois;
>
> (iii)    231 East Waterfall Drive, Elkhart, Indiana (the "East Waterfall Property"), through Elkindy, LLC located in Homewood, Illinois;
>
> (iv)     6011 Odana Road, Madison, Wisconsin (the "Odana Road Property"), through Madison SSA located in Homewood, Illinois;
>
> (v)      310 East Knapp Street, Milwaukee, Wisconsin (the "East Knapp Property"), through 1300 Broadway LLC located in Homewood, Illinois;

     (vi)   8658 South Sacramento, Chicago, Illinois (the "South Sacramento Property"), through the Simborg 3000 Partnership located in Homewood, Illinois;

     (vii)   4121 Southpoint Boulevard, Jacksonville Florida (the "Southpoint Property"), though JIN Partnership.

3.    Simborg continues to own the properties identified in subparagraphs (ii) the South 2nd Property, (iv) the Odana Road Property, and (vi) the South Sacramento Property.

4.    On or about the following dates, Simborg sold the following properties to the entities listed below:

     (i)   On or about March 19, 2007, Simborg sold the Southpoint Property to Dr. Rajeesh Aliani;

     (ii)   On or about September 4, 2007, Simborg sold the Scatterfield Property to Turkeyland LP located in Lincoln, California;

     (iii)   On or about June 28, 2007, Simborg sold the East Waterfall Property to Dave and Kathryn McAlpin of Granger, Indiana;

     (iv)   On or about January 18, 2008, Simborg sold the East Knapp property to Morristown Plaza Associates located in Hamburg, New Jersey.

5.    In connection with the ownership or sale of these properties, Simborg has not received any inquiries, communications or bids on properties from any individuals or entities named: Wextrust Capital, Wextrust Securities, GSA Investors LLC, Steven Byers, Joseph Shereshevsky, Joseph Heller or Amnon Cohen.  Except for inquiries by

other law enforcement agencies in June 2008, I have never heard of these entities or individuals.

I declare under penalty of perjury that the foregoing is true and correct.

Executed:     July 17, 2008
              Lake Forest, Illinois

                                        William Schorsch

# EXHIBIT

# B



## DECLARATION OF NANETTE L. WAUCHOP

I, Nanette L. Wauchop, pursuant to 28 U.S.C. § 1746, declare as follows:

      1.     I am 52 years old and am a resident of Highland, Indiana. I am fully familiar with the facts and circumstances that follow.

      2.     I am employed as a Realty Services Officer for the General Services Administration in Chicago, Illinois. My office is located at 230 South Dearborn Street, Chicago, Illinois and manages the program for all real estate leasing transactions for all GSA properties located in Illinois, Indiana, Ohio, Michigan, Minnesota and Wisconsin. As such, my office had overall program responsibility for all leasing transactions involving buildings located at 117 South Scatterfield Road, Anderson, Indiana the ("Scatterfield Property"), 6011 Odana Road, Madison, Wisconsin (the "Odana Road Property"), 8658 South Sacramento, Chicago, Illinois (the "South Sacramento Property"), 10 South 2nd Street, Lafayette, Indiana (the "South 2nd Property"), 310 East Knapp Street, Milwaukee, Wisconsin (the "East Knapp Property"), and 231 East Waterfall Drive, Elkhart, Indiana (the "East Waterfall Property"). The following information is based on my review of the GSA files for each of these properties.

      3.     The GSA currently leases the Scatterfield Property from Turkeyland LP located in Lincoln, California. During the period November 2005 through September

2007, GSA leased the Scatterfield Property from Anderindy LLC located in Homewood, Illinois.

4.    Based on a review of the file contained in GSA's Chicago, Illinois office, the Scatterfield Property was not owned or leased by Wextrust Capital, GSA Investors, LLC, or any entity affiliated with these entities during the period November 2005 through the present.

5.    The GSA has leased the Odana Road Property from an entity known as Madison SSA located in Homewood Illinois since at least November 2005.

6.    Based on a review of the file contained in GSA's Chicago, Illinois office, the Odana Road Property was not owned or leased by Wextrust Capital, GSA Investors, LLC, or any entity affiliated with these entities during the period November 2005 through the present.

7.    The GSA has leased the South Sacramento Property from American National Bank & Trust as Trustee for the Simborg 3000 Partnership located in Homewood Illinois since at least November 2005.

8.    Based on a review of the file contained in GSA's Chicago, Illinois office, the South Sacramento Property was not owned or leased by Wextrust Capital, GSA Investors, LLC, or any entity affiliated with these entities during the period November 2005 through the present.

9.    The GSA has leased the South 2nd Property from INDYLAF SSA Partnership in Homewood Illinois since at least November 2005.

10.    Based on a review of the file contained in GSA's Chicago, Illinois office, the South 2nd Property was not owned or leased by Wextrust Capital, GSA Investors,

LLC, or any entity affiliated with these entities during the period November 2005 through the present.

11.    The GSA currently leases the East Knapp property from an entity known as Morristown Plaza Associates located in Hamburg, New Jersey. During the period November 2005 through January 2008, the GSA leased the East Knapp property from an entity known as 1300 Broadway LLC, Simborg Development in Homewood, Illinois.

12.    Based on a review of the file contained in GSA's Chicago, Illinois office, the East Knapp Property was not owned or leased by Wextrust Capital, GSA Investors, LLC, or any entity affiliated with these entities during the period November 2005 through the present.

13.    The GSA currently leases the East Waterfall Property from Dave and Kathryn McAlpin of Granger, Indiana. During the period November 2005 through June 2007, the GSA leased the East Waterfall Property from Elkindy, LLC located in Homewood, Illinois.

14.    Based on a review of the file contained in GSA's Chicago, Illinois office, the East Waterfall Property was not owned or leased by Wextrust Capital, GSA Investors, LLC, or any entity affiliated with these entities during the period November 2005 through the present.

I declare under penalty of perjury that the foregoing is true and correct.

Executed:    June 30, 2008

Nanette L. Wauchop

3

# EXHIBIT

# C

## DECLARATION OF PATRICIA K. SINGLETON

I, Patricia K. Singleton, pursuant to 28 U.S.C. § 1746, declare as follows:

1.    I am 55 years old and am a resident of Coral Springs (Broward County), Florida. I am fully familiar with the facts and circumstances that follow.

2.    I am employed as a Contracting Officer for the General Services Administration in Sunrise, Florida. My office is located at 7771 W. Oakland Boulevard, Suite 119, Sunrise, Florida 33351 and conducts real estate leasing transactions for GSA properties. As such, my office is responsible for all leasing transactions involving a building located at 4121 Southpoint Boulevard, Jacksonville Florida (the "Southpoint Property") which the GSA currently leases from an entity known as Ailani North Dixie, LLC.

3.    The current GSA lease, dated November 24, 1997, in the Southpoint Business Park, has been leased from various entities. The Lease was entered into on November 24, 1997 between GSA and Mitchell Simborg. On February 5, 1998, Mr. Simborg entered into a partnership and the lease was changed to show a lessor name of J.I.N. Partnership. The lease became effective on April 15, 1999. From April 1999 through March 2007, GSA leased the Southpoint Property from J.I.N. Partnership. From March 2007 through the present, GSA has leased the Southpoint Property from an entity known as Ailani North Dixie, LLC.

4.    To the best of my knowledge, based upon a review of the GSA file for the Southpoint Property, during the period from April 1999 until March 2007 the Southpoint Property was owned JIN Partnership, and from March 2007 to the present, the Southpoint

Property has been owned by Aliani North Dixie LLC. GSA's files reflect these entities to be the sole owner of the Southpoint Property during the respective time periods.

5.    Based on a review of the file contained in GSA's Sunrise, Florida office, the Southpoint Property was not owned or leased by Wextrust Capital, GSA Investors, LLC, or any entity affiliated with these entities during the period April 1999 through the present.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed:    July 25, 2008

_Patricia K. Singleton_

2

3

**333 W. Wacker Dr.,**
**Suite 1600 Chicago, IL**
**60606**

| Fund Name | Deal Type | PPM | Total Amount of Offering | | Equity Raised | | | (2)-(1) WTC Database vs. Sch. B | (3)-(1) Per Schedule B | (2)-(5) PPM vs WTC Database or Other Source | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | (5) Per PPM | (1) Per Sch. B | (2) Per WTC Database (as of 06/20/08) | (3) Per Sch. B | (4) Per Other Source | | | | |
| 1250 S. Michigan Avenue, LLC | | yes | $ 660,000 | | $ 20,000 | | | | | | |
| 1250 S. Michigan LLC B | | no | | | $ | | | | | | |
| 1805 Highpoint | | no | | | $ 131,000 | | | | | | |
| 318 W. Adams/Escrow | | no | | | $ | | | | | | |
| 625 Paragon LLC | D | yes | $ 4,800,000 | $ 4,800,000 | $ 795,000 | $ 150,000 | | | | | |
| 47 Dean Street Investors | D | yes | $ 2,425,000 | $ 2,425,000 | $ 3,295,000 | $ 3,295,000 | | | | | |
| Advantage Regency Holdings | | no | | | $ 50,000 | | | | | | |
| ATM II LLC | | yes | $ 25,000,000 | $ 25,000,000 | $ 1,050,000 | $ 100,000 | | | | | |
| Banktech | | no | | | $ 300,000 | | | | | | |
| Belle Meade Centre Investors, LLC | | yes | $ 1,100,000 | | $ 1,456,700 | | | | | | |
| Block III Mines & Minerals, LLC | I | yes | $ 11,000,000 | $ 11,000,000 | $ 11,000,000 | $ 11,000,000 | | | | | |
| Bret Investors Skeleton Coast III | I | no | | $ 2,000,000 | $ 1,870,000 | $ 1,600,000 | | | | | |
| Bret Investors Skeleton Coast | I | no | | $ 6,000,000 | $ 6,153,397 | $ 6,151,381 | | | | | |
| Carl5ia Park LLC | | no | | | $ 475,000 | | | | | | |
| Clarksville Industrial Investors, LLC | I | yes | $ 1,100,000 | $ 1,100,000 | $ 1,100,000 | $ 1,100,000 | | | | | Other Source: 9/5/07 email from Marianne Mayo showing Clarksville is $50K overcommitted. |
| Crowne-Phoenix Investors LLC | I | yes | $ 9,300,000 | $ 9,300,000 | $ 9,303,004 | $ 9,303,004 | $ 9,498,005 | | | | Other Source: 2/8/08 email from Elmer Coppolose to Byers mentioned actual raise of $9,498,005 |
| Dean Street Investors LLC | D | yes | $ 3,000,000 | $ 3,000,000 | $ 26,949 | | | | | | |
| Dean Street Managers LLC | D | no | | $ 300,000 | $ - | $ 300,000 | | | | $ | |

333 W. Wacker Dr.,
Suite 1600 Chicago, IL
60606

| Fund Name | Deal Type | PPM | Total Amount of Offering (8) Per PPM | (1) Per Sch. B | Equity Raised (2) Per WTC Database (as of 06/30/08) | (3) Per Sch. B | (4) Per Other Source | (2)-(1) WTC Database vs. Sch. B | (3)-(1) Per Schedule B | (2)-(8) PPM vs WTC Database or Other Source | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Drake Oak Brook Investors LLC | I | yes | $ 14,500,000 | $ 14,500,000 | $ 11,447,742 | $ 8,751,438 | | | | | |
| East Point | | no | | | - | | | | | | |
| First Wyoming Investors, LLC | | yes | $ 6,750,000 | | $ 8,183,826 | | | | | | [shaded] 1 |
| Freedlac Holdings | | no | | | 790,000 | | | | | | |
| Freeport | | no | | | - | | | | | | |
| GDR 1 year @ 7.00 | Debt | | | | 1,012,828 | | | | | | 4/11/08 email from Byrn to Shestakovsky "we have to do some old fashion over |
| GDR 18 months @ 7.75 | Debt | | | | 207,909 | | | | | | reling, raise for the GDR & High Yield (on phone) to get through these months." |
| GDR 3 years @ 12.00 | Debt | | | | 4,356,152 | | | | | | On 7/3/08, the GDR 12% increased $100,000 although these funds were |
| GDR 3 years @ 9.00 | Debt | | | | 106,266 | | | | | | supposedly replaced by the GSPH funds. |
| GDR 8.5% Rollover | Debt | yes | $ 20,000,000 | | - | | | | | | |
| Gold Coast Investors LLC | | yes | $ 9,000,000 | | $ 12,381,263 | | | | | | [shaded] 1 |
| Grant Street Investors LLC | | yes | $ 6,500,000 | | $ 7,267,846 | | | | | | [shaded] 1 |
| GSA Investors, LLC | | yes | $ 9,200,000 | | $ 9,119,874 | | | | | | |
| GSPH 1 year @ 7.00 | Debt | yes | | $ 20,000,000 | 2,833,735 | $ 864,691 | | | | | |
| GSPH 18 months @ 7.75 | Debt | yes | | 20,000,000 | - | - | | | | | |
| GSPH 3 years @ 12.00 | Debt | yes | | 20,000,000 | 1,733,262 | $ 1,337,548 | | | | | |
| GSPH 3 years @ 9.00 | Debt | yes | | 20,000,000 | 131,796 | $ 130,000 | | | | | |
| Guaranteed Depositary Receipts | Debt | yes | | | 4,521,858 | | | | | | |
| Hammond Industrial Investors LLC | I | yes | $ 7,000,000 | 7,000,000 | 7,985,000 | $ 7,985,000 | | [shaded] | | [shaded] 1 | |
| Hamptons of Hinsdale Mortgage Fund I. | D | yes | $ 8,000,000 | 8,000,000 | 13,014,659 | $ 13,014,659 | | [shaded] | | [shaded] 1 | |
| High Yield Debt Fund II | Debt | | | | - | | | | | | |
| Highland Park | | no | $ 3,680,000 | | 4,287,083 | | | | | | [shaded] 1 Other Source: Total amount of offering of $3,680,000 is per Operating Agreement. |

333 W. Wacker Dr.,
Suite 1600 Chicago, IL
60606



| Fund Name | Deal Type | PPM | Total Amount of Offering — (5) Per PPM | (1) Per Sch. B | Equity Raised — (2) Per WTC Database (as of 06/30/08) | (3) Per Sch. B | (4) Per Other Source | WTC Database vs Other Source — (2)-(1) WTC Database vs. Sch. B | (3)-(1) Per Schedule B | (2)-(3) PPM vs WTC Database or Other Source | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Hilltop Apartments LLC | | | | | | | | | | | |
| Hilltop Ridge Apartments LLC | | | | | | | | | | | |
| Homer Glen Investors LLC | | yes | $ 1,720,000 | | $ 583,000 / 1,275,000 / 2,613,000 | | | | | | 1 |
| Hyde Park Investors, LLC | | no | $ 1,800,000 | | $ | | | | | | |
| IDEX Mines and Minerals LLC | | yes | $ 23,000,000 | | $ 28,000,000 | | | | | | 1 |
| Interstate Park Investors LLC | 1 | yes | $ 7,800,000 | $ 7,800,000 | $ 7,930,000 | $ 7,930,000 | | | | | 1 |
| 2400 McCle Investors, LLC | | no | $ 5,050,000 | | $ 2,170,377 | | | | | | Other Source: $5,050,000 Offering amount is per Investor Snapshot. |
| Midtown Estates | | | | | | | | | | | |
| Music Row Investors LLC | | no | $ 5,000,000 | | $ / | | | | | | |
| Myatt Holdings | | no | | | $ 1,600,000 | | | | | | |
| New Salem Investors LLC | | yes | $ 1,050,000 | | $ 1,100,000 | | | | | | 1 |
| Park Village Holdings LLC | | yes | $ 2,100,000 | | $ 2,130,980 | | | | | | |
| Peoria Office Investors LLC | 1 | yes | $ 4,700,000 | $ 5,200,000 | $ 5,040,806 | $ 4,990,000 | | | | | 1 |
| River's Edge Investors LLC | | yes | $ 3,080,000 | | $ 2,884,337 | | | | | | |
| Riverside Investors, LLC | | yes | $ 2,030,000 | | $ 1,935,581 | | | | | | |

1 The firm's Schedule B states that the offering amount was $5.2 MM which conflicts with the PPM which states $4.7. Overraise represents WTC database less PPM amount. 4/24/08 email from Marianne Mayo to Mozolsky indicates firm has overraised for Peoria.

333 W. Wacker Dr.,
Suite 1600 Chicago, IL
60606

| Fund Name | Deal Type | PPM | Total Amount of Offering | | Equity Raised | | | | Differences Among Other Sources | | | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | (3) Per PPM | (1) Per Sch. B | (2) Per WTC Database (as of 06/20/08) | (3) Per Sch. B | (4) Per Other Source | (2) - (1) WTC Database vs. Sch. B | (3) - (1) Per Schedule B | (2) - (3) PPM vs WTC Database or Other Source | |
| S. Pine Street Investors LLC | I | yes | $ 2,550,000 | $ 2,550,000 | $ 2,600,000 | $ 2,550,000 | |  | | | 1 |
| Shallowford Investors LLC | I | yes | $ 825,000.00 | $ 825,000 | 800,000 | | | | | | |
| Skeleton Coast Bret Investors LLC | I | no | | $ 3,000,000 | $ 3,000,000 | $ 3,000,000 | | | | | 1 |
| Tennessee Office Investors | I | yes | $ 3,650,000 | $ 3,650,000 | $ 4,250,000 | $ 5,050,000 | | | | | |
| Uptown Square LLC USPN 8.5% Rollover | Debt | | | | 490,000 | 521,048 | | | | | |
| | | | | | 557,516 | 682,036 | | | | | |
| West 62nd Street Holdings, LLC | D | yes | $ 8,470,000 | $ 8,470,000 | 417,036 | | | | | | |
| West 82 Street Investors, LLC | D | yes | $ 8,470,000 | $ 8,470,000 | 1,442,500 | $ 8,193,488 | | | | | Other Source: 12/10/07 Email from Shereshevsky to Byers mentions they "on west 82nd street we over raised by $400,000, not that bad, I thought 1st was worse." |
| West Brandon Investors LLC | | yes | 1,950,000 | | 2,518,612 | | | | | | |
| 2435 West Belmont Investors, LLC | | yes | 3,050,000 | | 3,550,220 | | | | | | 1 |
| Wes-New Orleans Westside Diversified Futures Fund I, LI | F | yes | $ 50,000,000 | $ 100,000,000 | 500,000 | | | | | | 1 |
| | | | | | 10,206,792 | $ 8,055,792 | | | | | |

333 W. Wacker Dr.,
Suite 1600 Chicago, IL
60606

| Fund Name | Deal Type | PPM | Total Amount of Offering (5) Per PPM | Total Amount of Offering (1) Per Sch. B | Equity Raised (2) Per WTC Database (as of 06/30/08) | Equity Raised (3) Per Sch. B | Equity Raised (4) Per Other Source | (2)-(1) WTC Database vs. Sch. B | (3)-(1) Per Schedule B | (2)-(5) PPM vs WTC Database or Other Source | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Westgate Diversified Offshore Futures I, LL | F | ? | ? | | $ 1,222,475 | | | | | | |
| Westgate Principal Protected Fund I, LL | F | yes | $ 50,000,000 | $ 100,000,000 | $ 3,230,000 | $ 3,230,000 | | | | | |
| Westgate Principal Protected Offshore I | F | ? | ? | | $ 225,000 | | | | | | |
| Wextrust High Yield Debt Fund I | Debt | | | | $ 15,908,877 | | | | | | |
| Wextrust High Yield Debt Fund III, LLC | Debt | yes | "Continuous Offerings" | $ 17,070,000 | $ 16,919,058 | $ 16,576,186 | | | | | |
| Wextrust High Yield Debt Offshore Fund | Debt | yes | | | $ 1,369,860 | | | | | | |
| Wextrust Qualified Investors LLC - Deau | D | | | | $ - | | | | | | |
| Workman Road Investors LLC | | yes | 750,000 | | $ 750,000 | | | | | | |
| York Road Investors LLC | | yes | $ 1,100,000 | $ - | $ 1,332,119 | $ 300,000 | | | | | 1 |
| | | | | $ 255,051,427 | $ 21,705,119 | | | | | | 19 |



333 W. Wacker Dr.,
Suite 1600 Chicago, IL
60606

| Fund Name | Deal Type | PPM | Address of Property | County of Property | Source of Address | State of Incorporation | Managing Agent (For Service) | Address of Managing Agent (For Service) | LLC's Description of Business |
|---|---|---|---|---|---|---|---|---|---|
| 1250 S. Michigan Avenue, LLC | | yes | 1250 S. Michigan Ave. Chicago, IL 60605 | Cook County | PPM | Illinois | Wexford Equity Partners | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 | 1250 S. Michigan Avenue, LLC will begin operations on July 1, 2003, with the purpose of owning a preferred equity interest in a condominiums property known as the Michigan Avenue Tower. The Company's legal structure was formed as an LLC under the laws of the State of Illinois on March 1, 2003. |
| 1250 S. Michigan LLC B | | no | | | | | | | |
| 1805 Highpoint | | no | | | | | | | |
| 318 W. Adams/Escrow | | no | | | | | | | |
| 625 Parapin LLC | D | yes | 625 West Division St, Chicago, IL 60610 | Cook County | PPM | Delaware | 625 Paragon Managers, LLC; WEP is "Manager" of the Manager; WEP is owned by WexTrust Capital. | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 | 625 Paragon Investors, LLC is a Delaware LLC organized to acquire a membership interest in ParagonDivision LLC (the "Venture"), a LLC formed to acquire and develop a residential complex which will consist of two towers totaling 241 condominiums located at 625 W. Division St., Chicago, IL. |
| 47 Dean Street Investors | D | yes | 47 Dean St., Brooklyn, NY 11201 | Kings County | PPM | Delaware | 47 Dean Street Managers, LLC; WEP is the "Manager" of the Manager; WEP is owned by WexTrust Capital | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 | 47 Dean Street Investors, LLC is a Delaware LLC organized to own a membership interest in 47 Dean Street Holdings, LLC (the "Venture"), a Delaware LLC formed to acquire and develop a ten-unit residential complex which will contain high-end condominiums located at 47 Dean St., Brooklyn, NY. |
| Advantage Regency Holdings | | no | 1600 Riverview Tower, Knoxville, TN 37902 | Knox County | Closing Statement | Tennessee | Michael Gorney | 380 N. Peters Rd., Knoxville, TN 37922 | |
| ATM II LLC | | yes | -- | -- | -- | Delaware | Brandon Investments, LLC which is wholly owned by Wextrust Capital LLC | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 | ATM II, LLC is a Delaware LLC whose sole purpose is to acquire an indirect 10% ownership in Pure Africa Minerals through the purchase of interests in related entities which in turn own PAM stock (interests). |
| Baxtech | | no | Memphis, TN | | 2007 Financials | | | | |
| Belle Meade Centre Investors, LLC | | yes | 24 White Bridge Rd., Nashville, TN 37205 | Davidson County | PPM | Illinois | Wexford Equity Partners | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 | Belle Meade Centre Investors, LLC will begin operations on February 1, 2004 with the purpose of owning Membership Units that give the investors interest in a 3-story, 30,570-sf, Class "A" office building known as Belle Meade Centre. |
| Block III Mines & Minerals, LLC | I | yes | | | PPM | Virginia | Block III Managers, which is 100% owned by Brandon Investments, Sheresbensky and Byers are the managers of Brandon. | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 | Block III Mines & Minerals, LLC is a Virginia LLC whose sole purpose is to make a loan to, and acquire a 35% equity interest in Deva Instruments, Ltd., a Namibian company, which the Manager believes currently controls 100% of the exploration and mining rights in Block III. |
| Brel Investors Skeleton Coast III | I | no | | | | | | | |
| Brel Investors Skeleton Coast | I | no | | | | | | | |
| Carlisle Park LLC | | no | | | | | | | |
| Clarksville Industrial Investors, LLC | I | yes | 780 International Blvd., Clarksville, TN 37040 | Montgomery County | PPM | Delaware | Clarksville Industrial Managers, LLC which is in turn owned and controlled by WEP | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 | Clarksville Industrial Investors, LLC is a Delaware LLC organized to own the sole membership interest in Clarksville Industrial Holdings, LLC a Delaware LLC formed to acquire, operate, sell, refinance, mortgage and otherwise use and own for profit a 150,000 square foot industrial facility and to develop an additional 90,000 square foot industrial facility in Clarksville, TN. |
| Crowne-Phoenix Investors LLC | I | yes | (Crowne Plaza hotel) 2532 West Peoria Ave Phoenix, AZ 85029 | Maricopa County | PPM | Delaware | Crowne-Phoenix Managers, LLC; WEP is the "Manager" of the Manager; WEP is owned by WexTrust Capital | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 | Crowne-Phoenix Investors, LLC is a Delaware LLC organized to own the sole membership interest in Crowne-Phoenix Holdings, LLC a Delaware LLC formed to acquire, operate, sell, refinance, mortgage and otherwise use and own for profit a full service, Crowne Plaza branded hotel located in Phoenix, AZ. |
| Dean Street Investors LLC | D | yes | 44-54 Dean Street Brooklyn, NY 11201 | Kings County | PPM | Illinois | Dean Street Managers, LLC; WEP is the "Manager" of the Manager; WEP is owned by WexTrust Capital | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 | Dean Street Investors, LLC is an Illinois LLC organized to acquire, construct, own, operate, sell, refinance, mortgage and otherwise use and own for profit a to-be-constructed residential complex that will contain high-end condominiums located in Brooklyn, NY. |
| Dean Street Managers LLC | D | no | | | | | | | |

333 W. Wacker Dr.,
Suite 1600 Chicago, IL
60606

| Fund Name | Deal Type | PPM | Address of Property | County of Property | Source of Address | State of Incorporation | Managing Agent (For Service) | Address of Managing Agent (For Service) | LLC's Description of Business |
|---|---|---|---|---|---|---|---|---|---|
| Drake Oak Brook Investors LLC | I | yes | (Wyndham Hotel) 2301 York Rd., Oak Brook, IL 60523 | DuPage County | PPM | Delaware | Drake Oak Brook Managers, LLC; "Manager" of the Manager is Axela Hospitality, LLC an affiliate of Westrust Capital, LLC | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 | Drake Oak Brook Investors, LLC is a Delaware LLC organized to own the sole membership interest in Drake Oak Brook Holdings, LLC a Delaware LLC formed to acquire, operate, sell, refinance, mortgage and otherwise use and own for profit a full service, Wyndham branded hotel situated on approx. 9.3 acres located in Oak Brook, IL. |
| East Point | | no | | | | | | | |
| First Wyoming Investors, LLC | | yes | 900 28th St. SW, Wyoming, MI 49509 | Kent County | PPM | Illinois | First Wyoming Managers, LLC; WEP is Managing Member | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 | The sole purpose of the Company is to acquire, own, hold, operate, and maintain 70% of right, title and interest in and associated with First Wyoming Plaza, LLC which in turn owns 100% of certain real estate property known as the Rogers Plaza Town Center, a retail center located in Wyoming, MI, together with such other activities as may be necessary or advisable in connection with the ownership of the interests. |
| Freestar Holdings | | no | | | | | | | |
| Freeport | | no | | | | | | | |
| GDR 1 year @ 7.00 | Debt | | | | | | | | |
| GDR 18 months @ 7.75 | Debt | | --- | | | | | | |
| GDR 3 years @ 12.00 | Debt | | --- | | | | | | |
| GDR 3 years @ 9.00 | Debt | | --- | | | | | | |
| GDR 8.5% Rollover | Debt | | --- | | | | | | |
| Gold Coast Investors LLC | | yes | 1816 N. Clark St., Chicago, IL 60614 (Days Inn Hotel) | Cook County | PPM | Illinois | Gold Coast Managers, LLC; WEP is the "Manager" of the manager; the manager is WEP. WEP is owned by Westrust Capital | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 | Gold Coast Investors, LLC is an Illinois LLC organized to acquire, operate, sell, refinance, mortgage and otherwise use and own for profit that certain 13-story, 221 room Class "B" limited service hotel commonly known as the Days Inn Gold Coast Hotel. |
| Grant Street Investors LLC | | yes | 5726 South Washington Street, Hinsdale, IL 60521 | Cook County | PPM | Illinois | GSH Managers, LLC; the "Manager" of the manager is WEP. WEP is owned by WenTrust Capital | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 | Grant Street Investors is an Illinois LLC organized to own a membership interest in GSH Development, LLC, which is being formed to acquire and develop a 130 unit residential complex. |
| GSH Investors, LLC | | yes | 231 East Waterford Drive, Elkhart, IN; 310 East Knapp Street, Milwaukee, WI; 8658 South Sacramento, Chicago, IL; 6011 Odana Road, Madison, WI; 4121 Southpoint Blvd., Jacksonville, FL; 117 South Sutterfield Road, Anderson, IN; 10 South 23rd Street, Lafayette, IN | Elkhart County; Milwaukee County; Cook County; Dane County; St. John's County; Madison County; Tippecanoe County | PPM | Illinois | GSH Managers, LLC is the "Manager" of the manager is WEP. WEP is owned by WenTrust Capital | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 | GSH Investors, LLC is an Illinois LLC organized to acquire, operate, sell, refinance, mortgage and otherwise use and own for profit seven buildings all leased to the United States of America General Services Administration, located in Madison, Wisconsin; Chicago, Illinois; Elkhart, Indiana; Anderson, Indiana; Lafayette, Indiana; and Jacksonville, Florida. |
| GSPN 1 year @ 7.00 | Debt | | | | | | | | |
| GSPN 18 months @ 7.75 | Debt | | --- | | | | | | |
| GSPN 3 years @ 12.00 | Debt | | --- | | | | | | |
| GSPN 3 years @ 9.00 | Debt | | --- | | | | | | |
| Guaranteed Depository Receipts | Debt | | --- | | | | | | |
| Hammond Industrial Investors LLC | I | yes | 307-511 Pride Drive, Hammond, LA 70401 | Tangipahoa Parish | PPM | Delaware | Hammond Industrial Managers, LLC; the "Manager" of the manager is WEP. WEP is owned by Westrust Capital | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 | Hammond Industrial Investors, LLC is a Delaware LLC organized to own the sole membership interest in Hammond Industrial Holdings, LLC a single asset entity. |
| Hampions of Hinsdale Mortgage Fund 1 | D | yes | 5726 South Washington Street, Hinsdale, IL 60521 | Cook County | PPM | Delaware | WenTrust Hampions Funding Manager, LLC; the "Manager" of the manager is WenTrust Capital | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 | Hampions of Hinsdale Mortgage Fund, LLC is a Delaware LLC organized to provide mortgage funding for GSH Development, LLC. |
| High Yield Debt Fund II | Debt | | | | | | | | |
| Highland Park | | no | 1770 First Street Building, Highland Park, IL 60035 | Lake County | PPM | Illinois | First Highland Managers, LLC; owned 100% by WEP | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 | First Highland Equity Investors, LLC will begin operations in June 2004 with the purpose of owning Membership Units that give investors interest in a 7-story, 54,852-sf, Class "A" mixed use office/retail/apartment building known as the 1770 First Street Building |

7

333 W. Wacker Dr.,
Suite 1600 Chicago, IL
60606

| Fund Name | Deal Type | PPM | Address of Property | County of Property | Source of Address | State of Incorporation | Managing Agent (For Service) | Address of Managing Agent (For Service) | LLC's Description of Business |
|---|---|---|---|---|---|---|---|---|---|
| Hilltop Apartments LLC | | | | | 2007 Financials | | | | |
| Hilltop Village Apartments LLC | | | Anderson, IN | | | | | | |
| Homer Glen Investors LLC | | yes | West 159th Street and South Parker Rd., Homer Glen, IL 60491 | Will County | PPM | Illinois | Homer Managers, LLC; the "Manager" of the manager is WEP. WEP is owned by WexTrust Capital | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 | Homer Investors, LLC is an Illinois LLC organized to own a membership interest in Homer Development, LLC an Illinois LLC which is being formed to acquire and develop 25 single-family homes. |
| Hyde Park Investors, LLC | | no | 1565 Hyde Park Rd., Essex, MD 21221 | Baltimore County | Operating Agreement | Illinois | Wexford Equity Partners | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 | The sole purpose of the company is to acquire, own, hold, operate, and maintain 70% of all rights, title and interest in and associated with Hyde Park Partners, LLC |
| IDEX Mines and Minerals LLC | | yes | | | PPM | Virginia | IDEX Mining Managers, LLC owned equally by the Skardarasy Family Limited Partnership and Steven Byers | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 | IDEX Mines and Minerals, LLC is a Virginia LLC whose sole purpose is to make a loan to acquire a 40% equity interest in Pure Africa Minerals Ltd. |
| Interstate Park Investors LLC | 1 | yes | I-45 and Perry Hill Road, Montgomery, AL, 36106 | Montgomery County | PPM | Delaware | Interstate Park Managers, LLC; the "Manager" of the manager is WEP. WEP is owned by WexTrust Capital | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 | Interstate Park Investors, LLC is a Delaware LLC organized to own the sole membership interest in Interstate Park Holdings, LLC a bankruptcy remote entity. |
| 2400 McCue Investors, LLC | | no | 2400 McCue Rd, Houston, TX, 77056 | Harris County | PPM | Illinois | Wextrust Capital/Wexford Equity Partners | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 | The sole purpose of the Company is to provide the necessary funding to the joint venture between WexTrust Capital, LLC and Choice Condominiums, LP. The purpose of this joint venture shall be for the conversion of the property commonly known as 2400 McCue, Houston, TX from rental apartments to condominiums. |
| Midwest Estates Music Row Investors LLC | | no | 12th Avenue South and Division Street, Nashville, TN 37203 | Davidson County | PPM | Illinois | Wextrust Asset Management | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 | Music Row Investors, LLC is an entity formed to acquire interests in 12th and Division Properties, LLC, which in turn is a single-asset bankruptcy-remote entity formed to acquire and construct Music Row Gateway building |
| Myatt Holdings | | no | Madison, TN | | 2007 Financials | | | | |
| New Salem Investors LLC | | yes | 540 New Salem Road, Murfreesboro, TN 37129 | Rutherford County | PPM | Tennessee | New Salem Managers, LLC; the "Manager" of the manager is WEP, which is owned by WexTrust Capital | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 | New Salem Investors, LLC is a Tennessee LLC organized to own a membership interest in New Salem Holdings, LLC a single asset, bankruptcy remote entity. |
| Park Village Holdings LLC | | yes | 431 Park Village Drive and 215 Center Park Drive, Knoxville, TN 37922 | Knox County | PPM | Tennessee | Park Village Managers, LLC; the "Manager" of the manager is WEP. WEP is owned by WexTrust Capital | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 | Park Village Holdings, LLC is a Tennessee LLC organized to acquire, operate, sell, refinance, mortgage and otherwise use and own for profit two multi-tenant, single story office buildings located in Knoxville, TN. |
| Peoria Office Investors LLC | 1 | yes | 124 SW Adams, Peoria, IL 61602 | Peoria County | PPM | Delaware | Peoria Office Managers, LLC; WEP is the "Manager" of the Manager | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 | Peoria Office Investors, LLC is a Delaware LLC organized to own the sole membership interest in Peoria Office Holdings, LLC a single asset entity. Holdings is a Delaware LLC formed to acquire, operate, sell, refinance, mortgage and otherwise use and own for profit a Class B multi-tenant office building located in Peoria, IL. |
| River's Edge Investors LLC | | yes | Intersection of West Wolfram Street and North Oakley Avenue, Chicago, IL | Cook County | PPM | Illinois | River's Edge Managers, LLC; WEP is the "Manager" of the Manager | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 | River's Edge Investors, LLC is an Illinois limited liability company organized to own a membership interest in 2825 Oakley, LLC, which is being formed to acquire and develop a 19-unit residential complex, which will contain high-end townhomes and condominiums |
| Riverside Investors, LLC | | yes | One Riverside Road, Riverside, IL 60546 | Cook County | PPM | Illinois | Wexford Equity Partners, LLC | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 | The sole purpose of the Company is to acquire, own, hold, operate, and maintain 70% of all rights, title and interest in and associated with Riverside Arcade Building, LLC, which in turn owns 100% of certain real estate property known as the Arcade building, a mixed-use office/retail center located in Riverside, IL together with such other activities as may be necessary or advisable in connection with the ownership of the Property. |

333 W. Wacker Dr.,
Suite 1600 Chicago, IL
60606

| Fund Name | Deal Type | PPM | Address of Property | County of Property | Source of Address | State of Incorporation | Managing Agent (For Service) | Address of Managing Agent (For Service) | LLC's Description of Business |
|---|---|---|---|---|---|---|---|---|---|
| S. Pine Street Investors LLC | I | yes | 156-246 South Pine Street, Burlington, WI 53105 | Racine County | PPM | Delaware | S. Pine Street Investors, LLC, the "Manager" of the manager's is WEP. WEP is owned by WexTrust Capital | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 | S. Pine Street Investors, LLC is a Delaware LLC organized to own the sole membership interest in S. Pine Street Holdings, LLC a single asset entity. |
| Shallowford Investors LLC | I | yes | 2115 Chapman Road, Chattanooga, TN | Hamilton County | PPM | Delaware | Shallowford Managers, LLC. WEP is the "Manager" of the Manager | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 | Shallowford Investors, LLC is a Delaware limited liability company organized to own a membership interest in Shallowford Holdings, LLC, a Delaware limited liability company, formed to acquire, operate, sell, refinance, mortgage and otherwise use and own for profit the Shallowford Business Park East, an approximately 88,000 square foot office/warehouse flex building located at 2115 Chapman Road, Chattanooga, Tennessee. |
| Skeleton Coast Bredl Investors LLC | I | no | | | | | | | |
| Tennessee Office Investors | I | yes | Multiple Cities in TN | Not Clear | PPM | Delaware | Tennessee Office Managers, LLC. WEP is the "Manager" of the Manager | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 | Tennessee Office Investors, LLC is a Delaware limited liability company organized to own a membership interest in Tennessee Office Holdings, LLC, a Delaware limited liability company formed to acquire, operate, sell, refinance, mortgage and otherwise use and own for profit 13 office buildings located in 11 cities in Tennessee. |
| Uptown Square LLC USFN 8.5% Rollover West 82nd Street Holdings, LLC | Debt D | yes | 176-182 West 82nd Street, New York, NY | New York City County | PPM | Delaware | West 82nd Street Holdings, LLC ("Holdings"), West 82nd Street Managers ("Managers") is the manager of the Manager | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 | West 82nd Street Holdings, LLC intends to acquire and develop a 24-unit residential complex, which will contain high-end condominiums, in the Upper West Side of New York City. |
| West 82 Street Investors, LLC | D | yes | 176-182 West 82nd Street, New York, NY | New York City County | PPM | Delaware | West 82nd Street Managers, LLC. WEP is the "Manager" of the Manager | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 | The purpose of the offering is to own a membership interest in West 82nd Street Holdings, LLC, a Delaware limited liability company, was formed to acquire and develop a 24-unit residential complex, which will contain high-end condominiums. |
| West Bearden Investors LLC | I | yes | 6700 Baum Drive, Knoxville, TN and 312-322 Nancy Lynn Lane, Knoxville, TN | Knox County | PPM | Illinois | West Bearden Managers, LLC. WEP is the "Manager" of the Manager | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 | The purpose of the offering is to own a membership interest in West Bearden Holding, LLC, an Illinois limited liability company, which is being formed to acquire, operate, sell, refinance, mortgage and otherwise use and own for profit an undivided interest in the Project, consisting of a six-building, multi-tenant "flex" office park. |
| 2435 West Belmont Investors, LLC | I | yes | 2435 West Belmont Avenue, Chicago, IL 60618 | Cook County | PPM | Illinois | 2435 W. Belmont Managers, LLC. WEP is the "Manager" of the manager; WEP is owned by Wextrust Capital | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 | 2435 W. Belmont Investors, LLC is an Illinois LLC organized to own a membership interest in 2435 W. Belmont Development Company, LLC which is being formed to acquire and develop a 48-unit residential complex, which will contain high-end condominiums, located at 2435 W. Belmont Ave, in Chicago. |
| Wax-New Orleans Wextrade Diversified Futures Fund I, LL | F | yes | — | — | PPM | Delaware | Wexford Commodity Managers, LLC, the manager of the manager is WTC. | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 | The Fund's objective is to seek capital appreciation through an investment in a diverse group of exchange-traded futures and options contracts as well as in the foreign exchange markets. The Manager will allocate virtually all of the assets in the fund to selected Commodity Trading Advisors ("CTAs") that trade in four sectors: Foreign Exchange, Interest Rate Related Products, Global Equity Indices and/or Commodity Futures. |

333 W. Wacker Dr.,
Suite 1600 Chicago, IL
60606

| Fund Name | Deal Type | PPM | Address of Property | County of Property | Source of Address | State of Incorporation | Managing Agent (For Service) | Address of Managing Agent (For Service) | LLC's Description of Business |
|---|---|---|---|---|---|---|---|---|---|
| Westside Diversified Offshore Futures I | F | ? | -- | -- | PPM Supplement | British Virgin Islands | Wexford Commodity Managers, LLC | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 | The Fund's objective is to seek capital appreciation through an investment in a diverse group of exchange traded futures and options contracts as well as the foreign exchange markets. The Manager will allocate virtually all of the assets in the fund to selected Commodity Trading Advisors ("CTAs") that trade in four sectors: Foreign Exchange, Interest Rate Related Products, Global Equity Indices and/or Commodity Futures. |
| Westside Principal Protected Fund I, Ltd | F | yes | -- | -- | PPM | Delaware | Wexford Commodity Managers, LLC, the manager of the manager is WTC. | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 | The Fund's objective is to seek (1) capital preservation in order to have by maturity date a net asset value at least equal to original investment through investment in U.S. Government and Investment Grade Securities; and (2) capital appreciation through an investment in a diverse group of Commodity Trading Advisors ("CTAs") that trade in Foreign Exchange, Interest Rate Related Products, Global Equity Indices and/or Commodity Futures. |
| Westside Principal Protected Offshore I | F | ? | -- | -- | PPM Supplement | British Virgin Islands | Wexford Commodity Managers, LLC | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 | The Fund's objective is to seek (1) capital preservation in order to have by maturity date a net asset value at least equal to original investment through investment in U.S. Government and Investment Grade Securities; and (2) capital appreciation through an investment in a diverse group of Commodity Trading Advisors ("CTAs") that trade in Foreign Exchange, Interest Rate Related Products, Global Equity Indices and/or Commodity Futures. |
| Wexford High Yield Debt Fund I | Debt | | | | | | | | |
| Wexford High Yield Debt Fund III, LLC | Debt | yes | -- | -- | PPM | Delaware | Wex-I, LLC which is wholly owned by WexTrust Capital, LLC | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 | Wexford High Yield Debt Fund III, LLC is a Delaware LLC organized to fund high yield debt issued to non-affiliated third parties secured by first or second mortgages. |
| Wexford High Yield Debt Offshore Fund | Debt | yes | -- | -- | PPM | Cayman Islands | WexTrust Capital, LLC | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 | The fund was formed to pool investment funds of its shareholders for the purpose of making high yield loans secured by first or second mortgages. |
| Wexford Qualified Investors LLC - Deal - Workman Road Investors LLC | D | yes | 3551 Workman Road, Knoxville, TN | Knox County | PPM | Delaware | Workman Road Investors, LLC is managed by Workman Road Managers, LLC, the Manager. WEP is the "Manager" of the Manager. | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 | Workman Road Holdings is a Delaware limited liability company (LLC) organized to acquire, operate, sell, refinance, mortgage and otherwise use and own. |
| York Road Investors LLC | | yes | 116-118 North York Road Elmhurst, IL. 60126 | DuPage County | PPM | Delaware | York Road Managers, LLC, the "Manager" of the manager is Steve Byers through WEP | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 | York Road Investors, LLC is a Delaware LLC organized for investing in and being the Preferred Member of 116 N. York Road, LLC, a single asset, bankruptcy remote entity. |



# WexTrust Capital, LLC, ("WTC")
Started in 2003

**Registered BD [1]**
CRD #44952

WexTrust Securities, LLC
("WTS")
Started in 2006
WTC owns 21%

**Real Estate Properties [2]**
($500 MM)

WexTrust Equity
Partners, LLC
("WEP")
Income Producing
Properties
WTC owns 80%

Affiliates such as:
•Crowne-Phoenix
Investors, LLC
•Peoria Office
Holdings, LLC
•First Wyoming
Plaza, LLC

Axela
Hospitality, LLC
Hotel Properties
WTC owns 80%

Affiliates such as:
•Crowne-Phoenix
Investors, LLC

WexTrust
Development
Group, LLC
Development
Properties
WTC owns 80%

**Other WTC Funds [3, 4, 5]**
($35 MM)

Wexford High Yield
Debt Fund I

Wexford High Yield
Debt Fund III

GSPN Fund

**Diamond Mining**
($50 MM)

Pure Africa Mining ("PAM")
WTC has substantial ownership
Of PAM through IDEX and
Brandon Investments

[1] Currently, entities associated with control persons of WTS and or WTC collectively own the majority of WTS. According to the firm, WTC will soon increase WTC's ownership of WTS to 33%.
[2] Manages approximately 50 properties. According to the staff's conversations with Byers, 75% are income producing and, 25% are development properties.
[3] The Wexford High Yield Funds are managed by Wex I, LLC.  WTC owns 100% of Wex I, LLC.
[4] The GSPN fund is managed by WTC.
[5] WTC also offers four Managed Futures Funds (two onshore and two offshore) with total equity of approximately $15 MM.
N.B. The staff created this diagram from documents voluntarily provided by WTS.  All figures are estimates.





08030621

**UNITED STATES**
SECURITIES AND EXCHANGE COMMISSION
Washington, DC 20549

OMB Number 3235-0123
Expires: February 28, 2010
Estimated average burden
Hours per response.... 12.00

**ANNUAL AUDITED REPORT**
**FORM X-17A-5**
**PART III**

SEC FILE NUMBER

8-48667
8-67099

**FACING PAGE**
Information Required of Brokers and Dealers Pursuant to §17 of the Securities Exchange Act of 1934 and
Rule 17a-5 Thereunder

REPORT FOR THE PERIOD BEGINNING 01/01/07 AND ENDING 12/31/07.
$\qquad$ MM/DD/YY $\qquad$ MM/DD/YY

---

### A. REGISTRANT IDENTIFICATION

NAME OF BROKER-DEALER:

**WEXTRUST SECURITIES LLC**

OFFICIAL USE ONLY

FIRM ID. NO.

ADDRESS OF PRINCIPAL PLACE OF BUSINESS: (do not use PO Box No.)

999 WATERSIDE DRIVE
Street Address

NORFOLK          VA.          23510
City             State        Zip Code

NAME AND TELEPHONE NUMBER OF PERSON TO CONTACT IN REGARD TO THIS REPORT.     **PROCESSED**

Ralph Sabine                    757-623-0246
Name                            Telephone                    **APR 0 3 2008**

### B. ACCOUNTANT IDENTIFICATION                    **THOMSON FINANCIAL**

INDEPENDENT PUBLIC ACCOUNTANT whose opinion is contained in this Report*

Richard G. Baccari, CPA
Name of individual (first, middle, last)                    **SEC**
                                                            **Mail Processing**
10 Mitchell Place, Suite 202     White Plains,     New York     10601     **Section**
Address                          City              State        Zip

Check One:                                                   **MAR 2 8 2008**
    _X Certified Public Accountant
    __ Public Accountant                                     **Washington, DC**
    __ Accountant not resident in United States or any of its possessions.     **101**

| For Official Use Only |
|---|

*Claims for exemption from the requirement that the annual report be covered by the opinion of an independent public
accountant must be supported by a statement of facts and circumstances relied on as the basis for the exemption.   See
section 240.17a-5(e)(2).
SEC 142C(3-91)

## OATH OR AFFIRMATION

I, Ralph Sabine_____, swear (or affirm) that, to the best of my knowledge and belief the accompanying financial statement and supporting schedules pertaining to the firm of Wextrust Securities LLC, as of December 31, 2007, are true and correct. I further swear (or affirm) that neither the company nor any partner, proprietor, principal officer or director has any proprietary interest in any account classified solely as that of a customer, except as follows:

_____

_____

Commonwealth of Virginia
Norfolk County / City

_____
Signature

Chief Compliance Officer
Title

Kimberly Dyanne Heidelberg
Notary Public

My Commission Expires
December 31, 2011

This report** contains (check all applicable boxes):

_X_ (a) Facing page
_X_ (b) Statement of Financial Condition
_X_ (c) Statement of Income (Loss)
_X_ (d) Statement of Changes in Financial Condition – CASH FLOWS
_X_ (e) Statement of Changes in Stockholders' Equity or Partners' or Sole Proprietor's Capital
___ (f) Statement of Changes in Liabilities Subordinated to Claims of Creditors
_X_ (g) Computation of Net Capital
___ (h) Computation for Determination of Reserve Requirements Pursuant to Rule 15c3-3
___ (i) Information Relating to the Possession or control Requirements under Rule 15c3-3
___ (j) A Reconciliation, including appropriate explanation, of the Computation of Net Capital
        under Rule 15c-3-1 and the Computation for Determination of the Reserve Requirements
        under Exhibit A of Rule 15c3-3
___ (k) A Reconciliation between the audited and unaudited Statements of Financial Condition
        with respect to methods of consolidation.
_X_ (l) An Oath or Affirmation
___ (m) A copy of the SIPC Supplemental Report
___ (n) A report describing any material inadequacies found to exist or found to have existed since
        the date of the previous audit.
_X_ (o) Independent Auditors' Report on Internal Control.

**For conditions of confidential treatment of certain portions of this filing, see section 240.17a-5(e)(3).

# RICHARD G. BACCARI & COMPANY, LLP

CERTIFIED PUBLIC ACCOUNTANTS

10 Mitchell Place, Suite 202, White Plains, New York 10601
Telephone (914) 686-1201
Fax (914) 686-1281
www.rgbcpa.com

## INDEPENDENT AUDITORS' REPORT

To the Members of
Wextrust Securities, LLC
Norfolk, Virginia

We have audited the accompanying consolidated statement of financial condition of Wextrust Securities, LLC (the "Company") and subsidiary as of December 31, 2007 and the related statements of income, changes in members' equity, and cash flows for the year then ended that you are filing pursuant to rule 17a-5 under the Securities Exchange Act of 1934. These financial statements are the responsibility of the Company's management. Our responsibility is to express an opinion on these financial statements based on our audit.

We conducted our audit in accordance with auditing standards generally accepted in the United States of America. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements. An audit also includes assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audit provides a reasonable basis for our opinion.

In our opinion, such consolidated financial statements present fairly, in all material respects, the financial position of the Company and subsidiary as of December 31, 2007, and the results of its operations and its cash flows for the year then ended in conformity with accounting principles generally accepted in the United States of America.

Our audit was conducted for the purpose of forming an opinion on the basic financial statements taken as a whole. The information contained in the supplementary schedules is presented for the purposes of additional analysis and is not a required part of the basic financial statements, but is supplementary information required by rule 17a-5 under the Securities Exchange Act of 1934. Such information has been subjected to the auditing procedures applied in the audit of the basic financial statements and, in our opinion, is fairly stated in all material respects in relation to the basic financial statements taken as a whole.

*Richard G. Baccari & Co LLP*

White Plains, NY

March 20, 2008

**WEXTRUST SECURITIES, LLC**
**CONSOLIDATED STATEMENT OF FINANCIAL CONDITION**
**DECEMBER 31, 2007**

### ASSETS

| ASSETS: | | **2007** |
|---|---|---|
| Cash | $ | 275,114 |
| Accounts receivable | | 1,726,207 |
| | | |
| Total assets | $ | 2,001,321 |

### LIABILITIES AND MEMBERS' EQUITY

| LIABILITIES: | | |
|---|---|---|
| Accounts payable | $ | 18,335 |
| Commission payable | | 64,625 |
| Due to affiliates (Note 3) | | 1,633,656 |
| | | |
| Total liabilities | $ | 1,716,616 |
| | | |
| Commitments and contingencies (Note 4) | | |
| | | |
| MEMBERS' EQUITY | | 284,705 |
| | | |
| Total liabilities and members' equity | $ | 2,001,321 |

See Independent Auditors' Report and Notes to financial statements.

2

WEXTRUST SECURITIES, LLC
CONSOLIDATED STATEMENT OF INCOME
FOR THE YEAR ENDED DECEMBER 31, 2007

|  | 2007 |
|---|---|
| Revenues: | |
| Private placement fees (Note 2) | $ 7,617,797 |
| Referral fees | 44,217 |
| Other revenue | 36,239 |
| Total revenues | $ 7,698,253 |
| | |
| Operating Expenses: | |
| Administrative costs (Note 3) | 6,533,163 |
| Broker commissions | 648,814 |
| Professional fees | 40,599 |
| Record keeping and regulatory fees | 68,843 |
| Travel and meals | 69,334 |
| Miscellaneous | 12,976 |
| Total operating expenses | 7,373,729 |
| | |
| Net Income | $ 324,524 |

See Independent Auditors' Report and Notes to financial statements.

3

WEXTRUST SECURITIES, LLC
CONSOLIDATED STATEMENT OF CHANGES IN MEMBERS' EQUITY
YEAR ENDED DECEMBER 31, 2007

| | | |
|---|---|---:|
| Balance, January 1, 2007 | $ | 242,181 |
| Return of capital to members | | (282,000) |
| Net Income | | 324,524 |
| Balance, December 31, 2007 | $ | 284,705 |

See Independent Auditors' Report and Notes to financial statements.

WEXTRUST SECURITIES, LLC
CONSOLIDATED STATEMENT OF CASH FLOWS
FOR THE YEAR ENDED DECEMBER 31, 2007

|  | 2007 |
|---|---|
| **CASH FLOWS FROM OPERATING ACTIVITIES:** | |
| Net Income | $    324,524 |
| Adjustments to reconcile net income to net cash provided | |
| by operating activities: | |
| (Increase) in due from affiliate | (1,600,082) |
| Decrease in other receivable | 50,000 |
| Increase in accounts payable | 2,340 |
| Increase in commission payable | 5,003 |
| Increase in due to affiliate | 1,633,656 |
| Net cash provided by operating activities | 415,441 |
|  | |
| **CASH FLOWS FROM FINANCING ACTIVITIES:** | |
| Member capital withdrawals | (282,000) |
| Net cash (used in) financing activities | (282,000) |
|  | |
| Net increase in cash | 133,441 |
|  | |
| Cash - beginning of year | 141,673 |
|  | |
| Cash - end of year | $    275,114 |
|  | |
|  | |
| Cash paid during the year for: | |
| Interest | $         - |
| Taxes | $         - |

See Independent Auditors' Report and Notes to financial statements.

5

## WEXTRUST SECURITIES, LLC
## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS
### YEAR ENDED DECEMBER 31, 2007

Note 1 – Summary of Significant Accounting Policies

The Company

Wextrust Securities, LLC (the "Company"), is primarily engaged in the business of being a securities broker-dealer and is a member of the Financial Industry Regulatory Authority ("FINRA"). The Company has a branch office in Israel, Wextrust Securities (Israel), LLC, which is wholly owned by the Company. The results of the branch office have been included in these financial statements. The Company's revenue consists principally of fees from private placements.

Basis of presentation

These financial statements and accompanying notes are prepared in accordance with United States generally accepted accounting principles.

Use of estimates

The preparation of financial statements in conformity with accounting principles generally accepted in the United States of America requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities and disclosure of contingent assets and liabilities at the date of financial statements. Estimates also affect the reported amounts of revenue and expenses during the reporting period. Actual results could differ from those estimates

Foreign Currency

All foreign currency transactions have been translated into U.S. dollars as of the transaction date.

Income Taxes

The members elected to be taxed as a Limited Liability Company under the provisions of the Internal Revenue Code. Accordingly, taxable income will be reported on the tax return of the individual members.

Note 2 – Concentrations of Credit Risk

Bank balances may at times exceed insured limits. Management does not consider there to be any significant risk with respect to its bank balances.

The Company derives 100% of its private placement revenue from its affiliate, Wextrust Capital LLC ("WC"). Accordingly, the Company is exposed to concentration relating to the revenue and corresponding receivables. The Company considers the credit risk to be low as WC intends to continue using the Company as selling agent in the future.

**WEXTRUST SECURITIES, LLC**
**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS**
**YEAR ENDED DECEMBER 31, 2007**

Note 3 – Related Party Transactions

The Company has an expense sharing arrangement with its Israeli affiliate, Summit Capital Ltd. ("SC") on May 1, 2007 for a term of one year with automatic renewals on a year-to-year basis. SC provides office and administrative services to the Company for $30,000 per month subject to periodic adjustment, as appropriate. As of December 31, 2007, there is a payable to SC for $90,000 for these services. The payable has no set terms or interest rate.

On a regular basis, in the anticipation of the collection of receivables related to the placement of securities, the Company recognized administrative costs that are owing to WC but only upon the collection of the receivables. At December 31, 2007, $1,543,656 was owed to WC, in this regard. The payable has no set terms or interest rate.

Note 4 – Commitments and Contingencies

The Company has an expense sharing agreement with WC for office and administrative services which states that WC will provide these services to the Company at no cost. The term of the agreement is for one year with automatic renewals on a year-to-year basis.

Note 5 – Regulatory Compliance

The Company is exempt from Rule 15c3-3 pursuant to subparagraph (k)(2)(i). The Company is subject to Rule 15c3-1 under the Securities Exchange Act of 1934 ("Net Capital Rule"), which requires its net capital be at least $5,000, and its aggregate indebtedness be less than 15 to 1. As of December 31, 2007, the Company's net capital is $165,808 which exceeded its effective requirement of $114,441 by $51,367.

7

**Wextrust Securities, LLC**
**Computation of Net Capital**
**December 31, 2007**

### Net Capital Computation

| | | |
|---|---|---|
| Total Equity | $ | 284,705 |
| Less: Non Allowable Assets | | 117,926 |
| Tentative Net Capital | | 166,779 |
| Less: Haircuts | | 967 |
| Net Capital | $ | 165,812 |

Less the Greater of:

| | |
|---|---|
| Minimum Dollar Net Capital Requirement | 5,000 |

or

| | | |
|---|---|---|
| Minimum Net Capital Required (6.66% of Aggregate Indebtedness $1,716,616) | 114,441 | |
| Minimum Required Net Capital | $ | 114,441 |
| Excess Net Capital | $ | 51,371 |

### Schedule of Non Allowable Assets

| | |
|---|---|
| Due from Affiliate | 117,926 |
| | 117,926 |

### Aggregate Indebtedness

| | | |
|---|---|---|
| Accounts Payable | $ | 18,335 |
| Commission Payable | | 64,625 |
| Due to Affiliates | | 1,633,656 |
| | $ | 1,716,616 |
| Percentage of Aggregate Indebtedness to Net Capital | | 1035% |

No material differences exist between the above computation and the computation included in the corresponding amended Form X-17A-5 Part IIA filed on March 27, 2008.

See Independent Auditors' Report and Notes to financial statements.

8

# RICHARD G. BACCARI & COMPANY, LLP

CERTIFIED PUBLIC ACCOUNTANTS

10 Mitchell Place, Suite 202, White Plains, New York 10601
Telephone (914) 686-1201
Fax (914) 686-1281
www.rgbcpa.com

## INDEPENDENT AUDITORS' REPORT ON INTERNAL CONTROL

To the Members of
Wextrust Securities LLC:

In planning and performing our audit of the consolidated financial statements of Wextrust Securities, LLC (the Company), as of and for the year ended December 31, 2007, in accordance with auditing standards generally accepted in the United States of America, we considered the Company's internal control over financial reporting (internal control) as a basis for designing our auditing procedures for the purpose of expressing our opinion on the financial statements, but not for the purpose of expressing an opinion on the effectiveness of the Company's internal control. Accordingly, we do not express an opinion on the effectiveness of the Company's internal control.

Also, as required by rule 17a-5(g)(1) of the Securities and Exchange Commission (SEC), we have made a study of the practices and procedures followed by the Company including consideration of control activities for safeguarding securities. This study included test of such practices and procedures that we considered relevant to the objectives stated in rule 17a-5(g)(1) in making the periodic computations of aggregate indebtedness and net capital under rule 17a-3(a)(11) and for determining compliance with the exemptive provisions of rule 15c3-3. Because the Company does not carry securities accounts for customers or perform custodial functions relating to customer securities, we did not review the practices and procedures followed by the Company in any of the following:

1. Making quarterly securities examinations, counts, verifications, and comparisons and recordation of differences required by rule 17a-13

2. Complying with the requirements for prompt payment for securities under Section 8 of Federal Reserve Regulation T of the Board of Governors of the Federal Reserve System

The management of the Company is responsible for establishing and maintaining internal control and the practices and procedures referred to in the preceding paragraph. In fulfilling this responsibility, estimates and judgments by management are required to assess the expected benefits and related costs of controls and of the practices and procedures referred to in the preceding paragraph and to assess whether those practices and procedures can be expected to achieve the SEC's above-mentioned objectives. Two of the objectives of internal control and the practices and procedures are to provide mangement with reasonable but not absolute assurance that assets for which the Company has responsibility are safeguarded against loss from unauthorized use or disposition and that transactions are executed in accordance with management's authorization and recorded properly to permit the preparation of fmancial statements in conformity with generally accepted accounting principles. Rule 17a-5(g) lists additional objectives of the practices and procedures listed in the preceding paragraph.

Because of inherent limitations in internal control and the practices and procedures referred to above, error of fraud may occur and not be detected. Also, projection of any evaluation of them to future periods is subject to the risk that they may become inadequate because of changes in conditions or that the effectiveness of their design and operation may deteriorate.

A control deficiency exists when the design or operation of a control does not allow management or employees, in the normal course of performing their assigned functions, to prevent or detect misstatements on a timely basis. A significant deficiency is a control deficiency, or combination of control deficiencies, that adversely affects the

# RICHARD G. BACCARI & COMPANY, LLP

**CERTIFIED PUBLIC ACCOUNTANTS**

10 Mitchell Place, Suite 202, White Plains, New York 10601
Telephone (914) 686-1201
Fax (914) 686-1281
www.rgbcpa.com

entity's ability to initiate, authorize, record, process, or report financial data reliably in accordance with generally accepted accounting principles such that there is more than a remote likelihood that a misstatement of the entity's financial statements that is more than inconsequential will not be prevented or detected by the entity's internal control.

A material weakness is a significant deficiency, or combination of significant deficiencies, that results in more than a remote likelihood that a material misstatement of the financial statements will not be prevented or detected by the entity's internal control.

Our consideration of internal control was for the limited purpose described in the first and second paragraphs and would not necessarily identify all deficiencies in internal control that might be material weaknesses. We did not identify any deficiencies in internal control and control activities for safeguarding securities that we consider to be material weaknesses, as defined above.

We understand that practices and procedures that accomplish the objectives referred to in the second paragraph of this report are considered by the SEC to be adequate for its purposes in accordance with the Securities Exchange Act of 1934 and related regulations, and that practices and procedures that do not accomplish such objectives in all material respects indicate a material inadequacy for such purposes. Based on this understanding and on our study, we believe that the Company's practices and procedures, as described in the second paragraph of this report, were adequate at December 31, 2007, to meet the SEC's objectives.

This report is intended solely for the information and use of the Board of Directors, management, the SEC, and other regulatory agencies that rely on rule 17a-5(g) under the Securities Exchange Act of 1934 in their regulation of registered brokers and dealers, and is not intended to be and should not be used by anyone other than these specified parties.

*Richard G. Baccari & Co LLP*

White Plains, New York

March 20, 2008

END

**4**

| SEC Count | StRecipientName |
|---|---|
| 1 | 100 Karats, LLC |
| 1 | 1818 Keswick Partners |
|  | 1818 Keswick Partners |
|  | 1818 Keswick Partners |
|  | 1818 Keswick Partners |
| 1 | 1st Mortgage Lenders |
|  | 1st Mortgage Lenders |
| 1 | 4103629 CANADA, INC |
| 1 | A GEORGE SAKS, IRA |
|  | A GEORGE SAKS, IRA |
|  | A GEORGE SAKS, IRA |
|  | A. GEORGE & STEPHANIE R. SAKS JTWROS |
|  | A. GEORGE & STEPHANIE R. SAKS JTWROS |
|  | A. GEORGE & STEPHANIE R. SAKS JTWROS |
|  | A. GEORGE & STEPHANIE R. SAKS JTWROS |
|  | A. GEORGE & STEPHANIE R. SAKS JTWROS |
|  | A. GEORGE & STEPHANIE R. SAKS JTWROS |
| 1 | A. Joyce Meltzer |
| 1 | Aaron M. Peck |
| 1 | Abe Fodor |
| 1 | Abraham  Benzadon |
|  | Abraham  Benzadon |
| 1 | Abraham Becher |
|  | Abraham Becher |
| 1 | ABRAHAM BRUNNER |
| 1 | Abraham Heifetz |
| 1 | Abraham Margalit |
|  | Abraham Margalit |
|  | Abraham Margalit |
|  | Abraham Margalit |
|  | Abraham Margalit |
| 1 | Abraham Ranna |
| 1 | Abraham Sorotzkin |
| 1 | ABRAHAM TENENBAUM |
| 1 | ADAM FRIEDMAN ASSOC, LLC DEFINED BENEFIT PLAN |
| 1 | Adina Mandel |
| 1 | AFI, LP |
|  | AFI, LP |
| 1 | AHARON & JUDITH RIVLIN |
|  | AHARON & JUDITH RIVLIN |
|  | AHARON & JUDITH RIVLIN |
| 1 | Ahuva Manela |
|  | Ahuva Manela |
| 1 | AKIVA F. TURNER |
| 1 | ALAIN REDARES |
|  | ALAIN REDARES |
|  | ALAIN REDARES |
| 1 | Alan and Susan Miller |
|  | Alan B. Miller, M.D., P.C., Profit Sharing Plan |
|  | Alan B. Miller, M.D., P.C., Profit Sharing Plan |
|  | Alan B. Miller, M.D., P.C., Profit Sharing Plan |
| 1 | ALAN COHEN |
| 1 | Alan J. and Judith S. Eisenman |
| 1 | Alan J. Johnson IRA |
| 1 | Alan M. Gold Development Company |
|  | Alan M. Gold Development Company |
|  | Alan Miller |
|  | Alan Miller |
|  | Alan Miller |
|  | Alan Miller |
| 1 | Alan P. Ganderson |
| 1 | ALAN ZEKELMAN |
| 1 | ALBERT & DEBORAH RICCHIO |
| 1 | Albert Benchabbat IRA DO NOT MAIL |
| 1 | Albert Chattah |
| 1 | ALBERT RUBACK |
| 1 | Alfred Miller |
| 1 | ALFRED OAKBROOK CHICAGO, LLC |
| 1 | Alice Lerman |
|  | Alice Lerman |
| 1 | Allan Gelfond Rev. Trust |
| 1 | ALLEN CHILDRENS WEAR INC |
| 1 | ALON & INBAR FEFER |
|  | ALON & INBAR FEFER |

| SEC Count | StRecipientName |
|---|---|
| 1 | ALRITE PACKAGING, INC. RETIREMENT PLAN |
| 1 | Alvin L & Paula L Jamison |
| | Alvin L & Paula L Jamison |
| | Alvin L & Paula L Jamison |
| 1 | Alvin L. Katz Trust |
| | Alvin L. Katz Trust |
| | Alvin L. Katz Trust |
| | Alvin L. Katz Trust |
| 1 | AMELIA G. STEVENS |
| 1 | American Friends of Darche Noam |
| 1 | Ami Chai Elstein |
| | Ami Chai Elstein |
| 1 | Amir Erlichman |
| 1 | AMIRAM Y. ZEIGER |
| | AMIRAM Y. ZEIGER |
| | AMIRAM Y. ZEIGER |
| | AMIRAM Y. ZEIGER |
| 1 | Amos Avivi |
| 1 | Amy and Pamela Friedman Trust |
| | Amy and Pamela Friedman Trust |
| | Amy and Pamela Friedman Trust |
| | Amy and Pamela Friedman Trust |
| | Amy and Pamela Friedman Trust |
| | Amy and Pamela Friedman Trust |
| | Amy and Pamela Friedman Trust |
| 1 | Anayna Ingber |
| 1 | Andra K. Stein |
| | Andra K. Stein |
| | Andra K. Stein |
| 1 | Andrea Meltzer, Roth IRA |
| | Andrea Meltzer, Roth IRA |
| | Andrea J. Meltzer |
| | Andrea J. Meltzer |
| | Andrea J. Meltzer |
| | Andrea J. Meltzer |
| | Andrea J. Meltzer |
| | Andrea J. Meltzer |
| | Andrea J. Meltzer |
| | Andrea J. Meltzer |
| | Andrea J. Meltzer |
| | Andrea Meltzer and Ernie Cole |
| | Andrea Meltzer IRA |
| | Andrea Meltzer IRA |
| | Andrea Meltzer Living Trust |
| | Andrea Meltzer Living Trust |
| | Andrea Meltzer Living Trust |
| | Andrea Meltzer Living Trust |
| | Andrea Meltzer Living Trust |
| | Andrea Meltzer Living Trust |
| | Andrea Meltzer Living Trust |
| | Andrea Meltzer Living Trust |
| | Andrea Meltzer Living Trust |
| | Andrea Meltzer SEP |
| | Andrea Meltzer SEP |
| 1 | Andrew and Barbara Friedman |
| 1 | Andrew and Katherine Gray |
| 1 | ANDY WOODMAN |
| | ANDY WOODMAN |
| 1 | Anita Perelman |
| | Anita Perelman |
| 1 | Ann B. and Pinchas H. Davidman |
| 1 | Ann B. Davidman |
| | Ann B. Davidman |
| | Ann B. Davidman |
| 1 | Anna H. May IRA |
| 1 | Anna L. McCaul |
| | Anna L. McCaul |
| 1 | Anne N. Gimenez in Trust for Amelia Blanchard |
| | Anne N. Gimenez in Trust for Amelia Blanchard |
| | Anne N. Gimenez, Revocable Trust dated March 30, 1993 as a |
| | Anne N. Gimenez, Revocable Trust dated March 30, 1993 as a |
| 1 | Anne W. Loudermilch |
| | Anne W. Loudermilch |
| | Anne W. Loudermilch |

| SEC Count | StRecipientName |
|---|---|
| 1 | Annie L. Whedbee |
| 1 | ANTHONY COREN |
| 1 | Anthony J. and Caroline E. Ciotti Revocable Living Trust |
|  | Anthony J. and Caroline E. Ciotti Revocable Living Trust |
| 1 | Anthony M. and Sarita A. Coren |
|  | Anthony M. and Sarita A. Coren |
|  | Anthony M. and Sarita A. Coren |
| 1 | ANTONE TATOOLES |
| 1 | Ari and Susan J. Friedman |
| 1 | ARI SKLAR |
| 1 | Ariel Kolin |
|  | Ariel Kolin |
| 1 | Ariel Ziser |
|  | Ariel Ziser |
|  | Ariel Ziser |
|  | Ariel Ziser |
|  | Ariel Ziser |
|  | Ariel Ziser |
| 1 | ARNAV INDUSTRIES, INC |
| 1 | Arnold Belkov |
|  | Arnold Belkov |
|  | Arnold Belkov |
|  | Arnold Belkov |
| 1 | Arnold Fisher Trust |
| 1 | Aron Nussencweig |
|  | Aron Nussencweig |
|  | Aron Nussencweig |
|  | Aron Nussencweig |
|  | Aron Nussencweig |
| 1 | Arthur Greenberger |
|  | Arthur Greenberger |
| 1 | Arthur H. Goldman Jr. SEP |
| 1 | Arthur Reyzis |
|  | Arthur Reyzis |
| 1 | Arye and Nechama Lerman |
| 1 | Aryeh and Ruth Feldman |
|  | Aryeh and Ruth Feldman |
|  | Aryeh and Ruth Feldman |
|  | Aryeh and Ruth Feldman |
| 1 | ASAF HAZANI |
| 1 | Ashton Properties, LLC |
| 1 | ASR LLC Pension Plan |
| 1 | August G. Fowler |
|  | August G. Fowler |
|  | August G. Fowler |
|  | August G. Fowler |
|  | August G. Fowler |
|  | August G. Fowler |
| 1 | Ava Serrur |
| 1 | Avi Friedman |
| 1 | AVI ZWEIG |
| 1 | AVIV AND GALIT COHEN |
|  | AVIV AND GALIT COHEN |
| 1 | AVIVA AND MENACHEM LEIBTAG |
| 1 | AVRAHAM WOLITZKY |
|  | AVRAHAM WOLITZKY |
|  | AVRAHAM WOLITZKY |
|  | AVRAHAM WOLITZKY |
| 1 | AVRAHAM BENZIKRY |
| 1 | Avraham Lerman |
|  | Avraham Lerman |
|  | Avraham Lerman |
| 1 | AVRAHAM SHIENFELD |
| 1 | Avri & Osnat Ziv-Elbaz |
|  | Avri & Osnat Ziv-Elbaz |
| 1 | Avrohom and Menucha Berzansky |
| 1 | AYDAN TURNER |
| 1 | B D LADERBERG |
|  | B D LADERBERG |
|  | B D LADERBERG |
|  | B D LADERBERG |
|  | B D LADERBERG |
|  | B D LADERBERG |
|  | B D LADERBERG |

| SEC Count | StRecipientName |
|---|---|
| | B D LADERBERG |
| 1 | B. D. Jason |
| 1 | B. Daniel and Sylvia L. Jason |
| 1 | BARBARA F. HART IRA |
| 1 | Barbara G. Hiatt |
| 1 | BARBARA J. KRUM IRA |
| | BARBARA J. KRUM IRA |
| 1 | Barbara M Levy |
| 1 | Barbara Meyers, IRA |
| 1 | Barry and Carrie Friedman |
| 1 | BARRY BERMAN |
| 1 | Barry David Peck IRA |
| | Barry David Peck |
| | Barry David Peck |
| 1 | Barry Kohn, FBO Alyssa Kohn |
| | Barry Kohn, FBO Danielle Zemel |
| 1 | BARRY RAUSMAN TRUST OF 2002 |
| 1 | Baruch E. and Joep H. Ottervanger |
| | Baruch E. and Joep H. Ottervanger |
| | Baruch E. and Joep H. Ottervanger |
| 1 | Baruch Harrar |
| 1 | Baruch Ottervanger |
| 1 | Basil S. and Roxanne T. Skenderis II |
| | Basil S. and Roxanne T. Skenderis II |
| 1 | BBK-TOI Partnership |
| | BBK-TOI Partnership |
| 1 | BCST ACQUISITIONS, LLC |
| 1 | Behar Family Trust |
| | Behar Family Trust |
| | Behar Family Trust |
| | Behar Family Trust |
| | Behar Family Trust |
| 1 | BEN & CHANA MAIZES |
| 1 | BEN SALOMONSKY |
| 1 | Benjamin and Marcy Forta |
| | Benjamin and Marcy Forta |
| | Benjamin and Marcy Forta |
| | Benjamin and Marcy Forta |
| | Benjamin and Marcy Forta |
| 1 | BENJAMIN J REGO IRA |
| 1 | BENJAMIN JESSELSON |
| 1 | Benjamin Moller |
| 1 | BENYAMIN & NADAV HACKER |
| | BENYAMIN & NADAV HACKER |
| | BENYAMIN & NADAV HACKER |
| | BENYAMIN & NADAV HACKER |
| 1 | BENYAMIN AND LIORA SHALOM |
| | BENYAMIN AND LIORA SHALOM |
| | BENYAMIN AND LIORA SHALOM |
| 1 | BENYAMIN, AVNER & NADAV HACKER |
| | BENYAMIN, AVNER & NADAV HACKER |
| 1 | Bernard Capuzelo |
| | Bernard Capuzelo |
| | Bernard Capuzelo |
| | Bernard Capuzelo |
| | Bernard Capuzelo |
| 1 | BERNARD KALISCH |
| 1 | Bernard Schloss, Revocable Living Trust |
| 1 | Bernie Fritz |
| 1 | Bertram Stein Revocable Trust |
| | Bertram Stein Revocable Trust |
| | Bertram Stein Revocable Trust |
| | Bertram Stein Revocable Trust |
| | Bertram Stein Revocable Trust |
| | Bertram Stein Revocable Trust |
| | Bertram Stein Revocable Trust |
| | Bertram Stein Revocable Trust |
| | Bertram Stein Revocable Trust |
| | Bertram Stein Revocable Trust |
| | Bertram Stein Revocable Trust |
| 1 | BETH MIDRASH EMEK HALACHA |
| 1 | BETTE SEGAL TOD |
| | BETTE SEGAL TOD |
| | BETTE SEGAL TOD |
| | BETTE SEGAL TOD |

| SEC Count | StRecipientName |
|---|---|
| 1 | Betty T. Harrison |
| | Betty T. Harrison |
| 1 | Betty Van Essen-Kok & Florry Van Essen |
| 1 | BETTY VAN-ESSEN-KOK & FLORRY VAN ESSEN |
| | BETTY VAN-ESSEN-KOK & FLORRY VAN ESSEN |
| 1 | BFKKMRW INTERSTATE PARK PARTNERSHIP |
| 1 | Big Bertha Investments LLC |
| 1 | BINYAMIN & MENACHEM LEIBTAG |
| 1 | BKKSWW-82 NY Partnership |
| 1 | BLAIR & LISA BROWN TRUST |
| 1 | Boaz & Devora Dragon |
| 1 | Bracha Partnership |
| 1 | BRANDI SHERMAN |
| | BRANDI SHERMAN |
| | BRANDI SHERMAN |
| | BRANDI SHERMAN |
| 1 | Bret J. Hillard |
| | Bret J. Hillard |
| | Bret J. Hillard |
| 1 | Brian and Laurie Edgar |
| | Brian and Laurie Edgar |
| 1 | BRIAN RUBIN |
| 1 | Bronia Drucker Revocable Trust |
| | Bronia Drucker Revocable Trust |
| | Bronia Drucker Revocable Trust |
| | Bronia Drucker Revocable Trust |
| 1 | Bronia Z. Drucker |
| | Bronia Z. Drucker |
| | Bronia Z. Drucker |
| | Bronia Z. Drucker |
| | Bronia Z. Drucker |
| | Bronia Z. Drucker |
| 1 | BROWN CORP. |
| | BROWN CORP. |
| 1 | BRUCE & BENITA SEGAL FAMILY LTD PARTNERSHIP |
| 1 | Bruce G. Williams |
| 1 | BRUNSWICK INVESTMENTS, LLC |
| | BRUNSWICK INVESTMENTS, LLC |
| 1 | Buestad Family Trust |
| 1 | Bukola Oduyelu |
| | Bukola Oduyelu |
| | Bukola Oduyelu |
| | Bukola Oduyelu |
| | Bukola Oduyelu |
| | Bukola Oduyelu |
| 1 | B-Z Properties, LLC |
| | B-Z Properties, LLC |
| 1 | C M Hayes & Company Retirement Plan |
| 1 | C. Donald and Pamela Q. Combs |
| 1 | C. Wayne Loudermilch |
| | C. Wayne Loudermilch |
| | C. Wayne Loudermilch |
| 1 | Candida Abrahamson |
| | Candida Abrahamson |
| | Candida Abrahamson IRA |
| | Candida Abrahamson IRA |
| 1 | Carl Erickson IRA |
| | Carl Erickson Roth IRA |
| 1 | CARL THOREN, TOD |
| 1 | CARLYE NABERS TOD |
| | CARLYE NABERS TOD |
| 1 | Carmen Eakes |
| | Carmen Eakes |
| | Carmen Eakes |
| 1 | Carmer Hassle Wallace |
| 1 | Caro Associates II |
| 1 | Carole S. Jefferies and R. Steven Price |
| | Carole S. Jefferies and R. Steven Price |
| 1 | Cartel Perlmutter |
| 1 | Celestine A. McFarland |
| 1 | CHAIM  WIZMAN |
| 1 | Chaim and Chaya Krasnow |
| 1 | CHAIM AND RISA  ROTHMAN |
| 1 | CHAIM RAND |

| SEC Count | StRecipientName |
|---|---|
| 1 | CHAIM STEFANSKY |
| 1 | Chaim Verschleisser |
| | Chaim Verschleisser |
| 1 | Chana E.  Karlinsky Schimmel |
| 1 | Chana Zentman |
| | Chana Zentman |
| 1 | Charles and Renni Chappan |
| 1 | CHARLES BIXENSPANNER |
| 1 | CHARLES C & RISHA GOLDMAN |
| | CHARLES C. GOLDMAN, LLC |
| | CHARLES C. GOLDMAN, LLC |
| 1 | Charles Gelfond |
| | Charles Gelfond |
| | Charles Gelfond |
| 1 | Charles K. McCoy IRA |
| | Charles K. McCoy IRA |
| 1 | Charlie and Julie McLaughlin, Jr. |
| | Charlie and Julie McLaughlin, Jr. |
| 1 | Charlotte Hirsh |
| | Charlotte Hirsh |
| | Charlotte Hirsh |
| 1 | CHAYA TAVIN |
| 1 | CHERYL EPSTEIN |
| | CHERYL EPSTEIN |
| | CHERYL EPSTEIN |
| 1 | CHESED GLOBAL FOUNDATION, INC |
| | CHESED GLOBAL FOUNDATION, INC |
| 1 | CHRISTOPHER J LANGAN |
| 1 | CIF Properties |
| | CIF Properties |
| | CIF Properties |
| 1 | Cindy P. Jones |
| | Cindy P. Jones |
| | Cindy P. Jones |
| 1 | CITY FIRST FOUNDATION |
| | CITY FIRST FOUNDATION |
| | CITY FIRST FOUNDATION |
| | CITY FIRST FOUNDATION |
| | CITY FIRST FOUNDATION |
| 1 | Claremont Assets Ltd. |
| 1 | CLIFFORD H ALTSCHULL IRA |
| | CLIFFORD H ALTSCHULL IRA |
| | CLIFFORD H ALTSCHULL IRA |
| 1 | Clifford H. Altschull |
| | Clifford H. Altschull |
| | Clifford H. Altschull |
| | Clifford H. Altschull |
| | Clifford H. Altschull |
| 1 | Coastal Property Development Inc. |
| 1 | Common Hartford Accommodation, Inc. |
| | Common Hartford Accommodation, Inc. |
| 1 | Congregation Beth Jehudah |
| | Congregation Beth Jehudah |
| | Congregation Beth Jehudah |
| | Congregation Beth Jehudah |
| | Congregation Beth Jehudah |
| | Congregation Beth Jehudah |
| 1 | Congregation Bnai Jacob |
| | Congregation Bnai Jacob |
| 1 | Congregation Bnei Yakov |
| | Congregation Bnei Yakov |
| | Congregation Bnei Yakov |
| | Congregation Bnei Yakov |
| | Congregation Bnei Yakov |
| | Congregation Bnei Yakov |
| | Congregation Bnei Yakov |
| | Congregation Bnei Yakov |
| | Congregation Bnei Yakov |
| 1 | CONGREGATION ETZ CHAIM OF HANCOCK PARK |
| | CONGREGATION ETZ CHAIM OF HANCOCK PARK |
| 1 | CONGREGATION KHAL CHASIDIM |
| | CONGREGATION KHAL CHASIDIM |
| 1 | CONGREGATION MARBITZ TORAH |
| 1 | Congregation Menorah |

| SEC Count | StRecipientName |
|---|---|
| 1 | CONGREGATION YESOCHER BERISH |
| | CONGREGATION YESOCHER BERISH |
| | CONGREGATION YESOCHER BERISH |
| 1 | CONTINENTAL CHRISTIAN CENTER |
| | CONTINENTAL CHRISTIAN CENTER |
| 1 | CORNELIUS & ROSALIE REVIER |
| | CORNELIUS & ROSALIE REVIER |
| 1 | Craig C. Sinclair IRA |
| | Craig C. Sinclair IRA |
| 1 | Cristen R. & Judith M. Copley |
| | Cristen R. & Judith M. Copley |
| 1 | CROWNE INVESTMENTS |
| 1 | CSN REALTY |
| 1 | Cuong Chi  Li |
| | Cuong Chi  Li |
| 1 | CYNTHIA G BULLOCK |
| 1 | D&S TRUST |
| 1 | Dana Preiss |
| 1 | Daniel  Daniel |
| | Daniel  Daniel |
| | Daniel  Daniel |
| | Daniel  Daniel |
| 1 | Daniel  Orenstein |
| | Daniel  Orenstein |
| | Daniel  Orenstein |
| 1 | Daniel and Barbara Krum |
| | Daniel and Barbara Krum |
| 1 | Daniel and Libbie Avivi |
| | Daniel and Libbie Avivi |
| 1 | DANIEL AND MATAN ARAZY JTWROS |
| | DANIEL AND MATAN ARAZY JTWROS |
| 1 | DANIEL D ELY |
| | DANIEL D ELY |
| 1 | DANIEL KASZOVITZ |
| | DANIEL KASZOVITZ |
| | DANIEL KASZOVITZ |
| | DANIEL KASZOVITZ |
| | DANIEL KASZOVITZ |
| 1 | DANIEL S. COHEN |
| | DANIEL S. COHEN |
| | DANIEL S. COHEN |
| | DANIEL S. COHEN |
| | DANIEL S. COHEN |
| 1 | DANIEL SCHLOSS |
| 1 | Daniel W. and Cathy S.  Dubyk |
| | Daniel W. and Cathy S.  Dubyk |
| 1 | Danny Atar |
| 1 | Darrel W. Purdy |
| | Darrel W. Purdy IRA |
| 1 | Darryl A. Stubbs IRA |
| | Darryl A. Stubbs IRA |
| | Darryl A. Stubbs IRA |
| 1 | DARRYL CARVER IRA |
| 1 | David  Salow and Jennifer Foster |
| 1 | David  Shore |
| | David  Shore |
| | David  Shore |
| 1 | David A and Valerie S Arias |
| | David A and Valerie S Arias |
| | David A and Valerie S Arias |
| 1 | David A. Barto IRA |
| | David A. Barto IRA |
| 1 | David A. Franco |
| | David A. Franco |
| 1 | David A. Kruger Revocable Living Trust |
| | David A. Kruger Revocable Living Trust |
| | David A. Kruger Revocable Living Trust |
| | David A. Kruger Revocable Living Trust |
| | David A. Kruger Revocable Living Trust |
| 1 | David and Brenda DiClemente |
| | David and Brenda DiClemente |
| | David and Fabiola Betancourt |
| 1 | David and Joanne Wade |
| 1 | David and Susan Nizankiewicz |

7

| SEC Count | StRecipientName |
|---|---|
| | David and Susan Nizankiewicz |
| | David and Susan Nizankiewicz |
| 1 | DAVID BENZIKRY |
| 1 | DAVID BRAUN |
| 1 | David C. Gross |
| 1 | DAVID C. HEINLE |
| 1 | DAVID FIELDS IRA |
| 1 | DAVID FOX |
| | DAVID FOX |
| | DAVID FOX |
| | DAVID FOX |
| 1 | David H. Lerner |
| | David H. Lerner |
| 1 | David Hidary IRA |
| | David Hidary IRA |
| 1 | DAVID J & SHARONA D KAY |
| | DAVID J & SHARONA D KAY |
| | DAVID J & SHARONA D KAY |
| 1 | David J. Weinberger |
| 1 | DAVID K. BRIDGER IRA |
| 1 | David Kruger IRA |
| | David Kruger IRA |
| 1 | David L & Sheryl Jacobowitz |
| 1 | David P. Mills |
| 1 | David Reiniger |
| | David Reiniger |
| | David Reiniger |
| 1 | DAVID S. K. COREY JR. LIVING TRUST |
| | DAVID S. K. COREY JR. LIVING TRUST |
| | DAVID S. K. COREY JR. LIVING TRUST |
| 1 | David Segev |
| | David Segev |
| 1 | DAVID WEINBERG |
| 1 | Deborah Dowell |
| | Deborah Dowell |
| 1 | Deborah Lerman |
| | Deborah Lerman |
| | Deborah Lerman |
| 1 | DEBRA GOLDWASSER |
| 1 | DEBRA M. KEELING |
| 1 | Denis Freiden |
| | Denis Freiden |
| 1 | DENNIS & KATHLEEN BLOUGH |
| | DENNIS & KATHLEEN BLOUGH |
| 1 | DENNIS BOWERMAN, IRA |
| 1 | Dennis Katz Profit Sharing Plan |
| 1 | DENNIS W. & CYNTHIA A.  MCKAY  JTWROS |
| 1 | DERLIN LLC |
| | DERLIN LLC |
| 1 | Designs By FMC, Inc. |
| 1 | Devora Neuman |
| 1 | Diane  Binder |
| 1 | Diane M. Stevens |
| | Diane M. Stevens |
| | Diane M. Stevens |
| 1 | Digum Up IDEX, LLP |
| 1 | DIMITRA ADRIAN |
| 1 | Dimond Investments |
| 1 | DNA LIMITED PARTNERSHIP |
| | DNA LIMITED PARTNERSHIP |
| 1 | DO NOT MAIL Signature Sports Management |
| | DO NOT MAIL Signature Sports Management |
| 1 | Dominic and Patricia  Durinzi |
| 1 | Dominic P. Lascara |
| | Dominic P. Lascara |
| 1 | Donald and Juanita Dulkinys |
| 1 | Donald E. Lilly |
| 1 | DONALD GARLOW SIMPLE IRA |
| 1 | DONALD GARLOW, IRA |
| 1 | DONALD J  GIMPEL, IRA |
| | Donald J. Gimpel |
| 1 | DONNA  PASTOR |
| 1 | DONNA J COLLIER |
| 1 | Doris G. Wallace  Eakes Revocable Trust |

| SEC Count | StRecipientName |
|---|---|
| | Doris G. Wallace  Eakes Revocable Trust |
| | Doris G. Wallace  Eakes Revocable Trust |
| | Doris G. Wallace  Eakes Revocable Trust |
| 1 | Doris W.  Eakes Charitable Remainder Trust |
| | Doris W.  Eakes Charitable Remainder Trust |
| | Doris W.  Eakes Charitable Remainder Trust |
| 1 | Dotan Shidlovsky |
| | Dotan Shidlovsky |
| 1 | DOUG J. KAWULYCH |
| 1 | Douglas and Laura Montagna |
| | Douglas and Laura Montagna |
| | Douglas and Laura Montagna |
| | Douglas and Laura Montagna |
| 1 | Douglas D. Mitchell |
| | Douglas D. Mitchell |
| | Douglas D. Mitchell |
| 1 | Douglas F. and Jodi L. Berman, TTEACL |
| | Douglas F. and Jodi L. Berman, TTEACL |
| | Douglas F. and Jodi L. Berman, TTEACL |
| | Douglas F. and Jodi L. Berman, TTEACL |
| | Douglas F. and Jodi L. Berman, TTEACL |
| | Douglas F. and Jodi L. Berman, TTEACL |
| 1 | Douglas H. Jones IRA |
| | Douglas Jones |
| 1 | Douglas S. Coles |
| | Douglas S. Coles IRA |
| 1 | Dov and Sahra Segal |
| | Dov and Sahra Segal |
| | Dov and Sahra Segal |
| | Dov and Sahra Segal |
| 1 | DOV FREI |
| | DOV FREI |
| 1 | DURAN PROPERTY MGMT, LLC |
| 1 | Dweck Investments LLC |
| | Dweck Investments LLC |
| | Dweck Investments LLC |
| | Dweck Investments LLC |
| | Eakes Family LP |
| | Eakes Family LP |
| | Eakes Family LP |
| | Eakes Family LP |
| | Eakes Family LP |
| | Eakes Family LP |
| | Eakes Family LP |
| 1 | EARL AND PATRICIA ZIEGLER |
| 1 | Earl C. Rigsby IRA |
| | Earl C. Rigsby IRA |
| | Earl C. Rigsby IRA |
| 1 | EARNEST W. and RHONDA I. BUTLER |
| 1 | East Bay, LLC |
| | East Bay, LLC |
| | East Bay, LLC |
| 1 | EB BUSINESS TRUST |
| 1 | Eden Friedman |
| | Eden Friedman |
| | Eden Friedman |
| | Eden Friedman |
| | Eden Friedman |
| | Eden Friedman |
| | Eden Friedman IRA |
| 1 | Edward and Barbara  White |
| 1 | Edward Avadenka |
| 1 | EDWARD BINET |
| | EDWARD BINET |
| | EDWARD BINET |
| | EDWARD BINET |
| 1 | EDWARD H FRANKLIN |
| | EDWARD H FRANKLIN |
| 1 | Edwin Alan Dramer |
| 1 | Efraim Karlinsky |
| 1 | Efraim Twerski |
| 1 | Elan Zivotofsky |
| | Elan Zivotofsky |
| | Elan Zivotofsky |

| SEC Count | StRecipientName |
|---|---|
| | Elan Zivotofsky |
| 1 | Elayne G. Littman |
| 1 | Elchanan Rosenheim |
| | Elchanan Rosenheim |
| | Elchanan Rosenheim |
| 1 | Eleanor Hedden |
| 1 | ELI FINKEL |
| 1 | Eli Jacobson |
| 1 | Elie Deitsch |
| | Elie Deitsch |
| 1 | Elie Hassan Trust |
| 1 | Eliezer Levin |
| | Eliezer Levin |
| | Eliezer Levin |
| 1 | ELIYAHU KERSHENBAUM |
| 1 | Elizabeth F. Davis |
| 1 | ELKA  SHERESHEVSKY CUST PESHA SHERESHEVSKY UTMA |
| | ELKA SHERESHEVSKY |
| | ELKA SHERESHEVSKY CUST CHAIM SHERESHEVSKY UTMA |
| | ELKA SHERESHEVSKY SEP IRA |
| | ELKA SHERESHEVSKY SEP IRA |
| 1 | ELLA MALKA & MORDECHAI NAISHULER |
| 1 | Ellen Jo Myers |
| | Ellen Jo Myers |
| | Ellen Jo Myers |
| 1 | Ellen Rothenberg |
| 1 | ELLIOT D ALLSWANG REVOCABLE TRUST |
| | ELLIOT D ALLSWANG REVOCABLE TRUST |
| | ELLIOT D ALLSWANG REVOCABLE TRUST |
| 1 | ELMAN RETINA GROUP, PC |
| 1 | Elmer L. Offenbacher IRA |
| | Elmer L. Offenbacher IRA |
| 1 | ELVIRA HOGANSON |
| | ELVIRA HOGANSON |
| | ELVIRA HOGANSON |
| | ELVIRA HOGANSON |
| | ELVIRA HOGANSON |
| 1 | ELY AND MALKA ASHKENAZI |
| 1 | EM, LP |
| | EM, LP |
| | EM, LP |
| | EM, LP |
| 1 | Emanuel A. and Nancy H. Arias |
| | Emanuel A. and Nancy H. Arias |
| | Emanuel A. and Nancy H. Arias |
| | Emanuel Arias |
| | Emanuel Arias |
| 1 | EPHRAIM AND ALIZA SCHWARTZ |
| | EPHRAIM AND ALIZA SCHWARTZ |
| | EPHRAIM AND ALIZA SCHWARTZ |
| | EPHRAIM AND ALIZA SCHWARTZ |
| | Ephraim Schwartz |
| | Ephraim Schwartz |
| | Ephraim Schwartz |
| | Ephraim Schwartz |
| | Ephraim Schwartz |
| 1 | ERIC SMOKLER IRA |
| 1 | Erik Brinker IRA |
| 1 | Ernest  Belcher Exemption Trust |
| | Ernest  Belcher Exemption Trust |
| | Ernest  Belcher Exemption Trust |
| | Ernest  Belcher Exemption Trust |
| 1 | ERNEST COLE |
| 1 | ESLO INDUSTRIES, INC |
| 1 | ESTELLE COHEN and JOY STIMMEL JTWROS |
| 1 | ESTELLE KATZ |
| 1 | ESTELLE KATZ |
| | ESTELLE KATZ |
| 1 | Esther Friedman-Engel and Shlomo Friedman |
| 1 | Esther Nathan |
| 1 | ESTHER ROSEN |
| | ESTHER ROSEN |
| | ESTHER ROSEN |
| 1 | Esther S. Bridge |
| 1 | Eugene L Kanter Revocable Trust |

| SEC Count | StRecipientName |
|---|---|
| | Eugene L Kanter Revocable Trust |
| | Eugene L Kanter Revocable Trust |
| | Eugene L Kanter Revocable Trust |
| | Eugene L Kanter Revocable Trust |
| | Eugene L Kanter Revocable Trust |
| | Eugene L Kanter Revocable Trust |
| | Eugene L. and Nancy K. Kanter |
| | Eugene L. and Nancy K. Kanter |
| | Eugene L. and Nancy K. Kanter |
| | Eugene L. and Nancy K. Kanter |
| | Eugene L. and Nancy K. Kanter |
| 1 | EVAN BUNTMAN |
| 1 | Evelyn & Cameron Munden Foundation |
| 1 | Evelyn Munden |
| 1 | Even Shlayma, LLC |
| 1 | Exum Lee, Jr. |
| | Exum Lee, Jr. |
| 1 | EYAL & HADAR BEN-AMI SCHIFF |
| | EYAL & HADAR BEN-AMI SCHIFF |
| 1 | EYAL AND SARA  SCHIFF AND HADAR BEN-AMI |
| 1 | F.L. Sterling Trust |
| | F.L. Sterling Trust |
| | F.L. Sterling Trust |
| | F.L. Sterling Trust |
| 1 | Fawdon Investments, LTD |
| 1 | Fay Karlinsky Glick |
| | Fay Karlinsky Glick |
| | Fay Karlinsky Glick |
| | Fay Karlinsky Glick |
| | Fay Karlinsky Glick |
| 1 | FCL OAKBROOK DRAKE, LLC |
| 1 | FERMIN & SUSAN REYES |
| 1 | Finkam Mining |
| 1 | First Capital Management LLC |
| | First Capital Management LLC |
| 1 | Fishel Nieman |
| | Fishel Nieman |
| 1 | Florry Van Essen & Betty Van Essen-Kok |
| | Florry Van Essen & Betty Van Essen-Kok |
| | Florry Van Essen & Betty Van Essen-Kok |
| | Florry Van Essen & Betty Van Essen-Kok |
| | Florry Van Essen & Betty Van Essen-Kok |
| 1 | FRANCIS L STERLING IRA |
| 1 | Frank  Ragland |
| 1 | Frank Anthony Cafazzo |
| | Frank Anthony Cafazzo |
| 1 | Frank Capuzelo Revocable Trust |
| | Frank Capuzelo Revocable Trust |
| | Frank Capuzelo Revocable Trust |
| 1 | Frank Ward IRA |
| | Frank Ward IRA |
| 1 | Frank Yaccarino |
| 1 | FRED HOSCHANDER |
| 1 | FRED STEPEN |
| 1 | Frediva Associates |
| | Frediva Associates |
| | Frediva Associates |
| 1 | FREDRIC & SIANA WEINER |
| 1 | Freyda and Abraham Oppen |
| 1 | Friends of Yeshivath Eeyun Hatalmud Inc. |
| 1 | G & H Partners AG |
| 1 | Gabriel Goldin |
| | Gabriel Goldin |
| | Gabriel Goldin |
| 1 | Gabriel Goldin and Nurit Goldin-Sadeh |
| 1 | Gad Rosen |
| | Gad Rosen |
| | Gad Rosen |
| 1 | Gady Buiumsohn IRA |
| | Gady Buiumsohn IRA |
| | Gady Buiumsohn IRA |
| | Gady Buiumsohn IRA |
| | Gady Buiumsohn IRA |
| | Gady Buiumsohn IRA |

| SEC Count | StRecipientName |
|---|---|
| 1 | Gaetan A. Riopel |
| | Gaetan A. Riopel |
| | Gaetan A. Riopel |
| | Gaetan A. Riopel |
| | Gaetan A. Riopel |
| | Gaetan A. Riopel |
| 1 | Galanides Realty Company, Inc. |
| | Galanides Realty Company, Inc. |
| 1 | Garrett A. and Kelley D. Anderson |
| | Garrett A. and Kelley D. Anderson |
| 1 | GARRETT LIMITED PARTNERSHIP "B" |
| 1 | GARRY L HUFF MD, INC EMPL PSP |
| 1 | Gary  Milkis |
| 1 | Gary A. Baskin IRA |
| | Gary A. Baskin IRA |
| 1 | GARY A. GURVEY |
| 1 | Gary A. Sigel |
| | Gary A. Sigel |
| 1 | Gary and Dena Wruble |
| | Gary and Dena Wruble |
| | Gary and Dena Wruble |
| | Gary and Dena Wruble |
| | Gary and Diane Haskell |
| | Gary and Diane Haskell |
| | Gary and Diane Haskell |
| 1 | Gary C. Garrett IRA |
| | Gary C. Garrett IRA |
| | Gary C. Garrett IRA |
| | Gary C. Garrett IRA |
| | Gary C. Garrett IRA |
| | Gary C. Garrett IRA |
| 1 | Gary J. and Leslie F. Rothman |
| 1 | Gary K. Sims |
| | Gary K. Sims |
| | Gary K. Sims |
| | Gary K. Sims |
| 1 | Gary Rego IRA |
| | Gary Rego IRA |
| 1 | GARY ZIVITZ |
| | GARY ZIVITZ |
| 1 | Gayle Newsome |
| | Gayle Newsome |
| 1 | GEOFFREY JASON |
| | GEOFFREY JASON |
| | GEOFFREY JASON |
| 1 | GEORGE A and PATRICIA B LUTZ, JTWROS |
| | GEORGE A and PATRICIA B LUTZ, JTWROS |
| | GEORGE A and PATRICIA B LUTZ, JTWROS |
| | George A. Lutz IRA |
| | George A. Lutz IRA |
| 1 | George and Joan Cohen |
| | George and Joan Cohen |
| | George and Joan Cohen |
| | George and Joan Cohen |
| | George Cohen IRA |
| 1 | George F. Frank |
| | George F. Frank |
| 1 | GEORGE J. SELLA JR. |
| 1 | GEORGE PHILBRICK IRA |
| 1 | George T. Jamerson |
| | George T. Jamerson |
| | George T. Jamerson |
| | George T. Jamerson |
| 1 | George W. Thompson III |
| | George W. Thompson III |
| | George W. Thompson III, IRA |
| | George W. Thompson III, IRA |
| | George W. Thompson III, IRA |
| 1 | Georgiy Sosunov |
| | Georgiy Sosunov |
| 1 | GERALD  HELD, TOD |
| 1 | GERALD AND EILEEN BORSAND |
| 1 | Gerald Einhorn IRA |
| 1 | Gerald Jaffe IRA |

| SEC Count | StRecipientName |
|---|---|
| | Gerald Jaffe IRA |
| | Gerald Jaffe IRA |
| | Gerald Jaffe IRA |
| 1 | Gerald L. Bloom IRA |
| | Gerald L. Bloom IRA |
| | Gerald L. Bloom IRA |
| 1 | Gerald R. Huffman |
| 1 | Gerd M. Niehoff |
| | Gerd M. Niehoff |
| 1 | GHL Investments LLC |
| | GHL Investments LLC |
| 1 | GILA POLAK |
| 1 | GISELA GARMAISE |
| 1 | GITTEL SILBIGER |
| 1 | Global Interpret Group, Ltd. |
| | Global Interpret Group, Ltd. |
| | Global Interpret Group, Ltd. |
| | Global Interpret Group, Ltd. |
| | Global Interpret Group, Ltd. |
| | Global Interpret Group, Ltd. |
| | Global Interpret Group, Ltd. |
| | Global Interpret Group, Ltd. |
| | Global Interpret Group, Ltd. |
| | Global Interpret Group, Ltd. |
| | Global Interpret Group, Ltd. |
| | Global Interpret Group, Ltd. |
| | Global Interpret Group, Ltd. |
| 1 | Gloria Burstyn-Mauer and Jacob Burstyn |
| | Gloria Burstyn-Mauer and Jacob Burstyn |
| | Gloria Burstyn-Mauer and Joseph Burstyn |
| | Gloria Burstyn-Mauer and Joseph Burstyn |
| | Gloria Burstyn-Mauer and Joseph Burstyn |
| 1 | GLYNN FAMILY TRUST DTD 06/03/02 |
| | GLYNN FAMILY TRUST DTD 06/03/02 |
| 1 | Golden Family 1997 Revocable Trust |
| 1 | Gomlai Tovos |
| 1 | Govert & Hannah Judith Sarlui |
| | Govert & Hannah Judith Sarlui |
| 1 | Gregory and Maria C. Morando |
| | Gregory and Maria C. Morando |
| | Gregory and Maria C. Morando |
| | Gregory and Maria C. Morando |
| 1 | H. JOANNE ZIVALICH |
| 1 | HAGER BENCION |
| 1 | Haim and Rachel Noam |
| 1 | HAMLAN ASSOCIATES |
| 1 | HAMMOND LA PROJECT, LLC |
| 1 | Harch Realty |
| 1 | Hardt Family Trust-Samuel Hardt & Solomon Bernstein TTEES |
| 1 | Harley Kohner, IRA |
| | Harley Kohner, IRA |
| 1 | Harold and Carolyn C. Pollack |
| 1 | Harold and Charlotte Dubin |
| 1 | Harold M. and Lula T. Bowman |
| 1 | Harriet Gelfond Revocable Trust |
| | Harriet Gelfond Revocable Trust |
| | Harriet Gelfond Revocable Trust |
| | Harriet Gelfond Revocable Trust |
| | Harriet Gelfond Revocable Trust |
| | Harriet Gelfond Revocable Trust |
| | Harriet Gelfond Revocable Trust |
| | Harriet Gelfond Revocable Trust |
| | Harriet Gelfond Revocable Trust |
| 1 | HARRIET GLICKSTEIN LIVING TRUST |
| | HARRIET GLICKSTEIN LIVING TRUST |
| | HARRIET GLICKSTEIN LIVING TRUST |
| | HARRIET GLICKSTEIN LIVING TRUST |
| | HARRIET GLICKSTEIN LIVING TRUST |
| 1 | HARRY ZELCER |
| | HARRY ZELCER |
| 1 | HARVEY AND JOAN NEWMAN |
| | HARVEY AND JOAN NEWMAN |
| 1 | HBO ASSOCIATES |
| | HBO ASSOCIATES |

13

| SEC Count | StRecipientName |
|---|---|
|  | HBO ASSOCIATES |
| 1 | Heching Family Partnership #9 |
| 1 | Hedy Lehrer Weinberger |
| 1 | Helen Epner |
|  | Helen Epner |
| 1 | Helen Jones and Nan Jandasek |
| 1 | Helen Sellers |
| 1 | HENRY & IRMA HAUSDORFF |
|  | HENRY & IRMA HAUSDORFF |
|  | HENRY & IRMA HAUSDORFF |
|  | HENRY & IRMA HAUSDORFF |
| 1 | HENRY P BARHAM |
| 1 | Herbert N. Stein Revocable Living Trust |
|  | Herbert N. Stein Revocable Living Trust |
|  | Herbert N. Stein Revocable Living Trust |
|  | Herbert N. Stein Revocable Living Trust |
|  | Herbert N. Stein Revocable Living Trust |
|  | Herbert N. Stein Revocable Living Trust |
|  | Herbert N. Stein Revocable Living Trust |
| 1 | Herbert Rausman |
| 1 | Herbert S. Rosin |
| 1 | HERLE TRUST |
| 1 | Herman S. Blumenthal Revocable Trust |
| 1 | Hershey Katz |
| 1 | Hershie and Otto Weingarten |
| 1 | Hershie Weingarten |
| 1 | Hersz Zukier |
|  | Hersz Zukier |
|  | Hersz Zukier |
|  | Hersz Zukier |
| 1 | HIFRANI, LLC |
| 1 | Hilary Ross IRA |
| 1 | Hilda Ferder |
|  | Hilda Ferder |
| 1 | Hilda Joy Ferder |
|  | Hilda Joy Ferder |
| 1 | HOD INTERNATIONAL EQUITIES |
| 1 | HOLDA PROPERTIES |
| 1 | Horace E. and Angela B. Washington, Jr. |
|  | Horace E. and Angela B. Washington, Jr. |
| 1 | Howard Stimmel Custodian |
|  | Howard and Sharon Evans |
|  | Howard and Sharon Evans |
|  | Howard and Sharon Evans |
|  | Howard and Sharon Evans |
|  | Howard and Sharon Evans |
|  | Howard and Sharon Evans |
|  | Howard and Sharon Evans |
| 1 | Howard Evans |
| 1 | Howard Greenstein |
| 1 | HOWARD J. AVERBUCH TRUST |
|  | HOWARD J. AVERBUCH TRUST |
|  | HOWARD J. AVERBUCH TRUST |
|  | HOWARD J. AVERBUCH TRUST |
| 1 | HOWARD M BERN CHILDRENS TRUST |
| 1 | Howard Wengrow |
|  | Howard Wengrow |
|  | Howard Wengrow |
|  | Howard Wengrow |
|  | Howard Wengrow |
| 1 | Hummel Living Trust |
|  | Hummel Living Trust |
|  | Hummel Living Trust |
| 1 | Ilan Abutbul |
|  | Ilan Abutbul |
|  | Ilan Abutbul |
|  | Ilan Abutbul |
| 1 | IONICA Trading Ltd. |
| 1 | IRA MICHAELS QRP/KEOGH |
|  | Ira Michaels Revocable Trust |
|  | Ira Michaels Revocable Trust |
|  | Ira Michaels Revocable Trust |
|  | Ira Michaels Revocable Trust |
| 1 | IRENE NEBENZAHL |

| SEC Count | StRecipientName |
|---|---|
| 1 | Iris and Shay Shuker |
| | Iris and Shay Shuker |
| | Iris and Shay Shuker |
| 1 | IRVIN & MARGARET BERNSTEIN TRUST |
| | Irvin and Margaret Bernstein |
| | Irvin and Margaret Bernstein |
| 1 | Irvin and Mona Belkov |
| | Irvin Bernstein Amended and Restarted Trust DTD 12/9/99 |
| | Irvin Bernstein Amended and Restarted Trust DTD 12/9/99 |
| | Irvin Bernstein Amended and Restarted Trust DTD 12/9/99 |
| | Irvin Bernstein Amended and Restarted Trust DTD 12/9/99 |
| | Irvin Bernstein Amended and Restarted Trust DTD 12/9/99 |
| 1 | IRVING GLUCK |
| 1 | Irwin A. and Gaby Y. Heller |
| 1 | Irwin L. and Judith L.  Elson |
| 1 | ISAAC HIDARY IRA |
| 1 | ISAAC MASHITZ IRA |
| 1 | Isaac S. Franco |
| 1 | Isaiah and Ruthie Karlinsky |
| | Isaiah and Ruthie Karlinsky |
| | Isaiah and Ruthie Karlinsky |
| | Isaiah and Ruthie Karlinsky |
| | Isaiah and Ruthie Karlinsky |
| | Isaiah and Ruthie Karlinsky |
| 1 | ISAIAH KARLINSKY & FAY K. GLICK |
| | ISAIAH KARLINSKY & FAY K. GLICK |
| | ISAIAH KARLINSKY & FAY K. GLICK |
| 1 | Israel & Tsurit  Bivas |
| | Israel & Tsurit  Bivas |
| | Israel & Tsurit  Bivas |
| 1 | Israel and Jennifer  Zoberman |
| | Israel and Jennifer  Zoberman |
| | Israel and Jennifer  Zoberman |
| | Israel and Jennifer  Zoberman |
| 1 | Israel Klar |
| | Israel Klar |
| | Israel Klar |
| 1 | ISS #1 Partnership |
| 1 | ITZHAK & RACHEL  SHEMEN |
| | ITZHAK & RACHEL  SHEMEN |
| 1 | Itzhak Barry |
| | Itzhak Barry |
| 1 | Ivan and Esther  Goldblatt |
| | Ivan and Esther  Goldblatt |
| | Ivan and Esther  Goldblatt |
| | Ivan and Esther  Goldblatt |
| | Ivan and Esther  Goldblatt |
| | Ivan and Esther  Goldblatt |
| | Ivan and Esther  Goldblatt |
| | Ivan and Esther  Goldblatt |
| | Ivan and Esther  Goldblatt |
| 1 | J DAVID & CYNTHIA W CRAIG |
| 1 | J. OGERT AND J. OGERT HOLDINGS |
| 1 | J. Stanley Furman |
| | J. Stanley Furman |
| | J. Stanley Furman |
| | J. Stanley Furman |
| | J. Stanley Furman |
| | J. Stanley Furman |
| 1 | Jack C. Kanter |
| | Jack C. Kanter |
| | Jack C. Kanter |
| | Jack C. Kanter |
| | Jack C. Kanter Revocable Trust |
| | Jack C. Kanter Revocable Trust |
| | Jack C. Kanter Revocable Trust |
| | Jack C. Kanter Revocable Trust |
| | Jack C. Kanter Revocable Trust |
| | Jack C. Kanter Revocable Trust |
| | Jack C. Kanter Revocable Trust |
| 1 | Jacklyn F. Richels |
| 1 | Jacky Levy |
| 1 | JACOB ABRAMCZYK |
| 1 | Jacob and Dvora  Goldner |

| SEC Count | StRecipientName |
|---|---|
| 1 | JACOB BENZADON |
| 1 | Jacob E. Gross |
|  | Jacob E. Gross |
|  | Jacob E. Gross |
| 1 | JACOB MINTZ |
| 1 | Jaffe Family Trust |
|  | Jaffe Family Trust |
|  | Jaffe Grandchildren Irrevocable Trust |
|  | Jaffe Grandchildren Irrevocable Trust |
|  | Jaffe Grandchildren Irrevocable Trust |
| 1 | JAFS ARIZONA, LLC |
| 1 | James  Lerman IRA |
|  | James  Lerman IRA |
| 1 | JAMES  NEWSOME SR, CUSTODIAN |
| 1 | James  Reynolds, Jr. IRA |
| 1 | James & Patricia Handrahan |
|  | James & Patricia Handrahan |
|  | James & Patricia Handrahan |
|  | James & Patricia Handrahan |
| 1 | JAMES A & CHANDRA K DICKINSON |
|  | JAMES A & CHANDRA K DICKINSON |
| 1 | James and Alice Lerman |
|  | James and Alice Lerman |
|  | James and Alice Lerman |
|  | James and Alice Lerman |
| 1 | James and Dimitra Adrian |
| 1 | James and Heather Renehan |
| 1 | James Archbell III Custodian |
|  | James Archbell III Custodian |
|  | James Archbell III Custodian |
|  | James Archbell III Custodian |
|  | James Archbell III Custodian |
|  | James Archbell III Custodian |
|  | James Archbell IV |
|  | James Archbell IV |
|  | James C. Archbell III |
|  | James C. Archbell III |
|  | James C. Archbell III |
| 1 | JAMES D LECKINGER IRA |
| 1 | James E.  Willett Trust |
| 1 | JAMES E. GROGAN |
| 1 | JAMES K MORANDO |
|  | JAMES K MORANDO |
|  | James K. and Elisabeth Morando |
|  | James K. and Elisabeth Morando |
| 1 | James L. and Joella S. Roberts |
| 1 | James M. and Joan M. McKenney |
|  | James M. and Joan M. McKenney |
|  | James M. and Joan M. McKenney |
|  | James M. and Joan M. McKenney |
|  | James M. and Joan M. McKenney |
| 1 | James M. Williamson |
|  | James M. Williamson |
| 1 | James N. and Elfride E. Psimas |
| 1 | JAMES NEWSOME SR, CUSTODIAN |
|  | JAMES NEWSOME SR, CUSTODIAN |
|  | JAMES NEWSOME SR, CUSTODIAN |
|  | James Patrick Newsome Sr. Trust |
|  | James Patrick Newsome Sr. Trust |
|  | James Patrick Newsome Sr. Trust |
|  | James Patrick Newsome Sr. Trust |
|  | James Patrick Newsome Sr. Trust |
|  | James Patrick Newsome Sr. Trust |
| 1 | JAMES RENEHAN, IRA |
| 1 | James S. and Susan K. Eilberg |
|  | James S. and Susan K. Eilberg |
| 1 | James W. Ireland IRA |
| 1 | Jane  Haitjema Best, IRA |
| 1 | Jane S. Thies |
| 1 | Janet and Lawrence McCarthy |
|  | Janet and Lawrence McCarthy |
|  | Janet and Lawrence McCarthy |
|  | Janet M. McCarthy IRA |

| SEC Count | StRecipientName |
|---|---|
| 1 | JANET S. AIKEN  REV TRUST |
| 1 | Janice K. Zivitz |
| | Janice K. Zivitz |
| | Janice K. Zivitz |
| | Janice K. Zivitz |
| 1 | Jared Gellert |
| | Jared Gellert |
| | Jared Gellert |
| 1 | JARED VIDERS |
| | JARED VIDERS |
| 1 | JASON  BEN ZEEV IRA |
| | Jason Ben-Zeev |
| 1 | JAY AND  PATRICIA STARLING |
| 1 | Jay and Elaine  Viders |
| 1 | JAY C STARLING, IRA |
| | JAY C STARLING, IRA |
| | Jay R. Viders |
| | Jay R. Viders |
| | Jay R. Viders |
| | Jay R. Viders |
| | Jay R. Viders |
| | Jay R. Viders |
| | Jay Viders, IRA |
| 1 | JBAM Realty, LLC |
| 1 | JEANNE VICCELLIO |
| | JEANNE VICCELLIO |
| 1 | Jeff Arias |
| | Jeff Arias |
| | Jeff Arias |
| 1 | Jeffery & Kathy Jones |
| 1 | Jeffrey A. Barr IRA |
| | Jeffrey A. Barr IRA |
| 1 | Jeffrey and Sariva Sklar |
| | Jeffrey and Sariva Sklar |
| | Jeffrey and Sariva Sklar |
| 1 | Jeffrey G. Teune |
| 1 | Jeffrey L. & Nancy K. Weinfeld |
| 1 | Jeffrey L. Wohlwend Investment Trust |
| 1 | Jeffrey M. and Michelle Gilbert |
| 1 | Jeffrey Sklar IRA |
| 1 | JEFFREY STEVEN BELL, IRA |
| 1 | Jeffrey Webster |
| | Jeffrey Webster |
| | Jeffrey Webster |
| | Jeffrey Webster |
| 1 | JENNIFER HARRINGTON |
| 1 | JENNIFER L. SMITH REVOCABLE TRUST |
| | JENNIFER L. SMITH REVOCABLE TRUST |
| 1 | JEREMY M & SHANNON D WOODRUFF |
| 1 | JERI  DAVIS-RUBIN REV TRUST |
| | Jeri Davis-Rubin & Brian  Rubin |
| | Jeri Davis-Rubin & Brian  Rubin |
| | Jeri Davis-Rubin & Brian  Rubin |
| | Jeri Davis-Rubin & Brian  Rubin |
| 1 | Jerome Relis |
| | Jerome Relis |
| | Jerome Relis |
| | Jerome Relis |
| 1 | JERROLD A. AND AMBER D. OGERT |
| 1 | JERRY SOLOMON |
| 1 | JJ OF VIRGINIA BEACH INC |
| | JJ OF VIRGINIA BEACH INC |
| | JJ OF VIRGINIA BEACH INC |
| 1 | JMA RAILROAD AVENUE, LLC |
| 1 | Joan  Frimmer and Nellie Porras |
| | Joan  Frimmer and Nellie Porras |
| | Joan  Frimmer and Nellie Porras |
| | Joan  Frimmer and Nellie Porras |
| | Joan  Frimmer and Nellie Porras |
| 1 | Joan Crawford IRA |
| 1 | JOANNE BANE |
| 1 | Jodi G. Weinfeld Revocable Trust |
| 1 | Joe P.  Bouton IRA |
| | Joe P.  Bouton IRA |

| SEC Count | StRecipientName |
|---|---|
| | Joe P. Bouton IRA |
| 1 | Joedas Investment, Inc. |
| | Joedas Investment, Inc. |
| | Joedas Investment, Inc. |
| | Joedas Investment, Inc. |
| | Joedas Investment, Inc. |
| | Joedas Investment, Inc. |
| | Joedas Investment, Inc. |
| | Joedas Investment, Inc. |
| | Joedas Investment, Inc. |
| | Joedas Investment, Inc. |
| 1 | Joeehr Family, LLC |
| 1 | JOEL DENENBERG, TOD |
| 1 | JOEL H. SHAPIRO REVOCABLE TRUST |
| 1 | JOEL KOLEN |
| | JOEL KOLEN |
| | Joel Shapiro |
| | Joel Shapiro |
| | Joel Shapiro |
| | Joel Shapiro |
| 1 | JOHN PIERCE IRA |
| 1 | JOHN A. HORN SEP IRA |
| 1 | JOHN AND DORIS PIERCE |
| 1 | John and Lea Anne Nelson |
| 1 | JOHN BUDZIAK, IRA |
| 1 | JOHN GIMENEZ |
| 1 | John Gimenez Revocable Trust dated March 30, 1993, as amen |
| | John Gimenez Revocable Trust dated March 30, 1993, as amen |
| 1 | JOHN MILLER IRA |
| 1 | JOHN NELSON IRA |
| 1 | John O Sullivan |
| | John O Sullivan |
| 1 | John P. McNerney |
| 1 | John R & Katherine B Porterfield |
| 1 | John Roger Griffin, Jr. |
| 1 | John W. Hammer |
| 1 | Jonathan and Wendy Turetsky |
| 1 | Jonathan Lehrfeld |
| 1 | Joseph E. and Sharon A. Winn |
| | Joseph E. and Sharon A. Winn |
| | Joseph E. and Sharon A. Winn |
| | Joseph E. and Sharon A. Winn |
| 1 | Joseph Friedman |
| 1 | Joseph H. Ehrenkranz Revocable Trust |
| | Joseph H. Ehrenkranz Revocable Trust |
| | Joseph H. Ehrenkranz Revocable Trust |
| | Joseph H. Ehrenkranz Revocable Trust |
| | Joseph H. Ehrenkranz Revocable Trust |
| | Joseph H. Ehrenkranz Revocable Trust |
| 1 | JOSEPH HANAN |
| 1 | Joseph J. Parrilla Trust |
| | Joseph J. Parrilla Trust |
| | Joseph J. Parrilla Trust |
| | Joseph J. Parrilla Trust |
| | Joseph J. Parrilla Trust |
| | Joseph J. Parrilla Trust |
| 1 | JOSEPH KELLY & JANINE PRYBYLA |
| 1 | Joseph L and Rosetta S. Ward |
| | Joseph L and Rosetta S. Ward |
| 1 | Joseph Lerman |
| | Joseph Lerman |
| 1 | Joseph Luria |
| | Joseph Luria |
| 1 | Joseph Miller |
| 1 | Joseph Pinson |
| 1 | Joseph R. and Holly A. Barlow |
| | Joseph R. and Holly A. Barlow |
| | Joseph R. and Holly A. Barlow |
| 1 | Joseph Sarot |
| | Joseph Sarot |
| 1 | JOSEPH SHAPIRO |
| | JOSEPH SHERESHEVSKY SEP IRA |
| 1 | Joseph W. and Arlene J. Lipscomb |
| | Joseph W. and Arlene J. Lipscomb |

| SEC Count | StRecipientName |
|---|---|
| 1 | Joseph Ward IRA |
| | Joseph Ward IRA |
| 1 | Joseph Weinberg |
| | Joseph Weinberg |
| | Joseph Weinberg |
| | Joseph Weinberg |
| | Joseph Weinberg |
| | Joseph Weinberg |
| | Joseph Weinberg |
| | Joseph Weinberg |
| 1 | Josephine Maurice |
| 1 | Joshua and Adina Lerman |
| 1 | Joshua and Malka Friedman |
| 1 | JOSHUA MANN |
| 1 | Joyce A. Hilliard |
| 1 | Joyce M. Capuzzi |
| 1 | Judah Schorr |
| | Judah Schorr |
| | Judah Schorr |
| | Judah Schorr IRA |
| 1 | JUDITH MOSS |
| 1 | JUDITH MILSTEIN |
| 1 | Judy Labensohn |
| 1 | JULIA N. BRITTAN |
| 1 | Julie Sasvari |
| | JULIE SASVARI & JOAN MAURICE |
| 1 | June D. Betts |
| | June D. Betts |
| | June D. Betts |
| | June D. Betts |
| | June D. Betts |
| 1 | June Seglem |
| | June Seglem |
| 1 | JZC EQUITIES, LLC |
| 1 | K P Industrial Properties, LLC |
| | K P Industrial Properties, LLC |
| | K P Industrial Properties, LLC |
| | K P Industrial Properties, LLC |
| | K P Industrial Properties, LLC |
| 1 | Kadima Panamena, Inc. |
| 1 | KALMAN & MINDY E. LIDSKY |
| 1 | Karatop Entreprise Inc. |
| | KAREN HAIMOV TOD |
| 1 | KAREN HAIMOV TOD |
| | KAREN HAIMOV TOD |
| 1 | Karl A. and Karen F. Lindquist |
| 1 | Kelly L. Cromer IRA |
| 1 | Kelvin L. Brown |
| | Kelvin L. Brown |
| 1 | KENNETH ROSSEN |
| 1 | Kenneth and Susan Rosenberg |
| 1 | KENNETH D GOLDMAN |
| 1 | Kenneth Ingber |
| | Kenneth Ingber |
| | Kenneth Ingber |
| | Kenneth Ingber |
| | Kenneth Ingber |
| | Kenneth Ingber |
| | Kenneth Ingber Custodian Anayna Ingber UGMA |
| | Kenneth Ingber Custodian Chaya Ingber UGMA |
| | Kenneth Ingber Custodian Josef Ingber UGMA |
| | Kenneth Ingber Custodian Yecheskel Ingber UGMA |
| | Kenneth Ingber Custodian Yehoshua Ingber UGMA |
| 1 | KENNETH SPIRO |
| | KENNETH SPIRO |
| 1 | KEREM OBER LLC |
| 1 | KEREN CHASDEI MOISHE, INC |
| 1 | KEREN YEHOSHUA FOUNDATION |
| 1 | Kern Ober LLC |
| | Kern Ober LLC |
| 1 | Kerry K. and Elke Belcher Trust |
| | Kerry K. and Elke Belcher Trust |
| 1 | Kerry K. Belcher, SSPF |
| 1 | KEVIN AND JENNIFER SMITH |

| SEC Count | StRecipientName |
|---|---|
| | KEVIN AND JENNIFER SMITH |
| 1 | Kevin C. and Amy L. Oliver |
| | Kevin C. and Amy L. Oliver |
| 1 | Kimberly Investment Group LP |
| | Kimberly Investment Group LP |
| | Kimberly Investment Group LP |
| | Kimberly Investment Group LP |
| | Kimberly Investment Group LP |
| | Kimberly Investment Group LP |
| | Kimberly Investment Group LP |
| | Kimberly Investment Group LP |
| | Kimberly Investment Group LP |
| | Kimberly Investment Group LP |
| | Kimberly Investment Group LP |
| | Kimberly Investment Group LP |
| | Kimberly Investment Group LP |
| | Kimberly Investment Group LP |
| | Kimberly Investment Group LP |
| 1 | KJH Holdings Company Inc |
| 1 | KLEINMAN FAMILY FOUNDATION |
| 1 | KOHN LIVING TRUST U/A/D 12/6/1995 |
| | KOHN LIVING TRUST U/A/D 12/6/1995 |
| | KOHN LIVING TRUST U/A/D 6/7/1993 |
| | KOHN LIVING TRUST U/A/D 6/7/1993 |
| | KOHN LIVING TRUST U/A/D 6/7/1993 |
| 1 | KOLEL ZICHRON YOSEF DOVID, INC |
| 1 | KRISTEN & JEFFREY BEALS |
| | KRISTEN & JEFFREY BEALS |
| 1 | Kristine Szabo |
| | Kristine Szabo |
| | Kristine Szabo |
| | Kristine Szabo |
| | Kristine Szabo |
| | Kristine Szabo |
| 1 | Kurt J. Judas IRA |
| | Kurt J.and Adele  Judas |
| 1 | L & B Investments Limited |
| | L & B Investments LTD |
| 1 | L. Dolores Wallace |
| 1 | Larry and Cheryl Cohen |
| 1 | Larry Graber |
| 1 | Larry J. Herbst |
| 1 | LARRY W. & SHIRLEY F. BERMAN |
| 1 | Laura & Fredric Gross, Tenants by Entirety |
| | Laura & Fredric Gross, Tenants by Entirety |
| | Laura & Fredric Gross, Tenants by Entirety |
| | Laura & Fredric Gross, Tenants by Entirety |
| 1 | LAURIE K  FISHER REVOCABLE TRUST |
| 1 | LAWRENCE & SANDRA KAY TAUB |
| 1 | Lawrence and Jennifer Intravatola |
| 1 | Lawrence Brett III |
| 1 | Lawrence P. Costa |
| | Lawrence P. Costa |
| | Lawrence P. Costa |
| | Lawrence P. Costa |
| | Lawrence P. Costa |
| | Lawrence P. Costa |
| | Lawrence P. Costa |
| | Lawrence P. Costa |
| | Lawrence P. Costa |
| | Lawrence P. Costa |
| | Lawrence P. Costa |
| | Lawrence P. Costa |
| | Lawrence P. Costa |
| | Lawrence P. Costa |
| | Lawrence P. Costa |
| | Lawrence P. Costa |
| | Lawrence P. Costa |
| | Lawrence P. Costa |
| | Lawrence P. Costa |
| | Lawrence P. Costa |
| | Lawrence P. Costa |

| SEC Count | StRecipientName |
|---|---|
| | Lawrence P. Costa |
| | Lawrence P. Costa |
| | Lawrence P. Costa |
| 1 | LEAH & MENACHEM LEIBTAG |
| 1 | Leah Smolyansky |
| | Leah Smolyansky |
| 1 | LEE S PHILLIPS |
| 1 | Lee T. Weinstein |
| | Lee T. Weinstein |
| | Lee T. Weinstein |
| 1 | LEIB AND MALVINA POLLAK |
| 1 | LEO & FREDA MAUER |
| | LEO & FREDA MAUER |
| | LEO & FREDA MAUER |
| 1 | Leo and Estelle Katz |
| | Leo and Estelle Katz |
| | Leo and Estelle Katz |
| 1 | LEONARD A. LURIE |
| | LEONARD A. LURIE |
| | LEONARD A. LURIE |
| | LEONARD A. LURIE |
| | LEONARD A. LURIE |
| | LEONARD A. LURIE |
| 1 | LESLIE KAPLAN |
| | LESLIE KAPLAN |
| | LESLIE KAPLAN |
| 1 | Leslie Keith Diamond |
| | Leslie Keith Diamond |
| | Leslie Keith Diamond |
| | Leslie Keith Diamond |
| | Leslie Keith Diamond |
| 1 | Letha A. Smith |
| | Letha A. Smith |
| 1 | Lettie M. Peele |
| 1 | LEV MALLINGER |
| | LEV MALLINGER LIVING TRUST |
| 1 | Levy Benaim |
| | Levy Benaim |
| | Levy Benaim |
| 1 | Levy Capital |
| 1 | Lewis B. Steingold |
| | Lewis B. Steingold |
| | Lewis B. Steingold |
| | Lewis B. Steingold |
| | Lewis B. Steingold |
| | Lewis B. Steingold |
| | Lewis B. Steingold |
| 1 | Lewis L. and Sharon Campbell, Jr. |
| | Lewis L. and Sharon Campbell, Jr. |
| | Lewis L. and Sharon Campbell, Jr. |
| | Lewis L. and Sharon Campbell, Jr. |
| | Lewis L. Campbell Jr. IRA |
| 1 | Leyba H. Blumenthal Revocable Trust |
| 1 | Liba Miriam Rausman Trust of 2002 |
| 1 | LIBBIE & AMOS AVIVI, JTWROS |
| | LIBBIE & AMOS AVIVI, JTWROS |
| | Libbie Avivi |
| 1 | LIGHTHOUSE CAPITAL INSURANCE CO |
| 1 | Lincolnwood Fund LP |
| 1 | Linda and Jacob Drucker |
| 1 | Linda M. Jarman |
| | Linda M. Jarman IRA |
| | Linda M. Jarman IRA |
| 1 | LINDA P SNELLINGER |
| 1 | Linda W. Drucker IRA |
| | Linda W. Drucker Revocable Trust |
| | Linda W. Drucker Revocable Trust |
| | Linda W. Drucker Revocable Trust |
| | Linda W. Drucker Revocable Trust |
| | Linda W. Drucker Revocable Trust |
| 1 | LISA AIKEN, IRA |
| | LISA AIKEN, IRA |
| | LISA AIKEN, IRA |
| | LISA AIKEN, IRA |

21

| SEC Count | StRecipientName |
|---|---|
| | Lisa Anne Aiken Revocable Trust |
| | Lisa Anne Aiken Revocable Trust |
| | Lisa Anne Aiken Revocable Trust |
| | Lisa Anne Aiken Revocable Trust |
| | Lisa Anne Aiken Revocable Trust |
| 1 | Lisa B. Barr IRA |
| 1 | Lisa Kanter |
| 1 | LLOYD E. SMITH AMENDED AND RESTATED TRUST |
| 1 | Lochridge Investors |
| 1 | Lock-Shiel, LLC |
| | Lock-Shiel, LLC |
| 1 | LOIS GREEN |
| 1 | Lomdei Torah Congregation |
| 1 | Lora Hodges Ware |
| | Lora Hodges Ware |
| 1 | Lorraine Fisher Trust |
| 1 | Louis and Ethel Oberlander |
| | Louis and Ethel Oberlander |
| | Louis and Ethel Oberlander |
| 1 | Louis S. and Sasikarn T. Haskell |
| 1 | Luanne B. Pond |
| | Luanne B. Pond IRA |
| 1 | Luther M. Hester |
| | Luther M. Hester IRA |
| 1 | LVAS CHICAGO, LLC |
| 1 | LYNNE M & THOMAS O FERRIS |
| 1 | M & A Heching |
| 1 | M. Albert Carmichael, IRA |
| | M. Albert and Ann Carmichael |
| | M. Albert Carmichael |
| | M. Albert Carmichael |
| | M. Albert Carmichael |
| | M. Albert Carmichael |
| | M. Albert Carmichael |
| 1 | M.J. Teixeira De Mattos |
| 1 | Man Tung Mok |
| | Man Tung Mok and Mei Fong Cheng |
| | Man Tung Mok and Mei Fong Cheng |
| 1 | Manuel Lerman |
| | Manuel Lerman |
| | Manuel Lerman |
| 1 | MARC & ANDREA HOSCHANDER |
| 1 | Marc and Teresa Circeo |
| | Marc and Teresa Circeo |
| | Marc and Teresa Circeo |
| | Marc and Teresa Circeo |
| | Marc and Teresa Circeo |
| | MARC HOSCHANDER |
| 1 | Marc Martel |
| 1 | MARCIA S HOFHEIMER & MELVIN R MORRISON |
| | MARCIA S HOFHEIMER & MELVIN R MORRISON |
| | MARCIA S HOFHEIMER & MELVIN R MORRISON |
| 1 | Margarette Weiss |
| 1 | MARIA MORALEZ TOD |
| 1 | Marian K. Sawyer |
| | Marian K. Sawyer |
| | Marian K. Sawyer |
| 1 | Mario and Heather Bortoluzzi |
| 1 | MARION STEIN REVOCABLE TRUST |
| 1 | MARISSA & DAVID LEVENSON, JTWROS |
| | MARISSA & DAVID LEVENSON, JTWROS |
| 1 | Mark Bane |
| | Mark Bane |
| | Mark Bane |
| | Mark Bane |
| 1 | MARK & CAMILLE DELANEY |
| 1 | Mark and Jacqueline Palsha |
| | Mark and Jacqueline Palsha |
| | Mark and Jacqueline Palsha |
| 1 | MARK BERNSTEIN |
| 1 | MARK CAMPBELL |
| 1 | Mark J. and Anne B. Hauser |
| 1 | Mark L. Nachman IRA |
| | Mark L. Nachman IRA |

| SEC Count | StRecipientName |
|---|---|
| 1 | Mark M. Belcher |
| | Mark M. Belcher |
| | Mark M. Belcher |
| | Mark M. Belcher |
| 1 | Marlene DeWees |
| | Marlene DeWees |
| 1 | Marlin Graber |
| | Marlin Graber |
| | Marlin Graber |
| | Marlin Graber |
| 1 | Marsha E. Weinstein |
| | Marsha E. Weinstein |
| | Marsha E. Weinstein |
| 1 | Marsha Freeman Spain |
| | Marsha Freeman Spain |
| | Marsha Freeman Spain |
| | Marsha Freeman Spain |
| | Marsha Freeman Spain |
| 1 | Marshall A.  Mauer |
| | Marshall A.  Mauer |
| 1 | Martha B. Ruggles |
| | Martha B. Ruggles |
| 1 | Martha Kahan and Fernando Isaac Ben Yehuda |
| 1 | MARTHA MELCER REAL ESTATE TRUST u/a/d 02/01/03 |
| 1 | Martin and Theodora  Leibtag |
| | Martin and Theodora  Leibtag |
| 1 | Martin D. Leshman Trust |
| | Martin D. Leshman Trust |
| | Martin D. Leshman Trust |
| | Martin D. Leshman Trust |
| | Martin D. Leshman Trust |
| | Martin D. Leshman Trust |
| 1 | Martin Fulop |
| | Martin Fulop |
| | Martin Fulop |
| 1 | Martin Hanan |
| 1 | Martin J.and Laura M. Siegel |
| 1 | MARTIN KATZ MARTIN PROFESSIONAL CORP |
| 1 | Marvin Bienenfeld |
| | Marvin Bienenfeld |
| | Marvin Bienenfeld |
| | Marvin Bienenfeld |
| | Marvin Bienenfeld |
| 1 | Mary Anne and John E. Miller |
| | Mary Anne and John E. Miller |
| 1 | Mary Maurice |
| 1 | Mati Elstein |
| 1 | Matthew  Bayer Trust |
| | Matthew  Bayer Trust |
| | Matthew  Bayer Trust |
| 1 | Matthew W. and Susan W. Friesz |
| 1 | MAURICE FISCHLER |
| | MAURICE FISCHLER |
| | MAURICE FISCHLER |
| 1 | Maurice Lapping |
| | Maurice Lapping |
| | Maurice Lapping |
| | MAURICE LAPPING   TOD |
| 1 | Max and Belle Karlinsky Family Trust |
| | Max and Belle Karlinsky Family Trust |
| | Max and Belle Karlinsky Family Trust |
| 1 | MAX SINGER |
| 1 | Mayer and Miriam Halpern |
| 1 | MEGCALEN TRUST |
| 1 | Meier Stein |
| | Meier Stein |
| 1 | Meir and Aliza Toor |
| | Meir and Aliza Toor |
| | Meir and Aliza Toor |
| | Meir and Aliza Toor |
| | Meir and Aliza Toor |
| 1 | Meir Salama |
| 1 | MEIR VOLK |
| 1 | Melissa  Schoenfeld IRA |

| SEC Count | StRecipientName |
|---|---|
| 1 | MELVIN R. MORRISON & S. NEIL MORRISON |
| | MEMPHIS 47 DEAN INV PARTNERSHIP |
| | MEMPHIS DEAN, LLC |
| 1 | Menachem Lebovitz |
| 1 | Merle Kassab |
| 1 | Meryl M.  Garrett Partnership |
| | Meryl M.  Garrett Partnership |
| 1 | MEYER NIEMAN UGMA NAFTULI NIEMAN |
| 1 | MEZZANINE PARTNERS |
| 1 | Michael  Pitts IRA |
| 1 | MICHAEL & ESKA REIDEL |
| 1 | Michael A. and Starr T. Marcou |
| | Michael A. and Starr T. Marcou |
| | Michael A. and Starr T. Marcou |
| 1 | Michael and Elise K. Spoto |
| 1 | MICHAEL AND MARIA BAUZA |
| | MICHAEL AND MARIA BAUZA |
| 1 | MICHAEL BERMAN |
| | MICHAEL BERMAN |
| | MICHAEL BERMAN |
| | MICHAEL BERMAN |
| | MICHAEL BERMAN |
| | MICHAEL BERMAN |
| 1 | MICHAEL GLASER |
| 1 | MICHAEL GORDON |
| | MICHAEL GORDON |
| 1 | Michael Halpern |
| 1 | Michael Henderson & Myron Cohen |
| 1 | Michael J. and Sophia J. Cote |
| 1 | Michael Lenchner |
| 1 | Michael Lieberman |
| | Michael Lieberman |
| 1 | Michael Mostofsky TOD |
| | Michael Mostofsky TOD |
| | Michael Mostofsky TOD |
| | Michael Mostofsky TOD |
| | Michael Mostofsky TOD |
| | Michael Mostofsky TOD |
| 1 | Michael R. and Elizabeth O. Pampalone |
| | Michael R. and Elizabeth O. Pampalone |
| 1 | Michael S. Bremus |
| | Michael S. Bremus |
| 1 | Michael Savoca Trust |
| | Michael Savoca Trust |
| | Michael Savoca Trust |
| | Michael Savoca Trust |
| 1 | Michael Weiser |
| | Michael Weiser |
| | Michael Weiser |
| | Michael Weiser |
| 1 | Michael Weissman, TTEE Profit Sharing Plan |
| 1 | MICHAEL ZIMMERMAN |
| | MICHAEL ZIMMERMAN |
| | MICHAEL ZIMMERMAN |
| 1 | Michelle  Cote, TOD |
| | Michelle  Cote, TOD |
| | Michelle  Cote, TOD |
| | Michelle  Cote, TOD |
| | Michelle  Cote, TOD |
| 1 | Michelle and Yitzchak Lerner |
| | Michelle and Yitzchak Lerner |
| | Michelle and Yitzchak Lerner |
| 1 | MICHOEL ZVI PINNICK |
| 1 | Miller-Waxelbaum Family Foundation |
| | Miller-Waxelbaum Family Foundation |
| | Miller-Waxelbaum Family Foundation |
| | Miller-Waxelbaum Family Foundation |
| 1 | Milton Heching IRA |
| | Milton Heching IRA |
| | Milton Heching IRA |
| 1 | Miriam  Husarsky |
| 1 | MIRIAM CHAYA HEFTLER |
| 1 | Miriam Lerman |
| | Miriam Lerman |

| SEC Count | StRecipientName |
|---|---|
| | Miriam Lerman |
| 1 | Miriam Meyers |
| 1 | MLGM LTD |
| 1 | MLSJ LIMITED PARTNERSHIP |
| 1 | MM Irrevocable Trust U/A/D 10/02/98 |
| | MM Irrevocable Trust U/A/D 10/02/98 |
| | MM Irrevocable Trust U/A/D 10/02/98 |
| 1 | MOISHE DEUTSCH & ELIYAHU MANDEL |
| 1 | MONROE G MILSTEIN |
| 1 | Monte Crowl |
| | Monte Crowl |
| | Monte S. Crowl IRA |
| 1 | MONTGOMERY INVESTORS LP |
| 1 | Mor  Paskes |
| 1 | Morris Bienenfeld |
| | Morris Bienenfeld |
| | Morris Bienenfeld |
| 1 | MORRIS HANAN |
| 1 | Morris Neuman |
| 1 | MOSES GRUNBAUM |
| | MOSES GRUNBAUM |
| 1 | Moshe  Golan |
| 1 | Moshe & Bat Sheva Livna |
| | Moshe & Bat Sheva Livna |
| | Moshe and Revital Chavi |
| 1 | MOSHE BARZEL |
| 1 | Moshe Cohen |
| 1 | MOSHE DADOUN |
| 1 | MOSHE HECHING |
| 1 | MOSHE HERTZ |
| | MOSHE HERTZ |
| 1 | MOSHE YALON |
| 1 | MR ENTERPRISES PENSION PLAN & TRUST |
| | MR ENTERPRISES PENSION PLAN & TRUST |
| | MR ENTERPRISES PENSION PLAN & TRUST |
| 1 | MR Enterprises Retirement Plan and Trust |
| 1 | MSC Investments |
| | Munden Family Partnership L.P., LLP |
| | Munden Family Partnership L.P., LLP |
| | Munden Family Partnership L.P., LLP |
| | Munden Family Partnership L.P., LLP |
| | Munden Family Partnership L.P., LLP |
| 1 | MURAD HAZKOUR |
| 1 | MURRAY & ESTHER ALTER |
| | MURRAY & ESTHER ALTER |
| | MURRAY & ESTHER ALTER |
| 1 | Murray Greenberger |
| | Murray Greenberger |
| 1 | MYH INVESTMENTS ZWEIG (2005) LTD |
| | MYH INVESTMENTS ZWEIG (2005) LTD |
| | MYH INVESTMENTS ZWEIG (2005) LTD |
| 1 | MYRA G & KARL A LINDQUIST III |
| | MYRA G & KARL A LINDQUIST III |
| | MYRA G & KARL A LINDQUIST III |
| | MYRA G & KARL A LINDQUIST III |
| 1 | N. Paul Clemmons |
| 1 | NACHMAN ROSENBERG |
| 1 | NADINE GESUNDHEIT |
| | NADINE GESUNDHEIT |
| | NADINE GESUNDHEIT |
| | NADINE GESUNDHEIT |
| | NADINE GESUNDHEIT |
| | NADINE GESUNDHEIT |
| | NADINE GESUNDHEIT |
| | NADINE GESUNDHEIT |
| | NADINE GESUNDHEIT |
| 1 | NAFTALI  KLEIN  OR FRIEDA KLEIN CP |
| | NAFTALI  KLEIN  OR FRIEDA KLEIN CP |
| | NAFTALI  KLEIN  OR FRIEDA KLEIN CP |
| 1 | Naftali and Frieda Klein |
| | Naftali and Frieda Klein |
| | Naftali and Frieda Klein |
| | Naftali and Frieda Klein |
| 1 | NANSEMOND VENTURES LLC |

| SEC Count | StRecipientName |
|---|---|
| 1 | Naomi Rausman Trust of 2002 |
| 1 | Nashville Warehouse Partners |
| 1 | Nathan S. Hassan Trust |
| | Nathan S. Hassan Trust |
| 1 | Neal and Sara  Faraone |
| | Neal and Sara  Faraone |
| | Neal and Sara  Faraone |
| | Neal and Sara  Faraone |
| | Neal and Sara  Faraone |
| | Neal and Sara  Faraone |
| | Neal and Sara  Faraone |
| | Neal and Sara  Faraone |
| | Neal and Sara  Faraone |
| | Neal and Sara  Faraone |
| | Neal Faraone IRA |
| | Neal Faraone IRA |
| 1 | Necy W. Wallace Revocable Trust |
| | Necy W. Wallace Revocable Trust |
| . 1 | Nedava Family Irrevocable Trust |
| 1 | Neil & Judith Auerbach |
| | Neil & Judith Auerbach |
| 1 | NELLIE PORRAS  & JOAN FRIMMER |
| 1 | New Millennium Investors, LLC |
| | New Millennium Investors, LLC |
| | New Millennium Investors, LLC |
| 1 | Neways |
| 1 | NEWFIELD ESTATES INC |
| | NEWFIELD ESTATES INC |
| 1 | Nicholas A. and Susan M. Veronis |
| 1 | Nir Yhiye |
| | Nir Yhiye |
| | Nir Yhiye |
| | Nir Yhiye |
| | Nir Yhiye |
| 1 | NOAH R LEVI |
| 1 | NOAH WEINBAUM |
| 1 | Norman D. Soroko |
| 1 | Norman Sher |
| | Norman Sher |
| | Norman Sher IRA |
| | OAK BROOK ASSOCIATES |
| 1 | ODM Investments, LC Minerals |
| 1 | Olga L. Sosa |
| 1 | OPHEL MERCANTILE |
| 1 | Osprey, LLC |
| | Osprey, LLC |
| | Osprey, LLC |
| 1 | Otto and Isabella Weingarten |
| | Otto Weingarten |
| | Otto Weingarten |
| 1 | OVED SASSON |
| 1 | Patricia K. Starling |
| | Patricia K. Starling |
| | Patricia K. Starling |
| | Patricia K. Starling |
| | Patricia K. Starling |
| | Patricia K. Starling |
| | Patricia K. Starling |
| | Patricia K. Starling |
| | Patricia K. Starling |
| | Patricia K. Starling |
| 1 | Patricia M.  Durinzi IRA |
| 1 | Patricia Robertson IRA |
| 1 | Patrick F. and Kimberly A. Harris |
| | Patrick F. and Kimberly A. Harris |
| 1 | PAUL  CROSTON |
| 1 | Paul A. and Anna H. May |
| | Paul A. and Anna H. May |
| | Paul A. May |
| | Paul A. May |
| | Paul A. May  IRA |
| | Paul A. May  IRA |
| | Paul A. May  IRA |
| | Paul A. May  IRA |

26

| SEC Count | StRecipientName |
|---|---|
| 1 | Paul and Barbara  Bermanski |
|  | Paul and Barbara  Bermanski |
|  | Paul and Barbara  Bermanski |
| 1 | Paul Cameron |
|  | Paul Cameron |
|  | Paul Cameron |
|  | Paul Cameron |
|  | Paul D. Yedin |
| 1 | Paul Faraone IRA |
|  | Paul Faraone IRA |
|  | Paul Faraone IRA |
|  | Paul Faraone IRA |
|  | Paul Faraone, TOD |
|  | Paul Faraone, TOD |
|  | Paul Faraone, TOD |
|  | Paul Faraone, TOD |
| 1 | PAUL J ADRIAN, IRA |
|  | PAUL J. AND MARIETTE F.  ADRIAN |
| 1 | Paul K. Evenstad IRA |
|  | Paul K. Evenstad IRA |
| 1 | PAUL LEE NEWMAN |
|  | PAUL LEE NEWMAN |
|  | PAUL LEE NEWMAN, ROTH IRA |
| 1 | PAUL NEWMAN FOUNDATION |
|  | PAUL NEWMAN FOUNDATION |
| 1 | Paul Panagos Custodian |
|  | Paul Panagos Custodian |
|  | Paul Panagos Custodian |
|  | Paul Panagos Custodian |
|  | Paul Panagos Custodian |
|  | Paul Panagos Custodian |
| 1 | PAUL PHIPPS IRA |
| 1 | PAUL S NEWMAN |
| 1 | PAUL T. PEELE |
| 1 | Pearl Weinberger |
| 1 | Peggy H. Dorsk |
| 1 | Peninim of America |
| 1 | PEORIA ASSOCIATES |
| 1 | PESSI LYN ROTHSCHILD, IRA |
| 1 | PETER  LUND IRA |
| 1 | PHILIP AND KAREN SHUSTER |
| 1 | Philip J. and Barbara Ackerman |
|  | Philip J. and Barbara Ackerman |
|  | Philip J. and Barbara Ackerman |
| 1 | PHILIP SHORE |
|  | PHILIP SHORE |
|  | Philip Shore |
|  | Philip Shore |
|  | Philip Shore |
|  | Philip Shore |
| 1 | Phillip and Betty Barker |
| 1 | Phillip and Pamela Goldner |
| 1 | PHIPPS FAMILY REVOCABLE TRUST |
|  | PHIPPS FAMILY REVOCABLE TRUST |
| 1 | PHOENIX HOTEL, LLC |
| 1 | Phyllis Lome |
|  | Phyllis Lome |
|  | Phyllis Lome  TOD |
|  | Phyllis Lome  TOD |
|  | Phyllis Lome, IRA |
|  | Phyllis Lome, IRA |
|  | Phyllis Lome, IRA |
| 1 | Pierre Abi-Mansour |
|  | Pierre Abi-Mansour |
|  | Pierre Abi-Mansour |
|  | Pierre Abi-Mansour |
|  | Pierre Abi-Mansour |
|  | Pierre Abi-Mansour |
|  | Pierre Abi-Mansour |
| 1 | POLR CAPITAL INVESTMENTS LLC |
|  | POLR CAPITAL INVESTMENTS LLC |
|  | Port Brothers Investment Company |
| 1 | Premier Advisors Fund, LLC |
| 1 | PROFIT SHARING PLAN COASTAL SURGICAL SPECIALIST |

| SEC Count | StRecipientName |
|---|---|
| 1 | QUALITY TAX SERVICE, INC |
| 1 | Rabbi Efraim  Greenblatt |
|  | Rabbi Efraim  Greenblatt |
|  | Rabbi Efraim  Greenblatt |
|  | Rabbi Efraim  Greenblatt |
|  | Rabbi Efraim  Greenblatt |
|  | Rabbi Efraim  Greenblatt |
|  | Rabbi Efraim  Greenblatt |
|  | Rabbi Efraim  Greenblatt |
|  | Rabbi Efraim  Greenblatt |
| 1 | RABBI NACHUM COHEN |
|  | RABBI NACHUM COHEN |
| 1 | RABINOVICI FAMILY TRUST |
|  | RABINOVICI FAMILY TRUST |
|  | RABINOVICI FAMILY TRUST |
|  | RABINOVICI FAMILY TRUST |
| 1 | Rachel and Calman  Janowski |
|  | Rachel and Calman  Janowski |
| 1 | RACHEL GORDON |
| 1 | Rachel Rosenberg |
| 1 | Rafael and Tamar Berdugo |
|  | Rafael and Tamar Berdugo |
| 1 | RAHEL AND ELIEZER PORAT |
|  | RAHEL AND ELIEZER PORAT |
| 1 | RAK Trust |
|  | RAK Trust |
|  | RAK Trust |
|  | RAK Trust |
|  | RAK Trust |
|  | RAK Trust |
|  | RAK Trust |
|  | RAK Trust |
|  | RAK Trust |
|  | RAK Trust |
|  | RAK Trust |
| 1 | Ralph Sabine |
| 1 | Ramona R. Weingarten |
| 1 | RAMSEY PENGILLY |
| 1 | RANDOLPH L. CARL |
|  | RANDOLPH L. CARL |
|  | RANDOLPH L. CARL |
| 1 | Randy J. Hernandez and Lori A. Wagoner |
| 1 | Randy J. Scanlon |
| 1 | Randy Lassiter |
|  | Randy Lassiter |
| 1 | Ray O. Hummel III |
|  | Ray O. Hummel III |
| 1 | RAYMOND & JEAN KAIREY |
|  | Raymond Kairey |
|  | RAYMOND KAIREY IRA |
| 1 | Raymond Klajer |
|  | Raymond Klajer |
|  | Raymond Klajer |
| 1 | RAYMOND MUNGO |
| 1 | REBECCA E. SHORE |
| 1 | REBECCA GUTTMAN |
| 1 | REBECCA SCHLEIDER |
| 1 | Reginald B. Henry III |
|  | Reginald B. Henry III |
| 1 | RENA & OREN GELB |
| 1 | Renee Fine |
|  | Renee Fine |
|  | Renee Fine IRA |
| 1 | Renee R. Segal IRA |
| 1 | REUBEN  ROTHSCHILD TOD |
|  | REUBEN  ROTHSCHILD TOD |
|  | REUBEN  ROTHSCHILD TOD |
|  | REUBEN  ROTHSCHILD TOD |
| 1 | REUBEN & PESSI LYNN ROTHSCHILD |
| 1 | REUVEN PHILLIPS |
| 1 | RGM, Inc. |
|  | RGM, Inc. |
| 1 | RHONA FINKEL |
| 1 | RHONDA I BUTLER |

| SEC Count | StRecipientName |
|---|---|
| 1 | Ricardo Osiroff |
|  | Ricardo Osiroff |
| 1 | Richard Withrow |
| 1 | Richard and Megan Perry |
| 1 | Richard and Nigist Behar |
|  | Richard and Nigist Behar |
| 1 | Richard F. Smith IRA |
| 1 | Richard Flax |
| 1 | Richard J. and Lorraine B. Puleo |
|  | Richard J. and Lorraine B. Puleo |
|  | Richard J. and Lorraine B. Puleo |
|  | Richard J. and Lorraine B. Puleo Childrens Irrevocable Trust |
|  | Richard J. and Lorraine B. Puleo Childrens Irrevocable Trust |
|  | Richard J. Puleo IRA |
| 1 | RMT Family Development Counseling Center, Inc. |
|  | RMT Family Development Counseling Center, Inc. |
|  | RMT Family Development Counseling Center, Inc. |
|  | Robert A. Kauffman IRA |
| 1 | Robert and Carolyn McIntosh |
|  | Robert and Carolyn McIntosh |
|  | Robert and Carolyn McIntosh |
| 1 | ROBERT AND ELLEN BORGES JTWROS |
| 1 | ROBERT BRUCKSTEIN |
|  | ROBERT BRUCKSTEIN |
|  | ROBERT BRUCKSTEIN |
|  | ROBERT BRUCKSTEIN |
| 1 | Robert C. Sholar |
|  | Robert C. Sholar |
| 1 | ROBERT DAVID BROUSSARD TOD |
| 1 | Robert H. and Barbara J. Strongin |
|  | Robert H. and Barbara J. Strongin |
|  | Robert H. and Barbara J. Strongin |
|  | Robert H. and Barbara J. Strongin |
|  | Robert H. and Barbara J. Strongin |
|  | Robert H. and Barbara J. Strongin |
|  | Robert H. and Barbara J. Strongin |
| 1 | Robert L & Beverly V Howsare |
|  | Robert L & Beverly V Howsare |
|  | Robert L & Beverly V Howsare |
| 1 | ROBERT L. BRUCKSTEIN MONEY PURCHASE PLAN |
|  | ROBERT L. BRUCKSTEIN MONEY PURCHASE PLAN |
| 1 | Robert L. Dorsk |
| 1 | Robert McIntyre |
| 1 | Robert P. and Bonni Fine Kaufman |
| 1 | ROBERT SHORE |
|  | ROBERT SHORE |
| 1 | Robert W Kowalski |
| 1 | Robert W. Hale |
| 1 | Robin S. Schick |
|  | Robin S. Schick |
| 1 | Rochelle Levy |
| 1 | Rochelle Teitelbaum |
|  | Rochelle Teitelbaum |
| 1 | Rock Ministerial Family-Bishop Account |
|  | Rock Ministerial Family-Bishop Account |
| 1 | Roger and Catherine Rathbone |
| 1 | Roger E. Bullock |
|  | Roger E. Bullock |
| 1 | ROI GOTTLIEH |
| 1 | ROIY AND IDIT BECHAR |
| 1 | Roland & Elizabeth Karganilla |
|  | Roland & Elizabeth Karganilla |
| 1 | Ron Dov Watchel |
|  | Ron Dov Watchel |
| 1 | RONALD J MILLER IRA |
| 1 | Ronald J. and Ruth S. Rothman, Revocable Living Trust |
| 1 | RONALD PERRY IRA |
| 1 | Roni M. Benjamini |
|  | Roni M. Benjamini |
|  | Roni M. Benjamini |
| 1 | Ronit Levy-Talmi |
|  | Ronit Levy-Talmi |
| 1 | RONNIE BRUNNER |
| 1 | RONNIE CLARK IRA |

| SEC Count | StRecipientName |
|---|---|
| 1 | Ronnie J. and Lesa C. Clark |
| | Ronnie J. and Lesa C. Clark |
| 1 | ROSALIE FARAONE |
| 1 | Rosalind Foer |
| 1 | Rose and Ephraim Shmueli |
| 1 | Rose D. Altschull IRA |
| | Rose D. Altschull IRA |
| | Rose D. Altschull IRA |
| 1 | Rose Knobloch Revocable Trust |
| 1 | ROSENKRANZ FAMILY TRUST OF 1992 |
| | ROSENKRANZ FAMILY TRUST OF 1992 |
| 1 | ROSENRAM BUSINESS DEVELOPMENT LTD |
| | ROSENRAM TRUST CO OBO DISCOVERY SOLUTION |
| | ROSENRAM TRUST CO. OBO NATURAL CAPITAL |
| | ROSENRAM TRUST COMPANY LTD |
| | ROSENRAM TRUST COMPANY LTD |
| | ROSENRAM TRUST COMPANY LTD |
| 1 | ROY AND BARBARA LEBOVITZ |
| | ROY AND BARBARA LEBOVITZ |
| | ROY AND BARBARA LEBOVITZ |
| 1 | Roy Graber |
| 1 | RUHAMA M.J. TEIXERIA DE MATTOS |
| 1 | Rut Oren |
| | Rut Oren |
| 1 | Ruth Kreger |
| 1 | Ruth S. Rothman IRA |
| | Ruth S. Rothman IRA |
| 1 | Ruth Steg |
| 1 | S. Blair and Vicki B. Funk |
| | S. Blair and Vicki B. Funk |
| 1 | S. Charles and Margo H. Helman |
| 1 | Sam A. Walker IRA |
| | Sam A. Walker IRA |
| | Sam A. Walker IRA |
| | Sam A. Walker IRA |
| 1 | Sam Leibowitz IRA |
| | Sam Leibowitz IRA |
| 1 | SAM MOSHE |
| 1 | Sammy Wechsler |
| 1 | Samsanic Trading, Inc. |
| 1 | SAMUEL GROTSKY IRA |
| 1 | Samuel Lifshitz |
| | Samuel Lifshitz |
| 1 | Sandra Ben-Zeev |
| | Sandra Ben-Zeev |
| 1 | Sandra C. Berman |
| | Sandra C. Berman |
| 1 | Sandra Cohen |
| 1 | SANDRA EHRENKRANZ LIVING TRUST |
| 1 | Sandra H. and Joe P. Bouton |
| 1 | SANDRA SUDWARTS |
| 1 | Sandra Z. and Dov  Segal |
| | Sandra Z. and Dov  Segal |
| | Sandra Z. and Dov  Segal |
| | Sandra Z. and Dov  Segal |
| | Sandra Z. and Dov  Segal |
| 1 | SANJAY AMIN IRA |
| 1 | Sanjay and Pragnya Amin |
| | Sanjay and Pragnya Amin |
| | Sanjay and Pragnya Amin |
| 1 | Sara  Belkov Revocable Trust |
| 1 | Sara L.  Goldberg and Jack Deutsch |
| | Sara L.  Goldberg and Jack Deutsch |
| | Sara L.  Goldberg and Jack Deutsch |
| | Sara L.  Goldberg and Jack Deutsch |
| 1 | SARAH BENZADON |
| | SARAH BENZADON |
| | SARAH BENZADON |
| | SARAH BENZADON |
| 1 | Sasson and Gila Natan |
| 1 | SAUL AND RIVKA LEBOVIC |
| 1 | Saul and Sandra Ben-Zeev |
| | Saul and Sandra Ben-Zeev |
| | Saul and Sandra Ben-Zeev |

| SEC Count | StRecipientName |
|---|---|
| 1 | SAUL BEN ZEEV |
| 1 | SAUL BENZADON |
| 1 | Saul Perlmutter |
| 1 | Schloss Realty |
| | Schloss Realty |
| 1 | SCHNEUR PLOTKIN |
| 1 | SCOTT  SIEGELMAN ROTH |
| 1 | SCOTT & MARY ANNE SIMPSON |
| 1 | Scott and Pamela Izenberg |
| | Scott and Pamela Izenberg |
| | Scott and Pamela Izenberg |
| 1 | SCOTT BAUM |
| 1 | SCOTT SIEGELMAN IRA |
| 1 | Scott Simpson |
| 1 | Sentek Investments LLC |
| | Sentek Investments LLC |
| | Sentek Investments LLC |
| 1 | SETH & ESTHER  GROSSMAN, JTWROS |
| 1 | Seth Kaufman |
| 1 | Seymour Greenstein Revocable Living Trust |
| 1 | SG Markets, LLC |
| 1 | Shaiall and Brachah Zachariash |
| | Shaiall and Brachah Zachariash |
| | Shaiall and Brachah Zachariash |
| | Shaiall and Brachah Zachariash |
| | Shaiall and Brachah Zachariash |
| 1 | SHALOM & TEHILA HANOH |
| | SHALOM & TEHILA HANOH |
| | SHALOM & TEHILA HANOH |
| | SHALOM & TEHILA HANOH |
| 1 | Shalom and Ruth  Ben Aharon |
| 1 | SHALOM ULLMAN |
| | SHALOM ULLMAN |
| 1 | SHAMORK II INVESTMENTS |
| | SHAMORK II INVESTMENTS |
| | Shamork Investments |
| 1 | Sharon and Charles Chappan |
| | Sharon and Charles Chappan |
| 1 | Sharon D. Campbell IRA |
| 1 | Sharon Kauffman IRA |
| | Sharon Kauffman IRA |
| 1 | SHEILA RABINOVICI |
| | SHEILA RABINOVICI |
| | SHEILA RABINOVICI |
| 1 | SHELDON  M RABINOVICI |
| | SHELDON  M RABINOVICI |
| | SHELDON  M RABINOVICI |
| | SHELDON  M RABINOVICI |
| 1 | Sheldon Liebb |
| | Shereshevsky Family Limited Trust |
| | SHERESHEVSKY FOUNDATION, INC |
| 1 | Sherri McCaul IRA |
| 1 | Shevet Inc |
| 1 | Shia L. Lome Revocable Trust |
| | Shia L. Lome, IRA |
| | Shia L. Lome, IRA |
| | Shia L. Lome, IRA |
| | Shia L. Lome, IRA |
| 1 | SHIMON & HINDA PETEGORSKY |
| | SHIMON & WENDY KRASNER |
| | SHIMON & WENDY KRASNER |
| 1 | Shimon Kaminetzky |
| | Shimon Kaminetzky |
| 1 | Shimon Krasner IRA |
| 1 | Shimon Loz |
| | SHIRLEY INGBER |
| | SHIRLEY INGBER |
| | SHIRLEY INGBER |
| 1 | SHLOMO & RINA RESHEF |
| | SHLOMO & RINA RESHEF |
| 1 | SHMUEL  GRUNBAUM |
| 1 | Shmuel  Kuflik |
| 1 | Shmuel Itzhak |
| 1 | Shomrey Emunah Congregation Guardians of the Faith |

| SEC Count | StRecipientName |
|---|---|
| | Shomrey Emunah Congregation Guardians of the Faith |
| | Shomrey Emunah Congregation Guardians of the Faith |
| | Shomrey Emunah Congregation Guardians of the Faith |
| | Shomrey Emunah Congregation Guardians of the Faith |
| | Shomrey Emunah Congregation Guardians of the Faith |
| | Shomrey Emunah Congregation Guardians of the Faith |
| | Shomrey Emunah Congregation Guardians of the Faith |
| | Shomrey Emunah Congregation Guardians of the Faith |
| | Shomrey Emunah Congregation Guardians of the Faith |
| | Shomrey Emunah Congregation Guardians of the Faith |
| 1 | SHOSHANA FALLON |
| 1 | SIDNEY & TOBY PERRIS |
| 1 | SIDNEY AND CLAIRE STRONGIN |
| 1 | Sigmund Jakabovics |
| 1 | Simcha Poupko |
| 1 | Simone Kraus and Otto Weingarten |
| 1 | SNL CAPITAL |
| 1 | Soble Investment Corporation |
| 1 | SOLOMON FAMILY PARTNERS |
| | SOLOMON FAMILY PARTNERS |
| 1 | Solomon Ganz |
| | Solomon Ganz |
| 1 | SOLOMON SPITZ AND HERSHEL KRIMINER TENANTS IN COMM |
| 1 | Sparkling Investment Partners |
| | Sparkling Investment Partners |
| 1 | ST Acquisitions LLC |
| 1 | Stanley and Joyce Serxner |
| 1 | STANLEY BLAIR FUNK, IRA |
| 1 | Stanley J.  and Nancy M. Peck |
| | Stanley J.  and Nancy M. Peck |
| | Stanley J.  and Nancy M. Peck |
| 1 | STAR NAVIGATOR INVESTMENTS LTD |
| 1 | Starling Family Limited Partnership |
| | Starling Family Limited Partnership |
| | Starling Family Limited Partnership |
| | Starling Family Limited Partnership |
| | Starling Family Limited Partnership |
| | Starling Family Limited Partnership |
| | Starling Family Limited Partnership |
| | Starling Family Limited Partnership |
| | Starling Family Limited Partnership |
| | Starling Family Limited Partnership |
| | Starling Family Limited Partnership |
| | Starling Family Limited Partnership |
| 1 | STEINHILBER MARITAL TRUST |
| 1 | Step Up Outpatient Services, LLC |
| 1 | Stephanie Saks, IRA |
| 1 | Stephen and Lorrie Elgin |
| 1 | STEPHEN BISK |
| 1 | STEPHEN COSTA |
| | STEPHEN COSTA |
| | STEPHEN COSTA |
| | STEPHEN COSTA |
| 1 | Stephen E. Steinhilber |
| 1 | Stephen L. Feder |
| 1 | Stephen Parker |
| 1 | STERLING FAMILY TRUST |
| 1 | Steve and Theresa Cataldo |
| 1 | Steve L. and Beryl S. Brown |
| | Steve L. and Beryl S. Brown |
| 1 | Steve Philipps IRA |
| | Steve Philipps IRA |
| | Steve Philipps IRA |
| 1 | STEVE WISHNIA |
| 1 | Steven  Braha |
| | Steven  Braha |
| 1 | Steven Brady Viccellio |
| | Steven Braha IRA |
| 1 | Steven M. and Sarah G. Rothman |
| | Steven M. and Sarah G. Rothman |
| | Steven M. and Sarah G. Rothman |
| | Steven M. and Sarah G. Rothman |
| | Steven M. and Sarah G. Rothman |
| 1 | STEVEN W. BYERS TRUST |

| SEC Count | StRecipientName |
|---|---|
| 1 | Stewart B. Segal IRA |
| | Stewart B. Segal IRA |
| | Stewart L. and Adeline H. Smokler |
| | Stewart L. and Adeline H. Smokler |
| | Stewart L. and Adeline H. Smokler |
| 1 | Stewart L. Smokler |
| | Stewart L. Smokler |
| | Stewart L. Smokler / formerly IRA |
| | Stewart L. Smokler / formerly IRA |
| | Stewart L. Smokler IRA |
| 1 | Stuart & Ilana Goldberg |
| 1 | Stuart E. and Mara H. Hallett III |
| | Stuart E. and Mara H. Hallett III |
| 1 | Stuart J. and Tehilla A. Mostofsky |
| 1 | SUE STEIN |
| 1 | Suffolk Realty Corp |
| 1 | SURENDRA AVULA |
| 1 | Susan K. Eilberg |
| 1 | Susan L. Masciangelo IRA |
| 1 | Susan Rausman Trust of 2002 |
| 1 | SUSAN REYES, IRA |
| 1 | Susan Sun |
| | Susan Sun |
| 1 | Susan Wolfe Stevenson |
| | Susan Wolfe Stevenson |
| 1 | SUZANNE BAUM |
| | SUZANNE BAUM |
| | SUZANNE BAUM |
| 1 | Sylvia Anne Chapman |
| | Sylvia Anne Chapman |
| 1 | Sylvia Pogolowitz |
| | Sylvia Pogolowitz |
| | Sylvia Pogolowitz |
| 1 | Synora G. Matacia |
| 1 | TASH PARTNERS US, LLC |
| 1 | TATIANA VISOTSKI |
| | TATIANA VISOTSKI |
| | TATIANA VISOTSKI |
| | TATIANA VISOTSKI |
| 1 | Terry Barnette IRA |
| 1 | The Drucker Irrevocable Trust |
| | The Drucker Irrevocable Trust |
| 1 | THE ROSENKRANZ GRANDCHILDREN TRUST OF 1992 |
| | THE ROSENKRANZ GRANDCHILDREN TRUST OF 1992 |
| | Thomas F. Flynn |
| | Thomas F. Flynn |
| | Thomas F. Flynn |
| 1 | Thomas Flynn IRA |
| | Thomas Flynn IRA |
| 1 | Thomas G. Lucas |
| 1 | THOMAS J COORSH REVOCABLE TRUST |
| 1 | Thomas J. Coffey |
| 1 | THOMAS M TYE |
| 1 | THOMAS MOWELL IRA |
| | THOMAS MOWELL, ROTH IRA |
| 1 | Thomas P. and Dolores M. Reidy |
| | Thomas P. and Dolores M. Reidy |
| | Thomas P. and Dolores M. Reidy |
| | Thomas P. and Dolores M. Reidy |
| | Thomas P. and Dolores M. Reidy |
| | Thomas P. and Dolores M. Reidy |
| | Thomas P. and Dolores M. Reidy |
| 1 | Thomas R. Watkins, Jr. and Rebecca P. Watkins |
| | Thomas R. Watkins, Jr. and Rebecca P. Watkins |
| | Thomas R. Watkins, Jr. and Rebecca P. Watkins |
| | Thomas R. Watkins, Jr. and Rebecca P. Watkins |
| 1 | Tidewater Eye Centers 401K Profit Sharing Plan |
| 1 | TIMOTHY & ROBERTA MOORE |
| 1 | Timothy F. and Mary E. Foley |
| 1 | TINA AND NATHAN MARTEL, JTWROS |
| 1 | TINA I ROBINSON |
| 1 | Tina M Arias |
| | Tina M Arias |
| 1 | TOBY SHACHAR-FLEISHER |

| SEC Count | StRecipientName |
|---|---|
| 1 | Todd and Terry Miller |
|  | Todd and Terry Miller |
| 1 | TODD WRIGHT |
| 1 | Torah Foundation of Milwaukee |
|  | Torah Foundation of Milwaukee |
| 1 | Tracey  Cohen |
| 1 | Tracy Nabers TOD |
|  | Tracy Nabers TOD |
| 1 | Trinity Eagle Group, LLC |
| 1 | Troy and Patricia Robertson |
|  | Troy and Patricia Robertson |
|  | Troy and Patricia Robertson |
|  | Troy and Patricia Robertson |
| 1 | Trust Under Will of Benjamin Rabinovici, FBO Sheldon M. Rabin |
|  | Trust Under Will of Benjamin Rabinovici, FBO Sheldon M. Rabin |
| 1 | TSAFRIR COHEN |
| 1 | Tsvi and Beverly  Ingber |
| 1 | Tzvia Karlinsky Sapsowitz and Isaiah Karlinsky |
|  | Tzvia Karlinsky Sapsowitz and Isaiah Karlinsky |
|  | Tzviah Karlinsky Sapsowitz |
| 1 | U-Val Management and Promotion |
| 1 | Valda S. Morgan |
|  | Valda S. Morgan |
| 1 | Vera Revesz |
|  | Vera Revesz |
|  | Vera Revesz |
|  | Vera Revesz |
| 1 | Vickie Anne  Noonan |
|  | Victor  Parisien |
|  | Victor  Parisien |
|  | Victor  Parisien |
|  | Victor  Parisien |
|  | Victor  Parisien |
|  | Victor  Parisien |
|  | Victor  Parisien |
|  | Victor  Parisien |
| 1 | Victor and Marie Salama |
| 1 | Victor James Psimas |
| 1 | Victor Parisien IRA |
|  | Victor Parisien IRA |
|  | Victor Parisien IRA |
|  | Victor Parisien IRA |
|  | Victor Parisien IRA |
|  | Victor Parisien IRA |
| 1 | Vincent and Rose Cataldo |
|  | Vincent and Rose Cataldo |
|  | Vincent T. Cataldo IRA |
| 1 | VIRGINIA BOWERMAN, IRA |
| 1 | Virginia D. Belvin |
| 1 | Virginia D. Belvin IRA |
|  | Virginia D. Belvin IRA |
|  | Virginia D. Belvin IRA |
| 1 | Virginia E. and Paul K. Evenstad |
|  | Virginia E. and Paul K. Evenstad |
|  | Virginia E. and Paul K. Evenstad |
|  | Virginia E. and Paul K. Evenstad |
|  | Virginia E. Evenstad Revocable Trust |
|  | Virginia E. Evenstad Revocable Trust |
|  | Virginia E. Evenstad Revocable Trust |
| 1 | Virginia Ehrhart Family Trust |
| 1 | Vivian Orgel |
| 1 | VIVIEN YU LIVING TRUST |
| 1 | Walter and Priscilla  Bayer |
|  | Walter and Priscilla  Bayer |
| 1 | Walton St. General Partnership |
| 1 | Wayne A. and Jane M. Smith |
| 1 | Weinfeld Family Living Trust |
|  | Weinfeld Family Living Trust |
|  | Weinfeld Family Living Trust |
|  | Weinfeld Family Living Trust |
|  | Weinfeld Family Living Trust |
|  | Weinfeld Family Living Trust |
|  | Weinfeld Family Living Trust |
|  | Weldon Turner |

| SEC Count | StRecipientName |
|---|---|
| | Wexford Capital Partners |
| 1 | Whit B. Collins |
| 1 | Whitecap Investments, GP Investors |
| 1 | Wiener Family Trust |
| | Wiener Family Trust |
| | Wiener Family Trust |
| | Wiener Family Trust |
| | Wiener Family Trust |
| 1 | WILLIAM  YANDELL III, IRA |
| 1 | WILLIAM & DEBORAH COHN, JTWROS |
| | WILLIAM & DEBORAH COHN, JTWROS |
| 1 | William and Deborah Barnett |
| 1 | William C. Morgan |
| 1 | William Corbett |
| | William Corbett |
| | William Corbett |
| 1 | William F. and Mary E.  Dingler, Jr. |
| | William F. and Mary E.  Dingler, Jr. |
| 1 | William J Zent |
| | William J Zent |
| | William J Zent |
| | William J Zent |
| 1 | William R. and Susan Masciangelo |
| | William R. Masciangelo IRA |
| 1 | WILLIAM RICKARD |
| | WILLIAM RICKARD |
| 1 | William Sabel |
| | William Sabel |
| 1 | WILLIAM T CONSIDINE |
| 1 | William V. & Cheryl L. Shea II |
| | William V. & Cheryl L. Shea II |
| | William V. & Cheryl L. Shea II |
| | William V. & Cheryl L. Shea II |
| | William V. & Cheryl L. Shea II |
| | William V. & Cheryl L. Shea II |
| | William V. & Cheryl L. Shea II |
| 1 | William Wiley |
| 1 | Willowbend Ventures, LP |
| 1 | WIMBLEDON REAL ESTATE FIN.MASTER FUND |
| 1 | Worldwide Golf Associates L.P. |
| 1 | WRT Acquisitions, LLC |
| 1 | YAD HARAV HERZOG CORP |
| | YAD HARAV HERZOG CORP |
| 1 | Yahalom, LLC |
| | Yahalon, LLC |
| 1 | Yakov Basch |
| | Yakov Basch |
| 1 | Yakov Basch Custodian Bassheva Basch Fiduciary |
| | Yakov Basch Custodian Bassheva Basch Fiduciary |
| 1 | Yaniv and Keren  Gadka |
| | Yaniv and Keren  Gadka |
| | Yaniv and Keren  Gadka |
| 1 | YARIV BECHAR |
| 1 | Yasuko Negita |
| 1 | Yechezkel Ingber |
| 1 | YEDIDYA KNOPF |
| 1 | Yehuda and Elana Zadik |
| | Yehuda and Elana Zadik |
| | Yehuda and Elana Zadik |
| | Yehuda and Elana Zadik |
| 1 | Yehuda and Isaiah Karlinsky |
| | Yehuda and Isaiah Karlinsky |
| 1 | Yehuda and Lael Polsky |
| 1 | Yehuda and Simchea Zadok |
| | Yehuda and Simchea Zadok |
| | Yehuda and Simchea Zadok |
| 1 | Yehuda Friedman |
| | Yehuda Friedman |
| | Yehuda Friedman |
| 1 | Yehuda J. Lev |
| | Yehuda Lev IRA |
| 1 | YEHUDA POLSKY |
| 1 | YEHUDA ROSENBLATT |
| 1 | YEHUDAH HOSCHANDER |

| SEC Count | StRecipientName |
|---|---|
| 1 | Yerger Clifton Yandell |
|  | Yerger Clifton Yandell |
|  | Yerger Clifton Yandell |
|  | Yerger Clifton Yandell |
|  | Yerger Clifton Yandell |
|  | Yerger Clifton Yandell |
| 1 | Yeshaya Zeivald |
| 1 | YESHIVA GEDOLAH OF SEA GATE |
| 1 | Yisrael Davidowitz |
|  | Yisrael Davidowitz |
| 1 | YITZCHOK MITNICK |
| 1 | YOCHANAN STEPEN |
| 1 | Yocheved Davidowitz |
| 1 | YOCHEVED SAUNDERS |
| 1 | Yoel Asher Shiffman |
| 1 | YOM-TOV SAMIA |
| 1 | Yona Klein |
| 1 | YONATAN LEIBTAG |
| 1 | Yoram & Ronit Bar  Amar |
|  | Yoram & Ronit Bar  Amar |
| 1 | Yosef Karlinsky |
| 1 | YOSEF OLDAK |
| 1 | Yosi N. and Tammy R. Heber |
|  | Yosi N. and Tammy R. Heber |
| 1 | YSHAYAHU FRENKEL |
| 1 | Yue  Zhang and Xueyu Wang |
|  | Yue  Zhang and Xueyu Wang |
|  | Yue  Zhang and Xueyu Wang |
|  | Yue  Zhang and Xueyu Wang |
| 1 | Yvonne F. Batchelder, TOD |
|  | Yvonne F. Batchelder, TOD |
|  | Yvonne F. Batchelder, TOD |
|  | Yvonne F. Batchelder, TOD |
|  | Yvonne F. Batchelder, TOD |
|  | Yvonne Franklin Batchelder IRA |
| 1 | ZACHARY VIDERS |
|  | ZACHARY VIDERS |
| 1 | Zeev & Lauren Sivan |
|  | Zeev Yehuda and Shoshana Friedman |
|  | Zeev Yehuda and Shoshana Friedman |
|  | Zeev Yehuda and Shoshana Friedman |
|  | Zeev Yehuda and Shoshana Friedman |
|  | Zeev Yehuda and Shoshana Friedman |
| 1 | Zev Geffen |
| 1 | Zichron Avroham |
| 1 | ZIGFREID FREIDMAN |
| 1 | Zukerman Fam Partnership |
|  | Zukerman Fam Partnership |
| 1,196 |  |

5

**Entity and Status Report**

| SEC Count | | Name | Purchase Price | Equity Per PPM | Manager | Owner of Manager | Owner of Owner |
|---|---|---|---|---|---|---|---|
| 1 | Ron Grove | 45 S. Washington Holdings, LLC | 1,825,000 | | 45 S. Washington Managers, LLC | Westrust Equity Partners, LLC | 80% WTC; 20% M. Gorney |
| 1 | | 45 S. Washington Managers, LLC | N/A | N/A | | 80% WTC; 20% M. Gorney | |
| 1 | | 45 S. Washington Investors, LLC | N/A | N/A | 45 S. Washington Managers, LLC | Westrust Equity Partners, LLC | 80% WTC; 20% M. Gorney |
| 1 | Sheldon Lebb | 47 Dean Street Investors, LLC | 2,400,000 | | 47 Dean Street Managers, LLC | Westrust Equity Partners, LLC | 80% WTC; 20% M. Gorney |
| 1 | | 47 Dean Street Investors, LLC | | 2,425,000 | 47 Dean Street Managers, LLC | Westrust Equity Partners, LLC | 80% WTC; 20% M. Gorney |
| 1 | | 47 Dean Street Holdings, LLC | N/A | N/A | 47 Dean Street Managers, LLC | Westrust Equity Partners, LLC | 80% WTC; 20% M. Gorney |
| 1 | Ron Grove | 47 Dean Street Ventures, LLC | N/A | N/A | 47 Dean Street Managers, LLC | Westrust Equity Partners, LLC | 80% WTC; 20% M. Gorney |
| 1 | | 116 N. York Road LLC | 3,700,000 | | 116 N. York Road Managers, LLC | Westrust Equity Partners, LLC | 80% WTC; 20% M. Gorney |
| 1 | Tom Fabian | 2400 McCue Investors, LLC | 30,404,000 | | Steve Byers | | |
| 1 | Don Price | 2435 W. Belmont Development Company, LLC | 2,294,705 | | 45 S. Belmont Managers, LLC | Westrust Equity Partners, LLC | 80% WTC; 20% M. Gorney |
| 1 | | 2435 W. Belmont Investors, LLC | N/A | 3,050,000 | 2435 W. Belmont Managers, LLC | Westrust Equity Partners, LLC | 80% WTC; 20% M. Gorney |
| 1 | Don Price | 2435 W. Belmont Managers, LLC | N/A | N/A | | 80% WTC; 20% M. Gorney | |
| 1 | | 2825 Oakley LLC | N/A | N/A | River's Edge Managers, LLC | Westrust Equity Partners, LLC | 80% WTC; 20% M. Gorney |
| 1 | SOLD | Advantage Regency Holdings, LLC | N/A-Sold | N/A-Sold | Steve Byers | | |
| 1 | Joseph Shereshevsky | ATM II, LLC | 25,000,000 | 25,000,000 | Brandon Investments, LLC | WTC | 20% Steve Byers, 20% Elka Shereshevsky, 20% Lindsay Investment Limited Partnership, 20% Brandon Family Limited Partnership, 20% Amnon Cohen |
| 1 | Elmer Coppolse | Axela Hospitality, LLC | | | Westrust Hospitality Management, LLC | WTC | 20% Steve Byers, 20% Elka Shereshevsky, 20% Lindsay Investment Limited Partnership, 20% Brandon Family Limited Partnership, 20% Amnon Cohen |
| 1 | Elmer Coppolse | Axela Baltimore Holdings, LLC | | | Axela Baltimore Managers, LLC | Axela Hospitality, LLC | 80% WTC/20% Billhoven |
| 1 | | Axela Baltimore Investors, LLC | | | Axela Baltimore Managers, LLC | Axela Hospitality, LLC | 80% WTC/20% Billhoven |
| 1 | Ron Grove | Belle Meade Centre Investors, LLC | 6,875,000 | 1,500,000 | Westrust Equity Partners, LLC | 80% WTC/20% Billhoven | |
| 1 | Joseph Shereshevsky | Block III Investors, LLC | 11,000,000 | 11,000,000 | Block III Managers, LLC | WTC | 20% Steve Byers, 20% Elka Shereshevsky, 20% Lindsay Investment Limited Partnership, 20% Brandon Family Limited Partnership, 20% Amnon Cohen |
| 1 | | Block III Managers, LLC | | | Brandon Investments, LLC | 99% WTC; 1% Eakes FLP | |
| 1 | Ron Grove | Clarksville Industrial Holdings, LLC | N/A | 1,100,000 | Clarksville Industrial Managers, LLC | WTC | 20% Steve Byers, 20% Elka Shereshevsky, 20% Lindsay Investment Limited Partnership, 20% Brandon Family Limited Partnership, 20% Amnon Cohen |
| 1 | | Clarksville Industrial Investors, LLC | 4,213,000 | | Clarksville Industrial Managers, LLC | Westrust Equity Partners, LLC | 80% WTC; 20% M. Gorney |
| 1 | | Clarksville Industrial Managers, LLC | N/A | N/A | Westrust Equity Partners, LLC | 80% WTC; 20% M. Gorney | |
| 1 | Elmer Coppolse | Clarksville Industrial Ventures, LLC | N/A | 9,300,000 | Clarksville Industrial Managers, LLC | Westrust Equity Partners, LLC | 80% WTC; 20% M. Gorney |
| 1 | | CP Phoenix Holdings, LLC | 24,000,000 | | CP Phoenix Managers, LLC | Axela Hospitality, LLC | 80% WTC/20% Billhoven |
| 1 | | CP Phoenix Investors, LLC | N/A | N/A | CP Phoenix Managers, LLC | Axela Hospitality, LLC | 80% WTC/20% Billhoven |
| 1 | | CP Phoenix Managers, LLC | N/A | N/A | | Axela Hospitality, LLC | 80% WTC/20% Billhoven |
| 1 | Sheldon Lebb | Dean Street Managers, LLC | N/A | N/A | WTC | 20% Steve Byers, 20% Elka Shereshevsky, 20% Lindsay Investment Limited Partnership, 20% Brandon Family Limited Partnership; 20% Daniella, LLC | |
| 1 | | Dean Street Investors, LLC | N/A | N/A | Drake Oak Brook Managers, LLC | WTC | 20% Steve Byers, 20% Elka Shereshevsky, 20% Lindsay Investment Limited Partnership, 20% Brandon Family Limited Partnership, 20% Amnon Cohen |
| 1 | Elmer Coppolse | Drake Oak Brook Holdings, LLC | 19,000,000 | 14,500,000 | Drake Oak Brook Managers, LLC | Axela Hospitality, LLC | 80% WTC/20% Billhoven |
| 1 | | Drake Oak Brook Investors, LLC | N/A | N/A | Drake Oak Brook Managers, LLC | Axela Hospitality, LLC | 80% WTC/20% Billhoven |
| 1 | | Drake Oak Brook Managers, LLC | N/A | N/A | | Axela Hospitality, LLC | 80% WTC/20% Billhoven |

1

**Entity and Status Report**

| SEC Count | | Name | Purchase Price | Equity Per PPM | Manager | Owner of Manager | Owner of Owner |
|---|---|---|---|---|---|---|---|
| 1 | SOLD | East Point Investors, LLC | N/A-Sold | N/A-Sold | Wexford Equity Partners, LLC | 80% WTC; 20% M. Gorney | |
| 1 | Ron Grove | Executive Plaza, LLC | 1,000,000 | N/A | Steve Byers | | |
| 1 | Ron Grove | First Highland, LLC | 13,000,000 | 3,880,000 | First Highland Managers, LLC | Wexford Equity Partners, LLC | 80% WTC; 20% M. Gorney |
| 1 | | First Highland Equity Investors, LLC | N/A | N/A | First Highland Managers, LLC | Wexford Equity Partners, LLC | 80% WTC; 20% M. Gorney |
| 1 | | First Highland Managers, LLC | N/A | N/A | Wexford Equity Partners, LLC | 80% WTC; 20% M. Gorney | |
| 1 | Ron Grove-CBRE | First Wyoming Plaza, LLC | 23,300,000 | 6,750,000 | Wexford Equity Partners, LLC | 80% WTC; 20% M. Gorney | |
| 1 | | First Wyoming Investors, LLC | N/A | N/A | Wexford Equity Partners, LLC | 80% WTC; 20% M. Gorney | |
| 1 | Tom Pabian | GC Managers, LLC | N/A | N/A | Wexford Equity Partners, LLC | 80% WTC; 20% M. Gorney | |
| 1 | | Gold Coast Development, LLC | 21,000,000 | 9,000,000 | Wexford Equity Partners, LLC | 80% WTC; 20% M. Gorney | |
| 1 | | Gold Coast Investors, LLC | N/A | N/A | GC Managers, LLC | Wexford Equity Partners, LLC | 80% WTC; 20% M. Gorney |
| 1 | | Gold Coast Master Tenant, LLC | N/A | N/A | Gold Coast Master Tenant Manager, LLC | Wexford Equity Partners, LLC | 80% WTC; 20% M. Gorney |
| 1 | | Gold Coast Master Tenant Manager, LLC | N/A | N/A | Wexford Equity Partners, LLC | 80% WTC; 20% M. Gorney | |
| 1 | Don Price | Grant Street Investors, LLC | 18,200,000 | 9,200,000 | GSH Managers, LLC | Wexford Development, LLC | 80% WTC; 20% Don Price |
| 1 | Steve Byers | GSA Holdings, LLC | N/A | N/A | GSA Managers, LLC | Wexford Equity Partners, LLC | 80% WTC; 20% M. Gorney |
| 1 | | GSA Investors, LLC | 28,300,000 | 9,200,000 | GSA Managers, LLC | Wexford Equity Partners, LLC | 80% WTC; 20% M. Gorney |
| 1 | | GSA Managers, LLC | N/A | N/A | Wexford Equity Partners, LLC | 80% WTC; 20% M. Gorney | |
| 1 | Don Price | GSH Development, LLC | 18,000,000 | 9,200,000 | Wexford Development, LLC | 80% WTC; 20% Don Price | |
| 1 | | GSH Managers, LLC | N/A | N/A | Wexford Development, LLC | 80% WTC; 20% Don Price | |
| 1 | Ron Grove | Hammond Industrial Holdings, LLC | 28,400,000 | 7,000,000 | Hammond Industrial Managers, LLC | Wexford Equity Partners, LLC | 80% WTC; 20% M. Gorney |
| 1 | | Hammond Industrial Investors, LLC | N/A | N/A | Hammond Industrial Managers, LLC | Wexford Equity Partners, LLC | 80% WTC; 20% M. Gorney |
| 1 | | Hammond Industrial Managers, LLC | N/A | N/A | Wexford Equity Partners, LLC | 80% WTC; 20% M. Gorney | |
| 1 | | Hammond Industrial Ventures, LLC | N/A | N/A | Hammond Industrial Managers, LLC | Wexford Equity Partners, LLC | 80% WTC; 20% M. Gorney |
| 1 | | Hamptons of Hinsdale Mortgage Fund, LLC | N/A | N/A | | | |
| 1 | Don Price | Hilltop Apartments, LLC | 4,650,000 | N/A | Wexford Development, LLC | 80% WTC; 20% Don Price | |
| 1 | Tom Pabian | Hilltop Investors, LLC | 600,000 | N/A | Hilltop Investors, LLC | Wexford Equity Partners, LLC | 80% WTC; 20% M. Gorney |
| 1 | Tom Pabian | Hilltop Ridge Investors, LLC | N/A | N/A | Wexford Equity Partners, LLC | 80% WTC; 20% M. Gorney | |
| 1 | SOLD | Hinsdale First, LLC | N/A-Sold | N/A-Sold | Steve Byers | | |
| 1 | Don Price | Homer Development, LLC | 4,379,285 | 1,720,000 | Homer Managers, LLC | Wexford Development, LLC | 80% WTC; 20% Don Price |
| 1 | | Homer Investors, LLC | N/A | N/A | Homer Managers, LLC | Wexford Development, LLC | 80% WTC; 20% Don Price |
| 1 | | Homer Managers, LLC | N/A | N/A | Wexford Development, LLC | 80% WTC; 20% Don Price | |
| 1 | Ron Grove | Interstate Park Holdings, LLC | 28,450,000 | 7,800,000 | Interstate Park Managers, LLC | Wexford Equity Partners, LLC | 80% WTC; 20% M. Gorney |
| 1 | | Interstate Park Investors, LLC | N/A | N/A | Interstate Park Managers, LLC | Wexford Equity Partners, LLC | 80% WTC; 20% M. Gorney |
| 1 | | Interstate Park Managers, LLC | N/A | N/A | Wexford Equity Partners, LLC | 80% WTC; 20% M. Gorney | |
| 1 | | Interstate Park Ventures, LLC | N/A | N/A | Interstate Park Managers, LLC | Wexford Equity Partners, LLC | 80% WTC; 20% M. Gorney |
| 1 | N/A | Mansfield Capital, LLC | N/A | N/A | WTC | 20% Steve Byers, 20% Elka Shereshevsky, 20% Lindsay Investment Limited Partnership, 20% Brandon Family Limited Partnership; 20% Daniella, LLC | |
| 1 | N/A | Mansfield Investment Manager, LLC | N/A | N/A | WTC | 20% Steve Byers, 20% Elka Shereshevsky, 20% Lindsay Investment Limited Partnership, 20% Brandon Family Limited Partnership; 20% Daniella, LLC | |
| 1 | Ron Grove | New Salem Holdings, LLC | 4,225,000 | 1,050,000 | New Salem Managers, LLC | Wexford Equity Partners, LLC | 80% WTC; 20% M. Gorney |
| 1 | | New Salem Investors, LLC | N/A | N/A | New Salem Managers, LLC | Wexford Equity Partners, LLC | 80% WTC; 20% M. Gorney |
| 1 | | New Salem Managers, LLC | N/A | N/A | Wexford Equity Partners, LLC | 80% WTC; 20% M. Gorney | |
| 1 | SOLD | Nu Pointe East, LLC | N/A-Sold | N/A-Sold | East Point Investors, LLC | 80% WTC; 20% M. Gorney | |
| 1 | Ron Grove/ Wood Properties | Park Village Holdings, LLC | 5,750,000 | 2,100,000 | Park Village Managers, LLC | Wexford Equity Partners, LLC | 80% WTC; 20% M. Gorney |
| 1 | Ron Grove | Park Village Managers, LLC | N/A | N/A | Wexford Equity Partners, LLC | 80% WTC; 20% M. Gorney | |
| 1 | | Peoria Office Holdings, LLC | 4,750,000 | N/A | Peoria Office Managers, LLC | Wexford Equity Partners, LLC | 80% WTC; 20% M. Gorney |
| 1 | | Peoria Office Investors, LLC | N/A | N/A | Wexford Equity Partners, LLC | 80% WTC; 20% M. Gorney | |
| 1 | | Peoria Office Managers, LLC | N/A | N/A | Wexford Equity Partners, LLC | 80% WTC; 20% M. Gorney | |

**Entity and Status Report**

| | SEC Count | Name | Purchase Price | Equity Per FPM | Manager | Owner of Manager | Owner of Owner |
|---|---|---|---|---|---|---|---|
| | 1 | Peoria Office Ventures, LLC | N/A | N/A | Peoria Office Managers, LLC | Wexford Equity Partners, LLC | 80% WTC; 20% M. Gorney |
| | 1 | PVP Ventures, LLC | N/A | N/A | Park Village Managers, LLC | Wexford Equity Partners, LLC | 80% WTC; 20% M. Gorney |
| Don Price | 1 | Riverside Arcade, LLC | 3,650,000 | N/A | Steve Byers | | |
| Don Price | 1 | River's Edge Investors, LLC | 13,665,000 | 3,08,000 | River's Edge Managers, LLC | Wexford Equity Partners, LLC | 80% WTC; 20% M. Gorney |
| | 1 | River's Edge Managers, LLC | N/A | N/A | Wexford Equity Partners, LLC | 80% WTC; 20% M. Gorney | |
| Ron Grove/ NAI MLG Management | 1 | S. Pine Street Holdings, LLC | 10,500,000 | 2,550,000 | S. Pine Street Managers, LLC | Wexford Equity Partners, LLC | 80% WTC; 20% M. Gorney |
| | 1 | S. Pine Street Investors, LLC | N/A | N/A | S. Pine Street Managers, LLC | Wexford Equity Partners, LLC | 80% WTC; 20% M. Gorney |
| | 1 | S. Pine Street Managers, LLC | N/A | N/A | Wexford Equity Partners, LLC | 80% WTC; 20% M. Gorney | |
| | 1 | S. Pine Street Mezzanine, LLC | N/A | N/A | S. Pine Street Managers, LLC | Wexford Equity Partners, LLC | 80% WTC; 20% M. Gorney |
| | 1 | S. Pine Street Ventures, LLC | N/A | N/A | S. Pine Street Managers, LLC | Wexford Equity Partners, LLC | 80% WTC; 20% M. Gorney |
| Don Price | 1 | SF Development Company, LLC | 4,000,000 | 1,350,000 | SF Managers I, LLC | Wexford Development, LLC | 80% WTC; 20% Don Price |
| | 1 | SF Investors, LLC | N/A | N/A | SF Managers I, LLC | Wexford Development, LLC | 80% WTC; 20% Don Price |
| | 1 | SF Managers I, LLC | N/A | N/A | Wexford Development, LLC | 80% WTC; 20% Don Price | |
| Ron Grove/ NAI Charter Real Estate Corp | 1 | Shallowford Holdings, LLC | 3,350,000 | 825,000 | Shallowford Managers, LLC | Wexford Equity Partners, LLC | 80% WTC; 20% M. Gorney |
| | 1 | Shallowford Investors, LLC | N/A | N/A | Shallowford Managers, LLC | Wexford Equity Partners, LLC | 80% WTC; 20% M. Gorney |
| | 1 | Shallowford Managers, LLC | N/A | N/A | Wexford Equity Partners, LLC | 80% WTC; 20% M. Gorney | |
| | 1 | Shallowford Ventures, LLC | N/A | N/A | Shallowford Managers, LLC | Wexford Equity Partners, LLC | 80% WTC; 20% M. Gorney |
| Ron Grove/Wood Properties | 1 | Tennessee Office Holdings, LLC | 17,088,535 | 3,650,000 | Tennessee Office Managers, LLC | Wexford Equity Partners, LLC | 80% WTC; 20% M. Gorney |
| | 1 | Tennessee Office Investors, LLC | N/A | N/A | Tennessee Office Managers, LLC | Wexford Equity Partners, LLC | 80% WTC; 20% M. Gorney |
| | 1 | Tennessee Office Managers, LLC | N/A | N/A | Wexford Equity Partners, LLC | 80% WTC; 20% M. Gorney | |
| | 1 | Tennessee Office Ventures, LLC | N/A | N/A | Tennessee Office Managers, LLC | Wexford Equity Partners, LLC | 80% WTC; 20% M. Gorney |
| Paul Adrian | 1 | WDF Investors, LLC | N/A | | WDF Managers, LLC | WTC | 20% Steve Byers, 20% Elka Shereshevsky, 20% Lindsay Investment Limited Partnership, 20% Brandon Family Limited Partnership; 20% Amnon Cohen |
| Paul Adrian | 1 | WDF Managers, LLC | | | | WTC | 20% Steve Byers, 20% Elka Shereshevsky, 20% Lindsay Investment Limited Partnership, 20% Brandon Family Limited Partnership; 20% Daniella, LLC |
| Paul Adrian | 1 | WDF Principal Protection, LLC | N/A | | WDF Managers, LLC | WTC | |
| Paul Adrian | 1 | West 82nd Street Holdings, LLC | 12,282,000 | 8,470,000 | West 82nd Street Managers, LLC | Wexford Development, LLC | 80% WTC; 20% Don Price |
| Sheldon Lebb | 1 | West 82nd Street Investors, LLC | N/A | N/A | West 82nd Street Managers, LLC | Wexford Development, LLC | 80% WTC; 20% Don Price |
| | 1 | West 82nd Street Managers, LLC | N/A | N/A | Wexford Development, LLC | 80% WTC; 20% Don Price | |
| Ron Grove/Wood Properties | 1 | West Bearden Holding, LLC | 8,600,000 | 1,950,000 | West Bearden Managers, LLC | Wexford Equity Partners, LLC | 80% WTC; 20% M. Gorney |
| | 1 | West Bearden Investors, LLC | N/A | N/A | West Bearden Managers, LLC | Wexford Equity Partners, LLC | 80% WTC; 20% M. Gorney |
| | 1 | West Bearden Managers, LLC | N/A | N/A | Wexford Equity Partners, LLC | 80% WTC; 20% M. Gorney | |
| | 1 | West Bearden Ventures, LLC | N/A | N/A | Tennessee Office Managers, LLC | Wexford Equity Partners, LLC | 80% WTC; 20% M. Gorney |
| Amnon Cohen | 1 | WEX-I, LLC | N/A | | WTC | 20% Steve Byers, 20% Elka Shereshevsky, 20% Lindsay Investment Limited Partnership, 20% Brandon Family Limited Partnership; 20% Daniella, LLC | |
| Amnon Cohen | 1 | Wex-II, LLC | N/A | | WTC | 20% Steve Byers, 20% Elka Shereshevsky, 20% Lindsay Investment Limited Partnership, 20% Brandon Family Limited Partnership; 20% Daniella, LLC | |
| Don Price | 1 | Wexford Development, LLC | N/A | N/A | 80% WTC; 20% Don Price | | |
| Don Price | 1 | Wexford Development New York, LLC | N/A | N/A | Wexford Development, LLC | 80% WTC; 20% Don Price | |

Entity and Status Report

| SEC Count | | Name | Purchase Price | Equity Per PPM | Manager | Owner of Manager | Owner of Owner |
|---|---|---|---|---|---|---|---|
| 1 | | Wexford Homes LLC | N/A | N/A | Wexford Development, LLC | 80% WTC; 20% Don Price | |
| 1 | Don Price | WEXFX, LLC | N/A | N/A | WexTrust Securities, LLC | Michael Mosfitsky & Weldon Turner | |
| 1 | Weldon Turner | WexTrade Commodity Holdings, LLC | N/A | N/A | Paul Adrian | | |
| 1 | Paul Adrian | WexTrade Commodity Managers, LLC | N/A | N/A | Paul Adrian | | |
| 1 | Paul Adrian | WexTrade Diversified Futures Fund I, LLC | N/A | N/A | Paul Adrian | | |
| 1 | Paul Adrian | WexTrade Diversified Offshore Futures Fund I, LTD. | N/A | N/A | Paul Adrian | | |
| 1 | Paul Adrian | WexTrade Financial, LLC | N/A | N/A | WTC | 20% Steve Byers, 20% Elka Shereshevsky, 20% Lindsay Investment Limited Partnership, 20% Brandon Family Limited Partnership; 20% Daniella, LLC | |
| 1 | Paul Adrian | WexTrade Master Fund I, LTD. | N/A | N/A | Paul Adrian | | |
| 1 | Paul Adrian | WexTrade Principal Offshore Fund I, LTD | N/A | N/A | Paul Adrian | | |
| 1 | Paul Adrian | WexTrade Principal Protected Fund I, LLC | N/A | N/A | Paul Adrian | | |
| 1 | Ron Grove | WexTrust Asset Management, LLC | N/A | N/A | Wextrust Equity Partners, LLC | 80% WTC; 20% M. Goney | |
| 1 | Steve Byers | WexTrust Capital LLC | N/A | N/A | 20% Steve Byers, 20% Elka Shereshevsky, 20% Lindsay Investment Limited Partnership, 20% Brandon Family Limited Partnership; 20% Amnon Cohen | | |
| 1 | Mike Gorney | WexTrust Equity Partners, LLC | N/A | N/A | 80% WTC; 20% M. Gorney | | |
| 1 | Amnon Cohen | WexTrust High Yield Debt Fund I, LLC | N/A | N/A | Wex I | WTC | 20% Steve Byers, 20% Elka Shereshevsky, 20% Lindsay Investment Limited Partnership, 20% Brandon Family Limited Partnership; 20% Amnon Cohen |
| 1 | Amnon Cohen | WexTrust High Yield Debt Fund III, LLC | N/A | N/A | Wex I | WTC | 20% Steve Byers, 20% Elka Shereshevsky, 20% Lindsay Investment Limited Partnership, 20% Brandon Family Limited Partnership; 20% Amnon Cohen |
| 1 | Amnon Cohen | Wextrust High Yield Debt Offshore, Ltd. | N/A | N/A | Wex II | WTC | 20% Steve Byers, 20% Elka Shereshevsky, 20% Lindsay Investment Limited Partnership, 20% Brandon Family Limited Partnership; 20% Amnon Cohen |
| 1 | N/A | WexTrust Hospitality Management, LLC | N/A | N/A | WTC | 20% Steve Byers, 20% Elka Shereshevsky, 20% Lindsay Investment Limited Partnership, 20% Brandon Family Limited Partnership; 20% Daniella, LLC | |
| 1 | Amnon Cohen | WexTrust/HPC Mortgage Fund, LP | N/A | N/A | WTC | 20% Steve Byers, 20% Elka Shereshevsky, 20% Lindsay Investment Limited Partnership, 20% Brandon Family Limited Partnership; 20% Daniella, LLC | |
| 1 | N/A | WexTrust Qualified Investors, LLC | N/A | N/A | WTC | 20% Steve Byers, 20% Elka Shereshevsky, 20% Lindsay Investment Limited Partnership, 20% Brandon Family Limited Partnership; 20% Daniella, LLC | |
| 1 | Weldon Turner | WexTrust Securities, LLC | N/A | N/A | Michael Mosfitsky & Weldon Turner | | |

4

**Entity and Status Report**

| SEC Count | | Name | Purchase Price | Equity Per PPM | | Manager | Owner of Manager | Owner of Owner |
|---|---|---|---|---|---|---|---|---|
| 1 | Amnon Cohen | Whitney Realty Advisors, LLC | N/A | N/A | | | 20% Steve Byers, 20% Elka Shereshevsky, 20% Lindsay Investment Limited Partnership, 20% Brandon Family Limited Partnership, 20% Daniels, LLC | |
| 1 | Ron Grove | Wilma Rudolph Holdings, LLC | 1,700,000 | N/A | WTC | 275,000 | Wilma Rudolph Managers, LLC | Wextrust Equity Partners, LLC | 80% WTC; 20% M. Gorney |
| 1 | | Wilma Rudolph Investors, LLC | N/A | N/A | | | Wilma Rudolph Managers, LLC | Wextrust Equity Partners, LLC | 80% WTC; 20% M. Gorney |
| 1 | | Wilma Rudolph Managers, LLC | N/A | N/A | | | Wextrust Equity Partners, LLC | 80% WTC; 20% M. Gorney | |
| 1 | | Wilma Rudolph Ventures, LLC | N/A | N/A | | | Wilma Rudolph Managers, LLC | Wextrust Equity Partners, LLC | 80% WTC; 20% M. Gorney |
| 1 | Ron Grove | Workman Road Holdings, LLC | 3,525,000 | N/A | | 750,000 | Workman Road Managers, LLC | Wextrust Equity Partners, LLC | 80% WTC; 20% M. Gorney |
| 1 | | Workman Road Investors, LLC | N/A | N/A | | | Workman Road Managers, LLC | Wextrust Equity Partners, LLC | 80% WTC; 20% M. Gorney |
| 1 | | Workman Road Managers, LLC | N/A | N/A | | | Wextrust Equity Partners, LLC | 80% WTC; 20% M. Gorney | |
| 1 | | Workman Road Ventures, LLC | N/A | N/A | | | Workman Road Managers, LLC | Wextrust Equity Partners, LLC | 80% WTC; 20% M. Gorney |
| 1 | N/A | WPN, LLC | 8,600,000 | | | | Wextrust Equity Partners, LLC | 80% WTC; 20% M. Gorney | |
| 1 | N/A | WP New Orleans, L.L.C. | | | | | Wextrust Equity Partners, LLC | 80% WTC; 20% M. Gorney | |
| 147 | | | | | | | | |

5

**7**

**Unknown**

| | |
|---|---|
| **From:** | Steve Byers [SByers@wextrust.com] |
| **Sent:** | Friday, July 20, 2007 1:44 PM |
| **To:** | Weldon Turner; Joseph Shereshevsky; Michael Mostofsky |
| **Cc:** | Paul Adrian |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Red |

Guys, we need to start trading in August. The offshore accounts (which we spent a lot of time and money setting up) has been up for a while. We were told that there is a bunch of money committed and coming in once this is set up. To date, almost nothing has come in.

To date there is been very little if any money actually raised by Israel office. I expected a lot more. I am also disappointed with the equity raising effort in the US on this. However, I expected much more out of Israel before the US raisers got comfortable enough with the product to sell.

We all have to personally put some money in this fund and we have to get pushing. I am bringing in $800,000 from an investor and will personally put in $500,000.

Also, this fund was designed to be sold by other broker/dealers and securities firms as well as financial planners. Lets get that effort going.

Steve Byers
*CEO*
WexTrust Capital
333 W. Wacker Drive
Suite 1600
Chicago, IL 60606
T: 312/881-6000
F: 312/881-6001
*www.wextrust.com*

This e-mail transmission may contain information that is proprietary, privileged and/or confidential and is intended exclusively for the person(s) to whom it is addressed. Any use, copying, retention or disclosure by any person other than the intended recipient or the intended recipient's designees is strictly prohibited. If you are not the intended recipient or their designee, please notify the sender immediately by return e-mail and delete all copies.

------_extPart_001_01C7CAF5.948BBC

6/12/2008

8

## Unknown

| | |
|---|---|
| **From:** | Steve Byers [SByers@wextrust.com] |
| **Sent:** | Thursday, September 20, 2007 7:08 AM |
| **To:** | Weldon Turner; Joseph Shereshevsky |
| **Cc:** | Michael Mostofsky; Beth McClung |
| **Subject:** | RE: trip |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Red |

I would suggest that before we plan the dates, let plan and confirm with which investors we will meet and make sure they are available. So the first step is decide which investors we need to meet and their availability which will take some research by the equity raisers. After that we can coordinate the dates.

Weldon, we can also meet investors in Tel Aviv, but not on the same trip. So if there are investors that are important to meet for immediate funds than we should do so. With everything going on here, I don't want to go to Tel Aviv now to meet with investors that will take 6 months to make the final investment regardless. Meaning, institutions, etc. I would rather save that trip for first of the new year.

---

**From:** Weldon Turner
**Sent:** Thu 9/20/2007 6:05 AM
**To:** Joseph Shereshevsky
**Cc:** Steve Byers; Michael Mostofsky; Beth McClung
**Subject:** RE: trip

Please let me know exactly what date I would have to be there, as you can emagine flights out are pretty tight.

Weldon Turner
C.E.O.
Wextrust Securities
Aviv Tower
7 Jabotinsky Street
34th Floor
Ramat Gan, Israel 52520
Cellular: 972 54 484 4391
Office: 972 3 575 7181
U.S. Tel: 1 212 561 5142
U.S. Cellular: 914 563 3027
European Cellular: 41 44 580 1349
wturner@wextrust.com

---

**From:** Joseph Shereshevsky
**Sent:** Thu 9/20/2007 12:58 AM
**To:** Weldon Turner
**Cc:** Steve Byers; Michael Mostofsky; Beth McClung
**Subject:** RE: trip

Ok done. I don't know why I left it out.

Mike lets work this out tomorrow or Friday and lets start preparing the letter. Weldon , you will come yes??

6/11/2008

You will have to leave Israel sat nite because  that's when the holiday is over

Beth lets coordib=nate the trip

joe

joe

**Joseph Shereshevsky**
**COO**
**WexTrust Capital, LLC**
999 Waterside Drive, Suite 2220
Norfolk, VA  23510
josephs@wextrust.com
Office:  (757) 623-0246
Direct:  (757) 213-5223
Cell:  (732) 904-3368
Fax:  (757) 623-6215

Beth McClung
Executive Assistant to COO / Office Manager
999 Waterside Drive, Suite 2220
Norfolk, VA  23510
bmcclung@wextrust.com
Office:  (757) 623-0246
Direct:  (757) 213-5223
Fax:  (757) 623-6215

**From:** Weldon Turner
**Sent:** Thursday, September 20, 2007 1:29 AM
**To:** Joseph Shereshevsky; Michael Mostofsky
**Subject:** RE: trip

Sounds great but I feel very strongly that you should visit Memphis, not only because of nepatism but the larger investors there can be very large.  There are a few of our investors in Memphis that are worth north of $100m, and second they feel they don't have enough contact with management.

Best,

Weldon Turner
C.E.O.
Wextrust Securities
Aviv Tower
7 Jabotinsky Street
34th Floor
Ramat Gan, Israel 52520
Cellular: 972 54 484 4391
Office: 972 3 575 7181
U.S. Tel: 1 212 561 5142
U.S. Cellular: 914 563 3027
European Cellular: 41 44 580 1349
wturner@wextrust.com

**From:** Joseph Shereshevsky
**Sent:** Wed 9/19/2007 5:37 PM

6/11/2008

**To:** Michael Mostofsky; Weldon Turner
**Subject:** trip

Mike 'Weldon,

I spoke with steve today regarding a trip to our key cities and to meet with key investors.

We can do this trip in the week of October 7th. We can start in Norfolk and end up in Chicago or vice versa.  We will use the corporate plane for this trip. We need to do a few things:

1. get the word out to the equity raisers in the cities where we intend to visit. My suggestion:  Norfolk,Chicago,Detroit,ny.
2. let the equity raisers know that we will be coming and if there are clients that they would us to meet. Please keep in mind that the intention of this trip is two fold. A.  to get to know the clients and they can put a face on whose behind the deal making   b. the obvious which it=s to cause this trip to have more investors interested in wextrust and to have the same investors invest more money with us. So try to keep in mind with who the appointments are being made. None of the 25 or 50,000 investors. This is a trip to speak to larger clients
3. steve and the crew will answer basic questions about the market, the sub prime melt down, future deals
4. do you have any other ideas where we should go and meet people
5. make the phone calls to key investors

primarily I would like for steve to go to Israel for 2 days and meet with investors as well. I don't think I can afford to lose mike out of the office during this period, since we will have tons of deals and gigantic amounts of equity to raise.

We also have to concentrate on GDR. We do well with that fund

Any other suggestions will be welcome.  If we want to act on this we need to prepare for this to have a letter go out in the next few days

Thank you

joe

**Joseph Shereshevsky**
**COO**
**WexTrust Capital, LLC**
999 Waterside Drive, Suite 2220
Norfolk, VA  23510
josephs@wextrust.com
Office:  (757) 623-0246
Direct:  (757) 213-5223
Cell:  (732) 904-3368
Fax:  (757) 623-6215


Beth McClung
Executive Assistant to COO / Office Manager
999 Waterside Drive, Suite 2220
Norfolk, VA  23510
bmcclung@wextrust.com
Office:  (757) 623-0246
Direct:  (757) 213-5223
Fax:  (757) 623-6215

This e-mail transmission may contain information that is proprietary, privileged and/or confidential and is intended exclusively for the person(s) to whom it is addressed. Any use, copying, retention or disclosure by any person other than the intended recipient or the intended recipient's designees is strictly prohibited. If you are not the intended recipient or their designee, please notify the sender immediately by return e-mail and delete all copies.
------

6/11/2008

9

Case 1:08-cv-07104-DC    Document 19-9    Filed 09/02/2008    Page 2 of 4

⚠No Current Employers Found

⚠No Prior Employers Found

## Registrations Summary

| Individual CRD#:  5059044 | Individual Name: BYERS, STEVEN W |
|---|---|

**Current Firm(s):**

## Registrations Summary With Current Employers

⚠No Current Employers Found.

**Prior Firm(s):**

## Registrations Summary With Prior Employers

⚠No Prior Employers Found.

Back to Top

⚠No Exam Information Found.

# Exam Information

| Individual CRD#:  5059044 | Individual Name: BYERS, STEVEN W |
| --- | --- |

⚠No Current Employers Found

## Registrations Summary With Current Employers

| Individual CRD#:  5059044 | Individual Name: BYERS, STEVEN W |
|---|---|

**10**

CRD® or IARD(SM) System     Current As Of:   03/31/2008
Roster - Individual - Active Registrations and Download
CRD® or IARD(SM) System Report provided to:   SEC
Request Submitted:   4/1/2008 11:01:09 AM

# Notice

**CRD® or IARD(SM) Information:** This report contains information from the CRD (Central Registration Depository) system, or the IARD system (Investment Advisers Registration Depository), which are operated by FINRA, a national securities association registered under the Securities Exchange Act of 1934. The CRD system primarily contains registration and licensing. The IARD system primarily contains information submitted on uniform broker-dealer and agent registration forms and certain other information related to registration and licensing. The IARD system primarily contains information submitted on uniform investment adviser and agent registration forms and certain other information related to registration and licensing. The information on Uniform Forms filed with the CRD or IARD is deemed to have been filed with each regulator with which the applicant seeks to be registered or licensed and shall be the joint property of the applicant and such regulators. The compilation constituting the CRD database as a whole is the property of FINRA. Neither FINRA nor a participating regulator warrants or guarantees the accuracy or the completeness of the CRD or IARD information. CRD information consists of reportable and non-reportable information.

FINRA operates the CRD system in its capacity as a registered national securities association and pursuant to an agreement with the North American Securities Administrators Association, Inc. (NASAA).

FINRA operates the IARD system as a vendor pursuant to a contract with the Securities and Exchange Commission and undertakings with NASAA and participating state regulators.

**Reportable Information:**  Information that is required to be reported on the current version of the uniform registration forms.

**Non-Reportable Information:** Information that is not currently reportable on a uniform registration form. Information typically is not reportable because it is out-of-date; it was reported in error; or some change occurred either in the disposition of the underlying event after it was reported or in the question on the form that elicited the information. Although not currently reportable, this information was once reported on a uniform form and, consequently, may have become a state record.  Users of this information should recognize that filers have no obligation to update non-reportable data; accordingly, it may not reflect changes that have occurred since it was reported.

CRD® or IARD(SM) System      Current As Of:   03/31/2008
Roster - Individual - Active Registrations and Download
CRD® or IARD(SM) System Report provided to:  SEC
Request Submitted:   4/1/2008 11:01:09 AM

| Details for Request#: | 4438217 |
| Report: | Roster - Individual - Active Registrations and Download |
| Requested By: | TH |

| Parameter Name | Value |
| --- | --- |
| Regulator | FINRA |
| Organization CRD # | 137559 |
| Firm's status with the jurisdiction | BD Registered |
| Include Registrations or Professional Designations? | Registrations |
| Registration Category/Position | ALL |
| Generate Zipped CSV file? | No |

CRD® or IARD(SM) System    Current As Of:  03/31/2008
Roster - Individual - Active Registrations and Download
CRD® or IARD(SM) System Report provided to:   SEC
Request Submitted:    4/1/2008 11:01:09 AM

Page    3 Of   17

| Regulator: | FINRA |
| --- | --- |

| Organization CRD #: | 137559 | Organization Name: | WEXTRUST SECURITIES LLC |
| --- | --- | --- | --- |
| BD Registration Status: | Approved | | BD Status Effective Date: | 03/30/2006 |

| IA Registration Status: | | IA Registration Effective Date: |
| --- | --- | --- |
| Notice Filing Status: | | Notice Status Effective Date: |
| Notice Status Details: | | Notice Status Detail Effective Date: |

| Individual Name: | BENAMU, ALBERTO | Individual CRD #: | ▬▬▬ |
| --- | --- | --- | --- |
| Residential Address: | ▬▬▬▬▬▬▬ | | |

| Organization CRD #: | 137559 | Current Employer: | WEXTRUST SECURITIES LLC |
| --- | --- | --- | --- |
| Independent Contractor: | Yes | | |

Office of Employment Address:

| CRD Branch # | NYSE Branch Code # | Firm Billing Code | Reg Loc? | Pri Res? | Add Start | Add End | Type of Office |
| --- | --- | --- | --- | --- | --- | --- | --- |
| BD Main | | | Yes | No | 07/10/2006 | | Supervised From |
| Address: | 999 WATERSIDE DRIVE, SUITE 2220 NORFOLK, VA 23510 | | | | | | |
| 306305 | | | Yes | No | 10/11/2006 | | Located At |
| Address: | 114 W. 47TH STREET, 20TH FLOOR NEW YORK, NY 10036 UNITED STATES | | | | | | |

| Registrations: | | Initial FINRA Approval Date: | 09/08/2006 |
| --- | --- | --- | --- |
| FINRA | | | |
| | Category | Status | Effective Date |
| | GS | APPROVED | 09/08/2006 |

| Individual Name: | BUTLER, RHONDA INGRID | Individual CRD #: | ▬▬▬ |
| --- | --- | --- | --- |
| Residential Address: | ▬▬▬▬▬▬  United States | | |

| Organization CRD #: | 137559 | Current Employer: | WEXTRUST SECURITIES LLC |
| --- | --- | --- | --- |
| Independent Contractor: | No | | |

Office of Employment Address:

| CRD Branch # | NYSE Branch Code # | Firm Billing Code | Reg Loc? | Pri Res? | Add Start | Add End | Type of Office |
| --- | --- | --- | --- | --- | --- | --- | --- |
| BD Main | | | Yes | No | 12/18/2006 | | Supervised From |
| Address: | 999 WATERSIDE DRIVE, SUITE 2220 NORFOLK, VA 23510 | | | | | | |
| | | | No | No | 12/18/2006 | | Located At |
| Address: | 333 WEST WACKER, SUITE 2220 CHICAGO, IL 60606 UNITED STATES | | | | | | |

| Registrations: | | Initial FINRA Approval Date: | 07/05/2007 |
| --- | --- | --- | --- |
| FINRA | | | |
| | Category | Status | Effective Date |
| | GS | APPROVED | 07/05/2007 |

| Individual Name: | CARROLL JR., THOMAS MICHAEL | Individual CRD #: | ▬▬▬ |
| --- | --- | --- | --- |
| Residential Address: | ▬▬▬▬▬▬▬ | | |

| Organization CRD #: | 137559 | Current Employer: | WEXTRUST SECURITIES LLC |
| --- | --- | --- | --- |
| Independent Contractor: | Yes | | |

CRD® or IARD(SM) System      Current As Of:  03/31/2008
Roster - Individual - Active Registrations and Download
CRD® or IARD(SM) System Report provided to:  SEC
Request Submitted:   4/1/2008 11:01:09 AM

| Regulator: | FINRA |
| --- | --- |

| Organization CRD #: | 137559 | Organization Name: | WEXTRUST SECURITIES LLC |
| --- | --- | --- | --- |

| Individual Name: | CARROLL JR., THOMAS MICHAEL | Individual CRD #: ▬▬▬ |
| --- | --- | --- |

**Office of Employment Address:**

| CRD Branch # | NYSE Branch Code # | Firm Billing Code | Reg Loc? | Pri Res? | Add Start | Add End | Type of Office |
| --- | --- | --- | --- | --- | --- | --- | --- |
| BD Main | | | Yes | No | 03/15/2007 | | Supervised From |
| Address: | 999 WATERSIDE DRIVE, SUITE 2220 NORFOLK, VA 23510 | | | | | | |
| | | | No | No | 03/15/2007 | | Located At |
| Address: | 333 W. WACKER SUITE 1600 CHICAGO, IL 60606 UNITED STATES | | | | | | |

**Registrations:**

| FINRA | Initial FINRA Approval Date: | | 07/03/2007 |
| --- | --- | --- | --- |
| | Category | Status | Effective Date |
| | GS | APPROVED | 07/03/2007 |

| Individual Name: | CLEMMONS, CYD HUSSELL | Individual CRD #: ▬▬▬ |
| --- | --- | --- |
| Residential Address: | ▬▬▬▬▬▬▬ | |

| Organization CRD #: | 137559 | Current Employer: | WEXTRUST SECURITIES LLC |
| --- | --- | --- | --- |
| Independent Contractor: | No | | |

**Office of Employment Address:**

| CRD Branch # | NYSE Branch Code # | Firm Billing Code | Reg Loc? | Pri Res? | Add Start | Add End | Type of Office |
| --- | --- | --- | --- | --- | --- | --- | --- |
| BD Main | | | Yes | No | 10/01/2007 | | Located At |
| Address: | 999 WATERSIDE DRIVE, SUITE 2220 NORFOLK, VA 23510 | | | | | | |

**Registrations:**

| FINRA | Initial FINRA Approval Date: | | |
| --- | --- | --- | --- |
| | Category | Status | Effective Date |
| | GS | DEFICIENT | 11/14/2007 |

| Individual Name: | COTE, MICHELLE LEIGH | Individual CRD #: ▬▬▬ |
| --- | --- | --- |
| Residential Address: | ▬▬▬▬▬▬▬ | |

| Organization CRD #: | 137559 | Current Employer: | WEXTRUST SECURITIES LLC |
| --- | --- | --- | --- |
| Independent Contractor: | Yes | | |

**Office of Employment Address:**

| CRD Branch # | NYSE Branch Code # | Firm Billing Code | Reg Loc? | Pri Res? | Add Start | Add End | Type of Office |
| --- | --- | --- | --- | --- | --- | --- | --- |
| BD Main | | | Yes | No | 06/01/2006 | | Located At |
| Address: | 999 WATERSIDE DRIVE, SUITE 2220 NORFOLK, VA 23510 | | | | | | |
| 249463 | | | Yes | No | 02/19/2007 | | Supervised From |
| Address: | 999 WATERSIDE DRIVE SUITE 2220 NORFOLK, VA 23510 UNITED STATES | | | | | | |

**Registrations:**

| FINRA | Initial FINRA Approval Date: | | 01/26/2007 |
| --- | --- | --- | --- |
| | Category | Status | Effective Date |

CRD® or IARD(SM) System       Current As Of:   03/31/2008
Roster - Individual - Active Registrations and Download
CRD® or IARD(SM) System Report provided to:   SEC
Request Submitted:   4/1/2008 11:01:09 AM                                      Page     5 Of   17

| Regulator: | FINRA |
|---|---|

| Organization CRD #: | 137559 | Organization Name: WEXTRUST SECURITIES LLC |
|---|---|---|

| Individual Name: | COTE, MICHELLE LEIGH | Individual CRD #: |
|---|---|---|

| FINRA | Category | Status | Effective Date |
|---|---|---|---|
| | GS | APPROVED | 01/26/2007 |

| Individual Name: | EFREM, KATHY KHATINA | Individual CRD #: |
|---|---|---|
| Residential Address: | | |

| Organization CRD #: | 137559 | Current Employer: | WEXTRUST SECURITIES LLC |
|---|---|---|---|
| Independent Contractor: | Yes | | |

Office of Employment Address:

| CRD Branch # | NYSE Branch Code # | Firm Billing Code | Reg Loc? | Pri Res? | Add Start | Add End | Type of Office |
|---|---|---|---|---|---|---|---|
| | | | No | No | 10/11/2005 | | Located At |
| Address: | 39 BROADWAY, SUITE 1601 NEW YORK, NY 10006 | | | | | | |
| BD Main | | | Yes | No | 10/11/2005 | | Supervised From |
| Address: | 999 WATERSIDE DRIVE, SUITE 2220 NORFOLK, VA 23510 | | | | | | |

Registrations:                    Initial FINRA Approval Date:        03/30/2006

| FINRA | Category | Status | Effective Date |
|---|---|---|---|
| | FI | APPROVED | 03/30/2006 |

| Individual Name: | FISCHLER, GLENN | Individual CRD #: |
|---|---|---|
| Residential Address: | | |

| Organization CRD #: | 137559 | Current Employer: | WEXTRUST SECURITIES LLC |
|---|---|---|---|
| Independent Contractor: | Yes | | |

Office of Employment Address:

| CRD Branch # | NYSE Branch Code # | Firm Billing Code | Reg Loc? | Pri Res? | Add Start | Add End | Type of Office |
|---|---|---|---|---|---|---|---|
| 118144 | | | Yes | No | 10/18/2006 | | Located At |
| Address: | AVIV TOWER 7 JABOTINSKY STREET 34TH FLOOR RAMAT GAN, 62620 ISRAEL | | | | | | |

Registrations:                    Initial FINRA Approval Date:        01/03/2007

| FINRA | Category | Status | Effective Date |
|---|---|---|---|
| | FA | APPROVED | 01/05/2007 |

| Individual Name: | FRIEDMAN, JOSEPH | Individual CRD #: |
|---|---|---|
| Residential Address: | | |

| Organization CRD #: | 137559 | Current Employer: | WEXTRUST SECURITIES LLC |
|---|---|---|---|
| Independent Contractor: | Yes | | |

Office of Employment Address:

| CRD Branch # | NYSE Branch Code # | Firm Billing Code | Reg Loc? | Pri Res? | Add Start | Add End | Type of Office |
|---|---|---|---|---|---|---|---|
| BD Main | | | Yes | No | 08/17/2006 | | Supervised From |

CRD® or IARD(SM) System Report -- See notice regarding CRD Data on cover page.

CRD® or IARD(SM) System          Current As Of:   03/31/2008
Roster - Individual - Active Registrations and Download
CRD® or IARD(SM) System Report provided to:   SEC
Request Submitted:   4/1/2008 11:01:09 AM

Regulator:                FINRA

Organization CRD #:          137559     Organization Name: WEXTRUST SECURITIES LLC

| Individual Name: | FRIEDMAN, JOSEPH | | | | Individual CRD #: | ▓▓▓▓▓ |

**Office of Employment Address:**

Address:   999 WATERSIDE DRIVE, SUITE 2220
NORFOLK, VA  23510

| | No | No | 08/17/2006 | | Located At |

Address:   5100 POPLAR AVENUE
MEMPHIS, TN  38137

| | No | No | 08/17/2006 | 08/17/2006 | Located At |

Address:   999 WATERSIDE DRIVE, SUITE 2220
NORFOLK, VA  23510  UNITED STATES

**Registrations:**          Initial FINRA Approval Date:          06/06/2007

| FINRA | Category | Status | Effective Date |
|---|---|---|---|
| | PR | APPROVED | 06/06/2007 |

| Individual Name: | GADKA, YANIV | | | | Individual CRD #: | ▓▓▓▓▓ |

Residential Address:          ▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Organization CRD #:          137559     Current Employer:   WEXTRUST SECURITIES LLC
Independent Contractor:     Yes

**Office of Employment Address:**

| CRD Branch # | NYSE Branch Code # | Firm Billing Code | Reg Loc? | Pri Res? | Add Start | Add End | Type of Office |
|---|---|---|---|---|---|---|---|
| 118144 | | | Yes | No | 10/18/2006 | | Located At |

Address:   AVIV TOWER 7 JABOTINSKY STREET 34TH FLOOR
RAMAT GAN,  62620  ISRAEL

**Registrations:**          Initial FINRA Approval Date:          01/03/2007

| FINRA | Category | Status | Effective Date |
|---|---|---|---|
| | FA | APPROVED | 01/05/2007 |

| Individual Name: | GLUCK, ZVI Y | | | | Individual CRD #: | ▓▓▓▓▓ |

Residential Address:          ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  USA

Organization CRD #:          137559     Current Employer:   WEXTRUST SECURITIES LLC
Independent Contractor:     No

**Office of Employment Address:**

| CRD Branch # | NYSE Branch Code # | Firm Billing Code | Reg Loc? | Pri Res? | Add Start | Add End | Type of Office |
|---|---|---|---|---|---|---|---|
| BD Main | | | Yes | No | 06/01/2006 | | Supervised From |

Address:   999 WATERSIDE DRIVE, SUITE 2220
NORFOLK, VA  23510

| 306305 | | | Yes | No | 10/11/2006 | | Located At |

Address:   114 W. 47TH STREET, 20TH FLOOR
NEW YORK, NY  10036  UNITED STATES

| | | | No | No | 06/01/2006 | 06/01/2006 | Located At |

Address:   390 5TH AVE, SUITE 606
NEW YORK, NY  10018  UNITED STATES

CRD® or IARD(SM) System      Current As Of:   03/31/2008
Roster - Individual - Active Registrations and Download
CRD® or IARD(SM) System Report provided to:   SEC
Request Submitted:   4/1/2008 11:01:09 AM

Regulator:                    FINRA

Organization CRD #:            137559    Organization Name:  WEXTRUST SECURITIES LLC

| Individual Name: | GLUCK, ZVI Y | | | | | | Individual CRD #: | ~~████████~~ |

Registrations:            Initial FINRA Approval Date:           12/19/2006
FINRA                     Category          Status             Effective Date
                          GS                APPROVED           12/19/2006

Individual Name:          HAUSDORFF, DAVID WILLI                Individual CRD #:  ~~████████~~
Residential Address:      ~~████████████████████~~
                          ~~████████████████████~~
Organization CRD #:       137559    Current Employer:  WEXTRUST SECURITIES LLC
Independent Contractor:   Yes
Office of Employment Address:

| CRD Branch # | NYSE Branch Code # | Firm Billing Code | Reg Loc? | Pri Res? | Add Start | Add End | Type of Office |
|---|---|---|---|---|---|---|---|
| BD Main | | | Yes | No | 10/18/2006 | | Supervised From |
| Address: | 999 WATERSIDE DRIVE, SUITE 2220 NORFOLK, VA, 23510 | | | | | | |
| 309600 | | | Yes | No | 11/08/2006 | | Located At |
| Address: | 2424 N. FEDERAL HWY, SUITE 205 BOCA RATON, FL  33431  UNITED STATES | | | | | | |

Registrations:            Initial FINRA Approval Date:           10/18/2006
FINRA                     Category          Status             Effective Date
                          GS                APPROVED           10/27/2006

Individual Name:          HELLER, GARY                          Individual CRD #:  ~~████████~~
Residential Address:      ~~████████████████████~~
                          ~~████████████████████~~
Organization CRD #:       137559    Current Employer:  WEXTRUST SECURITIES LLC
Independent Contractor:   Yes
Office of Employment Address:

| CRD Branch # | NYSE Branch Code # | Firm Billing Code | Reg Loc? | Pri Res? | Add Start | Add End | Type of Office |
|---|---|---|---|---|---|---|---|
| 118144 | | | Yes | No | 10/18/2006 | | Supervised From |
| Address: | AVIV TOWER 7 JABOTINSKY STREET 34TH FLOOR RAMAT GAN,  62620  ISRAEL | | | | | | |

Registrations:            Initial FINRA Approval Date:           01/30/2007
FINRA                     Category          Status             Effective Date
                          FA                APPROVED           01/30/2007

Individual Name:          HOROWITZ, YITZCHOK                    Individual CRD #:  ~~████████~~
Residential Address:      ~~████████~~
                          ~~████████████████~~
Organization CRD #:       137559    Current Employer:  WEXTRUST SECURITIES LLC
Independent Contractor:   No
Office of Employment Address:

| CRD Branch # | NYSE Branch Code # | Firm Billing Code | Reg Loc? | Pri Res? | Add Start | Add End | Type of Office |
|---|---|---|---|---|---|---|---|
| BD Main | | | Yes | No | 12/18/2007 | | Supervised From |

CRD® or IARD(SM) System Report -- See notice regarding CRD Data on cover page.

CRD® or IARD(SM) System       Current As Of:   03/31/2008
Roster - Individual - Active Registrations and Download
CRD® or IARD(SM) System Report provided to:   SEC
Request Submitted:   4/1/2008 11:01:09 AM

---

**Regulator:**          FINRA

---

**Organization CRD #:**          137559     **Organization Name:** WEXTRUST SECURITIES LLC

---

**Individual Name:**          HOROWITZ, YITZCHOK                          **Individual CRD #:** ▇▇▇▇▇
   **Office of Employment Address:**
      **Address:**   999 WATERSIDE DRIVE, SUITE 2220
                  NORFOLK, VA  23510

   **Registrations:**              **Initial FINRA Approval Date:**          03/06/2008
   FINRA                      Category          Status              Effective Date
                           ,GS               APPROVED            03/06/2008

---

**Individual Name:**          INGBER, AVRAHAM RAPHAEL                        **Individual CRD #:** ▇▇▇▇▇
**Residential Address:**      ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
                          ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

   **Organization CRD #:**          137559     **Current Employer:**   WEXTRUST SECURITIES LLC
   **Independent Contractor:**       No
   **Office of Employment Address:**

| CRD Branch # | NYSE Branch Code # | Firm Billing Code | Reg Loc? | Pri Res? | Add Start | Add End | Type of Office |
|---|---|---|---|---|---|---|---|
| 118144 | | | Yes | No | 04/01/2005 | | Located At |
| **Address:** AVIV TOWER 7 JABOTINSKY STREET 34TH FLOOR RAMAT GAN,  62620  ISRAEL | | | | | | | |
| | | | No | No | 04/01/2005 | 04/01/2005 | Located At |
| **Address:**  X, X X, AL  X  ISRAEL | | | | | | | |

   **Registrations:**              **Initial FINRA Approval Date:**          03/30/2006
   FINRA                      Category          Status              Effective Date
                           ET                APPROVED            05/17/2006
                           GP                APPROVED            03/30/2006
                           GS                APPROVED            03/30/2006

---

**Individual Name:**          JACOBOWITZ, STUART MARVIN                      **Individual CRD #:** ▇▇▇▇▇
**Residential Address:**      ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
                          ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

   **Organization CRD #:**          137559     **Current Employer:**   WEXTRUST SECURITIES LLC
   **Independent Contractor:**       No
   **Office of Employment Address:**

| CRD Branch # | NYSE Branch Code # | Firm Billing Code | Reg Loc? | Pri Res? | Add Start | Add End | Type of Office |
|---|---|---|---|---|---|---|---|
| 118144 | | | Yes | No | 03/01/2006 | | Located At |
| **Address:** AVIV TOWER 7 JABOTINSKY STREET 34TH FLOOR RAMAT GAN,  62620  ISRAEL | | | | | | | |
| | | | No | No | 03/01/2005 | 05/17/2006 | Located At |
| **Address:** 15 KONFEI NISHARIIM JERUSALEM,  95464  ISRAEL | | | | | | | |

   **Registrations:**              **Initial FINRA Approval Date:**          03/30/2006
   FINRA                      Category          Status              Effective Date
                           FI                APPROVED            03/30/2006
                           GP                APPROVED            03/30/2006

---

**CRD® or IARD(SM) System Report -- See notice regarding CRD Data on cover page.**

CRD® or IARD(SM) System　　　Current As Of:　03/31/2008
Roster - Individual - Active Registrations and Download
CRD® or IARD(SM) System Report provided to:　SEC
Request Submitted:　4/1/2008 11:01:09 AM　　　　　　　　　　　　　Page　　9　Of　　17

| Regulator: | FINRA |
| --- | --- |

Organization CRD #:　　　　137559　　Organization Name: WEXTRUST SECURITIES LLC

| Individual Name: | JACOBOWITZ, STUART MARVIN | | | Individual CRD #: ▓▓▓ |
| --- | --- | --- | --- | --- |
| FINRA | Category | Status | Effective Date | |
| | GS | APPROVED | 03/30/2006 | |

| Individual Name: | LANGE, YOSEF | Individual CRD #: ▓▓▓ |
| --- | --- | --- |
| Residential Address: | ▓▓▓▓▓ | |
| | ▓▓▓▓▓▓▓▓▓▓▓▓▓ | |
| Organization CRD #: | 137559　Current Employer: | WEXTRUST SECURITIES LLC |
| Independent Contractor: | Yes | |

Office of Employment Address:

| CRD Branch # | NYSE Branch Code # | Firm Billing Code | Reg Loc? | Pri Res? | Add Start | Add End | Type of Office |
| --- | --- | --- | --- | --- | --- | --- | --- |
| BD Main | | | Yes | No | 05/25/2006 | | Supervised From |
| Address: | 999 WATERSIDE DRIVE, SUITE 2220 NORFOLK, VA 23510 | | | | | | |
| 304288 | | | Yes | No | 09/27/2006 | | Located At |
| Address: | 15900 W. 10 MILE RD. SUITE 207 SOUTHFIELD, MI 48075 UNITED STATES | | | | | | |
| | | | No | No | 05/24/2006 | 05/24/2006 | Located At |
| Address: | 15900 W. 10 MILE ROAD STE. 207 SOUTHFIELD, MI 48075 UNITED STATES | | | | | | |

| Registrations: | Initial FINRA Approval Date: | | 08/18/2006 |
| --- | --- | --- | --- |
| FINRA | Category | Status | Effective Date |
| | GS | APPROVED | 08/18/2006 |

| Individual Name: | LEWIS JR, THOMAS F. | Individual CRD #: ▓▓▓ |
| --- | --- | --- |
| Residential Address: | ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ | |
| | ▓▓▓▓▓▓▓▓▓▓▓ | |
| Organization CRD #: | 137559　Current Employer: | WEXTRUST SECURITIES LLC |
| Independent Contractor: | No | |

Office of Employment Address:

| CRD Branch # | NYSE Branch Code # | Firm Billing Code | Reg Loc? | Pri Res? | Add Start | Add End | Type of Office |
| --- | --- | --- | --- | --- | --- | --- | --- |
| BD Main | | | Yes | No | 06/01/2007 | | Located At |
| Address: | 999 WATERSIDE DRIVE, SUITE 2220 NORFOLK, VA 23510 | | | | | | |

| Registrations: | Initial FINRA Approval Date: | | 07/30/2007 |
| --- | --- | --- | --- |
| FINRA | Category | Status | Effective Date |
| | GS | APPROVED | 08/06/2007 |
| | IR | APPROVED | 08/06/2007 |

| Individual Name: | MANDEL, YITZCHAK | Individual CRD #: ▓▓▓ |
| --- | --- | --- |
| Residential Address: | ▓▓▓▓▓▓▓▓▓ | |
| | ▓▓▓▓▓▓▓▓▓▓▓ | |
| Organization CRD #: | 137559　Current Employer: | WEXTRUST SECURITIES LLC |
| Independent Contractor: | Yes | |
| Office of Employment Address: | | |

CRD® or IARD(SM) System Report -- See notice regarding CRD Data on cover page.

CRD® or IARD(SM) System      Current As Of:   03/31/2008
Roster - Individual - Active Registrations and Download
CRD® or IARD(SM) System Report provided to:   SEC
Request Submitted:   4/1/2008 11:01:09 AM                          Page     10  Of   17

Regulator:              FINRA

Organization CRD #:          137559     Organization Name:  WEXTRUST SECURITIES LLC

Individual Name:            MANDEL, YITZCHAK                    Individual CRD #: ████████
Office of Employment Address:

| CRD Branch # | NYSE Branch Code # | Firm Billing Code | Reg Loc? | Pri Res? | Add Start | Add End | Type of Office |
|---|---|---|---|---|---|---|---|
| 118144 | | | Yes | No | 10/18/2006 | | Located At |

Address:   AVIV TOWER 7 JABOTINSKY STREET 34TH FLOOR
RAMAT GAN,  62620  ISRAEL

Registrations:                Initial FINRA Approval Date:
FINRA                                                     01/03/2007
                              Category          Status        Effective Date
                              FA                APPROVED      02/15/2007

Individual Name:            MAYO, MARIANNE PATE                 Individual CRD #: ██████
Residential Address:        ████████████████████
                            ████████████████████████

Organization CRD #:          137559     Current Employer:  WEXTRUST SECURITIES LLC
Independent Contractor:      No
Office of Employment Address:

| CRD Branch # | NYSE Branch Code # | Firm Billing Code | Reg Loc? | Pri Res? | Add Start | Add End | Type of Office |
|---|---|---|---|---|---|---|---|
| BD Main | | | Yes | No | 05/21/2007 | | Located At |

Address:   999 WATERSIDE DRIVE, SUITE 2220
NORFOLK, VA  23510

Registrations:                Initial FINRA Approval Date:
FINRA                                                     06/12/2007
                              Category          Status        Effective Date
                              IR                APPROVED      06/19/2007

Individual Name:            MEIJER, MORDOCHAI M                 Individual CRD #: ████████
Residential Address:        ████████████████████
                            ████████████████████████

Organization CRD #:          137559     Current Employer:  WEXTRUST SECURITIES LLC
Independent Contractor:      Yes
Office of Employment Address:

| CRD Branch # | NYSE Branch Code # | Firm Billing Code | Reg Loc? | Pri Res? | Add Start | Add End | Type of Office |
|---|---|---|---|---|---|---|---|
| 118144 | | | Yes | No | 11/14/2006 | | Located At |

Address:   AVIV TOWER 7 JABOTINSKY STREET 34TH FLOOR
RAMAT GAN,  62620  ISRAEL

Registrations:                Initial FINRA Approval Date:
FINRA                                                     01/03/2007
                              Category          Status        Effective Date
                              FA                APPROVED      03/15/2007

Individual Name:            MOSTOFSKY, MICHAEL                  Individual CRD #: ████████
Residential Address:        ████████████████████
                            ████████████████████████

Organization CRD #:          137559     Current Employer:  WEXTRUST SECURITIES LLC
Independent Contractor:      No

CRD® or IARD(SM) System Report -- See notice regarding CRD Data on cover page.

CRD® or IARD(SM) System　　Current As Of:　03/31/2008
Roster - Individual - Active Registrations and Download
CRD® or IARD(SM) System Report provided to:　SEC
Request Submitted:　4/1/2008 11:01:09 AM

| Regulator: | FINRA |
|---|---|

| Organization CRD #: | 137559 | Organization Name: WEXTRUST SECURITIES LLC |
|---|---|---|

**Individual Name:**　MOSTOFSKY, MICHAEL　　　　　　　　Individual CRD #: ▮▮▮▮▮

**Office of Employment Address:**

| CRD Branch # | NYSE Branch Code # | Firm Billing Code | Reg Loc? | Pri Res? | Add Start | Add End | Type of Office |
|---|---|---|---|---|---|---|---|
| | | | No | No | 04/01/2005 | | Located At |
| Address: | 999 WATERSIDE DR SUITE 2220 NORFOLK, VA  23510 USA | | | | | | |
| 249463 | | | Yes | No | 04/21/2006 | | Located At |
| Address: | 999 WATERSIDE DRIVE SUITE 2220 NORFOLK, VA  23510 UNITED STATES | | | | | | |

**Registrations:**

| | Initial FINRA Approval Date: | | 03/31/2006 |
|---|---|---|---|
| FINRA | Category | Status | Effective Date |
| | GP | APPROVED | 03/31/2006 |
| | GS | APPROVED | 03/31/2006 |

**Individual Name:**　OSULLIVAN MR., BRIAN ANDREW　　　　Individual CRD #: ▮▮▮▮▮
**Residential Address:**　▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

| Organization CRD #: | 137559 | Current Employer: | WEXTRUST SECURITIES LLC |
|---|---|---|---|
| Independent Contractor: | Yes | | |

**Office of Employment Address:**

| CRD Branch # | NYSE Branch Code # | Firm Billing Code | Reg Loc? | Pri Res? | Add Start | Add End | Type of Office |
|---|---|---|---|---|---|---|---|
| 249463 | | | Yes | No | 03/04/2008 | | Supervised From |
| Address: | 999 WATERSIDE DRIVE SUITE 2220 NORFOLK, VA  23510 UNITED STATES | | | | | | |

**Registrations:**

| | Initial FINRA Approval Date: | | 03/12/2008 |
|---|---|---|---|
| FINRA | Category | Status | Effective Date |
| | GS | APPROVED | 03/17/2008 |

**Individual Name:**　PREISS, YOAV BARUCH　　　　　　　Individual CRD #: ▮▮▮▮▮
**Residential Address:**　▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

| Organization CRD #: | 137559 | Current Employer: | WEXTRUST SECURITIES LLC |
|---|---|---|---|
| Independent Contractor: | Yes | | |

**Office of Employment Address:**

| CRD Branch # | NYSE Branch Code # | Firm Billing Code | Reg Loc? | Pri Res? | Add Start | Add End | Type of Office |
|---|---|---|---|---|---|---|---|
| 118144 | | | Yes | No | 10/18/2006 | | Supervised From |
| Address: | AVIV TOWER 7 JABOTINSKY STREET 34TH FLOOR RAMAT GAN,  62620 ISRAEL | | | | | | |

**Registrations:**

| | Initial FINRA Approval Date: | | 06/14/2007 |
|---|---|---|---|
| FINRA | Category | Status | Effective Date |
| | PR | APPROVED | 06/14/2007 |

**Individual Name:**　RAKOFF, DANI AVI-AD　　　　　　　Individual CRD #: 5276848

CRD® or IARD(SM) System Report -- See notice regarding CRD Data on cover page.

CRD® or IARD(SM) System      Current As Of:   03/31/2008
Roster - Individual - Active Registrations and Download
CRD® or IARD(SM) System Report provided to:   SEC
Request Submitted:   4/1/2008 11:01:09 AM

Page      12  Of    17

| Regulator: | FINRA |
| --- | --- |

| Organization CRD #: | 137559 | Organization Name: WEXTRUST SECURITIES LLC |
| --- | --- | --- |

**Individual Name:** RAKOFF, DANI AVI-AD     **Individual CRD #:** ▆▆▆▆▆
**Residential Address:** ▆▆▆▆▆▆▆▆▆▆▆▆▆
▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

**Organization CRD #:** 137559    **Current Employer:** WEXTRUST SECURITIES LLC
**Independent Contractor:** Yes
**Office of Employment Address:**

| CRD Branch # | NYSE Branch Code # | Firm Billing Code | Reg Loc? | Pri Res? | Add Start | Add End | Type of Office |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 118144 | | | Yes | No | 10/18/2006 | | Supervised From |

Address:  AVIV TOWER 7 JABOTINSKY STREET 34TH FLOOR
RAMAT GAN, 62620 ISRAEL

**Registrations:**          Initial FINRA Approval Date:    04/23/2007

| FINRA | Category | Status | Effective Date |
| --- | --- | --- | --- |
| | FA | APPROVED | 04/23/2007 |

**Individual Name:** REYES, SUSAN MARIE     **Individual CRD #:** ▆▆▆▆▆
**Residential Address:** ▆▆▆▆▆▆▆▆▆▆▆▆▆
▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

**Organization CRD #:** 137559    **Current Employer:** WEXTRUST SECURITIES LLC
**Independent Contractor:** Yes
**Office of Employment Address:**

| CRD Branch # | NYSE Branch Code # | Firm Billing Code | Reg Loc? | Pri Res? | Add Start | Add End | Type of Office |
| --- | --- | --- | --- | --- | --- | --- | --- |
| BD Main | | | Yes | No | 09/25/2006 | | Supervised From |

Address:  999 WATERSIDE DRIVE, SUITE 2220
NORFOLK, VA 23510

| | | | No | No | 09/25/2006 | | Located At |

Address:  333 W. WACKER DRIVE, SUITE 1600
CHICAGO, IL 60606  UNITED STATES

**Registrations:**          Initial FINRA Approval Date:    09/25/2006

| FINRA | Category | Status | Effective Date |
| --- | --- | --- | --- |
| | ET | APPROVED | 09/27/2006 |
| | GS | APPROVED | 09/27/2006 |

**Individual Name:** RIDES, MATTHEW JAMES     **Individual CRD #:** ▆▆▆▆▆
**Residential Address:** ▆▆▆▆▆▆▆▆▆▆▆▆▆
▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

**Organization CRD #:** 137559    **Current Employer:** WEXTRUST SECURITIES LLC
**Independent Contractor:** Yes
**Office of Employment Address:**

| CRD Branch # | NYSE Branch Code # | Firm Billing Code | Reg Loc? | Pri Res? | Add Start | Add End | Type of Office |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 118144 | | | Yes | No | 11/14/2006 | | Located At |

Address:  AVIV TOWER 7 JABOTINSKY STREET 34TH FLOOR
RAMAT GAN, 62620 ISRAEL

**Registrations:**          Initial FINRA Approval Date:    01/03/2007

CRD® or IARD(SM) System Report -- See notice regarding CRD Data on cover page.

CRD® or IARD(SM) System        Current As Of:   03/31/2008
Roster - Individual - Active Registrations and Download
CRD® or IARD(SM) System Report provided to:   SEC
Request Submitted:   4/1/2008 11:01:09 AM

Page     13  Of     17

Regulator:                FINRA

Organization CRD #:        137559     Organization Name: WEXTRUST SECURITIES LLC

| Individual Name: | RIDES, MATTHEW JAMES | | Individual CRD #: |
|---|---|---|---|
| FINRA | Category | Status | Effective Date |
| | FA | APPROVED | 01/16/2007 |

| Individual Name: | RODRIGUEZ JR, RICHARD A | | Individual CRD #: |
|---|---|---|---|
| Residential Address: | 4827 VALOR WAY | | |
| | MADISON, WI 53718 USA | | |
| Organization CRD #: | 137559     Current Employer:   WEXTRUST SECURITIES LLC | | |
| Independent Contractor: | Yes | | |

Office of Employment Address:

| CRD Branch # | NYSE Branch Code # | Firm Billing Code | Reg Loc? | Pri Res? | Add Start | Add End | Type of Office |
|---|---|---|---|---|---|---|---|
| BD Main | | | Yes | No | 11/15/2007 | | Located At |
| Address: | 999 WATERSIDE DRIVE, SUITE 2220 NORFOLK, VA 23510 | | | | | | |

| Registrations: | | Initial FINRA Approval Date: | 12/04/2007 |
|---|---|---|---|
| FINRA | Category | Status | Effective Date |
| | GP | APPROVED | 12/12/2007 |
| | GS | APPROVED | 12/12/2007 |

| Individual Name: | ROSENBERG, NACHMAN | | Individual CRD #: |
|---|---|---|---|
| Residential Address: | NACHI DOLEV 44/7 | | |
| | RAMAT BEIT SHEMESH,  99630 ISRAEL | | |
| Organization CRD #: | 137559     Current Employer:   WEXTRUST SECURITIES LLC | | |
| Independent Contractor: | Yes | | |

Office of Employment Address:

| CRD Branch # | NYSE Branch Code # | Firm Billing Code | Reg Loc? | Pri Res? | Add Start | Add End | Type of Office |
|---|---|---|---|---|---|---|---|
| 118144 | | | Yes | No | 10/18/2006 | | Supervised From |
| Address: | AVIV TOWER 7 JABOTINSKY STREET 34TH FLOOR RAMAT GAN,  62620 ISRAEL | | | | | | |

| Registrations: | | Initial FINRA Approval Date: | 04/05/2007 |
|---|---|---|---|
| FINRA | Category | Status | Effective Date |
| | GS | APPROVED | 04/05/2007 |

| Individual Name: | SABINE, RALPH GARY | | Individual CRD #: |
|---|---|---|---|
| Residential Address: | 609 GREENTREE DR | | |
| | VA BEACH, VA  23452 United States | | |
| Organization CRD #: | 137559     Current Employer:   WEXTRUST SECURITIES LLC | | |
| Independent Contractor: | No | | |

Office of Employment Address:

| CRD Branch # | NYSE Branch Code # | Firm Billing Code | Reg Loc? | Pri Res? | Add Start | Add End | Type of Office |
|---|---|---|---|---|---|---|---|
| | | | No | No | 05/08/2005 | | Located At |
| Address: | 999 WATERSIDE DRIVE STE 2220 NORFOLK, VA  23510 USA | | | | | | |
| 249463 | | | Yes | No | 04/21/2006 | | Located At |

CRD® or IARD(SM) System Report -- See notice regarding CRD Data on cover page.

CRD® or IARD(SM) System        Current As Of:   03/31/2008
Roster - Individual - Active Registrations and Download
CRD® or IARD(SM) System Report provided to:   SEC
Request Submitted:    4/1/2008 11:01:09 AM

Page    14   Of    17

| Regulator: | FINRA |
|---|---|

| Organization CRD #: | 137559 | Organization Name:  WEXTRUST SECURITIES LLC |
|---|---|---|

Individual Name:        SABINE, RALPH GARY                                Individual CRD #: ████████
Office of Employment Address:
   Address:  999 WATERSIDE DRIVE SUITE 2220
             NORFOLK, VA  23510  UNITED STATES

Registrations:                    Initial FINRA Approval Date:
FINRA                                                           03/30/2006

| Category | Status | Effective Date |
|---|---|---|
| GP | APPROVED | 03/30/2006 |
| GS | APPROVED | 03/30/2006 |
| IR | APPROVED | 03/30/2006 |

Individual Name:        SCHAPIRO, ABRAHAM JACOB
Residential Address:    ████████████████████████              Individual CRD #: ████████
                        ████████████████████

Organization CRD #:     137559      Current Employer:   WEXTRUST SECURITIES LLC
Independent Contractor: Yes
Office of Employment Address:

| CRD Branch # | NYSE Branch Code # | Firm Billing Code | Reg Loc? | Pri Res? | Add Start | Add End | Type of Office |
|---|---|---|---|---|---|---|---|
| 118144 | | | Yes | No | 10/18/2006 | | Located At |

   Address:  AVIV TOWER 7 JABOTINSKY STREET 34TH FLOOR
             RAMAT GAN,  62620  ISRAEL

Registrations:                    Initial FINRA Approval Date:
FINRA                                                           04/19/2007

| Category | Status | Effective Date |
|---|---|---|
| PR | APPROVED | 04/19/2007 |

Individual Name:        SUMMERS JR, KURT A
Residential Address:    ████████████████████████              Individual CRD #: ████████
                        ████████████████████████

Organization CRD #:     137559      Current Employer:   WEXTRUST SECURITIES LLC
Independent Contractor: Yes
Office of Employment Address:

| CRD Branch # | NYSE Branch Code # | Firm Billing Code | Reg Loc? | Pri Res? | Add Start | Add End | Type of Office |
|---|---|---|---|---|---|---|---|
| BD Main | | | Yes | No | 01/11/2008 | | Supervised From |

   Address:  999 WATERSIDE DRIVE, SUITE 2220
             NORFOLK, VA  23510

| | | | No | No | 01/11/2008 | | Located At |
|---|---|---|---|---|---|---|---|

   Address:  333 WEST WACKER DRIVE, SUITE 1600
             CHICAGO, IL  60606

Registrations:                    Initial FINRA Approval Date:
FINRA

| Category | Status | Effective Date |
|---|---|---|
| GS | DEFICIENT | 01/25/2008 |

Individual Name:        TENNANT, BRYAN CHARLES
Residential Address:    ████████████████████████              Individual CRD #: ████████
                        ████████████████████████

CRD® or IARD(SM) System Report -- See notice regarding CRD Data on cover page.

CRD® or IARD(SM) System     Current As Of:   03/31/2008
Roster - Individual - Active Registrations and Download
CRD® or IARD(SM) System Report provided to:   SEC
Request Submitted:   4/1/2008 11:01:09 AM

Regulator:                        FINRA

---

Organization CRD #:                137559    Organization Name: WEXTRUST SECURITIES LLC

---

Individual Name:                TENNANT, BRYAN CHARLES              Individual CRD #: ████████
Organization CRD #:        137559    Current Employer:   WEXTRUST SECURITIES LLC
Independent Contractor:        No
Office of Employment Address:

| CRD Branch # | NYSE Branch Code # | Firm Billing Code | Reg Loc? | Pri Res? | Add Start | Add End | Type of Office |
|---|---|---|---|---|---|---|---|
| | | | No | No | 02/05/2007 | | Located At |
| Address: | 333 W. WACKER SUITE 1600 CHICAGO, IL  60606  UNITED STATES | | | | | | |
| BD Main | | | Yes | No | 02/05/2007 | | Supervised From |
| Address: | 999 WATERSIDE DRIVE, SUITE 2220 NORFOLK, VA .23510 | | | | | | |

Registrations:            Initial FINRA Approval Date:
FINRA                                                    03/14/2007

| Category | Status | Effective Date |
|---|---|---|
| GS | APPROVED | 03/14/2007 |

---

Individual Name:                TURNER, WELDON JAVE              Individual CRD #: ██████
Residential Address:        ████████
                            ████████████████████
Organization CRD #:        137559    Current Employer:   WEXTRUST SECURITIES LLC
Independent Contractor:        No
Office of Employment Address:

| CRD Branch # | NYSE Branch Code # | Firm Billing Code | Reg Loc? | Pri Res? | Add Start | Add End | Type of Office |
|---|---|---|---|---|---|---|---|
| 118144 | | | Yes | No | 03/10/2005 | | Located At |
| Address: | AVIV TOWER 7 JABOTINSKY STREET 34TH FLOOR RAMAT GAN,  62620  ISRAEL | | | | | | |

Registrations:            Initial FINRA Approval Date:
FINRA                                                    03/30/2006

| Category | Status | Effective Date |
|---|---|---|
| GP | APPROVED | 03/30/2006 |
| GS | APPROVED | 03/30/2006 |

---

Individual Name:                VAUGHN, MARK BERNARD              Individual CRD #: ██████
Residential Address:        ████████
                            ████████████████████
Organization CRD #:        137559    Current Employer:   WEXTRUST SECURITIES LLC
Independent Contractor:        No
Office of Employment Address:

| CRD Branch # | NYSE Branch Code # | Firm Billing Code | Reg Loc? | Pri Res? | Add Start | Add End | Type of Office |
|---|---|---|---|---|---|---|---|
| BD Main | | | Yes | No | 12/18/2007 | | Supervised From |
| Address: | 999 WATERSIDE DRIVE, SUITE 2220 NORFOLK, VA  23510 | | | | | | |

Registrations:            Initial FINRA Approval Date:
FINRA                                                    12/18/2007

| Category | Status | Effective Date |
|---|---|---|
| GS | APPROVED | 12/20/2007 |

---

CRD® or IARD(SM) System Report -- See notice regarding CRD Data on cover page.

CRD® or IARD(SM) System        Current As Of:   03/31/2008
Roster - Individual - Active Registrations and Download
CRD® or IARD(SM) System Report provided to:   SEC
Request Submitted:   4/1/2008 11:01:09 AM

| Regulator: | FINRA |
|---|---|

Organization CRD #:        137559    Organization Name: WEXTRUST SECURITIES LLC

Individual Name:        YOFFE, SHLOMO N
Residential Address:                                                    Individual CRD #: ████████

Organization CRD #:        137559    Current Employer:   WEXTRUST SECURITIES LLC
Independent Contractor:    No
Office of Employment Address:

| CRD Branch # | NYSE Branch Code # | Firm Billing Code | Reg Loc? | Pri Res? | Add Start | Add End | Type of Office |
|---|---|---|---|---|---|---|---|
| BD Main | | | Yes | No | 08/28/2007 | | Supervised From |
| Address: | 999 WATERSIDE DRIVE, SUITE 2220 NORFOLK, VA 23510 | | | | | | |
| 306305 | | | Yes | No | 09/24/2007 | | Located At |
| Address: | 114 W. 47TH STREET, 20TH FLOOR NEW YORK, NY 10036 UNITED STATES | | | | | | |

Registrations:        Initial FINRA Approval Date:        09/25/2007
FINRA                  Category            Status
                       GS                  APPROVED          Effective Date
                                                             09/25/2007

Individual Name:        ZIVALICH, PAUL F
Residential Address:                                                    Individual CRD #: ████████

Organization CRD #:        137559    Current Employer:   WEXTRUST SECURITIES LLC
Independent Contractor:    No
Office of Employment Address:

| CRD Branch # | NYSE Branch Code # | Firm Billing Code | Reg Loc? | Pri Res? | Add Start | Add End | Type of Office |
|---|---|---|---|---|---|---|---|
| BD Main | | | Yes | No | 08/21/2007 | | Supervised From |
| Address: | 999 WATERSIDE DRIVE, SUITE 2220 NORFOLK, VA 23510 | | | | | | |

Registrations:        Initial FINRA Approval Date:        10/16/2007
FINRA                  Category            Status
                       GS                  APPROVED          Effective Date
                                                             10/16/2007

CRD® or IARD(SM) System        Current As Of:    03/31/2008
Roster - Individual - Active Registrations and Download
CRD® or IARD(SM) System Report provided to:   SEC
Request Submitted:    4/1/2008 11:01:09 AM

Page    17 Of    17

Regulator:                FINRA

Total Number of Individuals within this report:              36

11

Web CRD - BD Historical Filing » All Pages [User Name: theller, OrgID: 50000]                    Page 1 of 10

# FORM BD
## UNIFORM APPLICATION FOR BROKER-DEALER REGISTRATION

| | |
|---|---|
| **Primary Business Name: WEXTRUST SECURITIES LLC** | **BD Number: 137559** |

**BD - AMENDMENT**
**07/10/2007**

### BD - APPLICANT INFORMATION

OMB Number ...............................................3235-0012

Expires.......................................................September 30, 2007

Estimated average burden hours per:

Response......................................................2.75

Amendment....................................................0.33

**WARNING:** Failure to keep this form current and to file accurate supplementary information on a timely basis, or the failure to keep accurate books and records or otherwise to comply with the provisions of law applying to the conduct of business as a broker-dealer would violate the Federal securities laws and the laws of the *jurisdictions* and may result in disciplinary, administrative, injunctive or criminal action. **INTENTIONAL MISSTATEMENTS OR OMISSIONS OF FACTS MAY CONSTITUTE CRIMINAL VIOLATIONS.**

### ○ APPLICATION ● AMENDMENT

1. Exact name, principal business address, mailing address, if different, and telephone number of *applicant:*

   A. **Full name of** *applicant* **(if sole proprietor, state last, first and middle name):**
   WEXTRUST SECURITIES LLC

   B. **IRS Empl. Ident. No.:**
   76-0786940

   C. (1) Name under which broker-dealer business primarily is conducted, if different from Item 1A.
   WEXTRUST SECURITIES LLC

   (2) List on Schedule D, Page 1, Section I, Other Business Names any other name by which the firm conducts business and where it is used.

   D. If this filing makes a name change on behalf of the *applicant*, enter the new name and specify whether the name change is of the
   ☐ *applicant* name (1A) or ☐ business name (1C):
   *Please check above.*

   E. **Firm main address: (Do not use a P.O. Box)**

   | Number and Street 1:<br>999 WATERSIDE DRIVE | | Number and Street 2:<br>SUITE 2220 | |
   |---|---|---|---|
   | **City:**<br>NORFOLK | **State:**<br>Virginia | **Country:** | **Zip/Postal Code:**<br>23510 |

   F. **Mailing Address, if different:**

   | **Number and Street 1:**<br>999 WATERSIDE DRIVE | | **Number and Street 2:** | |
   |---|---|---|---|
   | **City:**<br>NORFOLK | **State:**<br>Virginia | **Country:** | **Zip/Postal Code:**<br>23510 |

   G. **Business Telephone Number:**
   757 623-0246

   H. **Contact Employee:**

   | **Name:**<br>RALPH SABINE | **Title:**<br>CCO | **Telephone Number:**<br>757 623-0246 |
   |---|---|---|

### BD - EXECUTION

**EXECUTION:**

For the purposes of complying with the laws of the State(s) designated in Item 2 relating to either the offer or sale of securities or commodities, the undersigned and *applicant* hereby certify that the *applicant* is in compliance with

applicable state surety bonding requirements and irrevocably appoint the administrator of each of those State(s) or such other person designated by law, and the successors in such office, attorney for the *applicant*, upon whom may be served any notice, process, or pleading in any action or *proceeding* against the *applicant* arising out of or in connection with the offer or sale of securities or commodities, or out of the violation or alleged violation of the laws of those State(s), and the *applicant* hereby consents that any such action or *proceeding* against the *applicant* may be commenced in any court of competent jurisdiction and proper venue within said State (s) by service of process upon said appointee with the same effect as if *applicant* were a resident in said State(s) and had lawfully been served with process in said State(s).

The *applicant* consents that service of any civil action brought by or notice of any *proceeding* before the Securities and Exchange Commission or any *self-regulatory organization* in connection with the *applicant's* broker-dealer activities, or of any application for a protective decree filed by the Securities Investor Protection Corporation, may be given by registered or certified mail or confirmed telegram to the *applicant's* contact employee at the main address, or mailing address if different, given in Items 1E and 1F.

The undersigned, being first duly sworn, deposes and says that he/she has executed this form on behalf of, and with the authority of, said *applicant*. The undersigned and *applicant* represent that the information and statements contained herein, including exhibits attached hereto, and other information filed herewith, all of which are made a part hereof, are current, true and complete. The undersigned and *applicant* further represent that to the extent any information previously submitted is not amended such information is currently accurate and complete.

| Date MM/DD/YYYY<br>07/09/2007 | Name of Applicant<br>WEXTRUST SECURITIES LLC |
|---|---|
| Authorized Signatory<br>RALPH SABINE | Title<br>CCO |

Subscribed and sworn before me this _____ day of _____, _____ by
                                                                                                    Year

_____

Notary Public
My commission expires _____ County of _____ State of _____

## BD – SECURITIES AND EXCHANGE COMMISSION

2. Indicate by checking the appropriate box(es) each governmental authority, organization, or ☑
*jurisdiction* in which the *applicant* is registered or registering as a broker-dealer.

If *applicant* is registered or registering with the SEC, check here and answer Items 2A through 2D below.

|  | YES | NO |
|---|---|---|
| A. Is *applicant* registered or registering as a broker-dealer under Section 15(b) or Section 15B of the Securities Exchange Act of 1934? | ◉ | ○ |
| B. Is *applicant* registered or registering as a broker-dealer under Section 15(b) of the Securities Exchange Act of 1934 and also acting or intending to act as a government securities broker or dealer? | ○ | ◉ |
| C. Is *applicant* registered or registering <u>solely</u> as a government securities broker or dealer under Section 15C of the Securities Exchange Act of 1934?<br>*Do not answer "yes" to Item 2C if applicant answered "yes" to Item 2A or Item 2B.* | ○ | ◉ |
| D. Is *applicant* ceasing its activities as a government securities broker or dealer? | ○ | ◉ |

*If applicant answers "yes" to Items 2A and 2D, applicant expressly consents to the withdrawal of its registration as a government securities broker or dealer under Section 15C of the Securities Exchange Act of 1934. See "Instructions."*

## SECURITY FUTURES PRODUCTS ACTIVITIES

(Note: The field below is reserved exclusively for the reporting of single stock futures activities by registered broker-dealers. This field cannot be utilized until the SEC approves rules relating to the form and content of such reporting.)

## BD - SRO / JURISDICTION

### BD - SELF REGULATORY ORGANIZATIONS

| ☐ AMEX | ☐ BSE | ☐ CBOE | ☐ CHX | ☐ NSX | ☑ NASD | ☐ NqLX | ☐ NQX | ☐ NYSE | ☐ PHLX | ☐ ARCA | ☐ ISE |
|---|---|---|---|---|---|---|---|---|---|---|---|

### BD - JURISDICTION

| | | | |
|---|---|---|---|
| ☑ Alabama | ☑ Illinois | ☑ Montana | ☐ Puerto Rico |
| ☐ Alaska | ☑ Indiana | ☑ Nebraska | ☑ Rhode Island |
| ☑ Arizona | ☑ Iowa | ☑ Nevada | ☑ South Carolina |
| ☑ Arkansas | ☑ Kansas | ☑ New Hampshire | ☑ South Dakota |
| ☑ California | ☑ Kentucky | ☑ New Jersey | ☑ Tennessee |
| ☑ Colorado | ☑ Louisiana | ☑ New Mexico | ☑ Texas |
| ☑ Connecticut | ☑ Maine | ☑ New York | ☑ Utah |
| ☑ Delaware | ☑ Maryland | ☑ North Carolina | ☑ Vermont |
| ☑ District of Columbia | ☑ Massachusetts | ☑ North Dakota | ☐ Virgin Islands |
| ☑ Florida | ☑ Michigan | ☑ Ohio | ☑ Virginia |
| ☑ Georgia | ☑ Minnesota | ☑ Oklahoma | ☑ Washington |
| ☑ Hawaii | ☑ Mississippi | ☑ Oregon | ☑ West Virginia |
| ☑ Idaho | ☑ Missouri | ☑ Pennsylvania | ☑ Wisconsin |
| | | | ☑ Wyoming |

### BD - LEGAL STATUS

3. A. Indicate legal status of *applicant*:

○ Corporation          ○ Sole Proprietorship          ○ Other *(specify)*

○ Partnership          ◉ Limited Liability Company

B. Month *applicant's* fiscal year ends:
DECEMBER

C. If other than a sole proprietor, indicate date and place *applicant* obtained its legal status (i.e., state or country where incorporated, where partnership agreement was filed, or where *applicant* entity was formed):

| State of formation: | Country of formation: | Date of formation: MM/DD/YYYY |
|---|---|---|
| Delaware | | 03/10/2005 |

*Schedule A, Direct Owners and Executive Officers Section and, if applicable, Schedule B, Indirect Owners Section must be completed as part of all initial applications. Amendments to these schedules must be provided on Schedule C.*

4. If *applicant* is a sole proprietor, state full residence address and Social Security Number.

**Social Security Number:**

**Number and Street 1:**          **Number and Street 2:**

**City:**          **State:**     **Country:**     **Zip/Postal Code:**

### BD - SUCCESSION

YES NO

5. Is *applicant* at the time of this filing *succeeding* to the business of a currently registered broker-dealer?   ○   ◉

   *Do not report previous successions already reported on Form BD.*

   *If "Yes," contact CRD prior to submitting form; complete appropriate items on Schedule D, Page 1, Section III.*

## BD – ARRANGEMENTS

|  | Yes | No |
|---|---|---|
| 6. Does *applicant* hold or maintain any funds or securities or provide clearing services for any other broker or dealer? | ○ | ◉ |
| 7. Does *applicant* refer or introduce customers to any other broker or dealer? | ◉ | ○ |

   7. *If "yes," complete appropriate items on Schedule D, Page 1, Section IV, Arrangement Detail.*

8. Does *applicant* have any arrangement with any other *person*, firm, or organization under which:

   A. any books or records of *applicant* are kept or maintained by such other *person*, firm or organization?   ○   ◉

   B. accounts, funds, or securities of the *applicant* are held or maintained by such other *person*, firm, or organization?   ○   ◉

   C. accounts, funds, or securities of customers of the *applicant* are held or maintained by such other *person*, firm, or organization?   ○   ◉

   *For purposes of 8B and 8C, do not include a bank or satisfactory control location as defined in paragraph(c) of Rule 15c3-3 under the Securities Exchange Act of 1934 (17 CFR 240. 15c3-3).*
   *If "Yes" to any part of Item 8, complete appropriate items on Schedule D, Page 1, Section IV, Arrangement Detail.*

9. Does any *person* not named in Item 1 or Schedules A, B, or C, directly or indirectly:

   A. *control* the management or policies of the *applicant* through agreement or otherwise?   ○   ◉

   B. wholly or partially finance the business of *applicant*?   ○   ◉

   *Do not answer "yes" to 9B if the person finances the business of the applicant through: 1) a public offering of securities made pursuant to the Securities Act of 1933; 2) credit extended in the ordinary course of business by suppliers, banks, and others; or 3) a satisfactory subordination agreement, as defined in Rule 15c3-1 under the Securities Exchange Act of 1934 (17 CFR 240. 15c3-1).*
   *If "Yes" to any part of Item 9, complete appropriate items on Schedule D, Page 1, Section IV, Arrangement Detail.*

## BD – BUSINESS AFFILIATES

## BD – Control Affiliates

|  | YES | NO |
|---|---|---|
| 10. A. Directly or indirectly, does *applicant control*, is *applicant controlled* by, or is *applicant* under common *control* with, any partnership, corporation, or other organization that is engaged in the securities or investment advisory business? | ○ | ◉ |

   *If "Yes" to Item 10A, complete appropriate items on Schedule D, Page 2, Section V, Firm Affiliates.*

   B. Directly or indirectly, is *applicant controlled* by any bank holding company, national bank, state member bank of the Federal Reserve System, state non-member bank, savings bank or association, credit union, or foreign bank?   ○   ◉

   *If "Yes" to Item 10B, complete appropriate items on Schedule D, Page 3, Section VI, Bank Affiliates.*

## BD - DISCLOSURE QUESTIONS

11. Use the appropriate DRP for providing details to "yes" answers to the questions in Item 11. Refer to the Explanation of Terms section of Form BD Instructions for explanations of italicized terms.

## CRIMINAL DISCLOSURE

A. In the past ten years has the *applicant* or a *control affiliate*:

|  |  | YES | NO |
|---|---|---|---|
| (1) been convicted of or pled guilty or nolo contendere ("no contest") in a domestic, foreign or military court to any *felony*? | | ○ | ◉ |
| (2) been *charged* with any *felony*? | | ○ | ◉ |

B. In the past ten years has the *applicant* or a *control affiliate*:

|  | YES | NO |
|---|---|---|
| (1) been convicted of or pled guilty or nolo contendere ("no contest") in a domestic, foreign or military court to a *misdemeanor involving*: investments or an *investment-related* business, or any fraud, false statements or omissions, wrongful taking of property, bribery, perjury, forgery, counterfeiting, extortion, or a conspiracy to commit any of these offenses? | ○ | ◉ |
| (2) been *charged* with a *misdemeanor* specified in 11B(1)? | ○ | ◉ |

## REGULATORY ACTION DISCLOSURE

C. Has the U.S. Securities and Exchange Commission or the Commodity Futures Trading Commission ever:

|  | YES | NO |
|---|---|---|
| (1) *found* the *applicant* or a *control affiliate* to have made a false statement or omission? | ○ | ◉ |
| (2) *found* the *applicant* or a *control affiliate* to have been *involved* in a violation of its regulations or statutes? | ○ | ◉ |
| (3) *found* the *applicant* or a *control affiliate* to have been a cause of an *investment-related* business having its authorization to do business denied, suspended, revoked, or restricted? | ○ | ◉ |
| (4) entered an *order* against the *applicant* or a *control affiliate* in connection with an *investment-related* activity? | ○ | ◉ |
| (5) imposed a civil money penalty on the *applicant* or a *control affiliate*, or *ordered* the *applicant* or a *control affiliate* to cease and desist from any activity? | ○ | ◉ |

D. Has any other federal regulatory agency, any state regulatory agency, or *foreign financial regulatory authority*:

|  | YES | NO |
|---|---|---|
| (1) ever *found* the *applicant* or a *control affiliate* to have made a false statement or omission or been dishonest, unfair, or unethical? | ○ | ◉ |
| (2) ever *found* the *applicant* or a *control affiliate* to have been *involved* in a violation of *investment-related* regulations or statutes? | ○ | ◉ |
| (3) ever *found* the *applicant* or a *control affiliate* to have been a cause of an *investment-related* business having its authorization to do business denied, suspended, revoked, or restricted? | ○ | ◉ |
| (4) in the past ten years, entered an *order* against the *applicant* or a *control affiliate* in connection with an *investment-related* activity? | ○ | ◉ |
| (5) ever denied, suspended, or revoked the *applicant*'s or a *control affiliate*'s registration or license or otherwise, by *order*, prevented it from associating with an *investment-related* business or restricted its activities? | ○ | ◉ |

E. Has any *self-regulatory organization* or commodities exchange ever:

|  | YES | NO |
|---|---|---|
| (1) *found* the *applicant* or a *control affiliate* to have made a false statement or omission? | ○ | ◉ |
| (2) *found* the *applicant* or a *control affiliate* to have been *involved* in a violation of its rules (other than a violation designated as a *"minor rule violation"* under a plan approved by the U.S. Securities and Exchange Commission)? | ○ | ◉ |
| (3) *found* the *applicant* or a *control affiliate* to have been the cause of an *investment-related* business having its authorization to do business denied, suspended, revoked, or restricted? | ○ | ◉ |
| (4) disciplined the *applicant* or a *control affiliate* by expelling or suspending it from membership, barring or suspending its association with other members, or otherwise restricting its activities? | ○ | ◉ |

F. Has the *applicant*'s or a *control affiliate's* authorization to act as an attorney, accountant, or federal

contractor ever been revoked or suspended?

G. Is the *applicant* or a *control affiliate* now the subject of any regulatory *proceeding* that could result in a "yes" answer to any part of 11C, D, or E?

| | YES | NO |
|---|---|---|
| | ○ | ◉ |
| | ○ | ◉ |

### CIVIL JUDICIAL ACTION DISCLOSURE

H. (1) Has any domestic or foreign court:

    (a) in the past ten years, *enjoined* the *applicant* or a *control affiliate* in connection with any *investment-related* activity?

    (b) ever *found* that the *applicant* or a *control affiliate* was *involved* in a violation of *investment-related* statutes or regulations?

    (c) ever dismissed, pursuant to a settlement agreement, an *investment-related* civil action brought against the *applicant* or *control affiliate* by a state or *foreign financial regulatory authority*?

  (2) Is the *applicant* or a *control affiliate* now the subject of any civil *proceeding* that could result in a "yes" answer to any part of 11H(1)?

| | YES | NO |
|---|---|---|
| | ○ | ◉ |
| | ○ | ◉ |
| | ○ | ◉ |
| | ○ | ◉ |

### FINANCIAL DISCLOSURE

I. In the past ten years has the *applicant* or a *control affiliate* of the *applicant* ever been a securities firm or a *control affiliate* of a securities firm that:

  (1) has been the subject of a bankruptcy petition?

  (2) has had a trustee appointed or a direct payment procedure initiated under the Securities Investor Protection Act?

J. Has a bonding company ever denied, paid out on, or revoked a bond for the *applicant*?

K. Does the *applicant* have any unsatisfied judgments or liens against it?

| | YES | NO |
|---|---|---|
| | ○ | ◉ |
| | ○ | ◉ |
| | ○ | ◉ |
| | ○ | ◉ |

### BD - TYPES OF BUSINESS

12. Check types of business engaged in (or to be engaged in, if not yet active) by *applicant*. Do not check any category that accounts for (or is expected to account for) less than 1% of annual revenue from the securities or investment advisory business.

A.    Exchange member engaged in exchange commission business other than floor activities.   ☐ **EMC**

B.    Exchange member engaged in floor activities.   ☐ **EMF**

C.    Broker or dealer making inter-dealer markets in corporate securities over-the-counter.   ☐ **IDM**

D.    Broker or dealer retailing equity securities over-the-counter.   ☐ **BDR**

E.    Broker or dealer selling corporate debt securities.   ☐ **BDD**

F.    Underwriter or selling group participant (corporate securities other than mutual funds).   ☐ **USG**

G.    Mutual fund underwriter or sponsor.   ☐ **MFU**

H.    Mutual fund retailer.   ☐ **MFR**

I.    1.   U.S. government securities dealer.   ☐ **GSD**

        2.   U.S. government securities broker.   ☐ **GSB**

J.    Municipal securities dealer.   ☐ **MSD**

K.    Municipal securities broker.   ☐ **MSB**

L.    Broker or dealer selling variable life insurance or annuities.   ☐ **VLA**

M.    Solicitor of time deposits in a financial institution.   ☐ **SSL**

N.    Real estate syndicator.   ☐ **RES**

O.    Broker or dealer selling oil and gas interests.   ☐ **OGI**

P.    Put and call broker or dealer or option writer.   ☐ **PCB**

Q.    Broker or dealer selling securities of only one issuer or associate issuers (other than mutual funds).   ☐ **BIA**

R.  Broker or dealer selling securities of non-profit organizations (e.g., churches, hospitals).    ☐ NPB

S.  Investment advisory services.    ☐ IAD

T.  1.  Broker or dealer selling tax shelters or limited partnerships in primary distributions.    ☐ TAP

   2.  Broker or dealer selling tax shelters or limited partnerships in the secondary market.    ☐ TAS

U.  Non-exchange member arranging for transactions in listed securities by exchange member.    ☐ NEX

V.  Trading securities for own account.    ☐ TRA

W.  Private placement of securities.    ☑ PLA

X.  Broker or dealer selling interests in mortgages or other receivables.    ☐ MRI

Y.  Broker or dealer involved in a networking, kiosk or similar arrangement with a:

   1.  bank, savings bank or association, or credit union.    ☐ BNA

   2.  insurance company or agency    ☐ INA

Z.  Other *(give details on Schedule D, Page 1, Section II, Other Business)*    ☑ OTH

                                                                         **YES  NO**

13. A. Does *applicant* effect transactions in commodity futures, commodities or commodity options as a broker for others or as a dealer for its own account?    ◯  ◉

    B. Does *applicant* engage in any other non-securities business?    ◯  ◉

      *If "yes", describe each other business briefly on Schedule D, Page 1, Section II, Other Business.*

**BD - DIRECT OWNERS**

Are there any indirect owners of the *applicant* required to be reported on Schedule B?

◉ Yes ◯ No

Ownership Codes:  NA - less than 5%              B - 10% but less than 25%        D - 50% but less than 75%
                    A - 5% but less than 10%     C - 25% but less than 50%        E - 75% or more

| Full Legal Name | DE/FE/I | Title or Status | Date Acquired | Own. Code | Control Person | PR | CRD #(or S.S.No., IRS Tax #, Emp. ID) |
|---|---|---|---|---|---|---|---|
| AYDAN INVESTMENTS LTD | DE | MEMBER | 05/2005 | C | Y | N | ▓▓▓▓▓ |
| BYERS FAMILY PARTNERSHIP | DE | MEMBER | 05/2005 | A | N | N | ▓▓▓▓▓ |
| EFREM, KATHY KHATINA | I | FINOP | 08/2005 | NA | N | N | ▓▓▓▓▓ |
| INGBER, AVRAHAM RAPHAEZ | I | MANAGING DIRECTOR | 03/2005 | NA | Y | N | ▓▓▓▓▓ |
| JACOBOWITZ, STUART MARVIN | I | CFO | 03/2005 | NA | Y | N | |
| SABINE, RALPH GARY | I | CCO | 03/2005 | NA | N | N | |
| SHERESHEVSKY FAMILY PARTNERSHIP | DE | MEMBER | 05/2005 | A | N | N | |
| SPARK ENTERPRISES, INC. | DE | MEMBER | 07/2005 | B | Y | N | ▓▓▓▓▓ |
| TRI ENTERPRISES, INC. | DE | MEMBER | 05/2005 | B | Y | N | ▓▓▓▓▓ |
| TURNER, WELDON JAVE | I | CEO | 03/2005 | NA | Y | N | ▓▓▓▓▓ |
| WEXTRUST CAPITAL, LLC | DE | MEMBER | 03/2005 | B | Y | N | ▓▓▓▓▓ |

**BD - INDIRECT OWNERS**

Ownership Codes:  NA - less than 5%              B - 10% but less than 25%        D - 50% but less than 75%
                    A - 5% but less than 10%     C - 25% but less than 50%        E - 75% or more

| Full Legal Name | DE/FE/I | Entity in Which | Status | Date | Own. | Control | PR | CRD # (or |
|---|---|---|---|---|---|---|---|---|

Web CRD - BD Historical Filing » All Pages [User Name: theller, OrgID: 50000]                    Page 8 of 10

| | DE/FE/I | Interest is Owned | | Acquired | Code | Person | | SSN, IRS Tax #, Emp. ID) |
|---|---|---|---|---|---|---|---|---|
| BYERS FAMILY PARTNERSHIP | DE | WEXTRUST CAPITAL LLC | MEMBER | 09/2004 | F | Y | N | ▓▓▓▓▓ |
| BYERS, STEVEN | I | BYERS FAMILY PARTNERSHIP | GENERAL PARTNER | 09/2004 | C | Y | N | ▓▓▓▓▓ |
| COHEN, AMNON | I | WEXTRUST CAPITAL LLC | MEMBER | 01/2004 | F | Y | N | ▓▓▓▓▓ |
| INGBER, AVRAHAM RAPHAEZ | I | TRI ENTERPRISES | SHAREHOLDER | 05/2005 | E | Y | N | ▓▓▓▓▓ |
| JACOBOWITZ, STUART MARVIN | I | SPARK ENT. LTD. | SHAREHOLDER | 07/1988 | E | Y | N | ▓▓▓▓▓ |
| SHERESHEVSHY, ELKA | I | SHERESHEVSKY FAM. PARTNERSHIP | GENERAL PARTNER | 01/2003 | F | Y | N | ▓▓▓▓▓ |
| TURNER, WELDON JAVE | I | AYDAN INV. LTD. | SHAREHOLDER | 05/2005 | E | Y | N | ▓▓▓▓▓ |

### BD Schedule C - Amendments to Schedules A & B

In the Type of Amd. column, indicate "A" (addition), "D" (deletion), or "C" (change of information about the same *person*).

Ownership Codes are: NA - less than 5%    B - 10% but less than 25% D - 50% but less than 75% F - Other General Partners
A - 5% but less than 10% C - 25% but less than 50% E - 75% or more

List below all changes to Schedule A: (DIRECT OWNERS AND EXECUTIVE OFFICERS)

| Full Legal Name | DE/FE/I | Type of Amd. | Title or Status | Date Acquired | Own. Code | Control Person | PR | CRD # (or SSN, IRS Tax #, Emp. ID) |
|---|---|---|---|---|---|---|---|---|

### No Information Filed

List below all changes to Schedule B: (INDIRECT OWNERS)

| Full Legal Name | DE/FE/I | Type of Amd. | Entity in Which Interest is Owned | Status | Date Acquired | Own. Code | Control Person | PR | CRD # (or SSN, IRS Tax #, Emp. ID) |
|---|---|---|---|---|---|---|---|---|---|

### No Information Filed

### BD - OTHER BUSINESS NAMES

### No Information Filed

### BD - OTHER BUSINESS

Briefly describe any other business (Item 12Z).
WEXTRUST SECURITIES LLC WILL REFER PROSPECTIVE AGENCY EQUITY TRADING BUSINESS TO TERRA NOVA TRADING LLC, A MEMBER BROKER-DEALER, IN EXCHANGE FOR MONTHLY COMMISSION COMPENSATION.

Briefly describe any other non-securities business (Item 13B).

### BD - SUCCESSIONS

Date of Succession: MM/DD/YYYY    Name of Predecessor:

Firm CRD Number        IRS Employer Identification Number (if any)        SEC File Number (if any)
8-

Briefly describe details of the *succession* including any assets or liabilities not assumed by the

*successor.*

## BD - ARRANGEMENTS / CONTROL PERSONS / FINANCING

(check one)    ⦿ Item 7    ○ Item 8A    ○ Item 8B    ○ Item 8C    ○ Item 9A    ○ Item 9B

*Applicant* must complete a separate Schedule D Page 1, Arrangement Detail for each affirmative response in this section including any multiple responses to any item. Complete the "Effective Date" box with Month, Day and Year that the arrangement or agreement became effective. When reporting a change or termination of an arrangement or agreement, enter the effective date of the change.

| Organization/Individual Name:<br>TERRA NOVA FINANCIAL, LLC | CRD Number:<br>37761 | ⦿ Entity<br>○ Individual |
|---|---|---|

Business Address

| Street 1:<br>100 TERRA NOVA TRADING, LLC | | Street 2:<br>SUITE 1500 | |
|---|---|---|---|
| City:<br>CHICAGO | State:<br>Illinois | Country:<br>USA | Zip/Postal Code:<br>60606 |
| Effective Date MM/DD/YYYY<br>05/31/2006 | | Termination Date MM/DD/YYYY | |

**Briefly describe the nature of reference or arrangement (ITEM 7 or ITEM 8); the nature of the *control* or agreement (ITEM 9A); or the method and amount of financing (ITEM 9B)**
REFERRAL AGREEMENT DATED MAY 31, 2006

(check one)    ⦿ Item 7    ○ Item 8A    ○ Item 8B    ○ Item 8C    ○ Item 9A    ○ Item 9B

*Applicant* must complete a separate Schedule D Page 1, Arrangement Detail for each affirmative response in this section including any multiple responses to any item. Complete the "Effective Date" box with Month, Day and Year that the arrangement or agreement became effective. When reporting a change or termination of an arrangement or agreement, enter the effective date of the change.

| Organization/Individual Name:<br>URCHIN PARTNERS LLC | CRD Number: | ⦿ Entity<br>○ Individual |
|---|---|---|

Business Address

| Street 1:<br>655 MONTGOMERY STREET | | Street 2:<br>SUITE 900 | |
|---|---|---|---|
| City:<br>SAN FRANCISCO | State:<br>California | Country:<br>UNITED STATES | Zip/Postal Code:<br>94111 |
| Effective Date MM/DD/YYYY<br>05/24/2007 | | Termination Date MM/DD/YYYY | |

**Briefly describe the nature of reference or arrangement (ITEM 7 or ITEM 8); the nature of the *control* or agreement (ITEM 9A); or the method and amount of financing (ITEM 9B)**
REFERRAL AGREEMENT DATED MAY 24, 2007

## BD - AFFILIATES
## No Information Filed

## BD - BRANCHES
## No Information Filed

### BD - CRIMINAL DRP
No Information Filed

### BD - REGULATORY ACTION DRP
No Information Filed

| BD – CIVIL JUDICIAL DRP |
|---|
| No Information Filed |

| BD – BANKRUPTCY DRP |
|---|
| No Information Filed |

| BD – BOND DRP |
|---|
| No Information Filed |

| BD – JUDGMENT LIEN DRP |
|---|
| No Information Filed |

**12**



**your ass on the line**

From: Amnon Cohen (amnonnj@hotmail.com)
Sent: Fri 11/16/07 7:42 AM
To: vendorjoe@aol.com

Please erase this email once u read it

Listen to me. I will say this once. don't care whether we settle with Ran or not. If this shit goes to court the worse that happens to me is that the company gets shut down.

You on the other hand are looking a "significant consequences". You want some details?

1. You raised 9,000,000 from investors for GSA i.e properties that never existed phoney PPM's, etc... Guys from enron got 20 years for doing that. While u were doing that, I was playing pacman on my phone.
2. You co-mingled funds over 100 times. Wiring high yield funds for payroll, Africa, etc. is a crime. Yes I was playing with my phone while u were doing that.
3. I can go on and on, It makes Ran taking $650,000 from u look like childs play

I'm not even going into your fake double life that u lead

Think of all your investors all the guys from Norfolk that invested with u, all the wealth that u accumilated all down they drain. Why? you fucking arrogance and pride. What will your investors think when they know u played with their money while u took home $3,000,000 a year in salary and spend $1,000 a night in hotel suites?You are willing to lose all just like you did the prior times you had money. You are a self destructive person. You are smart,brillant at times, but self destructive.......It's a fact.

And while we ar on the subject of Ran. You can say what you want "I'm on his side" ,etc.... I rerally don't care since I know where it's coming from. Just remember one thing. When u called me up from Hungry begging for help. I had no idea how or wherto help you. I called op Ran and told him your story. I told him your were running away from thepeople who wanted to kill u. He told me "he's our friend and he's a Jew I must help him".........You also forget  that he bought your first house. He put up with tons of shit that u did. yes u invested money with him and he lost it. Maybe he used for other properties ( I know some other people who do that). Ran is no angel. He did some stupid and bad shit and he hurt guys like Steinberger. But he also saved your ass and took u off the street. And if you compare now where u are compared to where u were 10 years ago u should be kissing his ass every morning when u wake up. Instead u call him a nazi, threaten to kill him, and want to beat up his kid.

Joe u are a grown man. I have no idea what u believe in besides money? I have no idea if you believe in religion or it's one big show for the people of Norfolk. I know that you are very greedy and selfish and for money you might even kill someone. I would never want to be u for all the money in the world. I'm happy with what I have and that makes me rich.

Oh and by the way. You can't leave. If you left..... it will be to a third world country that doesn't have treaties with the US

To sum this up. I won't fight with u over this lawsuit. If u and/or Steve don't want to settle that's fine with me. Put your pride aside and think about what u are getting into.

WEXTRUST 00013147

**13**

*2003 U.S. Dist. LEXIS 10868, \**

UNITED STATES, -against JOSEPH **SHERESHEVSKY**, Defendant.

94 Cr. 248 (CSH)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2003 U.S. Dist. LEXIS 10868

June 23, 2003, Decided
June 25, 2003, Filed

**DISPOSITION:** Court sentenced defendant, upon plea agreement, to pay restitution.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Upon his indictment for conspiracy to defraud a bank, defendant entered into a plea agreement through which he agreed to make restitution to the bank in the amount specified by the court in accordance with 18 U.S.C.S. §§ 3663 and 3664. At the sentencing hearing, defendant objected to the amount of restitution.

**OVERVIEW:** In support of the objection to the amount of restitution, defendant claimed that he never received a penny of the money, he was financially unable to pay the amount, and other individuals may have already made the appropriate restitution payments. It was determined at sentencing that the fact that defendant never received any money from the crime was irrelevant because he pled guilty and agreed in his plea agreement to make restitution. The government researched the issue and stated that the bank suffered losses of $ 38,797.90 and had received no funds in satisfaction of this loss. Accordingly, defendant was ordered to make restitution to the bank in the amount of $ 38,797.90.

**OUTCOME:** Defendant was ordered to pay restitution.

**CORE TERMS:** restitution, sentencing, plea agreement, probation, sentence, probation officer, unable to pay, satisfaction, sentenced, delayed, owed, letter dated

**LEXISNEXIS(R) HEADNOTES**
Criminal Law & Procedure > Sentencing > Restitution
[HN1] See 18 U.S.C.S. § 3664(d)(5).

**JUDGES:** [*1] CHARLES S. HAIGHT, JR., SENIOR UNITED STATES DISTRICT JUDGE.

**OPINION BY:** CHARLES S. HAIGHT, JR.

**OPINION**

MEMORANDUM AND ORDER

HAIGHT, Senior District Judge:

This matter is before the Court on a sentencing issue regarding restitution.

In 1994 the defendant, Joseph **Shereshevsky,** was indicted for participating in a conspiracy to defraud Emigrant Savings Bank ("Emigrant") of $ 328,000 by depositing and cashing stolen checks. This conduct occurred in 1992 and 1993. Defendant entered into a plea agreement with the government on March 29, 1994. Because **Shereshevsky** was a cooperating witness, he was not sentenced until June 18, 2002.

In his plea agreement, **Shereshevsky** agreed to "make restitution to the Emigrant Savings Bank in an amount to be specified by the Court in accordance with 18 U.S.C. Sections 3663and 3664." Sentencing Transcript ("Tr.") at 11 (quoting the plea agreement at page 2). The Pre-Sentence Report prepared by the Probation Department concluded that **Shereshevsky** should make restitution to Emigrant in the amount of $ 38,797.90. At the sentencing hearing **Shereshevsky** objected through counsel to that amount on the grounds that (1) he never received a **[*2]** penny of that money, (2) he was financially unable to pay the amount, and (3) other individuals may have already made the appropriate restitution payments. Tr. at 12-17.

The Court determined at sentencing that the fact that the defendant never received any money from the crime was irrelevant because pleaded guilty and agreed in his plea agreement to make restitution. Tr. at 14. The Court also decided that "the probation officer will have a consultation with him about his ability to pay." *Id.* The Court left open the question of how much Emigrant was owed and the amount it had received in satisfaction of its loss. The Court thus sentenced the defendant, but pursuant to 18 U.S.C. § 3664(d)(5) [1] reserved for 90 days the decision of how much restitution defendant owed.

**FOOTNOTES**

1 18 U.S.C. § 3664(d)(5) provides:

> *HN1* If the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing. If the victim subsequently discovers further losses, the victim shall have 60 days after discovery of those losses in which to petition the court for an amended restitution order. Such order maybe granted only upon a showing of good cause for the failure to include such losses in the initial claim for restitutionary relief.

**[*3]** In a letter dated July 12, 2002, the government stated that it had researched the issue of restitution, and a representative of Emigrant confirmed that, as indicated in the Pre-Sentence Report, it suffered losses of $ 38,797.90 and had received no funds in satisfaction of this loss. **Shereshevsky's** attorney responded with a letter dated August 23, 2002, asking the Court to require an affidavit from an officer at the Bank to certify this amount. The Court does not find an affidavit to be necessary, and will rely upon the representation of the Assistant United States Attorney, which corroborates the amount determined by the Probation Department in the Pre-Sentence Report.

Pursuant to 18 U.S.C. §§ 3663and 3664, defendant Joseph **Shereshevsky** is ordered to

make restitution to Emigrant in the amount of $ 38,797.90. ² The Probation Department will supervise the manner in which this amount will be paid.

**FOOTNOTES**

2 This Order is made after the 90-day period specified in § 3664(d)(5) has expired. However, judges in this district have imposed sentences outside the period and the Second Circuit has affirmed at least one such sentence. *United States v. Stevens*, 211 F.3d 1 (2d Cir. 2000); *see also United States v. Foti*, 2001 U.S. Dist. LEXIS 8863, 2001 WL 736777 (S.D.N.Y. June 21, 2001) (Koeltl, J.) (imposing order of restitution more than 90 days after sentence where government had delayed in providing a timely list of victims, but defendant was aware at the time of sentencing of his obligation to make restitution.). In the case at bar, **Shereshevsky's** obligation to make restitution to Emigrant is recited in his plea agreement. Furthermore the 90-day limit required by 18 U.S.C. § 3664(d)(5) was imposed because "the committee is concerned that defendants not be able to fraudulently transfer assets that might be available for restitution," Conference Report for the Victims Justice Act of 1995, 142 Cong. Rec. 7433, 7462 (Apr. 15, 1996), not for the defendant's protection. Sentencing can thus be delayed unless the delay harms the defendant in some manner. *Stevens*, 211 F.3d at 5-6 (noting that "we have regularly found sentencing errors that did not affect substantial rights to be harmless").

The defendant cannot argue that he was harmed by the delay in sentencing. Defendant in his plea agreement agreed to make restitution to Emigrant. Furthermore, the defendant was made aware of the specific amount he would be required to pay at least as early as the sentencing, but certainly by the July 12, 2002 letter of the Government. The defendant's letter in response did not quarrel with the amount except to ask for the affidavit. That letter also states "Mr. Shereshevksy advises me that although he is on his way to personal and financial recovery, he is still having a thorny time making 'ends meet.'" While this indicates he may have been unable to pay at the time, it serves as an implicit acknowledgment of his obligation to make restitution.

**[\*4]** It is SO ORDERED.

Dated: June 23, 2003

CHARLES S. HAIGHT, JR.

SENIOR UNITED STATES DISTRICT JUDGE

Source: Legal > Cases - U.S. > Federal & State Cases, Combined 🔍
Terms: shereshevsky (Edit Search | Suggest Terms for My Search)
View: Full
Date/Time: Friday, May 23, 2008 - 1:33 PM EDT

 LexisNexis®

About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

14

CLOSED

# U.S. District Court
## United States District Court for the Southern District of New York (Foley Square)
### CRIMINAL DOCKET FOR CASE #: 1:94-cr-00248-CSH-1

Case title: USA v. Shereshevsky

Date Filed: 05/05/1994
Date Terminated: 06/18/2002

Assigned to: Judge Charles S. Haight

## Defendant (1)

**Joseph Shereshevsky**
*TERMINATED: 06/18/2002*

represented by **George Farkas**
*LEAD ATTORNEY*
*Designation: Retained*

**Meir Moza**
Meir Moza, Esq
217 Willis Avenue
Mineola, NY 11501
(516)-741-0003
Fax: (516)-741-0033
Email: memoza@optonline.net
*LEAD ATTORNEY*
*Designation: Retained*

## Pending Counts

18:371 BANK FRAUD
(1)

**Disposition**

Imprisonment: Time served. Defendant advised of his right to appeal. Supervised release: 24 months. Special assessment: $50, due in full immediately.

## Highest Offense Level (Opening)

Felony

## Terminated Counts

None

**Disposition**

## Highest Offense Level (Terminated)

None

## Complaints

None

**Disposition**

**Plaintiff**

**United States Of America**

| Date Filed | # | Docket Text |
|---|---|---|
| 05/05/1994 | 1 | WAIVER OF INDICTMENT by Joseph Shereshevsky (rag) (Entered: 05/06/1994) |
| 05/05/1994 | 2 | INFORMATION as to Joseph Shereshevsky (1) count(s) 1 (rag) (Entered: 05/06/1994) |
| 05/05/1994 |  | Arraignment as to Joseph Shereshevsky (1) count(s) 1 before Magistrate Judge Kathleen A. Roberts. Deft. pres. w/atty, George Farkas. Deft. plead not guilty. Deft. released on a $50,000 PRB cos by mother w/in 3 days. PSI to report once a week by phone. Bail limits ext. to the U.S. and deft. to report to PSI once a month in person.. Deft. to report to the Marshal's for processing and RM 14. Case assigned to J. Haight. (rag) (Entered: 05/06/1994) |
| 05/05/1994 |  | First Appearance as to Joseph Shereshevsky held (rag) (Entered: 05/06/1994) |
| 05/05/1994 |  | PLEA entered by Joseph Shereshevsky . Court accepts plea. Not Guilty: Joseph Shereshevsky (1) count(s) 1 (rag) (Entered: 05/06/1994) |
| 05/05/1994 |  | CASE Assigned to Judge Charles S. Haight. (rag) (Entered: 05/06/1994) |
| 05/05/1994 | 3 | PRB BOND filed by Joseph Shereshevsky in Amount $ 50,000. Deft. allowed to travel abroad subject to weekly reporting to Pretrial Service by phone, co-signed by mother Chana Shereshevsky by 5/6/94. (rag) (Entered: 05/06/1994) |
| 05/05/1994 |  | PLEA entered by Joseph Shereshevsky. Court accepts plea. Guilty: Joseph Shereshevsky (1) count(s) 1 . (Plea filed under seal). (ph) (Entered: 06/26/2002) |
| 02/19/1999 | 6 | Arrest WARRANT issued as to Joseph Shereshevsky (rag) (Entered: 02/26/1999) |
| 03/15/1999 | 7 | NOTICE of Appearance for Joseph Shereshevsky by Attorney Meir Moza (rag) (Entered: 03/24/1999) |
| 03/15/1999 | 8 | Order of advice of penalties and sanctions as to Joseph Shereshevsky (rag) (Entered: 03/24/1999) |
| 03/15/1999 |  | Bail hearing as to Joseph Shereshevsky held. DISPOSITION SHEET - Proceeding: Rule 9 Failure to Appear. AUSA Jennifer Borum; deft Joseph Shereshevsky; Retained counsel: Meir Moza Bail Disposition: $50,000 PRB cosigned by 2 FRP, $1500, surrender all travel documents, travel restricted to USA. PSA - (mother need not sign again) (agreed). ( Held before Magistrate Judge Buchwald ) (bw) Modified on 03/29/1999 (Entered: 03/29/1999) |
| 03/15/1999 |  | Bail hearing as to Joseph Shereshevsky held. DISPOSITION SHEET - Proceeding: Bail Modification. AUSA Borum; deft Joseph Shereshevsky; Retained Counsel: Meir Moza; Bail Disposition: Bail modified with consent of government, defendant may be released today and may here until 4:30 tomorrow to post cash security and obtain secured cosigner. ( Held before Magistrate Judge Buchwald ) (bw) Modified on 03/29/1999 (Entered: 03/29/1999) |
| 03/30/1999 | 9 | Rule 40 Documents as to Joseph Shereshevsky received from Eastern District of Virginia (mr) (Entered: 03/30/1999) |
| 03/10/2000 | 10 | SEALED DOCUMENT as to Joseph Shereshevsky (da) (Entered: 03/13/2000) |

| 09/24/2001 | | ORDER EXCLUDING TIME UNDER THE SPEEDY TRIAL ACT as to Joseph Shereshevsky ...that the request for a 30-day exclusion from today, September 17, 2001, purs. to Title 18 U.S.C. Sec. 3161(h) (8) (A) is hereby granted for all criminal cases in which an indictment or information has been filed and is pending,...., Continuing due to Extraordinary circumstances time is excluded from 9/17/01 to 10/17/01 ( Signed by Chief Judge Michael B. Mukasey ); [Original filed in M10-468 Document No. 22] (ICMSUSER) (Entered: 10/01/2001) |
| 06/18/2002 | | Sentencing held Joseph Shereshevsky (1) count(s) 1. (ph) (Entered: 06/26/2002) |
| 06/18/2002 | 11 | FILED JUDGMENT IN A CRIMINAL CASE. (For offenses committed on or after November 1, 1987. The defendant Joseph Shereshevsky (1) pleaded guilty to count(s) 1. Imprisonment: Time served. Defendant advised of his right to appeal. Supervised release: 24 months. Special assessment: $50, due in full immediately. The drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse. THe defendant shall not possess a firearm. Judgment and Commitment issued to U.S. Marshal. Docketed as a judgment #02,1191 on 6/26/02. ( Signed by Judge Charles S. Haight ) (ph) Modified on 07/01/2002 (Entered: 06/26/2002) |
| 08/06/2002 | 12 | Filed Memo-Endorsement on letter: by Joseph Shereshevsky, from Attorney Martin J. Siegel, Dated 8/1/02, addressed to: Judge Haight Re: requesting permission for the defendant to travel without restriction during the period of his supervised release, to Travel without restriction, during the period of his supervised release ...Judge memo-endorsed: SO ORDERED. ( Signed by Judge Charles S. Haight on 8/2/02). (ph) (Entered: 08/07/2002) |
| 08/08/2002 | 13 | TRANSCRIPT of record of proceedings as to Joseph Shereshevsky for dates of 6/18/02, before Judge Charles S. Haight . (gf) (Entered: 08/08/2002) |
| 06/25/2003 | 14 | MEMORANDUM AND ORDER as to Joseph Shereshevsky, Deft Shereshevsky is ordered to make restitution to Emigrant in the amount of $38,797.90. The Probation Dept will supervise the manner in which this amount will be paid. So Ordered. ( Signed by Judge Charles S. Haight ); (ac) (Entered: 06/27/2003) |
| 09/29/2003 | 15 | Filed Memo-Endorsement on letter: by Joseph Shereshevsky, from Attorney Martin J. Siegel, Dated 9/25/03, addressed to: Judge Haight Re: requesting that the defendant be permitted to travel to Europe from 9/30/03 to 10/5/03, granting permission for the defendant to Travel...Judge memo-endorsed. This application is granted, but the releasee is cautioned that in the future he must obtain an advance expression of consent (or absense of objection) from his superviising Probation Officer. So ordered. ( Signed by Judge Charles S. Haight ); (ph) (Entered: 10/01/2003) |
| 10/15/2003 | 16 | Filed Memo-Endorsement on letter: by Joseph Shereshevsky , from Martin J. Siegel, Dated October 10, 2003, addressed to: Judge Haight Re: To Travel, to Travel to Europe for the period of October 14 for one week Judge's Memo-endorsed... SO ORDERED , ( Signed by Judge Charles S. Haight ); (jw) (Entered: 10/16/2003) |
| 10/24/2003 | 17 | FILED AMENDED JUDGMENT IN A CRIMINAL CASE: (For offenses committed on or after November 1, 1987). The defendant Joseph Shereshevsky pleaded guilty to count 1. Defendant's attorney: Martin J. Siegal. Imprisonment: Time served. Defendant notified of his right to appeal. Supervised release: 24 months. Special assessment: $50. ( Signed by Judge Charles S. Haight ) Docketed as a judgment #02, 1191 on 10/27/03. (ph) Modified on 10/28/2003 (Entered: 10/27/2003) |
| 02/05/2004 | | Payment of restitution from Joseph Shereshevsky in the amount of $432.00. Date |

SDNY CM/ECF Version 3.1.2

| | | Received: 2/5/04. (mn, ) (Entered: 02/05/2004) |
|---|---|---|
| 03/11/2004 | | Payment of RESTITUTION from Joseph Shereshevsky in the amount of $216.00. Date Received: 3/11/04. (mn, ) (Entered: 03/11/2004) |
| 05/07/2004 | | Payment of RESTITUTION from Joseph Shereshevsky in the amount of $462.00. Date Received: 5/7/04. (mn, ) (Entered: 05/07/2004) |
| 02/15/2005 | 18 | SATISFACTION OF JUDGMENT as to Joseph Shereshevsky, in the amount of $38,847.90. Judgment satisfied on 2/15/05. (ja, ) (Entered: 03/04/2005) |

| PACER Service Center | | |
|---|---|---|
| Transaction Receipt | | |
| 06/05/2008 15:12:10 | | |
| PACER Login: | ao0093 | Client Code: | 08022-06080 |
| Description: | Docket Report | Search Criteria: | 1:94-cr-00248-CSH |
| Billable Pages: | 3 | Cost: | 0.24 |

15

**Unknown**

| | |
|---|---|
| **From:** | Ralph Sabine [RSabine@wextrust.com] |
| **Sent:** | Monday, August 27, 2007 12:49 PM |
| **To:** | Susan M. Reyes; Marianne Mayo; Carisa M. Hugo; Bryan Tennant; Michael Mostofsky |
| **Cc:** | Stuart Jacobowitz; Avraham Ingber |
| **Subject:** | Rep codes.xls |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Green |

| | |
|---|---|
| **Attachments:** | Rep codes.xls |



Rep codes.xls (13
KB)

This e-mail transmission may contain information that is proprietary, privileged and/or confidential and is intended exclusively for the person(s) to whom it is addressed. Any use, copying, retention or disclosure by any person other than the intended recipient or the intended recipient's designees is strictly prohibited. If you are not the intended recipient or their designee, please notify the sender immediately by return e-mail and delete all copies.

Associated Persons Records

| Name | Rep Code | Office |
|------|----------|--------|
| Joseph Shereshevsky | 1001 | 999 Waterside Dr. Suite 2220 Norfolk, VA 23510 |
| Michael Mostofsky | 1002 | 999 Waterside Dr. Suite 2220 Norfolk, VA 23510 |
| Bruce Berman | 1003 | 999 Waterside Dr. Suite 2220 Norfolk, VA 23510 |
| Michelle Cote | 1004 | 999 Waterside Dr. Suite 2220 Norfolk, VA 23510 |
| Steve Byers | 2001 | 333 W. Wacker Dr. Suite 1600 Chicago IL 60606 |
| Reyes, Susan | 2002 | 333 W. Wacker Dr. Suite 1600 Chicago IL 60606 |
| Paul Adrian | 2003 | 333 W. Wacker Dr. Suite 1600 Chicago IL 60606 |
| Friedman, Joseph | 3001 | 999 Waterside Dr. Suite 2220 Norfolk, VA 23510 |
| Yosef Lange | 4001 | 15900 W.10 Mile Rd.Suite 207 Southfield MI 48075 |
| Ammon Cohen | 5001 | 114 W. 47th St. 20th FL. New York, NY 10036 |
| Avi Benamu | 5002 | 114 W. 47th St. 20th FL. New York, NY 10036 |
| Jacob Ganz | 5003 | 114 W. 47th St. 20th FL. New York, NY 10036 |
| Zvi Gluck | 5004 | 114 W. 47th St. 20th FL. New York, NY 10036 |
| David Hausdorff | 6001 | 2424 N. Federal HWY Boca Raton, FL 33431 |
| Weldon Turner | 7001 | Aviv Tower, 7 Jabotinsky St. 34th Floor, Ramat Gan, Israel 52520 |
| Avi Ingber | 7002 | Aviv Tower, 7 Jabotinsky St. 34th Floor, Ramat Gan, Israel 52520 |
| Yaniv Gadka | 7003 | Aviv Tower, 7 Jabotinsky St. 34th Floor, Ramat Gan, Israel 52520 |
| Yitzchak Mandel | 7004 | Aviv Tower, 7 Jabotinsky St. 34th Floor, Ramat Gan, Israel 52520 |
| Matthew Rides | 7005 | Aviv Tower, 7 Jabotinsky St. 34th Floor, Ramat Gan, Israel 52520 |
| Mordochai Meijer | 7006 | Aviv Tower, 7 Jabotinsky St. 34th Floor, Ramat Gan, Israel 52520 |
| Glenn Fischler | 7007 | Aviv Tower, 7 Jabotinsky St. 34th Floor, Ramat Gan, Israel 52520 |

**16**

```
                              Gold Coast Info.txt
From: Bryan Tennant [BTennant@wextrust.com]
Sent: Thursday, January 03, 2008 3:07 PM
To: tempaccount@wextrust.com
Subject: Gold Coast Info

Follow Up Flag: Follow up
Flag Status: Red

Attachments: GoldCoastASOF12312006.xls


Attached info a/o 12/31/06
```

WexTrust Capital Investor Services

Tel: 888 . 293 . 9878

Fax: 312 . 881 . 6001

333 W. Wacker Dr. Ste. 1600

Chicago, IL 60606

www.wextrust.com


This e-mail transmission may contain information that is proprietary, privileged and/or confidential and is intended

exclusively for the person(s) to whom it is addressed. Any use, copying, retention or disclosure by any person other

than the intended recipient or the intended recipient's designees is strictly prohibited. If you are not the

intended recipient or their designee, please notify the sender immediately by return e-mail and delete all copies.

| FundName | TotalAccountBal | StRecipientName | RepName |
|---|---|---|---|
| Gold Coast Investors, LLC | $0.00 | Patricia K. Starling | Joe Shereshevsky |
| Gold Coast Investors, LLC | $50,000.00 | Thomas P. and Dolores M. Reidy | Joe Shereshevsky |
| Gold Coast Investors, LLC | $50,000.00 | Ralph Sabine | Joe Shereshevsky |
| Gold Coast Investors, LLC | $80,000.00 | David and Susan Nizankiewicz | Joe Shereshevsky |
| Gold Coast Investors, LLC | $400,000.00 | Gomlai Tovos | Joe Shereshevsky |
| Gold Coast Investors, LLC | $30,000.00 | Jay and Elaine Viders | Joe Shereshevsky |
| Gold Coast Investors, LLC | $1,000,000.00 | Zichron Avroham | Joe Shereshevsky |
| Gold Coast Investors, LLC | $50,000.00 | M. Albert Carmichael | Joe Shereshevsky |
| Gold Coast Investors, LLC | $50,000.00 | Hershey Katz | Joe Shereshevsky |
| Gold Coast Investors, LLC | $50,000.00 | Michael S. Bremus | Joe Shereshevsky |
| Gold Coast Investors, LLC | $450,000.00 | Nedava Family Irrevocable Trust | Joe Shereshevsky |
| Gold Coast Investors, LLC | $35,000.00 | Eugene L Kanter Revocable Trust | Joe Shereshevsky |
| Gold Coast Investors, LLC | $300,000.00 | Kimberly Investment Group LP | Joe Shereshevsky |
| Gold Coast Investors, LLC | $15,000.00 | Marsha E. Weinstein | Joe Shereshevsky |
| Gold Coast Investors, LLC | $50,000.00 | Wayne A. and Jane M. Smith | Joe Shereshevsky |
| Gold Coast Investors, LLC | $30,000.00 | Miller-Waxelbaum Family Foundation | Joe Shereshevsky |
| Gold Coast Investors, LLC | $175,000.00 | George T. Jamerson | Joe Shereshevsky |
| Gold Coast Investors, LLC | $20,000.00 | Robert W Kowalski | Joe Shereshevsky |
| Gold Coast Investors, LLC | $50,000.00 | Stuart E. and Mara H. Hallett III | Joe Shereshevsky |
| Gold Coast Investors, LLC | $85,000.00 | Joseph R. and Holly A. Barlow | Joe Shereshevsky |
| Gold Coast Investors, LLC | $200,000.00 | Susan Sun | Alberto Benamu |
| Gold Coast Investors, LLC | $50,000.00 | Dominic P. Lascara | Joe Shereshevsky |
| Gold Coast Investors, LLC | $50,000.00 | Horace E. and Angela B. Washington, Jr. | Joe Shereshevsky |
| Gold Coast Investors, LLC | $300,000.00 | Meryl M. Garrett Partnership | Joe Shereshevsky |
| Gold Coast Investors, LLC | $70,000.00 | William F. and Mary E. Dingler, Jr. | Joe Shereshevsky |
| Gold Coast Investors, LLC | $80,000.00 | Douglas D. Mitchell | Joe Shereshevsky |
| Gold Coast Investors, LLC | $50,000.00 | August G. Fowler | Joe Shereshevsky |
| Gold Coast Investors, LLC | $100,000.00 | Yue Zhang and Xueyu Wang | Alberto Benamu |
| Gold Coast Investors, LLC | $50,000.00 | Ernest Belcher Exemption Trust | Joe Shereshevsky |
| Gold Coast Investors, LLC | $50,000.00 | Kerry K. and Elke Belcher Trust | Joe Shereshevsky |
| Gold Coast Investors, LLC | $100,000.00 | Donald and Juanita Dulkinys | Joe Shereshevsky |
| Gold Coast Investors, LLC | $50,000.00 | Ann B. and Pinchas H. Davidman | Joe Shereshevsky |
| Gold Coast Investors, LLC | $100,000.00 | Kevin C. and Amy L. Oliver | Joe Shereshevsky |
| Gold Coast Investors, LLC | $100,000.00 | Linda M. Jarman | Joe Shereshevsky |
| Gold Coast Investors, LLC | $125,000.00 | Ellen Jo Myers | Joe Shereshevsky |
| Gold Coast Investors, LLC | $50,000.00 | Mary Anne and John E. Miller | Joe Shereshevsky |
| Gold Coast Investors, LLC | $100,000.00 | Ava Serrur | Alberto Benamu |
| Gold Coast Investors, LLC | $50,000.00 | Soble Investment Corporation | Joe Shereshevsky |
| Gold Coast Investors, LLC | $100,000.00 | Aron Nussencweig | Joe Shereshevsky |
| Gold Coast Investors, LLC | $75,000.00 | S. Blair and Vicki B. Funk | Joe Shereshevsky |
| Gold Coast Investors, LLC | $20,000.00 | Barbara M Levy | Joe Shereshevsky |
| Gold Coast Investors, LLC | $112,000.00 | David Salow and Jennifer Foster | Joe Shereshevsky |
| Gold Coast Investors, LLC | $350,000.00 | Olga L. Sosa | Joe Shereshevsky |
| Gold Coast Investors, LLC | $20,000.00 | 1818 Keswick Partners | Joe Shereshevsky |
| Gold Coast Investors, LLC | $50,000.00 | Whit B. Collins | Joe Shereshevsky |
| Gold Coast Investors, LLC | $200,000.00 | Dweck Investments LLC | Alberto Benamu |
| Gold Coast Investors, LLC | $50,000.00 | David A. Franco | Joe Shereshevsky |
| Gold Coast Investors, LLC | $100,000.00 | Sharon and Charles Chappan | Alberto Benamu |
| Gold Coast Investors, LLC | $100,000.00 | Merle Kassab | Alberto Benamu |

| | | | |
|---|---|---|---|
| Gold Coast Investors, LLC | $100,000.00 | Valda S. Morgan | Joe Shereshevsky |
| Gold Coast Investors, LLC | $30,000.00 | Dominic and Patricia  Durinzi | Joe Shereshevsky |
| Gold Coast Investors, LLC | $43,500.00 | Congregation Beth Jehudah | Joe Shereshevsky |
| Gold Coast Investors, LLC | $356,500.00 | Efraim Twerski | Yosef  Lange |
| Gold Coast Investors, LLC | $100,000.00 | Judah Schorr | Jacob Ganz |
| Gold Coast Investors, LLC | $200,000.00 | Carole S. Jefferies and R. Steven Price | Joe Shereshevsky |
| Gold Coast Investors, LLC | $250,000.00 | Rosalind Foer | Joe Shereshevsky |
| Gold Coast Investors, LLC | $100,000.00 | Sandra Z. and Dov  Segal | Joe Shereshevsky |
| Gold Coast Investors, LLC | $50,000.00 | Dov and Sahra Segal | Joe Shereshevsky |
| Gold Coast Investors, LLC | $75,000.00 | Ramona R. Weingarten | Joe Shereshevsky |
| Gold Coast Investors, LLC | $100,000.00 | Sandra H. and Joe P. Bouton | Joe Shereshevsky |
| Gold Coast Investors, LLC | $100,000.00 | Randy J. Scanlon | Joe Shereshevsky |
| Gold Coast Investors, LLC | $50,000.00 | Yehuda Friedman | Joe Shereshevsky· |
| Gold Coast Investors, LLC | $75,000.00 | Marlin Graber | Joe Shereshevsky |
| Gold Coast Investors, LLC | $100,000.00 | Jerome Relis | Joe Shereshevsky |
| Gold Coast Investors, LLC | $50,000.00 | Nathan S. Hassan Trust | Joe Shereshevsky |
| Gold Coast Investors, LLC | $15,000.00 | Ruth Steg | Joe Shereshevsky |
| Gold Coast Investors, LLC | $200,000.00 | Jonathan Lehrfeld | Joe Shereshevsky |
| Gold Coast Investors, LLC | $35,000.00 | Common Hartford Accommodation, Inc. | Joe Shereshevsky |
| Gold Coast Investors, LLC | $50,000.00 | Morris Bienenfeld | Joe Shereshevsky |
| Gold Coast Investors, LLC | $100,000.00 | Marvin Bienenfeld | Joe Shereshevsky |
| Gold Coast Investors, LLC | $100,000.00 | Mark  Bane | Joe Shereshevsky |
| Gold Coast Investors, LLC | $50,000.00 | Baruch E. and Joep H. Ottervanger | Joe Shereshevsky |
| Gold Coast Investors, LLC | $200,000.00 | K P Industrial Properties, LLC | Joe Shereshevsky |
| Gold Coast Investors, LLC | $50,000.00 | Yerger Clifton Yandell | Joe Shereshevsky |
| Gold Coast Investors, LLC | $0.00 | Global Interpret Group, Ltd. | Michelle  Cote |
| Gold Coast Investors, LLC | $300,000.00 | Kristine Szabo | Joe Shereshevsky |
| Gold Coast Investors, LLC | $100,000.00 | Pierre Abi-Mansour | Joseph Shereshevsky |
| Gold Coast Investors, LLC | $430,000.00 | Starling Family Limited Partnership | Joe Shereshevsky |
| Gold Coast Investors, LLC | $150,000.00 | Paul A. May  IRA | Joe Shereshevsky |
| Gold Coast Investors, LLC | $50,000.00 | Gerald L. Bloom IRA | Joe Shereshevsky |
| Gold Coast Investors, LLC | $50,000.00 | Shia L. Lome, IRA | Joe Shereshevsky |
| Gold Coast Investors, LLC | $50,000.00 | Gady Buiumsohn IRA | Weldon Turner |
| Gold Coast Investors, LLC | $50,000.00 | Douglas H. Jones IRA | Joe Shereshevsky |
| Gold Coast Investors, LLC | $70,000.00 | Anna H. May IRA | Joe Shereshevsky |
| Gold Coast Investors, LLC | $400,000.00 | Victor Parisien IRA | Joe Shereshevsky |
| Gold Coast Investors, LLC | $35,000.00 | Patricia M.  Durinzi IRA | Joe Shereshevsky |
| Gold Coast Investors, LLC | $25,263.45 | Gary Rego IRA | Joe Shereshevsky |
| Gold Coast Investors, LLC | $10,000.00 | BENJAMIN J REGO IRA | Joe Shereshevsky |
| Gold Coast Investors, LLC | $74,000.00 | James  Lerman IRA | Joe Shereshevsky |
| Gold Coast Investors, LLC | $100,000.00 | Linda M. Jarman IRA | Joe Shereshevsky |
| Gold Coast Investors, LLC | $100,000.00 | Joe P.  Bouton IRA | Joe Shereshevsky |
| Gold Coast Investors, LLC | $100,000.00 | Zeev Yehuda and Shoshana Friedman | Weldon Turner |
| Gold Coast Investors, LLC | $50,000.00 | Florry Van Essen & Betty Van Essen-Kok | Weldon Turner |
| Gold Coast Investors, LLC | $50,000.00 | Daniel  Daniel | Weldon Turner |
| Gold Coast Investors, LLC | $100,000.00 | James W. Ireland IRA | Joe Shereshevsky |
| Gold Coast Investors, LLC | $50,000.00 | Jeffrey and Sariva Sklar | Joe Shereshevsky |
| Gold Coast Investors, LLC | $50,000.00 | Paul and Barbara  Bermanski | Joe Shereshevsky |
| Gold Coast Investors, LLC | $50,000.00 | Andrea Meltzer Living Trust | Joe Shereshevsky |
| Gold Coast Investors, LLC | $100,000.00 | Louis and Ethel  Oberlander | Joe Shereshevsky |

2

| | | | |
|---|---|---|---|
| Gold Coast Investors, LLC | $200,000.00 | Lawrence P. Costa | Michelle Cote |
| Gold Coast Investors, LLC | $30,000.00 | June D. Betts | Joe Shereshevsky |
| Gold Coast Investors, LLC | $100,000.00 | Albert Benchabbat IRA DO NOT MAIL | Joe Shereshevsky |
| Gold Coast Investors, LLC | $50,000.00 | Paul Faraone, TOD | Joe Shereshevsky |
| Gold Coast Investors, LLC | $100,000.00 | Neal and Sara Faraone | Joe Shereshevsky |
| Gold Coast Investors, LLC | $50,000.00 | Douglas and Laura Montagna | Joe Shereshevsky |
| Gold Coast Investors, LLC | $100,000.00 | Gregory and Maria C. Morando | Joe Shereshevsky |
| Gold Coast Investors, LLC | $50,000.00 | Clifford H. Altschull | Michael Mostofsky |
| Gold Coast Investors, LLC | $50,000.00 | Iris and Shay Shuker | Joe Shereshevsky |
| Gold Coast Investors, LLC | $100,000.00 | Mr. James Patrick Newsome Sr. Trust | Joe Shereshevsky |
| Gold Coast Investors, LLC | $20,000.00 | Nir Yhiye | Yaniv Gadka |
| Gold Coast Investors, LLC | $10,000.00 | Elchanan Rosenheim | Joe Shereshevsky |
| Gold Coast Investors, LLC | $25,000.00 | Gary K. Sims | Michelle Cote |
| Gold Coast Investors, LLC | $50,000.00 | Kenneth Ingber | Weldon Turner |
| Gold Coast Investors, LLC | $70,000.00 | Tzvia Karlinsky Sapsowitz and Isaiah Karlinsky | Weldon Turner |
| Gold Coast Investors, LLC | $30,000.00 | Isaiah and Ruthie Karlinsky | Weldon Turner |
| Gold Coast Investors, LLC | $50,000.00 | Fay Karlinsky Glick | Joe Shereshevsky |
| Gold Coast Investors, LLC | $50,000.00 | Cindy P. Jones | Joe Shereshevsky |
| Gold Coast Investors, LLC | $100,000.00 | Anthony M. and Sarita A. Coren | Joe Shereshevsky |
| Gold Coast Investors, LLC | $50,000.00 | Denis Freiden | Joe Shereshevsky |
| Gold Coast Investors, LLC | $75,000.00 | Eden Friedman | Joe Shereshevsky |
| Gold Coast Investors, LLC | $75,000.00 | Amy and Pamela Friedman Trust | Joe Shereshevsky |
| | $12,381,263.45 | | |

3

**17**



**WEXTRUST**
**CAPITAL**

## ℳ ABOUT US

Close window

WexTrust Capital is a globally diversified private equity and specialty finance company with a proven track record for protecting its clients' assets and delivering a superior return-on-investment through its diverse portfolio of principal investments. WexTrust Capital specializes in unique investment opportunities ranging from real estate to specialty finance and investment banking. Headquartered in Chicago, the company also maintains offices in New York, Norfolk, Va., Atlanta, Boca Raton, Fla., Nashville, Tenn., Tel Aviv, Israel, and Johannesburg, South Africa.

WexTrust Capital is dedicated to providing our investors with increasing yields while offering them protection of principal and a wide margin of safety. We accomplish this by seeking undervalued assets with unrecognized opportunities which have strong appreciation potential and identifiable value-added components. We also seek alternative investment opportunities that can deliver meaningful returns and decrease portfolio volatility risk during cyclical business periods. We believe a successful investment is determined, not only at the outset of the investment, but throughout the life of the asset. We only present opportunities to investors that we are willing to sponsor with our own capital.

The roots of the organization began in 1994 when entrepreneur Steven Byers founded ASG Financial Services which underwrote debt and equity investments. In 1996 Wexford Bancgroup was formed to focus on the commercial mortgage-backed securities industry as well as the specialty finance business. Over the years other business lines and companies were created including portfolio lending, equity investing, asset management, development and investment banking. In 2003 WexTrust Capital was formed to better reflect the current and future direction of the organization and to build consistent branding.

**Fund Management**
    Wextrust High Yield Debt Fund I
    Wextrust High Yield Debt Fund II
    Wextrust High Yield Debt Fund III
    Wextrust High Yield Debt Fund IV
    WexTrade Principal Protected Fund I
    WexTrade Diversified Futures Fund I
    GSPN Fund
    Wextrust/HPC Mortgage Fund

WexTrust implements a strategy based upon conservative underwriting and portfolio diversification. The firm performs thorough research and due-diligence prior to asset acquisition, with the goal being to acquire attractive, high-quality properties for below replacement cost. WexTrust Capital diversifies its investments both geographically and by asset type, and also pursues select development opportunities. This diversification strategy potentially lowers overall portfolio risk by, for example, balancing low risk assets in prime markets, with higher yielding assets in secondary markets. WexTrust Capital's extensive acquisition experience and portfolio management expertise have helped it assemble a portfolio that has delivered superior risk-adjusted returns in the past.

WexTrust Capital provides an array of investment opportunities for accredited and qualified investors who are seeking new and innovative ways to put their capital to work. We are dedicated to providing our investors with increasing yields while offering them protection of principal and a wide margin of safety. We only present opportunities to investors that we are willing to sponsor with our own capital.

For more information on our current offerings, past performance or investor qualification process, please call 888-2WEX-TRUST or use our interactive inquiry form.

If you are a current investor, please log in here.

19

Spork - Accredited
TCM - no more
Tri-Enterprises - Avi
Injor - 15% or more
Aydan - Dennis
Apar - 10% or more

SCHEDULE D

SCHEDULE OF CONTROL

OF, OR BY, THE REGISTRANT AS OF _WESTRUST SECURITIES LLC_

## WHAT ENTITIES DOES THE REGISTRANT HAVE AN INTEREST IN (I.E., OWN A PART OF)?

| FULL NAME | ADDRESS | PRINCIPAL BUSINESS | NATURE OF CONTROL/ PERCENTAGE OF OWNERSHIP |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

## WHO OR WHAT ENTITIES CONTROL REGISTRANT (DIRECTLY OR INDIRECTLY)?

| FULL NAME | ADDRESS | PRINCIPAL BUSINESS | NATURE OF CONTROL/ PERCENTAGE OF OWNERSHIP |
|---|---|---|---|
| WESTRUST CAPITAL, LLC | 333 W. Wacker Dr. Suite 1600, Chicago, 60606 | parent | 21% |
| JOSEPH FRIEDMAN | 1200 LLEWELLYN AVE NORFOLK VA 23517 | | 1% |
| SHLEUSHEY GRAY  F.P. | 607 MOW BRAY COURT NORFOLK, VA 23507 | | 7% |
| BYELES   F.P. | 8 YORK LAKE CT ORNASBOOK, IL 60523 | | 5% |
| AYDAN INVESTMENT   LTD | 16 LOCUST AVE. STE 9E NEW ROCHELE, NY 10804 | | 28% |
| SPARK ENTERPRISES INC  PR 220 EAST 42ND ST NY, NY 10017 | | | 14% |
| TRI ENTERPRISES INC | | | |
| Y/ KANIEESIAI STREET- BEITAR, ILLIT ISRAEL   —   24% | | | |

2-13

276

1/6

MICHAEL NUSTOFSKY

408 BOISSEVAIN AVE
NORFOLK, VA 23507

RANDY SABINE

509 GREENTREE DR
VA BEACH, VA
23452

**22**

**Unknown**

| | |
|---|---|
| **From:** | Steve Byers [SByers@wextrust.com] |
| **Sent:** | Thursday, November 15, 2007 3:56 PM |
| **To:** | Elmer Coppoolse |
| **Subject:** | axela valuation |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Red |
| **Attachments:** | p.gif; axela valuation.xls |

Steve Byers

*CEO*
WexTrust Capital
333 W. Wacker Drive
Suite 1600
Chicago, IL 60606
T: 312/881-6000
F: 312/881-6001
*www.wextrust.com*

⊠ Right-click here to download pictures. To help protect your privacy, Outlook prevented automatic download of this picture from the Internet.
Upgrade Your Email - Click here!

This e-mail transmission may contain information that is proprietary, privileged and/or confidential and
is intended exclusively for the person(s) to whom it is addressed. Any use, copying, retention or
disclosure by any person other than the intended recipient or the intended recipient's designees is
strictly prohibited. If you are not the intended recipient or their designee, please notify the sender
immediately by return e-mail and delete all copies.

6/30/2008

**Axela Valuation**

| | | | | | | |
|---|---|---|---|---|---|---|
| Crown Plaza | $ | 21,150,000.00 | Debt | NOI | $ | 3,100,000.00 |
| | $ | 17,600,000.00 | Equity | Debt | $ | 1,700,000.00 |
| | $ | 38,750,000.00 | Stabilized Value | EBITDA | $ | 800,000.00 |
| | | 8.00% | Cap Rate | | | |
| | | | | | | |
| Drake Hotel | $ | 21,150,000.00 | Debt | NOI | $ | 4,100,000.00 |
| | $ | 30,100,000.00 | Equity | Debt | $ | 2,400,000.00 |
| | $ | 51,250,000.00 | Stabilized Value | EBITDA | $ | 1,700,000.00 |
| | | 8.00% | Cap Rate | | | |
| | | | | | | |
| Park View Hotel | $ | 27,600,000.00 | Debt | NOI | $ | 3,800,000.00 |
| | $ | 23,066,666.67 | Equity | Debt | $ | 2,070,000.00 |
| | $ | 50,666,666.67 | Stabilized Value | EBITDA | $ | 1,730,000.00 |
| | | 7.50% | Cap Rate | | | |
| Glade Springs | $ | 24,000,000.00 | Debt | NOI | $ | 3,000,000.00 |
| | $ | 12,363,636.36 | Equity | Debt | $ | 1,800,000.000 |
| | $ | 36,363,636.36 | Stabilized Value | EBITDA | $ | 1,200,000.000 |
| | | 8.25% | Cap Rate | | | |

| | | | | | |
|---|---|---|---|---|---|
| Axela Valuation | | | | | |
| Crown Plaza | $ | 5,280,000.00 | 30% Ownership | $ | 240,000.00 |
| Drake | $ | 7,525,000.00 | 25% Ownership | $ | 425,000.00 |
| Park View | $ | 6,920,000.00 | 30% Ownership | $ | 519,000.00 |
| Glade Springs | $ | 3,090,909.09 | 25% Ownership | $ | 300,000.00 |
| Total Valuation | $ | 22,815,909.09 | 15x Multiple | $ | 1,484,000.00 |
| | $ | 18,550,000.00 | 12.5x Multiple | | |

| | | | |
|---|---|---|---|
| | $ | 4,637,500.00 | Valuation at 25% Interest at 12.5x Multiple |
| | $ | 5,703,977.27 | Valuation at 25% Interest at 15x Multiple |
| | **$** | **5,000,000.00** | **Value** |

Notes:
1) NOI Based on short term budget
2) Cap rate based on higher than current market or current offers
3) Parkview current un-solicited bid from 3rd party private equity fund is $250,000 per room prior to opening.
4) Valuation gives no weight or credit to existing pipe line or future growth.
5) Valuation gives no weight to asset management fees for existing and future hotels.

**23**

**Unknown**

| | |
|---|---|
| **From:** | Sheran Gabriel [SGabriel@wextrust.com] |
| **Sent:** | Saturday, May 03, 2008 1:19 AM |
| **To:** | Steve Byers |
| **Subject:** | WexCapLLC Financial Reports-2007 |
| **Importance:** | High |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Red |
| **Attachments:** | WexCapLLC-Combined Balance Sheet-2007.xls; WexCapLLC-Combined Profit and Loss Statement-2007.xls; WexCapLLC-Combined Trial Balance EOY-2007.xls; WexCapLLC-Combined Cash Flow Report-2007.xls; FURNITURE-WACHOVIA BUSINESS LEASE 2004-06-10.XLS; LEASEHOLD IMPROVMENTS - NORFOLK OFFICE-SUITE 2220-2007-01-07.XLS; NEW YORK WACHOVIA PHONE LEASE-2004-08-05.XLS; NORFOLK WACHOVIA PHONE LEASE-2004-08-05.XLS; TELECONFERENCE -WACHOVIA LEASE-2004-11-24.XLS |

Good Morning!!!

I apologize for missing my Cinderella deadline by 42mins.

Believe me it sure wasn't for lack of trying.

I was able in my endeavors to obtain most of the fixed asset info to the best of my knowledge.

The addition of the fixed assets to the balance sheet should help our Net Worth.

I was able to get a report from Dell Leasing and it appears that the computers are all still being leased.

The schedule was very detailed by location therefore it will really be helpful keeping track of these items.

We also have the furniture for the new Accounting/South Africa that it on a new lease.

Nick has just negotiated a new lease for the new copiers that were just purchased.

Attached are the combined reports for the following:

1) Balance Sheet
2) P & L Statement
3) Trail Balance
4) Cash Flow
5) Supporting Depr Schedules for Fixed Assets

In these QuickBooks Reports that have been downloaded into Excel you can navigate as follows:

1) Use the number 1 thru 5 on the far left of the spreadsheets to see the data in various layers.
2) Use the numbers 1 & 2 on the top of the cell number column to view the data either detailed with *6190 & *8459 side by side or
   by choosing 1 you only see the data combined in one column.

I will be gone tomorrow morning until around 11:00 AM EST but I will call then to see if you need anything.

Goodnight…Talk to you in the morning!!!

*Sheran L. Gabriel*

*Controller Private Equity Group*
**Wextrust Capital, LLC**
*999 Waterside Drive Suite# 2220*

7/15/2008

*Norfolk, VA 23510*
*Ph: 757-623-0246*
*Email: sgabriel@wextrust.com*

This e-mail transmission may contain information that is proprietary, privileged and/or confidential and is intended exclusively for the person(s) to whom it is addressed. Any use, copying, retention or disclosure by any person other than the intended recipient or the intended recipient's designees is strictly prohibited. If you are not the intended recipient or their designee, please notify the sender immediately by return e-mail and delete all copies.

7/15/2008

# Wextrust Capital LLC
## Combined Balance Sheet
### As of December 31, 2007

| | Wextrust Capital LLC *6190 |
|---|---:|
| **ASSETS** | |
| **Current Assets** | |
| **Checking/Savings** | |
| 1000 · Cash | |
| 1001 · Petty Cash | 200.00 |
| 1002 · WTC-Disb-Wachovia (6190) | -128,154.06 |
| 1002 · WTC-Dep-Wachovia (8459) | 0.00 |
| 1003 · WTC-Sweep (7158) | 0.00 |
| 1004 · WTC- Charter One (6571) | 0.00 |
| Total 1000 · Cash | -127,954.06 |
| | |
| **Total Checking/Savings** | -127,954.06 |
| | |
| **Other Current Assets** | |
| 1200 · Capital Markets/Ivestments | 120,000.00 |
| 1250 · Loans Receivable | |
| 1250-01 · Due From South Africa | |
| 1250-02 · Amex Platinum | 200,420.05 |
| 1250-03 · Due From Pure Africa | 1,120.00 |
| 1250125 · Due From PA Farming | 300,000.00 |
| 1250-01 · Due From South Africa - Other | 816.47 |
| Total 1250-01 · Due From South Africa | 502,356.52 |
| | |
| 1250-10 · Due From Employees | |
| 1250-15 · John Hutzler | 10,000.00 |
| 1250-20 · Jacob Gantz | 18,180.00 |
| 1250-25 · Carisa Hugo | 800.00 |
| 1250-45 · Steve Byers | 13,600.00 |
| 1250-55 · Beth McClung | 560.00 |
| 1250-60 · Jennifer Edmiston | 3,000.00 |
| 1250-70 · Zvi Gluck | 5,000.00 |
| 1250-75 · Yoav Preiss | 5,080.00 |
| 1250-80 · Joseph Friedman | 28,000.00 |
| 1250-90 · Bonnie Muniz | 5,500.00 |
| Total 1250-10 · Due From Employees | 89,720.00 |
| | |
| 1250105 · Elka Shereshevsky | -210,000.00 |
| 1250118 · Due From Lion's Walk | 100.00 |
| 1250100 · Other Loan Receivables | 0.00 |
| 1250101 · Due From 37 Chestnut | 0.00 |
| 1250105 · Due From Elka Shereshevsky | 0.00 |
| 1250110 · Due From Earth Conserv. Africa | 0.00 |
| 1250115 · Due From King of Storms | 0.00 |
| 1250117 · Due From Lansdale Apartments | 0.00 |
| 1250118 · Due From Lions Walk | 0.00 |
| 1250120 · Due From PA Farming | 0.00 |
| 1250125 · Due From PA Investments | 0.00 |

| | Wextrust Capital LLC *6190 |
|---|---|
| 1250130 · Due From P A M, SA | 0.00 |
| 1250135 · Due From Rabato | 0.00 |
| 1250 · Loans Receivable - Other | 4,250.00 |
| **Total 1250 · Loans Receivable** | 386,426.52 |
| | |
| 1430 · Security Deposit | |
| 1440 · Office Rent | 5,080.00 |
| **Total 1430 · Security Deposit** | 5,080.00 |
| | |
| **Total Other Current Assets** | 511,506.52 |
| | |
| **Total Current Assets** | 383,552.46 |
| | |
| **Fixed Assets** | |
| 1500 · Furniture & Equipment | |
| 1510 · Equipment-Compute & Electronics | |
| 1510 · Equipment-Compute & Electronics - Other | 21,754.45 |
| **Total 1510 · Equipment-Compute & Electronics** | 21,754.45 |
| | |
| 1520 · Equipment-Copier | |
| 1520 · Equipment-Copier - Other | 95,128.20 |
| **Total 1520 · Equipment-Copier** | 95,128.20 |
| | |
| 1550 · Equipment-Teleconference | |
| 1555 · Teleconference-Accum Deprec | -26,800.02 |
| 1550 · Equipment-Teleconference - Other | 31,847.50 |
| **Total 1550 · Equipment-Teleconference** | 5,047.48 |
| | |
| 1560 · Equipment-Telephone System | |
| 1560-01 · Telephone System-Norfolk | 19,013.13 |
| 1565 · Telephone-Accum. Depreciation | -25,359.29 |
| 1560 · Equipment-Telephone System - Other | 7,501.78 |
| **Total 1560 · Equipment-Telephone System** | 1,155.62 |
| | |
| 1570-00 · Furniture & Fixtures | |
| 1570-01 · Furniture & Fixtures-Norfolk | 60,940.02 |
| 1570-04 · Furniture & Fixtures-S Africa | 755.45 |
| 1570-07 · Furniture & Fixtures-Memphis | 666.41 |
| 1575-00 · Furniture & Fixtures-Accum. Dep | -16,649.71 |
| **Total 1570-00 · Furniture & Fixtures** | 45,712.17 |
| | |
| **Total 1500 · Furniture & Equipment** | 168,797.92 |
| | |
| 1560-03 · Telephone System-NY | 18,098.01 |
| 1580-00 · Leasehold Impovements | |
| 1580-01 · Leasehold Improvements-Norfolk | 48,582.70 |
| 1580-04 · Leasehold Improvements-S Africa | 8,684.00 |
| 1585-00 · Leasehold Improvement-Accum Dep | -2,785.32 |
| **Total 1580-00 · Leasehold Impovements** | 54,481.38 |

| | Wextrust Capital LLC *6190 |
|---|---:|
| **1500 · Equipment** | |
|    1510 · Equipment-Computer | |
|       1510 · Equipment-Computer - Other | 0.00 |
|    Total 1510 · Equipment-Computer | 0.00 |
| | |
|    Total 1500 · Equipment | 0.00 |
| | |
| **Total Fixed Assets** | 241,377.31 |
| | |
| **Other Assets** | |
|    1900 · Earnest Money Deposit | 0.00 |
| **Total Other Assets** | 0.00 |
| | |
| **TOTAL ASSETS** | 624,929.77 |
| | |
| **LIABILITIES & EQUITY** | |
|   **Liabilities** | |
|     **Current Liabilities** | |
|       **Accounts Payable** | |
|          2000 · Accounts Payable | 41,285.27 |
|       **Total Accounts Payable** | 41,285.27 |
| | |
|       **Credit Cards** | |
|          2002 · AMEX Green Awards | 15,281.81 |
|       **Total Credit Cards** | 15,281.81 |
| | |
|       **Other Current Liabilities** | |
|          2200 · Promissory Note Payable | |
|             2200-03 · Promissory Note Meltzer | -20,000.00 |
|             2200-12 · Promissory Note Jack Kanter | -50,000.00 |
|             2200-14 · Promissory Note Eugene Kanter | -50,000.00 |
|             2200-02 · Promissory Note Itzhak | 0.00 |
|             2200-05 · Promissory Note Wildwood | 0.00 |
|             2200-06 · Promissory Loan Kleiner | 0.00 |
|             2200-07 · Promissory Note Sunpoints SA | 0.00 |
|             2200-08 · Promissory Note Davis | 0.00 |
|             2200-09 · Promissory Note Harman (FCGI) | 0.00 |
|             2200-11 · Promissory Note Mostofsky | 0.00 |
|          Total 2200 · Promissory Note Payable | -120,000.00 |
| | |
|          2300 · Good Faith Deposit Liability | |
|             2300-01 · BCN Management-Aura Project | 0.00 |
|          Total 2300 · Good Faith Deposit Liability | 0.00 |
| | |
|       **Total Other Current Liabilities** | -120,000.00 |
| | |
|     **Total Current Liabilities** | -63,432.92 |
| | |
|     **Long Term Liabilities** | |

| | Wextrust Capital LLC *6190 |
|---|---|
| **2500 · Intercompany Loans** | |
| **2500100 · Due To/From Chicago** | |
| 11-01 · Chicago (9429) | -13,097.66 |
| 11-03 · Chicago Payroll (9445) | -220,209.24 |
| 11-05 · Chicago Fifth Third Acc | |
| 05-03 · Fifth Third Payroll | -90,000.00 |
| 05-01 · Fifth Third WTC | 0.00 |
| 05-02 · Fifth Third WHYF | 0.00 |
| 05-04 · Fifth Third Wexford Bancgroup | 0.00 |
| 11-05 · Chicago Fifth Third Acc – Other | 0.00 |
| Total 11-05 · Chicago Fifth Third Acc | -90,000.00 |
| | |
| 11-06 · Chicago Citibank (1919) | -13,000.00 |
| 11-01 · Chicago Citibank Op Acc (9429) | 0.00 |
| 11-04 · Chicago Northern Trust Acc | 0.00 |
| 11-07 · Chicago Heritage Bank (1097) | 0.00 |
| Total 2500100 · Due To/From Chicago | -336,306.90 |
| | |
| 2500105 · Due To/From New York | -46,500.00 |
| 2500112 · Due To/From WTC Op (8459) | 3,129,445.15 |
| 2500115 · Due To/From WTC Sec Op (1070) | -339,667.35 |
| 2500150 · Due To/From 82nd St Condo | -78,250.00 |
| 2500160 · Due To/From Block III | 225,000.00 |
| 2500165 · Due To/From Brandon Investments | -368,262.02 |
| 2500170 · Due To/From Bret Investors SC | -47,000.00 |
| 2500190 · Due To/From Dean St. | 261.95 |
| 2500195 · Due To/From Elmhurst Bldg/York | 243,053.79 |
| 2500205 · Due To/From GDR Accs, Pre-Tier | -6,425.41 |
| 2500210 · Due To/From GDR Tier | 466,284.04 |
| 2500215 · Due To/From Gold Coast/Days Inn | 55,804.25 |
| 2500220 · Due To/From GSA | 210,000.00 |
| 2500234 · Due To/From Highland Park | 0.00 |
| 2500245 · Due To/From Hinsdale Condos | 637,718.91 |
| 2500255 · Due To/From IDEX | -30,132.80 |
| 2500260 · Due To/From Interstate | -23,213.00 |
| 2500265 · Due To/From Jassry Properties | -144,540.00 |
| 2500268 · Due To/From Lindsey Energy | -171,354.64 |
| 2500270 · Due To/From McCue | -2,998.65 |
| 2500285 · Due To/From P A M | 0.00 |
| 2500295 · Due To/From Park Village | 80,394.12 |
| 2500315 · Due To/From River's Edge | 376,046.47 |
| 2500330 · Due To/From Shallowford | 0.00 |
| 2500335 · Due To/From Skeleton Coast BI | 150,000.00 |
| 2500345 · Due To/From TN Office | -12,850.00 |
| 2500349 · Due To/From Vaticano | 68,160.46 |
| 2500350 · Due To/From W Bearden Holdings | 126,395.20 |
| 2500355 · Due To/From W Belmont | 50,000.00 |
| 2500360 · Due To/From WDFF | 0.00 |
| 2500370 · Due To/From WexCap Commodity | -2,865.00 |
| 2500375 · Due To/From Wexford Eq Partners | -83,000.00 |
| 2500381 · Due To/From WHYF | -114,000.00 |

| | Wextrust Capital LLC *6190 |
|---|---:|
| 2500382 · Due To/From WHYF II | 23,794.61 |
| 2500383 · Due To/From WHYF III | -404,900.00 |
| 2500390 · Due To/From Workman's Road | 79,000.00 |
| 2500395 · Due To/From WPPF | 0.00 |
| 2500105 · Due To/From NY | |
|     58-01 · NY Wachovia (6077) | 0.00 |
|     58-02 · NY Amnon's Acc | 0.00 |
|     58-03 · Coldwell Banker Commercial WTC | 0.00 |
| Total 2500105 · Due To/From NY | 0.00 |
| | |
| 2500110 · Due To/From Bank - Commonwealth | 0.00 |
| 2500120 · Due To/From WTC Disb (6190) | 0.00 |
| 2500125 · Due To/From 1st Highland | 0.00 |
| 2500130 · Due To/From 1st Wyoming/Rogers | 0.00 |
| 2500133 · Due To/From 124 Adams St | 0.00 |
| 2500134 · Due To/From 318 Adams | 0.00 |
| 2500135 · Due To/From 45 S. Washington | 0.00 |
| 2500140 · Due To/From 47 Dean | 0.00 |
| 2500145 · Due To/From 47th St. | 0.00 |
| 2500155 · Due To/From Belle Meade | 0.00 |
| 2500165 · Due To/From Brandon | 0.00 |
| 2500175 · Due To/From Clarksville | 0.00 |
| 2500180 · Due To/From Cleveland Ind | 0.00 |
| 2500185 · Due To/From Crowne Plaza | 0.00 |
| 2500192 · Due To/From Drake Oak Brook | 0.00 |
| 2500193 · Due To/From East Point | 0.00 |
| 2500200 · Due To/From Essex/Hyde Park | 0.00 |
| 2500204 · Due To/From FreeMac | 0.00 |
| 2500225 · Due To/From Hammond II | 0.00 |
| 2500230 · Due To/From Hamptons Hinsdale M | 0.00 |
| 2500235 · Due To/From Hilltop Apt | 0.00 |
| 2500240 · Due To/From Hilltop Ridge | 0.00 |
| 2500250 · Due To/From Homer | 0.00 |
| 2500273 · Due To/From Music Row | 0.00 |
| 2500275 · Due To/From New Salem | 0.00 |
| 2500280 · Due To/From Nu Point East, LLC | 0.00 |
| 2500290 · Due To/From Parkview Hotel | 0.00 |
| 2500297 · Due To/From Peoria | 0.00 |
| 2500300 · Due To/From Pure Africa | 0.00 |
| 2500305 · Due To/From Rand Energy | 0.00 |
| 2500310 · Due To/From Rand Quarry | 0.00 |
| 2500320 · Due To/From Riverside Arcade | 0.00 |
| 2500325 · Due To/From SemJee | 0.00 |
| 2500340 · Due To/From S. Pine St | 0.00 |
| 2500365 · Due To/From WDG | 0.00 |
| 2500377 · Due To/From WHY Debt Offshore | 0.00 |
| 2500384 · Due To/From WHYF IV | 0.00 |
| Total 2500 · Intercompany Loans | 3,707,093.18 |
| | |
| 2600-00 · Business Leases Payable | |
| 2600-03 · Ricoh Copier Lease 2005-01-12 | 95,128.20 |

| | Wextrust Capital LLC *6190 |
|---|---|
| Total 2600-00 · Business Leases Payable | 95,128.20 |
| **Total Long Term Liabilities** | 3,802,221.38 |
| **Total Liabilities** | 3,738,788.46 |
| **Equity** | |
| 3999 · Retained Earnings | -1,730,292.85 |
| Net Income | -1,383,565.84 |
| **Total Equity** | -3,113,858.69 |
| **TOTAL LIABILITIES & EQUITY** | 624,929.77 |

## Wextrust Capital LLC
## Combined Balance Sheet
### As of December 31, 2007

| | Wextrust Capital LLC *8459 |
|---|---|
| **ASSETS** | |
| **Current Assets** | |
| **Checking/Savings** | |
| **1000 · Cash** | |
| 1001 · Petty Cash | 0.00 |
| 1002 · WTC-Disb-Wachovia (6190) | 0.00 |
| 1002 · WTC-Dep-Wachovia (8459) | 93,329.95 |
| 1003 · WTC-Sweep (7158) | 908.58 |
| 1004 · WTC- Charter One (6571) | -1,643.32 |
| **Total 1000 · Cash** | 92,595.21 |
| | |
| **Total Checking/Savings** | 92,595.21 |
| | |
| **Other Current Assets** | |
| 1200 · Capital Markets/Ivestments | 0.00 |
| 1250 · Loans Receivable | |
| 1250-01 · Due From South Africa | |
| 1250-02 · Amex Platinum | 0.00 |
| 1250-03 · Due From Pure Africa | 0.00 |
| 1250125 · Due From PA Farming | 0.00 |
| 1250-01 · Due From South Africa - Other | 0.00 |
| **Total 1250-01 · Due From South Africa** | 0.00 |
| | |
| 1250-10 · Due From Employees | |
| 1250-15 · John Hutzler | 0.00 |
| 1250-20 · Jacob Gantz | 0.00 |
| 1250-25 · Carisa Hugo | 0.00 |
| 1250-45 · Steve Byers | 0.00 |
| 1250-55 · Beth McClung | 0.00 |
| 1250-60 · Jennifer Edmiston | 0.00 |
| 1250-70 · Zvi Gluck | 0.00 |
| 1250-75 · Yoav Preiss | 0.00 |
| 1250-80 · Joseph Friedman | 0.00 |
| 1250-90 · Bonnie Muniz | 0.00 |
| **Total 1250-10 · Due From Employees** | 0.00 |
| | |
| 1250105 · Elka Shereshevsky | 0.00 |
| 1250118 · Due From Lion's Walk | 0.00 |
| 1250100 · Other Loan Receivables | -500.00 |
| 1250101 · Due From 37 Chestnut | 80,000.00 |
| 1250105 · Due From Elka Shereshevsky | 450,000.00 |
| 1250110 · Due From Earth Conserv. Africa | 15,000.00 |
| 1250115 · Due From King of Storms | 1,534,780.00 |
| 1250117 · Due From Lansdale Apartments | 200.00 |
| 1250118 · Due From Lions Walk | 2,177,100.00 |
| 1250120 · Due From PA Farming | 100.00 |
| 1250125 · Due From PA Investments | 100.00 |

| | Wextrust Capital LLC *8459 |
|---|---|
| 1250130 · Due From P A M, SA | 1,896,000.00 |
| 1250135 · Due From Rabato | 2,035,000.00 |
| 1250 · Loans Receivable - Other | 0.00 |
| **Total 1250 · Loans Receivable** | 8,187,780.00 |
| | |
| 1430 · Security Deposit | |
| 1440 · Office Rent | 0.00 |
| **Total 1430 · Security Deposit** | 0.00 |
| | |
| **Total Other Current Assets** | 8,187,780.00 |
| | |
| **Total Current Assets** | 8,280,375.21 |
| | |
| **Fixed Assets** | |
| 1500 · Furniture & Equipment | |
| 1510 · Equipment-Compute & Electronics | |
| 1510 · Equipment-Compute & Electronics - Other | 0.00 |
| **Total 1510 · Equipment-Compute & Electronics** | 0.00 |
| | |
| 1520 · Equipment-Copier | |
| 1520 · Equipment-Copier - Other | 0.00 |
| **Total 1520 · Equipment-Copier** | 0.00 |
| | |
| 1550 · Equipment-Teleconference | |
| 1555 · Teleconference-Accum Deprec | 0.00 |
| 1550 · Equipment-Teleconference - Other | 0.00 |
| **Total 1550 · Equipment-Teleconference** | 0.00 |
| | |
| 1560 · Equipment-Telephone System | |
| 1560-01 · Telephone System-Norfolk | 0.00 |
| 1565 · Telephone-Accum. Depreciation | 0.00 |
| 1560 · Equipment-Telephone System - Other | 0.00 |
| **Total 1560 · Equipment-Telephone System** | 0.00 |
| | |
| 1570-00 · Furniture & Fixtures | |
| 1570-01 · Furniture & Fixtures-Norfolk | 0.00 |
| 1570-04 · Furniture & Fixtures-S Africa | 0.00 |
| 1570-07 · Furniture & Fixtures-Memphis | 0.00 |
| 1575-00 · Furniture & Fixtures-Accum. Dep | 0.00 |
| **Total 1570-00 · Furniture & Fixtures** | 0.00 |
| | |
| **Total 1500 · Furniture & Equipment** | 0.00 |
| | |
| 1560-03 · Telephone System-NY | 0.00 |
| 1580-00 · Leasehold Improvements | |
| 1580-01 · Leasehold Improvements-Norfolk | 0.00 |
| 1580-04 · Leasehold Improvements-S Africa | 0.00 |
| 1585-00 · Leasehold Improvement-Accum Dep | 0.00 |
| **Total 1580-00 · Leasehold Impovements** | 0.00 |

| | Wextrust Capital LLC *8459 |
|---|---:|
| **1500 · Equipment** | |
|   **1510 · Equipment-Computer** | |
|     1510 · Equipment-Computer - Other | -12,094.49 |
|   **Total 1510 · Equipment-Computer** | -12,094.49 |
| | |
|   **Total 1500 · Equipment** | -12,094.49 |
| | |
| **Total Fixed Assets** | -12,094.49 |
| | |
| **Other Assets** | |
|   **1900 · Earnest Money Deposit** | 50,000.00 |
|   **Total Other Assets** | 50,000.00 |
| | |
| **TOTAL ASSETS** | 8,318,280.72 |
| | |
| **LIABILITIES & EQUITY** | |
|   **Liabilities** | |
|     **Current Liabilities** | |
|       **Accounts Payable** | |
|         2000 · Accounts Payable | 0.00 |
|         **Total Accounts Payable** | 0.00 |
| | |
|       **Credit Cards** | |
|         2002 · AMEX Green Awards | 0.00 |
|         **Total Credit Cards** | 0.00 |
| | |
|       **Other Current Liabilities** | |
|         **2200 · Promissory Note Payable** | |
|           2200-03 · Promissory Note Meltzer | 5,000.00 |
|           2200-12 · Promissory Note Jack Kanter | 0.00 |
|           2200-14 · Promissory Note Eugene Kanter | 0.00 |
|           2200-02 · Promissory Note Itzhak | -50,000.00 |
|           2200-05 · Promissory Note Wildwood | -114,000.00 |
|           2200-06 · Promissory Loan Kleiner | 30,000.00 |
|           2200-07 · Promissory Note Sunpoints SA | 250,000.00 |
|           2200-08 · Promissory Note Davis | 200,000.00 |
|           2200-09 · Promissory Note Harman (FCGI) | -350,000.00 |
|           2200-11 · Promissory Note Mostofsky | 250,000.00 |
|         **Total 2200 · Promissory Note Payable** | 221,000.00 |
| | |
|         **2300 · Good Faith Deposit Liability** | |
|           2300-01 · BCN Management-Aura Project | 20,000.00 |
|         **Total 2300 · Good Faith Deposit Liability** | 20,000.00 |
| | |
|       **Total Other Current Liabilities** | 241,000.00 |
| | |
|     **Total Current Liabilities** | 241,000.00 |
| | |
|     **Long Term Liabilities** | |

|  | Wextrust Capital LLC *8459 |
|---|---:|
| **2500 · Intercompany Loans** | |
| **2500100 · Due To/From Chicago** | |
| 11-01 · Chicago (9429) | 0.00 |
| 11-03 · Chicago Payroll (9445) | -3,024,990.52 |
| **11-05 · Chicago Fifth Third Acc** | |
| 05-03 · Fifth Third Payroll | -793,948.57 |
| 05-01 · Fifth Third WTC | -930,010.00 |
| 05-02 · Fifth Third WHYF | -375,291.09 |
| 05-04 · Fifth Third Wexford Bancgroup | -583,872.11 |
| 11-05 · Chicago Fifth Third Acc - Other | -55,000.00 |
| Total 11-05 · Chicago Fifth Third Acc | -2,738,121.77 |
| | |
| 11-06 · Chicago Citibank (1919) | -98,563.76 |
| 11-01 · Chicago Citibank Op Acc (9429) | -24,437,260.88 |
| 11-04 · Chicago Northern Trust Acc | -2,015,000.00 |
| 11-07 · Chicago Heritage Bank (1097) | -800,000.00 |
| Total 2500100 · Due To/From Chicago | -33,113,936.93 |
| | |
| 2500105 · Due To/From New York | 0.00 |
| 2500112 · Due To/From WTC Op (8459) | 0.00 |
| 2500115 · Due To/From WTC Sec Op (1070) | -50,000.00 |
| 2500150 · Due To/From 82nd St Condo | 1,939,613.45 |
| 2500160 · Due To/From Block III | 3,765,910.00 |
| 2500165 · Due To/From Brandon Investments | 0.00 |
| 2500170 · Due To/From Bret Investors SC | 1,868,265.04 |
| 2500190 · Due To/From Dean St. | -50,100.00 |
| 2500195 · Due To/From Elmhurst Bldg/York | -680,000.00 |
| 2500205 · Due To/From GDR Accs, Pre-Tier | -2,504,528.17 |
| 2500210 · Due To/From GDR Tier | 5,589,979.93 |
| 2500215 · Due To/From Gold Coast/Days Inn | 7,244,651.22 |
| 2500220 · Due To/From GSA | 6,344,400.00 |
| 2500234 · Due To/From Highland Park | 1,750,769.16 |
| 2500245 · Due To/From Hinsdale Condos | 353,950.00 |
| 2500255 · Due To/From IDEX | -426,819.18 |
| 2500260 · Due To/From Interstate | 2,158,588.53 |
| 2500265 · Due To/From Jassry Properties | 602,000.00 |
| 2500268 · Due To/From Lindsey Energy | -10,100.00 |
| 2500270 · Due To/From McCue | 2,342,888.27 |
| 2500285 · Due To/From P A M | 497,400.00 |
| 2500295 · Due To/From Park Village | 684,630.48 |
| 2500315 · Due To/From River's Edge | 222,000.00 |
| 2500330 · Due To/From Shallowford | 519,960.00 |
| 2500335 · Due To/From Skeleton Coast BI | 939,850.00 |
| 2500345 · Due To/From TN Office | 1,045,437.03 |
| 2500349 · Due To/From Vaticano | 198,523.15 |
| 2500350 · Due To/From W Bearden Holdings | 250,281.06 |
| 2500355 · Due To/From W Belmont | 1,442,900.00 |
| 2500360 · Due To/From WDFF | -111,866.28 |
| 2500370 · Due To/From WexCap Commodity | -1,171.01 |
| 2500375 · Due To/From Wexford Eq Partners | -290,000.00 |
| 2500381 · Due To/From WHYF | 713,557.36 |

| | Wextrust Capital LLC *8459 |
|---|---|
| 2500382 · Due To/From WHYF II | 438,000.00 |
| 2500383 · Due To/From WHYF III | -1,073,087.51 |
| 2500390 · Due To/From Workman's Road | 595,984.50 |
| 2500395 · Due To/From WPPF | -617,468.18 |
| 2500105 · Due To/From NY | |
|     58-01 · NY Wachovia (6077) | -10,356.17 |
|     58-02 · NY Amnon's Acc | -154,273.04 |
|     58-03 · Coldwell Banker Commercial WTC | -9,052,174.83 |
| Total 2500105 · Due To/From NY | -9,216,804.04 |
| | |
| 2500110 · Due To/From Bank - Commonwealth | 3,549.80 |
| 2500120 · Due To/From WTC Disb (6190) | -2,945,647.91 |
| 2500125 · Due To/From 1st Highland | -77,000.00 |
| 2500130 · Due To/From 1st Wyoming/Rogers | 6,554,407.77 |
| 2500133 · Due To/From 124 Adams St | -200,000.00 |
| 2500134 · Due To/From 318 Adams | 125,000.00 |
| 2500135 · Due To/From 45 S. Washington | -17,900.00 |
| 2500140 · Due To/From 47 Dean | 1,087,500.00 |
| 2500145 · Due To/From 47th St. | -120,000.00 |
| 2500155 · Due To/From Belle Meade | 176,700.00 |
| 2500165 · Due To/From Brandon | -428,296.51 |
| 2500175 · Due To/From Clarksville | -240,472.24 |
| 2500180 · Due To/From Cleveland Ind | -300.00 |
| 2500185 · Due To/From Crowne Plaza | 3,040,506.85 |
| 2500192 · Due To/From Drake Oak Brook | -100,125.00 |
| 2500193 · Due To/From East Point | 75,000.00 |
| 2500200 · Due To/From Essex/Hyde Park | 1,265,000.00 |
| 2500204 · Due To/From FreeMac | 287,000.00 |
| 2500225 · Due To/From Hammond II | 2,123,700.00 |
| 2500230 · Due To/From Hamptons Hinsdale M | 6,782,669.00 |
| 2500235 · Due To/From Hilltop Apt | 310,723.87 |
| 2500240 · Due To/From Hilltop Ridge | 332,305.00 |
| 2500250 · Due To/From Homer | 1,190,837.52 |
| 2500273 · Due To/From Music Row | 1,637,000.00 |
| 2500275 · Due To/From New Salem | 180,675.36 |
| 2500280 · Due To/From Nu Point East, LLC | -108,000.00 |
| 2500290 · Due To/From Parkview Hotel | -799,776.41 |
| 2500297 · Due To/From Peoria | 1,048,863.90 |
| 2500300 · Due To/From Pure Africa | 4,792.06 |
| 2500305 · Due To/From Rand Energy | -5,200.38 |
| 2500310 · Due To/From Rand Quarry | 98.96 |
| 2500320 · Due To/From Riverside Arcade | 1,004,160.86 |
| 2500325 · Due To/From SemJee | -100.00 |
| 2500340 · Due To/From S. Pine St | 326,000.00 |
| 2500365 · Due To/From WDG | -150,000.00 |
| 2500377 · Due To/From WHY Debt Offshore | -20,065.00 |
| 2500384 · Due To/From WHYF IV | -300.00 |
| Total 2500 · Intercompany Loans | 15,706,965.38 |
| | |
| 2600-00 · Business Leases Payable | |
| 2600-03 · Ricoh Copier Lease 2005-01-12 | 0.00 |

| | Wextrust Capital LLC *8459 |
|---|---|
| Total 2600-00 · Business Leases Payable | 0.00 |
| **Total Long Term Liabilities** | 15,706,965.38 |
| **Total Liabilities** | 15,947,965.38 |
| **Equity** | |
| 3999 · Retained Earnings | -6,325,662.72 |
| Net Income | -1,304,021.94 |
| **Total Equity** | -7,629,684.66 |
| **TOTAL LIABILITIES & EQUITY** | 8,318,280.72 |

**Wextrust Capital LLC**
# Combined Balance Sheet
### As of December 31, 2007

12:10 AM

05/03/2008

Accrual Basis

**TOTAL**

**ASSETS**

  **Current Assets**

    **Checking/Savings**

      **1000 · Cash**

| | |
|---|---:|
| 1001 · Petty Cash | 200.00 |
| 1002 · WTC-Disb-Wachovia (6190) | -128,154.06 |
| 1002 · WTC-Dep-Wachovia (8459) | 93,329.95 |
| 1003 · WTC-Sweep (7158) | 908.58 |
| 1004 · WTC- Charter One (6571) | -1,643.32 |
| **Total 1000 · Cash** | **-35,358.85** |
| | |
| **Total Checking/Savings** | **-35,358.85** |
| | |
| **Other Current Assets** | |
| 1200 · Capital Markets/Ivestments | 120,000.00 |
| 1250 · Loans Receivable | |
|   1250-01 · Due From South Africa | |
|     1250-02 · Amex Platinum | 200,420.05 |
|     1250-03 · Due From Pure Africa | 1,120.00 |
|     1250125 · Due From PA Farming | 300,000.00 |
|     1250-01 · Due From South Africa - Other | 816.47 |
|   **Total 1250-01 · Due From South Africa** | **502,356.52** |
| | |
|   1250-10 · Due From Employees | |
|     1250-15 · John Hutzler | 10,000.00 |
|     1250-20 · Jacob Gantz | 18,180.00 |
|     1250-25 · Carisa Hugo | 800.00 |
|     1250-45 · Steve Byers | 13,600.00 |
|     1250-55 · Beth McClung | 560.00 |
|     1250-60 · Jennifer Edmiston | 3,000.00 |
|     1250-70 · Zvi Gluck | 5,000.00 |
|     1250-75 · Yoav Preiss | 5,080.00 |
|     1250-80 · Joseph Friedman | 28,000.00 |
|     1250-90 · Bonnie Muniz | 5,500.00 |
|   **Total 1250-10 · Due From Employees** | **89,720.00** |
| | |
|   1250105 · Elka Shereshevsky | -210,000.00 |
|   1250118 · Due From Lion's Walk | 100.00 |
|   1250100 · Other Loan Receivables | -500.00 |
|   1250101 · Due From 37 Chestnut | 80,000.00 |
|   1250105 · Due From Elka Shereshevsky | 450,000.00 |
|   1250110 · Due From Earth Conserv. Africa | 15,000.00 |
|   1250115 · Due From King of Storms | 1,534,780.00 |
|   1250117 · Due From Lansdale Apartments | 200.00 |
|   1250118 · Due From Lions Walk | 2,177,100.00 |
|   1250120 · Due From PA Farming | 100.00 |
|   1250125 · Due From PA Investments | 100.00 |

| | TOTAL |
|---|---:|
| 1250130 · Due From P A M, SA | 1,896,000.00 |
| 1250135 · Due From Rabato | 2,035,000.00 |
| 1250 · Loans Receivable - Other | 4,250.00 |
| **Total 1250 · Loans Receivable** | 8,574,206.52 |
| | |
| 1430 - Security Deposit | |
| 1440 - Office Rent | 5,080.00 |
| **Total 1430 · Security Deposit** | 5,080.00 |
| | |
| **Total Other Current Assets** | 8,699,286.52 |
| | |
| **Total Current Assets** | 8,663,927.67 |
| | |
| **Fixed Assets** | |
| 1500 · Furniture & Equipment | |
| 1510 · Equipment-Compute & Electronics | |
| 1510 · Equipment-Compute & Electronics - Other | 21,754.45 |
| **Total 1510 · Equipment-Compute & Electronics** | 21,754.45 |
| | |
| 1520 · Equipment-Copier | |
| 1520 · Equipment-Copier - Other | 95,128.20 |
| **Total 1520 · Equipment-Copier** | 95,128.20 |
| | |
| 1550 · Equipment-Teleconference | |
| 1555 · Teleconference-Accum Deprec | -26,800.02 |
| 1550 · Equipment-Teleconference - Other | 31,847.50 |
| **Total 1550 · Equipment-Teleconference** | 5,047.48 |
| | |
| 1560 · Equipment-Telephone System | |
| 1560-01 · Telephone System-Norfolk | 19,013.13 |
| 1565 · Telephone-Accum. Depreciation | -25,359.29 |
| 1560 · Equipment-Telephone System - Other | 7,501.78 |
| **Total 1560 · Equipment-Telephone System** | 1,155.62 |
| | |
| 1570-00 · Furniture & Fixtures | |
| 1570-01 · Furniture & Fixtures-Norfolk | 60,940.02 |
| 1570-04 · Furniture & Fixtures-S Africa | 755.45 |
| 1570-07 · Furniture & Fixtures-Memphis | 666.41 |
| 1575-00 · Furniture & Fixtures-Accum. Dep | -16,649.71 |
| **Total 1570-00 · Furniture & Fixtures** | 45,712.17 |
| | |
| **Total 1500 · Furniture & Equipment** | 168,797.92 |
| | |
| 1560-03 · Telephone System-NY | 18,098.01 |
| 1580-00 · Leasehold Improvements | |
| 1580-01 · Leasehold Improvements-Norfolk | 48,582.70 |
| 1580-04 · Leasehold Improvements-S Africa | 8,684.00 |
| 1585-00 · Leasehold Improvement-Accum Dep | -2,785.32 |
| **Total 1580-00 · Leasehold Impovements** | 54,481.38 |

|  | TOTAL |
|---|---|
| **1500 · Equipment** | |
| 1510 · Equipment-Computer | |
| 1510 · Equipment-Computer - Other | -12,094.49 |
| Total 1510 · Equipment-Computer | -12,094.49 |
| | |
| **Total 1500 · Equipment** | -12,094.49 |
| | |
| **Total Fixed Assets** | 229,282.82 |
| | |
| **Other Assets** | |
| 1900 · Earnest Money Deposit | 50,000.00 |
| **Total Other Assets** | 50,000.00 |
| | |
| **TOTAL ASSETS** | 8,943,210.49 |
| | |
| **LIABILITIES & EQUITY** | |
| Liabilities | |
| Current Liabilities | |
| Accounts Payable | |
| 2000 · Accounts Payable | 41,285.27 |
| **Total Accounts Payable** | 41,285.27 |
| | |
| Credit Cards | |
| 2002 · AMEX Green Awards | 15,281.81 |
| **Total Credit Cards** | 15,281.81 |
| | |
| Other Current Liabilities | |
| 2200 · Promissory Note Payable | |
| 2200-03 · Promissory Note Meltzer | -15,000.00 |
| 2200-12 · Promissory Note Jack Kanter | -50,000.00 |
| 2200-14 · Promissory Note Eugene Kanter | -50,000.00 |
| 2200-02 · Promissory Note Itzhak | -50,000.00 |
| 2200-05 · Promissory Note Wildwood | -114,000.00 |
| 2200-06 · Promissory Loan Kleiner | 30,000.00 |
| 2200-07 · Promissory Note Sunpoints SA | 250,000.00 |
| 2200-08 · Promissory Note Davis | 200,000.00 |
| 2200-09 · Promissory Note Harman (FCGI) | -350,000.00 |
| 2200-11 · Promissory Note Mostofsky | 250,000.00 |
| **Total 2200 · Promissory Note Payable** | 101,000.00 |
| | |
| 2300 · Good Faith Deposit Liability | |
| 2300-01 · BCN Management-Aura Project | 20,000.00 |
| **Total 2300 · Good Faith Deposit Liability** | 20,000.00 |
| | |
| **Total Other Current Liabilities** | 121,000.00 |
| | |
| **Total Current Liabilities** | 177,567.08 |
| | |
| Long Term Liabilities | |

| | TOTAL |
|---|---|
| **2500 · Intercompany Loans** | |
| **2500100 · Due To/From Chicago** | |
| 11-01 · Chicago (9429) | -13,097.66 |
| 11-03 · Chicago Payroll (9445) | -3,245,199.76 |
| 11-05 · Chicago Fifth Third Acc | |
| 05-03 · Fifth Third Payroll | -883,948.57 |
| 05-01 · Fifth Third WTC | -930,010.00 |
| 05-02 · Fifth Third WHYF | -375,291.09 |
| 05-04 · Fifth Third Wexford Bancgroup | -583,872.11 |
| 11-05 · Chicago Fifth Third Acc - Other | -55,000.00 |
| Total 11-05 · Chicago Fifth Third Acc | -2,828,121.77 |
| | |
| 11-06 · Chicago Citibank (1919) | -111,563.76 |
| 11-01 · Chicago Citibank Op Acc (9429) | -24,437,260.88 |
| 11-04 · Chicago Northern Trust Acc | -2,015,000.00 |
| 11-07 · Chicago Heritage Bank (1097) | -800,000.00 |
| Total 2500100 · Due To/From Chicago | -33,450,243.83 |
| | |
| 2500105 · Due To/From New York | -46,500.00 |
| 2500112 · Due To/From WTC Op (8459) | 3,129,445.15 |
| 2500115 · Due To/From WTC Sec Op (1070) | -389,667.35 |
| 2500150 · Due To/From 82nd St Condo | 1,861,363.45 |
| 2500160 · Due To/From Block III | 3,990,910.00 |
| 2500165 · Due To/From Brandon Investments | -368,262.02 |
| 2500170 · Due To/From Bret Investors SC | 1,821,265.04 |
| 2500190 · Due To/From Dean St. | -49,838.05 |
| 2500195 · Due To/From Elmhurst Bldg/York | -436,946.21 |
| 2500205 · Due To/From GDR Accs, Pre-Tier | -2,510,953.58 |
| 2500210 · Due To/From GDR Tier | 6,056,263.97 |
| 2500215 · Due To/From Gold Coast/Days Inn | 7,300,455.47 |
| 2500220 · Due To/From GSA | 6,554,400.00 |
| 2500234 · Due To/From Highland Park | 1,750,769.16 |
| 2500245 · Due To/From Hinsdale Condos | 991,668.91 |
| 2500255 · Due To/From IDEX | -456,951.98 |
| 2500260 · Due To/From Interstate | 2,135,375.53 |
| 2500265 · Due To/From Jassry Properties | 457,460.00 |
| 2500268 · Due To/From Lindsey Energy | -181,454.64 |
| 2500270 · Due To/From McCue | 2,339,889.62 |
| 2500285 · Due To/From P A M | 497,400.00 |
| 2500295 · Due To/From Park Village | 765,024.60 |
| 2500315 · Due To/From River's Edge | 598,046.47 |
| 2500330 · Due To/From Shallowford | 519,960.00 |
| 2500335 · Due To/From Skeleton Coast Bl | 1,089,850.00 |
| 2500345 · Due To/From TN Office | 1,032,587.03 |
| 2500349 · Due To/From Vaticano | 264,683.61 |
| 2500350 · Due To/From W Bearden Holdings | 376,676.26 |
| 2500355 · Due To/From W Belmont | 1,492,900.00 |
| 2500360 · Due To/From WDFF | -111,866.28 |
| 2500370 · Due To/From WexCap Commodity | -4,036.01 |
| 2500375 · Due To/From Wexford Eq Partners | -373,000.00 |
| 2500381 · Due To/From WHYF | 599,557.36 |

| | TOTAL |
|---|---|
| 2500382 · Due To/From WHYF II | 461,794.61 |
| 2500383 · Due To/From WHYF III | -1,477,987.51 |
| 2500390 · Due To/From Workman's Road | 674,984.50 |
| 2500395 · Due To/From WPPF | -617,468.18 |
| 2500105 · Due To/From NY | |
| 58-01 · NY Wachovia (6077) | -10,356.17 |
| 58-02 · NY Amnon's Acc | -154,273.04 |
| 58-03 · Coldwell Banker Commercial WTC | -9,052,174.83 |
| Total 2500105 · Due To/From NY | -9,216,804.04 |
| | |
| 2500110 · Due To/From Bank - Commonwealth | 3,549.80 |
| 2500120 · Due To/From WTC Disb (6190) | -2,945,647.91 |
| 2500125 · Due To/From 1st Highland | -77,000.00 |
| 2500130 · Due To/From 1st Wyoming/Rogers | 6,554,407.77 |
| 2500133 · Due To/From 124 Adams St | -200,000.00 |
| 2500134 · Due To/From 318 Adams | 125,000.00 |
| 2500135 · Due To/From 45 S. Washington | -17,900.00 |
| 2500140 · Due To/From 47 Dean | 1,087,500.00 |
| 2500145 · Due To/From 47th St. | -120,000.00 |
| 2500155 · Due To/From Belle Meade | 176,700.00 |
| 2500165 · Due To/From Brandon | -428,296.51 |
| 2500175 · Due To/From Clarksville | -240,472.24 |
| 2500180 · Due To/From Cleveland Ind | -300.00 |
| 2500185 · Due To/From Crowne Plaza | 3,040,506.85 |
| 2500192 · Due To/From Drake Oak Brook | -100,125.00 |
| 2500193 · Due To/From East Point | 75,000.00 |
| 2500200 · Due To/From Essex/Hyde Park | 1,265,000.00 |
| 2500204 · Due To/From FreeMac | 287,000.00 |
| 2500225 · Due To/From Hammond II | 2,123,700.00 |
| 2500230 · Due To/From Hamptons Hinsdale M | 6,782,669.00 |
| 2500235 · Due To/From Hilltop Apt | 310,723.87 |
| 2500240 · Due To/From Hilltop Ridge | 332,305.00 |
| 2500250 · Due To/From Homer | 1,190,837.52 |
| 2500273 · Due To/From Music Row | 1,637,000.00 |
| 2500275 · Due To/From New Salem | 180,675.36 |
| 2500280 · Due To/From Nu Point East, LLC | -108,000.00 |
| 2500290 · Due To/From Parkview Hotel | -799,776.41 |
| 2500297 · Due To/From Peoria | 1,048,863.90 |
| 2500300 · Due To/From Pure Africa | 4,792.06 |
| 2500305 · Due To/From Rand Energy | -5,200.38 |
| 2500310 · Due To/From Rand Quarry | 98.96 |
| 2500320 · Due To/From Riverside Arcade | 1,004,160.86 |
| 2500325 · Due To/From SemJee | -100.00 |
| 2500340 · Due To/From S. Pine St | 326,000.00 |
| 2500365 · Due To/From WDG | 450,000.00 |
| 2500377 · Due To/From WHY Debt Offshore | -20,065.00 |
| 2500384 · Due To/From WHYF IV | -300.00 |
| Total 2500 · Intercompany Loans | 19,414,058.56 |
| | |
| 2600-00 · Business Leases Payable | |
| 2600-03 · Ricoh Copier Lease 2005-01-12 | 95,128.20 |

| | TOTAL |
|---|---|
| Total 2600-00 · Business Leases Payable | 95,128.20 |
| **Total Long Term Liabilities** | 19,509,186.76 |
| **Total Liabilities** | 19,686,753.84 |
| **Equity** | |
| 3999 · Retained Earnings | -8,055,955.57 |
| Net Income | -2,687,587.78 |
| **Total Equity** | -10,743,543.35 |
| **TOTAL LIABILITIES & EQUITY** | 8,943,210.49 |

Shersehvsky resigning as COO b-c SEC

From: Steve Byers [SByers@wextrust.com]
Sent: Thursday, April 10, 2008 2:34 PM
To: Joseph Shereshevsky
Subject: RE:

Follow Up Flag: Follow up
Flag Status: Purple


We can't do that.  $1.2 million for a Risk Specialist.  Plus we have to start
getting compensated via Net income or there will be no future commissions to pay to
anyone.

We have to keep salaries where they are.  We will be lucky to keep them there.  I
was even going to suggest reducing them.

We have to do a buget and pay a % of gross and a % of net.  Or we will not survive.
Imagine how profitable we would be and good we would be at underwriting if we could
only get paid based on net, not gross

I think you get paid a normal salary plus bonus and profit distribution based on %
owned.  You cannot own more of WTS there is too much risk.  This is not the entity
to own.

Regarding A shares, it has to be more clever than that.  I cannot be diluted so
much.  I do not take out the fees you do.

Regarding monies brought in, you cannot get paid by the company directly for monies
brought in.  Or, we have disclose everything.  The SEC won't allow it.


------------------------------------------------------------------------------
From: Joseph Shereshevsky
Sent: Wednesday, April 09, 2008 7:00 PM
To: Steve Byers
Subject: RE:


I will take it out another way.


Increase my salary to 1,200,000. +bonus and partnership distribution and I will stay
away from the overrides unless it pertains to Africa. That way I don't get  any %'s
of overrides.  Ever.  If I make any less than that I will be in trouble.


 Money that I bring in directly I will get the regular compensation like any other
broker. Africa will be different.


We can go over once in 6 months regarding bonus if any.


We will need to know how distributions will go


                              Page 1

Shershevsky resigning as COO b-c SEC
I would want to split the "a" shares with you 51-49 your favor.


The "b" shares I will stay as is with 20%.


Managed futures will be at 20/20 like regular on moneys I bring in.


I would also like an additional piece of wts if I am not going to get commissions. I
right now have 13% of wts. I would like to go to 20%


Please remember I lived off my commissions and sometimes to the tune of 2-3,000,000
a year besides my salary. I am going to give that up for the good of the company. In
other words I am going to trade all that in for an extra 950,000 in salary. I built
that whole division and now I will basically leave it all to the company. So the
exchange if you think about it is pretty good on the wextrust side.



We will talk in the morning. Please remember I always take care of you in the
African raises.


Btw. I allowed 1.5 million for you in the coming raise. However I added on 2,000,000
for you on the loan account which will be settled either when we go IPO or when we
finish paying off the investors. So we both rub each others backs.


Any % I own of wextrust will be owned by SFLP11 ( shereshevsly family partnership2)


There is a charity commitment that I have ( I have loads that total about 25,000 per
month, and one of the reasons that we are able to raise this much equity. ), one of
many for 10,000 a month. I would want the company to take that over.


The company comes out ahead in every which way. You get the coo you need. I still
make a decent living although much less than previous. ( I will make up paret of
that thru African raises). My name is off the card and cant get the company in
truble. I am incentivized enough not to go to sleep, although I would not do that. I
would rather quit.  But everyone needs incentive. The payments from overrides go
substantially down, and the company now will end up with 5 ½% of all raises as I
wont be getting my 1 ½-2% overrides anymore.    It's a win win for all around.

Shersehvsky resigning as COO b-c SEC

joe

Joseph Shereshevsky

COO

WexTrust Capital, LLC

999 Waterside Drive, Suite 2220

Norfolk, VA 23510

josephs@wextrust.com

Office: (757) 623-0246

Direct: (757) 213-5223

Cell: (732) 904-3368

Fax: (757) 623-6215


Beth McClung

Executive Assistant to COO / Office Manager

999 Waterside Drive, Suite 2220

Norfolk, VA 23510

bmcclung@wextrust.com

Office: (757) 623-0246

Direct: (757) 213-5223

Fax: (757) 623-6215

--------------------------------------------------------------------------------
From: Steve Byers
Sent: Wednesday, April 09, 2008 7:00 PM
To: Joseph Shereshevsky
Subject:


I talked the attorney's with the request to come back with a recommendation
regarding your title within the company.  The bottom line is (I said), you will be
an employee, you will be talking with investors and you will be reviewing deals.  So
what is the best position and title should be held by you to prevent future black
mailing or at least mitigate it.  My recommendation is that nothing should be on
your card, just your name, and your position should be "Risk Specialist".  Using
Page 3

Shersehvsky resigning as COO b-c SEC

that can take all history into a positive. Furthermore, you bring in potential investors and you tell them "what you told management" about the positive AND the RISKS and than turn them over to Mike or someone with a series 7. On compensation, we will have to re work. You will have to get paid salary plus bonus and than ownership distribution through the partnership interests. Fees and % of fees for raising money will have to stop or we will be shut down. Take it out another way.

This has to be resolved quickly. If it comes up in existing litigation I have to be able say I found out about it in the G&H litigation and made changes.

Steve Byers

CEO

WexTrust Capital

333 W. Wacker Drive

Suite 1600

Chicago, IL 60606

T: 312/881-6000

F: 312/881-6001

www.wextrust.com

This e-mail transmission may contain information that is proprietary, privileged and/or confidential and is intended exclusively for the person(s) to whom it is addressed. Any use, copying, retention or disclosure by any person other than the intended recipient or the intended recipient's designees is strictly prohibited. If you are not the intended recipient or their designee, please notify the sender immediately by return e-mail and delete all copies.
------_extPart_001_01C89B39.6984D8

## Amnon Cohen

**From:** Joseph Shereshevsky
**Sent:** Wednesday, July 02, 2008 10:53 AM
**To:** Amnon Cohen
**Subject:** RE: Does this interest you?

Amnon

We are in business. We are raising money.  We received more commitments today on atm,drake and paragon to the rune of over 2.5 million.

We got a wire for cambria for 175,000.  it seems that the conference calls steve has been doing has helped out a lot.

We will continue to do deals and continue to raise money. It will ont be easy but hell who says life is easy. I will fight like a dog to make this company work.

If this deal is a good deal then we will do a write up and start raising money.

You have to decide or whoever is going to be in charge of this if this is a good deal or not


joe


**Joseph Shereshevsky**
**WexTrust Capital, LLC**
999 Waterside Drive, Suite 2220
Norfolk, VA 23510
josephs@wextrust.com
Office: (757) 623-0246
Direct: (757) 213-5223
Cell: (732) 904-3368
Fax: (757) 623-6215


Beth McClung
Executive Assistant to J. Shereshevsky / Office Manager
bmcclung@wextrust.com
Office: (757) 623-0246
Direct: (757) 213-5223

**From:** Amnon Cohen
**Sent:** Wednesday, July 02, 2008 8:56 AM
**To:** Joseph Shereshevsky
**Subject:** Re: Does this interest you?

With what money

Sent from my BlackBerry wireless device


7/2/2008

WEXTRUST 00013136

**From:** "Joseph Shereshevsky" <josephs@wextrust.com>
**Date:** Wed, 2 Jul 2008 07:26:48 -0500
**To:** Amnon Cohen<ACohen@wextrust.com>; Steve Byers<SByers@wextrust.com>
**Subject:** FW: Does this interest you?
Is this interesting?

joe

**Joseph Shereshevsky**
**WexTrust Capital, LLC**
999 Waterside Drive, Suite 2220
Norfolk, VA 23510
josephs@wextrust.com
Office: (757) 623-0246
Direct: (757) 213-5223
Cell: (732) 904-3368
Fax: (757) 623-6215


Beth McClung
Executive Assistant to J. Shereshevsky / Office Manager
bmcclung@wextrust.com
Office: (757) 623-0246
Direct: (757) 213-5223

---

**From:** Ephriam Adler [mailto:eadler@harborg.com]
**Sent:** Wednesday, July 02, 2008 8:25 AM
**To:** Michael Mostofsky
**Cc:** Joseph Shereshevsky
**Subject:** Does this interest you?

Michael,
A project came across my desk that is not in our investment box, but let me know if you have any interest and I will send them your way. Very high end boutique residential development on the upper east side (9 units). Looking for $10 mil in mezz financing, which they say will take you up to 80% on a projected LTC basis (inclusive of a 50% LTC 1ST mortgage). As a developer/agent if you can verify the costs/sales could possibly be a nice deal. We are not familiar with the NY area and even less so the development arena, to make a sound investment. I would imagine at least high teens/20% on a pay rate.

TO BE CERTAIN: I TAKE NO RESPONSIBILITY AND OF COURSE YOU WOULD HAVE TO EVALUATE IF IT'S A GOOD INVESTMENT TO MAKE.

Be well,
Ephriam

Ephriam Adler
Vice President
Investor Relations
Harbor Group International
999 Waterside Drive
Norfolk VA 23510
(p) 757 961-2099
(f) 757 640-0817
*email:* eadler@harborg.com
  www.harborgroupint.com


7/2/2008

WEXTRUST 00013137

7/2/2008

WEXTRUST 00013138

**36**

## SCHEDULE B

| DATE | ISSUER | TOTAL AMOUNT OF OFFERING | AMOUNT OF PARTICIPATION | OFFERING PRICE | # OF INVESTORS | TYPE | TYPE OF REG. |
|---|---|---|---|---|---|---|---|
| 6/29/2007 | 47 DEAN STREET | $2,425,000 | $3,295,000 | $25,000 | 37 | D | Reg. D |
| 3/22/2007 | BLOCK III MINES AND MINERALS | $11,000,000 | $11,000,000 | $250,000 | 39 | I | Reg. D |
| 8/17/2007 | CLARKSVILLE | $1,100,000 | $1,100,000 | $100,00 | 9 | I | Reg. D |
| 8/8/2007 | CROWNE-PHOENIX | $9,300,000 | $9,303,004.40 | $100,00 | 83 | I | Reg. D |
| 4/29/2007 | DEAN STREET MANAGERS | $300,000 | $300,000 | $50,000 | 4 | D | Reg. D |
| 11/10/2007 | DRAKE OAKBROOK | $14,500,000 | $8,751,438.10 | $100,000 | 69 | I | Reg. D |
| 7/2/2007 | HAMMOND INDUSTRIAL | $7,000,000 | $7,985,000 | $100,000 | 82 | I | Reg. D |
| 2/28/2007 | HAMPTONS OF HINSDALE | $8,000,000 | $13,014,858,82 | $100,000 | 100 | D | Reg. D |
| 11/3/2006 | INTERSTATE PARK | $7,800,000 | $7,930,000 | $50,000 | 83 | I | Reg. D |
| 11/1/2007 | PEORIA OFFICE INVESTORS | $5,200,000 | $4,990,000 | $100,000 | 53 | I | Reg. D |
| 10/10/2006 | SHALLOWFORD | $825,000 | $800,000 | $25,000 | 6 | I | Reg. D |
| 6/22/2006 | TENNESSEE OFFICE INVESTORS | $3,650,000 | $5,050,000 | $50,000 | 55 | I | Reg. D |
| 10/25/2006 | WEST 82ND STREET INVESTORS | $8,470,000 | $8,193,487.86 | $50,000 | 97 | D | Reg. D |

| DATE | ISSUER | TOTAL AMOUNT OF OFFERING | AMOUNT OF PARTICIPATION | OFFERING PRICE | # OF INVESTORS | TYPE | TYPE OF REG. |
|---|---|---|---|---|---|---|---|
| 7/9/2007 | BRET INVESTORS SKELETON COAST | $6,000,000 | $6,151,381 | $1,000,000 | 22 | I | Reg. D |
| 11/13/2007 | BRET INVESTORS SKELETON COAST III | $2,000,000 | $1,900,000 | $100,000 | 11 | I | Reg. D |
| 5/7/2007 | SOUTH PINE STREET | $2,550,000 | $2,550,000 | $50,000 | 34 | I | Reg. D |
| 4/20/2007 | SKELETON COAST BRET INVESTORS | $3,000,000 | $3,000,000 | $100,000 | 8 | I | Reg. D |
| 11/16/2006 | WEST 82ND STREET HOLDINGS | $8,470,000 | $692,035.87 | $100,000 | 10 | D | Reg. D |
| 9/22/2005 | YORK ROAD | $ | $300,000 | $50,000 | 1 | I | Reg. D |
| 12/13/2007 | GSPN 1 YR A@ 7% | $20,000,000 | $864,690.95 | $50,000 | 10 | DEBT | Reg. D |
| 12/13/2007 | GSPN 18 MOS @ 7.75% | $20,000,000 | $0.00 | $50,000 | 0 | DEBT | Reg. D |
| 12/13/2007 | GPSN 3YR @ 9% | $20,000,000 | $130,000 | $50,000 | 1 | DEBT | Reg. D |
| 12/13/2007 | GSPN 3 YR @ 12% | $20,000,000 | $1,337,547.90 | $50,000 | 8 | DEBT | Reg. D |
| 11/30/2006 | USPN 8.5% ROLLOVER | $20,000,000 | $521,048,40 | N/A | 58 | DEBT | Reg. D |
| 6/30/2006 | HIGH YIELD FUND III | $17,070,000 | $16,578,185.64 | $100,000 | 129 | DEBT | Reg. D |
| 10/16/2006 | DIVERSIFIED FUTURES FUND I | $100,000,000 | $8,055,791.78 | $250,000 | 37 | NAV | Reg. D |
| 9/30/2006 | PRINICIPAL PROTECTED FUND I | $100,000,000 | $3,230,000 | $250,000 | 17 | NAV | Reg. D |

| DATE | ISSUER | TOTAL AMOUNT OF OFFERING | AMOUNT OF PARTICIPATION | OFFERING PRICE | # OF INVESTORS | TYPE | TYPE OF REG. |
|---|---|---|---|---|---|---|---|
| 4/17/2008 | 625 Paragon | $4,800,000 | $150,000 | $100,000 | 2 | D | Reg. D |
| 4/24/2008 | ATM | $25,000,000 | $100,000 | $100,000 | 1 | I | Reg. D |

**37**



# WexTrust

## Capital

### Confidential Private Placement Memorandum Offering $50,000,000 of Class A Interests OF

## Wexford Principal Protected Fund I, LLC

Wexford Principal Protected Fund I, LLC
c/o WexTrust Capital, LLC
333 West Wacker Drive, Suite 1600
Chicago, Illinois 60606
(312) 881-6000

Memorandum dated September 30, 2006

**WexTrust Securities, LLC**

CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM
OFFERING CLASS A INTERESTS OF

## WEXFORD PRINCIPAL PROTECTED FUND I, LLC

MAXIMUM OFFERING: $50,000,000
MINIMUM OFFERING: $20,000,000
MINIMUM INITIAL PURCHASE: $250,000

The Wexford Principal Protected Fund I, LLC (the "Fund") is an investment fund that will enable investors to invest with top performing institutional commodity and futures traders while limiting their exposure to losses.

Superior returns and loss protection of the Fund is accomplished, in part, by maintaining a weighted average balance between: (1) a portfolio of managed commodity and futures related investments; and (2) a portfolio of U.S. Government and investment grade securities.

This Memorandum contains important information about the Fund's objective, its investment policies, strategies and risks. It also contains important information about how to withdraw money and other account features. Please read this document carefully before you invest and keep it for future reference about your investment.

This Memorandum has been prepared solely for the benefit of investors interested in purchasing Class A Interests in the Fund.

These securities are not required to be and have not been registered with or approved by any federal or state regulatory authority. They are subject to restrictions on transferability and resale and may not be transferred or resold except as permitted under applicable law and the Fund's governing documents.

An investment in the Fund is not a deposit of any bank and is not insured or guaranteed by the Federal Deposit Insurance Corporation or any other government agency.

MEMORANDUM DATED SEPTEMBER 30, 2006

WEXFORD PRINCIPAL PROTECTED FUND I, LLC
C/O WEXTRUST CAPITAL, LLC
333 WEST WACKER DRIVE, SUITE 1600
CHICAGO, ILLINOIS 60606
(312) 881-6000

Memorandum Number: _____

Offeree: _____

WEXTRUST SECURITIES, LLC

## TABLE OF CONTENTS

GLOSSARY ................................................................................................................................... 1

INVESTMENT OVERVIEW ......................................................................................................... 3

DISCLOSURES AND DISCLAIMERS ........................................................................................ 7

INVESTOR SUITABILITY ........................................................................................................... 9

HISTORIC HYPOTHETICAL RETURNS.................................................................................... 9

EXPENSES, FEES AND PERFORMANCE ALLOCATION....................................................... 9

RISK FACTORS............................................................................................................................ 10

FUND AND RISK MANAGEMENT .......................................................................................... 18

INVESTMENT STRATEGY AND METHODOLOGY................................................................ 22

CTA SELECTION METHODOLOGY ......................................................................................... 23

MANAGEMENT OF THE FUND ................................................................................................ 24

CONFLICTS OF INTEREST........................................................................................................ 31

CAPITAL ACCOUNTS ................................................................................................................ 32

CAPITAL ACCOUNT DISTRIBUTIONS AND WITHDRAWALS........................................... 33

NET ASSET VALUE .................................................................................................................... 34

THE CLEARING BROKER .......................................................................................................... 35

TERMS OF THE OFFERING/DESCRIPTION OF THE SECURITIES .................................... 36

SUMMARY OF THE LLC AGREEMENT .................................................................................. 40

ERISA CONSIDERATIONS ........................................................................................................ 42

TAX CONSIDERATIONS............................................................................................................ 44

REPORTS TO CLASS A MEMBERS .......................................................................................... 44


EXHIBIT A:  INVESTOR SUITABILITY

EXHIBIT B:  CTA PROFILES

EXHIBIT C:  FUND PERFORMANCE AND ANALYSIS

EXHIBIT D:  MARKET SECTOR AND OTHER DIVERSIFICATION

EXHIBIT E:  FINANCIAL DEFINITIONS

EXHIBIT F:  LIMITED LIABILITY COMPANY AGREEMENT

## GLOSSARY

"**Accounting Period**" means the following periods: The initial Accounting Period shall commence upon the commencement of operations of the Company. Each subsequent Accounting Period shall commence immediately after the close of the preceding Accounting Period. Each Accounting Period hereunder shall close immediately before the opening of business on the first to occur of: (i) the first day of each calendar quarter; (ii) the first day of each fiscal year; (iii) the effective date of the admission of a new Member pursuant to Section 6.03(c) of the LLC Agreement; (iv) the effective date of an additional Capital Contribution to the Company; (v) the effective date of any withdrawal pursuant to Article 12 of the LLC Agreement; or (vi) the date when the Company shall dissolve. The Manager may also establish other Accounting Periods.

"**Beginning Value**" means, with respect to any Accounting Period, the Company's NAV at the beginning of such Accounting Period.

"**Capital Account**" means the Capital Account maintained by the Company for each Member as provided in Section 3.05 of the LLC Agreement.

"**Capital Contribution**" means the total amount of capital contributed by a Member to the Company for Membership Interests, as determined from time to time, which shall include cash contributions and the agreed value of any Contributed Property.

"**Class A Interests**" means those Interests issued to Class A Members and having the rights set forth herein.

"**Class A Members**" means those Persons owning the Class A Interests.

"**Class B Interests**" means those Interests issued to Class B Members and having the rights set forth herein.

"**Class B Members**" means those Persons owning the Class B Interests, which will be the Manager (as hereinafter defined) or its affiliates.

"**Commodity Portfolio**" means the speculative investment component into which the Company's assets will be allocated.

"**Ending Value**" means, with respect to any Accounting Period, the Company's NAV at the end of such Accounting Period (after giving effect to all expenses for such Accounting Period).

"**High Water Mark**" means the value of a Member's Capital Account immediately after the assessment of the most recent Incentive Allocation deducting the amount of any capital withdrawals from or capital contributions to the Capital Account since such assessment or, if the Capital Account has never been assessed an Incentive Allocation, the starting value of the Capital Account. If a Member withdraws capital from such Member's Capital Account when the Capital Account is below its High Water Mark, the High Water Mark will be reduced in proportion to the ratio of the withdrawal amount to the Capital Account value.

1

"**Incentive Allocation**" means the allocation to the Class B Member described in Section 4.03 of the LLC Agreement.

"**Investment Grade Portfolio**" means the principal protected component into which the Company's assets will be allocated.

"**LLC Agreement**" means the Limited Liability Company Agreement of the Company, as amended, a copy of which is attached as Exhibit F.

"**Net Asset Value ("NAV")**" shall be determined as of each Valuation Date. The NAV of the Company ("Company NAV"), and/or a Series ("Series NAV") is the net assets of the Company, and/or the Series (as the case may be) as of the close of business on the Valuation Date, determined in accordance with Section 5.02 of the LLC Agreement4. Net assets of the Company and of each Series (as the case may be) are its assets minus its liabilities, as set forth more fully in Section 5.01 of the LLC Agreement. The NAV of each Series of Class A Interests is comprised of two components: (i) the NAV of 100% of the specific basket of principal protection securities within the Company's Investment Grade Portfolio that were purchased in respect of the relevant Series and are specifically referable to such Series; and (ii) the NAV of such Series' pro rata portion of the Company's Commodity Portfolio, referable to such Series. Each Series' pro rata portion of the Company's Commodity Portfolio is based upon the amount of such Series' assets that were allocated to the Commodity Portfolio by the Manager. The assets referable to each Class B Interest will consist of such Interest's pro rata portion of the Company's Commodity Portfolio. Series NAV includes the Series' share of Company NAV not associated with a particular Series. The increases and decreases in NAV for each Accounting Period shall be measured by reference to the NAV of the Company or the Series, as the case may be as of the Valuation Date for that Accounting Period and as of the Valuation Date for the preceding Accounting Period. The NAV of the Company, or any Series as of any Valuation Date means the value of the Company's, or the Series' (as the case may be) assets (determined under Section 5.02 of the LLC Agreement) minus its liabilities, determined as of the close of business on that Valuation Date.

"**Net Capital Appreciation**", with respect to any Accounting Period, shall mean the excess, if any, of the Ending Value over the Beginning Value.

"**Net Capital Depreciation**", with respect to any Accounting Period, shall mean the excess, if any, of the Beginning Value over the Ending Value.

"**Net New Profits**" means, with respect to a Member for any calendar quarter, the amount by which such Member's Capital Account at the end of such calendar quarter exceeds the Capital Account's High Water Mark. If a Member has more than one Capital Account because such Member has made multiple capital contributions to the Company or because the Member holds both Class A and Class B Interests, Net New Profits will be calculated separately for each Capital Account.

"**Series**" means a designated Series of Class A Interests established hereunder. A Series may differ in any respects from other Series, such as the payment of different fees or investment in different assets. Separate and distinct records shall be maintained for each Series of the Class A Interests created and the Company shall hold and account for the assets belonging to each Class A Series separately from Company property and the assets belonging or referable to any other Class or Series.

2

"**Series Percentage**" means with respect to each Series and each Accounting Period, a fraction (expressed as a percentage) where the numerator is the NAV of the Capital Account attributable to the Series at the start of the Accounting Period and the denominator is the sum of the NAV of all Capital Accounts attributable to the Series at that time. For purposes of calculating Series Percentage, accrued Incentive Allocations will not reduce the NAV of a Capital Account until the actual reallocation takes place.

"**Valuation Date**" means with respect to any Accounting Period, the last day of the Accounting Period.

## INVESTMENT OVERVIEW

The following is a brief overview of the Offering. This Memorandum and the LLC Agreement should be reviewed in their entirety prior to deciding whether to invest in the Fund, and the following overview is qualified in its entirety by reference to the detailed information appearing elsewhere in this Memorandum and the LLC Agreement.

| The Fund and Investment Objectives | Wexford Principal Protected Fund I, LLC (the "Fund") is a Delaware limited liability company organized in March 2006 that seeks: (i) capital <u>preservation</u> in order to have a net asset value on the Maturity Date at least equal to your original investment; and (2) capital <u>appreciation</u> through an investment in a diverse group of exchange traded futures and options contracts as well as the spot currency ("Forex") markets. Investors in the Fund will be Class A Members holding Class A Interests in the Fund. The Fund, in turn, will invest in the Investment Grade Portfolio and Commodity Portfolio.<br><br>Each Class A Member's Capital Contribution to the Company will be allocated among the Company's Investment Grade Portfolio and the Commodity Portfolio. The proportion of each Class A Member's Capital Contribution allocated to the Investment Grade Portfolio and the Commodity Portfolio will be determined by the Manager and will be dependent on interest rates at the time of investment, and different Class A Members may have significantly different ratios of their Capital Contribution allocated to the Company's Investment Grade Portfolio and Commodity Portfolio. Consequently, it is anticipated that Class A Members will experience different rates of return, depending upon the amount of their Capital Contribution that is allocated to the Commodity Portfolio.<br><br>The Fund may be an appropriate investment for you if you:<br><br>• Have an investment horizon of at least seven years, meet suitability tests and are trying to achieve appropriate risk adjusted rates of return associated with investments in commodities and financial futures<br>• Seek potential for capital appreciation while at the same time substantially limiting the risk to contributed or invested capital<br>• Want a professionally managed and diversified portfolio of commodity and financial futures related securities<br>• Are seeking an investment with historically low correlations to equities and bonds |

| | |
|---|---|
| | • Are seeking access to a group of complimentary CTAs with consistent above average historical performance that are normally closed to new investors |
| The Manager | Wexford Commodity Managers, LLC (the "Manager") is the manager of the Fund (Commodity Portfolio and Investment Grade Portfolio) and is also the Commodity Pool Operator (the "CPO"). The manager of the Manager is WexTrust Capital, LLC ("WexTrust Capital"). The Manager is registered with the U.S. Commodity Futures Trading Commission (the "CFTC") as a CPO and is a member of the National Futures Association (the "NFA"). The Manager shall determine the allocation of the Company's assets among the Investment Grade Portfolio and the Commodity Portfolio. |
| Total Offering | The Company is offering Class A Interests on a continuous basis at $250,000 each (the "Offering"), subject to the Manager's discretion to accept subscriptions for lesser amounts. The Offering will not be consummated unless subscriptions for $20,000,000 of the Class A Interests (the "Minimum Offering") are subscribed for prior to the close of business on December 31, 2006. Should the Minimum Offering be subscribed and paid for prior to such date, there will be partial closings of the Offering thereafter. <br><br> New Class A Members will be admitted on a monthly basis as of the first business day of each calendar month or at such other times as the Manager, in its sole discretion, shall determine. Once a Class A Member is admitted to the Company, such Member can add to his, her or its existing investment each month (or otherwise as permitted by the Manager in its sole discretion) in $50,000 increments. <br> In connection with the Offering, the Manager reserves the right, in its sole discretion, to reject any subscription in whole, or in part, or to allot any prospective investor less than the number of Class A Interests applied for by such investor. <br><br> In addition, the Company is limiting the number of Class A Interests held by benefit plan investors (employee benefit plans, IRAs, 401(k) plans, etc.) to less than 25% of the total Class A Interests in the Company at any time (the "25% Ownership Limitation") to avoid having the underlying assets of the Company be deemed to be "plan assets" for purposes of the Employment Retirement Income Security Act of 1974 ("ERISA"). |
| Use of Offering Proceeds | Substantially all of the proceeds from the sale of Class A Interests will be allocated to the Investment Grade Portfolio and the Commodity Portfolio. |
| Interests Offered | A portion of the Capital Contributions with respect to each Class A Interest purchased will be allocated to the Investment Grade Portfolio and will be represented by a Series of Class A Interests. All investors admitted at the same time will receive the same Series. The balance of the Capital Contributions will be allocated to the Commodity Portfolio. <br><br> The Class A Interests are being offered for sale on a "best efforts" basis by WexTrust Securities, LLC, an affiliate of the Company (the "Selling Agent") and, possibly, other broker-dealers (the "Participating Dealers") who are members of the National Association of Securities Dealers, Inc. (the "NASD"). The Company will pay the |

4

|  | Selling Agent selling commissions of up to 3% of the equity raised through its efforts. The Selling Agent may reallow to Participating Dealers the full commission on Class A Interests they sell.  Under limited circumstances, the amount Participant Dealers receive from the Selling Agent may vary based on individual negotiations.  Factors to be considered in such negotiations may include volume discounts, institutional purchases and a particular Participating Dealer's selling and due diligence expenses. See "Terms of the Offering of Securities/Description of the Securities." |
|---|---|
| Maturity Date | Each Class A Interest will mature on the seventh anniversary of the date the Fund acquired securities in the Investment Grade Portfolio with respect to such Class A Interests (the "Maturity Date"). |
| Capital Additions and Withdrawals | Additions:  Class A Members may acquire additional Class A Interests in the Fund in increments of $50,000 during any month effective at the beginning of the following month, subject to the Manager's prior consent.<br><br>Voluntary Withdrawals: Investors generally may withdraw all or any portion of their Capital Account in the Fund, as of the end of any calendar month, on 20 calendar days' written notice to the Manager, paid by the Manager within 50 days of receiving written notice.  No withdrawal fee or penalty will be assessed.  However, if an investor makes a withdrawal within six months on his initial investment (except distributions, if applicable), the investor will receive his withdrawal based on the current NAV less any sales commissions paid out.  All withdrawals will be funded from the Class A Member's Investment Grade Portfolio component of their Capital Account, until such time as this component of their Capital Account is reduced to zero.  Thereafter, redemption proceeds will be funded from the Class A Member's allocable portion of the Commodity Portfolio.<br><br>Withdrawal Limitations: Not withstanding the above, if liquidity is non-existent in the Commodity Portfolio (it is fully invested) at the time of the Class A Member's withdrawal request, the request may be delayed by the Manager until such time that such withdrawal request does not negatively impact any open trading positions affecting other Class A Members.<br><br>Required Withdrawals:  The Manager may, in its sole discretion, require a Class A Member's mandatory withdrawal from the Fund (in whole or in part) for any reason upon at least 48 hours' prior written notice.  The Manager intends to exercise this right at any time that the 25% Ownership Limitation described above is exceeded in order to bring the Fund into compliance with these limitations.  Investors should be aware that at any time that their Capital Account, in the opinion of the Manager, becomes too small to continue investing activities, their Capital Account(s) will be subject to a compulsory withdrawal. |
| Suspension of Capital Withdrawal Rights | Investors' capital withdrawal rights will be automatically suspended if the Manager suspends its determination of the Fund's NAV as of a withdrawal date, or during market emergencies.  In that case, withdrawal rights will be reinstated immediately after the Manager resumes the determination of the Fund's NAV. |

5

| | |
|---|---|
| Distributions | The Fund will make distributions to Class A Members at such time and in such amounts as the Manager shall determine.<br><br>Class A Members may elect to reinvest their distributions. If this option is chosen, a Class A Member's distributions will be reinvested in the Commodity Portfolio for continued trading. Class A Members who elect to reinvest their distributions will still be able to withdraw money from their Capital Accounts at their discretion. |
| Compensation to the Manager | The Fund will pay the Manager a monthly management fee, payable in advance, equal to 1/12th of 2% of the Fund's NAV as of the beginning of each month (2% on an annual basis). The Manager will also receive an Incentive Allocation of 20% of the net new profits allocated to the Capital Accounts of the investors. The Manager and its affiliates will also, however, be entitled to receive additional compensation for any other services provided to the Fund. The Fund will reimburse the Manager for any out-of-pocket expenses incurred on behalf of the Fund. See "Expenses, Fees and Performance Allocation." |
| Compensation to the CTAs | It is currently anticipated that the CTAs utilized by the Fund will individually negotiate a monthly management fee, to be paid on a quarterly basis, and a performance fee based on net new trading profits to be paid semi-annually with the Manager. Although some CTAs may receive higher or lower management and performance fees, the average fees paid to the consolidated group of CTAs may not be greater than 2% and 20%, respectively. |
| Limited Liability | Class A Members will not be liable for any of the debts or obligations of the Fund, or be required to contribute any additional capital or lend any funds to the Fund beyond their principal. Each investment placed with a CTA will be placed through Wexford Commodity Holdings, LLC, a newly formed limited liability company with no other assets other than the amounts invested in order to protect the Fund from any additional liability. |
| Syndication Costs | The Class A Interests are being offered in transactions which the Manager believes to be exempt from registration requirements under federal and state securities laws where the Class A Interests are to be offered. The Manager will offer the Class A Interests on a "best efforts" basis. No commissions or other remuneration will be paid to the Manager in connection with the sale of the Class A Interests. The Class A Interests may be sold by licensed broker-dealers retained to promote the Offering, which third parties may be paid a percentage of the equity raised for the Offering through the efforts of such third parties. The fee may not exceed 3% of the amounts raised. The Manager will advance funds necessary to cover due diligence costs and other Company organization expenses, not to exceed 1% of the amounts raised. Such expenses shall be reimbursed to the Manager once the proceeds from the Offering have been raised. The Manager may, at its discretion and by separate agreement, adjust existing or add new terms to this Offering for particular potential investors. |
| Status of The Fund | The Fund is a Delaware limited liability company. The Fund is in good standing in the state of Delaware and will have perpetual duration, unless terminated pursuant to the terms described in the LLC Agreement. |

| Tax Penalties | The information with respect to the tax aspects of the Offering was not intended or written to be used, and it cannot be used, by any Class A Member or any other person for the purpose of avoiding penalties that may be imposed under the Internal Revenue Code. The information was written to support to the promotion or marketing of this transaction, and each prospective purchaser should seek advice based on such purchaser's particular circumstances from an independent tax advisor. |
|---|---|

## DISCLOSURES AND DISCLAIMERS

THE CLASS A INTERESTS HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR ANY STATE SECURITIES LAW AND ARE BEING OFFERED AND SOLD IN RELIANCE UPON EXEMPTION PROVISIONS CONTAINED THEREIN.    THE CLASS A INTERESTS HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION (THE "SEC") OR ANY STATE SECURITIES COMMISSION NOR HAS THE SEC OR ANY STATE SECURITIES COMMISSION PASSED UPON OR ENDORSED THE MERITS OF THIS OFFERING OR THE ACCURACY OR ADEQUACY OF THIS MEMORANDUM.    ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

PURSUANT TO AN EXEMPTION FROM THE U.S. COMMODITY FUTURES TRADING COMMISSION IN CONNECTION WITH POOLS WHOSE PARTICIPANTS ARE LIMITED TO QUALIFIED ELIGIBLE PERSONS, AN OFFERING MEMORANDUM FOR THIS POOL IS NOT REQUIRED TO BE, AND HAS NOT BEEN, FILED WITH THE COMMISSION.    THE U.S. COMMODITY FUTURES TRADING COMMISSION DOES NOT PASS UPON THE MERITS OF PARTICIPATING IN A POOL OR UPON THE ADEQUACY OR ACCURACY OF AN OFFERING MEMORANDUM.    CONSEQUENTLY, THE U.S. COMMODITY FUTURES TRADING COMMISSION HAS NOT REVIEWED OR APPROVED THIS OFFERING OR ANY OFFERING MEMORANDUM FOR THIS POOL.

THIS OFFERING INVOLVES A HIGH DEGREE OF RISK (see "RISK FACTORS") AND IS SUBJECT TO VARIOUS CONFLICTS OF INTEREST ARISING OUT OF THE RELATIONSHIPS BETWEEN THE FUND AND THE MANAGER AND THEIR AFFILIATES (see "CONFLICTS OF INTEREST"). MATERIAL INCOME TAX RISKS ARE ASSOCIATED WITH THIS OFFERING.

NO PUBLIC MARKET FOR THE CLASS A INTERESTS WILL DEVELOP AND ARE SUBJECT TO RESTRICTIONS ON TRANSFERABILITY AND RESALE AND MAY NOT BE TRANSFERRED OR RESOLD EXCEPT AS PERMITTED UNDER THE SECURITIES ACT, AND THE APPLICABLE STATE SECURITIES LAWS, PURSUANT TO REGISTRATION OR EXEMPTION THEREFROM..    THIS OFFERING IS SUITABLE ONLY FOR PERSONS OF ADEQUATE MEANS WHO HAVE NO NEED FOR LIQUIDITY IN THEIR INVESTMENT SINCE THE CLASS A INTERESTS MAY NOT BE SOLD UNLESS, AMONG OTHER THINGS, THEY ARE SUBSEQUENTLY REGISTERED UNDER THE SECURITIES ACT OR AN EXEMPTION FROM SUCH REGISTRATION IS AVAILABLE.

IN MAKING AN INVESTMENT DECISION, INVESTORS MUST RELY ON THEIR OWN EXAMINATION OF THE FUND AND THE MANAGER AND THE TERMS OF THE OFFERING, INCLUDING THE MERITS AND RISKS INVOLVED.  THESE SECURITIES HAVE NOT BEEN

7

RECOMMENDED BY ANY FEDERAL OR STATE SECURITIES COMMISSION OR REGULATORY AUTHORITY. FURTHERMORE, NO SUCH AUTHORITY HAS CONFIRMED THE ACCURACY OR DETERMINED THE ADEQUACY OF THIS DOCUMENT. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

ANY FORECASTS CONTAINED IN THIS MEMORANDUM ARE BASED ON ASSUMPTIONS AND HYPOTHESES WHICH ARE SUBJECT TO SUBSTANTIAL CONTINGENCIES OVER WHICH THE FUND HAS LITTLE OR NO CONTROL. FURTHERMORE, THERE WILL USUALLY BE DIFFERENCES BETWEEN FORECASTED AND ACTUAL RESULTS BECAUSE SOME OF THESE ASSUMPTIONS MAY PROVE TO BE INCORRECT, AND SUCH DIFFERENCES MAY BE MATERIAL. FUTURE OPERATING RESULTS ARE IMPOSSIBLE TO PREDICT AND NO WARRANTY OF ANY KIND IS MADE RESPECTING THE FUTURE ACCURACY OR COMPLETENESS OF THE FORECASTS.

NO PERSON HAS BEEN AUTHORIZED TO MAKE ANY REPRESENTATIONS, OR FURNISH ANY INFORMATION, WITH RESPECT TO THE FUND AND THE CLASS A INTERESTS, OTHER THAN THE REPRESENTATIONS AND INFORMATION SET FORTH IN THIS MEMORANDUM. PROSPECTIVE INVESTORS ARE NOT TO CONSTRUE THE CONTENTS OF THIS MEMORANDUM AS LEGAL, INVESTMENT OR TAX ADVICE. EACH INVESTOR IS ENCOURAGED TO CONSULT HIS, HER OR ITS ATTORNEY AND TAX ADVISOR AND TO MAKE SUCH DETAILED INVESTIGATION OF THE PROPOSED INVESTMENT AS THAT PROSPECTIVE INVESTOR DEEMS NECESSARY. THE FUND WILL PROVIDE ANY REASONABLE INFORMATION TO ANY PROSPECTIVE INVESTOR OR HIS, HER OR ITS REPRESENTATIVES. THE FUND HAS AGREED TO MAKE AVAILABLE TO EACH INVESTOR PRIOR TO SUBSCRIPTION THE OPPORTUNITY TO ASK QUESTIONS AND RECEIVE ANSWERS CONCERNING THE TERMS AND CONDITIONS OF THE OFFERING.

REFERENCE SHOULD BE MADE TO THE FORM OF LIMITED LIABILITY COMPANY AGREEMENT (THE "LLC AGREEMENT") ATTACHED AS AN EXHIBIT TO THIS MEMORANDUM FOR COMPLETE INFORMATION CONCERNING THE RIGHTS AND OBLIGATIONS OF THE PARTIES. CAPITALIZED TERMS USED IN THIS MEMORANDUM WHICH ARE NOT DEFINED HEREIN SHALL HAVE THE MEANINGS SET FORTH IN THE LLC AGREEMENT. THIS MEMORANDUM CONTAINS SUMMARIES, BELIEVED TO BE ACCURATE, OF CERTAIN PROVISIONS OF THAT AGREEMENT AND OTHER AGREEMENTS, BUT IT SHOULD NOT BE ASSUMED THAT THE SUMMARIES ARE COMPLETE. ACCORDINGLY, REFERENCES ARE MADE TO THE ACTUAL DOCUMENTS WHICH MAY BE OBTAINED FROM THE MANAGER FOR A THOROUGH UNDERSTANDING OF THIS TRANSACTION. ALL SUCH SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY BY THE ACTUAL DOCUMENTS.

THIS MEMORANDUM HAS BEEN PREPARED SOLELY FOR THE BENEFIT OF INVESTORS INTERESTED IN THE CLASS A INTERESTS. DISTRIBUTION OF THIS MEMORANDUM TO ANY PERSON OTHER THAN THE OFFEREE AND THOSE PERSONS RETAINED TO ADVISE THE OFFEREE IS UNAUTHORIZED, AND ANY REPRODUCTION OF THIS MEMORANDUM, IN WHOLE OR IN PART, OR THE DIVULGENCE OF ANY OF ITS CONTENTS WITHOUT THE PRIOR WRITTEN CONSENT OF THE MANAGER IS PROHIBITED.

THE OFFEREE, BY ACCEPTING DELIVERY OF THIS MEMORANDUM, AGREES TO RETURN IT AND ALL RELATED EXHIBITS AND OTHER DOCUMENTS TO THE MANAGER IF

THE OFFEREE DOES NOT INTEND TO SUBSCRIBE FOR THE PURCHASE OF THE CLASS A INTERESTS, THE OFFEREE'S SUBSCRIPTION IS NOT ACCEPTED, OR THE OFFERING IS TERMINATED.

## INVESTOR SUITABILITY

See Exhibit A.

## HISTORIC HYPOTHETICAL RETURNS

An investment in the Fund, if invested in the year 2000 with assumed Bi-annual Distributions, would have resulted in a combined average annual return on cash of 24.58% and a combined average annual return of 60.03% with 100% reinvestment only (no distributions), based on the actual performance of the CTA's and the principal protected component as described herein from January 2000 to July 2006. See Exhibit B for a complete description of CTAs and Exhibit C for Fund Performance and Analysis with detailed charts and explanations.

## EXPENSES, FEES AND PERFORMANCE ALLOCATION

### FUND LEVEL

*Organizational and Offering Expenses*

The Fund will bear its organizational and offering expenses. Organizational and offering expenses will include legal, syndication, consulting, administrative, printing, and other expenses necessary or desirable to organize the Fund and offer the Interests.

*Management Fee*

The Fund will pay the Manager a monthly management fee, payable in advance, equal to 1/12 of 2% of the Fund's NAV as of the beginning of each month (2% on an annual basis).

*Incentive Allocation*

The Fund will make an annual incentive allocation to the Manager equal to 20% of net new profits allocated to each investor's Capital Account in the Fund for any calendar year.

*Other Expenses*

The Class A Interests will directly bear all of the transactions costs associated with trading and investing the assets allocated to the Fund, such as brokerage commissions and related transaction and exchange fees. The Fund will also bear its ongoing operating expenses, such as administrative and analyst salaries, legal, audit, accounting, blue sky, regulatory and registration fees, and postage, up to a maximum of 50 basis points of the Fund's NAV per annum. The Manager will pay any Fund operating expenses that exceed 50 basis points of the Fund's NAV. For purposes of this cap on the Fund's expenses, the Fund's operating expenses will include the Fund's pro rata portion of the Fund's ongoing

9

operating expenses. In addition, as an investor in the Fund, the Fund will bear, indirectly, its pro rata share of the Fund's expenses. These expenses are described in more detail below.

## COMMODITY PORTFOLIO LEVEL

### CTAs' Fees

It is currently anticipated that the CTAs utilized by the Fund will individually negotiate a monthly management fee, to be paid on a quarterly basis, and a performance fee based on net new trading profits to be paid semi-annually with the Manager. Although some CTAs may receive higher or lower management and performance fees, the average fees paid to the consolidated group of CTAs may not be greater than 2% and 20%, respectively. Because these performance fees will be payable on each CTA's separate performance rather than on the performance of the Commodity Portfolio (or the Fund) as a whole, the Commodity Portfolio (and consequently, the Fund and its investors) may make performance fee payments to some CTAs with respect to periods in which the Commodity Portfolio (or the Fund) as a whole experiences a loss. The performance fees paid to the CTAs will be paid on the basis of trading profits above a High Water Mark and determined on a calendar month basis, calculated after subtraction of brokerage commissions accrued and, in the case of managed accounts, without including interest income. The High Water mark requires that CTAs must recover any incurred trading losses before receiving an incentive fee. Once paid, the CTAs' performance fees will not be repaid to the Fund, irrespective of subsequent losses incurred by the Fund with respect to assets allocated to the CTAs. To limit or mitigate the risk associated with the timing of the payment of the performance fees to the CTAs, as stated above, the Fund will limit the payment of performance fees to semi-annual or annual payments for the majority of the CTAs utilized. The Fund will pay all management fees charged by the CTAs as an operating expense.

### Other Expenses

The Commodity Portfolio will be subject to brokerage commissions and related transaction and exchange fees incurred by CTAs to whom the Fund's assets are allocated. The Fund will also bear its own ongoing operating expenses, such as legal, audit, administration and Directors' fees. As described above in the description of the Fund's expenses, the Fund's pro rata share of the Fund's operating expenses will be combined with the Fund's ongoing operating expenses, and the combined amount will be subject to the annual cap of 50 basis points of the Fund's NAV.

## RISK FACTORS

AN INVESTMENT IN THE FUND INVOLVES A NUMBER OF SIGNIFICANT RISK FACTORS. IN ADDITION TO THOSE FACTORS SET FORTH ELSEWHERE, SUBSCRIBERS SHOULD CAREFULLY CONSIDER THE FOLLOWING ELEMENTS OF RISK INHERENT IN THE CLASS A INTERESTS BEING OFFERED. SUBSCRIBERS ARE URGED TO CONSULT THEIR OWN TAX AND FINANCIAL COUNSEL IN RELATION TO THIS OFFERING.

### MARKET-RELATED RISKS

#### Strategy Risk

The primary risks of an investment in the Fund are those generally attributable to investing in commodities and bonds. The success of the Fund's strategy depends on the Manager's ability to allocate

10

assets between the Commodity Portfolio and the Investment Grade Portfolio and in the selection of investments and CTAs.

### Principal Protection

Although the Fund will seek to protect the initial principal value of the Fund's Class A Interests at their respective Maturity Dates by investing a portion of the proceeds of the Offering in U.S. government and investment grade securities, the value of the Class A Interests may fluctuate and may decline below the original principal values. It is possible to realize a loss with respect to your investment if you withdraw capital prior to the Maturity Date.

### Investment Risks

The commodities markets are speculative, prices are volatile and market movements are difficult to predict. Supply and demand for commodities change rapidly and are affected by a variety of factors, including interest rates, merger activities and general trends in the overall economy or particular industrial or other economic sectors. Government actions, especially those of the U.S. Federal Reserve Board, have a profound effect on interest rates, which affect the price of commodities. In addition, a variety of other factors that are inherently difficult to predict such as domestic and international political developments, governmental trade and fiscal policies, patterns of trade and war or other military conflict can also have significant effects on the markets. The Fund may have only limited ability to vary its investment portfolio in response to changing economic, financial and investment conditions. Those risks may be enhanced significantly by the concentration of the Fund's investments, its consequent lack of diversification and the potential that creates for volatility. No assurance can be given as to when or whether adverse events might occur that could cause significant and immediate loss in the Fund's NAV. Even in the absence of such events, trading commodities can quickly lead to large losses. Such trading losses could sharply reduce the net asset value of the Fund and its shares, and consequently, the value of the Class A Interests.

### Commodity and Forex Prices Are Volatile

The purchase and sale of commodity futures contracts and Forex instruments is generally subject to high risk. Price movements of commodities and Forex instruments are caused by many unpredictable factors such as general economic and financial conditions, governmental policies, national and international political and economic events, and technical trading factors. The foregoing factors may cause commodity prices and/or Forex to be highly volatile which may increase the risk of loss.

### Trading Is Speculative and Volatile

Futures and Forex prices are highly volatile. Price movements for such instruments are influenced by, among other things: changing supply and demand relationships; weather, agricultural, trade, fiscal, monetary, and exchange control programs and policies of governments; U.S. and foreign political and economic events and policies; changes in national and international interest rates and rates of inflation; currency devaluations and revaluations; and emotions of the marketplace. None of these factors can be controlled by the Manager or the CTAs. The Fund and the CTAs will trade in these markets on purely speculative basis. No assurance can be given that the Manager's allocation of assets to the CTAs on behalf of the Commodity Portfolio will result in profitable trades for the Commodity Portfolio or that the Commodity Portfolio (and the Fund) will not incur substantial losses. Although the Manager intends

11

to allocate The Fund's assets primarily to CTAs that have had successful track records, past performance is not necessarily indicative of future results.

*Lack of Liquidity*

Some futures contracts are subject to either daily price limitations or circuit breakers, which mean that the exchanges have prohibited or slowed the trading of futures contracts if the price fluctuates by a certain amount. If this occurs, it may be impossible to liquidate a position. Futures prices have occasionally moved the daily limit for several consecutive days with little or no trading. Similar occurrences in markets in which the CTAs may hold positions on behalf of the Fund at that time could prevent the Fund from promptly liquidating unfavorable positions and subject it to substantial losses. Daily limits may reduce liquidity, but they do not limit ultimate losses, as such limits apply only on a day-to-day basis. In addition, even if contract prices have not moved the daily limit, the CTAs may not be able to execute trades at favorable prices if there is only light trading in the contracts involved.

*Leverage*

A futures position can be established with margin that is typically about 5% of the total value of the futures contract. Thus, a small movement in the price of the underlying commodity can result in a substantial price movement relative to the margin deposit and may result in immediate and substantial gains or losses to the Commodity Portfolio and the Fund. Although the use of leverage can substantially improve the return on invested capital, it may also increase any losses which the Fund may experience, and it is possible that the Commodity Portfolio could lose most or all of its capital due to the effects of leverage combined with price volatility.

*Forex Markets Are Highly Leveraged*

A Forex position can be established with margin that is typically about 5% of the total value of the contract. Thus, a small movement in the price of the underlying currency can result in a substantial price movement relative to the margin deposit and may result in immediate and substantial gains or losses to the Commodity Portfolio and the Fund. Although the use of leverage can substantially improve the return on invested capital, it may also increase any losses which the Fund may experience, and it is possible that the Commodity Portfolio could lose most or all of its capital due to the effects of leverage combined with price volatility.

*Speculative Position Limits*

The CFTC and the commodity exchanges have established limits on the maximum net long or net shorts futures positions which any person or group of persons acting together may hold or control. Any commodity accounts owned or managed by a CTA or its principals, including the Commodity Portfolio's accounts, must be combined for position limit purposes. The Manager believes that the current limits will not adversely affect the Commodity Portfolio's trading. However, it is possible that the CTAs' trading decisions may have to be modified and positions held by the Fund may have to be liquidated in order to avoid exceeding such limits.

12

*Counterparty Creditworthiness*

The Fund could be unable to recover assets held at the commodity broker, even assets directly traceable to the Fund from the commodity broker in the event of a bankruptcy of the commodity broker. Although futures commission merchants are required to segregate customer funds pursuant to the U.S. Commodity Exchange Act (the "CEA"), in the unlikely event of the commodity broker's bankruptcy, there is no equivalent of the Securities Investors Protection Corporation insurance as is applicable in the case of securities broker dealers' bankruptcies.

*Trading of Options*

Options trading is a part of the trading strategies of several of the CTAs to whom the Manager is currently considering allocating the Fund's assets. The Manager believes that a well-balanced portfolio blend must have options as part of the allocation. Each option on a commodity futures contract or physical commodity is a right, purchased for a certain price, to either buy or sell a commodity futures contract or physical commodity during a certain period of time for a fixed price. Although successful commodity options trading requires many of the same skills as does successful commodity futures trading, the risks involved are somewhat different. For example, if the Commodity Portfolio buys an option (either to sell or purchase a futures contract or commodity), it will pay a "premium" representing the market value of the option. Unless the price of the futures contract or commodity underlying the options changes and it becomes profitable to exercise or offset the option before it expires, the Commodity Portfolio's account may lose the entire amount of such premium. Conversely, if the Commodity Portfolio sells an option (either to sell or purchase a futures contract or commodity) it will be credited with the premium but will have to deposit margin due to its contingent liability to take or deliver the futures contract or commodity underlying the option in the event the option is exercised. Sellers of options are subject to the entire loss which occurs in the underlying futures position or underlying commodity (less any premium received). The ability to trade in or exercise options may be restricted in the event that trading on U.S. commodity exchanges is restricted by both the CFTC and such exchanges.

*Trading on Non-U.S. Exchanges Presents Certain Risks.*

The CTAs may trade commodity interests on exchanges located outside the U.S., where the protections provided by CFTC regulations do not apply. Although the CFTC is not involved, there are foreign regulating bodies that govern the trading of non-U.S. traded products. Some non-U.S. commodity exchanges, in contrast to U.S. exchanges, are "principals' markets" in which performance is the responsibility only of the individual member with whom the trader has entered into the contract and not of the exchange or its clearinghouse, if any. In the case of trading by one or more CTAs on non-U.S. exchanges, the Commodity Portfolio is subject to the risk that its counter parties will be unable or refuse to perform their contracts with the Commodity Portfolio. Also, the Commodity Portfolio may not have the same access to certain trades as do various other participants in non-U.S. markets. As the Manager will determine its NAV in U.S. Dollars, the Commodity Portfolio's trades on non-U.S. markets will be subject to the risk of fluctuation in the exchange rate between the local currency and U.S. Dollars and to the possibility of exchange controls.

*Currency and Exchange Rate Risks*

The Commodity Portfolio may invest in commodities denominated or quoted in currencies other than the U.S. Dollar. Changes in currency exchange rates therefore may affect the NAV and the

13

unrealized appreciation or depreciation of investments. Further, the Commodity Portfolio may incur higher brokerage commissions in connection with conversions between currencies, as brokers are subject to risks during the conversion process. The CTAs may seek to protect the value of some portion or all of the Commodity Portfolio's holdings against currency risks by engaging in hedging transaction, if available, cost-effective and practicable. The CTAs may enter into forward contracts on currencies as well as purchase put and call options on currencies on behalf of the Commodity Portfolio. There is no certainty that instruments suitable for hedging currency shifts will be available at the time when the CTAs wish to use them or that, even if available, the CTAs will elect to utilize a hedging strategy.

### Certain Risks Peculiar to Forward Trading

The CTAs may enter directly or indirectly into forward contracts for the trading of certain commodities, such as currencies and precious metals with banks, currency and precious metals dealers, and counter parties. A forward contract is similar to a futures contract in that they both are contractual obligations to buy or sell a specified quantity of a commodity at or before a specified date in the future at a specified price. However, forward contracts generally are unregulated and banks and dealers act as principals in such markets. The principals who deal in the forward contract market are not required to continue to make markets in such contracts. There have been periods during which certain participants in forward markets have refused to quote prices for forward contracts or have quoted prices with an unusually wide spread between the price at which they are prepared to buy and that at which they are prepared to sell. The Fund will absorb the "bid-ask" spread incorporated into the price of forward contracts.

### The Fund's Spread Trading and Arbitrage Trading May Involve Potential Risks

A part of the CTAs' investment operations may involve spread positions between two or more positions. To the extent the price relationships between such positions remain constant, no gain or loss on the positions will occur. Such positions, however, do entail a substantial risk that the price differential could change unfavorably causing a loss to the spread position. The CTAs' trading operations also may involve arbitraging between two commodities. This means, for example, that the CTAs may purchase (or sell) commodities (i.e., on a current basis) and take offsetting positions in options in the same or related commodities on behalf of the Commodity Portfolio. To the extent the price relationships between such positions remain constant, no gain or loss on the positions will occur. These offsetting positions entail substantial risk that the price differential could change unfavorably causing a loss to the position.

### Active Trading

The CTA's trading activities on behalf of the Commodity Portfolio are expected to involve substantial portfolio turnover and correspondingly high transactional costs.

### Competition

The Commodity Portfolio will engage in investment and trading activities that are highly competitive with other investment and trading programs. The Commodity Portfolio will compete for trades with mutual funds, investment banks, broker/dealers, commercial banks, insurance companies, pension funds and other financial institutions, all of which may have investment objectives similar to the Commodity Portfolio's and substantially greater resources or experience than the Commodity Portfolio and the CTAs.

*Limitations of Risk-Defined Strategies*

The risk of leveraged trading and the requirement to make additional margin deposits are generally within defined limits. However, these risks can never be eliminated entirely. Moreover, one side of a "balanced" position may decline in value, requiring additional margin deposits in connection with the financing of a position prior to a market move in the offsetting position. Although the Manager believes that it would be unusual for a situation of this type to persist for any prolonged length of time, the markets in which the CTAs acquire (or dispose of) their positions on behalf of the Fund could move in such fashion for extended periods of time or to a significant degree. Should this occur, the Commodity Portfolio and the Fund could incur substantial losses.

## FUND RELATED RISKS

*Lack of Operating History*

Although principals and affiliates of the Manager have long term operating histories, the Fund is a new entity and thus does not have any performance history for investors to evaluate.

*Lack of Regulation*

The Fund is not registered as an investment company with the SEC, and this offering has not been registered with the SEC, pursuant to an exemption from securities registration provided by the safe-harbor provisions of Regulation D promulgated under the Securities Act of 1933, which is available for offerings that comply with the requirements of Regulation D.

*Liquidity of the Class A Interests*

The liquidity of the Class A Interests is limited. They can be transferred only with the consent of the Manager, which may be withheld. While investors have redemption rights, those rights are subject to various restrictions. For example, redemptions are on a monthly basis, with prior notice. Also, the Fund has discretion to suspend redemption rights in emergency situations, which includes, but is not limited to any period during which the Fund's assets cannot be valued.

*Substantial Expenses*

The Fund is subject to substantial expenses, principally the Manager's management fee and incentive allocation; brokerage commissions and related transaction fees; CTA performance fees; expenses associated with accessing CTAs, if any; the Fund's pro rata share of the Fund's expenses (including interest and brokerage commissions and ongoing operating expenses); and the Fund's ongoing operating expenses such as legal, audit and accounting fees, regardless of whether it realizes any profits. Accordingly, the Fund must earn substantial investment profits to avoid depletion of its assets from these expenses.

Moreover, in the event the Commodity Portfolio's NAV is substantially zero, all Class A Members with assets in their respective Investment Grade Portfolio, could be subject to a greater portion of the Fund's expenses, since the amount by which any expenses or fees (other than the Manager's

15

management fee and incentive allocation) exceed the assets in any Class A Members allocable portion of the Commodity Portfolio would be allocated pro-rata to the Fund's other Members.

Additionally, although it is intended that all of the Fund's fees and expenses be paid out of the assets in Commodity Portfolio, in the event that assets in the Commodity Portfolio are insufficient to pay all fees and expenses, it is possible that creditors of the Fund could make claims against the Investment Grade Portfolio. In additional to various risk management procedures taken by the Manager, the Investment Grade Portfolio is a separate limited liability company and is generally shielded from outside creditor's claims.

*Incentive Allocation*

The Manager's incentive allocation may give it an incentive to invest more aggressively (including using more leverage) than in the absence of an incentive allocation. Although the NAV of the Fund (Investment Grade Portfolio and Commodity Portfolio) will be calculated independently by NAV Consulting, Inc., the Manager has discretion with respect to determining NAV. To the extent the Manager's incentive allocation is based upon increases in the Fund's NAV, the Manager, may have an incentive to cause the Fund's assets to be over-valued. Because the incentive allocation is calculated on the basis of unrealized as well as realized trading gains, an incentive allocation could be earned due to the appreciation in open positions that when eventually liquidated are closed out at realized losses. Moreover, the Fund will make incentive allocations to the Manager on an annual basis. Once an incentive allocation is made, the Manager will retain the allocation regardless of subsequent performance. However, no new incentive allocations will be made until after any previous losses have been recovered.

*Performance Compensation to each CTA is based on a CTA's Individual Performance*

The CTAs' performance-based fees will be based on the individual performance of each CTA, irrespective of the overall performance of the Fund. The fact that the performance-based fees are individually calculated exposes the Fund to the risk of paying a CTA performance compensation during periods when the NAV of the Commodity Portfolio decreases and of having the Commodity Portfolio's (and consequently the Fund's) assets actually depleted by performance-based fee payments.

*Net Asset Value May Be Volatile*

Given the volatile nature of commodity prices, the value of the Fund's shares (and consequently, the Fund's Interests) may also be volatile. Since the Fund requires prior written notice in order to withdraw capital, the net asset value of a Class A Member's Capital Account on the effective withdrawal date (last trading day of the month) may substantially differ from the net asset value of that Capital Account on the date that the withdrawal is requested.

*Reliance on Manager*

The Fund (Commodity Portfolio and Investment Grade Portfolio) will rely upon the techniques and strategies developed by the Manager to make investment, trading and allocation decisions. There can be no assurance that the decisions made by the Manager will produce profits (or not generate losses).

16

*Dependence on Key Personnel*

The Manager is dependent on the services of its key personnel. The loss of their services could make it impossible for the Manager to continue to manage assets for or operate the Fund. In addition, many of the CTAs are generally dependent on the services of a limited number of key personnel. The loss of any key person's services for a CTA could make it extremely difficult or impossible for the CTA to continue to manage the Commodity Portfolio's assets.

*The Commodity Portfolio's Assets May Not Be Diversified*

Although the Manager's allocation strategy generally is diversified, due to each CTA's trading methods and strategies and because the Commodity Portfolio does not impose diversification requirements on its portfolio, the Commodity Portfolio at times may have an unusually high concentration in certain types of positions. Such a lack of diversification could result in significant losses.

*Broad Investment Guidelines*

The Manager has broad discretion in allocating the Fund's assets, including in the particular trading strategies to which the Commodity Portfolio's (and indirectly the Fund's) assets will be allocated and the amount of leverage to be used.

*Valuation of Investment*

The Manager will determine the fair market value of the Fund's assets when a readily available market value does not exist. The value determined by the Manager may not necessarily reflect the liquidation value of such investments. Accordingly, if liquidation of any investment is needed in order to meet redemption requests or margin calls, there is no assurance that the fair market value, as determined by the Manager, or any other value attributed to the investment, will be realized upon disposition. Thus, the Class A Member's Capital Account at any time, including at time of withdrawal, proceeds paid will depend in part on the Company's NAV as determined by the Manager.

*Compulsory Withdrawal*

The Manager may, in its sole discretion at any time, require any Class A Member to withdraw all or any part of his Capital Account upon 48 hours prior written notice to such Class A Member. If the withdrawal results from misrepresentations made in the Fund's Subscription Documents, from the unauthorized transfer of a Class A Interest, a material negative impact to the Fund or the Manager, the effective withdrawal date may be retroactive in the sole discretion of the Manager. Such compulsory withdrawal may create significant adverse tax and/or economic consequences to the investor.

*Limited Rights of Class A Members*

As a Class A Member in the Fund, you will have limited voting and other rights. For example, Class A Members have no right to remove the Manager or to affect the manner in which the Manager invests for the Fund. In addition, the Manager has broad discretion in its management of the Fund's business.

17

*Limitation on Benefit Plan Investors*

The Company is imposing the 25% Ownership Limitation, limiting the number of Interests held by benefit plan investors (employee benefit plans, IRAs, 401(k) plans, etc.) to less than 25% of the total Class A Interests in the Company at any time, to avoid having the underlying assets of the Company be deemed to be "plan assets" for purposes of ERISA. If the Company's underlying assets were deemed to be "plan assets," ERISA would require certain reporting and disclosure with respect to such plan assets, that plan assets be held in trust and that the indicia of ownership of plan assets be maintained within the jurisdiction of district courts of the United States.

*Limited Liability of Manager*

The LLC Agreement limits the liability to which the Manager and its managers, officers, members, employees and agents may be subject vis-à-vis the Fund.

## FUND AND RISK MANAGEMENT

The Manager will take numerous steps to manage the inherent risk involved with trading commodities and futures and with managing funds dispersed across many CTAs. Even though the Fund will initially engage 10-15 of the CTAs shown in Exhibit B, management of the Fund has reserved the right to add, terminate, and/or replace any CTA at such time as it deems necessary.

*Audited Historical Returns*

When possible, the Manager will not allocate funds to CTAs without first receiving third-party audited results from the CTA. If a CTA is emerging and does not have the necessary track record, then it may not be possible to perform an audit. Third-party audits can provide additional transparency for the Manager in selecting CTAs, though audited past performance does not guarantee similar future results.

*Monitoring CTAs*

The Manager and its key officers, along with KJW Asset Management, LLC and John Gilbert of Managed Account Research, Inc., an independent trading advisory firm, will actively monitor each CTA's account to ensure that loss thresholds are not being broken and that general trading methodologies are being upheld.    The Manager will engage three full time portfolio managers with significant experience in commodity related fund management and analysis to assist the Manager with monitoring the CTAs. Employees and agents of the Manager will also make periodic due diligence site visits to the offices of CTAs to monitor trading practices. Through constant, daily monitoring, the Manager expects to minimize unprofitable trading practices. Not withstanding the above, the Manager has the right to replace, at any time, key officers and advisors, including those described herein.

Each CTA will manage an individual account in the name of the Fund. The Fund will establish with its brokers a trading account for each CTA to trade. Through this structure, the Manager will have achieved full trading transparency. Additionally, through the services and products provided by various third parties, the Manager will be able monitor trading and analyze risk in a real-time basis. Because each CTA will trade a separate trading account in the name of the Fund, and since the Fund is the owner of each account, the Fund will have the ability to suspend trading of one CTA without affecting any other activities of the Fund or the trading of other CTAs. In addition, each month each CTA will be reviewed

18

by Managed Account Research, Inc. and KJW Asset Management, LLC. When a CTA begins to show signs that they are not performing to metrics or have violated loss thresholds, the following soft and hard rules of engagement may be elected:

**SOFT**                                                                                  **HARD**

    Constant contact with CTA                                         Suspension
    Getting an understanding of the issues from                       Liquidate the account
    the CTA
    Analyzing market conditions to historical
    data for that CTA
    Reducing trade allocation


    *The following are the data metrics used to analyze each CTA in these scenarios:*

    Monthly returns, Drawdown metrics, Standard Deviation, Semi Deviation, Gain Deviation, Loss Deviation, Sharpe Ratio, Sortino Ratio, Correlation to benchmarks, Correlation to other traders, Monthly Alpha, Annualized Alpha, Beta. See Exhibit E for definitions.

*Diversification*

    The Manager has selected CTAs who trade across a large variety of commodities and futures. The Manager expects that such Commodity Portfolio diversification will protect the Fund against volatility in any one particular market or sector. Rule-based input data as to how the portfolio should be allocated to each market, sector and system will be analyzed using the following metrics:

    Market data (volatility)
- Calculated data (cross-correlation of markets and relative values)
- Relative value of each market's previous performance within the portfolio
- Sector Index Data for volatility metrics and risk/reward metric
- Individual market Index Data for volatility metrics and risk/reward metrics

*Maximum Allowable Drawdown/Incentive Fee Payout Limitation*

    The Manager will establish maximum allowable drawdowns for each individual CTA. The maximum allowable drawdown for each CTA will be based upon that individual CTA's trading style and historical trading losses. Some CTA's trading methodology is inherently more volatile and will require greater allowance for drawdowns and losses. The Manager will actively monitor all CTAs in order to suspend trading if any CTA reaches his maximum drawdown. In addition, management intends to require that most CTAs have restrictions on the payout of incentive fee or profit participation in order to minimize the risk to the Fund. Incentive fee payout restrictions will vary depending upon the CTA.

*Independent Oversight*

    The final aspect of the Fund's risk management strategy is having ongoing third party oversight in the process overall. The monitoring of the CTAs and the performance metrics of the Commodity Portfolio will also be compiled and analyzed by third party firms independent of the Manager. The Fund

19

will initially engage the firms described below. However, management of the Fund has reserved the right to terminate these entities at such time as it determines that their services are no longer required.

*Independent Oversight - Consultants*

1)    *Managed Account Research, Inc.*

John P. Gilbert brings over 20 years of futures trading, investing and management experience to his clientele. He is highly experienced and is well versed in all aspects of the futures industry, from governmental regulation and filing, trading program evaluation, screening and selection to daily operations and risk management of trading programs and strategies. He has traversed all areas of the futures investment business with operational excellence.

Mr. Gilbert has been involved with the futures industry since 1985 after studying Economics at San Diego State University. His professional career began in the derivatives field, specializing in exchange traded options where he encountered risk models and the statistical measures of various investment vehicles. He spent the following 3 years as a principle and partner at an Introducing Broker with over 20 Associated Persons that specialized in commodity and futures trading systems. During the next 7 years, Mr. Gilbert was V.P. and Chief Trader in charge of trading operations of a multi-million dollar foreign exchange trading program that traded G-7 and exotic spot currency markets around the world. In 1999, as S.V.P. in charge of marketing and business development, he created the performance measurement and reporting service called *System Trac*, which enabled clients to screen and track trading systems.

In 2002, Mr. Gilbert partnered with a former derivatives trader to start an alternative investment advisory firm and an offshore hedge fund specializing in the global fixed income and derivative markets, and utilized proprietary arbitrage and derivative strategies in its fund management. The firm has achieved superior risk-adjusted returns through its own funds and various outside programs for its own proprietary capital, institutional and individual clients worldwide. In 2005, Mr. Gilbert opened an Introducing Brokerage, Managed Account Research, Inc. ("MARI") that specializes in managed futures accounts.

MARI is an alternative investment research, advisory and brokerage firm providing both individual and institutional investors with customized Managed Account investment solutions. These solutions expose our investors to top managed account and alternative investment talent, capacity and performance. MARI is committed to industry transparency through the use of online portfolio tools on its proprietary active database of over 250 CTA and Alternative Investment trading programs.

MARI's database and online applications are a suite of managed futures research products and services that provide comprehensive data and performance measurement on over 250 CTA's and their investment programs. Their database provides information, rates of return and assets on a global and extensive range of alternative investments, which includes managed futures investment programs. Additionally, benchmark and proprietary index data is provided to compare the individual programs to industry performance standards.

The proprietary database tracks over 120 fields of qualitative information for each of the investments. The following are some of the fields included:

Performance History of the Managed Program
Assets under Management
Contact Information
Detailed Manager and Program Descriptions
Sector and Trading Style
Markets Traded
Fee Structures

MARI's unique services can be classified into three distinct area of value.

Managed Account Screening & Advertisement
Managed Account Brokerage
Managed Account Monitoring & Reporting

2)    *GlobalRisk Corporation*

GlobalRisk Corporation, formerly Expert Systems Group, Inc., is a premier provider of leading edge risk management and trade support software. Founded in 1991 by Steve Probst, President, the firm is committed to producing quality products and providing leading technological solutions. Their products and services are used by exchanges, banks, broker/dealers, clearing firms and professional traders, in both the U.S. and international markets. They also provide consulting as well as custom software development for risk management and trading related activities. The staff combined has over fifty years of technical and practical experience developing quality software, primarily in the risk management technologies field. GlobalRisk uses are as follows:

- Analyze and manage market, concentration and liquidity event risk for financial institutions and Professional Traders around the globe.
- Provide real-time analysis, including detailed option analytics on Equities, Futures, Fixed Income, Forex, Electricity and OTC products.
- Analyze every instrument traded on every stock and futures exchange everywhere in the world.
- Analyze any size or quantity of positions, including any combination of instruments or asset classes.
- Provide clear and concise risk management reports for quick and intelligent decision making
- Interface with over a dozen back-office systems and ease integration of data from multiple systems and from multiple locations.

3)    *NAV Consulting Inc.*

NAV Consulting was founded in 1991 and is located in Oak Brook, Illinois. Presently, NAV Consulting has more than 250 clients to whom they provide accounting services. The size of the funds managed by these clients is over $30 billion worldwide.

NAV Consulting has more than 14 years of experience servicing the alternative investment fund industry. Net asset value calculation is their core business. Their systems and controls have been developed specifically to meet all the requirements of the industry and its regulators. With a professional

21

qualified staff of 100 involved in fund accounting, reporting, tax and audit support, IT services, web development, and network support, NAV Consulting provides services to different kinds of funds varying by strategies, asset classes, use of derivatives and leverage, sectors and regions.

The experienced staff and superior technology found at their fund servicing centers enable them to attain the standards of excellence required by their clients and investors. NAV Consulting is committed to meet the challenges of a rapidly evolving industry. Their major focus is on helping their clients meet their goals by devising solutions that are unique to each and provide long-term value and a loyal relationship which contribute greatly to their continuing success.

The Fund has engaged NAV Consulting, Inc. ("NAV Consulting") to act as NAV Calculation Agent for the Fund to perform certain accounting, back-office, data processing and related professional services. Pursuant to an agreement entered into between the NAV and the Fund, the NAV will be responsible, under the ultimate supervision of the Manager, for the performance of such services.

In performing its duties, NAV Consulting will be entitled to rely, and generally will rely, on information provided to it by the third parties, including the Manager, and will not be responsible for errors contained in such information received. The agreement with NAV Consulting will be terminable by either party upon 60 days' prior written notice.

The agreement with NAV Consulting will provide that in the absence of gross negligence, willful misconduct or material breach by NAV Consulting, NAV Consulting will not be liable to the Fund or its Members, and will be indemnified by the Fund against liabilities to third parties in connection with the performance of its services. NAV Consulting will not be responsible for any tax basis reporting to Members. NAV Consulting will have no responsibility with respect to the trading activities of the Fund (or the monitoring thereof), the activities of the Manager, the management of the Fund or the accuracy or adequacy of the offering documents. NAV Consulting does not act as an offeror of the Class A Interests or a guarantor of the value thereof.

## INVESTMENT STRATEGY AND METHODOLOGY

*Investment Objectives and Policies*

The Fund's objective is to seek: (1) capital <u>preservation</u> in order to have a net asset value on the Maturity Date at least equal to your original investment; and (2) capital <u>appreciation</u> through an investment in a diverse group of exchange traded futures and options contracts as well as the spot currency ("Forex") markets.

*Investment Grade Portfolio*

The Manager will establish and fund a separate basket of investments that consists of at least U.S. Government and investment grade securities with the goal of reaching a NAV on the Maturity Date at least equal to the Class A Member's original investment.

*Commodity Portfolio*

The Manager will allocate virtually all of the assets in the Commodity Portfolio to the CTAs, pursuant to investment management agreements among the Commodity Portfolio and the respective CTA.

22

The Manager seeks to provide access to high quality CTAs otherwise not available to individual investors, due to reasons of size, access, staffing or other considerations, so as to achieve long-term net returns in excess of the broad market equity indices. The Manager anticipates that its relationships with CTAs who are not generally open to additional clients or are only trading assets on a proprietary basis will give the Fund an additional advantage. The primary endeavor of the Commodity Portfolio is capital appreciation.

## CTA SELECTION METHODOLOGY

The Manager will use a rigorous due diligence process to screen and select CTAs based upon certain qualifications that are particularly important. These characteristics include, but are not limited to:

*Record of Success*

Each CTA must demonstrate that it has achieved levels of net returns for investors that are consistently high and have been sustained over a meaningful period of time. This type of record is generally associated with experienced and knowledgeable money managers that are focused on specific sectors of opportunity and expertise. In choosing a CTA with an established record, the Manager will generally look to choose CTAs with at least a four year track record managing in excess of $40 million.

The Manager will also seek emerging CTAs, reviewing the CTA's background, references, investment philosophy and discipline to maintain their investment philosophy in times of strong performance as well as periods of drawdown. Most often, the emerging CTAs interviewed by the Manager will have a six month to 48 month track record, less than $40 million in assets under management, and often have come from a larger hedge fund complex or a major Wall Street firm as an analyst, proprietary trader or portfolio manager.

The Manager's full methodology behind selecting CTAs is proprietary and confidential. Additionally, the risk management, portfolio balancing, and allocation system employed by the Manager is also proprietary and confidential. However, the general guidelines that make up this methodology can be simply stated as follows:

The Manager's philosophy is that maximizing profits while minimizing volatility and periods of loss is achieved through several diversification systems. The systems are designed to provide overall risk reduction and non-correlated returns by focusing on the following areas:

I.      The markets traded by the CTAs will be divided into four basic sectors:

Foreign Exchange
Interest Rate Related Products (such as Eurodollar Futures, Libor Futures, Treasury Bill Futures)
Global Equity Indices
Commodity Futures

II.     Trading style diversification and trade generation methodology diversification

Trading style by time parameters

     (a)    Day Trading;
     (b)    Short Term;
     (c)    Intermediate Term; and
     (d)    Long Term.

Trading style by methodology

     (a)    Trend Following;
     (b)    Contrarians;
     (c)    Quantitative and Statistical;
     (d)    Technical Analysis;
     (e)    Fundamental Analysis; and
     (f)    Discretionary Traders.

III.    The Manager will continually rebalance the assets of the portfolio among CTAs as well as strategically allocate and de-allocate to CTAs.

It is anticipated that ultimately, the Commodity Portfolio's assets will be allocated among several CTAs across four trading sectors whose trading performance at the Commodity Portfolio level and sector level will be non-correlated to each other due to trading style and trade generation methodology. The Manager believes that this methodology will yield steadier and smoother overall returns. See Appendix D.

## MANAGEMENT OF THE FUND

The Manager of the Fund is Wexford Commodities Managers, LLC. The Manager is registered as a commodity pool operator ("CPO") with the U.S. Commodity Futures Trading Commission (the "CFTC") and is a member of the National Futures Association (the "NFA") in that capacity. The Manager's members are affiliated entities controlled by WexTrust Capital LLC. The principals and key personnel of the Manager are Paul Adrian, Steve Byers, Weldon Turner and Avi Ingber.

KEY OFFICERS AND PRINCIPALS OF WEXFORD PRINCIPAL PROTECTED FUND I, LLC

**Paul J. Adrian**, Fund Manager

Mr. Adrian is a member of both the Allocation Committee as well as the Trading Advisor Selection Committee of the Fund. His responsibilities will be the active daily monitoring of the Fund; identifying, selecting, managing and allocating assets to the individual CTAs that will trade Fund assets, and discovering new talent to be added to the initial stable of traders. Mr. Adrian is a strong advocate of hands-on, proactive management of the CTAs the Fund will be using.

Mr. Adrian has been a successful trader for over 23 years in several different sectors, including equities, financials and agricultural markets. He knows how to appeal to traders, maintain their motivation and keep them focused and working within the boundaries of their chosen strategies. He has

24

learned to successfully identify personal characteristics associated with successful traders, as well as how to match those characteristics appropriately to systems and markets to create a winning trading strategy. Discipline in trading is paramount to the philosophy that has made Mr. Adrian a successful trader. He has spent his entire career in the financial services industry and has obtained hands-on experience in almost every aspect of the futures industry, both on the trading floor and the business side.

After an apprenticeship on the Chicago Mercantile Exchange (the "CME") where he began as a runner, Mr. Adrian learned the technical side of the futures industry. He started a business of selling technical information to local traders, working as a technical assistant to traders and providing technical analysis for many markets. After a period, Mr. Adrian leased, then bought a membership and began trading his own futures account and has been doing so for the last 23 years. While trading, he also provided execution services for Mentor Capital Management in the Treasury Bonds, Foreign Currencies and Euro Dollar markets.

During his career at the CME, Mr. Adrian had the honor of being selected as one of the members to be a liaison between the exchange and the U.S. Senate and House of Representatives. The committee's primary responsibility was to meet with members of congress and educate U.S. lawmakers on the issues and workings of the CME. Mr. Adrian also served on numerous exchange committees. From 1987-1992, Mr. Adrian served on the Membership Committee interviewing prospective members for the CME. From 1992-1994, he served on the Clearing House Oversight Committee which set policy for the performance of clearing members of the exchange. Also in 1992-1993, he served on the Clearing House Performance Bond Committee establishing margin requirements for all futures related products at the CME. From 1994-1996, Mr. Adrian served on the Foreign Currency Committee which set policy for all foreign currencies traded at the exchange. During his career he was nominated to the Nominating Committee of the Board of Governors of the Exchange.

Paul joined WexTrust Capital in 2005 to create the Fund. He brought not only his years of experience and expertise, but also a personal network of traders, many of whom would normally not be available to invest with. As a local trader for over 23 years, Mr. Adrian has developed relationships with many other local traders who have successfully migrated off the trading floor and have subsequently become successful CTAs managing commodity funds. He will utilize these relationships to the Fund's full advantage.

**Weldon Turner**, Fund Manager

Weldon Turner is currently the Chief Executive Officer of WexTrust Securities, an affiliate of WexTrust Capital. His main responsibilities are supervising the firm, supervising real estate syndication sales in Israel and advising clients in equity, real estate, bond and structured settlement investing.

From 2001 until 2004, Mr. Turner was a partner at Hilazon Partners, a Jerusalem-based hedge fund that focused on market neutral investing. From 1999 to 2000, he was the chief operating officer and acting general counsel at Goldnames in Jerusalem where he developed a domain name internet company from a four-person team into a 50-person company.

From 1985 to 1992, Mr. Turner was a Vice President of Equity Sales Trading at Salomon Brothers, Inc. in New York, where his trades were targeted to NYSE listed, OTC and derivative equity securities for U.S. and foreign investors. From 1992 to 1994, Mr. Turner was a Vice President in U.S. Equity Sales Trading at Credit Suisse/First Boston ("CSFB") where his focus was the New York Stock

25

Exchange listed, OTC, and derivative equity securities for U.S. and foreign investors. From 1994 to 1999, Mr. Turner was a Director of International Equity Sales/Trading at CSFB in New York, where he was responsible for European, Latin American and Asian trading, with an emphasis on Eastern Europe. He advised some of the world's largest financial institutions, state and country treasuries. Some of these institutions include; Janus Capital Management, Mercury Asset Management, Soros Management, Tiger Management and The Government of Singapore. From 1996 until 1999, Mr. Turner served on the Board of Directors of the Orthodox Union.

Currently Mr. Turner serves on the board of advisors of Portofino Equity Advisors, a boutique private equity advisory firm. He also serves on the board of advisors of Thorium Power Company, an American alternative energy producer.

Mr. Turner received a Bachelor of Arts degree in History and Political Science in 1982 from Union College in Schenectady, New York. He received a Juris Doctorate in 1985 from the Benjamin N. Cardozo School of Law in New York City.

**Avi Ingber**, Fund Manager

Avraham Ingber is currently a Managing Director and Principal of Wextrust Securities LLC, an affiliate of Wextrust Capital. His main responsibility is to oversee the growth of Wextrust's retail and proprietary equity trading and brokerage business.

Mr. Ingber has been personally trading the U.S. equity markets full time for the past nine years. He began at International Correspondent Trading Inc. in Jersey City, New Jersey, as an assistant to the CEO and President of the company, who personally trained him in all aspects of U.S. equity and options trading. Mr. Ingber was responsible for constant review and evaluation of the equity and options positions in the company's hedge fund, as well as those of select client accounts.

Mr. Ingber returned to Israel in 1999 where he worked for Clark Addison Securities in Jerusalem as head trader. He was responsible for building and directing their trading floor. Mr. Ingber joined Straight Line Securities in Jerusalem in 2000 as a partner. He was responsible for the set-up and direction of its trading floor, as well as maintaining relationships with various U.S. based broker-dealers and clearing firms. In 2003, he assumed the additional responsibility of launching the institutional division, where he was successful in obtaining the equity and options accounts of various Israeli Institutions.

Mr. Ingber became a licensed Registered Representative (NASD Series 7) in 1999. Since the founding of Wextrust Securities, Mr. Ingber has obtained NASD Series 63, 55 and 24 licenses.

**Steve Byers**, President and CEO of WexTrust Capital and Fund Manager

Mr. Byers is President and Chief Executive Officer of WexTrust Capital. He has been in the finance related lending and investment business for over 20 years. Since 1994, Mr. Byers has started and built a variety of successful finance and investment related companies. He built WexTrust Capital from a zero base to its current level with over 300 employees including affiliated operations. Mr. Byers has been successful in expanding and diversifying the company into banking, asset management, portfolio investments, real estate related investments and development, and non-real estate related asset investments. Conservative underwriting and the ability to adapt and adjust to changing market conditions are key elements to Mr. Byers success. Successful operations founded by Mr. Byers include Wexford

26

Bancorp which was active in funding and building commercial mortgage backed securities related debt portfolios and Wexford Equity Partners which currently has a portfolio of over 30 income properties, as well as a large number of other finance related businesses. He was responsible for creating the Wexford High Yield Debt Funds and guiding a German-based rating agency (FERI) through their evaluation which resulted in an A investment rating. In addition, he was responsible for taking over a number of troubled non-performing assets on behalf of third party investors and creating value in order to return principal to the investors.

Prior to 1994, Mr. Byers was a senior officer at Household Mortgage Service, a division of Household International. While at Household, Mr. Byers expanded and improved the company's underwriting requirements for certain asset classes, expanded the origination effort and target market and founded the company's debt sale business for income property loans. Mr. Byers was also responsible for asset management and loan work-outs. He was successful in starting and operating a funding facility between JP Morgan Investment Management and Household International. Prior to Household, Mr. Byers was the Senior Vice President in charge of underwriting investments at Lemont Holding Corp., a multi-bank holding company. This company was active in lending, joint venture debt and equity funding, development and acquisitions. All investments had to be underwritten by Mr. Byers and his staff and all work-outs and problem loans were under his group. Prior to this, Mr. Byers was a bank examiner and valuation specialist for a government supervisory agency. During his time as a bank examiner, he was responsible for analyzing and recommending action for investment portfolios, investment properties and development properties. Upon leaving this position, he was regarded as an investment valuation expert within the agency.

Mr. Byers has a B.S. degree in Finance and Economics from the University of Illinois and has completed a variety of post graduate education programs including securities, futures and options, valuations, credit risk management, asset management and other relevant programs. Mr. Byers is a foundation board member for the Children's Memorial Hospital and is a member of the Executive Club of Chicago.

**Mark J. Adrian**, Fund Advisor

Mark Adrian is the primary principal and a founder of KJW Asset Management, LLC. Mr. Adrian has spent his entire 25 year career in the financial services industry. He has obtained "hands on" experience in almost every aspect of the futures and derivatives trading industry both on the trading side and on the business side.

After an apprenticeship that began on the Chicago Mercantile Exchange floor, Mr. Adrian became a member and seat holder of the exchange, where he very successfully traded his own account for 16 years. Mr. Adrian owned three seats on the exchange.

As a successful professional trader, Mr. Adrian experienced some of the problems inherent in the execution methodologies employed by the industry at the time. In answer to these problems, Mr. Adrian was among the founders and became Chief Executive Officer of Stellaris Futures, LP. Stellaris was a primary clearing member of the CME and a member firm of the Chicago Board of Trade. Mr. Adrian also formed Stellaris Securities, Inc. as a member firm of the Chicago Board Options Exchange. As the head of these two companies, Mr. Adrian helped pioneer a new execution methodology known as "give ups" which changed the face of exchange floor execution in Chicago. The Stellaris Group of companies

which employed almost 200 people, on three exchange floors, helped usher in the age of even greater institutional involvement in the futures markets.

By offering the services of his companies to the institutional and professional trading community, Mr. Adrian's firm executed the business of many of the world's largest financial institutions. Among them were Union Bank of Switzerland, Swiss Bank, ANZ Bank, Deutsche Bank, Citibank, Commerzbank and Bankers Trust.

Aside from the pure institutional participant, Stellaris executed the trades of the professional trading community made up of proprietary trading operations, Commodity Trading Advisors and Hedge Funds. The Stellaris execution team did business for some of the marquee trading advisors and funds in the world. Among the clients of Stellaris were Paul Tudor Jones, Monroe Trout, Moore Capital (Louis Bacon), O'Conner and Company, Archillon Partners and Campbell and Company.

As a leader in the futures industry, Mr. Adrian was heavily involved in the governance of the CME. During his career, he was a member of the Nominating Committee to the Board of Governors of the Exchange, and was twice nominated to serve as a member of the Board of Governors. Mr. Adrian held seats on the FCM committee and the AG Steering Committee of the CME. Mr. Adrian sat on the Finance Committee, the Membership Education Committee and the Technology Committee, which led the exchange into the Globex era and the current climate of fully electronic markets.

During his tenure as a member of the exchange, Mr. Adrian was also appointed to a select committee of members responsible for the liaison between the exchange and the U.S. Senate and House of Representatives. Primary in the committee's responsibilities was to meet with members of congress and educate U.S. lawmakers on the issues and workings of the CME.

Mr. Adrian has created and consulted in the development of several funds, commodity trading advisors and financial services organizations. His experience specifically in the fund business, dates back to the early 1980's when the earliest managed financial futures products began to receive public acceptance. Mr. Adrian became a registered commodity pool operator and Commodity Trading Advisor in 1983 and was a principal of the Pipeline group of companies which offered managed futures accounts in 1985.

Also notable in his consulting duties was the early stage establishment of ISAT Funds and the Quantlab hedge fund organization, as well as the Asian distribution of OptiMark Inc., a company that offered electronic capabilities to global futures and stock exchanges. In that capacity he consulted with the Singapore Stock Exchange, the Kuala Lumpur Stock Exchange the Hong Kong Exchange and the Sydney Stock Exchange. Mr. Adrian holds a B.A. from Northwestern University and attended Northwestern's Kellogg Graduate School of Management.

**Dr. Todd Hanson**, Fund Advisor

Dr Hanson is currently Chief Technology Officer of KJW Asset Management, LLC and director of systems research and development for the firm. Todd Hanson holds a PhD. in Applied Mathematics from UC Berkeley, California, a Masters of Science in Electronic Commerce from National University, California and a Bachelors of Science in Computer Science and Mathematics from the University of Madison, Wisconsin.

While at UC Berkeley, Dr. Hanson officially published the "Hanson Sieve", a process whereby nonlinear mathematical algorithms can be utilized in financial time series matrices. Before architecting and developing automated trading strategies for the financial markets utilizing Chaos and Complexity Theory, Dr. Hanson was the founder and CEO of Failsafe Inc., a software development company focusing on internet security and cryptography for Fortune 500 companies.

For the period of 13 years Dr. Hanson has utilized his software engineering experience to bring secure enterprise level software solutions to the Healthcare, Finance and Logistics industries. While acting in the role of CEO for Synergy Software Development (NASDAQ SGYS), Dr. Hanson took the company from concept through funding and public offering utilizing self-developed technology as the cornerstone. As CIO for two separate NASDAQ concerns (USTK & TRUC) Dr. Hanson raised over $35 million in financing for assorted self developed technologies.

Dr. Hanson served in the United States Marine Corps, 1st Force Reconnaissance, where he was awarded three Navy Achievement Medals in Panama, Honduras and Nicaragua. During the Persian Gulf War, Dr. Hanson was awarded the Bronze Star with Combat V.

Dr. Hanson has published numerous articles in the areas of software design, cryptography, ethical hacking and mathematics in financial markets.

Dr. Hanson holds Board Seats at the following company: Trade AI LLC, PerpetualFX Inc., Galt Ventures Inc., Primelink LLC., LeadsFromUs Inc., TradeFXNow Inc., Montgomery Equity Holdings LLC, Spackman Capital Group and AB WatleyFX LLC.

**Susan Reyes**, Senior Investment Analyst

Susan Reyes has spent all of her 28 year career in the financial services industry. Ms. Reyes was employed with U.S.F. & G. Insurance Co. from 1978-1980 working as a junior accountant. In September 1980 she joined The Fuji Bank, Ltd., Chicago Branch as a Banking Associate. Her responsibilities were as an Assistant Trader responsible for controlling and directing the cash management side of the funding operations. She also worked as a junior accountant, balancing large numbers of the bank's transactions on a daily basis, preparing financial reports to different banking agencies and dealing with operational discrepancies. From 1987 through 1999, Ms. Reyes was made Assistant Vice President and Assistant Manager of the Funds & Foreign Exchange Department where she was a senior trader responsible for funding the Bank's U.S. operations while maintaining Japanese and American regulatory requirements. She managed a $2 billion proprietary investment portfolio composed of money market products while trading Eurodollar futures and options. She also managed the Bank's foreign exchange positions while trading spot FX, forward FX and US$ and JPY swaps.

When the Bank closed and transferred its business to its New York branch in 1999, Ms. Reyes went back to school and earned her B.S., 2002 (Highest Honors) in Accounting and Finance from Louis University in Romeoville, Illinois. From January 2000 to April 2005, she worked as a Data Research Manager, Portfolio Administrator and Junior Analyst for Calamos Asset Management, Inc. Her main responsibilities included investing 3,000 accounts for four convertible strategies while assisting with the Institutional and Group Trust strategies and reporting requirements. After leaving in 2005, she has been trading for her own personal account. Ms. Reyes has obtained NASD Series 7 and 55 licenses and is currently a level 2 candidate in the Certified Financial Analyst program.

### WexTrust Capital – Background and History

The roots of the organization began in December 1994 as ASG Financial Services. This was part of the ASG Companies, a finance, investment and asset management company. ASG Financial concentrated on institutional debt and equity underwriting. The company used funding facilities and arrangements with JP Morgan Investment Management and Morgan Stanley as well as other large New York based investment banks. In January 2003, the principals created WexTrust Capital as a holding company to create a brand which would better reflect the current businesses of the organization. WexTrust Capital's main areas of activity include specialty lending, private equity investments, fund management, asset management, asset acquisitions, real estate development and management, investment banking, proprietary trading, commodity investment management and venture investment management in mining operations. The organization has underwritten over $1 billion in debt and equity investments and currently manages over 40 investment vehicles and investment funds.

WexTrust Capital has the following subsidiaries and affiliates:

WexTrust Securities, LLC
KJW Wexford Trading Advisors
Wexford Equity Partners, LLC
Wexford Development Group, LLC
Lindsay Energy
Pure Africa Holdings
Wexford Hospitality
Coldwell Banker Commercial/wtc

WexTrust Capital's principals and key executives include:

Steven Byers (CEO)
Amnon Cohen (CFO)
Mike Gorney (Chief Acquisition Officer)
Joseph Shereshevsky (Chief Operating Officer)
Ralph Sabine (Chief Compliance Officer)
Donald Price (Chief Development Officer)
Michael Mostofsky (Director of Investment Banking – U.S.)
Weldon Turner (Director of Investment Banking – International)
Avi Ingber (Director of Securities Trading)
Paul Adrian (Director of Commodity Investment Operations – U.S.)
Mark Adrian (Director of KJW Wexford Trading Advisors)
Eddie Dushman (Director of Coldwell Banker Commercial/wtc)
Michael Van DerMerwe (Director of Pure Africa Holdings)
Pieter Van Der Merwe and Johannes Lubbe (Directors of Pure Africa Mining)

The company has the following offices:

*United States:*

Chicago, Illinois: 333 W. Wacker, Suite 1600, Phone: 312-881-6000

New York, New York:   114 West 47th Street, Phone: 212-643-6190

Norfolk, Virginia: 999 Waterside Drive, Suite 2220, Phone 757-623-0246

Nashville, Tennessee: 118 30th Avenue North, Phone 615-301-8002

Boca Raton, Florida (KJW Affiliate): 601 South Federal Highway

Atlanta, Georgia: 1200 Abernathy Rd., Suite 1700, Phone 770-551-8154

*Israel:*

Tel Aviv: Aviv Tower, 7 Jabontinsky Street, 34th Floor, Ramat Gan, Phone: 972-3-575-7181

*South Africa:*

Johannesburg/Pretoria: 74 Graskop Avenue, Waterkloof Heights, Pretoria.   Phone # 012-347-2597

*Zurich:*

(G & H Partners AG), Brandschenkestrasse 178, 8002 Zurich, Switzerland, Phone #4112082060

*WexTrust Capital Investment Philosophy/Strategy*

In general, the main philosophy for investing is one of a traditional value investor mixed with certain growth aspects. WexTrust Capital looks for investments which have barriers to entry, a margin of safety, good management and an identifiable asset value appreciation factor.

One of the main tenets of our investment approach is protection of principal. This is critical in any investment approach. This can be translated not only to our approach towards income property acquisitions but also in high yield lending and commodity investment funds. Part of protecting principal is requiring strong management of the assets. This is a critical component of the Fund.

## CONFLICTS OF INTEREST

*Management of Other Accounts*

In the future, the Manager and its principals, employees, agents and affiliates may establish, sponsor or be affiliated with other investment pools that may engage in the same or similar businesses as the Fund or manage the accounts of other clients. The records of any such trading will not be available for inspection by the Fund or the Class A Members. The methods and strategies that the Manager will utilize in managing the Fund and respective accounts and/or allocating the Company's assets to CTAs are and will be employed in competing entities or accounts. If the Manager places the same or similar orders at or about the same time for its various clients' accounts, all such accounts may compete for the same or similar positions and, depending upon whose order is placed first, the difference in timing may result in some accounts receiving better prices than other accounts. In addition, the Manager may have a conflict of interest in rendering advice to a client because the financial benefit from managing other clients'

31

accounts may be greater, which may provide an incentive to favor such other accounts. While the Manager might have an incentive to favor another client over the Fund, the Manager will not knowingly do so.

All of the commodity positions held by all accounts directed by the Manager or its affiliates, directly and indirectly, will be aggregated for purposes of determining compliance with speculative position limits. As a result, the Fund might not be able to enter into or maintain certain positions because such positions, when added to the positions held by the Manager's other accounts, would exceed applicable speculative position limits. If open positions must be reduced as a result of speculative position limits, the Manager will take such action as it may deem advisable to comply with such limits.

*Execution*

The Manager selects the brokers and dealers that effect transactions, and the Manager negotiates the execution prices and brokerage commissions. The Manager seeks to obtain what it considers the best price and execution for the Commodity Portfolio's and Investment Grade Portfolio's transactions, in light of all relevant factors. While the Manager generally seeks competitive commission rates for agency transactions, the lowest commission rates may not necessarily be paid.

*Net Asset Valuation*

The Manager is ultimately responsible for and has discretion with respect to determining the value of the Fund (NAV), although it will also be calculated independently by NAV Consulting. As a result of the Manager's management fee and the incentive allocation arrangements with the Fund, it is possible that the Manager may have an incentive to cause the value of the Fund's investments to be overstated. However, the Manager is bound by the guidelines set forth in the LLC Agreement and will determine the value of the Fund's assets in accordance with such agreement.

*Affiliate Status*

The Fund was organized by the Manager. Thus, the selection of the Manager to advise the entities and the setting of the Manager's compensation were not the result of arm's length negotiation.

## CAPITAL ACCOUNTS

A Capital Account will be established on the Fund's books for each Class A Member according to their Class A Interests. The Capital Contributions of a Class A Member will be allocated between the Investment Grade Portfolio (and represented by a Series of Class A Interests) and the Commodity Portfolio. All investors admitted as Members on the same day will receive the same Series. The amount allocated to the Investment Grade Portfolio will be determined by the Manager in its discretion, based upon interest rates existing at such time and other factors which may affect the returns on such investment. Class A Members may have significantly different ratios of their Capital Contributions allocated to the Investment Grade Portfolio and the Commodity Portfolio as compared to other Class A Members and, therefore, have different returns on their investments. The value of a Class A Member's Capital Account will be the NAV of their Class A Interests.

## CAPITAL ACCOUNT DISTRIBUTIONS AND WITHDRAWALS

*Capital Additions*

Class A Members may acquire additional Class A Interests in the Fund in increments of $50,000 during any month effective at the beginning of the following month, subject to the Manager's prior consent.

*Voluntary Withdrawals*

Subject to the provisions of Article 12 of the LLC Agreement, each Class A Member generally may withdraw all or any portion of their Capital Account in the Fund, as of the end of any calendar month, on 20 calendar days' written notice to the Manager, paid by the Manager within 50 calendar days of receiving written notice. No withdrawal fee or penalty will be assessed. However, if an investor makes a withdrawal within six months of his initial investment (except distributions, if applicable), the investor will receive his withdrawal based on the current NAV less any sales commissions paid out. All withdrawals will be funded from the Class A Member's Investment Grade Portfolio component of their Capital Account, until such time as the Investment Grade Portfolio component of their Capital Account is reduced to zero. Thereafter, redemption proceeds will be funded from the Preferred Member's allocable portion of the Commodity Portfolio.

*Required Withdrawals*

The Manager may in its sole discretion, at any time, require any Class A Members to withdraw all or any portion of his Capital Account for any reason or no reason upon at least 48 hours written notice. Investors should be aware that at any time that their Capital Account, in the opinion of the Manager, becomes too small to continue investing activities; their Capital Account(s) will be subject to a compulsory withdrawal.

*Maturity Date*

The Maturity Date for each Class A Interest is the first day of the calendar month following the expiration of seven years after the date on which the Fund acquired securities in the Investment Grade Portfolio with respect to such Interest, after which term the value of Class A Interests will be returned to the Class A Members within 30 days of Maturity or may be reinvested in the Fund.

Investors' capital withdrawal rights will be automatically suspended if the Manager suspends its determination of the Fund's NAV as of a withdrawal date, or during market emergencies. In that case, withdrawal rights will be reinstated immediately after the Manager resumes the determination of the Fund's NAV.

*Distributions*

The Fund will make distributions to Class A Members in such amounts and at such times as determined by the Manager.

Class A Members may elect to reinvest distributions. If this option is chosen, a Class A Member's distributions will be reinvested in the Commodity Portfolio for continued trading. Class A

33

Members who elect to reinvest their distributions will still be able to withdraw money from their Capital Accounts at their discretion.

*Transfers of Interests*

The Class A Interests are not traded on any exchange, and there is no trading market for the Interests, nor is such market expected to develop. The Class A Interests are transferable only with the prior written consent of the Manager, which it may withhold for any reason or no reason in its discretion.

## NET ASSET VALUE

The Net Asset Value ("NAV") of each Class A Interest is comprised of two components: (i) the NAV of the Series of principal protection securities within the Investment Grade Portfolio that were purchased in respect of the relevant Class A Interest and are specifically referable to such Class A Interest; and (ii) the NAV of such Class A Interest's pro rata portion of the Commodity Portfolio.

Each Class A Member's pro rata portion of the Fund's Commodity Portfolio is based upon the amount of the Class A Interests that were allocated to the Commodity Portfolio. Investors that make equal capital contributions to the Fund on different days are likely to have different amounts of their respective capital contributions allocated to the Fund's Commodity Portfolio. Consequently, the Class A Member's respective Preferred Interest will be entitled to share in a different pro rata portion of the Managed Fund. Each Capital Account's pro rata share of the Fund's Commodity Portfolio will be the proportion that, at the start of the month, the value of the portion of your capital contribution that was allocated to the Commodity Portfolio bears to the value of all amounts allocated to the Fund's Commodity Portfolio.

At the time of each investor's investment in the Fund, the Manager will allocate a portion of such investment to the Fund's Investment Grade Portfolio and the Fund's Commodity Portfolio. The allocation of each investor's capital contribution to the Investment Grade Portfolio and the Commodity Portfolio is binding on each of the Class A Members. Because market conditions and interest rates are continually changing, the Manager cannot predict what portion of an investor's investment will be allocated to the Investment Grade Portfolio and what portion of such investor's investment will be allocated to the Commodity Portfolio. Moreover, it is likely that different investors will have different ratios of their investment in the Fund allocated to the Investment Grade Portfolio and Commodity Portfolio. Consequently, it is anticipated that investors will experience different rates of return, depending upon the amount of their investment that was allocated to the Commodity Portfolio.

The NAV of each Class A Interest is the total NAV of the Fund, specifically referable to that specific Class A Interest. The NAV of the Fund is equal to its respective total assets minus its respective total liabilities, determined in accordance with generally accepted accounting principles consistently applied under the accrual method of accounting. Expenses of a recurring nature may be calculated based on an estimated figure for yearly or other periods in advance and accrued in equal portions over the period.

The Manager, along with NAV Consulting, will determine the value of the Fund's assets and will calculate the NAV of the Fund, and of each Class A Interest. The Manager will determine the value of the Fund's assets in accordance with the guidelines set forth in the LLC Agreement. The NAV

34

determinations of the Fund are binding on the Fund's Class A Members. The Fund will determine its NAV as of the last business day of each month, as well as on such other dates as it may determine.

The Fund may suspend the determination of the NAV during emergency situations. Such emergency situations include, but are not limited to periods during which: (i) any exchange or other market on which a substantial portion of its assets are traded halts or restricts trading; (ii) the existence of a state of emergency, such as war, natural catastrophe or any similar state of affairs, as a result of which disposal or valuation of the Fund's assets is not reasonably practicable or such valuation or disposition is seriously prejudicial to the Fund and its investors; (iii) there is a breakdown in the means of communication used to price or value the Fund's assets; (iv) the redemption or withdrawal of the Fund's assets from one or more CTAs is materially restricted, impaired or delayed; (v) the Fund is being wound-up; (vi) the payment of withdrawal or redemption proceeds from the Fund would violate any applicable statute; and (vii) if the Manager determines that the effect of the withdrawal or the redemption (as the case may be) would be materially adverse to the remaining Class A Members.

The Fund will not accept subscriptions during any period in which the determination of the Fund's NAV is suspended, and the right of Class A Investors to withdraw capital from the Fund or exchange of Interests will be suspended during any such period.

## THE CLEARING BROKER

The Fund will initially engage Fortis Clearing Americas, LLC ("FCA") and Iowa Grain Company ("Iowa Grain") as its clearing brokers. The Manager will continually seek to establish new clearing broker relationships that benefit the CTAs and, therefore, the Fund. Different clearing brokers have differing rates in specific markets, so it may be possible and advantageous for the Fund to have multiple, simultaneous broker relationships.

### Fortis Clearing Americas, LLC

FCA, an Illinois limited liability company, is registered with the U.S. Commodity Futures Trading Commission ("CFTC") as a Futures Commission Merchant ("FCM") and is a member of the National Futures Association. FCA is a clearing member of the Chicago Board of Trade and the Chicago Mercantile Exchange. FCA: (i) is either a clearing member or member of other principal U.S. exchanges where futures and options on futures are traded; or (ii) has entered into third party brokerage relationships with FCMs that are clearing members of those exchanges of which FCA is not a clearing member. FCA maintains its principal place of business at 141 West Jackson Boulevard, Suite 400, Chicago, Illinois 60604. FCA is part of Fortis, an international financial services provider active in the fields of banking and insurance. With a market capitalization of EUR 39 billion (as at 02/28/2006) and around 57,000 employees, the Fortis group of companies ranks in the top 20 European financial institutions.

There have been no administrative, civil or criminal actions, whether pending or concluded, against FCA or any of its individual principals during the past five years which would be considered "material" as that term is defined in Section 4.24(1)(2) of the Regulations of the CFTC.

FCA, and any of the affiliates or third party brokers that FCA utilizes, act only as broker or introducing broker for the Fund and as such is paid commissions for executing futures and options on futures orders and/or clearing the trades resulting from such orders on behalf of the Fund. FCA will neither act in any supervisory capacity with respect to the Manager nor participate in the management of

35

the Manager or the Fund. Therefore, prospective investors should not rely on FCA in deciding whether or not to participate in the Fund. FCA is not affiliated with the Fund in any way and has not reviewed this Memorandum or any other statements made by the Fund or any of its employees or agents to determine their accuracy. FCA does not accept any responsibility for any trading decisions of the Fund, any statements in the Memorandum, any claims made by any representative of the Fund or for any funds not maintained at FCA.

### Iowa Grain Company

Iowa Grain is a member of the Chicago Board of Trade and the Chicago Mercantile Exchange. Iowa Grain provides a track record of over 35 years of success, service and stability. It provides access to all global futures markets and operates 24 hours a day, specializing in the U.S. agricultural futures and options markets, where it ranks among the top 20 firms by volume. Through its daily "War Room" research strategy sessions, the owners share their personal experience in farming and grain merchandising with clients through their research department; gathering, analyzing and sharing market information from all corners of the agricultural world by creating brief, insightful market reports.

Iowa Grain produces over 250 research reports, spanning all sectors of the grain and livestock markets including governmental reports, pre- and post-report commentary, daily news, morning, midday and closing comments, market players, weather, etc. This comprehensive research is published to their Website as soon as reports are written and can be received by e-mail. Also available is news and research for the financial, currency, softs and metals markets brought to the client by Hightower Reports.

## TERMS OF THE OFFERING/DESCRIPTION OF THE SECURITIES

*General*

The Company is offering Class A Interests on a continuous basis for a purchase price of $250,000 per Class A Interest. However, the Manager, at its discretion, may accept subscriptions for lesser amounts. New Class A Members are admitted on a monthly basis as of the first business day of each calendar month, or at such other times as the Manager, in its sole discretion, shall determine. Once a Class A Member is admitted to the Company, such Member can add to its existing investment each month (or otherwise as permitted by the Manager in its sole discretion) in $50,000 increments. All capital contributions will be combined for purposes of determining a Member's aggregate Interest in the Company. All additional contributions must be made in cash.

The number of persons from whom the Manager will accept subscriptions will not exceed the maximum number allowable under applicable federal and state securities laws for offerings which are exempt from registration under such laws. Although the aggregate offering proceeds were determined from the anticipated cash needs of the Company, and certain private offering limitations, the purchase price for each such Class A Interest have been arbitrarily determined.

The Company is limiting the number of Interests held by benefit plan investors (employee benefit plans, IRAs, 401(k) plans, etc.) to less than 25% of the total Class A Interests in the Company at any time (the "25% Ownership Limitation") to avoid having the underlying assets of the Company be deemed to be "plan assets" for purposes of ERISA.

36

The Manager may, in its sole discretion, require a Class A Member's mandatory withdrawal from the Company (in whole or in part) for any reason upon at least 48 hours' prior written notice. The Manager intends to exercise this right at any time that the 25% Ownership Limitation described above is exceeded in order to bring the Company into compliance with these limitations.

*Classes and Series of Interests*

The Company shall have two classes of Membership Interests, Class A and Class B. The Class A Interests shall be subdivided into one or more separate and distinct Series of Interests as contemplated by Section 18-215 of the Act, and as the Manager may designate from time to time. A separate Series of Interest will be issued to Members investing in the Class A Interests and admitted as a Member on the same date or on such other basis as the Manager shall determine, and shall be designated sequentially as Series A1, A2, A3, etc. The Class B Interests shall initially be issued to the Manager or its Affiliate. Each Series shall have the relative rights and preferences provided for herein or in a separate designation and such rights as may be designated by the Manager. The Manager shall cause separate and distinct records for each Series to be maintained and the Company shall hold and account for the assets belonging thereto separately from Company property and the assets belonging or referable to any other Series. Each Interest of a Series shall represent an equal beneficial interest in the net assets belonging to that Series. Each Series established hereunder shall have the following relative rights and preferences:

    (a)    Members of a Series shall have no preemptive or other right to subscribe to any additional Interests in such Series or other securities issued by the Company.

    (b)    All consideration received by the Company for the issue or sale of the Interests within a Series, together with all assets in which such consideration is invested or reinvested, all income, earnings, profits, and proceeds thereof, including any proceeds derived from the sale, exchange, or liquidation of such assets, and any funds or payments derived from any reinvestment of such proceeds in whatever form the same may be, shall be held and accounted for separately from the other assets of the Company and of every other Series and may be referred to herein as "assets belonging to" or "assets referable to" that Series. The assets belonging or referable to a particular Series shall belong to that Series for all purposes, and to no other Series, subject only to the rights of creditors of that Series. In addition, any assets, income, earnings, profits, or payments and proceeds with respect thereto, that are not readily identifiable as belonging to or being referable to any particular Series shall be allocated by the Manager between and among one or more of the Series for all purposes and such assets, income, earnings, profits, or funds, or payments and proceeds with respect thereto, shall be assets belonging or referable to such Series.

    (c)    A particular Series shall be charged with the liabilities of that Series, and all expenses, costs, charges and reserves attributable to any particular Series shall be borne by such Series. Any general liabilities, expenses, costs, charges or reserves of the Company (or any Series) that are not readily identifiable as chargeable to or bearable by any particular Series shall be allocated and charged by the Manager between and among any one or more of the Series in such manner as the Manager in its sole discretion deems fair and equitable. Each such allocation shall be conclusive and binding upon the Members for all purposes. Without limitation of the foregoing provisions of this subsection, the debts, liabilities, obligations and expenses incurred, contracted for or otherwise existing with respect to a particular Series shall be enforceable against the assets of or referable to such Series only,

37

and not against the assets of the Company generally or the assets belonging or referable to any other Series. Notice of this contractual limitation on inter-Series liabilities is set forth in the Company's Certificate, and upon the giving of such notice in the Certificate, the statutory provisions of Section 18-215 of the Act relating to limitations on inter-Series liabilities (and the statutory effect under Section 18-215 setting forth such notice in the Certificate) shall become applicable to the Company and each Series.

(d)    A Member may own more than one Series.

*Sale of Class A Interests*

The Class A Interests are being offered for sale by WexTrust Securities, LLC, an affiliate of the Company (the "Selling Agent"), and, possibly, other broker-dealers (the "Participating Dealers") who are members of the National Association of Securities Dealers, Inc. (the "NASD"). The offering is made pursuant to an agreement among the Manager, the Company and the Selling Agent, and if, Participating Dealers are also offering Class A Interests, each Participating Dealer will enter into a Participating Dealers Sales Agreement with the Selling Agent, under which the Selling Agent and Participating Dealer are acting as agents of the Company for the purpose of offering and selling Class A Interests. The Class A Interests are being offered on a "best efforts" basis, which means that the Selling Agent and any Participating Dealers are not obligated to purchase any Class A Interests but are only required to use their best efforts to sell Class A Interests to investors. The Selling Agent will receive a commission for each Class A Interest sold by it and any Participating Dealers with whom it contracts. The Selling Agent may reallow to Participating Dealers which sell Class A Interests up to the full selling commission for each Class A Interest they sell. However, the Manager, its affiliates and registered representatives of the Selling Agent and any Participating Dealer may purchase Class A Interests, net of any selling commissions. Any purchases by the Manager will be for investment purposes only and not with a view toward resale.

Under limited circumstances, the amount Participating Dealers, if any, receive from the Selling Agent may vary based on individual negotiations. Factors to be considered in such negotiations may include volume discounts, institutional purchases and a particular Participating Dealer's selling and due diligence expenses. Under no circumstances, however, will a Participating Dealer receive commissions exceeding 3% on their sales of Class A Interests.

The Company may reimburse the Selling Agent for the cost of any sales and informational meetings of the Selling Agent's employees relating to the offering. The total reimbursement and compensation to the Selling Agent and Participating Dealers shall not exceed 1% of the gross proceeds of this offering, which, for purposes of this offering, shall include reimbursements for bona fide due diligence expenses.

All fees payable to the Selling Agent may be paid, at the sole discretion of the Manager, either by the Company or by the Manager. To the extent commissions are paid by the Company, fewer net proceeds from the offering of the Class A Interests will be available to the Company.

Subscribers for Class A Interests must bear the economic risk of the investment for an indefinite period of time because the Class A Interests have not been registered under the Securities Act and, therefore, cannot be sold unless they are subsequently registered under the Securities Act or an exemption

38

from such registration is available. As described in this Memorandum, sale or other disposition of the Class A Interests will also be difficult because of the lack of a market.

Subscriptions for Class A Interests will initially be offered only in Illinois and other states designated by the Manager pursuant to exemptions from registration under the Securities Act and the applicable state securities law. Class A Interests will not be registered under these laws or under the laws of any other state. They will be offered for sale only to a limited number of sophisticated investors who, in conjunction with such sale, will represent that the Class A Interests purchased are being acquired for such person's own account, for investment purposes, and not with a view to resale or distribution.

Prospective purchasers will be required to complete and sign an Investor Suitability Questionnaire and a Subscription Agreement, each in the form set forth as an Exhibit to this Memorandum (the "Subscription Documents"). The Company must receive completed Subscription Documents and payment in full of the subscription price at its business office prior to 5:00 p.m. (Chicago time) at least two full business days (counting the last business day as one day) prior to the monthly closing date at which the subscription is intended to be accepted by the Company. If the Company received completed Subscription Documents on a date less than two business days prior to the next monthly closing date, unless the Manager in its sole and absolute discretion waives the untimeliness of its receipt of the Subscription Documents, the subscription will be held until the next monthly closing date, at which time such subscription will be considered for acceptance by the Company.

If, based upon the information stated in the Investor Suitability Questionnaire, the Company determines that a prospective investor may not have sufficient knowledge and experience in financial and business matters to evaluate the merits and risks of the investment, the prospective investor will be requested to retain a Purchaser Representative. In such event, the prospective investor will be required to complete a form identifying the Purchaser Representative(s) used and each Purchaser Representative will be required to complete a Purchaser Representative Questionnaire, each in the form set forth following the form of Investor Suitability Questionnaire attached as an Exhibit to this Memorandum. Such documents, together with signature pages to the LLC Agreement, are to be tendered to the Manager with a check in the amount of the price of the Class A Interests being purchased payable to "Wexford Principal Protected Fund I, LLC" c/o WexTrust Securities, LLC, Dominion Tower, 999 Waterside Drive, Suite 2220, Norfolk, Virginia 23510.

The Manager will review the subscription documentation obtained from the subscribers. Subscription proceeds will be promptly forwarded to a third-party bank (the "Escrow Agent") and the funds accompanying the subscription will be held in federally insured bank accounts (e.g., money market deposit accounts), short-term certificates of deposit, short-term government securities and another other investments permitted under Rule 15c2-4 of the Securities Exchange Act of 1934, as amended, pending completion of the Offering. The Escrow Agent will concurrently forward a copy of each of the Subscription Documents to the Manager, who will promptly determine whether to accept or reject each subscription. If the Manager rejects any subscription, it will cause the Escrow Agent to promptly return to such subscriber the funds paid by him and deposited with the Escrow Agent pursuant to such Subscription Documents, without interest or deduction, within ten days of receipt.

If the Minimum Offering is not sold and paid for within the period of the Offering, all monies collected from subscribers will be promptly returned to them in full, with interest and without deduction. If more than the Minimum Offering is sold, the funds, with interest, will be paid to the Fund.

The Subscription Agreement provides, in part, that no Class A Interests may be sold, transferred or otherwise disposed of unless they are subsequently registered under the Securities Act, which is not contemplated, or unless, in the opinion of counsel of the Company, such sale, transfer or other disposition may be made without registration thereunder. The LLC Agreement which an investor will be required to sign contains additional restrictions on transfer of Class A Interests. See "Summary of the LLC Agreement."

Any certificate evidencing the Class A Interests will bear a legend, stating that such security has not been registered under the Securities Act or any state securities law and refer to the restrictions on transferability and sale contained in the LLC Agreement and the Subscription Agreement. In addition, a notation will be made in the records of the Company reflecting such restrictions.

*Additional Capital Contributions/Loans*

Under no circumstances will any of the Class A Members be required to make any additional capital contributions to the Company. However, once a Class A Member is admitted to the Company, such Member can add to its existing investment each month (or otherwise as permitted by the Manager in its sole discretion) in $50,000 increments.

*Restrictions on Transfer*

Subscribers for Class A Interests should be fully aware of the long term nature of an investment in Class A Interests, subject to the quarterly Repurchase Requests discussed in this Memorandum. Each subscriber for Class A Interests must represent, among other things, that such subscriber is acquiring such securities for investment for his, her or its own account and not with a view to resale or distribution, that such subscriber has not subdivided his, her or its Class A Interests with any other person and such subscriber agrees not to sell his, her or its Class A Interests without registration under applicable federal and state securities laws, unless registration exemptions are available. A transfer of a Class A Interest may not be made that would violate federal or state securities laws. Class A Interests will not be registered for public sale and subscribers have no right to require such registration. In addition, the LLC Agreement provides that no Class A Member may transfer a Class A Interest without the consent of the Manager, which consent the Manager may withhold in its discretion and imposes other restrictions on transfer as well. Each investor should also be aware of the potential tax liability that might be incurred upon the sale, transfer, exchange or other disposition of a Class A Interest. No transfer of a Class A Interest can be made that would result in termination of the Company or termination of its status as a partnership for federal income tax purposes.

## SUMMARY OF THE LLC AGREEMENT

The Fund is governed by its LLC Agreement, a form of which is attached hereto. Various provisions of the LLC Agreement are summarized in other sections of this Memorandum. Set forth below is a summary of certain additional provisions. You should read the entire LLC Agreement before investing.

**Dissolution**    The Fund will continue in existence unless dissolved by the Manager or by operation of law.

40

**Records**    The Manager maintains books and records for the Fund, at the Manager's main business office. Investors may, at their own expense, inspect and copy these materials during regular business hours.

**Capital Contributions**    The Manager has discretion to accept capital contributions for the Fund on the first day of each calendar month or at any time as the Manager determines. Additional Capital Contributions must be in $50,000 increments

**Distributions**    The Manager may at any time allow the Fund to make a distribution to the investors of such amounts as the Manager may determine. These distributions shall be made to the investors pro rata according to their ownership interests within the Fund for the accounting period (generally a calendar month) in which the distributions are made.

**Powers and Authorities** In managing the business and affairs of the Fund, the Manager is authorized to take such action as it considers appropriate and in the best interest of the Fund. No Member with the exception of the Manager may take part in the management of the business of the Fund or transact any business of the Fund.

**Time Devoted to Fund**    The Manager is required to devote its full time or a material portion of its time to the Fund.

**Withdrawal and Removal of the Manager**    The Manager may withdraw as Manager on 90 days' written notice to the investors, in which event the Fund will dissolve. Class A Members holding 75% of the outstanding Class A Interests are entitled to remove the Manager with cause at any time.

**Assignment**    You may assign your Class A Interest only with the Manager's discretionary consent which can be withheld for any reason or no reason, in which case the assignee will become a substituted Class A Member. If you assign your entire Class A Interest, you will cease to be a Class A Member of the Fund for all purposes upon the effective date of the assignment, but you will not be relieved of any obligations you may have had under the LLC Agreement before the effective date of the assignment.

**Legal Representative**    If an investor dies or is adjudicated incompetent or bankrupt, his legal representative shall succeed to his Interest, but the representative shall have the status only of an assignee.

**Indemnification**    The LLC Agreement provides generally that the Manager and each Member of the Company, officer, employee or agent of the Company will be indemnified by the Company to the full extent permitted by law against all liabilities, expenses (including, without limitation, attorneys' fees and expenses and any other costs and expenses incurred in connection with defending any action, suit or proceeding), judgments, fines and amounts paid in settlement actually and reasonably incurred by such person in connection with any threatened, pending or completed action, suit or proceeding by reason of the fact that such person is or was a manager, member, officer, employee or agent of the Company or was serving as a director, manager, member, officer, employer or agent of another entity at the request of the Company.

**Amendment of the LLC Agreement**    The LLC Agreement may be amended by: (a) the Manager without the consent of the investors for certain in any manner that does not materially adversely affect any investor; and (b) the Manager and a majority in interest of the Class A Members. Class A

41

Members consent can be obtained by negative consent. No amendment to the LLC Agreement that adversely affects an investor's Capital Account, profit allocation or rights under the LLC Agreement may be effected without the consent of such investor.

**Venue** Any legal action brought by an investor against the Fund or against the Manager relating to the Fund shall be brought only in the state or Federal courts located in the State of Illinois.

## ERISA CONSIDERATIONS

The Fund may, subject to the limitations below and the other limitations herein, accept subscriptions from Employee Benefit Plans subject to ERISA ("ERISA Plans"), from IRAs, Keogh Plans which cover only self-employed persons and their spouses and other employee benefit plans which cover only the owners of a business and which are not subject to ERISA (collectively, "Individual Retirement Funds"), from government plans, church plans, and foreign employee benefit plans which are not subject to ERISA (collectively, "Non-ERISA Plans") and from other entities the assets of which are "plan assets" due to direct or indirect investments in such entities by ERISA Plans, Individual Retirement Funds, and Non-ERISA Plans (collectively, "Plan Asset Entities"). Individual Retirement Funds, ERISA Plans, Non-ERISA Plans and Plan Assets Entities are hereafter called "Plans."

*Fiduciary Standards*

Section 404(a)(1) of ERISA and the regulations promulgated thereunder by the United States Department of Labor (the "DOL") provide as a general rule that a fiduciary with respect to a Plan subject to ERISA must discharge its duties with respect to the Plan in a prudent manner and must consider several factors in determining whether to subscribe for Interests of the Partnership. If a fiduciary with respect to any such Plan acts imprudently with regard to subscribing for Interests of the Fund, the fiduciary may be held personally liable for losses incurred by the Plan as a result of such imprudence. Among the factors that should be considered are (i) the diversification and liquidity of the Plan's portfolio, (ii) the potential returns on the proposed investment taking into account the risk of loss and opportunity for gain and the effect on that return of any portion of the Fund's income which constitutes "unrelated business taxable income" (discussed below), (iii) the place the proposed investment would occupy in the Plan's portfolio taken as a whole, and (iv) whether the proposed investment is permitted under the documents and instruments governing the Plan.

The acceptance of a subscription by the Fund from a Plan does not constitute a representation or judgment by the Fund or the Manager that an investment in the Fund is an appropriate investment for that entity or that such an investment meets the legal requirements applicable to such entity. Those considering the purchase of Class A Interests on behalf of a Plan remain responsible for the Plan's compliance with the legal requirements applicable to such entity.

*Plan Assets*

Depending upon the relative net asset value of Class A Interests purchased by Plans, relative to purchases by other investors, the underlying assets of the Fund may be considered to be assets of the Plans investing in that Fund for regulatory compliance purposes. Under DOL regulations, when an ERISA Plan, Individual Retirement Fund or Plan Asset Entity acquires an equity interest in an entity such as the Fund, which interest is not a publicly offered security, as is the case with the Class A Interests, the underlying assets of the entity will not be deemed "plan assets" if the "25% Ownership Limitation" is met.

42

The 25% Ownership Limitation will be met if less than 25% of the aggregate equity interests in each class of equity of the entity are held by Plans (excluding equity interests held by any person with discretionary authority or control with respect to the entity, or affiliates of any such person). If the 25% Ownership Limitation is not met and Plans own Class A Interests representing 25% or more of the aggregate net asset value of all Interests of the Fund (excluding any Interests held by the Manager or any of its affiliates), the underlying assets of the Fund will constitute "plan assets" of the investing ERISA Plans, Individual Retirement Funds and Plan Asset Entities. The 25% Ownership Limitation is applied when a person acquires or disposes of an equity interest in an entity. Accordingly, the Fund does not anticipate accepting a subscription from any prospective investor if, after accepting such subscription, the Manager believes that the 25% Ownership Limitation would not be met. Moreover, if the 25% Ownership Limitation would be exceeded following any redemption, transfer or other disposition of Class A Interests, the Manager may exercise its mandatory redemption right to cause the compulsory redemption of a sufficient number of Class A Interests held by Plans to bring the Fund into compliance with the 25% Ownership Limitation. The Fund will operate under the assumption, absent knowledge to the contrary, that the 25% Ownership Limitation has not been violated and, therefore, an in depth discussion of the consequences of failing to meet the 25% Ownership Limitation is not included in this Memorandum.    See "Risk Factors— Investment Risks—Limitation on Benefit Plan Investments." Nevertheless, there can be no guarantee that the Fund will meet the 25% Ownership Limitation because, among other reasons, an investor could misrepresent its status as a benefit plan investor to the Fund.

Certain prospective Plan investors may currently maintain relationships with the Fund's Manager or any of its affiliates under which the Manager, or any such affiliate provides investment advisory and/or management services to such entity. These relationships may cause the Manager or its affiliates to be deemed to be a fiduciary with respect to such Plan. As a result, an investment in the Fund by a Plan for which the Manager or any of its affiliates provide investment advisory and/or management services could possibly be interpreted to constitute a prohibited use of the plan assets of such entity because it has the effect of benefiting them. The Manager has determined that neither it nor any affiliate will recommend investment of any Plan assets in the Fund with respect to which assets the Manager or any such affiliate may be a fiduciary, nor will the Manager or any affiliate allocate any such assets over which they have discretionary control to the Fund. Plan fiduciaries should make their own determination regarding whether any relationship the Plan investor (or its fiduciaries) maintains with the Manager or any of its affiliates would constitute a prohibited use of plan assets.

*Reporting and Disclosure*

Plan fiduciaries are responsible for complying with any reporting and disclosure requirements under ERISA or the Internal Revenue Code (the "Code") resulting from an investment in the Fund. A Form 5500 (Annual Return/Report) is required to be filed by certain Plans investing in the Fund. Pursuant to DOL regulations, ERISA Plans investing in the Fund would need to include on their Form 5500 information relating to the fair market value of the Plan's investment in the Fund as of the close of the Plan's fiscal year. As a result, if the Plan's fiscal year differs from the Fund's fiscal year, the Plan investor may not be able to obtain valuation information on its Class A Interests as of the date required in the Plan's Form 5500.

*Special Rules for Individual Retirement Funds*

Although Individual Retirement Funds are subject to the prohibited transaction rules of the Code, Individual Retirement Funds are not subject to ERISA's fiduciary standards, but may be subject to

43

additional rules and regulations that could impact a decision to invest in the Fund. For example, IRAs are subject to special custody rules and are prohibited from investing in certain commingled investments. Individual Retirement Fund fiduciaries should consider the unique rules applicable to their Individual Retirement Fund before making an investment in the Fund.

*Exempt Plans*

Certain Plans may include the assets of governmental plans which are not subject to ERISA and church plans which often will not be subject to ERISA. Also, the above-described prohibited transaction provisions do not apply to governmental plans or church plans. However, such Plans are subject to prohibitions against certain related-party transactions under Section 503 of the Code, which prohibitions operate similar to the above-described prohibited transaction rules. In addition, the fiduciary of any governmental or church plan must consider applicable state or local laws, if any, and the restrictions and duties of common law, if any, imposed upon such plan before making an investment in the Fund.

**Plan fiduciaries that are prospective investors should consult with their own counsel concerning the appropriateness of an investment in the Fund, and the consequences under ERISA or other applicable law of an investment in the Fund.**

## TAX CONSIDERATIONS

The Fund expects to be treated as a limited liability company for Federal income tax purposes, and thus all gains and losses of the Fund flow through to the Fund's investors. **You should consult with and depend on your own tax adviser regarding the tax consequences of investing in the Fund.**

## REPORTS TO CLASS A MEMBERS

*Reports*

The Fund will provide each Class A Member with a monthly report of performance and an account statement, reviewed quarterly financial statements and investment portfolio summary information and annual financial statements and annual performance and investment information. The Fund will provide unaudited financial statements to each Class A Member within 45 days after the end of the Fund's fiscal year and, commencing with the fiscal year beginning January 1, 2007, audited financial statements within 120 days after the end of the Fund's fiscal year.

*Fiscal Year*

The fiscal year of the Fund (Commodity Portfolio and Investment Grade Portfolio) ends on December 31 of each year.

**38**

**Wextrust Capital LLC**
**Combined Balance Sheet**
As of December 31, 2007

| | Wextrust Capital LLC *6190 | Wextrust Capital LLC *8459 | Accrual Basis TOTAL |
|---|---|---|---|
| 2500 · Intercompany Loans | | | |
|   2500100 · Due To/From Chicago | | | |
|     11-01 · Chicago (9429) | -13,097.66 | 0.00 | -13,097.66 |
|     11-03 · Chicago Payroll (9445) | -220,209.24 | -3,024,990.52 | -3,245,199.76 |
|     11-05 · Chicago Fifth Third Acc | | | |
|       05-03 · Fifth Third Payroll | -90,000.00 | -793,948.57 | -883,948.57 |
|       05-01 · Fifth Third WTC | 0.00 | -930,010.00 | -930,010.00 |
|       05-02 · Fifth Third WHYF | 0.00 | -375,291.09 | -375,291.09 |
|       05-04 · Fifth Third Wexford B: | 0.00 | -583,872.11 | -583,872.11 |
|       11-05 · Chicago Fifth Third A | 0.00 | -55,000.00 | -55,000.00 |
|     Total 11-05 · Chicago Fifth Third Acc | -90,000.00 | -2,738,121.77 | -2,828,121.77 |
| | | | |
|     11-06 · Chicago Citibank (1919) | -13,000.00 | -98,563.76 | -111,563.76 |
|     11-01 · Chicago Citibank Op Acc (942 | 0.00 | -24,437,260.88 | -24,437,260.88 |
|     11-04 · Chicago Northern Trust Acc | 0.00 | -2,015,000.00 | -2,015,000.00 |
|     11-07 · Chicago Heritage Bank (1097) | 0.00 | -800,000.00 | -800,000.00 |
|   Total 2500100 · Due To/From Chicago | -336,306.90 | -33,113,936.93 | -33,450,243.83 |
| | | | |
|   2500105 · Due To/From New York | -46,500.00 | 0.00 | -46,500.00 |
|   2500112 · Due To/From WTC Op (8459) | 3,129,445.15 | 0.00 | 3,129,445.15 |
|   2500115 · Due To/From WTC Sec Op (1070) | -339,667.35 | -50,000.00 | -389,667.35 |
|   2500150 · Due To/From 82nd St Condo | -78,250.00 | 1,939,613.45 | 1,861,363.45 |
|   2500160 · Due To/From Block III | 225,000.00 | 3,765,910.00 | 3,990,910.00 |
|   2500165 · Due To/From Brandon Investments | -368,262.02 | 0.00 | -368,262.02 |
|   2500170 · Due To/From Bret Investors SC | -47,000.00 | 1,868,265.04 | 1,821,265.04 |
|   2500190 · Due To/From Dean St. | 261.95 | -50,100.00 | -49,838.05 |
|   2500195 · Due To/From Elmhurst Bldg/York | 243,053.79 | -680,000.00 | -436,946.21 |
|   2500205 · Due To/From GDR Accs, Pre-Tier | -6,425.41 | -2,504,528.17 | -2,510,953.58 |
|   2500210 · Due To/From GDR Tier | 466,284.04 | 5,589,979.93 | 6,056,263.97 |
|   2500215 · Due To/From Gold Coast/Days Inn | 55,804.25 | 7,244,651.22 | 7,300,455.47 |
|   2500220 · Due To/From GSA | 210,000.00 | 6,344,400.00 | 6,554,400.00 |
|   2500234 · Due To/From Highland Park | 0.00 | 1,750,769.16 | 1,750,769.16 |
|   2500245 · Due To/From Hinsdale Condos | 637,718.91 | 353,950.00 | 991,668.91 |
|   2500255 · Due To/From IDEX | -30,132.80 | -426,819.18 | -456,951.98 |
|   2500260 · Due To/From Interstate | -23,213.00 | 2,158,588.53 | 2,135,375.53 |
|   2500265 · Due To/From Jassry Properties | -144,540.00 | 602,000.00 | 457,460.00 |
|   2500268 · Due To/From Lindsey Energy | -171,354.64 | -10,100.00 | -181,454.64 |
|   2500270 · Due To/From McCue | -2,998.65 | 2,342,888.27 | 2,339,889.62 |
|   2500285 · Due To/From P A M | 0.00 | 497,400.00 | 497,400.00 |
|   2500295 · Due To/From Park Village | 80,394.12 | 684,630.48 | 765,024.60 |
|   2500315 · Due To/From River's Edge | 376,046.47 | 222,000.00 | 598,046.47 |
|   2500330 · Due To/From Shallowford | 0.00 | 519,960.00 | 519,960.00 |
|   2500335 · Due To/From Skeleton Coast BI | 150,000.00 | 939,850.00 | 1,089,850.00 |
|   2500345 · Due To/From TN Office | -12,850.00 | 1,045,437.03 | 1,032,587.03 |
|   2500349 · Due To/From Vaticano | 66,160.46 | 198,523.15 | 264,683.61 |
|   2500350 · Due To/From W Bearden Holdings | 126,395.20 | 250,281.06 | 376,676.26 |
|   2500355 · Due To/From W Belmont | 50,000.00 | 1,442,900.00 | 1,492,900.00 |
|   2500360 · Due To/From WDFF | 0.00 | -111,866.28 | -111,866.28 |
|   2500370 · Due To/From WexCap Commodity | -2,865.00 | -1,171.01 | -4,036.01 |
|   2500375 · Due To/From Wexford Eq Partners | -83,000.00 | -290,000.00 | -373,000.00 |
|   2500381 · Due To/From WHYF | -114,000.00 | 713,557.36 | 599,557.36 |
|   2500382 · Due To/From WHYF II | 23,794.61 | 438,000.00 | 461,794.61 |
|   2500383 · Due To/From WHYF III | -404,900.00 | -1,073,087.51 | -1,477,987.51 |
|   2500390 · Due To/From Workman's Road | 79,000.00 | 595,984.50 | 674,984.50 |
|   2500395 · Due To/From WPPF | 0.00 | -617,468.18 | -617,468.18 |
|   2500105 · Due To/From NY | | | |
|     58-01 · NY Wachovia (6077) | 0.00 | -10,356.17 | -10,356.17 |
|     58-02 · NY Amnon's Acc | 0.00 | -154,273.04 | -154,273.04 |
|     58-03 · Coldwell Banker Commercial | 0.00 | -9,052,174.83 | -9,052,174.83 |
|   Total 2500105 · Due To/From NY | 0.00 | -9,216,804.04 | -9,216,804.04 |
| | | | |
|   2500110 · Due To/From Bank - Commonwealth | 0.00 | 3,549.80 | 3,549.80 |

**Wextrust Capital LLC**
**Combined Balance Sheet**
As of December 31, 2007

| | Wextrust Capital LLC *6190 | Wextrust Capital LLC *8459 | Accrual Basis TOTAL |
|---|---|---|---|
| 2500120 · Due To/From WTC Disb (6190) | 0.00 | -2,945,647.91 | -2,945,647.91 |
| 2500125 · Due To/From 1st Highland | 0.00 | -77,000.00 | -77,000.00 |
| 2500130 · Due To/From 1st Wyoming/Rogers | 0.00 | 6,554,407.77 | 6,554,407.77 |
| 2500133 · Due To/From 124 Adams St | 0.00 | -200,000.00 | -200,000.00 |
| 2500134 · Due To/From 318 Adams | 0.00 | 125,000.00 | 125,000.00 |
| 2500135 · Due To/From 45 S. Washington | 0.00 | -17,900.00 | -17,900.00 |
| 2500140 · Due To/From 47 Dean | 0.00 | 1,087,500.00 | 1,087,500.00 |
| 2500145 · Due To/From 47th St. | 0.00 | -120,000.00 | -120,000.00 |
| 2500155 · Due To/From Belle Meade | 0.00 | 176,700.00 | 176,700.00 |
| 2500165 · Due To/From Brandon | 0.00 | -428,296.51 | -428,296.51 |
| 2500175 · Due To/From Clarksville | 0.00 | -240,472.24 | -240,472.24 |
| 2500180 · Due To/From Cleveland Ind | 0.00 | -300.00 | -300.00 |
| 2500185 · Due To/From Crowne Plaza | 0.00 | 3,040,506.85 | 3,040,506.85 |
| 2500192 · Due To/From Drake Oak Brook | 0.00 | -100,125.00 | -100,125.00 |
| 2500193 · Due To/From East Point | 0.00 | 75,000.00 | 75,000.00 |
| 2500200 · Due To/From Essex/Hyde Park | 0.00 | 1,265,000.00 | 1,265,000.00 |
| 2500204 · Due To/From FreeMac | 0.00 | 287,000.00 | 287,000.00 |
| 2500225 · Due To/From Hammond Il | 0.00 | 2,123,700.00 | 2,123,700.00 |
| 2500230 · Due To/From Hamptons Hinsdale M | 0.00 | 6,782,669.00 | 6,782,669.00 |
| 2500235 · Due To/From Hilltop Apt | 0.00 | 310,723.87 | 310,723.87 |
| 2500240 · Due To/From Hilltop Ridge | 0.00 | 332,305.00 | 332,305.00 |
| 2500250 · Due To/From Homer | 0.00 | 1,190,837.52 | 1,190,837.52 |
| 2500273 · Due To/From Music Row | 0.00 | 1,637,000.00 | 1,637,000.00 |
| 2500275 · Due To/From New Salem | 0.00 | 180,675.36 | 180,675.36 |
| 2500280 · Due To/From Nu Point East, LLC | 0.00 | -108,000.00 | -108,000.00 |
| 2500290 · Due To/From Parkview Hotel | 0.00 | -799,776.41 | -799,776.41 |
| 2500297 · Due To/From Peoria | 0.00 | 1,048,863.90 | 1,048,863.90 |
| 2500300 · Due To/From Pure Africa | 0.00 | 4,792.06 | 4,792.06 |
| 2500305 · Due To/From Rand Energy | 0.00 | -5,200.38 | -5,200.38 |
| 2500310 · Due To/From Rand Quarry | 0.00 | 98.96 | 98.96 |
| 2500320 · Due To/From Riverside Arcade | 0.00 | 1,004,160.86 | 1,004,160.86 |
| 2500325 · Due To/From SemJee | 0.00 | -100.00 | -100.00 |
| 2500340 · Due To/From S. Pine St | 0.00 | 326,000.00 | 326,000.00 |
| 2500365 · Due To/From WDG | 0.00 | -150,000.00 | -150,000.00 |
| 2500377 · Due To/From WHY Debt Offshore | 0.00 | -20,065.00 | -20,065.00 |
| 2500384 · Due To/From WHYF IV | 0.00 | -300.00 | -300.00 |
| Total 2500 · Intercompany Loans | 3,707,093.18 | 15,706,965.38 | 19,414,058.56 |

**Wextrust Capital LLC**
**Combined Balance Sheet**
As of December 31, 2007

| | Check on Firm's calc. | All Money Movement (Absolute Value) Intercompany Loans | Loans | Receivables | |
|---|---|---|---|---|---|
| | | SEC Calculation | | | |
| 2500 · Intercompany Loans | | | | | |
| 2500100 · Due To/From Chicago | | | | | |
| 11-01 · Chicago (9429) | -13,097.66 | $ (13,097.66) | $ | (13,097.66) | |
| 11-03 · Chicago Payroll (9445) | -3,245,199.76 | $ (3,245,199.76) | $ | (3,245,199.76) | |
| 11-05 · Chicago Fifth Third Acc | - | | - | | |
| 05-03 · Fifth Third Payroll | -883,948.57 | $ (883,948.57) | $ | (883,948.57) | |
| 05-01 · Fifth Third WTC | -930,010.00 | $ (930,010.00) | $ | (930,010.00) | |
| 05-02 · Fifth Third WHYF | -375,291.09 | $ (375,291.09) | $ | (375,291.09) | |
| 05-04 · Fifth Third Wexford Ba | -583,872.11 | $ (583,872.11) | $ | (583,872.11) | |
| 11-05 · Chicago Fifth Third Ac | -55,000.00 | $ (55,000.00) | $ | (55,000.00) | |
| Total 11-05 · Chicago Fifth Third Acc | -2,828,121.77 | | | | |
| | | | | | |
| 11-06 · Chicago Citibank (1919) | -111,563.76 | $ (111,563.76) | $ | (111,563.76) | |
| 11-01 · Chicago Citibank Op Acc (942 | -24,437,260.88 | $ (24,437,260.88) | $ | (24,437,260.88) | |
| 11-04 · Chicago Northern Trust Acc | -2,015,000.00 | $ (2,015,000.00) | $ | (2,015,000.00) | |
| 11-07 · Chicago Heritage Bank (1097) | -800,000.00 | $ (800,000.00) | $ | (800,000.00) | |
| Total 2500100 · Due To/From Chicago | -33,450,243.83 | | | | |
| | | | | | |
| 2500105 · Due To/From New York | -46,500.00 | $ (46,500.00) | $ | (46,500.00) | |
| 2500112 · Due To/From WTC Op (8459) | 3,129,445.15 | $ (3,129,445.15) | 3,129,445.15 | | 1 |
| 2500115 · Due To/From WTC Sec Op (1070) | -389,667.35 | $ (389,667.35) | $ | (389,667.35) | |
| 2500150 · Due To/From 82nd St Condo | 1,861,363.45 | $ (1,861,363.45) | 1,861,363.45 | | 1 |
| 2500160 · Due To/From Block III | 3,990,910.00 | $ (3,990,910.00) | 3,990,910.00 | | 1 |
| 2500165 · Due To/From Brandon Investments | -368,262.02 | $ (368,262.02) | $ | (368,262.02) | |
| 2500170 · Due To/From Bret Investors SC | 1,821,265.04 | $ (1,821,265.04) | 1,821,265.04 | | 1 |
| 2500190 · Due To/From Dean St. | -49,838.05 | $ (49,838.05) | $ | (49,838.05) | |
| 2500195 · Due To/From Elmhurst Bldg/York | -436,946.21 | $ (436,946.21) | $ | (436,946.21) | |
| 2500205 · Due To/From GDR Accs, Pre-Tier | -2,510,953.58 | $ (2,510,953.58) | $ | (2,510,953.58) | |
| 2500210 · Due To/From GDR Tier | 6,056,263.97 | $ (6,056,263.97) | 6,056,263.97 | | 1 |
| 2500215 · Due To/From Gold Coast/Days Inn | 7,300,455.47 | $ (7,300,455.47) | 7,300,455.47 | | 1 |
| 2500220 · Due To/From GSA | 6,554,400.00 | $ (6,554,400.00) | 6,554,400.00 | | 1 |
| 2500234 · Due To/From Highland Park | 1,750,769.16 | $ (1,750,769.16) | 1,750,769.16 | | 1 |
| 2500245 · Due To/From Hinsdale Condos | 991,668.91 | $ (991,668.91) | 991,668.91 | | 1 |
| 2500255 · Due To/From IDEX | -456,951.98 | $ (456,951.98) | $ | (456,951.98) | |
| 2500260 · Due To/From Interstate | 2,135,375.53 | $ (2,135,375.53) | 2,135,375.53 | | 1 |
| 2500265 · Due To/From Jassry Properties | 457,460.00 | $ (457,460.00) | 457,460.00 | | 1 |
| 2500268 · Due To/From Lindsey Energy | -181,454.64 | $ (181,454.64) | $ | (181,454.64) | |
| 2500270 · Due To/From McCue | 2,339,889.62 | $ (2,339,889.62) | 2,339,889.62 | | 1 |
| 2500285 · Due To/From P A M | 497,400.00 | $ (497,400.00) | 497,400.00 | | 1 |
| 2500295 · Due To/From Park Village | 765,024.60 | $ (765,024.60) | 765,024.60 | | 1 |
| 2500315 · Due To/From River's Edge | 598,046.47 | $ (598,046.47) | 598,046.47 | | 1 |
| 2500330 · Due To/From Shallowford | 519,960.00 | $ (519,960.00) | 519,960.00 | | 1 |
| 2500335 · Due To/From Skeleton Coast BI | 1,089,850.00 | $ (1,089,850.00) | 1,089,850.00 | | 1 |
| 2500340 · Due To/From TN Office | 1,032,587.03 | $ (1,032,587.03) | 1,032,587.03 | | 1 |
| 2500349 · Due To/From Vaticano | 264,683.61 | $ (264,683.61) | 264,683.61 | | 1 |
| 2500350 · Due To/From W Bearden Holdings | 376,676.26 | $ (376,676.26) | 376,676.26 | | 1 |
| 2500355 · Due To/From W Belmont | 1,492,900.00 | $ (1,492,900.00) | 1,492,900.00 | | 1 |
| 2500360 · Due To/From WDFF | -111,866.28 | $ (111,866.28) | $ | (111,866.28) | |
| 2500370 · Due To/From WexCap Commodity | -4,036.01 | $ (4,036.01) | $ | (4,036.01) | |
| 2500375 · Due To/From Wexford Eq Partners | -373,000.00 | $ (373,000.00) | $ | (373,000.00) | |
| 2500381 · Due To/From WHYF | 599,557.36 | $ (599,557.36) | 599,557.36 | | 1 |
| 2500382 · Due To/From WHYF II | 461,794.61 | $ (461,794.61) | 461,794.61 | | 1 |
| 2500383 · Due To/From WHYF III | -1,477,987.51 | $ (1,477,987.51) | $ | (1,477,987.51) | |
| 2500390 · Due To/From Workman's Road | 674,984.50 | $ (674,984.50) | 674,984.50 | | 1 |
| 2500395 · Due To/From WPPF | -617,468.18 | $ (617,468.18) | $ | (617,468.18) | |
| 2500105 · Due To/From NY | | | | | |
| 58-01 · NY Wachovia (6077) | -10,356.17 | $ (10,356.17) | $ | (10,356.17) | |
| 58-02 · NY Amnon's Acc | -154,273.04 | $ (154,273.04) | $ | (154,273.04) | |
| 58-03 · Coldwell Banker Commercial | -9,052,174.83 | $ (9,052,174.83) | $ | (9,052,174.83) | |
| Total 2500105 · Due To/From NY | -9,216,804.04 | | | | |
| | | | | | |
| 2500110 · Due To/From Bank - Commonwealth | 3,549.80 | $ (3,549.80) | 3,549.80 | | 1 |

**Wextrust Capital LLC**
## Combined Balance Sheet
As of December 31, 2007

| | Check on Firm's calc. | All Money Movement (Absolute Value) Intercompany Loans | Loans | Receivables | |
|---|---|---|---|---|---|
| 2500120 · Due To/From WTC Disb (6190) | -2,945,647.91 | $ (2,945,647.91) | | $ (2,945,647.91) | |
| 2500125 · Due To/From 1st Highland | -77,000.00 | $ (77,000.00) | | $ (77,000.00) | |
| 2500130 · Due To/From 1st Wyoming/Rogers | 6,554,407.77 | $ (6,554,407.77) | $ 6,554,407.77 | | 1 |
| 2500133 · Due To/From 124 Adams St | -200,000.00 | $ (200,000.00) | | $ (200,000.00) | |
| 2500134 · Due To/From 318 Adams | 125,000.00 | $ (125,000.00) | $ 125,000.00 | | 1 |
| 2500135 · Due To/From 45 S. Washington | -17,900.00 | $ (17,900.00) | | $ (17,900.00) | |
| 2500140 · Due To/From 47 Dean | 1,087,500.00 | $ (1,087,500.00) | $ 1,087,500.00 | | 1 |
| 2500145 · Due To/From 47th St. | -120,000.00 | $ (120,000.00) | | $ (120,000.00) | |
| 2500155 · Due To/From Belle Meade | 176,700.00 | $ (176,700.00) | $ 176,700.00 | | 1 |
| 2500165 · Due To/From Brandon | -428,296.51 | $ (428,296.51) | | $ (428,296.51) | |
| 2500175 · Due To/From Clarksville | -240,472.24 | $ (240,472.24) | | $ (240,472.24) | |
| 2500180 · Due To/From Cleveland Ind | -300.00 | $ (300.00) | | $ (300.00) | |
| 2500185 · Due To/From Crowne Plaza | 3,040,506.85 | $ (3,040,506.85) | $ 3,040,506.85 | | 1 |
| 2500192 · Due To/From Drake Oak Brook | -100,125.00 | $ (100,125.00) | | $ (100,125.00) | |
| 2500193 · Due To/From East Point | 75,000.00 | $ (75,000.00) | $ 75,000.00 | | 1 |
| 2500200 · Due To/From Essex/Hyde Park | 1,265,000.00 | $ (1,265,000.00) | $ 1,265,000.00 | | 1 |
| 2500204 · Due To/From FreeMac | 287,000.00 | $ (287,000.00) | $ 287,000.00 | | 1 |
| 2500225 · Due To/From Hammond II | 2,123,700.00 | $ (2,123,700.00) | $ 2,123,700.00 | | 1 |
| 2500230 · Due To/From Hamptons Hinsdale M | 6,782,669.00 | $ (6,782,669.00) | $ 6,782,669.00 | | 1 |
| 2500235 · Due To/From Hilltop Apt | 310,723.87 | $ (310,723.87) | $ 310,723.87 | | 1 |
| 2500240 · Due To/From Hilltop Ridge | 332,305.00 | $ (332,305.00) | $ 332,305.00 | | 1 |
| 2500250 · Due To/From Homer | 1,190,837.52 | $ (1,190,837.52) | $ 1,190,837.52 | | 1 |
| 2500273 · Due To/From Music Row | 1,637,000.00 | $ (1,637,000.00) | $ 1,637,000.00 | | 1 |
| 2500275 · Due To/From New Salem | 180,675.36 | $ (180,675.36) | $ 180,675.36 | | 1 |
| 2500280 · Due To/From Nu Point East, LLC | -108,000.00 | $ (108,000.00) | | $ (108,000.00) | |
| 2500290 · Due To/From Parkview Hotel | -799,776.41 | $ (799,776.41) | | $ (799,776.41) | |
| 2500297 · Due To/From Peoria | 1,048,863.90 | $ (1,048,863.90) | $ 1,048,863.90 | | 1 |
| 2500300 · Due To/From Pure Africa | 4,792.06 | $ (4,792.06) | $ 4,792.06 | | 1 |
| 2500305 · Due To/From Rand Energy | -5,200.38 | $ (5,200.38) | | $ (5,200.38) | |
| 2500310 · Due To/From Rand Quarry | 98.96 | $ (98.96) | $ 98.96 | | 1 |
| 2500320 · Due To/From Riverside Arcade | 1,004,160.86 | $ (1,004,160.86) | $ 1,004,160.86 | | 1 |
| 2500325 · Due To/From SemJee | -100.00 | $ (100.00) | | $ (100.00) | |
| 2500340 · Due To/From S. Pine St | 326,000.00 | $ (326,000.00) | $ 326,000.00 | | 1 |
| 2500365 · Due To/From WDG | -150,000.00 | $ (150,000.00) | | $ (150,000.00) | |
| 2500377 · Due To/From WHY Debt Offshore | -20,065.00 | $ (20,065.00) | | $ (20,065.00) | |
| 2500384 · Due To/From WHYF IV | -300.00 | $ (300.00) | | $ (300.00) | |
| Total 2500 · Intercompany Loans | 19,414,058.56 | $ (129,224,384.82) | $ 74,319,221.69 | $ (54,905,163.13) | 45 |

Yellow denotes sign was changed

A

B

# of Loans

Check (A + B) =  $  19,414,058.56

**39**

GSA Investors

| FirstName | LastName | TotalInvested | SEC Count |
|---|---|---|---|
| Pierre | Abi-Mansour | 50000 | 1 |
| Candida | Abrahamson | 50000 | 1 |
| Philip J. and Barbara | Ackerman | 50000 | 1 |
| Rose D. | Altschull IRA | 0 | 1 |
| CLIFFORD H | ALTSCHULL IRA | 75000 | 1 |
| Yoram & Ronit Bar | Amar | 50000 | 1 |
| Sanjay and Pragnya | Amin | 50000 | 1 |
| Neil & Judith | Auerbach | 150000 | 1 |
| Mark | Bane | 100000 | 1 |
| Walter and Priscilla | Bayer | 50000 | 1 |
| Matthew | Bayer Trust | 100000 | 1 |
| LARRY W. & SHIRLEY F. | BERMAN | 100000 | 1 |
| Douglas F. and Jodi E. | Berman, TTEAGT | 100000 | 1 |
| Marvin | Bienenfeld | 100000 | 1 |
| Morris | Bienenfeld | 50000 | 1 |
| Diane | Binder | 100000 | 1 |
| Israel & Tsurit | Bivas | 200000 | 1 |
| Leyba H. | Blumenthal Revocable Trust | 100000 | 1 |
| Steven | Braña | 100000 | 1 |
| Lawrence | Brett III | 100000 | 1 |
| Gloria Burstyn-Mauer and Joseph | Burstyn | 50000 | 1 |
| Frank Anthony | Cafazzo | 93000 | 1 |
| Bernard | Capuzelo | 30000 | 1 |
| Larry and Cheryl | Cohen | 25000 | 1 |
| George and Joan | Cohen | 25000 | 1 |
| Tracey | Cohen | 25000 | 1 |
| George | Cohen IRA | 25000 | 1 |
| Lawrence P. | Costa | 100000 | 1 |
| Joan | Crawford IRA | 100000 | 1 |
| JAMES A & CHANDRA K | DICKINSON | 100000 | 1 |
| Harold and Charlotte | Dubin | 50000 | 1 |
| Susan K. | Eilberg | 50000 | 1 |
| Alan J. and Judith S. | Eisenman | 100000 | 1 |
| Mati | Elstein | 60000 | 1 |
| Neal and Sara | Faraone | 250000 | 1 |
| Paul | Faraone IRA | 150000 | 1 |
| Paul | Faraone, TOD | 50000 | 1 |
|  | Frediva Associates | 200000 | 1 |
| Matthew W. and Susan W. | Friesz | 100000 | 1 |
| Alan P. | Ganderson | 100000 | 1 |
| Charles | Gelfond | 25000 | 1 |
| Harriet | Gelfond Revocable Trust | 25000 | 1 |
| Jeffrey M. and Michelle | Gilbert | 25000 | 1 |
|  | Global Interpret Group, Ltd. | 0 | 1 |
| Moshe | Golan | 100000 | 1 |

GSA Investors

| | | | |
|---|---|---|---|
| Ivan and Esther | Goldblatt | 200000 | 1 |
| Jacob and Dvora | Goldner | 250000 | 1 |
| John Roger | Griffin, Jr. | 50000 | 1 |
| Laura & Fredric | Gross, Tenants by Entirety | 50000 | 1 |
| | Hardt Family Trust- Samuel Hardt & Solomon Bernstein TTEES | 150000 | 1 |
| Gary and Diane | Haskell | 100000 | 1 |
| Elie | Hassan Trust | 25000 | 1 |
| Nathan S. | Hassan Trust | 50000 | 1 |
| Mark J. and Anne B. | Hauser | 100000 | 1 |
| MARCIA S. | HOFHEIMER & MELVIN R MORRISON | 107000 | 1 |
| Kenneth | Ingber | 50000 | 1 |
| Kenneth | Ingber Custodian Anayna Ingber UGMA | 50000 | 1 |
| Kenneth | Ingber Custodian Chaya Ingber UGMA | 25000 | 1 |
| Kenneth | Ingber Custodian Josef Ingber UGMA | 25000 | 1 |
| Kenneth | Ingber Custodian Yecheskel Ingber UGMA | 25000 | 1 |
| Kenneth | Ingber Custodian Yehoshua Ingber UGMA | 50000 | 1 |
| Alvin L & Paula L | Jamison | 100000 | 1 |
| Helen Jones and Nan | Jandasek | 50000 | 1 |
| Douglas | Jones | 100000 | 1 |
| Jeffery & Kathy | Jones | 50000 | 1 |
| Roland & Elizabeth | Karganilla | 100000 | 1 |
| Karl A. and Karen F. | Lindquist, III | 250000 | 1 |
| | Lochridge Investors | 100000 | 1 |
| Anne W. | Loudermilch | 150000 | 1 |
| C. Wayne | Loudermilch | 150000 | 1 |
| Michael A. and Starr T. | Marcou | 50000 | 1 |
| William R. and Susan | Masciangelo | 50000 | 1 |
| William R. | Masciangelo IRA | 24313.98 | 1 |
| Susan L. | Masciangelo IRA | 34074.02 | 1 |
| Janet and Lawrence | McCarthy | 100000 | 1 |
| Charles K. | McCoy IRA | 30000 | 1 |
| JOHN | MILLER IRA | 110000 | 1 |
| Gayle | Newsome | 200000 | 1 |
| Bukola | Oduyelu | 100000 | 1 |
| Rut | Oren | 100000 | 1 |
| Michael R. and Elizabeth O. | Pampalone | 100000 | 1 |
| Lettie M. | Peele | 60000 | 1 |
| Yehuda and Lael | Polsky | 86000 | 1 |
| John R & Katherine B | Porterfield | 50000 | 1 |
| Darrel W. | Purdy          2 | 70000 | 1 |

GSA Investors

|  | | | |
|---|---|---|---|
|  | RAK Trust | 300000 | 1 |
| Naomi | Rausman Trust of 2002 | 25001 | 1 |
| Susan | Rausman Trust of 2002 | 25001 | 1 |
| Liba Miriam | Rausman Trust of 2002 | 25000 | 1 |
| Gad | Rosen | 40000 | 1 |
| Robin S. | Schick | 100000 | 1 |
| Judah | Schorr IRA | 100000 | 1 |
| Joel | Shapiro | 100000 | 1 |
| William V. & Cheryl L. | Shea II | 100000 | 1 |
| Iris and Shay | Shuker | 100484 | 1 |
| Gary K. | Sims | 50000 | 1 |
| Kristine | Szabo | 500000 | 1 |
| Jeffrey G. | Teune | 100000 | 1 |
| Jay | Viders, IRA | 50000 | 1 |
| Joseph L and Rosetta S. | Ward | 200000 | 1 |
|  | Wiener Family Trust | 100000 | 1 |
| Richard | Withrow | 50000 | 1 |
| Avri & Osnat | Ziv-Elbaz | 100000 | 1 |
|  |  | $ 9,119,874 | 103 |

3

**40**

2007 CompensationRevenue Report for your review.txt
From: Sheran Gabriel [SGabriel@wextrust.com]
Sent: Wednesday, April 09, 2008 6:04 PM
To: Steve Byers
Cc: Liz Thorpe
Subject: 2007 Compensation/Revenue Report for your review

Importance: High

Follow Up Flag: Follow up
Flag Status: Green

Attachments: Property Revenues-2007.xls


Dear Steve:


   Attached is an Excel Workbook that contains the information that you had
requested.


   The report consists of the follow:


1)       1st Tab is a chart that combines both the Revenue that was received from
WPEG & South Africa.

2)       2nd Tab shows just the revenue by Property for  WPEG

3)       3rd Tab shows what compensation was given on those funds and is shown as
you requested

·        Revenue Earned

·        WexSecLLC 1% comp

·        Equity Raiser Comp

·        Shereshevsky Compensation

·        Other Principal Compensation

·        Summary of all of the above

4)       4th thru 19th Tab shows the Revenue raised for each property and list the
investors & the amount of their investments

5)       20th Tab shows the revenue for the South African Division

6)       21st Tab gives the same information as Tab 3 but for South Africa

7)       22nd thru 24th Tab relates to the Investment Revenue for the South Africa
Investments


      Respectfully,


                                Page 1

2007 CompensationRevenue Report for your review.txt

Sheran L. Gabriel

Controller Private Equity Group

Wextrust Capital, LLC

999 Waterside Drive Suite# 2220

Norfolk, VA 23510

Ph: 757-623-0246

Email: sgabriel@wextrust.com

This e-mail transmission may contain information that is proprietary, privileged and/or confidential and is intended exclusively for the person(s) to whom it is addressed. Any use, copying, retention or disclosure by any person other than the intended recipient or the intended recipient's designees is strictly prohibited. If you are not the intended recipient or their designee, please notify the sender immediately by return e-mail and delete all copies.

| 2007 Revenue | Clarksville | Crowne | 47 Dean | Drake (Not Pd until Jan 08) | GDR Tier | GSA | HHMF 1 | Hammond | Interstate | Peoria | Shallowford | S Pine St. | W 82nd St. | W Belmont | WHYF III | WDFFI | WPPFI | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| $1,100,000 | $9,168,005 | | $3,325,000 | $2,054,404 | $7,096,938 | 457,000 | $13,384,480 | $8,050,014 | 1,330,000 | 3,930,806 | 825,000 | 2,500,000 | 1,266,500 | 190,000 | $6,487,040 | 6,614,442 | $3,713,715 | $71,473,343 |

**Totals**

| | Clarksville | Crowne | 47 Dean | Drake | GDR Tier | GSA | HHMF 1 | Hammond | Interstate | Peoria | Shallowford | S Pine St. | W 82nd St. | W Belmont | WHYF III | WDFFI | WPPFI | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Totals | $9,168,005 | | $3,325,000 | $2,054,404 | $7,096,938 | 457,000 | $13,384,480 | $8,050,014 | 1,330,000 | 3,930,806 | 825,000 | 2,500,000 | 1,266,500 | 190,000 | $6,487,040 | 6,614,442 | $3,713,715 | $71,473,343 |
| | 1% | 1% | 1% | 1% | 1% | 1% | 1% | 1% | 1% | 1% | 1% | 1% | 1% | 1% | 1% | 1% | 1% | 1% |
| WestSellLC | 11,000 | 91,680 | 33,235 | | 70,959 | 4,870 | 133,645 | 80,000 | 13,300 | 39,328 | 8,250 | 25,000 | 12,866 | 1,900 | 64,870 | 66,144 | 37,137 | 694,199 |

**Equity Raisers**

| Equity Raisers | Clarksville | Crowne | 47 Dean | Drake | GDR Tier | GSA | HHMF 1 | Hammond | Interstate | Peoria | Shallowford | S Pine St. | W 82nd St. | W Belmont | WHYF III | WDFFI | WPPFI | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Adrian, Paul | | 3,400 | | | 23,630 | | | | 7,600 | | | | | | | 13,400 | | | 48,030 |

**Old City Investment Partners**

| Name | Clarksville | Crowns | 47 Dean | Drake | GDR Tier | GSA | HHMF 1 | Hammond | Interstate | Peoria | Shallowford | S Pine St. | W 82nd St. | W Belmont | WHYF III | WDFRI | WPPRI | Total | 63 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Pogrebinsky, Joel | | | | | | | | | | | | | | | | | | | |
| Pogrebinsky, Joel | | | | | | | | | | | | | | | | | | | |
| Poupko, Simcha | | | | | | | | | | | | | | | | | | | |
| Poupko, Simcha | | | | | | | | | | | | | | | | | | | |
| Preiss, Richard | | | | | | | | | | | | | | | | | | | |
| Preiss, Yoav | | | 4,500 | 3,000.00 | | | 2,000 | | | | 800 | | | | | | | 3,800 |
| Rabinowitz, Ozzie | | | | | | | | | 10,600 | 9,300 | | | | 6,165 | | | | 40,285 |
| Rotshein, Yechaniel | | 4,500 | | | | | | | | | | | 1,000 | | | | 1,000 |
| Rosenberg, Nachman | | 1,000 | | 1,500 | | | 4,000 | | 2,000 | 10,900 | | | 3,750 | | | | 13,400 |
| RosenBam Bus Dev | | 4,500 | 14,860 | | | | 17,500 | 21,700 | | | | | | | | | | 75,560 |
| Rosenberg, Joshua | | | | | | | | | | | | | | | | | | 8,000 |
| Rubin, Rossi | | | | | | | | 3,500 | | | | | | | | | | 3,500 |
| Sammet, Nati | | | | | | | 750 | | | | | 400 | | | | | | 780 |
| Schapiro, Avraham | | 1,500 | | 6,500 | | | 4,000 | | | 6,000 | | | | | | | | 32,120 |
| SRS Advisors | | | | | | | | | | | | | 13,120 | | | | |
| Schlosser, AR | | 1,000 | | 1,500 | | | | 1,000 | | | | 3,200 | | | | | | 2,000 |
| Schrimer, Alex | | | | | | | | | | | | | | | | | | 6,700 |
| Tessler, Jane | | | | | | | | | | | | | | | | | | |
| Turner, Weldon | | | 19,300 | | | 8,316 | 15,158 | 9,200 | | 9,850 | | | 2,250 | | | | 7,417 | 77,321 |
| Vonderhaar, Rueven | | | | | | | | | | | | | | | | | | |
| Wade, Bruce | | 1,000 | | | | | 1,000 | | 1,000 | | | | | 3,750 | | | | |
| Weissman, Marcelo | | 7,500 | | | | | | | | | 6,000 | | | | | | | 2,000 |
| Worth, Yaakov | | 1,000 | | | | | 2,000 | | 6,000 | | 6,000 | | | | | | | 13,500 |
| Weslier, Yosef | | | | | | | | | | 1,000 | | | | | | | | 27,750 |
| Yoffee, Schlomo | | 3,000 | | 6,000 | | | 4,000 | | | | | | 1,000 | | | | | 1,000 |
| Zoaretz, Leon | | | 1,000 | | | | | | | | | | 6,750 | | | | | 2,250 |
| Zhvelich, Paul | | | | | | | | | 500 | | | | | | | | | 1,500 |
| Zusman, Uri | | 1,500 | | 1,500 | | | 750 | | 6,000 | | | | | | | | | 1,500 |
| **Total Commissions** | $18,000.00 | 266,079 | 102,725 | 168,885 | 168,885 | 16,995 | 314,684 | 240,195 | 40,780 | 126,334 | 24,000 | 73,835 | 93,159 | 152,265 | | 47,676 | 22,469 | 342,500 |
| | 3% | 3.74% | 3% | 2.36% | 0.00% | 3.53% | 2.35% | 2.49% | 3.00% | 3% | 3% | 3% | 2% | 2% | 0.00% | 0.72% | 0.74% | 2% |

**Other Property Commissions (Bonus)**

| 2007 | Clarksville | Crowns | 47 Dean | Drake | GDR Tier | GSA | HHMF 1 | Hammond | Interstate | Peoria | Shallowford | S Pine St. | W 82nd St. | W Belmont | WHYF III | WDFRI | WPPRI | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cohen, Amnon | $10,000 | 10,000 | | | | | | | | | | | | | | | | 10,000 |
| Gourmy, Max | $75,000 | 175,000 | | | | | | | | | | | | | | | | 175,000 |
| Kochover, Michael | $157,500 | 157,500 | | | | | | | | | | | | | | | | 157,500 |
| **Total Compensation** | | 342,500 | | | | | | | | | | | | | | | | 342,500 |
| | | 3.74% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.48% |

**Principal Compensation Stats**

| 2007 | Clarksville | Crowns | 47 Dean | Drake | GDR Tier | GSA | HHMF 1 | Hammond | Interstate | Peoria | Shallowford | S Pine St. | W 82nd St. | W Belmont | WHYF III | WDFRI | WPPRI | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Shereshevsky, Elza | $10,950 | 78,572 | 33,045 | 70,724 | 70,724 | 5,334 | 133,645 | 88,097 | 13,300 | 39,508 | 8,250 | 25,000 | 12,655 | 57,569 | 64,870 | 66,144 | 37,137 | 593,732 |
| Shereshevsky, Joel | 7,300 | 52,381 | 22,030 | 47,149 | 168,885 | 3,996 | 314,584 | 58,381 | 40,750 | 128,334 | 24,000 | 73,535 | 11,280 | 38,333 | 152,256 | 47,676 | 27,469 | 395,821 |
| **Total Compensation** | $18,250.00 | 130,953 | 55,075 | 117,873 | | 9,890 | 143,445 | 146,952 | 32,000 | 59,462 | 14,750 | 40,150 | 28,215 | 95,849 | 98,849 | 169,645 | 37,266 | 989,553 |
| | 2% | 1% | 2% | 2% | | 2% | 1% | 1% | 2% | 2% | 2% | 2% | 3% | 1% | 5% | 3% | 1% | 1.38% |

**Total Compensation**

Note:

| 2007 | Clarksville | Crowns | 47 Dean | Drake | GDR Tier | GSA | HHMF 1 | Hammond | Interstate | Peoria | Shallowford | S Pine St. | W 82nd St. | W Belmont | WHYF III | WDFRI | WPPRI | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| WexSett LLC | $11,000 | 91,680 | 33,250 | 70,969 | 70,969 | 4,570 | 128,645 | 80,500 | 13,300 | 39,508 | 8,250 | 25,000 | 12,655 | 64,870 | 64,870 | 66,144 | 22,360 | 694,189 |
| Equity Holders | $36,000.00 | 266,079 | 102,725 | 168,885 | 168,885 | 16,595 | 314,584 | 240,125 | 40,750 | 128,334 | 24,000 | 73,535 | 91,159 | 152,256 | 152,256 | 47,676 | 27,469 | 1,768,010 |
| Other Property Principals | $18,250.00 | 342,500 | | | | | | | | | | | | | | | | 342,500 |
| Principals | | 130,953 | 55,075 | 117,873 | | 9,890 | 143,445 | 145,952 | 32,000 | 59,462 | 14,750 | 40,150 | 28,215 | 95,849 | 95,849 | 169,645 | 37,266 | 989,553 |
| **Total Compensation** | $65,250 | 831,212 | 191,050 | 357,428 | | 31,055 | 591,674 | 466,577 | 86,050 | 225,104 | 47,000 | 138,685 | 78,818 | 312,974 | 169,645 | 101,872 | | 3,794,253 |
| | 6% | 9% | 6% | 5% | | 7% | 4% | 6% | 6% | 6% | 6% | 6% | 5% | 5% | 3% | 5% | | 5% |

2005/2006 raise under old comp %

Total Comp   $  3,794,253

## South Africa Division Compensation Stats vs Equity Raised -2007

| 2007 Revenue | Block III M & M | Brandon | Bret, LLC | Skeleton Coast Bret Investors | Bret Investors Skeleton Coast | Bret Investor Skeleton Coast III | Idex | Total | Tie cks | |
|---|---|---|---|---|---|---|---|---|---|---|
| Totals | $ 11,151,580 | $ - | $ - | $ 3,000,000 | $6,150,000 | $ 1,000,000 | - | $21,301,580 | $ 21,301,580 | Tie ck |
| | 1% | 1% | 1% | 1% | 1% | 1% | 1% | 1% | | |
| WexSecLLC | $ 111,516 | $ - | $ - | $ 30,000 | $ 61,500 | $ 10,000 | $ - | $ 213,016 | $ 213,016 | Tie ck |
| % of WexSec Compensation vs. Equity Raised | 1% | 1% | 1% | 1% | 1% | | | | | |

| Equity Raisers | Block III M & M | Brandon | Bret, LLC | Skeleton Coast Bret Investors | Bret Investors Skeleton Coast | Bret Investor Skeleton Coast III | Idex | Total |
|---|---|---|---|---|---|---|---|---|
| Adrian, Paul | | | | | | | | $ |
| Arnow, Zalman | | | | | | | | $ |
| Ashman, Joshua | | | | | | $ 1,500.00 | | $ 1,500 |
| Banamu, Avi | | | | | $ 1,000 | | | $ 1,000 |
| Basch, Yakov | | | | | | | | $ - |
| Barr, Jeffrey | | | | | | | | $ - |
| Benjamin, Roni | | | | | | | | $ |
| Ben-Zeev, Joseph | $ 2,000 | | | | | | | $ 2,000 |
| Berkowitz | | | | | | | | $ - |
| Berman, Bruce | | | | | $ 3,000 | | | $ 3,000 |
| Bivas, Israel | | | | | | | | $ |
| Burdman, Avner | | | | | $ 300 | | | $ 300 |
| Cote, Michelle | $ 131,500 | | | $ 25,000 | $ 11,550 | | | $ 168,050 |
| Daniel, Daniel | $ 1,000 | | | | | | | $ 1,000 |
| Eisenberg, Eric | | | | | $ 250 | | | $ 250 |
| Erickson, Eric | | | | | | | | $ |
| Fischer, Glen | $ 3,000 | | | | | | | $ 3,000 |
| Fischer, Maurice | $ 4,500 | | | | | | | $ 4,500 |
| Friedman, Joseph | $ 18,000 | | | | | | | $ 18,000 |
| Friedman, Peter | | | | | | | | $ - |
| Friedman, Zeev | | | | | | | | $ |
| Gadka, Yaniv | $ 3,000 | | | | | | | $ 3,000 |
| Gantz, Jacob | | | | | | | | $ |
| Gluck, Zvi | | | | | | | | $ - |
| Gold, Alan | | | | 4000 | $ 6,000 | | | $ 10,000 |
| Gordon, Michael | | | | | | | | $ |
| Gross, Tzvika | | | | | | | | $ - |
| Gurvey, Matt | | | | | | | | $ |
| Hacker, Nadav | | | | | | | | $ - |
| Heller, Gary | | | | | | | | $ |
| Heller, Irwin | | | | | | | | $ |

| Principals | Block III/ M & M | Brandon | Bret, LLC | Skeleton Coast Bret Investors | Bret Investors Skeleton Coast | Bret Investor Skeleton Coast III | Idex | Total | Tie ck |
|---|---|---|---|---|---|---|---|---|---|
| Hess, Mark | $ 3,000 | | | | | | | $ - | |
| Horowitz, Yitzchak | | | | | $ 11,750 | | | $ 14,750 | |
| Ingber, Avi | | | | | | | | $ - | |
| Izenberg, Scott | $ 6,000 | | | | | | | $ 6,000 | |
| Jacobowitz, Stuart | | | | | | | | $ - | |
| Krasner, Shimon | | | | | | | | $ - | |
| Lange, Yosef | $ 1,000 | | | | | | | $ 1,000 | |
| Lerner, Yitzchak | | | | | | | | $ - | |
| Mandel, Yitzchak | | | | | | | | $ - | |
| Meltzer, Andrea | $ 10,950 | | | | $ 9,000 | | | $ 19,950 | |
| Meyer, Motty | | | | | | | | $ - | |
| Mortgage Management | | | | | | | | $ - | |
| Mostofsky, Michael | $ 66,864 | | | $ 32,000 | $ 58,750 | $ 5,875 | | $ 163,489 | |
| Nabers, Tracey | | | | | | | | $ - | |
| Oberfander, Jacob | | | | | | | | $ - | |
| Old City Investment Partners | | | | | | | | $ - | |
| Pogobowitz, Joel | | | | | | | | $ - | |
| Poupko Simcha | | | | | | | | $ - | |
| Puleo, Richard | | | | | $ 100 | | | $ 100 | |
| Press, Yoav | $ 12,000 | | | | $ 7,400 | | | $ 19,400 | |
| Rabinowitz, Ozzie | | | | | | | | $ - | |
| Rakoff, Dani | $ 5,002 | | | | | | | $ 5,002 | |
| Rosenberg, Nachman | $ 54,459 | | | | $ 93,350 | $ 15,500.00 | | $ 163,309 | |
| Rosen/Ram Bus Dev | $ 4,000 | | | | $ 17,200 | $ 2,500 | | $ 23,700 | |
| Rubin, Issac | | | | | | | | $ - | |
| Sammett, Naitil | | | | | | | | $ - | |
| Schapiro, Avraham | | | | | | | | $ - | |
| SRS Advisors | | | | | | | | $ - | |
| Shertz, Philip | | | | | | | | $ - | |
| Smokler, Stewart | | | | | | | | $ - | |
| Tisdale, Janie | | | | | | | | $ - | |
| Turner, Weldon | $ 7,500 | | | $ 16,500 | | | | $ 24,000 | |
| Verschleisser, Rueven | | | | | | | | $ - | |
| Wade, Bruce | $ 5,000 | | | | | | | $ 5,000 | |
| Worch, Yaakov | | | | | | | | $ - | |
| Wosner, Yosef | | | | | | | | $ - | |
| Yoffe, Scholomo | | | | | | | | $ - | |
| Zinar, Ehud | | | | | | | | $ - | |
| Zvulun, Uzi | | | | | | | | $ - | |
| Total Compensation | $ 338,774 | $ - | $ - | $ 77,500 | $ 219,650 | $ 26,375 | $ - | $ 661,299 | $ 661,299 |
| % of Equity Raiser Comp vs. Equity Raised | 3% | 0% | 0% | 3% | 4% | 3% | 0% | 3% | |

| Principals | Block III/ M & M | Brandon | Bret, LLC | Skeleton Coast Bret Investors | Bret Investors Skeleton Coast | Bret Investor Skeleton Coast III | Idex | Total |
|---|---|---|---|---|---|---|---|---|
| Shereshevsky, Elka | $ 149,746 | | | $ 36,900 | $ 83,925 | | | $ 270,571 |
| Shereshevsky, Joe | $ 99,831 | | | $ 24,600 | $ 55,950 | | | $ 180,381 |
| Shereshevsky Foundation, Inc | | | | $ 2,250 | | | | $ 2,250 |

453,202

| | Block III M & M | Brandon | Bret, LLC | Skeleton Coast Bret Investors | Bret Investors Skeleton Coast | Bret Investor Skeleton Coast III | Total |
|---|---|---|---|---|---|---|---|
| Total Compensation | $ 249,577 | $ - | $ - | $ 63,750 | $ 139,875 | $ - | $ 453,202 |
| % of Shereshevsky Comp vs Equity Raised | 2% | 2% | 2% | 2% | 2% | 0% | 2% |

| Date | Add'l Bonus Comp | Block III M & M | Brandon | Bret, LLC | Skeleton Coast Bret Investors | Bret Investors Skeleton Coast | Bret Investor Skeleton Coast III | Total |
|---|---|---|---|---|---|---|---|---|
| 03/23/07 | Shereshevsky's | $ 250,000 | | | | | | $ 250,000 |
| 03/30/07 | Shereshevsky's | $ 225,000 | | | | | | $ 225,000 |
| 03/30/07 | Shereshevsky's | $ 225,000 | | | | | | $ 225,000 |
| 03/30/07 | Shereshevsky's | $ 225,000 | | | | | | $ 225,000 |
| 03/30/07 | Michael Van der Merwe | $ 200,000 | | | | | | $ 200,000 |
| 03/30/07 | Shereshevsky's | $ 50,000 | | | | | | $ 50,000 |
| 04/03/07 | Steve Byers | $ 250,000 | | | | | | $ 250,000 |
| 07/27/07 | Shereshevsky's | | | | | $ 260,000 | | $ 260,000 |
| 07/27/07 | Shereshevsky's | | | | | $ 90,000 | | $ 90,000 |
| 08/01/07 | Steve Byers | | | | | $ 100,000 | | $ 100,000 |
| 08/02/07 | Shereshevsky's & LP II | | | | | $ 170,000 | | $ 170,000 |
| 08/16/07 | Shereshevsky's | | | | | $ 170,000 | | $ 170,000 |
| 08/29/07 | Michael Mostofsky | | | | | $ 100,000 | | $ 100,000 |
| 05/14/07 | Shereshevsky's | | | | | $ 50,819 | | $ 50,819 |
| | Shereshevsky's | | | | $ 150,000 | | | $ 150,000 |
| Totals | | $ 1,200,000 | $ - | $ - | $ 150,000 | $ 770,819 | $ - | $ 2,120,819 |
| % of Principal Bonus Compensation vs Equity Raised | | 11% | 0% | 0% | 5% | 13% | 0% | 10% |

$ 2,120,819

| Total Compensation | Block III M & M | Brandon | Bret, LLC | Skeleton Coast Bret Investors | Bret Investors Skeleton Coast | Bret Investor Skeleton Coast III | Idex | Total |
|---|---|---|---|---|---|---|---|---|
| WexSecLLC | $ 111,516 | | | $ 30,000 | $ 61,500 | $ 10,000 | | $ 213,016 |
| Equity Raisers | $ 338,774 | | | $ 77,500 | $ 219,650 | $ 25,375 | | $ 661,299 |
| Principals | $ 249,577 | | | $ 63,750 | $ 139,875 | | | $ 453,202 |
| Other Property (Bonus) | $ 1,200,000 | | | | | | | $ 1,200,000 |
| Total Compensation | $ 1,899,868 | $ - | $ - | $ 321,250 | $1,591,844 | $ 35,375 | | $ 3,448,337 |
| % of SA Comp vs Equity Raised | 17% | 0% | 0% | 11% | 19% | 4% | 0% | 16% |

$ 3,448,337

Total Comp  $ 3,448,337
Tie Ck

**41**

Block III

| FirstName | LastName | TotalInvested | SEC Count |
|---|---|---|---|
| Saul and Sandra | Ben-Zeev | 100000 | 1 |
| ROBERT | BRUCKSTEIN | 150000 | 1 |
| M. Albert | Carmichael | 100000 | 1 |
| Sylvia Anne | Chapman | 50000 | 1 |
| ANTHONY | COREN | 100000 | 1 |
| Lawrence P. | Costa | 3000000 | 1 |
| Michelle | Cote, TOD | 50000 | 1 |
| MOSHE | DADOUN | 50035.72 | 1 |
| Daniel | Daniel | 100000 | 1 |
| JERI | DAVIS-RUBIN REV TRUST | 250000 | 1 |
| Aryeh and Ruth | Feldman | 100000 | 1 |
| MAURICE | FISCHLER | 150000 | 1 |
| DAVID | FOX | 250100.45 | 1 |
| Zeev Yehuda and Shoshana | Friedman | 100000 | 1 |
| JOHN | GIMENEZ | 68790.67 | 1 |
| Ivan and Esther | Goldblatt | 100000 | 1 |
| MICHAEL | GORDON | 200000 | 1 |
| Scott and Pamela | Izenberg | 200000 | 1 |
|  | JMA RAILROAD AVENUE, LLC | 250000 | 1 |
|  | Joedas Investment, Inc. | 100000 | 1 |
| BERNARD | KALISCH | 100000 | 1 |
| Jack C. | Kanter Revocable Trust | 160000 | 1 |
| Eugene L | Kanter Revocable Trust | 100000 | 1 |
|  | Kimberly Investment Group LP | 800000 | 1 |
|  | KLEINMAN FAMILY FOUNDATION | 250000 | 1 |
| B D | LADERBERG | 500000 | 1 |
| James M. and Joan M. | McKenney | 252815.71 | 1 |
| Andrea | Meltzer Living Trust | 105000 | 1 |
| Douglas and Laura | Montagna | 50000 | 1 |

1

Block III

| | | | |
|---|---|---:|---:|
| Aron | Nussencweig | 150000 | 1 |
| SHELDON M | RABINOVICI | 250000 | 1 |
| | RAK Trust | 500000 | 1 |
| | ROSENRAM BUSINESS DEVELOPMENT LTD. | 865257.45 | 1 |
| | ROSENRAM TRUST COMPANY LTD | 800000 | 1 |
| ELKA | SHERESHEVSKY | 28000 | 1 |
| | SNL CAPITAL | 100000 | 1 |
| | Starling Family Limited Partnership | 170000 | 1 |
| THOMAS M | TYE | 250000 | 1 |
| Ariel | Ziser | 100000 | 1 |
| | | $ 11,000,000 | 39 |

**42**

Peoria

| FirstName | LastName | TotalInvested | SEC Count |
|-----------|----------|--------------:|:---------:|
| | 41D3629 CANADA, INC. | 200000 | 1 |
| LISA | AIKEN, IRA | 100000 | 1 |
| Yvonne F. | Batchelder, TOD | 50000 | 1 |
| FAYE | BENEDICT | 50000 | 1 |
| EDWARD | BINET | 300000 | 1 |
| ROBERT | BRUCKSTEIN | 100000 | 1 |
| George and Joan | Cohen | 50000 | 1 |
| DANIEL S. | COHEN | 50000 | 1 |
| | CONGREGATION KHAL CHASIDIM | 150000 | 1 |
| DAVID S. K. | COREY JR. LIVING TRUST | 100000 | 1 |
| Lawrence P. | Costa | 100000 | 1 |
| CHERYL | EPSTEIN | 250000 | 1 |
| Amir | Erlichman | 100000 | 1 |
| DAVID | FOX | 50000 | 1 |
| Charles | Gelfond | 50000 | 1 |
| Harriet | Gelfond Revocable Trust | 50000 | 1 |
| NADINE | GESUNDHEIT | 155000 | 1 |
| | HBO ASSOCIATES | 50000 | 1 |
| MOSHE | HERTZ | 50000 | 1 |
| | HOLDA PROPERTIES | 100000 | 1 |
| JOHN A. | HORN SEP IRA | 0 | 1 |
| SHIRLEY | INGBER | 100000 | 1 |
| GEOFFREY | JASON | 150000 | 1 |
| | Joedas Investment, Inc. | 100000 | 1 |
| Isaiah and Ruthie | Karlinsky | 50000 | 1 |
| ISAIAH | KARLINSKY & FAY K. GLICK | 50000 | 1 |
| Max and Belle | Karlinsky Family Trust | 50000 | 1 |
| DANIEL | KASZOVITZ | 50000 | 1 |
| Barry | Kohn, FBO Alyssa Kohn | 100000 | 1 |
| Barry | Kohn, FBO Danielle Zemel | 100000 | 1 |
| JOEL | KOLEN | 100000 | 1 |
| ROY AND BARBARA | LEBOVITZ | 100000 | 1 |
| AVIVA AND MENACHEM | LEIBTAG | 30000 | 1 |
| LEONARD A. | LURIE | 49807 | 1 |
| | LVAS CHICAGO, LLC | 199999 | 1 |
| Paul A. | May IRA | 60000 | 1 |
| HARVEY AND JOAN | NEWMAN | 150000 | 1 |
| | PEORIA ASSOCIATES | 101000 | 1 |
| SHELDON M. | RABINOVICI | 200000 | 1 |
| SHEILA | RABINOVICI | 150000 | 1 |
| Earl C. | Rigsby IRA | 100000 | 1 |
| CHAIM AND RISA | ROTHMAN | 50000 | 1 |
| A. GEORGE & STEPHANIE R. | SAKS JTWROS | 50000 | 1 |
| TOBY | SHACHAR-FLEISHER | 200000 | 1 |
| Meier | Stein | 100000 | 1 |
| AKIVA F. | TURNER | 20000 | 1 |

1

Peoria

| SHALOM | ULLMAN | 75000 | 1 |
|---|---|---|---|
| Jay R. | Viders | 50000 | 1 |
| ZACHARY | VIDERS | 25000 | 1 |
| JARED | VIDERS | 25000 | 1 |
| TATIANA | VISOTSKI | 50000 | 1 |
| Jeffrey | Webster | 50000 | 1 |
| Howard | Wengrow | 50000 | 1 |
| James M. | Williamson | 100000 | 1 |
| TODD | WRIGHT | 50000 | 1 |
| AMIRAM Y. | ZEIGER | 50000 | 1 |
| | | $    5,040,806 | 56 |

2

**43**

## Unknown

| | |
|---|---|
| **From:** | Jen Edmiston [JEdmiston@wextrust.com] |
| **Sent:** | Tuesday, November 20, 2007 12:58 PM |
| **To:** | Steve Byers |
| **Cc:** | Joseph Shereshevsky; Sheran Gabriel |
| **Subject:** | RE: Crowne-Phoenix |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Green |

Understood...It is on the second tab and below:

| Loan to WTC 8459 | | |
|---|---|---|
| 10/11/2007 | $ 100,000.00 | From Crowne to WTC: loan to fund wire for 124 Adams St earnest money |
| 10/23/2007 | $ 200,000.00 | From Crowne to WTC: loan to fund partial distribution check funding |
| 10/26/2007 | $ 580,000.00 | From Crowne to WTC: loan to fund partial distribution check funding |
| 10/26/2007 | $ 220,000.00 | From Crowne to WTC: loan to fund wire to WEP Northern Trust account |
| 10/26/2007 | $ 219,806.85 | From Crowne to WTC: loan to fund partial distribution check funding |
| 10/29/2007 | $ 225,000.00 | From Crowne to WTC: loan to fund wire to PAM, repayment recvd in WTC |
| 10/29/2007 | $ 400,000.00 | From Crowne to WTC: loan to fund 10-31-07 payroll transfers |
| 10/30/2007 | $ 300,000.00 | From Crowne to WTC: return of loan |
| 10/31/2007 | $ 600,000.00 | From Crowne to WTC: loan to fund GDR transfers and loan to PAM LLC |
| 11/9/2007 | $ 100,000.00 | From Crowne to WTC: loan to fund wire for Drake Oak Brooke earnest mo |
| 11/13/2007 | $ 250,000.00 | From Crowne to WTC: loan to fund 11-15-07 payroll transfers |
| 11/14/2007 | $ 175,000.00 | From Crowne to WTC: loan to help fund wire to Mike Gourney, commissio compensation |
| | $ 3,369,806.85 | |

Please note that I based the descriptions on what was recorded at the time of the transfer. Sheran would be able to provide more detailed information regarding any specific transfers/loans.

Thank you,
**Jen Edmiston**
WexTrust Capital, LLC
999 Waterside Drive, Ste 2220
Norfolk, VA 23510
757.623.0246 (Office)
757.213.5222 (Direct)
757.213.5231 (Fax)
jedmiston@wextrust.com

**From:** Steve Byers
**Sent:** Tuesday, November 20, 2007 12:50 PM
**To:** Jen Edmiston

6/4/2008

**Cc:** Joseph Shereshevsky; Sheran Gabriel
**Subject:** RE: Crowne-Phoenix

I need a complete reconciliation of the $3.3 million to WTC.

---

**From:** Jen Edmiston
**Sent:** Tuesday, November 20, 2007 11:24 AM
**To:** Steve Byers
**Cc:** Joseph Shereshevsky; Sheran Gabriel
**Subject:** FW: Crowne-Phoenix

Steve,

Please find attached the revised report you requested. The first tab (titled "Crowne") is a more organized layout of the sources and uses. The second tab (titled "Detail") shows what makes up each total reported.

Thank you,
**Jen Edmiston**
WexTrust Capital, LLC
999 Waterside Drive, Ste 2220
Norfolk, VA  23510
757.623.0246 (Office)
757.213.5222 (Direct)
757.213.5231 (Fax)
jedmiston@wextrust.com

---

**From:** Jen Edmiston
**Sent:** Tuesday, November 20, 2007 10:38 AM
**To:** Steve Byers
**Cc:** Joseph Shereshevsky; Sheran Gabriel
**Subject:** Crowne-Phoenix

Good morning Steve,

Please find attached the use of funds report you requested yesterday afternoon for Crowne-Phoenix Investors, LLC.

Thank you,
**Jen Edmiston**
WexTrust Capital, LLC
999 Waterside Drive, Ste 2220
Norfolk, VA  23510
757.623.0246 (Office)
757.213.5222 (Direct)
757.213.5231 (Fax)
jedmiston@wextrust.com

This e-mail transmission may contain information that is proprietary, privileged and/or confidential and
is intended exclusively for the person(s) to whom it is addressed. Any use, copying, retention or
disclosure by any person other than the intended recipient or the intended recipient's designees is
strictly prohibited. If you are not the intended recipient or their designee, please notify the sender
immediately by return e-mail and delete all copies.
------_extPart_001_01C82B9E.E38546

6/4/2008

**44**

Crowne-Phoenix

| FirstName | LastName | TotalInvested | SEC Total |
|---|---|---|---|
| | 1818 Keswick Partners | 30000 | 1 |
| MURRAY & ESTHER | ALTER | 100000 | 1 |
| HOWARD J. | AVERBUCH TRUST | 50000 | 1 |
| David A. | Barto IRA | 100000 | 1 |
| BARRY | BERMAN | 25000 | 1 |
| MARK | BERNSTEIN | 75000 | 1 |
| EDWARD | BINET | 300000 | 1 |
| DENNIS & KATHLEEN | BLOUGH | 100000 | 1 |
| DENNIS | BOWERMAN, IRA | 20800 | 1 |
| VIRGINIA | BOWERMAN, IRA | 79200 | 1 |
| DAVID K. | BRIDGER IRA | 57244.18 | 1 |
| JULIA N. | BRITTAN | 128351.77 | 1 |
| ROBERT DAVID | BROUSSARD TOD | 50000 | 1 |
| | BROWN CORP. | 200000 | 1 |
| | BRUNSWICK INVESTMENTS, LLC | 100000 | 1 |
| | CITY FIRST FOUNDATION | 220000 | 1 |
| STEPHEN | COSTA | 100000 | 1 |
| Monte | Crowl | 50000 | 1 |
| | CROWNE INVESTMENTS | 150000 | 1 |
| MARK & CAMILLE | DELANEY | 100000 | 1 |
| | DERLIN LLC | 125000 | 1 |
| | EB BUSINESS TRUST | 600000 | 1 |
| DANIEL D | ELY | 50000 | 1 |
| Virginia E. and Paul K. | Evenstad | 100000 | 1 |
| Neal and Sara | Faraone | 145720.96 | 1 |
| August G. | Fowler | 100000 | 1 |
| DAVID | FOX | 50000 | 1 |
| Martin | Fulop | 55000 | 1 |
| Allan | Gelfond Rev. Trust | 50000 | 1 |

| | | | |
|---|---|---|---|
| NADINE | GESUNDHEIT | 150000 | 1 |
| MOSES | GRUNBAUM | 100000 | 1 |
| KAREN | HAIMOV TOD | 100000 | 1 |
| BARBARA F. | HART IRA | 50000 | 1 |
| ELVIRA | HOGANSON | 100000 | 1 |
| GARRY L. | HUFF MD, INC EMPL PSP | 100000 | 1 |
| | JAFS ARIZONA, LLC | 249999.66 | 1 |
| Roland & Elizabeth | Karganilla | 145000 | 1 |
| Sharon | Kauffman IRA | 100000 | 1 |
| DEBRA M. | KEELING | 100000 | 1 |
| | KEREM OBER LLC | 600000 | 1 |
| | KEREN CHASDEI MOISHE, INC. | 500000 | 1 |
| | Kimberly Investment Group LP | 100000 | 1 |
| | KOHN LIVING TRUST U/A/D 6/7/1993 | 100000 | 1 |
| SHIMON & WENDY | KRASNER | 65000 | 1 |
| B.D. | LADERBERG | 100000 | 1 |
| MARISSA & DAVID | LEVENSON, JTWROS | 50000 | 1 |
| C. Wayne | Loudermilch | 100000 | 1 |
| Anne W. | Loudermilch | 100000 | 1 |
| GEORGE A and PATRICIA B | LUTZ, JTWROS | 100000 | 1 |
| | Miller-Waxelbaum Family Foundation | 49999 | 1 |
| | MM Irrevocable Trust U/A/D 10/02/98 | 100000 | 1 |
| Man Tung | Mok and Mei Fong Cheng | 50000 | 1 |
| Valda S. | Morgan | 75000 | 1 |
| THOMAS | MOWELL IRA | 70000 | 1 |
| THOMAS | MOWELL, ROTH IRA | 30000 | 1 |
| Mark L. | Nachman IRA | 50000 | 1 |
| Devora | Neuman | 150000 | 1 |
| PAUL | NEWMAN FOUNDATION | 100000 | 1 |
| Bukola | Oduyelu | 100000 | 1 |

Crowne Phoenix

| | | | |
|---|---|---|---|
| Mark and Jacqueline | Palsha | 50000 | 1 |
| DONNA | PASTOR | 100000 | 1 |
| PAUL T. | PEELE | 100000 | 1 |
| | PHIPPS FAMILY REVOCABLE TRUST | 100000 | 1 |
| | PHOENIX HOTEL, LLC | 100000 | 1 |
| JOHN | PIERCE IRA | 133000 | 1 |
| | POLR CAPITAL INVESTMENTS LLC | 50000 | 1 |
| | RAK Trust | 150000 | 1 |
| Gary | Rego IRA | 38688.83 | 1 |
| Steven M. and Sarah G. | Rothman | 60000 | 1 |
| REUBEN | ROTHSCHILD TOD | 150000 | 1 |
| A. GEORGE & STEPHANIE R. | SAKS JTWROS | 50000 | 1 |
| BETTE | SEGAL TOD | 50000 | 1 |
| BENYAMIN AND LIORA | SHALOM | 50000 | 1 |
| JOEL H. | SHAPIRO REVOCABLE TRUST | 150000 | 1 |
| Bertram | Stein Revocable Trust | 50000 | 1 |
| F.L. | Sterling Trust | 200000 | 1 |
| CARL | THOREN, TOD | 100000 | 1 |
| Jeffrey | Webster | 50000 | 1 |
| Howard | Wengrow | 50000 | 1 |
| | Wiener Family Trust | 200000 | 1 |
| AVRAHAM | WOLITZKY | 50000 | 1 |
| ANDY | WOODMAN | 100000 | 1 |
| AMIRAM Y. | ZEIGER | 75000 | 1 |
| | | $ 9,303,004 | 83 |

**45**

## Unknown

| | |
|---|---|
| **From:** | Joseph Shereshevsky [josephs@wextrust.com] |
| **Sent:** | Tuesday, October 09, 2007 10:16 AM |
| **To:** | Michael Mostofsky; Sheran Gabriel; Ralph Sabine |
| **Cc:** | Steve Byers; Tom Coorsh |

**Subject:** crwone plaza

Please advise the equity raisers that all funds for crowne plaza should now be sent to Norfolk , Wachovia effective immediately.  All monies coming in should only be deposited into Wachovia account

Please send out the wire instructions to whoever it is needed

Thank you

joe

**Joseph Shereshevsky**
**COO**
**WexTrust Capital, LLC**
999 Waterside Drive, Suite 2220
Norfolk, VA  23510
josephs@wextrust.com
Office:  (757) 623-0246
Direct:  (757) 213-5223
Cell: (732) 904-3368
Fax:  (757) 623-6215


Beth McClung
Executive Assistant to COO / Office Manager
999 Waterside Drive, Suite 2220
Norfolk, VA  23510
bmcclung@wextrust.com
Office:  (757) 623-0246
Direct:  (757) 213-5223
Fax:  (757) 623-6215

This e-mail transmission may contain information that is proprietary, privileged and/or confidential and is intended exclusively for the person(s) to whom it is addressed. Any use, copying, retention or disclosure by any person other than the intended recipient or the intended recipient's designees is strictly prohibited. If you are not the intended recipient or their designee, please notify the sender immediately by return e-mail and delete all copies.

------_extPart_001_01C80A7E.F45B61

6/23/2008

**46**

## Unknown

| | |
|---|---|
| **From:** | Steve Byers [SByers@wextrust.com] |
| **Sent:** | Monday, February 25, 2008 2:21 PM |
| **To:** | Joseph Shereshevsky |
| **Attachments:** | p.gif |

We will be closing on W. 82nd very soon.  We can use the money but obviously we used $1.1 million for the Gold Coast and another $1.6 million for Crown for which we raised but never paid back.  I have to put up $432,000 to refinance the crown.  I get that back.  I already put up that money.

It would help if some of the investors are going to move their money into the GDR.  Any idea on who and how much would be willing?

Steve Byers
*CEO*
WexTrust Capital
333 W. Wacker Drive
Suite 1600
Chicago, IL 60606
T: 312/881-6000
F: 312/881-6001
www.wextrust.com

---

☒ Right-click here to download pictures. To help protect your privacy, Outlook prevented automatic download of this picture from the Internet.
Upgrade Your Email - Click here!

---

This e-mail transmission may contain information that is proprietary, privileged and/or confidential and is intended exclusively for the person(s) to whom it is addressed. Any use, copying, retention or disclosure by any person other than the intended recipient or the intended recipient's designees is strictly prohibited. If you are not the intended recipient or their designee, please notify the sender immediately by return e-mail and delete all copies.

**47**

## Unknown

| | |
|---|---|
| **From:** | Steve Byers [SByers@wextrust.com] |
| **Sent:** | Tuesday, November 20, 2007 12:28 PM |
| **To:** | Joseph Shereshevsky; Amnon Cohen |
| **Subject:** | RE: thanks for asking me |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Green |

The issue is that we are partners. I can show you many emails that you, Joe, complained - like Amnon - if we do something without talking to you first about it. This is something that we should have and needed to discuss first. It was not yours alone to prioritize. A defaulted loan with Broadway can have far bigger short term issues than anything else. If it made sense and we were sure about where the money would be coming from and the timing than we probably would have gone along making all this bad blood unnessary.

Eitherway, it appears that Crown Plaza is a mess and we have to fix it from a reconciliation and return of capital point of view.

---

**From:** Joseph Shereshevsky
**Sent:** Monday, November 19, 2007 2:19 PM
**To:** Amnon Cohen
**Cc:** Steve Byers
**Subject:** RE: thanks for asking me

You can ask for a forensic audit. I have carte balnche to control the money, not to use it as I see fil. Id don't do a transaction that I don't speak over with Steve. We have been surviving because of that for the last 2 years.

As of today the company owes Africa about 575,000 that is outstanding,
The company owes me quite a bit of money including 200,000 I lent them this morning so we can cover payroll including yours.

The reason why it is more important to pay back Africa is because our only hope of getting out of our mess is Africa. Including you Amnon. We are in debt and I am working diligently to get us out of it. Go ahead and do a forensic audit. It will show that we spend about 1,000,000 more a month than we make, for the last 3 years especially the last 19 months. Now that you know that we take in less than we get by 1,000,000 a month do you still want your payroll??????? If not please let me relieve you of it so you can do the right thing.

As long as you get payroll from this company I have a right to cover as we need it. If you want to forgoes your payroll then you every right to do so. The only reason why your expenses get paid is because I control the money. You want to go back to Patti Davis days then go ahead.. be my guest.

Amnon

Whether you want to know it or not babbling like a woman will get you no where. We are on the verge of becoming a very strong company. However even if we do it will still be very hard going for the next 6 months to a year. We may have to maneuver and do things that maybe we would not do if we were cash rich. You want to bicker go ahead and bicker. It wont do anything for us. You want to be a team man then show it.

We had a choice. Payroll or Broadway. And even then it was only about 500,000. even if we would of paid Broadway the extra 500,000 , however if we would of not paid payroll there is no chance we ever could of paid Broadway or anyone else back the money. Those are the facts of life. No payroll the company closes down and we are done. No more raises. No more anything. It may not be good facts but they are facts.

Why don't u grow up and play along. I believe we will make it. However if we have internal bullshit like this I can guarantee you we wont

joe

**From:** Amnon Cohen
**Sent:** Monday, November 19, 2007 2:55 PM
**To:** Joseph Shereshevsky
**Subject:** FW: thanks for asking me

Just that we are all on the same page and out in the open. I don't want you to think that I went behind your back.

**From:** Amnon Cohen
**Sent:** Saturday, November 17, 2007 5:09 PM
**To:** Steve Byers
**Subject:** FW: thanks for asking me

Why are we paying money to Africa before pay back Broadway Bank. This is crazy. We both signed a personal guarantee here.
Not comfortable with Joe having Carte Blanche with the company's $$$$. If this continues, I will ask for a forensic audit.

Amnon Cohen
Principal
Wextrust Capital, LLC
114 West 47th Street
20th Floor
New York, NY 10036
Phone: (212) 643-6190
Fax:    (212) 643-6192
Mobile: (201) 852-4944

**From:** Joseph Shereshevsky
**Sent:** Thursday, November 15, 2007 11:00 PM
**To:** Amnon Cohen
**Subject:** RE: thanks for asking me

U have no idea what u r talking about. Wextrust borrowed about a month ago 750,000 from Skelton coast. Now we needed it so
we took back 250,000. we are still owed 450,000 on that and I will continue to take it out until it is paid.

That's why I tell u ran runs circles around you. You only look at ½ pics because u r playing pacman or whatever while you have
delicate discussions.

On another note, I have no idea what u r saying about my ass being on the line. Can you pleas elaborate . because I don't know
what u r talking about.

Whether you care or not if  I leave is totally irrelevant., I am rich enough today that I can do what I want. I invested my money very
well the last 3 years. I accumulated several million dollars . I don't need wextrust anymore emanon. I know one thing. Hes in im
out. If im out mike Is out. That shuts down the equity department.

Its not a threat. I wont bow to extortion, you can I wont

joe

**Joseph Shereshevsky**
**COO**
**WexTrust Capital, LLC**
999 Waterside Drive, Suite 2220
Norfolk, VA  23510
josephs@wextrust.com
Office:  (757) 623-0246
Direct:  (757) 213-5223
Cell:  (732) 904-3368
Fax:  (757) 623-6215

Beth McClung

6/4/2008

Executive Assistant to COO / Office Manager
999 Waterside Drive, Suite 2220
Norfolk, VA  23510
bmcclung@wextrust.com
Office:  (757) 623-0246
Direct:  (757) 213-5223
Fax:  (757) 623-6215

---

**From:** Amnon Cohen
**Sent:** Thursday, November 15, 2007 10:49 PM
**To:** Joseph Shereshevsky
**Subject:** RE: thanks for asking me

Like I said every conversation I had with Ran was with Steve's knowledge and consent. I never made a settlement with him not verbally nor in writing. All I told him was any settlement would require a covenant that he can't sue in the future.

I don't care whether we settle with him or not. My ass ain't on the line your is. You want to fight with him suit yourself. I don't care if you leave or you stay either makes no difference to me.

Regarding the money from Crowne Plaza....... I went through the account $225,000 was definitely wired to Africa from that account. If you want me to show you I will tomorrow.


Amnon Cohen
Principal
Wextrust Capital, LLC
114 West 47th Street
20th Floor
New York, NY 10036
Phone: (212) 643-6190
Fax:    (212) 643-6192
Mobile: (201) 852-4944

---

**From:** Joseph Shereshevsky
**Sent:** Thursday, November 15, 2007 10:45 PM
**To:** Amnon Cohen
**Cc:** Steve Byers
**Subject:** RE: thanks for asking me

You know what the word tentiive means??

That means I speak it over with my partners. That's why I sent it to my ceo. Because I don't make deals unless si get approval and I let my partners know every step of the way what I am doing.

Amnon. Where is your email about any settlement with ran?

Yeah. That's what i thought

At least I got off my mother fuckin ass , and spent time with this.

And I actually did it when I wasn't playing on my cell phone or doing 14 other things.

I am a piece of work. This guy runs circles around you. You discussing something with him. Will I want to known and then I wont agree. I don't like him amnon. He's in I am am out


How do uu like that

joe

**Joseph Shereshevsky**
**COO**
**WexTrust Capital, LLC**

6/4/2008

999 Waterside Drive, Suite 2220
Norfolk, VA  23510
josephs@wextrust.com
Office:  (757) 623-0246
Direct:  (757) 213-5223
Cell:  (732) 904-3368
Fax:  (757) 623-6215


Beth McClung
Executive Assistant to COO / Office Manager
999 Waterside Drive, Suite 2220
Norfolk, VA  23510
bmcclung@wextrust.com
Office:  (757) 623-0246
Direct:  (757) 213-5223
Fax:  (757) 623-6215

**From:** Amnon Cohen
**Sent:** Thursday, November 15, 2007 10:32 PM
**To:** Joseph Shereshevsky
**Subject:** thanks for asking me

**From:** Joseph Shereshevsky
**Sent:** Wednesday, October 31, 2007 2:44 PM
**To:** Steve Byers; 'Michael van der Merwe'; 'Elka Shereshevsky'
**Cc:** ursula@grutlom.co.za; Jeffrey Brooke; MendelEpstein@aol.com; 'David S. Abramson'; Africa; Jen Edmiston; Thomas Lewis
**Subject:** tentivive settlement with samuel gross

Based on a lot of things that happened Samuel gross and I have reached a tentative settlement. Now although it is tentative it still has to be put in writing, so don't rest on your laurels and continue ass if there is no settlement until the paper is signed.  He can say that we have an agreement just for us to rest and catch us off guard that we wont be ready with a response.  The following is the major details of the agreement:

1. joseph shereshevsky  thru a Namibian company will buy the shares that Samuel gross bought from the Africans for the price he paid which is 5,100,000
2. I will pay him 50,000 a month for the next 8 months
3. after that we will take the balance of what is left and divide it by 36 months and pay him approximately 125,000 a month . I didn't do the math, but in that area
4. wextrust will sign as a guarantor on this purchase
5. Samuel gross will immediately pull all action out of all court and will cease all actions against all parties associated with us
6. he will refrain from speaking anything bad about our company, and even say that wextrust stepped to the plate to cover him on shares that we weren't responsible for in anyway ay
7. once we sign , I will notify the rabbinical court and they will remove the excommunication on him
8. if ever again in the future we ever have a dispute , on anything, he forgoes his right to sue us in any court whatsoever and will agree to a rabbinical court in ny.
9. as soon as we sign this agreement , Michael and I , and the rest of the board of directors will try to see if there is any way we can work in the future together; Samuel will like to be in charge of financial reporting, day to day operations, this is something we would consider. He would also like to be involved in sales however we would want him to prove himself that he can work while answering to us
10. # 9 is part of the agreement
11. we will all sign off that we will remove any claims that we have against each other, and also that this is done in good faith. This will be a final agreement and there is no comeback after this
12. Samuel gross will sign in this agreement that wextrust went beyond the call of duty in order to relieve this mess

mr chris Lombard will do the contract here in south Africa, however he will confer with jeff brooke and also david Abramson to make sure that wextrust and all affiliates are covered by this agreement. If anyone has anything to add they must do so  now so chris can start working on the purchase agreement.

6/4/2008

Thank you

joe

**Joseph Shereshevsky**
**COO**
**WexTrust Capital, LLC**
999 Waterside Drive, Suite 2220
Norfolk, VA 23510
josephs@wextrust.com
Office: (757) 623-0246
Direct: (757) 213-5223
Cell: (732) 904-3368
Fax: (757) 623-6215

Beth McClung
Executive Assistant to COO / Office Manager
999 Waterside Drive, Suite 2220
Norfolk, VA 23510
bmcclung@wextrust.com

Amnon Cohen
Principal
Wextrust Capital, LLC
114 West 47th Street
20th Floor
New York, NY 10036
Phone: (212) 643-6190
Fax:    (212) 643-6192
Mobile: (201) 852-4944

This e-mail transmission may contain information that is proprietary, privileged and/or confidential and
is intended exclusively for the person(s) to whom it is addressed. Any use, copying, retention or
disclosure by any person other than the intended recipient or the intended recipient's designees is
strictly prohibited. If you are not the intended recipient or their designee, please notify the sender
immediately by return e-mail and delete all copies.
------_extPart_001_01C82B9A.BD3F7E

6/4/2008

RE chat.txt

From: Steve Byers [SByers@wextrust.com]
Sent: Friday, April 11, 2008 3:54 PM
To: Joseph Shereshevsky
Subject: RE: chat

Follow Up Flag: Follow up
Flag Status: Red

We need to raise money for Drake, 625 (which you are), GDR and High yield. Also,
the paperwork you will have on Monday for Peoria & Wisconsin. I don't think we need
to change anything that is not already done. Just use all the existing PPM's,
Investment summary, etc. Nothing has changed. Remember, we will transfer Gurvey's
interest into the "investors" entity so we can sell it. You will have at least one
new and probably two new PPM's for next week regarding income property. We have to
do some old fashion over raising, raise for the GDR & High Yield (on shore) to get
through these months. Pompano Beach will not be done for 60 to 90 days I believe if
it gets done because it must in conformance to some 09 budget approval. The funds
get allocated as soon as the budget is approved - they do not have to wait until 09.


We will make efforts to borrow against some assets.

2.1 for Africa has to be new money raised.

Peck settlement is this, we are offering the $175,000 paid over 90 days and another
$100,000 over 1 year. We don't need this from a relative investor to get in the
press. They know they have a poor case but we have some issues to. If they don't
take that we will go to war.


-------------------------------------------------------------------------------
From: Joseph Shereshevsky
Sent: Friday, April 11, 2008 6:53 AM
To: Steve Byers
Subject: chat

Can we set aside 30 minutes on Sunday to chat.


Agenda


Title for joe

Summary  and paper work for Wisconsin and Peoria

What doe sit look with pompano beach

Ideas for cash to survive until I finish this underwirritng

Money for balance west 82nd

2.1 for Africa

Peck settlement


Page 1

RE chat.txt

Whatever else.



Joseph Shereshevsky

COO

WexTrust Capital, LLC

999 Waterside Drive, Suite 2220

Norfolk, VA 23510

josephs@wextrust.com

Office: (757) 623-0246

Direct: (757) 213-5223

Cell: (732) 904-3368

Fax: (757) 623-6215



Beth McClung

Executive Assistant to COO / Office Manager

999 Waterside Drive, Suite 2220

Norfolk, VA 23510

bmcclung@wextrust.com

Office: (757) 623-0246

Direct: (757) 213-5223

Fax: (757) 623-6215


This e-mail transmission may contain information that is proprietary, privileged and/or confidential and is intended exclusively for the person(s) to whom it is addressed. Any use, copying, retention or disclosure by any person other than the intended recipient or the intended recipient's designees is strictly prohibited. If you are not the intended recipient or their designee, please notify the sender immediately by return e-mail and delete all copies.
------_extPart_001_01C89C0D.BD296B

## Unknown

| | |
|---|---|
| **From:** | Steve Byers [SByers@wextrust.com] |
| **Sent:** | Wednesday, March 12, 2008 10:00 AM |
| **To:** | Joseph Shereshevsky |
| **Subject:** | RE: african ppm 25,000,000 |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Red |

The other thing to think about:

Distribution Policy. Which deals are we going to allow to fail to meet their minimum equity payments. If a deal can't pay it, we can't keep feeding it. That is why it is equity. Yes it makes equity raising harder but all companies have this issue. We protect principal NOT return on principal - just return of. Therefore, we have to decide which deals we just tell investors can't meet their min payment anymore and start amortizing principal. Also, on new deals, we truly have to have the policy that if the property can't pay, then there is no payment. If the property can pay but we use the money for other things, then we have to pay.

Regarding the HYDF's, any money we lend to affiliates, we have to pay interest on and than the fund pays what ever cash it collects.

If we are going to be a real company we have to get real with the above, regardless of Michael Mostofsky and his complaints regarding the above not to mention the real issue about cash flow. In part and parcel with the above, is a better handle and understanding on the cash flow from the properties. That is my issue which I have to get done including better reporting. I am having a meeting on this next week.

Also, a big part of what we do is make money, profit, by raising more than the minimum that is required. Yes, it needs to be in reason but we have to have the ability to do this. We must determine with our accountants how we book and treat this and Coorsh can either get in line or get out of the way.

---

**From:** Joseph Shereshevsky
**Sent:** Tue 3/11/2008 3:42 PM
**To:** Steve Byers
**Subject:** RE: african ppm 25,000,000

**Joseph Shereshevsky**
**COO**
**WexTrust Capital, LLC**
999 Waterside Drive, Suite 2220
Norfolk, VA 23510
josephs@wextrust.com
Office: (757) 623-0246
Direct: (757) 213-5223
Cell: (732) 904-3368
Fax: (757) 623-6215

Beth McClung
Executive Assistant to COO / Office Manager
999 Waterside Drive, Suite 2220
Norfolk, VA 23510
bmcclung@wextrust.com

7/24/2008

Office: (757) 623-0246
Direct: (757) 213-5223
Fax: (757) 623-6215

---

**From:** Steve Byers
**Sent:** Tuesday, March 11, 2008 11:48 AM
**To:** Joseph Shereshevsky
**Subject:** RE: african ppm 25,000,000

As far as I can tell the transaction is as follows:

1) WexTrust Capital guarantees $4.5 million to G&H in exchange for G&H transferring his shares, which equate to 10% of PAM, to a Namibian company owned by Michael VanderMewer - not owned by WexTrust.
The amount is 4.25 million. The % amount that gorss is giving back in the settlement is equivalent to 20% of pam.

2) WexTrust owns 14% of PAM through other entites which it will retain.
Wextrust will own 24% of pam directly , and thru other entities ( Idex) another 10%.

3) PAM agrees to make the payments on behalf of WexTrust as per the schedule.  There is no signed agreement for this yet.
PAM will make all the payments , not on behalf of wextrust but on behalf of itself , as now the pam shareholders will own an additional 10%

4) Michael agrees to transfer his ownership in the Namibian company to WexTrust immediately after the transfer of G&H's interest to to the Namibian company.  There is no signed agreement yet to verify this.
MVDM will transfer his ownership of the Namibia company to PAM!!!! After all the said transactions are done.

5) Michael must personally guarantee the same terms we do until a) the shares are transferred to an entity controlled and 100% owned by WexTrust or b) the debt has been paid off.
There is no signed document yet to reflect this.
We will have a doc that MVDM will guarantee the same guarantees as wextrust, until he transfers the shares to PAM

6) The new Namibian company is to sell its 10% interest to the new investors for $25 million.
This is correct

7) WexTrust is to receive $10 million.  How does this effect the above stated $4.5 million guarantee?  Do we now have to pay it? Does the settlement still get paid from the cash flow?
The guarantee is 4.25 million. PAM will pay it from cash flow, since they are getting the shares.. Wextrust is just guaranteeing it.

If not than WexTrust ends up with $5.5 million.  Is WexTrust obligated to lend to PAM this $10 million??  If so this deal does not make any sense.
You are right, however that is not the scase. Wextrust will end up with 10,000,000 like I said it will.

8) Joe Shereshevsky is to get paid $3.5 million as an advisory fee for the transaction.  It must be an advisory fee since no dilution of your shares has occurred. Technically there is a dilution as I once owned 20%. For me I need this sonce it will be a long term capital gain and will only be charged a 15% on taxes as opposed to my tax bracket of 40%. That will be a difference to me of 750,000

9) Steve Byers to be paid $2 million.  Same as 8.you will be paid 2,000,000. however not the same as 8. we should talk about this.

10) Equity raise fee of $2.5 million.
Correct

7/24/2008

11) $7 million in cash to be lent back to the mining operations.
Correct

12) WexTrust to have a loan for ???? recorded to the mining operations/due from the mining operations.

We will have a loan account of about 20,000,000 total to wextrust and about 2,000,000 to sflp2. I am going to have a meeting in Israel with rosenram to put parameters how we can collect this. ie. 5,000,000 a year as long as we don't go over 10% of the total cash flow of pam. I still have to negotiate this , however this is what I recommended

Please correct me where I am wrong and help me understand this.

If u r in the office I can call you.

Also there will be a bret board meeting where we are going to install a new board of directors and the first thing on the target AFTER the board is installed is we will do a capital call for the approximate xxxxx millions of dollars that wextrust is owed. When no one meet the capital call we are going to issue more shares and dilute the ones I need to be diluted. This should cause more shares ( % of bret to be available) by about 10%. We will most of it into pam, and I will be able to sell off 3-5% for at least 2 million a point or maybe more which will go to wextrust minus fees and other stuff.

We should also be able to secure more shares from ragu or the other bee partner who the govt hopefully wild decide. If that happens  and it looks like it will, then we will have even more shares. Again I will make most of it available to pam, and we will take care oif ourselves and maybe sell off a couple of more point sand get more money

Email me if I can call.

joe

---

**From:** Joseph Shereshevsky
**Sent:** Monday, March 10, 2008 4:58 PM
**To:** Perri Knight
**Cc:** Steve Byers; Thomas Lewis
**Subject:** RE: african ppm 25,000,000

We are waiting for them to sign the final settlement agreement. We hope there are going to be no issues .. I will fill u in by tomorrow

joe

**Joseph Shereshevsky**
**COO**
**WexTrust Capital, LLC**
999 Waterside Drive, Suite 2220
Norfolk, VA 23510
josephs@wextrust.com
Office: (757) 623-0246
Direct: (757) 213-5223
Cell: (732) 904-3368
Fax: (757) 623-6215


Beth McClung
Executive Assistant to COO / Office Manager
999 Waterside Drive, Suite 2220
Norfolk, VA 23510
bmcclung@wextrust.com
Office: (757) 623-0246
Direct: (757) 213-5223
Fax: (757) 623-6215

---

**From:** Perri Knight

7/24/2008

**Sent:** Monday, March 10, 2008 4:25 PM
**To:** Joseph Shereshevsky
**Cc:** Steve Byers; Thomas Lewis
**Subject:** RE: african ppm 25,000,000

Tom Lewis stated that he had some clarification/changes to the ownership structure that he needed to talk to me about on the phone as it was too complicated to send via email. Steve also wanted to go over the structure with you. The transfer of the G&H shares to the entity controlled by MVDM was a question. We are doing what we can without this important information.

I have the MOU for G&H but it has a date for closing of April 8th--is it going to be resolved prior to then? It certainly simplifies things if the transfer of shares is complete prior to our offering otherwise we need to talk about current structure and then structure after the settlement, the affect if the settlement doesn't happen etc etc.

---

**From:** Joseph Shereshevsky
**Sent:** Monday, March 10, 2008 3:20 PM
**To:** Perri Knight
**Cc:** Steve Byers; Thomas Lewis
**Subject:** african ppm 25,000,000

Where are we bat with this thing?

joe

**Joseph Shereshevsky**
**COO**
**WexTrust Capital, LLC**
999 Waterside Drive, Suite 2220
Norfolk, VA 23510
josephs@wextrust.com
Office: (757) 623-0246
Direct: (757) 213-5223
Cell: (732) 904-3368
Fax: (757) 623-6215


Beth McClung
Executive Assistant to COO / Office Manager
999 Waterside Drive, Suite 2220
Norfolk, VA 23510
bmcclung@wextrust.com
Office: (757) 623-0246
Direct: (757) 213-5223
Fax: (757) 623-6215

This e-mail transmission may contain information that is proprietary, privileged and/or confidential and is intended exclusively for the person(s) to whom it is addressed. Any use, copying, retention or disclosure by any person other than the intended recipient or the intended recipient's designees is strictly prohibited. If you are not the intended recipient or their designee, please notify the sender immediately by return e-mail and delete all copies.
------_extPart_001_01C88449.6AF41F

7/24/2008

## Unknown

**From:**      Bryan Tennant [BTennant@wextrust.com]
**Sent:**      Friday, May 02, 2008 1:01 PM
**To:**        Rhonda I Butler; Suzanne Castillo
**Subject:** FW: GSA DISTRIBUTION SCHEDULE

Bryan Tennant

Senior Account Manager
WexTrust Capital Investor Services
Tel: 888 . 293 . 9878
Fax: 312 . 881 . 6001
333 W. Wacker Dr. Ste. 1600
Chicago, IL 60606
www.wextrust.com

**From:** Bryan Tennant
**Sent:** Friday, May 02, 2008 11:56 AM
**To:** 'francesco'
**Subject:** RE: GSA DISTRIBUTION SCHEDULE

Dear Mr. Cafazzo, thank you for your email regarding your WexTrust Capital investment account. Distributions are made at such time as cash from the underlying properties is available. Unlike a debt instrument such as a bond, your equity ownership interest does not require payment by a date certain.

In other words, since you own an interest in the investment entity, you are paid when cash is available. WexTrust Capital and its affiliated entities do everything possible to expedite the cash distributions to investors; however the date of payment will fluctuate somewhat. It is the nature of the investment; nothing fundamentally has changed regarding the state of the Company or the investment in question.

You may wish to consult the Private Placement Memorandum (PPM) governing the investment for more information regarding WexTrust Capital's payment of distributions to preferred members. While I do not know the exact date that your distribution will go out, it is likely that it will occur next week. Best Regards,

Bryan Tennant
Senior Account Manager
WexTrust Capital Investor Services
Tel: 888 . 293 . 9878
Fax: 312 . 881 . 6001
333 W. Wacker Dr. Ste. 1600
Chicago, IL 60606
www.wextrust.com

**From:** francesco [mailto:fcafazzo@cfl.rr.com]
**Sent:** Thursday, May 01, 2008 4:54 PM
**To:** Bryan Tennant
**Cc:** francesco
**Subject:** GSA DISTRIBUTION SCHEDULE

**Man I have to tell you I wish we were face to face so I could see how you shuffle in person. The courtesy on the phone is horrible and it sounds like there is a new girl every time I call. The lack of disclosure invites suspicion. Somethng as simple as how you schedule distributions or why they never come on a consistent date. When I wasnt an investor Mostofsky was ready to wipe my back end; you aren't able to**

7/1/2008

answer my questions or hire a flunky to get an answer while Im on the phone. I am envious that I don't have a business where I don't answer to anyone who has forked over less than 100k.

Any more questions are pointless; however, there has to be some regulatory body or statute that requires dilegence on Wextrust's part to inform me why there are delays or why checks NEVER arrive with any consistency.

Mr. Frank Cafazzo

...CONCERNING THAT WHICH IS DONE UNDER THE HEAVENS: IT IS SUFFERING GIVEN FROM THE SUPREME GOD THAT WE ALL MIGHT BE HUMBLED THEREBY. (From a wise king)

This e-mail transmission may contain information that is proprietary, privileged and/or confidential and is intended exclusively for the person(s) to whom it is addressed. Any use, copying, retention or disclosure by any person other than the intended recipient or the intended recipient's designees is strictly prohibited. If you are not the intended recipient or their designee, please notify the sender immediately by return e-mail and delete all copies.

------_extPart_001_01C8AC76.218244

7/1/2008

**Unknown**

| | |
|---|---|
| **From:** | Bryan Tennant [BTennant@wextrust.com] |
| **Sent:** | Tuesday, April 08, 2008 9:49 AM |
| **To:** | kalindquist@cox.net |
| **Subject:** | RE: March Distribution Check |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Red |

Dear Mr. & Mrs. Lindquist, thank you for your email. Distributions for accrued February will likely be mailed out this week. I have been told that tax season and capital expenditures have delayed the distribution.

That is the nature of the investment-while we always attempt to get the distribution out to you as early as possible, sometimes the process takes longer. Everything is fundamentally sound here and distributions are imminent. Best Regards,

WexTrust Capital Investor Services

Tel: 888 . 293 . 9878

Fax: 312 . 881 . 6001

333 W. Wacker Dr. Ste. 1600

Chicago, IL 60606

www.wextrust.com

-----Original Message-----
From: kalindquist@cox.net [mailto:kalindquist@cox.net]
Sent: Monday, April 07, 2008 4:38 PM
To: Investor Account
Subject: March Distribution Check

As of today, we still haven't received our March check for February's distribution. Could you let us know when we can expect it? The past few months the checks have been coming in later each month and now it's skipped a month. Could you explain why this is and when can we expect it to start coming regularly each month?

Karl & Karen Lindquist
GAS Investors, LLC
Account number 511151
This e-mail transmission may contain information that is proprietary, privileged and/or confidential and is intended exclusively for the person(s) to whom it is addressed. Any use, copying, retention or disclosure by any person other than the intended recipient or the intended recipient's designees is strictly prohibited. If you are not the intended recipient or their designee, please notify the sender immediately by return e-mail and delete all copie

1

Investor Statement



**WEXTRUST**
CAPITAL.

guest1 >> <u>Logout</u>

[ View ► ]

## GSA Investors, LLC
AccountID:   511151
As of Date:  6/10/2008

### Investor Statement Mailing Address
Karl A. and Karen F. Lindquist, III

[Edit Info]

### Account Officer
Joe Shereshevsky
999 Waterside Drive
Suite 2220
Norfolk, VA 23510

## Capital
### Investments/Divestments

| Transaction ID | Date of Investment | Amount | Totals |
|---|---|---|---|
| 8272 | 10/04/2006 | $250,000.00 | $250,000.00 |

## Dividends

| Date of Distribution | Period Begin | Period End | Amount | Totals |
|---|---|---|---|---|
| 10/31/2006 | | | $1,652.78 | $1,652.78 |
| 11/30/2006 | | | $1,746.58 | $3,399.36 |
| 12/31/2006 | | | $1,804.79 | $5,204.15 |
| 01/31/2007 | | | $1,804.79 | $7,008.94 |
| 02/28/2007 | | | $1,630.14 | $8,639.08 |
| 03/31/2007 | 03/01/2007 | 03/31/2007 | $1,804.79 | $10,443.87 |

6/10/2008

Investor Statement

| | | | |
|---|---|---|---|
| 04/30/2007 | 04/01/2007 | 04/30/2007 | $1,746.58 | $12,190.45 |
| 05/31/2007 | 05/01/2007 | 05/31/2007 | $1,804.79 | $13,995.24 |
| 06/30/2007 | 06/01/2007 | 06/30/2007 | $1,746.58 | $15,741.82 |
| 07/31/2007 | 07/01/2007 | 07/31/2007 | $1,804.79 | $17,546.61 |
| 08/31/2007 | 08/01/2007 | 08/31/2007 | $1,804.79 | $19,351.40 |
| 09/30/2007 | 09/01/2007 | 09/30/2007 | $1,746.58 | $21,097.98 |
| 10/31/2007 | 10/01/2007 | 10/31/2007 | $1,804.79 | $22,902.77 |
| 11/30/2007 | 11/01/2007 | 11/30/2007 | $1,746.58 | $24,649.35 |
| 12/31/2007 | 12/01/2007 | 12/31/2007 | $1,804.79 | $26,454.14 |
| 01/31/2008 | 01/01/2008 | 01/31/2008 | $1,799.86 | $28,254.00 |
| 02/29/2008 | 02/01/2008 | 02/29/2008 | $1,683.74 | $29,937.74 |
| 03/31/2008 | | | $1,804.79 | $31,742.53 |
| 04/30/2008 | | | $1,746.58 | $33,489.11 |

© 2006-2008 Wextrust Capital LLC. All information provided as-is and is property of Wextrust Capital.

**52**

**Unknown**

| | |
|---|---|
| From: | Bryan Tennant [BTennant@wextrust.com] |
| Sent: | Wednesday, April 09, 2008 11:25 AM |
| To: | ran4-1nan5-4zrich@verizon.net |
| Subject: | RE: First Wyoming |

Dear Mr. Herbst, thank you for your email. Distributions for accrued February will be mailed out today (4/9/08). I have been told that tax season and capital expenditures have delayed the distribution. That is the nature of the investment-while we always attempt to get the distribution out to you as early as possible, sometimes the process takes longer. Everything is fundamentally sound here and distributions are imminent. Best Regards,

WexTrust Capital Investor Services

Tel: 888 . 293 . 9878

Fax: 312 . 881 . 6001

333 W. Wacker Dr. Ste. 1600

Chicago, IL 60606

www.wextrust.com

-----Original Message-----
From: ran4-1nan5-4zrich@verizon.net
[mailto:ran4-1nan5-4zrich@verizon.net]
Sent: Tuesday, April 08, 2008 8:25 PM
To: Investor Account
Subject: First Wyoming

It's now APRIL 8 and I have still not received my FEBRUARY check from First Wyoming.

What's the issue?  Where is my check?

Larry J. Herbst
This e-mail transmission may contain information that is proprietary, privileged and/or confidential and is intended exclusively for the person(s) to whom it is addressed. Any use, copying, retention or disclosure by any person other than the intended recipient or the intended recipient's designees is strictly prohibited. If you are not the intended recipient or their designee, please notify the sender immediately by return e-mail and delete all copie

1

Investor Statement

guest1 >> Logout



WEXTRUST
CAPITAL

View ▲

# First Wyoming Investors

AccountID:      321074
As of Date:     6/10/2008

## Investor Statement Mailing Address

Larry J. Herbst

[Edit Info]

## Account Officer

Joe Shereshevsky
999 Waterside Drive
Suite 2220
Norfolk, VA 23510

## Capital
### Investments/Divestments

| Transaction ID | Date of Investment | Amount | Totals |
|---|---|---|---|
| 1890 | 05/12/2005 | $50,000.00 | $50,000.00 |

## Dividends

| Date of Distribution | Period Begin | Period End | Amount | Totals |
|---|---|---|---|---|
| 05/31/2005 | | | $328.77 | $328.77 |
| 06/30/2005 | | | $493.15 | $821.92 |
| 07/31/2005 | | | $509.59 | $1,331.51 |
| 08/31/2005 | | | $509.59 | $1,841.10 |
| 09/30/2005 | | | $493.15 | $2,334.25 |
| 10/31/2005 | | | $509.59 | $2,843.84 |

https://www.wextrust.com/reader/InvestmentDetail.aspx?ID=321074

6/10/2008

Investor Statement

| | | | |
|---|---|---|---|
| 11/30/2005 | | $493.15 | $3,336.99 |
| 12/31/2005 | | $509.59 | $3,846.58 |
| 01/31/2006 | | $509.59 | $4,356.17 |
| 02/28/2006 | | $460.27 | $4,816.44 |
| 03/31/2006 | | $509.59 | $5,326.03 |
| 04/30/2006 | | $493.15 | $5,819.18 |
| 05/31/2006 | | $509.59 | $6,328.77 |
| 06/30/2006 | | $493.15 | $6,821.92 |
| 07/31/2006 | | $509.59 | $7,331.51 |
| 08/31/2006 | | $509.59 | $7,841.10 |
| 09/30/2006 | | $493.15 | $8,334.25 |
| 10/31/2006 | | $509.59 | $8,843.84 |
| 11/30/2006 | | $493.15 | $9,336.99 |
| 12/31/2006 | | $509.59 | $9,846.58 |
| 01/31/2007 | | $509.59 | $10,356.17 |
| 02/28/2007 | | $460.27 | $10,816.44 |
| 03/31/2007 | 03/01/2007 | $509.59 | $11,326.03 |
| 04/30/2007 | 04/01/2007 | $493.15 | $11,819.18 |
| 05/31/2007 | 05/01/2007 | $509.59 | $12,328.77 |
| 06/30/2007 | 06/01/2007 | $493.15 | $12,821.92 |
| 07/31/2007 | 07/01/2007 | $509.59 | $13,331.51 |
| 08/31/2007 | 08/01/2007 | $509.59 | $13,841.10 |
| 09/30/2007 | 09/01/2007 | $493.15 | $14,334.25 |
| 10/31/2007 | 10/01/2007 | $509.59 | $14,843.84 |
| 11/30/2007 | 11/01/2007 | $493.15 | $15,336.99 |
| 12/31/2007 | 12/01/2007 | $509.59 | $15,846.58 |
| 01/31/2008 | 01/01/2008 | $508.20 | $16,354.78 |
| 02/29/2008 | 02/01/2008 | $475.41 | $16,830.19 |

© 2006-2008 Wextrust Capital LLC. All information provided as-is and is property of Wextrust Capital.

**53**

**Unknown**

| | |
|---|---|
| **From:** | Bryan Tennant [BTennant@wextrust.com] |
| **Sent:** | Wednesday, April 09, 2008 11:26 AM |
| **To:** | Millers |
| **Subject:** | RE: checks |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Red |

Dear Mr. & Mrs. Miller, thank you for your email. Distributions for accrued February will be mailed out today (4/9/08). I have been told that tax season and capital expenditures have delayed the distribution. That is the nature of the investment-while we always attempt to get the distribution out to you as early as possible, sometimes the process takes longer. Everything is fundamentally sound here and distributions are imminent. Best Regards,

Bryan Tennant
Senior Account Manager
WexTrust Capital Investor Services
Tel: 888 . 293 . 9878
Fax: 312 . 881 . 6001
333 W. Wacker Dr. Ste. 1600
Chicago, IL 60606
www.wextrust.com

**From:** Millers [mailto:miller-je@cox.net]
**Sent:** Tuesday, April 08, 2008 5:27 PM
**To:** Bryan Tennant
**Cc:** Michael Mostofsky
**Subject:** checks

We have not received our checks for March...this is the latest ever...Please let us know what is going on....

Thank you...

John and Mary Anne Miller
This e-mail transmission may contain information that is proprietary, privileged and/or confidential and is intended exclusively for the person(s) to whom it is addressed. Any use, copying, retention or disclosure by any person other than the intended recipient or the intended recipient's designees is strictly prohibited. If you are not the intended recipient or their designee, please notify the sender immediately by return e-mail and delete all copies.
------_extPart_001_01C89A56.5FD11B

Investor Statement

Page 1 of 3



**WEXTRUST**
CAPITAL

guest1 >> Logout

▲ View

**Gold Coast Investors, LLC**
AccountID:      331059
As of Date:     6/10/2008

**Investor Statement Mailing Address**
Mary Anne and John E. Miller

[Edit Info]

**Account Officer**
Joe Shereshevsky
999 Waterside Drive
Suite 2220
Norfolk, VA 23510

## Capital Investments/Divestments

| Transaction ID | Date of Investment | Amount | Totals |
|---|---|---|---|
| 1612 | 04/06/2005 | $50,000.00 | $50,000.00 |

## Dividends

| Date of Distribution | Period Begin | Period End | Amount | Totals |
|---|---|---|---|---|
| 04/30/2005 | | | $162.67 | $162.67 |
| 04/30/2005 | | | $94.18 | $256.85 |
| 05/31/2005 | | | $318.49 | $575.34 |
| 06/30/2005 | | | $308.22 | $883.56 |
| 07/31/2005 | | | $318.49 | $1,202.05 |
| 08/31/2005 | | | $318.49 | $1,520.54 |

https://www.wextrust.com/reader/InvestmentDetail.aspx?ID=331059

6/10/2008

Investor Statement

| | | | | |
|---|---|---|---|---|
| 09/30/2005 | | | $308.22 | $1,828.76 |
| 10/31/2005 | | | $318.49 | $2,147.25 |
| 11/30/2005 | | | $236.30 | $2,383.55 |
| 12/30/2005 | | | $71.92 | $2,455.47 |
| 12/31/2005 | | | $109.59 | $2,565.06 |
| 01/31/2006 | | | $339.73 | $2,904.79 |
| 02/28/2006 | | | $306.85 | $3,211.64 |
| 03/31/2006 | | | $339.73 | $3,551.37 |
| 04/30/2006 | | | $328.77 | $3,880.14 |
| 05/31/2006 | | | $339.73 | $4,219.87 |
| 06/30/2006 | | | $328.77 | $4,548.64 |
| 07/31/2006 | | | $339.73 | $4,888.37 |
| 08/31/2006 | | | $339.73 | $5,228.10 |
| 09/30/2006 | | | $328.77 | $5,556.87 |
| 10/31/2006 | | | $339.73 | $5,896.60 |
| 11/30/2006 | | | $328.77 | $6,225.37 |
| 12/31/2006 | | | $339.73 | $6,565.10 |
| 01/31/2007 | | | $339.73 | $6,904.83 |
| 02/28/2007 | | | $306.85 | $7,211.68 |
| 03/31/2007 | 03/01/2007 | 03/31/2007 | $339.73 | $7,551.41 |
| 04/30/2007 | 04/01/2007 | 04/30/2007 | $328.77 | $7,880.18 |
| 05/31/2007 | 05/01/2007 | 05/31/2007 | $339.73 | $8,219.91 |
| 06/30/2007 | 06/01/2007 | 06/30/2007 | $328.77 | $8,548.68 |
| 07/31/2007 | 07/01/2007 | 07/31/2007 | $339.73 | $8,888.41 |
| 08/31/2007 | 08/01/2007 | 08/31/2007 | $339.73 | $9,228.14 |
| 09/30/2007 | 09/01/2007 | 09/30/2007 | $328.77 | $9,556.91 |
| 10/31/2007 | 10/01/2007 | 10/31/2007 | $339.73 | $9,896.64 |
| 11/30/2007 | 11/01/2007 | 11/30/2007 | $328.77 | $10,225.41 |
| 12/31/2007 | 12/01/2007 | 12/31/2007 | $339.73 | $10,565.14 |
| 01/31/2008 | 01/01/2008 | 01/31/2008 | $338.80 | $10,903.94 |
| 02/29/2008 | 02/01/2008 | 02/29/2008 | $316.94 | $11,220.88 |

Investor Statement

© 2006-2008 Wextrust Capital LLC. All information provided as-is and is property of Wextrust Capital.

Investor Statement



WEXTRUST
CAPITAL

View ▲

guest1 >> Logout

## Grant Street Investors, LLC

AccountID:      371038
As of Date:     6/10/2008

### Investor Statement Mailing Address

Mary Anne and John E. Miller

[Edit Info]

### Account Officer

Joe Shereshevsky
999 Waterside Drive
Suite 2220
Norfolk, VA 23510

## Capital

### Investments/Divestments

| Transaction ID | Date of Investment | Amount | Totals |
|---|---|---|---|
| 2765 | 08/15/2005 | $120,000.00 | $120,000.00 |

## Dividends

| Date of Distribution | Period Begin | Period End | Amount | Totals |
|---|---|---|---|---|
| 08/31/2005 | | | $447.12 | $447.12 |
| 09/30/2005 | | | $789.04 | $1,236.16 |
| 10/31/2005 | | | $815.34 | $2,051.50 |
| 11/30/2005 | | | $789.04 | $2,840.54 |
| 12/31/2005 | | | $815.34 | $3,655.88 |
| 01/31/2006 | | | $815.34 | $4,471.22 |

Investor Statement

Page 2 of 2

| | | | | |
|---|---|---|---|---|
| 02/28/2006 | | | $736.44 | $5,207.66 |
| 03/31/2006 | | | $815.34 | $6,023.00 |
| 04/30/2006 | | | $789.04 | $6,812.04 |
| 05/31/2006 | | | $815.34 | $7,627.38 |
| 06/30/2006 | | | $789.04 | $8,416.42 |
| 07/31/2006 | | | $815.34 | $9,231.76 |
| 08/31/2006 | | | $815.34 | $10,047.10 |
| 09/30/2006 | | | $789.04 | $10,836.14 |
| 10/31/2006 | | | $815.34 | $11,651.48 |
| 11/30/2006 | | | $789.04 | $12,440.52 |
| 12/31/2006 | | | $815.34 | $13,255.86 |
| 01/31/2007 | | | $815.34 | $14,071.20 |
| 02/28/2007 | | | $736.44 | $14,807.64 |
| 03/31/2007 | 03/01/2007 | 03/31/2007 | $815.34 | $15,622.98 |
| 04/30/2007 | 04/01/2007 | 04/30/2007 | $789.04 | $16,412.02 |
| 05/31/2007 | 05/01/2007 | 05/31/2007 | $815.34 | $17,227.36 |
| 06/30/2007 | 06/01/2007 | 06/30/2007 | $789.04 | $18,016.40 |
| 07/31/2007 | 07/01/2007 | 07/31/2007 | $815.34 | $18,831.74 |
| 08/31/2007 | 08/01/2007 | 08/31/2007 | $815.34 | $19,647.08 |
| 09/30/2007 | 09/01/2007 | 09/30/2007 | $789.04 | $20,436.12 |
| 10/31/2007 | 10/01/2007 | 10/31/2007 | $815.34 | $21,251.46 |
| 11/30/2007 | 11/01/2007 | 11/30/2007 | $789.04 | $22,040.50 |
| 12/31/2007 | 12/01/2007 | 12/31/2007 | $815.34 | $22,855.84 |
| 01/31/2008 | 01/01/2008 | 01/31/2008 | $813.11 | $23,668.95 |
| 02/29/2008 | 02/01/2008 | 02/29/2008 | $760.66 | $24,429.61 |

© 2006-2008 Wextrust Capital LLC. All information provided as-is and is property of Wextrust Capital.

6/10/2008

**54**

**Unknown**

| | |
|---|---|
| **From:** | Bryan Tennant [BTennant@wextrust.com] |
| **Sent:** | Tuesday, April 08, 2008 9:50 AM |
| **To:** | cathrath@aol.com |
| **Subject:** | RE: Help request from Investor rcrathbone |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Red |

Dear Mr. Rathbone, thank you for your email. Distributions for accrued February will likely be mailed out this week. I have been told that tax season and capital expenditures have delayed the distribution. That is the nature of the investment-while we always attempt to get the distribution out to you as early as possible, sometimes the process takes longer. Everything is fundamentally sound here and distributions are imminent. Best Regards,

WexTrust Capital Investor Services

Tel: 888 . 293 . 9878

Fax: 312 . 881 . 6001

333 W. Wacker Dr. Ste. 1600

Chicago, IL 60606

www.wextrust.com


-----Original Message-----
From: WexTrust.Investors@wextrust.com
[mailto:WexTrust.Investors@wextrust.com]
Sent: Saturday, April 05, 2008 10:08 AM
To: rknoll@wextrust.com; Investor Account
Subject: Help request from Investor rcrathbone

Name: Keith Rathbone
Email: cathrath@aol.com
Account: 32-1019
Why are the distribution checks so late in getting delivered.  The last check we received was for the 12/07 distribution. It was not received until 02/05/08.  We have not received any distributions for Jan, Feb and now for March 2008.

Is Wextrust or the investment property in Wyoming, in financial trouble?

Keith Rathbone
This e-mail transmission may contain information that is proprietary, privileged and/or confidential and is intended exclusively for the person(s) to whom it is addressed. Any use, copying, retention or disclosure by any person other than the intended recipient or the intended recipient's designees is strictly prohibited. If you are not the intended recipient or their designee, please notify the sender immediately by return e-mail and delete all copie

1

Investor Statement

guest1 >> Logout


WexTrust
CAPITAL

[ View ▲ ]

## First Wyoming Investors

AccountID:      321019
As of Date:     6/10/2008

### Investor Statement Mailing Address

Roger and Catherine Rathbone

[Edit Info]

### Account Officer

Joe Shereshevsky
999 Waterside Drive
Suite 2220
Norfolk, VA 23510

## Capital Investments/Divestments

| Transaction ID | Date of Investment | Amount | Totals |
|---|---|---|---|
| 1017 | 01/12/2005 | $100,000.00 | $100,000.00 |

## Dividends

| Date of Distribution | Period Begin | Period End | Amount | Totals |
|---|---|---|---|---|
| 01/31/2005 | | | $657.53 | $657.53 |
| 02/28/2005 | | | $953.42 | $1,610.95 |
| 03/31/2005 | | | $1,019.18 | $2,630.13 |
| 04/30/2005 | | | $986.30 | $3,616.43 |
| 05/31/2005 | | | $1,019.18 | $4,635.61 |
| 06/30/2005 | | | $986.30 | $5,621.91 |

https://www.wextrust.com/reader/InvestmentDetail.aspx?ID=321019

6/10/2008

Investor Statement

| | | | |
|---|---|---|---|
| 07/31/2005 | | $1,019.18 | $6,541.09 |
| 08/31/2005 | | $1,019.18 | $7,660.27 |
| 09/30/2005 | | $986.30 | $8,646.57 |
| 10/31/2005 | | $1,019.18 | $9,665.75 |
| 11/30/2005 | | $986.30 | $10,652.05 |
| 12/31/2005 | | $1,019.18 | $11,671.23 |
| 01/31/2006 | | $1,019.18 | $12,690.41 |
| 02/28/2006 | | $920.55 | $13,610.96 |
| 03/31/2006 | | $1,019.18 | $4,630.14 |
| 04/30/2006 | | $986.30 | $15,616.44 |
| 05/31/2006 | | $1,019.18 | $16,635.62 |
| 06/30/2006 | | $986.30 | $17,621.92 |
| 07/31/2006 | | $1,019.18 | $18,641.10 |
| 08/31/2006 | | $1,019.18 | $19,660.28 |
| 09/30/2006 | | $986.30 | $20,646.58 |
| 10/31/2006 | | $1,019.18 | $21,665.76 |
| 11/30/2006 | | $986.30 | $22,652.06 |
| 12/31/2006 | | $1,019.18 | $23,671.24 |
| 01/31/2007 | | $1,019.18 | $24,690.42 |
| 02/28/2007 | | $920.55 | $25,610.97 |
| 03/31/2007 | 03/01/2007 03/31/2007 | $1,019.18 | $26,630.15 |
| 04/30/2007 | 04/01/2007 04/30/2007 | $986.30 | $27,616.45 |
| 05/31/2007 | 05/01/2007 05/31/2007 | $1,019.18 | $28,635.63 |
| 06/30/2007 | 06/01/2007 06/30/2007 | $986.30 | $29,621.93 |
| 07/31/2007 | 07/01/2007 07/31/2007 | $1,019.18 | $30,641.11 |
| 08/31/2007 | 08/01/2007 08/31/2007 | $1,019.18 | $31,660.29 |
| 09/30/2007 | 09/01/2007 09/30/2007 | $986.30 | $32,646.59 |
| 10/31/2007 | 10/01/2007 10/31/2007 | $1,019.18 | $33,665.77 |
| 11/30/2007 | 11/01/2007 11/30/2007 | $986.30 | $34,652.07 |
| 12/31/2007 | 12/01/2007 12/31/2007 | $1,019.18 | $35,671.25 |
| 01/31/2008 | 01/01/2008 01/31/2008 | $1,016.39 | $36,687.64 |
| 02/29/2008 | 02/01/2008 02/29/2008 | $950.82 | $37,638.46 |

Investor Statement

© 2006-2008 Wextrust Capital LLC. All information provided as-is and is property of Wextrust Capital.

55

**Unknown**

| | |
|---|---|
| **From:** | Bryan Tennant [BTennant@wextrust.com] |
| **Sent:** | Tuesday, April 08, 2008 11:00 AM |
| **To:** | William Barnett |
| **Subject:** | RE: W Belmont Invest. LLC, Chicago condo project |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Red |

Dear Mr. Barnett, thank you for your email. Distributions for accrued February will likely be mailed out this week. I have been told that tax season and capital expenditures have delayed the distribution. That is the nature of the investment-while we always attempt to get the distribution out to you as early as possible, sometimes the process takes longer. Everything is fundamentally sound here and distributions are imminent. Best Regards,


Bryan Tennant
Senior Account Manager
WexTrust Capital Investor Services
Tel: 888 . 293 . 9878
Fax: 312 . 881 . 6001
333 W. Wacker Dr. Ste. 1600
Chicago, IL 60606
www.wextrust.com

---

**From:** William Barnett [mailto:barnettw@cox.net]
**Sent:** Monday, April 07, 2008 5:34 PM
**To:** Investor Account
**Cc:** William Barnett
**Subject:** W Belmont Invest. LLC, Chicago condo project

Dear Wextrust- .

My wife and I are concerned about the implication of the fraud charges against the builder of this project. Our account number is 431037, please contact us as soon as possible. The interest check we were suppose to receive in March has not arrived as yet and we are now seven days into April.

I found the attached news article about the builder you selected, CenterStone Development Group[, Inc.


> Supera family partnership sues over Lincoln Park loan
> From the Crain's Chicago Business Newsroom
> March 04 10:44:00, 2008
> By Andrew Schroedter
> -----
> (Crain's) — A family partnership led by North Side real estate investor Michael Supera has sued two little-known developers, alleging that they misrepresented their net worth to obtain an $800,000 loan for a Lincoln Park condominium project.
>
> Michael Supera Family L.P. alleges that Anita Goyal and William DeBruyn, principals in CenterStone Development Group Inc., knowingly failed to disclose significant loans on other properties when they asked the partnership for a loan to build an 18-unit condominium development at 1540 W. Fullerton Ave. Supera Family issued the loan on June 1, 2006, with annual interest of 25%.

6/4/2008

The project was never built and the site is in foreclosure. On Nov. 9, New City Bank, which made a separate loan for the project, sued to collect the $2.2-million balance on that loan, according to a copy of the bank's complaint, filed in Cook County Circuit Court. That case is still pending, said John S. Carroll, an attorney with Chicago-based Carroll Hartigan & Cerney Ltd., which represents the bank.

Chicago attorney Douglas W. Lohmar Jr., who represents Ms. Goyal, Mr. DeBruyn and their Elk Grove Village company, declined to comment on either lawsuit.

Before Supera issued the loan, Ms. Goyal and Mr. DeBruyn said they had a combined net worth of nearly $4.5 million, according to the complaint, filed Feb. 21 in Cook County Circuit Court. But about a month later, another financial statement said they had a net worth of about $1.9 million, the complaint says. Supera Family is seeking repayment of the loan and unpaid interest.

The difference in net worth was in part because Ms. Goyal and Mr. DeBruyn initially said they had debts of just $4.6 million, when they knew they owed more than $6.2 million, the complaint alleges.

In May 2006, a CenterStone venture paid $2.703 million for the site, a former Lube N' Oil Exchange Ltd. facility, according to property records.

Ms. Goyal and Mr. DeBruyn couldn't be reached for comment. The phone number for CenterStone on its Web site Friday was the cell phone of a former employee.

Since its founding eight years ago, CenterStone has focused on the renovation and development of mostly North Side residential properties.

Powered by CRAIN'S CHICAGO BUSINESS, ChicagoBusiness.com offers local business news seven days a week. You can even sign up for free daily and weekly email alerts sent directly from the CRAIN'S newsroom. Users can also register for custom news alerts on industries or companies-even private companies--of their choice.
To register for the site, go to: http://ChicagoBusiness.com/register

You are receiving this email because it was sent to you by a friend or colleague-not by ChicagoBusiness.com. If you prefer not to receive this kind of email, please reply to the sender, not ChicagoBusiness.com.

For news headlines throughout the business day, go to: http://www.chicagobusiness.com

Bill & Deborah Barnett
barnettw@cox.net
757-285-2758

This e-mail transmission may contain information that is proprietary, privileged and/or confidential and is intended exclusively for the person(s) to whom it is addressed. Any use, copying, retention or disclosure by any person other than the intended recipient or the intended recipient's designees is strictly prohibited. If you are not the intended recipient or their designee, please notify the sender immediately by return e-mail and delete all copies.

------_extPart_001_01C89989.344443

6/4/2008

Investor Statement



WEXTRUST
CAPITAL

[ View ▲ ]

guest1 >> Logout

# West Belmont Investors, LLC

AccountID:     431037
As of Date:    6/10/2008

## Investor Statement Mailing Address

William and Deborah Barnett

[Edit Info]

## Account Officer

Joe Shereshevsky
999 Waterside Drive
Suite 2220
Norfolk, VA 23510

## Capital Investments/Divestments

| Transaction ID | Date of Investment | Amount | Totals |
|---|---|---|---|
| 4674 | 01/24/2006 | $175,000.00 | $175,000.00 |

## Dividends

| Date of Distribution | Period Begin | Period End | Amount | Totals |
|---|---|---|---|---|
| 01/31/2006 | | | $287.67 | $287.67 |
| 02/28/2006 | | | $1,006.85 | $1,294.52 |
| 03/31/2006 | | | $1,114.73 | $2,409.25 |
| 04/30/2006 | | | $1,078.77 | $3,488.02 |
| 05/31/2006 | | | $1,114.73 | $4,602.75 |
| 06/30/2006 | | | $1,078.77 | $5,681.52 |

6/10/2008

6/10/2008

Investor Statement

| | | | |
|---|---|---|---|
| 07/31/2006 | | | $6,796.25 |
| 08/31/2006 | | | $7,910.98 |
| 09/30/2006 | | | $8,989.75 |
| 10/31/2006 | | | $10,104.48 |
| 11/30/2006 | | | $11,183.25 |
| 12/31/2006 | | | $12,297.98 |
| 01/31/2007 | | | $13,412.71 |
| 02/28/2007 | | | $-4,453.12 |
| 03/31/2007 | 03/01/2007 | 03/31/2007 | $15,642.16 |
| 04/30/2007 | 04/01/2007 | 04/30/2007 | $16,792.84 |
| 05/31/2007 | 05/01/2007 | 05/31/2007 | $17,981.88 |
| 06/30/2007 | 06/01/2007 | 06/30/2007 | $19,132.56 |
| 07/31/2007 | 07/01/2007 | 07/31/2007 | $20,321.60 |
| 08/31/2007 | 08/01/2007 | 08/31/2007 | $21,510.64 |
| 09/30/2007 | 09/01/2007 | 09/30/2007 | $22,661.32 |
| 10/31/2007 | 10/01/2007 | 10/31/2007 | $23,850.36 |
| 11/30/2007 | 11/01/2007 | 11/30/2007 | $25,001.04 |
| 12/31/2007 | 12/01/2007 | 12/31/2007 | $26,190.08 |
| 01/31/2008 | 01/01/2008 | 01/31/2008 | $27,375.87 |
| 02/29/2008 | 02/01/2008 | 02/29/2008 | $28,485.16 |

Note: amount column values (middle): $1,114.73, $1,114.73, $1,078.77, $1,114.73, $1,078.77, $1,114.73, $1,114.73, $1,040.41, $1,189.04, $1,150.68, $1,189.04, $1,150.68, $1,189.04, $1,189.04, $1,150.68, $1,189.04, $1,150.68, $1,189.04, $1,185.79, $1,109.29

© 2006-2008 Wextrust Capital LLC. All information provided as-is and is property of Wextrust Capital.

56

Drake Oak Brook

| FirstName | LastName | TotalInvested | SEC Total |
|---|---|---|---|
| Pierre | Abi-Mansour | 100000 | 1 |
| Lisa Anne | Aiken Revocable Trust | 75000 | 1 |
| | ALFRED OAKBROOK CHICAGO, LLC | 200000 | 1 |
| | ALRITE PACKAGING, INC. RETIREMENT PLAN | 100000 | 1 |
| MURRAY & ESTHER | ALTER | 150000 | 1 |
| Clifford H. | Altschull | 86222.57 | 1 |
| | ARNAV INDUSTRIES, INC | 100000 | 1 |
| SURENDRA | AVULA | 100000 | 1 |
| MOSHE | BARZEL | 100000 | 1 |
| SCOTT | BAUM | 100000 | 1 |
| MICHAEL AND MARIA | BAUZA | 100000 | 1 |
| Matthew | Bayer Trust | 500000 | 1 |
| KRISTEN & JEFFREY | BEALS | 100000 | 1 |
| Roni M. | Benjamini | 50000 | 1 |
| MICHAEL | BERMAN | 150000 | 1 |
| IRVIN & MARGARET | BERNSTEIN TRUST | 150000 | 1 |
| EDWARD | BINET | 200000 | 1 |
| CHARLES | BIXENSPANNER | 75000 | 1 |
| ROBERT | BRUCKSTEIN | 100000 | 1 |
| ABRAHAM | BRUNNER | 50000 | 1 |
| JOHN | BUDZIAK, IRA | 100000 | 1 |
| RANDOLPH L. | CARL | 112437.83 | 1 |
| RABBI NACHUM | COHEN | 100000 | 1 |
| Douglas S. | Coles ROTH IRA | 50000 | 1 |
| | Congregation Beth Jehudah | 0 | 1 |
| | CONGREGATION YESOCHER BERISH | 250000 | 1 |

Drake Oak Brook

| | | | |
|---|---|---|---|
| WILLIAM T | CONSIDINE | 200000 | 1 |
| William | Corbett | 151084.07 | 1 |
| Lawrence P | Costa | 100000 | 1 |
| | DERLIN LLC | 150000 | 1 |
| | Fakes Family LP | 235718.29 | 1 |
| CHERYL | EPSTEIN | 100000 | 1 |
| Neal | Faraone IRA | 104500 | 1 |
| | FCL OAKBROOK DRAKE, LLC | 1000000 | 1 |
| DAVID | FIELDS IRA | 99746.29 | 1 |
| Martin | Fulop | 100000 | 1 |
| | GARRETT LIMITED PARTNERSHIP "B" | 100000 | 1 |
| NADINE | GESUNDHEIT | 150000 | 1 |
| CHARLES C & RISHA | GOLDMAN | 100000 | 1 |
| KENNETH D | GOLDMAN | 100000 | 1 |
| CHARLES C. | GOLDMAN, LLC | 150000 | 1 |
| REBECCA | GUTTMAN | 50000 | 1 |
| DAVID C. | HEINLE | 100000 | 1 |
| GERALD | HELD, TOD | 60000 | 1 |
| | J. OGERT AND J. OGERT HOLDINGS | 100000 | 1 |
| | JZC EQUITIES, LLC | 100000 | 1 |
| | K P Industrial Properties, LLC | 200000 | 1 |
| WILLIAM | KAELIN, TOD | 100000 | 1 |
| LESLIE | KAPLAN | 100000 | 1 |
| ESTELLE | KATZ | 100000 | 1 |
| DAVID J & SHARONA D | KAY | 100000 | 1 |
| NAFTALI KLEIN OR FRIEDA | KLEIN CP | 75000 | 1 |
| | KOHN LIVING TRUST U/A/D 12/6/1995 | 100000 | 1 |

2

Drake Oak Brook

| SOLOMON SPITZ AND HERSHEL | KRIMINER TENANTS IN COMMON | 75000 | 1 |
|---|---|---|---|
| BARBARA J. | KRUM IRA | 70000 | 1 |
| B D | LADERBERG | 100000 | 1 |
| CHRISTOPHER J. | LANGAN | 100000 | 1 |
| MARISSA & DAVID | LEVENSON, JTWROS | 50000 | 1 |
| Joseph | Luria | 55492.31 | 1 |
| Abraham | Margalit | 111052.27 | 1 |
| Alan | Miller | 110000 | 1 |
| Alan B. | Miller, M.D., P.C., Profit Sharing Plan | 90000 | 1 |
| RAYMOND | MUNGO | 200000 | 1 |
| | NEWFIELD ESTATES INC | 50000 | 1 |
| HARVEY AND JOAN | NEWMAN | 200000 | 1 |
| PAUL LEE | NEWMAN, ROTH IRA | 50000 | 1 |
| | OAK BROOK ASSOCIATES | 125000 | 1 |
| YOSEF | OLDAK | 100000 | 1 |
| JULIE A. | PETERSON IRA | 100000 | 1 |
| STEVE | PHILIPPS | 285000 | 1 |
| JOHN AND DORIS | PIERCE | 200000 | 1 |
| YEHUDA | POLSKY | 50000 | 1 |
| Thomas P. and Dolores M. | Reidy | 100000 | 1 |
| ALBERT & DEBORAH | RICCHIO | 100000 | 1 |
| WILLIAM | RICKARD | 100000 | 1 |
| Earl C. | Rigsby IRA | 100000 | 1 |
| TINA T. | ROBINSON | 50000 | 1 |
| Gad | Rosen | 33621.39 | 1 |
| A. GEORGE & STEPHANIE R. | SAKS JTWROS | 50000 | 1 |
| EYAL | SCHIFF AND HADAR BEN-AMI | 250000 | 1 |

3

Drake Oak Brook

| | | | |
|---|---|---|---|
| William V. & Cheryl L. | Shea II | $          113108.13 | 1 |
| BRANDI | SHERMAN | 50000 | 1 |
| Philip | Shore | 61000 | 1 |
| ROBERT | SHORE | 75000 | 1 |
| | SOLOMON FAMILY PARTNERS | 150000 | 1 |
| Marsha Freeman | Spain | 28250.08 | 1 |
| KENNETH | SPIRO | 28176.88 | 1 |
| F.L. | Sterling Trust | 150000 | 1 |
| Darryl A. | Stubbs IRA | 50000 | 1 |
| Jay R. | Viders | 50000 | 1 |
| JARED | VIDERS | 25000 | 1 |
| ZACHARY | VIDERS | 25000 | 1 |
| TATIANA | VISOTSKI | 51034.23 | 1 |
| Joseph E. and Sharon A. | Winn | 100000 | 1 |
| Yerger Clifton | Yandell | 75000 | 1 |
| | YMSF FAMILY PARTNERSHIP L.P. | 150000 | 1 |
| AMIRAM Y. | ZEIGER | 50000 | 1 |
| HARRY | ZELCER | 100000 | 1 |
| EARL AND PATRICIA | ZIEGLER | 100000 | 1 |
| MICHAEL | ZIMMERMAN | 50000 | 1 |
| | | $      11,611,444 | 100 |

4

**57**

GSPN 1 yr@7%

| FirstName | LastName | TotalInvested | SEC Total |
|---|---|---|---|
| Lisa Anne | Aiken Revocable Trust | 57830.07 | 1 |
| | B-Z Properties, LLC | 67205.22 | 1 |
| Marc and Teresa | Circeo | 115660.14 | 1 |
| Shomrey Emunah | Congregation Guardians of the Faith | 26774.18 | 1 |
| | CSN REALTY | 153209.65 | 1 |
| Howard and Sharon | Evans | 127396.49 | 1 |
| Benjamin and Marcy | Forta | 57912.84 | 1 |
| J. Stanley | Furman | 153530.74 | 1 |
| NADINE | GESUNDHEIT | 175982.34 | 1 |
| HARRIET | GLICKSTEIN LIVING TRUST | 57830.07 | 1 |
| Rabbi Efraim | Greenblatt | 60864.68 | 1 |
| James & Patricia | Handrahan | 102353.83 | 1 |
| Robert L & Beverly V | Howsare | 113570.91 | 1 |
| | JJ OF VIRGINIA BEACH INC | 346980.42 | 1 |
| DANIEL | KASZOVITZ | 115770.5 | 1 |
| Eliezer | Levin | 51176.92 | 1 |
| Abraham | Margalit | 66529.98 | 1 |
| Ira | Michaels Revocable Trust | 57912.84 | 1 |
| Alan | Miller | 57830.07 | 1 |
| JERROLD A. AND AMBER D. | OGERT | 50875.28 | 1 |
| SHLOMO & RINA | RESHEF | 51677.3 | 1 |
| Vera | Revesz | 25000 | 1 |
| Earl C. | Rigsby IRA | 58489.02 | 1 |
| Govert & Hannah Judith | Sarlui | 58196.34 | 1 |
| Dotan | Shidlovsky | 115880.87 | 1 |
| | Starling Family Limited Partnership | 178301.86 | 1 |
| DANIEL & YAEL SHORE | STOLBACH | 40229.51 | 1 |
| BETTY VAN ESSEN-KOK & FLORRY | VAN ESSEN | 57881.08 | 1 |
| Joseph E. and Sharon A. | Winn | 154178.97 | 1 |
| Yehuda and Simchea | Zadok | 28915.03 | 1 |
| Ariel | Ziser | 79729.64 | 1 |

| | | | |
|---|---|---|---|
| GSPN 1 yr at 7% | $ | 2,865,677 | 31 |
| GSPN 3 yrs at 12% | $ | 1,759,496 | |
| GSPN 3 yrs at 9% | $ | 133,781 | |
| Total all GSPN | $ | 4,758,954 | |

**58**

625 Paragon

| FirstName | LastName | TotalInvested | SEC Total |
|---|---|---|---|
| Yvonne F. | Batchelder, TOD | 50000 | 1 |
| Frank | Capuzelo Revocable Trust | 150000 | 1 |
| | MYH INVESTMENTS ZWEIG (2005) LTD | 150000 | 1 |
| JOSEPH KELLY & JANINE | PRYBYLA | 100000 | 1 |
| Philip | Shore | 40000 | 1 |
| ROBERT | SHORE | 25000 | 1 |
| David | Shore | 150000 | 1 |
| SHMUEL | TAVIN | 150000 | 1 |
| MICHAEL & ANN | WITZEL | 100000 | 1 |
| Israel and Jennifer | Zoberman | 100000 | 1 |
| | | $    1,015,000 | 10 |

as of 7/22/08

**59**

ATM II

| FirstName | LastName | TotalInvested | SEC Total |
|---|---|---|---|
| Linda W. | Drucker Revocable Trust | 100000 | 1 |
| CAROL | FEDIDA | 250000 | 1 |
| DAVID | FOX | 350000 | 1 |
| B D | LADERBERG | 250000 | 1 |
| David | Shore | 0 | |
| Lewis B. | Steingold | 100000 | 1 |
| | | $ 1,050,000 | 5 |

**60**

## Unknown

| | |
|---|---|
| **From:** | Joseph Shereshevsky [josephs@wextrust.com] |
| **Sent:** | Monday, March 03, 2008 3:58 AM |
| **To:** | Steve Byers; Perri Knight |
| **Cc:** | Jen Edmiston; Michael van der Merwe; Thomas Lewis |
| **Subject:** | ppm |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Blue |

Good morning . we are going to need to punch out a ppm for another raise for Africa . we will need to do this over the next couple of weeks..

I know the attorneys will have lots of questions but I need this thing to start getting prepared ASAP.

I will provide the basic details for the deal and will answer questions as they come in. meanwhile let them start.

Also please not that MVDm ( michael van der merwe will provide projections and the story on each mine that will be part of this deal by tomorrow .

1. we are selling 10% of PAM for 25,000
2. this will be equity in all locations that we have. This is not a loan , this is equity and owning of shares.
3. all the money is going to the sellers of the shares primarily Wextrust
4. Wextrust is actually selling shares so PAM can come up with money to payback loans to Wextrust and to others, and to facilitate in getting to distributions
5. we are hoping that one major firm will take the bulk of this underwriting so we can have their input and perhaps their representation in future situations when and if we decide to do an IPO
6. Wextrust will then turn around and lend a major portion of the money back into PAM, as needed
7. this will facilitate a much quicker ramp up position on the old mines and the new locations that we have purchased and jv's, in order to get o distributions faster
8. the new ownership will be called ATM LLC. ( alluvial treasure mining)
9. the ownership will look as follows after this transaction:  it may change ever so slightly but this is what it will look like

| | |
|---|---|
| idex | 40% |
| atm | 10% |
| MVDM | 9% |
| Wextrust | 24% |
| Wts | 1% |
| Sflp11 | 15% |
| Rosenram | 1% |

10. rosenram will have representation on the BOD
11. the transaction with G&H has been completed and they have been bought out of their shares of PAM
12. our location now include:

mvdm will over here provide a list of all our assets and the status of each one with epl and license situation.

Mvdm will also provide a projection with each one

**We may go further and buy new locations if we think it will benefit the shareholders of PAM**

**The bottom line we can do whatever we please to further the interests of the shareholders.**

6/16/2008

This will have no effect on previous shareholders of Pam as there will be no dilution .

13. the sources and uses even though are irrelevant( because we are selling only our own shares and therefore can do o what we want with our money) will be something like this, although we are not bound to keep this sources and uses in any way

| | | |
|---|---|---|
| a. | equity raise fee | 2,500,000 |
| b. | legal | 100,000 |
| c. | mvdm | 500,000 |
| d. | wtc | 21,900,000 |
| e | sflp11 | 3,500,000 |

Wextrust will then proceed to loan back to PAM an amount of up to approximately 11,900,000 for the following:

| | | |
|---|---|---|
| f. | 900,000 | in back bills to vendors  on all mines |
| g. | 1,300,000 | for the finishing of the feasibility study and drilling program on block3 |
| h. | 3,000,000 | additional funding for Skelton coast |
| i. | 3,000,000 | our shares of 10% deposits on all new equipment |
| j. | 500,000 | our share of 50% payment on the new track of land adjacent to basfour |
| k. | 1,000,000 | for reserve |
| l. | 300,000 | for legal for the 2 litigations |

14. Any moneys not lent to Pam, will of course be the property of Wextrust
15. the amount of 11,900,000 lent by Wextrust will of course go unto Wextrust loan account that it is owed this money BEFORE distributions to Pam
16. however Wextrust may elect to wave their subordination and decide to get repaid their loan account in part or to wave it until ALL investors get back their initial investment. This will be totally at the discretion of Wextrust

**Perri,**

**please lets act on this ASAP as we need to get his money in for the mines and for the return of funds to Wextrust.**

**We will do this as 50 shares of 500,000 a share**

Thank you

Joe

**Joseph Shereshevsky**
**COO**
**Wextrust Capital LLC**
999 Waterside Drive, Suite 2220
Norfolk, VA  23510
josephs@wextrust.com
757-623-0246 (main #)
757-623-5223 (direct)
732-904-3368 (cell)
757-623-6215 (fax)

Executive Assistant, Beth McClung

6/16/2008

This e-mail transmission may contain information that is proprietary, privileged and/or confidential and is intended exclusively for the person(s) to whom it is addressed. Any use, copying, retention or disclosure by any person other than the intended recipient or the intended recipient's designees is strictly prohibited. If you are not the intended recipient or their designee, please notify the sender immediately by return e-mail and delete all copies.

------_extPart_001_01C87D0C.AB8C50

6/16/2008

**61**

## Unknown

| | |
|---|---|
| **From:** | Steve Byers [SByers@wextrust.com] |
| **Sent:** | Wednesday, March 19, 2008 10:42 AM |
| **To:** | Joseph Shereshevsky |
| **Subject:** | RE: food for thought ----- print and then erase |

1) We don't need $50 million all at once.

2) $20 million of which you are bringing in half really fixes everything.

3) Many of the shitty deals can be paid off slowly over time as long as we do it. How? every time we buy a new income property we can dilute our interest a little and start switching investors.

4) We really have to think hard about what businesses we should stay in or exit and the managers.

5) Africa needs a chief operating officer. It will be a disaster if we don't get one. Michael cannot and has not been successful by any measure in terms of operating the mines on a daily basis. He is a good deal guy and big picture guy but not an operator. These deals are never going to turn a profit. You always focus on the revenue or production side without focusing on the huge fixed and variable costs which never seem to vary.

6) Your travel to Africa can be reduced substantially if you have a chief operating officer. plus we don't need any new deals right now or or new acquisitions down there. We need to make work what we have.

7) Africa is also costing us your time here. The equity raising growth is suffering. You know the managed futures could be huge and we have a golden window right now for income property. This is the time that we should buy more income property than we ever have. The credit market blow up is a perfect thing for us because banks still love us and most people and even institutions are frozen out.

---

**From:** Joseph Shereshevsky
**Sent:** Tue 3/18/2008 4:33 AM
**To:** Steve Byers
**Subject:** food for thought ----- print and then erase

I am just thinking. Just food for thought.

After we do this underwriting, if there are people still unhappy we can always offer them anywhere between 50and 100% on the dollar to go out. I am pretty sure I can do another underwriting for the new price with rosenram.

As usual I will always make sure we pocket a few million if enough people tender.

1. I don't believe more than ½ will tender if that much
2. I believe with ease I will be able to sell it for double

What are your thoughts.

Please remember one thing. That although I always take care of you and myself, my goal in this thing as I have told you from day one, is to get wextrust out of all the shit before the end of 09 or 10 at the latest. that is my primary concern. We have faked it until we made it for long enough and now we must clean up. I am telling you this since u see I am a believer in what I do and I know how to close deals, and I don't want you to shoo away this idea. The way I see it , I can do for the company another 5-10,000,000 with this transaction. And maybe more if the board of directors meeting goes well next week with skelton coast and if we finally win the court case with ragu. If things go our way in both those areas, then I believe that over a 3 month period even if we give ½ the shares to pam that we get from these 2 cases, that I will be able to sell off enough to generate another 10million+ for wextrust.

Hyf
Carlise
Uptown
All the others properties

I believe we need a total of 40,-50,000,000. however I believe 10,000,000 will make a serious dent . 20,000,000 will make us be tolerant of the balance. However 30,+ million will make us almost burden free. I still must make sure that we have enough shares left that the cash flow when it will start will have a pretty serious impact on our bottom line of wextrust in order to wipe out the

6/16/2008

remaining bs, and/or to make us totally cash flow positive as a company.

In other words, I cant stand this flying to Africa anymore. However I believe that we will be able to save what needs to be saved. I feel bad with the travel, however I think you agree with me, that we cant take this type of money in anywhere else.  So think about it and let me know what you think.

I have surrounded myself with pretty good people who know what to do regarding the structuring and of course your input as well. I think you were able to tell from the conference call yesterday about how smart tom lewis is.  I will continue to hit this iron while I can, and between you, tom,hershamn we will structure in a way to maximize and I believe that at the end of the day we ( wextrust) will be a better company for it.

I am just letting you know my plans in case you disagree.  Even if we accomplish half of what I want it will still be very good. If we accomplish all, then Praise the L_ord.

Please let me know if you disagree with any of this

joe


**Joseph Shereshevsky**
**COO**
**WexTrust Capital, LLC**
999 Waterside Drive, Suite 2220
Norfolk, VA 23510
josephs@wextrust.com
Office: (757) 623-0246
Direct: (757) 213-5223
Cell: (732) 904-3368
Fax: (757) 623-6215


Beth McClung
Executive Assistant to COO / Office Manager
999 Waterside Drive, Suite 2220
Norfolk, VA 23510
bmcclung@wextrust.com
Office: (757) 623-0246
Direct: (757) 213-5223
Fax: (757) 623-6215

This e-mail transmission may contain information that is proprietary, privileged and/or confidential and is intended exclusively for the person(s) to whom it is addressed. Any use, copying, retention or disclosure by any person other than the intended recipient or the intended recipient's designees is strictly prohibited. If you are not the intended recipient or their designee, please notify the sender immediately by return e-mail and delete all copies.
------_extPart_001_01C889CF.6B0C85

6/16/2008

62

**Unknown**

| | |
|---|---|
| **From:** | Michael Mostofsky [MMostofsky@wextrust.com] |
| **Sent:** | Friday, February 15, 2008 10:05 AM |
| **To:** | Yossi Shereshevsky |

I'm wondering how things are giing?
Have a good shabbos

Sent from my TREO so this reply may be brief.

Michael Mostofsky
Director Private Equity Group
Wextrust Securities
999 Waterside Dr, Suite 2220
Norfolk, VA 23510

Principal of, and securities offered through Wextrust Securities, LLC This e-mail transmission may contain information that is proprietary, privileged and/or confidential and is intended exclusively for the person(s) to whom it is addressed. Any use, copying, retention or disclosure by any person other than the intended recipient or the intended recipient's designees is strictly prohibited. If you are not the intended recipient or their designee, please notify the sender immediately by return e-mail and delete all copie

**63**

**Unknown**

| | |
|---|---|
| **From:** | Bryan Tennant [BTennant@wextrust.com] |
| **Sent:** | Thursday, December 06, 2007 12:24 PM |
| **To:** | Perri Knight |
| **Subject:** | Pfd Return Sheet |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Green |
| **Attachments:** | PfdRtnSheet.xls |

Attached per your request, there are some older properties without listing Pfd Rtn, some have extenuating circumstances, not sure if you need them. But this sheet will let you average as you like.


WexTrust Capital Investor Services
Tel: 888 . 293 . 9878
Fax: 312 . 881 . 6001
333 W. Wacker Dr. Ste. 1600
Chicago, IL 60606
www.wextrust.com

This e-mail transmission may contain information that is proprietary, privileged and/or confidential and is intended exclusively for the person(s) to whom it is addressed. Any use, copying, retention or disclosure by any person other than the intended recipient or the intended recipient's designees is strictly prohibited. If you are not the intended recipient or their designee, please notify the sender immediately by return e-mail and delete all copies.

7/16/2008

| Fund ID | Fund Name | Total Fund Equity | Preferred Rate of Return | Payment Frequency | Max Equity | Closing Date | Yearly Fund Totals |
|---|---|---|---|---|---|---|---|
| 10 | Carlisle Park, LLC | 475,000.00 | 12 | Monthly | 0 | 12/31/9999 | |
| 11 | Hilltop Ridge Apartments | 1,275,000.00 | 12 | Monthly | 0 | 12/31/9999 | |
| 12 | Midtown Estates | 0 | | | | 12/31/2099 | |
| 13 | Myatt Holdings | 1,600,000.00 | | | | 12/31/2099 | |
| 14 | 1805 Highpoint | 131,000.00 | 12 | Monthly | 0 | 12/31/9999 | |
| 15 | Advantage Regency Holdings | 50,000.00 | | | | 12/31/2099 | |
| 16 | High Yield Debt Fund I | 15,938,876.72 | | | | 12/31/2099 | |
| 17 | 1250 S. Michigan Ave, LLC | 32,284.78 | | | | 12/31/2099 | |
| 18 | Uptowne Square, LLC | 490,000.00 | 12 | Monthly | 0 | 12/31/9999 | |
| 19 | Hilltop Apartments, LLC | 583,000.00 | 12 | Monthly | 0 | 12/31/9999 | |
| 20 | East Point | 0 | 12 | | 0 | 12/31/9999 | |
| 21 | Guaranteed Depository Receipts | 5,201.21 | 8.5 | | 0 | 12/31/9999 | |
| 22 | FreeMac Holdings | 790,000.00 | 12 | | 0 | 12/31/9999 | |
| 23 | 1250 S. Michigan Avenue, LLC B | 0 | | | | 12/31/2099 | |
| 24 | 318 W Adams / Escrow | 0 | | | | 12/31/2099 | |
| 25 | Wex-New Orleans | 500,000.00 | 12 | Monthly | 0 | 12/31/9999 | |
| 26 | Belle Meade | 1,456,700.00 | 12 | Monthly | 0 | 12/31/9999 | |
| 27 | Highland Park | 4,287,082.78 | 9 | Monthly | 0 | 12/31/9999 | |
| 28 | Music Row Investors, LLC | 0 | | | | 12/31/2099 | |
| 29 | Freeport | 0 | | | | 12/31/2099 | |
| 30 | Baxtech | 300,000.00 | 9.24 | Monthly | 0 | 12/31/9999 | |
| 31 | McCue | 2,170,377.04 | 15 | Monthly | 0 | 12/31/9999 | |
| 32 | First Wyoming Investors | 8,183,826.28 | 12 | Monthly | 0 | 12/31/9999 | |
| 33 | Gold Coast Investors, LLC | 12,382,271.68 | 8 | Monthly | 0 | 12/31/9999 | |
| 34 | Riverside | 1,885,581.49 | 10 | Monthly | 0 | 12/31/9999 | |
| 35 | Hyde Park | 0 | | | | 12/31/2099 | |
| 36 | Dean Street Investors, LLC | 3,586,261.84 | 10 | Monthly | 0 | 12/31/9999 | |
| 37 | Grant Street Investors, LLC | 7,268,247.40 | 8 | Monthly | 0 | 12/31/9999 | |
| 38 | Park Village Holdings, LLC | 2,130,980.22 | 10 | Monthly | 0 | 12/31/9999 | |
| 39 | Dean Street Managers LLC | 300,000.00 | 10 | Monthly | 0 | 12/31/9999 | |
| 40 | West Bearden Investors, LLC | 2,518,611.61 | 11 | Monthly | 0 | 12/31/9999 | |
| 41 | York Road Investors, LLC | 1,332,119.26 | 6 | Monthly | 0 | 12/31/9999 | |
| 42 | River's Edge Investors, LLC | 2,884,337.29 | 8 | Monthly | 0 | 12/31/9999 | |
| 43 | West Belmont Investors, LLC | 3,551,628.91 | 8 | Monthly | 0 | 12/31/9999 | |

| 1,2 | Name | Amount | Rate | Frequency | | Date |
|---|---|---|---|---|---|---|
| 44 | GSA Investors, LLC | 9,132,728.83 | 8.5 | Monthly | 0 | 12/31/9999 |
| 45 | IDEX Mines and Minerals, LLC | 28,000,000.00 | | | | 12/31/2099 |
| 46 | Homer Glen Investors, LLC | 2,613,000.00 | 6.5 | Monthly | 0 | 12/31/9999 |
| 47 | New Salem Investors, LLC | 1,101,008.23 | 8 | Monthly | 0 | 12/31/9999 |
| 48 | Workman Road Investors, LLC | 750,000.00 | 8 | Monthly | 0 | 12/31/9999 |
| 49 | Tennessee Office Investors, LLC | 4,252,268.49 | 9 | Monthly | 0 | 12/31/9999 |
| 50 | High Yield Debt Fund III | 14,498,848.42 | | | | 12/31/2099 |
| 51 | High Yield Debt Fund II | 0 | | | | 12/31/2099 |
| 52 | GDR 1 year @ 7% | 2,080,118.34 | 7 | | 0 | 12/31/9999 |
| 53 | GDR 18 months @ 7.75% | 100,656.22 | 7.75 | | 0 | 12/31/9999 |
| 54 | GDR 3 years @ 9% | 105,839.33 | 9 | | 0 | 12/31/9999 |
| 55 | GDR 3 years @ 12% | 3,979,326.06 | 9 | | 0 | 12/31/9999 |
| 56 | West 82nd Street Investors, LLC | 8,845,668.24 | 8 | Quarter | 0 | 12/31/9999 |
| 57 | Interstate Park Investors, LLC | 7,948,147.96 | 8 | Quarter | 0 | 12/31/9999 |
| 58 | GDR 8.5% ROLLOVER | 166,851.73 | 8.5 | | 0 | 12/31/9999 |
| 59 | Wexford Diversified Futures Fund | 6,718,817.89 | | | | 12/31/9999 |
| 60 | Shallowford Investors, LLC | 800,000.00 | 8 | Quarter | 0 | 12/31/9999 |
| 61 | Hamptons of Hinsdale Mortgage F | 13,058,936.65 | 14 | Quarter | 0 | 12/31/9999 |
| 62 | Wexford Principal Protected Fund | 3,130,000.00 | | | | 12/31/2099 |
| 63 | Block III Mines & Minerals, LLC | 11,000,000.00 | | | | 12/31/2099 |
| 65 | S. Pine Street Investors, LLC | 2,551,545.21 | 8 | Quarter | 0 | 6/8/2007 |
| 66 | Skeleton Coast Bret Investors, LLC | 3,000,000.00 | | | | 12/31/2099 |
| 67 | Hammond Industrial Investors, LLC | 7,801,890.96 | 8 | Quarter | 0 | 7/18/2007 |
| 68 | Bret Investors: Skeleton Coast, LLC | 5,970,000.00 | | | | 12/31/2099 |
| 69 | 47 Dean Street Investors, LLC | 3,345,284.92 | 8 | Quarter | 0 | 9/26/2007 |
| 70 | WDFF OFFSHORE FUND I LTD. | 274,975.00 | 0 | | 0 | 12/31/9999 |
| 71 | WPPF OFFSHORE FUND I LTD | 0 | 0 | | 0 | 12/31/9999 |
| 72 | Clarksville Industrial Investors, LLC | 850,361.64 | 8 | Quarter | 0 | 8/6/2007 |
| 73 | Crowne Phoenix Investors, LLC | 7,699,005.40 | 10 | Quarter | 0 | 10/23/2007 |
| 74 | Peoria Offices Investors, LLC | 1,249,999.00 | 8 | Quarter | 4,700,000.00 | 12/31/2099 |

64

## Unknown

| | |
|---|---|
| **From:** | Elmer Coppoolse [ec@axelahospitality.com] |
| **Sent:** | Friday, February 08, 2008 7:42 AM |
| **To:** | Steve Byers |
| **Cc:** | Tom Coorsh |
| **Subject:** | RE: Reconciling CP Phoenix |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Red |
| **Attachments:** | RECONCILIATION FUNDING.xls |

The only things I was able to find that were not included are the $211,000 deposit we paid to lock in the loan and a somewhat higher reserve we may have built up by March 15 according to John Hutzler. Once we make these adjustments the revised total needed to close on the new loan is $1,469,717. I have attached the revised spread sheet.

Furthermore, we need to pay 2 points at the time of loan approval, which will be sometime next week and amounts to $420,000. Clearly this amount comes right back to us at close.

Tom, can you please verify the spreadsheet and provide any comments.

Elmer.

**From:** Steve Byers [mailto:SByers@wextrust.com]
**Sent:** Thursday, February 07, 2008 7:18 PM
**To:** Elmer Coppoolse
**Cc:** Tom Coorsh
**Subject:** RE: Reconciling CP Phoenix

I am not sure that is accurate.

**From:** Elmer Coppoolse [mailto:ec@axelahospitality.com]
**Sent:** Wednesday, February 06, 2008 4:52 PM
**To:** Steve Byers
**Cc:** Tom Coorsh
**Subject:** Reconciling CP Phoenix

Steve,

Attached is a complete reconciliation of the Sources and Uses for CP Phoenix that I have been working on with Brian. We have little time left to close on our new loan and I thought it important to let you know what needs to be put in place between now and March 15 at the latest.

Column no. 1 shows what was originally underwritten.

Column no. 2 shows the funds we actually used to close.

It is important to note that several things were not included in the original underwriting:
- Closing Costs were underwritten at $30,000, but in reality were $155,000
- We had to put $360,000 in reserves to satisfy the conduit lender. While this money will be a credit to us at loan closing it was not anticipated in the underwriting and as such had to be funded

7/16/2008

- We received a Seller's credit for $250,000 for defeasance, which turned out to be $500,000 below the actual cost
- Costs of defeasement of the old loan were not underwritten (app. $320,000)
- Proration ended up slightly in our favor by about $40,000

Column no. 3 shows what has actually been spent to date:
- Only $190,000 of the $500,000 immediate improvements were funded
- Only $100,000 of the acquisition fee to Axela was funded
- Only $170,000 of the $200,000 in transition costs were funded
- The preferred return reserve of $813,000 was not funded. (In the meantime we paid $150,000 from hotel cash flow.)
- The interest proration credit at close of $26,224 was not funded. (So far interest has been paid from hotel cash flow.)
- The $59,000 credit for Property Taxes at closing were not funded. A Property Tax bill is due at closing of the new loan for $98,000.
- The $4,700 credit for guest deposits was not funded. (At some point this should be paid to the hotel operations.)

Sum total we owe the project $1,423,962 as per 2/1/08.

We are now getting prepared for the upcoming defeasance of the existing loan and closing on the new financing. We must give formal notice of the defeasance no later than the 15th of February. Column number 4 describes how this transaction will play out. **The amount needed to close on the new loan is $1,689,717.**

Post Closing (column no. 5) we would be receiving back the reserves that were paid in to the lender. Once we receive these funds back we need fund the remaining $100,000 to Axela, the $345,000 for mechanical improvements, the remaining $30,000 in transition costs and pay the closing credits to the property as per the closing statement. This will actually leave us with a positive balance of $104,922.

Column no. 6 shows the entire project cost being short $493,237 in funding.

Elmer.

In order to close and provide clean title we will have to come up with $750,000 and $98,000

This e-mail transmission may contain information that is proprietary, privileged and/or confidential and is intended exclusively for the person(s) to whom it is addressed. Any use, copying, retention or disclosure by any person other than the intended recipient or the intended recipient's designees is strictly prohibited. If you are not the intended recipient or their designee, please notify the sender immediately by return e-mail and delete all copies.
This e-mail transmission may contain information that is proprietary, privileged and/or confidential and is intended exclusively for the person(s) to whom it is addressed. Any use, copying, retention or disclosure by any person other than the intended recipient or the intended recipient's designees is strictly prohibited. If you are not the intended recipient or their designee, please notify the sender immediately by return e-mail and delete all copies.

7/16/2008

Crowne Phoenix Reconciliation

| | |
|---|---|
| $9,300,000.00 | Equity Raise per PPM |
| $9,498,005.40 | Actual Equity Raised |
| | |
| $949,800.54 | Actual Equity Raise Fee |
| $360,000.00 | Acquisition Fee per PPM |
| | |
| $180,000.00 | Broker Fee Paid to Mike Kochevar |
| | |
| $187,013.99 | Closing Costs per Settlement Statement (Non Reserve Items) |
| $93,348.00 | Interest Reserves to LNR |
| $109,735.99 | Replacement Reserves to LNR |
| $158,663.42 | Misc Reserves to LNR |
| $150,000.00 | Working Capital to IHG Management |
| | |
| $5,873,211.74 | Wire Sent to Closing |
| $580,000.00 | Refund from Closing |
| | |
| $2,894,993.12 | Cash available after closing |

USES:

| | |
|---|---|
| $800,000.00 | deposits in at close |
| $5,859,211.00 | cash in at close |
| -$580,000.00 | cash out at close |
| $3,114.00 | cash in at close |
| $6,082,325.00 | total cash in at close |
| | |
| $949,800.54 | Equity Raise Fee |
| $180,000.00 | Kochevar |
| $298,000.00 | WexTrust |
| $1,160,000.00 | Axela/CP (not received in full) |
| | |
| $8,670,125.54 | Total Uses |
| $9,498,005.40 | Equity raised |
| $827,879.86 | Equity available |
| | |
| -$647,793.00 | defeasance (against $250,000 credit) |
| -$52,250.00 | defeasance fee |
| #REF! | loan costs |
| -$11,000,000.00 | loan seller |
| -$7,200,000.00 | loan Deutsche |
| | |
| #REF! | balance remaining |
| $827,879.86 | equity available |
| #REF! | |
| | |
| $3,100,000.00 | PIP funding required |
| #REF! | shortfall for PIP |
| | |
| $0.00 | funds for dividend coverage |
| x | required for dividend coverage |
| | |
| | total shortage of funds |

| USES | Original Underwriting 1 | Close - October 2 | Actual Spent to Date 2/1/08 3 | New Loan Source&Use 4 | Post Closing Refund 5 | Final Project Cost 6 |
|---|---|---|---|---|---|---|
| Purchase Price | $24,000,000 | $24,000,000 | $24,000,000 | | | $24,000,000 |
| Property Improvements | $3,600,000 | $0 | $180,783 | $3,409,217 | | $3,600,000 |
| HVAC | $345,000 | $0 | $0 | | $345,000 | $345,000 |
| Closing Costs - October | | | | | | |
| Legal | $30,000 | $92,000 | $92,000 | | | $92,000 |
| 3rd Parties | | $47,994 | $47,994 | | | $47,994 |
| Conduit Assumption Fees | | $14,650 | $14,650 | | | $14,650 |
| Kochevar | $180,000 | $0 | $180,000 | | | $180,000 |
| Axeia | $200,000 | $0 | $100,000 | | $100,000 | $200,000 |
| Closing Costs - March | | | | | | |
| Defeasment Credit | | ($250,000) | ($250,000) | | | ($250,000) |
| Defeasment Cost | | | $0 | $750,000 | | $750,000 |
| Broker | | | $0 | $211,000 | | $211,000 |
| Attorney Fees - Wextrust | | | $0 | $30,000 | | $30,000 |
| Attorney Fees - Bank | | | $0 | $50,000 | | $50,000 |
| 3rd Parties | | | $0 | $20,000 | | $20,000 |
| Loan Lock Deposit | | | $211,000 | ($211,000) | | $0 |
| Working Capital | $150,000 | $150,000 | $150,000 | | | $150,000 |
| Transition Costs | $200,000 | $0 | $169,098 | | $30,902 | $200,000 |
| Interest Reserves | $815,000 | $0 | $0 | | | $815,000 |
| Equity Raise Fee | $930,000 | $930,000 | $930,000 | | | $930,000 |
| Conduit Insurance Reserve | | $93,349 | $93,349 | | ($93,349) | ($93,349) |
| Conduit Replacement Reserve | | $109,736 | $109,736 | | ($109,736) | ($109,736) |
| Conduit Tax Reserve | | $158,663 | $158,663 | | ($158,663) | ($158,663) |
| Reserve Contributions 10/23-3/14 | | | | | ($280,000) | ($280,000) |
| Van Purchase | | $24,770 | $24,770 | | | $24,770 |
| Delphi License | | $7,500 | $7,500 | | | $7,500 |
| Insurance | | $18,000 | $18,000 | | | $18,000 |
| Interest Proration | | ($26,224) | | | $26,224 | ($26,224) |
| Taxes | | ($59,000) | $0 | $98,000 | | $39,000 |
| Guest Deposits | | ($4,700) | $0 | | $4,700 | ($4,700) |
| TOTAL | $30,450,000 | $25,306,738 | $26,247,543 | | | $30,802,242 |
| Bank Loan | $21,150,000 | $7,200,000 | $7,200,000 | $7,200,000 | | $21,150,000 |
| Bank Loan 2 | | $11,062,500 | $11,062,500 | $11,062,500 | | |
| Equity Required | $9,300,000 | $7,044,238 | $7,985,043 | | | $9,652,242 |
| Equity | $9,300,000 | $9,300,000 | $9,198,005 | | | $9,198,005 |
| Deficit | | | ($1,212,962) | | | ($454,237) equity short |
| | | | owed to project | | | |
| Total Uses | | | | $22,619,717 | | |
| Total Sources | | | | ($21,150,000) | | |
| PIP Loan | | | | $3,100,000 | | |
| To be funded at close | | | | ($1,469,717) | $134,922 | |

65

## Amnon Cohen

| | |
|---|---|
| **From:** | Joseph Shereshevsky |
| **Sent:** | Monday, June 02, 2008 7:18 AM |
| **To:** | Steve Byers; Amnon Cohen |
| **Subject:** | this is the contect of my letter of resignation |

Dear Steve, Amnon all employees and investors of Wextrust,

 Over the past few years I have been extremely involved in our deals in South Africa & Namibia. This has involved a lot of travel due to the purchase and financing of PAM mines in these countries. Over the past 8 months the amount of time I have been spending on PAM has been overwhelming.  There has also been two litigations involving PAM that has kept the time and trav el concept almost non-stop. Almost all my time is being spent on PAM, and we don't see any changes moving forward on this, as PAM expands its interests in its field. Between the travel and the raises that we have been doing ,there is a part of me that knows that my operating duties at Wextrust as COO has been lacking.  Anyone that knows me, knows and understands that my life over the last 8-10 years has been dedicated to Wextrust Capital.

I therefore in the best interests of the company have decided to resign my post as COO. I have made this known to Our CEO Steve, and he has agreed to accept my resignation.  My family and I are of course maintaining all our shares of Wextrust, and expect to be involved in advising Wextrust on risk factors like always. We will continue to be involved and be part of this financially growing global company. We are proud to have been associated with Wextrust and will continue to do so in any capacity that I can

My email will remain the same , and I will be available as usual .

Thank you

**Joseph Shereshevsky**
**WexTrust Capital, LLC**
999 Waterside Drive, Suite 2220
Norfolk, VA 23510
josephs@wextrust.com
Office: (757) 623-0246
Direct: (757) 213-5223
Cell: (732) 904-3368
Fax: (757) 623-6215


Beth McClung
Executive Assistant to J. Shereshevsky / Office Manager
bmcclung@wextrust.com
Office: (757) 623-0246
Direct: (757) 213-5223


7/2/2008

WEXTRUST 00013096

**66**

RE: Letter from Joe Shereshevsky                                      Page 1 of 5

## Unknown

| | |
|---|---|
| **From:** | Rich Rodriguez [RRodriguez@wextrust.com] |
| **Sent:** | Thursday, March 13, 2008 12:35 PM |
| **To:** | Steve Byers; Joseph Shereshevsky |
| **Cc:** | Michael Mostofsky |
| **Subject:** | RE: Letter from Joe Shereshevsky |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Red |

Steve,

I understand and that's why I'm replying to all. I will address your points specifically and in detail and then will not e-mail you directly anymore. All future communication will be e-mail and will be directed to Michael with a CC to Joe on everything.

1.) The big investor is not merely a TIC investor. It's a client that was referred to me because of my trip to Saudi, while I was in Saudi. The company in Santa Barbara buys properties in partnership with other groups like Axela Hospitality. Case in point they bought the Marina Del Rey Hotel and the Marina International Hotel with the Pacifica Hotel Group which owns 35 hotels. While it is true that they sold a 306 unit senior apartment building to Ventura County housing authority for $44,500,000 in a 1033 qualified transaction. ( the only 1033 they've done in 30 year history) While they are seeking an upleg or replacement property from that amount up to $100,000,000 that is not the only business we can do with them. They are liquid and can raise significant funds and have a history of investing in real estate with groups like ours. They do not have a large staff that to identify properties and perform all of the due diligence, so we could be of tremendous value to them. Frankly, I have heard from multiple sources that one of our issues as a firm is, that we have too many deals and not enough capital; theirs is the converse. This is a fabulous prospect for us which could do a great deal of business with WexTrust Capital.
2.) While I am pursuing this lead and maintaining a dialogue with my Saudi contact that referred me this qualified prospect, it is not the only business I am focusing on. Specifically yesterday I had 6 meetings with prospects and have listed the progress of the four productive meetings below.
3.) With regard to communication your position is clear and I will communicate with Michael and Joe collectively on everything going forward. Also, I have e-mailed Michael several times since I have been in Chicago with pipeline updates or copied him on correspondence that I've had with potential investors. If you'd like me to forward these e-mails to you and Joe I'd be glad to.
4.) You are right.

These are your words to me from your e-mail below:

*"Rich, you have been a big disappointment. Your choices here are either 1) prove that you are what we thought you were, start bringing in our typical client and improve your communication or 2) quit. If you can communicate with Mike and Joe (email is fine) that you will improve and they agree, than maybe we can put you back on to get insurance paid. But, I think you really have to prove yourself before the full draw would kick back in."*

My choice is to prove myself, as I'm not a quitter and I wholeheartedly believe in the value of our offerings. I cannot be silent though that it is really disheartening to be looked at as a "big disappointment or a joke by management" simply because I have not performed in a short time. I have been in this industry for 11 years. Any time you start over, particularly when dealing with the high net worth investor, it can take 6 months to a year to get ramped up. Most wealth management firms understand this, e.g. US Trust, Northern Trust, Bessemer Trust, Bernstein, etc. It is reasonable and customary in the industry. Even our top producing broker Michelle told me that it took her 4 months to close her first sale. While I am disappointed that Joe took the action he did, I understand and respect why he it and have made the decision to prove myself worthy rather than quit. I believe that your management team are fair people and will give me back my salary / benefits when they see what they need to from me.

Best,

Rich

Michael and Joe,

Yesterday I had several meetings with potential investors in Madison and here are the results of those meetings:

6/13/2008

- • Bill Pinkovitz who I introduced to Michael on one occasion has requested the paperwork to invest at least $200,000 in the 3 year locked up GSPN, which I understand from Michael is the most profitable investment that we offer. That transaction should consummate by the end of the week next week as the money is liquid and we should have paperwork back with check in hand by then even if I have to drive back out there and sign him up myself.
- • Sam Chehade: Small business owner interested in putting a modest amount in Managed Futures $50,000 to $100,000 wants to speak to Paul.
- • Terry Taylor: President of Oak Bank, exploring the possibility of investing $500,000 of the banks money in the 3 year locked up GSPN and categorizing it as a loan on the bank's books. This was born out of a discussion we had that the bank's rules say it can't invest in anything but treasuries and agencies for it's investment portfolio. He informed me that the bank makes money on loans. In order for them to make 12% on a loan, they would typically be with a sub-prime borrower, and would most certainly be unsecured. Although the GSPN is also unsecured, we have a much stronger balance sheet than most investors so he has requested our financials and paperwork to look them over.
- • Mark Brandenburg is a mortgage broker and we had a deep discussion about our real estate deals, specifically Drake. He's going to give me referrals.

All of these individuals I've known for years and are former clients. I've actually referred Terry business for the bank and have another client on his board of directors so I have credibility with him and he is seriously considering this investment.

Kind regards,


# Rich Rodriguez

*WexTrust Capital LLC*
333 W Wacker Dr
Suite 1600
Chicago IL 60606
Phone  312.881.6014
Mobile 608.320.0462
www.wextrust.com

---

**From:** Steve Byers
**Sent:** Wednesday, March 12, 2008 7:24 AM
**To:** Joseph Shereshevsky; Rich Rodriguez
**Cc:** Michael Mostofsky
**Subject:** RE: Letter from Joe Shereshevsky

1) It is my understanding that the big client is a TIC investor. That is not what you were hired for and are being paid to originate.
2) Rich, you have been told over and over again to concentrate on smaller amounts to build your client base. Instead, you concentrate in Saudi Arabia, which if we choose to pursue, is a very long term process that will cost us millions in order to build that office or on these extreme other cases. In the mean time, you sold very little if anything.
3) You keep saying people are hard to get a hold of or communicate with. Yet, Emails are always answered. I think that the "communication" issue is an excuse and it is you that is not communicating.
4) You did not handle the move back to Chicago well at all and tried to blame it on Mike and Joe being unavailable. But you did not even send an email or tell me, even when I was talking to you over the phone about seeing me. You were already in Chicago.

Rich, you have a been a big disappointment. Your choices here are either 1) prove that you are what we thought you were, start bringing in our typical client and improve your communication  or 2) quit. If you can communicate with Mike and Joe (email is fine) that you will improve and they agree, than maybe we can put you back on to get insurance paid. But, I think you really have to prove yourself before the full draw would kick back in.

---

**From:** Joseph Shereshevsky
**Sent:** Tue 3/11/2008 3:12 PM
**To:** Rich Rodriguez
**Cc:** Michael Mostofsky
**Subject:** RE: Letter from Joe Shereshevsky


6/13/2008

RE: Letter from Joe Shereshevsky                                                      Page 3 of 5

There really has not been any real action to justify the draw.   It is interesting to note that you have chosen to ignore me and my office in all your transactions of leaving, and only do you realize that you should contact me

Anyway, if this client is as big as you say and you secure a worthwhile investment from him then it should not be a problem regarding how much money you will make as it will be substantial if this person invests.

joe

Joseph Shereshevsky
COO
WexTrust Capital, LLC
999 Waterside Drive, Suite 2220
Norfolk, VA 23510
josephs@wextrust.com
Office: (757) 623-0246
Direct: (757) 213-5223
Cell: (732) 904-3368
Fax: (757) 623-6215

Beth McClung
Executive Assistant to COO / Office Manager
999 Waterside Drive, Suite 2220
Norfolk, VA 23510
bmcclung@wextrust.com
Office: (757) 623-0246
Direct: (757) 213-5223
Fax: (757) 623-6215

-----Original Message-----
From: Rich Rodriguez
Sent: Tuesday, March 11, 2008 12:44 PM
To: Joseph Shereshevsky
Subject: FW: Letter from Joe Shereshevsky

Joe,

I had to ask Perri for clarity because you were unavailable to explain this to me.

Rich Rodriguez

WexTrust Capital LLC
333 W Wacker Dr
Suite 1600
Chicago IL 60606
Phone   312.881.6014
Mobile 608.320.0462
www.wextrust.com

-----Original Message-----
From: Rich Rodriguez
Sent: Tuesday, March 11, 2008 11:36 AM
To: Perri Knight
Subject: RE: Letter from Joe Shereshevsky

Joe,

I find it peculiar that you terminate my draw on the same day that I introduce an interested prospect that has over $44,000,000 liquid and based on my introduction is interested in becoming a client of WexTrust.

You should know that I have documentation of my formal referral of Mr. Wayne Siemens, and his group Santa Barbara Capital, his partners:

Pacifica Hotel Company
1933 Cliff Drive, Suite 1
Santa Barbara, CA 93109

6/13/2008

RE: Letter from Joe Shereshevsky

This e-mail transmission may contain information that is proprietary, privileged and/or confidential and is intended exclusively for the person(s) to whom it is addressed. Any use, copying, retention or disclosure by any person other than the intended recipient or the intended recipient's designees is strictly prohibited. If you are not the intended recipient or their designee, please notify the sender immediately by return e-mail and delete all copies.

------_extPart_001_01C88528.1F34F9

67

**Entity and Status Report**

| SEC Count | Contact | Name | Equity Per FPM | Purchase Price | Manager | Owner of Manager | Owner of Owner |
|---|---|---|---|---|---|---|---|
| 1 | Ron Grove | 45 S Washington Holdings, LLC | N/A | 1,825,000 | 45 S. Washington Managers LLC | Westouri Equity Partners, LLC | 80% WTC, 20% M. Gomey |
| | | 45 S Washington Managers, LLC | N/A | N/A | | Westouri Equity Partners, LLC | 80% WTC, 20% M. Gomey |
| | | 45 S. Washington Investors, LLC | N/A | N/A | 45 S. Washington Managers LLC | Westouri Equity Partners, LLC | 80% WTC, 20% M. Gomey |
| 1 | Sheldon Lebb | 47 Dean Street Managers, LLC | N/A | N/A | | Westouri Equity Partners, LLC | 80% WTC, 20% M. Gomey |
| | | 47 Dean Street Investors, LLC | 2,425,000 | 2,400,000 | 47 Dean Street Managers, LLC | Westouri Equity Partners, LLC | 80% WTC, 20% M. Gomey |
| | | 47 Dean Street Managers, LLC | N/A | N/A | 47 Dean Street Managers, LLC | Westouri Equity Partners, LLC | 80% WTC, 20% M. Gomey |
| | | 47 Dean Street Ventures, LLC | N/A | N/A | 47 Dean Street Managers, LLC | Westouri Equity Partners, LLC | 80% WTC, 20% M. Gomey |
| 1 | Ron Grove | 118 N. York Road LLC | 1,100,000 | 3,700,000 | York Road Managers, LLC | Westouri Equity Partners, LLC | 80% WTC, 20% M. Gomey |
| 1 | Tom Fabian | 2400 McClub Investors, LLC | 5,050,000 | 30,404,000 | Steve Byes | Steve Byes | |
| 1 | Don Price | 2435 W. Belmont Development Company, LLC | 3,050,000 | 2,284,705 | 2435 W. Belmont Managers, LLC | Westouri Equity Partners, LLC | 80% WTC, 20% M. Gomey |
| | | 2435 W. Belmont Investors, LLC | N/A | N/A | 2435 W. Belmont Managers, LLC | Westouri Equity Partners, LLC | 80% WTC, 20% M. Gomey |
| | | 2435 W. Belmont Managers, LLC | N/A | N/A | | Westouri Equity Partners, LLC | 80% WTC, 20% M. Gomey |
| 1 | Don Price | 2825 Oakley, LLC | N/A | N/A | River's Edge Managers LLC | Westouri Equity Partners, LLC | 80% WTC, 20% M. Gomey |
| 1 | SOLD | Advantage Regency Holdings, LLC | N/A-Sold | N/A-Sold | Steve Byes | | |
| 1 | Joseph Shereshevsky | ATM I, LLC | 25,000,000 | 25,000,000 | Brandon Investments, LLC | WTC | 20% Steve Byers, 20% Elka Shereshevsky, 20% Lindsay Investment Limited Partnership, 20% Brandon Family Limited Partnership, 20% Amnon Cohen |
| 1 | Elmer Coppolse | Axela Hospitality, LLC | N/A | N/A | Westouri Hospitality Management, LLC | WTC | 20% Steve Byers, 20% Elka Shereshevsky, 20% Lindsay Investment Limited Partnership, 20% Brandon Family Limited Partnership, 20% Amnon Cohen |
| | | Axela Baltimore Holdings, LLC | N/A | N/A | Axela Baltimore Managers, LLC | Axela Hospitality, LLC | 80% WTC, 20% Bilhoven |
| | | Axela Baltimore Investors, LLC | N/A | N/A | Axela Baltimore Managers, LLC | Axela Hospitality, LLC | 80% WTC, 20% Bilhoven |
| | | Axela Baltimore Managers, LLC | N/A | N/A | | Axela Hospitality, LLC | 80% WTC, 20% Bilhoven |
| 1 | Ron Grove | Belle Meade Centre Investors, LLC | 1,500,000 | 6,875,000 | | Westouri Equity Partners, LLC | 80% WTC, 20% Bilhoven |
| 1 | Joseph Shereshevsky | Block III Investors, LLC | 11,000,000 | 11,000,000 | Block III Managers LLC | WTC | 20% Steve Byers, 20% Elka Shereshevsky, 20% Lindsay Investment Limited Partnership, 20% Brandon Family Limited Partnership, 20% Amnon Cohen |
| | | Block III Managers, LLC | N/A | N/A | Brandon Investments, LLC | 99% WTC, 1% Eakes FLP | |
| 1 | Ron Grove | Block III Mines and Minerals, LLC | N/A | N/A | Block III Managers LLC | WTC | 20% Steve Byers, 20% Elka Shereshevsky, 20% Lindsay Investment Limited Partnership, 20% Brandon Family Limited Partnership, 20% Amnon Cohen |
| 1 | Ron Grove | Clarksville Industrial Holdings, LLC | 1,100,000 | 4,213,000 | Clarksville Industrial Managers, LLC | Westouri Equity Partners, LLC | 80% WTC, 20% M. Gomey |
| | | Clarksville Industrial Investors, LLC | N/A | N/A | Clarksville Industrial Managers, LLC | Axela Hospitality, LLC | 80% WTC, 20% Bilhoven |
| | | Clarksville Industrial Managers, LLC | N/A | N/A | Westouri Equity Partners, LLC | Axela Hospitality, LLC | 80% WTC, 20% Bilhoven |
| | | Clarksville Industrial Ventures, LLC | N/A | N/A | Clarksville Industrial Managers, LLC | Westouri Equity Partners, LLC | 80% WTC, 20% M. Gomey |
| 1 | Elmer Coppolse | CP Phoenix Holdings, LLC | 9,300,000 | 24,000,000 | CP Phoenix Managers, LLC | Axela Hospitality, LLC | 80% WTC, 20% Bilhoven |
| | | CP Phoenix Investors, LLC | N/A | N/A | CP Phoenix Managers, LLC | Axela Hospitality, LLC | 80% WTC, 20% Bilhoven |
| | | CP Phoenix Managers, LLC | N/A | N/A | | Axela Hospitality, LLC | 80% WTC, 20% Bilhoven |
| 1 | Sheldon Lebb | Dean Street Managers, LLC | N/A | N/A | | WTC | 20% Steve Byers, 20% Elka Shereshevsky, 20% Lindsay Investment Limited Partnership, 20% Brandon Family Limited Partnership, 20% Daniella, LLC |
| 1 | Elmer Coppolse | Dean Street Investors, LLC | N/A | N/A | Dean Street Managers, LLC | WTC | |
| | | Drake Oak Brook Holdings, LLC | 14,500,000 | 19,000,000 | Drake Oak Brook Managers, LLC | Axela Hospitality, LLC | 80% WTC, 20% Bilhoven |
| | | Drake Oak Brook Investors, LLC | N/A | N/A | Drake Oak Brook Managers, LLC | Axela Hospitality, LLC | 80% WTC, 20% Bilhoven |
| | | Drake Oak Brook Managers, LLC | N/A | N/A | | Axela Hospitality, LLC | 80% WTC, 20% Bilhoven |

**Entity and Status Report**

| SEC | Count | Name | Purchase Price | Equity Paid/Raised | Manager | Owner of Manager | Owner of Owner |
|---|---|---|---|---|---|---|---|
| SOLD | 1 | East Point Investors, LLC | N/A-Sold | N/A-Sold | Westcor Equity Partners, LLC | 80% WTC; 20% M. Gomey | |
| Ron Grove | 1 | Executive Plaza, LLC | 1,000,000 | N/A | Steve Byers | | |
| Ron Grove | 1 | First Highland, LLC | 13,000,000 | 3,680,000 | First Highland Managers LLC | Westcor Equity Partners, LLC | 80% WTC; 20% M. Gomey |
| | 1 | First Highland Equity Investors, LLC | N/A | N/A | First Highland Managers LLC | Westcor Equity Partners, LLC | 80% WTC; 20% M. Gomey |
| | 1 | First Highland Managers, LLC | N/A | N/A | Westcor Equity Partners, LLC | 80% WTC; 20% M. Gomey | |
| Ron Grove/CBRE | 1 | First Wyoming Plaza, LLC | 23,300,000 | 6,750,000 | Westcor Equity Partners, LLC | 80% WTC; 20% M. Gomey | |
| | 1 | First Wyoming Investors, LLC | N/A | N/A | Westcor Equity Partners, LLC | 80% WTC; 20% M. Gomey | |
| | 1 | First Wyoming Managers, LLC | N/A | N/A | Westcor Equity Partners, LLC | 80% WTC; 20% M. Gomey | |
| Tom Paban | 1 | GC Managers, LLC | N/A | N/A | Westcor Equity Partners, LLC | 80% WTC; 20% M. Gomey | |
| | 1 | Gold Coast Development, LLC | 21,000,000 | 9,000,000 | Westcor Equity Partners, LLC | 80% WTC; 20% M. Gomey | |
| | 1 | Gold Coast Investors, LLC | N/A | N/A | GC Managers, LLC | | |
| | 1 | Gold Coast Master Tenant, LLC | N/A | N/A | Gold Coast Master Tenant Manager, LLC | | |
| Don Price | 1 | Gold Coast Master Tenant Manager, LLC | N/A | N/A | Westcor Equity Partners, LLC | 80% WTC; 20% M. Gomey | |
| | 1 | Grant Street Investors, LLC | 18,200,000 | 9,200,000 | GSH Managers, LLC | Wexford Development, LLC | 80% WTC; 20% Don Price |
| Steve Byers | 1 | GSA Holdings, LLC | N/A | N/A | GSA Managers, LLC | Wexford Development, LLC | 80% WTC; 20% Don Price |
| | 1 | GSA Investors, LLC | 26,300,000 | 9,200,000 | GSA Managers, LLC | Wexford Development, LLC | 80% WTC; 20% Don Price |
| | 1 | GSA Managers, LLC | N/A | N/A | Wexford Development, LLC | 80% WTC; 20% M. Gomey | |
| Don Price | 1 | GSH Development, LLC | 18,000,000 | 9,200,000 | Wexford Development, LLC | 80% WTC; 20% Don Price | |
| | 1 | GSH Managers, LLC | N/A | N/A | Wexford Development, LLC | 80% WTC; 20% Don Price | |
| Ron Grove | 1 | Hammond Industrial Holdings, LLC | 28,400,000 | 7,000,000 | Hammond Industrial Managers, LLC | Westcor Equity Partners, LLC | 80% WTC; 20% M. Gomey |
| | 1 | Hammond Industrial Investors, LLC | N/A | N/A | Hammond Industrial Managers, LLC | Westcor Equity Partners, LLC | 80% WTC; 20% M. Gomey |
| | 1 | Hammond Industrial Managers, LLC | N/A | N/A | Westcor Equity Partners, LLC | 80% WTC; 20% M. Gomey | |
| | 1 | Hammond Industrial Ventures, LLC | N/A | N/A | Hammond Industrial Managers, LLC | Westcor Equity Partners, LLC | 80% WTC; 20% M. Gomey |
| | 1 | Hamptons of Hinsdale Mortgage Fund, LLC | N/A | N/A | Wexford Development, LLC | 80% WTC; 20% Don Price | |
| Don Price | 1 | Hilltop Apartments, LLC | N/A | N/A | Hilltop Investors, LLC | 80% WTC; 20% Don Price | |
| Tom Paban | 1 | Hilltop Investors, LLC | 4,650,000 | 600,000 | Westcor Equity Partners, LLC | 80% WTC; 20% M. Gomey | |
| | 1 | Hilltop Ridge Investors, LLC | N/A-Sold | N/A-Sold | Westcor Equity Partners, LLC | 80% WTC; 20% M. Gomey | |
| SOLD | 1 | Hinsdale First, LLC | N/A-Sold | N/A-Sold | Steve Byers | | |
| Don Price | 1 | Homer Development, LLC | 4,379,265 | 1,720,000 | Homer Managers, LLC | Wexford Development, LLC | 80% WTC; 20% Don Price |
| | 1 | Homer Investors, LLC | N/A | N/A | Homer Managers, LLC | Wexford Development, LLC | 80% WTC; 20% Don Price |
| | 1 | Homer Managers, LLC | N/A | N/A | Wexford Development, LLC | 80% WTC; 20% Don Price | |
| Ron Grove | 1 | Interstate Park Holdings, LLC | 28,450,000 | 7,800,000 | Interstate Park Managers, LLC | Westcor Equity Partners, LLC | 80% WTC; 20% M. Gomey |
| | 1 | Interstate Park Investors, LLC | N/A | N/A | Interstate Park Managers, LLC | Westcor Equity Partners, LLC | 80% WTC; 20% M. Gomey |
| | 1 | Interstate Park Managers, LLC | N/A | N/A | Westcor Equity Partners, LLC | 80% WTC; 20% M. Gomey | |
| | 1 | Interstate Park Ventures, LLC | N/A | N/A | Interstate Park Managers, LLC | Westcor Equity Partners, LLC | 80% WTC; 20% M. Gomey |
| N/A | 1 | Mansfield Capital, LLC | | WTC | 20% Steve Byers, 20% Elka Sheretshevsky, 20% Lindsay Investment Limited Partnership, 20% Brandon Family Limited Partnership, 20% Daniella, LLC | | |
| N/A | 1 | Mansfield Investment Manager, LLC | | WTC | 20% Steve Byers, 20% Elka Sheretshevsky, 20% Lindsay Investment Limited Partnership, 20% Brandon Family Limited Partnership, 20% Daniella, LLC | | |
| Ron Grove | 1 | New Salem Holdings, LLC | 4,225,000 | 1,050,000 | New Salem Managers, LLC | Westcor Equity Partners, LLC | 80% WTC; 20% M. Gomey |
| | 1 | New Salem Investors, LLC | N/A | N/A | New Salem Managers, LLC | Westcor Equity Partners, LLC | 80% WTC; 20% M. Gomey |
| | 1 | New Salem Managers, LLC | N/A | N/A | Westcor Equity Partners, LLC | 80% WTC; 20% M. Gomey | |
| | 1 | New Salem Ventures, LLC | N/A | N/A | New Salem Managers, LLC | Westcor Equity Partners, LLC | 80% WTC; 20% M. Gomey |
| SOLD | 1 | Nu Pointe East, LLC | N/A-Sold | N/A-Sold | East Point Investors, LLC | | |
| Ron Grove/Wood Properties | 1 | Park Village Holdings, LLC | 5,750,000 | 2,100,000 | Park Village Managers, LLC | Westcor Equity Partners, LLC | 80% WTC; 20% M. Gomey |
| N/A | 1 | Park Village Investors, LLC | N/A | N/A | Park Village Managers, LLC | Westcor Equity Partners, LLC | 80% WTC; 20% M. Gomey |
| Ron Grove | 1 | Park Village Managers, LLC | N/A | N/A | Westcor Equity Partners, LLC | 80% WTC; 20% M. Gomey | |
| | 1 | Peoria Office Holdings, LLC | 14,750,000 | | Peoria Office Managers, LLC | Westcor Equity Partners, LLC | 80% WTC; 20% M. Gomey |
| Ron Grove | 1 | Peoria Office Investors, LLC | N/A | N/A | Peoria Office Managers, LLC | Westcor Equity Partners, LLC | 80% WTC; 20% M. Gomey |
| | 1 | Peoria Office Managers, LLC | N/A | N/A | Westcor Equity Partners, LLC | 80% WTC; 20% M. Gomey | |

**Entity and Status Report**

| SEC Count | | Name | Purchase Price | Equity Per PPM | Manager | Owner of Manager | Owner of Owner |
|---|---|---|---|---|---|---|---|
| 1 | | Peoria Office Ventures, LLC | N/A | N/A | Peoria Office Managers, LLC | Wexturn Equity Partners, LLC | 80% WTC, 20% M. Gomey |
| 1 | | PVP Ventures, LLC | N/A | N/A | Park Village Managers, LLC | Wexturn Equity Partners, LLC | 80% WTC, 20% M. Gomey |
| 1 | | Riverside Arcade, LLC | 3,650,000 | | Steve Byers | | |
| 1 | | River's Edge Investors, LLC | 13,685,000 | | River's Edge Managers, LLC | Wexturn Equity Partners, LLC | 80% WTC, 20% M. Gomey |
| 1 | Don Price | River's Edge Managers, LLC | N/A | N/A | | Wexturn Equity Partners, LLC | 80% WTC, 20% M. Gomey |
| 1 | Ron Grove/ NAI MLG Management | S. Pine Street Holdings, LLC | 10,500,000 | 2,550,000 | S. Pine Street Managers, LLC | Wexturn Equity Partners, LLC | 80% WTC, 20% M. Gomey |
| 1 | | S. Pine Street Investors, LLC | N/A | N/A | S. Pine Street Managers, LLC | Wexturn Equity Partners, LLC | 80% WTC, 20% M. Gomey |
| 1 | | S. Pine Street Managers, LLC | N/A | N/A | | Wexturn Equity Partners, LLC | 80% WTC, 20% M. Gomey |
| 1 | | S. Pine Street Mezzanine, LLC | N/A | N/A | S. Pine Street Managers, LLC | Wexturn Equity Partners, LLC | 80% WTC, 20% M. Gomey |
| 1 | Don Price | S. Pine Street Ventures, LLC | N/A | N/A | S. Pine Street Managers, LLC | Wexturn Equity Partners, LLC | 80% WTC, 20% M. Gomey |
| 1 | | SF Development Company, LLC | 4,000,000 | 1,390,000 | SF Managers I, LLC | Wexford Development, LLC | 80% WTC, 20% Don Price |
| 1 | Don Price | SF Investors, LLC | N/A | N/A | SF Managers I, LLC | Wexford Development, LLC | 80% WTC, 20% Don Price |
| 1 | | SF Managers I, LLC | N/A | N/A | | Wexford Development, LLC | 80% WTC, 20% Don Price |
| 1 | Ron Grove/ NAI Charter Real Estate Corp | Shallowford Holdings, LLC | 3,350,000 | 825,000 | Shallowford Managers, LLC | Wexturn Equity Partners, LLC | 80% WTC, 20% M. Gomey |
| 1 | | Shallowford Investors, LLC | N/A | N/A | Shallowford Managers, LLC | Wexturn Equity Partners, LLC | 80% WTC, 20% M. Gomey |
| 1 | | Shallowford Managers, LLC | N/A | N/A | | Wexturn Equity Partners, LLC | 80% WTC, 20% M. Gomey |
| 1 | | Shallowford Ventures, LLC | N/A | N/A | Shallowford Managers, LLC | Wexturn Equity Partners, LLC | 80% WTC, 20% M. Gomey |
| 1 | Ron Grove/Wood Properties | Tennessee Office Holdings, LLC | 17,088,535 | 3,650,000 | Tennessee Office Managers, LLC | Wexturn Equity Partners, LLC | 80% WTC, 20% M. Gomey |
| 1 | | Tennessee Office Investors, LLC | N/A | N/A | Tennessee Office Managers, LLC | Wexturn Equity Partners, LLC | 80% WTC, 20% M. Gomey |
| 1 | | Tennessee Office Managers, LLC | N/A | N/A | | Wexturn Equity Partners, LLC | 80% WTC, 20% M. Gomey |
| 1 | | Tennessee Office Ventures, LLC | N/A | N/A | Tennessee Office Managers, LLC | Wexturn Equity Partners, LLC | 80% WTC, 20% M. Gomey |
| 1 | Paul Adrian | WDF Investors, LLC | | | WDF Managers, LLC | 20% Steve Byers, 20% Lindsay Shereshevsky, 20% Lindsay Investment Limited Partnership, 20% Brandon Family Limited Partnership, 20% Daniella, LLC | 20% Steve Byers, 20% Lindsay Shereshevsky, 20% Lindsay Investment Limited Partnership, 20% Brandon Family Limited Partnership, 20% Amnon Cohen |
| 1 | Paul Adrian | WDF Managers, LLC | | | WTC | WTC | |
| 1 | Paul Adrian | WDF Principal Protection, LLC | | | WDF Managers, LLC | 20% Steve Byers, 20% Lindsay Shereshevsky, 20% Lindsay Investment Limited Partnership, 20% Brandon Family Limited Partnership, 20% Daniella, LLC | 20% Steve Byers, 20% Elka Shereshevsky, 20% Lindsay Investment Limited Partnership, 20% Brandon Family Limited Partnership, 20% Amnon Cohen |
| 1 | Sheldon Leeb | West 82nd Street Holdings, LLC | 12,282,000 | 8,470,000 | West 82nd Street Managers, LLC | Wexford Development, LLC | 80% WTC, 20% M. Gomey |
| 1 | | West 82nd Street Investors, LLC | N/A | N/A | West 82nd Street Managers, LLC | Wexford Development, LLC | 80% WTC, 20% Don Price |
| 1 | | West 82nd Street Managers, LLC | N/A | N/A | | Wexford Development, LLC | 80% WTC, 20% Don Price |
| 1 | Ron Grove/Wood Properties | West Bearden Holding, LLC | 8,600,000 | 1,950,000 | West Bearden Managers, LLC | Wexturn Equity Partners, LLC | 80% WTC, 20% M. Gomey |
| 1 | | West Bearden Investors, LLC | N/A | N/A | West Bearden Managers, LLC | Wexturn Equity Partners, LLC | 80% WTC, 20% M. Gomey |
| 1 | | West Bearden Managers, LLC | N/A | N/A | Wexturn Equity Partners, LLC | Wexturn Equity Partners, LLC | 80% WTC, 20% M. Gomey |
| 1 | | West Bearden Ventures, LLC | N/A | N/A | Wexturn Equity Partners, LLC | Wexturn Equity Partners, LLC | 80% WTC, 20% M. Gomey |
| 1 | Amnon Cohen | WEX-I, LLC | N/A | N/A | WTC | 20% Steve Byers, 20% Elka Shereshevsky, 20% Lindsay Investment Limited Partnership, 20% Brandon Family Limited Partnership, 20% Daniella, LLC | 20% Steve Byers, 20% Elka Shereshevsky, 20% Lindsay Investment Limited Partnership, 20% Brandon Family Limited Partnership, 20% Amnon Cohen |
| 1 | Amnon Cohen | Wex-II, LLC | N/A | N/A | | 80% WTC, 20% Don Price | WTC |
| 1 | Don Price | Wexford Development, LLC | N/A | N/A | Wexford Development, LLC | Wexford Development, LLC | 80% WTC, 20% Don Price |
| 1 | Don Price | Wexford Development New York, LLC | N/A | N/A | Wexford Development, LLC | 80% WTC, 20% Don Price | |

**Entity and Status Report**

| | SEC Count | Name | Purchaser Price | Equity Per/PPM | Manager | Owner of Manager | Owner of Owner |
|---|---|---|---|---|---|---|---|
| Don Price | 1 | Wexford Homes LLC | N/A | N/A | Wexford Development, LLC | 80% WTC; 20% Don Price | |
| Weldon Turner | 1 | WEXFX, LLC | N/A | N/A | WexTrust Securities, LLC | Michael Mostfosky & Weldon Turner | |
| Paul Adrian | 1 | WexTrade Commodity Holdings, LLC | N/A | N/A | Paul Adrian | | |
| Paul Adrian | 1 | WexTrade Commodity Managers, LLC | N/A | N/A | Paul Adrian | | |
| Paul Adrian | | WexTrade Diversified Futures Fund I, LLC | N/A | N/A | Paul Adrian | | |
| Paul Adrian | | WexTrade Diversified Offshore Futures Fund I, LTD | N/A | N/A | Paul Adrian | | |
| Paul Adrian | 1 | WexTrade Financial, LLC | N/A | N/A | WTC | 20% Steve Byers, 20% Elka Shereshevsky, 20% Lindsay Investment Limited Partnership, 20% Brandon Family Limited Partnership; 20% Amnon Cohen | |
| Paul Adrian | 1 | WexTrade Master Fund I, LTD. | N/A | N/A | Paul Adrian | | |
| Paul Adrian | 1 | WexTrade Principal Offshore Fund I, LTD. | N/A | N/A | Paul Adrian | | |
| Paul Adrian | 1 | WexTrade Principal Protected Fund I, LLC | N/A | N/A | Paul Adrian | | |
| Ron Grove | 1 | WexTrust Asset Management, LLC | N/A | N/A | Wextrust Equity Partners, LLC | 80% WTC; 20% M. Gomey | |
| Steve Byers | 1 | WexTrust Capital LLC | N/A | N/A | 20% Steve Byers, 20% Elka Shereshevsky, 20% Lindsay Investment Limited Partnership, 20% Brandon Family Limited Partnership; 20% Amnon Cohen | | |
| Mike Gomey | 1 | WexTrust Equity Partners, LLC | N/A | N/A | 80% WTC; 20% M. Gomey | | |
| Amnon Cohen | 1 | WexTrust HighYield Debt Fund I, LLC | N/A | N/A | Wex I | WTC | 20% Steve Byers, 20% Elka Shereshevsky, 20% Lindsay Investment Limited Partnership, 20% Brandon Family Limited Partnership; 20% Amnon Cohen |
| Amnon Cohen | 1 | WexTrust High Yield Debt Fund III, LLC | N/A | N/A | Wex I | WTC | 20% Steve Byers, 20% Elka Shereshevsky, 20% Lindsay Investment Limited Partnership, 20% Brandon Family Limited Partnership; 20% Amnon Cohen |
| Amnon Cohen | 1 | Wextrust High Yield Debt Offshore, Ltd. | N/A | N/A | Wex II | WTC | 20% Steve Byers, 20% Elka Shereshevsky, 20% Lindsay Investment Limited Partnership, 20% Brandon Family Limited Partnership; 20% Amnon Cohen |
| N/A | 1 | WexTrust Hospitality Management, LLC | N/A | N/A | WTC | 20% Steve Byers, 20% Elka Shereshevsky, 20% Lindsay Investment Limited Partnership, 20% Brandon Family Limited Partnership; 20% Daniella, LLC | |
| Amnon Cohen | 1 | WexTrust/HPC Mortgage Fund, LP | N/A | N/A | WTC | 20% Steve Byers, 20% Elka Shereshevsky, 20% Lindsay Investment Limited Partnership, 20% Brandon Family Limited Partnership; 20% Daniella, LLC | |
| N/A | 1 | WexTrust Qualified Investors, LLC | N/A | N/A | WTC | 20% Steve Byers, 20% Elka Shereshevsky, 20% Lindsay Investment Limited Partnership, 20% Brandon Family Limited Partnership; 20% Daniella, LLC | |
| Weldon Turner | 1 | WexTrust Securities, LLC | N/A | N/A | Michael Mostfosky & Weldon Turner | | |

Entity and Status Report

| SEC Count | | Name | Purchase Price | Equity Per PPM | Manager | Owner of Manager | Owner of Owner |
|---|---|---|---|---|---|---|---|
| 1 | Amnon Cohen | Whitney Realty Advisors, LLC | N/A | N/A | WTC | 20% Steve Byers; 20% Erika Shershevsky; 20% Lindsay Investment Limited Partnership; 20% Brandon Family Limited Partnership; 20% Daniella, LLC | |
| 1 | Ron Grove | Wilma Rudolph Holdings, LLC | 1,700,000 | | 275,000 | Wilma Rudolph Managers, LLC | Wextrust Equity Partners, LLC | 80% WTC; 20% M. Gomey |
| 1 | | Wilma Rudolph Investors, LLC | N/A | N/A | Wilma Rudolph Managers, LLC | Wextrust Equity Partners, LLC | 80% WTC; 20% M. Gomey |
| 1 | | Wilma Rudolph Managers, LLC | N/A | N/A | | Wextrust Equity Partners, LLC | 80% WTC; 20% M. Gomey |
| 1 | | Wilma Rudolph Managers, LLC | N/A | N/A | | Wextrust Equity Partners, LLC | 80% WTC; 20% M. Gomey |
| 1 | | Wilma Rudolph Ventures, LLC | N/A | | | Wilma Rudolph Managers, LLC | Wextrust Equity Partners, LLC | 80% WTC; 20% M. Gomey |
| 1 | Ron Grove | Workman Road Holdings, LLC | 3,525,000 | | 750,000 | Workman Road Managers, LLC | Wextrust Equity Partners, LLC | 80% WTC; 20% M. Gomey |
| 1 | | Workman Road Investors, LLC | N/A | N/A | Workman Road Managers, LLC | Wextrust Equity Partners, LLC | 80% WTC; 20% M. Gomey |
| 1 | | Workman Road Managers, LLC | N/A | N/A | | Wextrust Equity Partners, LLC | 80% WTC; 20% M. Gomey |
| 1 | | Workman Road Ventures, LLC | N/A | N/A | | Wextrust Equity Partners, LLC | 80% WTC; 20% M. Gomey |
| 1 | N/A | WPN, LLC | 8,600,000 | | | Wextrust Equity Partners, LLC | 80% WTC; 20% M. Gomey |
| 1 | N/A | WP New Orleans, L.L.C. | | | Wextrust Equity Partners, LLC | 80% WTC; 20% M. Gomey | |
| 147 | | | | | | | |

5

**68**

Wextrust Capital Private Placements and
Entities in Wextrust Capital LLC
Combined Balance Sheet
as of December 31, 2007

Attorney-Client Privilege
Joint Law Enforcement Privilege
Government Deliberative Process Privilege

| on WTC's Online Database | Offering | SEC Count | Date of Offering (per PPM) | Date of Offering (per Sch. B) | Date of Offering (per Form D) | Earliest Date of Initial Investment for Sampled Investors | Latest Date of Investment for Sampled Investors | Included in WTC's Combined Balance Sheet Under Intercompany Loans |
|---|---|---|---|---|---|---|---|---|
| x | 1250 S. Michigan LLC | 1 | 5/6/2003 | | | 12/5/2002 | 4/1/2003 | |
| x | 1805 Highpoint | 1 | | | | | | |
| x | 625 Paragon LLC | 1 | 4/17/2008 | | | | | |
| x | 47 Dean Street Investors | 1 | 6/29/2007 | | | | | 1 |
| x | Advantage Regency Holdings | 1 | 4/24/2008 | | | 10/21/2002 | 3/5/2004 | |
| x | ATM II LLC | 1 | | | | | | |
| x | Baxtech | 1 | 2/1/2004 | | | 6/1/2004 | 6/1/2004 | 1 |
| x | Belle Meade | 1 | | | | | | |
| x | Block III Mines & Minerals | 1 | 3/22/2007 | | | | | 1 |
| x | Bret Investors Skeleton Coast III | 1 | | 11/12/2007 | | | | |
| x | Bret Investors Skeleton Coast | 1 | | 7/9/2007 | | | | 1 |
| x | Carlisle Park LLC | 1 | | | | 11/25/2002 | 6/16/2003 | 1 |
| x | Clarksville Industrial LLC | 1 | 8/17/2007 | | | | | 1 |
| x | Crowne-Phoenix Investors LLC | 1 | 8/8/2007 | | | | | 1 |
| x | Dean Street Investors LLC | 1 | 4/29/2005 | | | | | 1 |
| x | Drake Oak Brook Investors LLC | 1 | 11/10/2007 | | | | | 1 |
| x | First Wyoming | 1 | 12/14/2004[1] | | | | | 1 |
| x | FreeMac Holdings | 1 | | | | 2/27/2004 | 6/22/2004 | 1 |
| x | Freeport | 1 | | | | 6/1/2004 | 6/1/2004 | |
| x | GDRs | 1 | | | | 9/25/2006 | 1/15/2008 | 1 |
| x | Gold Coast Investors LLC | 1 | 6/30/2005 | | | 1/12/2005 | 4/14/2005 | 1 |
| x | Grant Street Investors LLC | 1 | 11/22/2005 | | | | | |
| x | GSA | 1 | 12/13/2007 | | | | | 1 |
| x | GSPNs | 1 | 7/2/2007 | | | | | |
| x | Hammond Industrial Investors LLC | 1 | 2/28/2007 | | | | | 1 |
| x | Hamptons of Hinsdale Mortgage Fund LLC | 1 | 11/3/2006 | | | | | 1 |
| x | Highland Park | 1 | 6/1/2004 | | | | | 1 |
| x | Hilltop Apartments LLC | 1 | | | | 7/30/2004 | 12/1/2004 | 1 |
| x | Hilltop Ridge Apartments LLC | 1 | | | | 3/28/2002 | 4/2/2004 | 1 |
| x | Homer Glen Investors LLC | 1 | 1/31/2006 | | | | | 1 |
| x | IDEX Mines and Minerals LLC | 1 | 1/16/2006 | | | | | 1 |
| x | Interstate Park Investors LLC | 1 | 11/3/2006 | | | | | 1 |
| x | McCue | 1 | | | | 9/28/2004 | 12/23/2004 | 1 |
| x | Myatt Holdings | 1 | | | | 1/1/2002 | 1/1/2002 | 1 |
| x | New Salem Investors LLC | 1 | 3/1/2006 | | | | | 1 |

1

Wextrust Capital Private Placements and
Entities in Wextrust Capital LLC
Combined Balance Sheet
as of December 31, 2007

Attorney-Client Privilege
Joint Law Enforcement Privilege
Government Deliberative Process Privilege

| on WTC's Online Database | Offering | SEC Count | Date of Offering (per PPM) | Date of Offering (per Sch. B) | Date of Offering (per Form D) | Earliest Date of Initial Investment for Sampled Investors | Latest Date of Investment for Sampled Investors | Included in WTC's Combined Balance Sheet Under Intercompany Loans |
|---|---|---|---|---|---|---|---|---|
| x | Park Village Holdings LLC | 1 | 7/5/2005 | | | | | 1 |
| x | Peoria Office Investors LLC | 1 | 11/9/2007 | | | | | 1 |
| x | River's Edge Investors LLC | 1 | | | | | | 1 |
| | Riverside | 1 | | | 10/18/2005 | | | 1 |
| x | S. Pine Street Investors LLC | 1 | 9/8/2004 | | | | | 1 |
| x | Shallowford Investors LLC | 1 | 5/7/2007 | | | | | 1 |
| x | Skeleton Coast Bret Investors LLC | 1 | | 10/10/2006 | | | | 1 |
| x | Tennessee Office Investors | 1 | | 4/20/2007 | | | | 1 |
| x | Uptown Square LLC | 1 | | | | | | |
| x | USPN 8.5% Rollover | 1 | | | | | | |
| x | WDFF Offshore Fund Ltd | 1 | | | | 7/18/2003 | 10/22/2003 | |
| x | West 82nd Street Holdings, LLC | 1 | 6/1/2007 | 11/30/2006 | | | | |
| x | West 82 Street Investors, LLC | 1 | | 11/16/2006 | | | | 1 |
| x | West Beardon Investors LLC | 1 | | 10/25/2006 | | | | 1 |
| x | West Belmont Investors LLC | 1 | 9/1/2005 | | | | | 1 |
| x | Wex-New Orleans | 1 | | | | | | 1 |
| x | Wextrade Diversified Futures Fund I LLC | 1 | 10/16/2006 | | | 11/23/2005 | 10/31/2006 | 1 |
| x | Wextrade Principal Protected Fund I, LLC | 1 | 9/30/2006 | | | 3/19/2004 | 10/16/2006 | 1 |
| x | Wextrust High Yield Debt Fund I | 1 | | | | | | 1 |
| x | Wextrust High Yield Debt Fund III | 1 | 6/30/2006 | | | 6/30/2004 | 8/31/2006 | 1 |
| x | Wextrust High Yield Debt Offshore Fund Ltd. | 1 | 12/18/2007 | | | | | 1 |
| x | Wextrust Qualified Investors LLC - Dean Street | 1 | | | | 7/12/2005 | 7/21/2005 | 1 |
| x | Workman Road Investors LLC | 1 | | | | 3/27/2006 | 6/16/2006 | 1 |
| x | WPPF Offshore Fund Ltd. | 1 | 6/1/2007 | | | | | |
| x | York Road Investors LLC | 1 | 9/22/2005 | | | | | 1 |
| | | 60 | | | | | | 40 |

N.B. Listing exludes "Guaranteed Depository Receipts" because the average investment size in this fund was small and also, to avoid double counting as "GDRs" were already incl

[1] Date of First Operating Agreement of First Wyoming Investors, LLC.

For purposes of counting funds in Wextrust's Combined Balance sheet, the staff is assuming "124 Adams" is Peoria; "Hammond II" is Hammond Industrial Investors and "WHYF" is Wextrust High Yield Debt Fund I. There is a $461 K "Loan" to WHYF II, but the staff was told this fund was not launched.

69

| Fund ID | Fund Name | Total Fund Equity | Preferred Rate of Return | Payment Frequency | Closing Date | Yearly Fund totals | SEC Count |
|---|---|---|---|---|---|---|---|
| 10 | Carlisle Park, LLC | 475,000.00 | 12 | Monthly | 12/31/9999 | | 1 |
| 11 | Hilltop Ridge Apartments | 1,275,000.00 | 12 | Monthly | 12/31/9999 | | 1 |
| 12 | Midtown Estates | 0 | | | 12/31/2099 | | |
| 13 | Myatt Holdings | 1,600,000.00 | | | 12/31/2099 | | |
| 14 | 1805 Highpoint | 131,000.00 | 12 | Monthly | 12/31/9999 | | 1 |
| 15 | Advantage Regency Holdings | 50,000.00 | | | 12/31/2099 | | |
| 16 | High Yield Debt Fund I | 15,938,876.72 | | | 12/31/2099 | | |
| 17 | 1250 S. Michigan Ave., LLC | 32,284.78 | | | 12/31/2099 | | |
| 18 | Uptowne Square, LLC | 490,000.00 | 12 | Monthly | 12/31/9999 | | 1 |
| 19 | Hilltop Apartments, LLC | 583,000.00 | 12 | Monthly | 12/31/9999 | | 1 |
| 20 | East Point | 0 | 12 | | 12/31/9999 | | 1 |
| 21 | Guaranteed Depository Receipts | 5,201.21 | 8.5 | | 12/31/9999 | | 1 |
| 22 | FreeMac Holdings | 790,000.00 | 12 | | 12/31/9999 | | 1 |
| 23 | 1250 S. Michigan Avenue, LLC B | 0 | | | 12/31/2099 | | |
| 24 | 318 W Adams / Escrow | 0 | | | 12/31/2099 | | |
| 25 | Wex-New Orleans | 500,000.00 | 12 | Monthly | 12/31/9999 | | 1 |
| 26 | Belle Meade | 1,456,700.00 | 12 | Monthly | 12/31/9999 | | 1 |
| 27 | Highland Park | 4,287,082.78 | 9 | Monthly | 12/31/9999 | | 1 |
| 28 | Music Row Investors, LLC | 0 | | | 12/31/2099 | | |
| 29 | Freeport | 0 | | | 12/31/2099 | | |
| 30 | Baxtech | 300,000.00 | 9.24 | Monthly | 12/31/9999 | | 1 |
| 31 | McCue | 2,170,377.04 | 15 | Monthly | 12/31/9999 | | 1 |
| 32 | First Wyoming Investors | 8,183,826.28 | 12 | Monthly | 12/31/9999 | | 1 |
| 33 | Gold Coast Investors, LLC | 12,382,271.68 | 8 | Monthly | 12/31/9999 | | 1 |
| 34 | Riverside | 1,885,581.49 | 10 | Monthly | 12/31/9999 | | 1 |
| 35 | Hyde Park | 0 | | | 12/31/2099 | | |
| 36 | Dean Street Investors, LLC | 3,586,261.84 | 10 | Monthly | 12/31/9999 | | 1 |
| 37 | Grant Street Investors, LLC | 7,268,247.40 | 8 | Monthly | 12/31/9999 | | 1 |
| 38 | Park Village Holdings, LLC | 2,130,980.22 | 10 | Monthly | 12/31/9999 | | 1 |
| 39 | Dean Street Managers LLC | 300,000.00 | 10 | Monthly | 12/31/9999 | | 1 |
| 40 | West Bearden Investors, LLC | 2,518,611.61 | 11 | Monthly | 12/31/9999 | | 1 |
| 41 | York Road Investors, LLC | 1,332,119.26 | 6 | Monthly | 12/31/9999 | | 1 |
| 42 | River's Edge Investors, LLC | 2,884,337.29 | 8 | Monthly | 12/31/9999 | | 1 |
| 43 | West Belmont Investors, LLC | 3,551,628.91 | 8 | Monthly | 12/31/9999 | | 1 |

| | | Amount | Rate | Frequency | Date | |
|---|---|---|---|---|---|---|
| 44 | GSA Investors, LLC | 9,132,728.83 | 8.5 | Monthly | 12/31/9999 | 1 |
| 45 | IDEX Mines and Minerals, LLC | 28,000,000.00 | | Monthly | 12/31/9999 | 1 |
| 46 | Homer Glen Investors, LLC | 2,613,000.00 | 6.5 | Monthly | 12/31/9999 | 1 |
| 47 | New Salem Investors, LLC | 1,101,008.23 | 8 | Monthly | 12/31/9999 | 1 |
| 48 | Workman Road Investors, LLC | 750,000.00 | 8 | Monthly | 12/31/9999 | 1 |
| 49 | Tennessee Office Investors, LLC | 4,252,268.49 | 9 | Monthly | 12/31/9999 | 1 |
| 50 | High Yield Debt Fund III | 14,498,848.42 | | | 12/31/2099 | |
| 51 | High Yield Debt Fund II | 0 | | | 12/31/2099 | |
| 52 | GDR 1 year @ 7% | 2,080,118.34 | 7 | | 12/31/9999 | 1 |
| 53 | GDR 18 months @ 7.75% | 100,658.22 | 7.75 | | 12/31/9999 | 1 |
| 54 | GDR 3 years @ 9% | 105,839.33 | 9 | | 12/31/9999 | 1 |
| 55 | GDR 3 years @ 12% | 3,979,326.06 | 9 | | 12/31/9999 | 1 |
| 56 | West 82nd Street Investors, LLC | 8,845,668.24 | 8 | Quarter | 12/31/9999 | 1 |
| 57 | Interstate Park Investors, LLC | 7,948,147.96 | 8 | Quarter | 12/31/9999 | 1 |
| 58 | GDR 8.5% ROLLOVER | 166,851.73 | 8.5 | | 12/31/2099 | 1 |
| 59 | Wexford Diversified Futures Fund I | 6,718,817.89 | | | 12/31/2099 | |
| 60 | Shallowford Investors, LLC | 800,000.00 | 8 | Quarter | 12/31/9999 | 1 |
| 61 | Hamptons of Hinsdale Mortgage Fu | 13,058,936.65 | 14 | Quarter | 12/31/9999 | 1 |
| 62 | Wexford Principal Protected Fund I | 3,130,000.00 | | | 12/31/2099 | |
| 63 | Block III Mines & Minerals, LLC | 11,000,000.00 | | | 12/31/2099 | |
| 65 | S. Pine Street Investors, LLC | 2,551,545.21 | 8 | Quarter | 6/8/2007 | 1 |
| 66 | Skeleton Coast Bret Investors, LLC | 3,000,000.00 | | | 12/31/9999 | |
| 67 | Hammond Industrial Investors, LLC | 7,801,890.96 | 8 | Quarter | 7/18/2007 | 1 |
| 68 | Bret Investors Skeleton Coast LLC | 5,970,000.00 | | | 12/31/2099 | |
| 69 | 47 Dean Street Investors, LLC | 3,345,284.92 | 8 | Quarter | 9/26/2007 | 1 |
| 70 | WDFF OFFSHORE FUND I LTD | 274,975.00 | 0 | | 12/31/9999 | |
| 71 | WPPF OFFSHORE FUND I LTD | 0 | 0 | | 12/31/9999 | |
| 72 | Clarksville Industrial Investors, LLC | 850,361.64 | 8 | Quarter | 8/6/2007 | 1 |
| 73 | Crowne-Phoenix Investors, LLC | 7,698,005.40 | 10 | Quarter | 10/23/2007 | 1 |
| 74 | Peoria Offices Investors, LLC | 1,149,999.00 | 8 | Quarter | 12/31/2099 | 1 |

SEC Total Equity 227,032,669.03

| | |
|---|---|
| SEC Total | 420 |
| SEC Average Preferred Return | 9.5% |

SEC # of Deals with Pre Rtn Figures 44

70

July 2008 Lease Inventory
sorted by State
www.gsa.gov

| Region | Lease No | Bldg No | City | County | St | Building Address | Lessor/Owner | Last Term Related Action | Original Start Date | Original End Date | Current End Date | Termination Right Date | Lessor Address | Lessor St | Lessor Zip | Lessor Phone |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | LF42141 | FL2194 | GAINESVILLE | ALACHUA | FL | 101 SE 2ND STREET | GAINESVILLE, INC. | | 10/1/2002 | 10/31/2012 | 10/31/2012 | | P.O. BOX 2600 | FL | 32602-2600 | 352/376172 |
| | LF42847 | FL3046 | GAINESVILLE | ALACHUA | FL | 3860 NE 39TH AVENUE | QUIET WATER LLC | EXTENSION | 11/1/2002 | 10/31/2007 | 10/31/2007 | | 3039 AIRPORT CROSSING | FL | 32609-2953 | 352-372-9860 |
| | LF3017 | FL3017 | GAINESVILLE | ALACHUA | FL | 300 E. UNIVERSITY AVE | NEWRREPLA-GAINESVILLE, ALACHUA CTY REG | EXTENSION | 10/27/2009 | 10/27/2014 | 10/27/2014 | | 1319 W. 6TH STREET | FL | 32601-0000 | 352-373-4600 |
| | LF44435 | FL3017 | GAINESVILLE | ALACHUA | FL | 300 E. UNIVERSITY AVE | NEWRREPLA-GAINESVILLE COMMERCE CENTER LP | NEWRREPLA | 11/28/2008 | 10/27/2014 | 10/27/2014 | | 502 NW 16TH AVENUE | FL | 32601-0000 | 352-375-4600 |
| | LF44054 | FL3017 | GAINESVILLE | ALACHUA | FL | 2201 NW 40TH TERRACE | NEWRREPLA-GAINESVILLE COMMERCE CENTER LP | NEWRREPLA | 11/2/2009 | 11/13/2015 | 11/13/2015 | | 502 NW 16TH AVENUE | FL | 32601-0000 | 352-375-4600 |
| | LF44430 | FL2981 | GAINESVILLE | ALACHUA | FL | 104 E MAIN STREET | NEWRREPLA-GAINESVILLE PROPERTIES | NEWRREPLA | 7/14/2010 | 7/13/2015 | 7/13/2015 | | 5316 SW 2nd PLACE | FL | 32607-1253 | 352-373-3253 |
| | LF45067 | FL2981 | GAINESVILLE | ALACHUA | FL | 104 E MAIN STREET | SUCCEEDING NO 104 N. MAIN LLC | SUCCEEDING | 3/15/2005 | 3/14/2015 | 3/14/2015 | | 1430 BROADWAY, SUITE 1605 | NY | 10018-3905 | 212-642-7800 |
| | LF45138 | FL2214 | GAINESVILLE | ALACHUA | FL | 5 MAIN STREET | SUCCEEDING-SUN CIRCLE, INC | SUCCEEDING | 6/1/2005 | 5/31/2012 | 5/31/2012 | | P.O. BOX 2600 | FL | 32602-2600 | 352-372-6172 |
| | LF43213 | FL3160 | GROVELAND | LAKE | FL | 104 N. MAIN ST | NEWRREPLA- IND 104 N.LUCKS RR, LLC | NEWRREPLA | 11/1/2012 | 10/31/2017 | 10/31/2017 | | 1430 BROADWAY SUITE 1605 | NY | 10018-3905 | 212-642-7800 |
| | LF47023 | FL2882 | GULF BREEZE | SANTA ROSA | FL | 2020 INDEPENDENCE BLVD, PL | NEWRREPLA- LAMBDY PROPERTIES CLERMONT F&W | NEWRREPLA | 3/1/2008 | 2/28/2011 | 2/28/2011 | | 1101 TOWER DRIVE | FL | 71301-4984 | 318-386-2791 |
| | LF44825 | FL2243 | HEATHROW | SEMINOLE | FL | 300 INTERNAT'L PKWY | QUIET WATER LLC | EXTENSION | 4/1/2007 | 3/31/2017 | 3/31/2017 | | 1101 GULF BREEZE PARKWAY | LA | 32561-4858 | 850-934-4725 |
| | LF32243 | FL3852 | HIALEAH | MIAMI-DADE | FL | 6500 W. 21ST COURT STREE | NEWRREPLA-HIALEAH ONE INDUSTRIAL PARK | EXTENSION | 11/4/2014 | 11/4/2014 | 11/4/2014 | | 850 MARKET PROMENADE AVE., ST. | FL | 32746-0000 | 407-566-2200 |
| | LF47619 | FL3150 | HIALEAH | MIAMI-DADE | FL | 6325 W. 20TH STREET | NEWRREPLA- 6500 WEST LLC | | 3/12/2005 | 2/28/2015 | 2/28/2015 | | 100 NORTH EAST 18TH STREET | FL | 33030-0000 | 305-547-8000 |
| | LF38823 | FL2132 | HOLLYWOOD | BROWARD | FL | 6100 HOLLYWOOD BOULEVARD | YASHASINI LLC | EXTENSION | 3/24/2007 | 3/23/2012 | 3/23/2012 | | 6001 WEST 20 AVE SUITE 1 | FL | 33016-0000 | 305-557-0165 |
| | LF3886X | FL2132 | HOLLYWOOD | BROWARD | FL | 2975 PHILLIPS HIGHWAY | NEWRREPLA-HIALEAH ONE INDUSTRIAL PARK | EXTENSION | 6/11/1988 | 5/31/2008 | 5/31/2008 | | 6100 HOLLYWOOD BLVD | FL | 33024-0000 | 954-966-0773 |
| | LF46345 | FL2132 | HOLLYWOOD | BROWARD | FL | 6100 HOLLYWOOD BOULEVARD | SUCCEEDIN-YASHASINI, LLC | NEWRREPLA | 11/16/2006 | 11/15/2008 | 11/15/2008 | | 6100 HOLLYWOOD BOULEVARD | FL | 33024-0000 | 954-985-0773 |
| | LF45851 | FL2077 | HOLLYWOOD | BROWARD | FL | 3475 SHERIDAN STREET | SUCCEEDIN-YASHASINI, LLC | | 10/6/2003 | 10/5/2008 | 10/5/2008 | | 6100 HOLLYWOOD BOULEVARD | FL | 33024-0000 | 205-966-7300 |
| | LF45412 | FL2160 | HOMESTEAD | MIAMI-DADE | FL | 381 K KROME AVE | SUCCEEDIN-YASHASINI, LLC | NEWRREPLA | 6/1/2005 | 5/31/2010 | 5/31/2010 | | 1830 HARRISON STREET | FL | 33020-0000 | 954-926-2510 |
| | LF38033 | FL2602 | ISLAMORADA | MONROE | FL | 6 6 OVERSEAS HIGHWAY | SHERIDAN EXECUTIVE CENTER, LLC | EXTENSION | 2/1/1995 | 1/31/2005 | 1/31/2005 | | 6600 NW 74TH AVE | FL | 33166-0000 | 954-226-2510 |
| | LF3771X | FL2850 | ISLAMORADA | MONROE | FL | 850 NORTH KROME AVENUE | NEWRREPLA-LIR PARTNERS LLC | EXTENSION | 5/1/1997 | 4/30/2009 | 4/30/2009 | | 2000 SOUTH DIXIE HWY, SUITE #100 | FL | 33133-0000 | 305-856-5858 |
| | LF43621 | FL2752 | ISLAMORADA | MONROE | FL | 85600 US HWY 1 | NEWRREPLA- 6500 WEST LLC | NEWRREPLA | 11/1/1997 | 11/4/2014 | 11/4/2014 | | 3916 FLAGLER BLVD | FL | 33133-0000 | 305-856-5858 |
| | LF36296 | FL2759 | JACKSONVILLE | DUVAL | FL | 7820 ARLINGTON EXPWY | NEWRREPLA-OAKS CC, LLC & OAKS RR LLC | EXTENSION | 4/20/1989 | 12/31/1989 | 12/31/1989 | | 145 EAST 48TH STREET | FL | 33134-0000 | 305-443-1949 |
| | LF44589 | FL2123 | JACKSONVILLE | DUVAL | FL | 5624 SOUTHPOINT DR SOUT | NEWRREPLA-SUBURBAN OWNER LLC | EXTENSION | 6/26/1990 | 6/25/2009 | 6/25/2009 | | 10017-0002 | FL | 32202-0000 | 212-813-9405 |
| | LF33215 | FL2127 | JACKSONVILLE | DUVAL | FL | 1851 EXECUTIVE CTR. DR | NEWRREPLA-SUBURBAN OWNER LLC | EXTENSION | 8/1/2003 | 8/31/2008 | 8/31/2008 | | 3947 BOULEVARD CENTER DRIVE | FL | 32207-0000 | 904-398-9092 |
| | LF35009 | FL2077 | JACKSONVILLE | DUVAL | FL | 3733 UNIVERSITY BLVD S | NEWRREPLA-BHIMAN PONY CC, CAT-RAIN BONE INC | | 6/25/1996 | 6/24/2011 | 6/24/2011 | | 3947 BOULEVARD CENTER DRIVE | FL | 32207-0000 | 904-398-9092 |
| | LF38033 | FL2202 | JACKSONVILLE | DUVAL | FL | 7820 ARLINGTON EXPWY | OLD LEASE-BHIMAN PONY CC, CAT-RAIN BONE INC | OLD LEASE | 5/1/1996 | 4/30/2009 | 4/30/2009 | | C/O GSM-CAPITAL PARTNERS | FL | 32202-0000 | 904-854-8566 |
| | LF36036 | FL2789 | JACKSONVILLE | DUVAL | FL | 7820 ARLINGTON EXPWY | C3119 CENTRAL PARK EAST | EXTENSION | 10/31/2008 | 10/31/2008 | 10/31/2008 | | 3728 PHILLIPS HWY | FL | 32207-0000 | 904-854-8566 |
| | LF36070 | FL2357 | JACKSONVILLE | DUVAL | FL | 2831 TALLYRAND AVENUE | NEWRREPLA-OAKS CC, LLC & OAKS RR, LLC | EXTENSION | 12/17/1997 | 12/16/2009 | 12/16/2009 | | 3217 ATLANTIC BLVD | FL | 10017-0002 | 212-813-9405 |
| | LF32051 | FL2396 | JACKSONVILLE | DUVAL | FL | 101 GULF BREEZE PKWY | EXTENSION-JACKSONVILLE PORT AUTHORITY | EXTENSION | 12/17/1997 | 9/14/2007 | 9/14/2007 | | 2831 TALLYRAND AVENUE | FL | 32007-0000 | 904-384-8495 |
| | LF37046 | FL2395 | JACKSONVILLE | DUVAL | FL | 4121 SOUTHPOINT BOULEVA | EXTENSION-MIDTOWN CENTRE, LLC | EXTENSION | 4/15/1999 | 4/15/2009 | 4/15/2009 | | 2831 TALLYRAND AVENUE | FL | 32207-0000 | 904-384-8495 |
| | LF37051 | FL2062 | JACKSONVILLE | DUVAL | FL | 7825 BAYMEADOWS WAY | NEWRREPLA-MIDTOWN CENTRE LLC | EXTENSION | 9/11/1997 | 8/31/2002 | 8/31/2002 | | 3947 BOULEVARD CENTER DRIVE | PA | 32126-0000 | 386-589-4404 |
| | LF38161 | FL2459 | JACKSONVILLE | DUVAL | FL | 5624 SOUTHPOINT DR FL | EXTENSION-MIDTOWN CENTRE, LLC | EXTENSION | 8/1/1999 | 9/9/2007 | 3/31/2008 | | 211 NIAGARA PLAZA | FL | 32207-0000 | 904-396-9092 |
| | LF42048 | FL2048 | JACKSONVILLE | DUVAL | FL | 2975 PHILLIPS HIGHWAY | EXTENSION-MIDTOWN CENTRE, LLC | EXTENSION | 9/11/2000 | 9/9/2007 | 9/9/2007 | | 3947 BOULEVARD CENTER DRIVE | FL | 32207-0000 | 904-396-9092 |
| | LF40008 | FL2499 | JACKSONVILLE | DUVAL | FL | 4161 CARMICHAEL AVENUE | EXTENSION- COH CENTRAL AND | EXTENSION | 11/1/1999 | 10/31/2009 | 10/31/2009 | | P.O. BOX 4219 | FL | 32207-0000 | 904-854-8566 |
| | LF39009 | FL2548 | JACKSONVILLE | DUVAL | FL | 1 INDEPENDENT DRIVE | NEWRREPLA-BAYMEADOWS CENTER, LLC | EXTENSION | 7/1/2003 | 7/22/2008 | 7/22/2008 | | 3947 BOULEVARD CENTER DRIVE | FL | 32207-0000 | 904-854-8566 |
| | LF40083 | FL2290 | JACKSONVILLE | DUVAL | FL | 2300 W FORSYTH ST | EXTENSION- ONE INDEPENDENT SQUARE, LLC | EXTENSION | 12/15/2010 | 11/2/2005 | 11/2/2005 | | ONE INDEPENDENT DRIVE | FL | 32202-0000 | 904-356-1979 |
| | LF43245 | FL2511 | JACKSONVILLE | DUVAL | FL | 13520 AEROSPACE WAY | NEWRREPLA- WEST FORSYTH FINANCIAL ASSOC. | NEWRREPLA | 2/1/2001 | 3/22/2008 | 3/22/2008 | | 220 W FORSYTH STREET | FL | 32202-4940 | 904-384-7111 |
| | LF44107 | FL2503 | JACKSONVILLE | DUVAL | FL | 5209 BELFORT ROAD | RENEWAL | RENEWAL | 3/23/2001 | 3/22/2008 | 3/22/2008 | | JACKSONVILLE PARTNERS | FL | 32202-0000 | 904-384-7111 |
| | LF41610 | FL2530 | JACKSONVILLE | DUVAL | FL | 7016 AC DUNN ST | NEWRREPLA-JACKSONVILLE CONCOURSE III, LLC | NEWRREPLA | 10/1/2001 | 9/30/2021 | 9/30/2021 | | 6675 CORPORATE CENTER PARKWA | FL | 32226-4049 | 904-366-0250 |
| | LF44810 | FL2531 | JACKSONVILLE | DUVAL | FL | BUILDING AS | NEWRREPLA-FIRST BAPTIST CHURCH OF J'VILLE, FL | NEWRREPLA | 9/1/2001 | 8/31/2011 | 8/31/2011 | | 124 W ASHLEY STREET | FL | 32202-0000 | 904-366-1250 |
| | LF41428 | FL2542 | JACKSONVILLE | DUVAL | FL | 6551 CARMICHAEL AVENUE | NEWRREPLA-DEERWOOD INVESTORS, LLC | NEWRREPLA | 12/1/2002 | 11/30/2012 | 11/30/2012 | | 770 TOWNSHIP LANE ROAD | FL | 32207-0000 | 904-398-9092 |
| | LF43127 | FL2548 | JACKSONVILLE | DUVAL | FL | 8880 FREEDOM CROSSING | EXTENSION-MIDTOWN CENTRE, LLC | EXTENSION | 12/1/2002 | 11/30/2011 | 11/30/2011 | | 3947 BOULEVARD CENTER DRIVE | FL | 32207-0000 | 904-398-9092 |
| | LF42808 | FL2612 | JACKSONVILLE | DUVAL | FL | 550 WATER STREET | NEWRREPLA-JGL DRIVEAYMEADOWS CENTER, LLC | NEWRREPLA | 11/1/2003 | 10/31/2013 | 10/31/2013 | | 8375 DIX ELLIS TRAIL | FL | 32256-0000 | 904-464-0900 |
| | LF42815 | FL2629 | JACKSONVILLE | DUVAL | FL | 701 SAN MARCO BLVD. | NEWRREPLA-BP (JVILLE) | NEWRREPLA | 7/1/2002 | 6/30/2007 | 6/30/2012 | | 110 OFFICE PARK DRIVE | AL | 35223-3435 | 205-254-4878 |
| | LF42820 | FL2629 | JACKSONVILLE | DUVAL | FL | 14201 PECAN PARK ROAD | NEWRREPLA- PRUDENTIAL INS. COMPANY OF AMERIC | NEWRREPLA | 7/1/2007 | 7/15/2007 | 7/15/2007 | | CORPORATE REAL ESTATE DIV - LO | AL | 07102-0000 | 973-367-7159 |
| | LF42845 | FL3049 | JACKSONVILLE | DUVAL | FL | 489 FLORIDA BLVD | NEWRREPLA- PRUDENTIAL INS. COMPANY OF AMERIC | NEWRREPLA | 4/30/2007 | 4/29/2013 | 4/29/2013 | | CORPORATE REAL ESTATE DIV - LO | AL | 07102-0000 | 973-367-7159 |
| | LF42864 | FL2639 | JACKSONVILLE | DUVAL | FL | 10151 DEERWOOD PARK | RENEWAL | NEWRREPLA | 5/1/2004 | 4/30/2009 | 4/30/2009 | | 5524 WEST CYPRESS ST, SUITE B | FL | 33607-0000 | 813-281-3399 |
| | LF43830 | FL2638 | JACKSONVILLE | DUVAL | FL | 6650 SOUTHPOINT PKWY | NEWRREPLA-GRAHAMS & COMPANY LLC | NEWRREPLA | 12/15/2004 | 12/15/2004 | 12/15/2004 | | 2200 WOODCREST PLACE | FL | 35209-0000 | 904-281-0003 |
| | LF43080 | FL2580 | JACKSONVILLE | DUVAL | FL | 1685 DUNN AVENUE | NEWRREPLA-GRAHAMS & COMPANY LLC | NEWRREPLA | 11/11/2006 | 11/6/2016 | 11/6/2016 | | 2200 WOODCREST PLACE | FL | 35209-0000 | 904-281-0003 |
| | LF43836 | FL2628 | JACKSONVILLE | DUVAL | FL | 4070 BLVD CENTER DR | NEWRREPLA-MIDTOWN CENTRE, LLC | NEWRREPLA | 5/1/2005 | 4/30/2016 | 4/30/2016 | | 3947 BOULEVARD CENTER PARKW. | FL | 32207-0000 | 904-398-9092 |
| | LF45606 | FL2751 | JACKSONVILLE | DUVAL | FL | 541 WATER STREET | SUCCEEDIN-MIDTOWN CENTRE, LLC | SUCCEEDIN | 5/1/2011 | 5/2/2011 | 5/2/2011 | | 3947 BOULEVARD CENTER DRIVE | FL | 32207-0000 | 904-398-9092 |
| | LF45819 | FL3129 | JACKSONVILLE | DUVAL | FL | 5210 BELFORT RD | NEWRREPLA- JACKSONVILLE CONCOURSE III, LLC | NEWRREPLA | 10/1/2015 | 9/30/2015 | 9/30/2015 | | 6675 CORPORATE CENTER PARKWA | FL | 32216-8079 | 904-363-0002 |

38

July 2008 Lease Inventory
sorted by State
www.gsa.gov

| Region | Lease No | Bldg No | City | County | Building Address | St | Original Start | Original End | Current End | Termination Right Date | Related Action | Last Term Action | LessorOwner | Lessor Address | Lessor St | Lessor St Zip | Lessor Phone |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5 | LIL15988 | 12334 | CHICAGO | COOK | 401 S. LASALLE | IL | 7/22/1995 | 7/31/2017 | 7/31/2017 | 7/31/2017 | | 8/14/2007 OLD LEASE- AMERICAN NATIONAL BANK & TRUST CO AGREEMENT 12221D-08 DTD 10-17-19 | NEWREPLA- 401 W LASALLE STREET | | 60690-0000 706-789-4900 |
| 5 | LIL16006 | 12340 | CHICAGO | COOK | 8688 S. SACRAMENTO | IL | 6/15/1997 | 8/14/2017 | 8/14/2017 | 8/14/2007 | | 8/14/2007 NEWREPLA- EAST LAKE MANAGEMENT AND DEV CO 2864 SOUTH MICHIGAN AVENUE | | | 60637-0000 312-842-5500 |
| 5 | LIL16080 | 12177 | CHICAGO | COOK | 200 W. ADAMS | IL | 11/9/1998 | 11/28/2016 | 11/28/2016 | 11/28/2016 | | 11/9/2006 NEWREPLA- SUCCEED NW GROUP I LLC AS SUCCE 200 WEST MADISON STREET | | | 60606-0000 312-346-3600 |
| 5 | LIL16092 | 12174 | CHICAGO | COOK | 1279 NORTH MILWAUKEE | IL | 11/12/1997 | 11/11/2007 | 11/11/2007 | 11/11/2008 | | EXTENSION- WEST TOWN CENTER LLC, AN IL, LLC | SUITE 300 | | 60687-0000 847-215-6500 |
| 5 | LIL16103 | 12414 | CHICAGO | COOK | 1217 WEST LAWRENCE AVENL | IL | 3/24/1999 | 3/23/2019 | 3/23/2019 | 3/23/2019 | | NEWREPLA- HISPANIC HOUSING DEVELOPMENT COR 200 WEST WACKER DRIVE | | | 60606-0000 312-443-1380 |
| 5 | LIL16204 | 12447 | CHICAGO | COOK | 3252-3264 W FULLERTON | IL | 6/5/2002 | 6/4/2022 | 6/4/2022 | | | 6/5/2011 NEWREPLA- BURLING FREMONT LLC | 3050 SOUTH MICHIGAN AVENUE | | 60616-0000 312-842-5500 |
| 5 | LIL16208 | 11884 | CHICAGO | COOK | 55 E. MONROE ST | IL | 2/7/1998 | 2/28/2008 | 2/28/2008 | 9/28/2008 | | 2/28/2003 EXTENSION- 55 EAST MONROE INVESTORS IV LLC | 55 EAST MONROE STREET | | 60603-0000 312-424-5996 |
| 5 | LIL16259 | 12080 | CHICAGO | COOK | 111 E. 87TH ST | IL | 3/12/2000 | 3/12/2020 | 3/12/2020 | 3/12/2020 | | 3/12/2010 NEWREPLA- GREENWOOD ASSOCIATES, LP. | 4801 W GOLF ROAD | | 60077-0000 847-677-9100 |
| 5 | LIL16282 | 12367 | CHICAGO | COOK | 4631-4639 SOUTH ASHLAND | IL | 7/7/1999 | 7/6/2009 | 7/6/2009 | | | NEWREPLA- JAMAAL ASSOC. | 10954 SOUTH ADAMS DRIVE | | 60453-0000 708-489-5001 |
| 5 | LIL16283 | 12387 | CHICAGO | COOK | 233 NORTH MICHIGAN AVENL | IL | 11/12/1999 | 11/30/2009 | 11/30/2009 | 11/30/2009 | | 11/8/2009 NEWREPLA- PARKWAY 233 N. MICHIGAN, LLC | 233 N. MICHIGAN DRIVE | | 60601-0000 312-819-0472 |
| 5 | LIL16346 | 12395 | CHICAGO | COOK | 233 NORTH MICHIGAN AVENL | IL | 10/4/1999 | 10/3/2009 | 10/3/2009 | 10/3/2009 | | 10/3/2004 NEWREPLA- PARKWAY 55 EAST MONROE INVESTORS IV LLC | 55 EAST MONROE STREET | | 60603-0000 312-424-3996 |
| 5 | LIL16452 | 11694 | CHICAGO | COOK | 55 E. MONROE ST | IL | 4/5/2000 | 4/4/2010 | 4/4/2010 | | | NEWREPLA- 200 WEST ADAMS ASSC HF LLC | 200 WEST ADAMS STREET | | 60606-0000 312-346-3780 |
| 5 | LIL16460 | 12177 | CHICAGO | COOK | 200 W. ADAMS | IL | 1/1/2001 | 12/31/2005 | 2/29/2008 | | | 9/30/2007 EXTENSION- 200 WEST ADAMS ASSC HF LLC | 200 WEST ADAMS STREET | | 60606-0000 312-346-3780 |
| 5 | LIL16704 | 12409 | CHICAGO | COOK | 233 NORTH MICHIGAN AVENL | IL | 11/9/1999 | 11/30/2009 | 11/30/2009 | 2/28/2008 | | 2/1/2006 NEWREPLA- PARKWAY 233 N. MICHIGAN LLC | 233 N. MICHIGAN AVE. | | 60601-0000 312-819-0472 |
| 5 | LIL16739 | 12177 | CHICAGO | COOK | 200 W. ADAMS | IL | 5/1/2003 | 4/30/2013 | 4/30/2013 | | | 4/30/2003 SUPERSEDED 200 WEST ADAMS ASSC HF LLC | 200 WEST ADAMS STREET | | 60606-0000 312-346-3780 |
| 5 | LIL16766 | 12166 | CHICAGO | COOK | 20 NORTH MICHIGAN | IL | 7/25/2000 | 7/24/2008 | 7/24/2008 | | | 3/31/2003 SUPERSEDED TWELVE NORTH VENTURE | 20 N. MICHIGAN | | 60602-0000 312-436-7120 |
| 5 | LIL16804 | 12177 | CHICAGO | COOK | 200 W. ADAMS | IL | 12/2/2001 | 12/1/2011 | 12/1/2011 | 12/1/2006 | | NEW LEASE- 200 WEST ADAMS ASSC HF LLC | 200 WEST ADAMS STREET | | 60606-0000 312-346-3780 |
| 5 | LIL16831 | 12409 | CHICAGO | COOK | 200 W. ADAMS | IL | 11/15/2002 | 11/14/2017 | 11/14/2017 | 11/14/2012 | | NEWREPLA- 200 WEST ADAMS ASSC HF LLC | 200 WEST ADAMS | | 60606-0000 312-346-3780 |
| 5 | LIL16832 | 12457 | CHICAGO | COOK | 111 NORTH CANAL | IL | 4/11/2002 | 4/10/2012 | 4/10/2012 | 11/30/2012 | | 11/30/2012 NEWREPLA- LASALLE BANK NAT'L ASSOC AS SUCCE UT#46223 | | | 60606-0000 312-904-2000 |
| 5 | LIL16845 | 12457 | CHICAGO | COOK | 525 WEST VAN BUREN | IL | 4/26/2002 | 4/25/2012 | 4/25/2012 | | | NEWREPLA- ANN CONGRESS CENTER LLC | 525 WEST VAN BUREN | | 60607-0000 312-559-5104 |
| 5 | LIL16818 | 12457 | CHICAGO | COOK | 525 WEST VAN BUREN (EDELI | IL | 9/19/2001 | 9/18/2011 | 9/18/2011 | | | NEWREPLA- WEST LOOP ASSOCIATES, LLC | 525 WEST VAN BUREN | NY | 60607-0000 312-559-5104 |
| 5 | LIL16887 | 12411 | CHICAGO | COOK | 600 WEST JACKSON | IL | 9/26/2001 | 9/25/2006 | 9/25/2006 | | | 9/25/2007 EXTENSION- 600 WEST JACKSON LLC | 700 7TH AVENUE | | 60661-0000 0 |
| 5 | LIL16897 | 12457 | CHICAGO | COOK | 525 WEST VAN BUREN | IL | 3/1/2003 | 2/28/2013 | 2/28/2013 | | | NEWREPLA- ANN CONGRESS CENTER LLC | 525 WEST VAN BUREN | | 60607-0000 714-667-8252 |
| 5 | LIL16251 | 12516 | CHICAGO | COOK | 303 E. WACKER | IL | 7/5/2002 | 6/4/2012 | 6/4/2012 | | | NEWREPLA- RIVERFRONT MB | 30 SOUTH RIVERSIDE PLAZA | | 60606-0000 312-454-9808 |
| 5 | LIL16955 | 12235 | CHICAGO | COOK | 333 S. RIVERSIDE | IL | 11/16/2002 | 11/30/2012 | 11/30/2012 | | | 11/30/2012 NEWREPLA- THE ROCKERY NAT | 55 WEST MONROE STREET | | 60603-0000 312-443-1890 |
| 5 | LIL16977 | 12177 | CHICAGO | COOK | 200 W. ADAMS | IL | 4/12/2002 | 5/31/2004 | 5/31/2004 | | | 5/31/2009 EXTENSION- 200 WEST ADAMS ASSC HF LLC | 200 WEST ADAMS STREET | | 60606-0000 312-346-3780 |
| 5 | LIL17016 | 12396 | CHICAGO | COOK | 411 WEST ROOSEVELT ROAl | IL | 11/15/2002 | 1/14/2013 | 1/14/2013 | | | NEWREPLA- DEVELOPMENT PARTNERS, LL | 111 WEST ADAMS STREET, SUITE 800 | | 60603-0000 312-443-4991 |
| 5 | LIL17018 | 12177 | CHICAGO | COOK | 111 NORTH CANAL | IL | 12/1/2003 | 11/30/2013 | 11/30/2013 | | | 11/30/2013 SUCCESSION RIVER CENTER LLC | 111 NORTH CANAL STREET | | 60606-0000 312-890-6900 |
| 5 | LIL17077 | 12217 | CHICAGO | COOK | 111 NORTH CANAL | IL | 5/1/2004 | 4/30/2014 | 4/30/2014 | | | NEW LEASE- RIVER CENTER LLC | 111 NORTH CANAL STREET | | 60606-0000 312-890-6900 |
| 5 | LIL17128 | 12217 | CHICAGO | COOK | 111 NORTH CANAL | IL | 5/1/2005 | 4/30/2015 | 4/30/2015 | | | 4/30/2010 SUCCESSION RIVER CENTER LLC | 111 NORTH CANAL STREET | | 60606-0000 312-890-6900 |
| 5 | LIL17142 | 12217 | CHICAGO | COOK | 4849 N. MILWAUKEE AVE. | IL | 5/1/2005 | 4/30/2015 | 4/30/2015 | | | 4/30/2010 NEWREPLA- AMER BK & TRUST CO AS TRUS COLBDA GA PROPERTIES, INC. | 200 WEST ADAMS STREET | | 60630-0000 773-283-5000 |
| 5 | LIL17197 | 12177 | CHICAGO | COOK | 209 S. LASALLE | IL | 5/1/2005 | 4/30/2015 | 4/30/2015 | | | NEWREPLA- THE ROCKERY LP | 700 7TH AVENUE | WA | 60606-0000 312-443-8104 |
| 5 | LIL17197 | 12177 | CHICAGO | COOK | 200 W. ADAMS | IL | 9/1/2004 | 8/31/2014 | 8/31/2014 | | | 8/31/2009 NEWREPLA- 200 WEST ADAMS ASSC HF LLC | 200 WEST ADAMS STREET | WA | 60606-0000 312-346-3780 |
| 5 | LIL17383 | 12531 | CHICAGO | COOK | 320 S. JEFFERSON STREET | IL | 7/1/2005 | 6/30/2015 | 6/30/2015 | | | 5/31/2007 NEW LEASE- SUE LING JAN | 212 NORTH SANGAMON STREET | WA | 60607-0000 312-243-2882 |
| 5 | LIL17401 | 12531 | CHICAGO | COOK | 525 WEST MONROE STREET | IL | 4/16/2005 | 4/15/2015 | 4/15/2015 | | | 4/15/2010 NEWREPLA- T5T 525 WEST MONROE LLC | 212 NORTH SANGAMON STREET | NY | 10022-0000 212-319-7100 |
| 5 | LIL17434 | 12552 | CHICAGO | COOK | 4616 SOUTH PULASKI ROAD | IL | 8/1/2005 | 7/31/2015 | 7/31/2015 | | | NEW LEASE- MAURICE AND SANDRA WEISS | 500 WEST MADISON AVE. | | 60639-0000 847-215-6900 |
| 5 | LIL17453 | 12564 | CHICAGO | COOK | 55 W. MONROE ST | IL | 8/1/2005 | 7/31/2015 | 7/31/2015 | | | NEWREPLA- 55 WEST MONROE, LLC | 321 DUNDEE ROAD | | 60603-0000 312-443-8510 |
| 5 | LIL17434 | 11894 | CHICAGO | COOK | 55 E. MONROE ST | IL | 7/1/2006 | 6/30/2016 | 6/30/2016 | | | 7/1/2011 NEWREPLA- 55 EAST MONROE INVESTORS IV, LLC | 55 EAST MONROE STREET | | 60603-0713 312-424-3996 |
| 5 | LIL17530 | 12235 | CHICAGO | COOK | 500 WEST MADISON | IL | 6/24/2005 | 6/23/2015 | 6/23/2015 | | | 6/23/2010 NEWREPLA- COSMOPOLITAN BANK & TRUST UNDR | GRAND PROPERTIES SACRAMENTO, | | 60612-0000 773-427-1700 |
| 5 | LIL17531 | 12216 | CHICAGO | COOK | 3105 CANAL STREET | IL | 10/1/2004 | 9/30/2009 | 9/30/2009 | | | NEW LEASE- NATIONAL RAILROAD PASSENGER CORR | 30TH STREET STATION | PA | 19104-0000 215-349-1612 |
| 5 | LIL17509 | 12667 | CHICAGO | COOK | 814 S EXPRESS CENTER DRIV | IL | 8/1/2007 | 7/31/2022 | 7/31/2022 | | | 10/1/2004 NEWREPLA- CAROL ISAAC | UNITED STATES POSTAL SERVICE | IL | 22203-1851 703-526-2772 |
| 5 | LIL17750 | 12217 | CHICAGO | COOK | 55 W. MONROE | IL | 4/2/2006 | 4/2/2011 | 4/2/2011 | | | 4/2/2009 NEWREPLA- RIVER CENTER LLC | 55 WEST MONROE | | 60603-0000 312-890-6900 |
| 5 | LIL17745 | 12217 | CHICAGO | COOK | 111 NORTH CANAL | IL | 8/1/2007 | 7/31/2022 | 7/31/2022 | | | 7/31/2017 NEWREPLA- RIVER CENTER LLC | 111 NORTH CANAL STREET | | 60606-0000 312-890-6900 |
| 5 | LIL17712 | 12240 | CHICAGO | COOK | 5270 S. CICERO AVE | IL | 8/1/2007 | 7/31/2022 | 7/31/2022 | | | 7/1/2017 NEWREPLA- SUE LING JAN | 212 N SANGAMON #A | | 60632-0000 312-738-2800 |
| 5 | LIL17759 | 12240 | CHICAGO | COOK | 319 SOUTH NAPERVILLE | IL | 12/1/2003 | 11/30/2013 | 11/30/2013 | | | NEWREPLA- UST-GEPT JOINT VENTURE, LP | 200 NORTH LASALLE SUITE 1501 | | 60667-1708 847-653-2259 #3 |
| 5 | LIL17733 | 12233 | CHICAGO | COOK | 500 WEST MADISON | IL | 6/26/2006 | 6/25/2016 | 6/25/2016 | | | NEWREPLA- UST-GEPT JOINT VENTURE, LP | 500 W. MADISON STREET | | 60661-0000 312-258-0066 |
| 5 | LIL17753 | 12218 | CHICAGO | COOK | ROTUNDA SPACE | IL | 3/1/2008 | 2/28/2018 | 2/28/2018 | | | SUCCESSION OTTE OF CHICAGO | P.O. BOX 66142 | | 60606-0000 773-686-2200 |
| 5 | LIL17836 | 12233 | CHICAGO | COOK | 500 WEST MADISON | IL | 12/1/2006 | 11/30/2016 | 11/30/2016 | | | NEWREPLA- 200 WEST ADAMS ASSOCIATES NF LLC | 500 WEST MADISON | | 60661-0000 312-258-0066 |
| 5 | LIL17844 | 12177 | CHICAGO | COOK | 200 W. ADAMS | IL | 3/1/2008 | 2/28/2013 | 2/28/2013 | | | NEWREPLA- 200 WEST ADAMS ASSOCIATES NF LLC | 200 WEST ADAMS STREET | | 60606-5207 312-407-8000 |

July 2008 Lease Inventory
sorted by State
www.gsa.gov

| Region | Lease No | Bldg No | City | County | Building Address | St | Lessor/Owner | Last Term Action | Original Start Date | Original End Date | Current End Date | Termination Right Date | Lessor Address | Lessor Zip | Lessor Phone |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5 | LL17137 | IL2683 | SPRINGFIELD | SANGAMON | 1200 S LINDBERGH DRIVE | IL | SPRINGFIELD AIRPORT AUTHORITY | 11/30/2012 SUCCEEDING | 11/20/2002 | 11/19/2014 | 11/17/2014 | | 2801 STANTON DRIVE | 62703 | 217-788-1060 |
| 5 | LL17267 | IL2502 | SPRINGFIELD | SANGAMON | 3330 GINGER CREEK DRIVE | IL | NEWREPLA-GINGER CREEK FARMS, INC. | 11/8/2006 NEWREPLA | 11/7/2014 | 4/8/2017 | 4/8/2017 | 3191 WEST WHITE OAKS DRIVE, STE | 62704-7407 | 217-698-0599 |
| 5 | LL17483 | IL2491 | SPRINGFIELD | SANGAMON | 3191 WEST WHITE OAKS DR | IL | NEWREPLA-BRIDGE REAL ESTATE, LLC | 4/9/2011 NEWREPLA | 4/8/2017 | 4/8/2017 | | 3191 WEST WHITE OAKS DRIVE, STE | 62704-7407 | 217-698-0599 |
| 5 | LL17317 | IL2481 | SPRINGFIELD | SANGAMON | 3191 WEST WHITE OAKS DR | IL | NATIONAL PARK SERVICE | 7/1/2006 | 10/12/2006 | 9/30/2016 | 9/30/2016 | 1 S.E. OLD STATE CAPITOL PLAZA | 62701-1370 | 217-492-4135 |
| 5 | LL17832 | IL2342 | SPRINGFIELD | SANGAMON | 1 S.E. OLD STATE CAPITOL | IL | DELANO LAW OFFICES PC | 6/30/2016 SUCCEEDING | 10/12/2006 | 9/30/2016 | 9/30/2016 | 1 S.E. OLD STATE CAPITOL PLAZA | 62701 | 217-522-4100 |
| 5 | LL18036 | IL2548 | SPRINGFIELD | SANGAMON | 3000 WABASH | IL | NEW LEASE SE/DIST FAMILY PARTNERSHIP | 10/1/2009 NEW LEASE | 10/1/2007 | 9/30/2017 | 9/30/2010 | 650 N WEBSTER ST IV | 62568-1524 | 217-624-9676 |
| 5 | LL17443 | IL2509 | ST. CHARLES | KANE | 3705 STERN AVENUE | IL | ILA DEVELOPMENT L.L.C | 8/15/2007 EXTENSION | 8/16/2004 | 2/15/2008 | 2/15/2008 | P.O. BOX 1234 | 61109 | 815-226-4422 |
| 5 | LL16049 | IL2348 | STERLING | WHITESIDE | 3512 EAST LINCOLNWAY | IL | LARRY G AND MARY R MCCORMICK | 2/6/2017 NEW LEASE | 2/7/1997 | 2/6/2017 | 2/6/2017 | P.O. BOX 140 | 61081 | 815-625-4422 |
| 5 | LL17451 | IL2515 | URBANA | CHAMPAIGN | 300 WEST MAIN STREET | IL | NEW LEASE 300 WEST MAIN STREET LLC | 10/14/2009 NEW LEASE | 10/15/2004 | 10/14/2014 | 10/14/2014 | 11515 N MERIDIAN ROAD | 61824 | 217-352-7712 |
| 5 | LL17258 | IL2356 | VERNON HILLS | LAKE | 850 N MILWAUKEE AVE | IL | NEW LEASE MITCHELL WEISS | 5/31/2009 NEW LEASE | 6/1/2003 | 5/31/2009 | 5/31/2008 | 251 MILWAUKEE AVENUE | 60089 | 1-847-229-8900 |
| 5 | LL17780 | IL2305 | VERNON HILLS | LAKE | 945 LAKEVIEW PARKWAY | IL | NEWREPLA-SUNJAYSON PARTNERSHIP LLC | 7/1/2007 NEW LEASE | 7/1/2007 | 6/30/2012 | 6/30/2012 | 945 LAKEVIEW PARKWAY | 60061 | 847-970-4261 |
| 5 | LL16749 | IL2426 | WAUKEGAN | LAKE | 1920 N. LEWIS STREET | IL | NEWREPLA-IMPERIAL REALTY COMPANY | 7/22/2012 NEWREPLA | 7/23/2002 | 7/22/2012 | 7/22/2012 | 4747 W. PETERSON AVENUE | 60646 | 630-736-4100 ext. |
| 5 | LL17926 | IL2543 | WEST CHICAGO | DU PAGE | 2273 INTERNATIONAL DRIVE | IL | NEWREPLA-DUPAGE AIRPORT AUTHORITY | 6/30/2008 NEWREPLA | 1/10/2007 | 12/31/2011 | 12/31/2011 | 2700 INTERNATIONAL DRIVE | 60185 | 630-268-6173 |
| 5 | LL16471 | IL2389 | WEST FRANKF | FRANKLIN | 1005 FACTORY OUTLET DRIL | IL | NEWREPLA-DUPAGE AIRPORT AUTHORITY | 3/22/2020 NEWREPLA | 3/23/2000 | 7/21/2010 | 7/31/2010 | 2700 INTERNATIONAL DRIVE | 60563 | 630-268-6100 |
| 5 | LL16577 | IL2223 | WILLOWBROOK | DU PAGE | 600 JOLIET RD | IL | NEW LEASE WILLOWBROOK CENTRE JOINT VENTUR | 7/31/2008 NEW LEASE | 8/1/2000 | 7/31/2010 | 7/31/2010 | 1211 WEST 22ND STREET | 60523 | 630-368-3360 |
| 5 | LL16612 | IL2404 | WOODRIDGE | DU PAGE | 7440 PROVIDENCE DRIVE | IL | NEWREPLA-WOODRIDGE SSA LLC | 4/8/2013 NEWREPLA | 4/7/2003 | 4/8/2013 | 4/8/2013 | 2481 794-3920175 | 60139 | 708-362-0175 |
| 5 | LL16642 | IL2423 | WOODSTOCK | MCHENRY | 2450 LAKE SHORE DRIVE | IL | EXTENSION ZELLER-ROMO FAMILY TRUST | 11/10/2015 EXTENSION | 11/11/2005 | 11/10/2015 | 11/10/2015 | 1191 LOST FEATHER WAY | | |
| 5 | LN16504 | IN1763 | ANDERSON | MADISON | 117 S CHESTERFIELD RD | IN | NEWREPLA-TURKEYLAND, LP | 10/24/2011 NEWREPLA | 10/24/2001 | 10/23/2021 | 10/23/2021 | 240 H STREET | 96545-7178 | 916-434-9999 |
| 5 | LN16061 | IN1716 | AUBURN | DE KALB | 1305 GRANDSTAFF DRIVE | IN | OLD CABIN DOVE LLC | 4/21/2017 SUCCEEDING | 4/22/2007 | 4/21/2017 | 4/21/2017 | P.O. BOX 355 | 46106-0055 | 219-925-4008 |
| 5 | LN16888 | IN1702 | BLOOMINGTON | MONROE | 400 WEST 7TH STREET | IN | NEW LEASE GWC PARTNERSHIP | 2/1/2009 NEW LEASE | 2/1/2009 | 1/31/2019 | 1/31/2019 | 400 WEST 7TH STREET | 47404-0000 | 812-335-0558 |
| 5 | LN17377 | IN1714 | BLOOMINGTON | MONROE | 2071 LIBERTY DRIVE | IN | NEW LEASE GWC PARTNERSHIP | 1/31/2016 NEW LEASE | 2/1/2006 | 1/31/2016 | 1/31/2016 | 501 WOODSCREST DRIVE | 47401-0000 | 812-332-9414 |
| 5 | LN16739 | IN1685 | BLOOMINGTON | MONROE | 519 WEST PATTERSON DRIVE | IN | NEWREPLA-BLOOMINGTON PR LLC | 4/13/2016 NEWREPLA | 4/12/2006 | 4/13/2016 | 4/13/2016 | 400 KINSER PIKE | 47403-0000 | 812-330-0077 |
| 5 | LN17405 | IN1695 | BLOOMINGTON | MONROE | 400 WEST 7TH STREET | IN | NEW LEASE GFC, INC. | 2/10/2013 NEW LEASE | 2/10/2003 | 2/10/2013 | 2/10/2013 | 330 WEST 7TH STREET | 47404-0000 | 812-332-3000 |
| 5 | LN17880 | IN1718 | BLOOMINGTON | MONROE | 400 WEST 7TH STREET | IN | NEWREPLA-JOHNSON CREAMERY LLC | 2/28/2013 NEWREPLA | 3/1/2008 | 2/28/2018 | 2/28/2018 | 400 WEST 7TH STREET | 47404-3600 | 812-331-1961 |
| 5 | LN16842 | IN1694 | CARMEL | HAMILTON | 12800 NORTH MERIDIAN STR | IN | NEW LEASE DUKE REALTY LIMITED PARTNERSHIP | 6/12/2005 NEW LEASE | 6/12/2005 | 6/11/2010 | 6/11/2010 | 600 E. 96TH STREET | 46240-3600 | 317-808-6000 |
| 5 | LN17270 | IN1678 | CARMEL | HAMILTON | 11405 N. PENNSYLVANIA | IN | SUCCEEDING MERIDIAN STREET CENTRE LLC | 2/28/2010 SUCCEEDING | 3/1/2005 | 2/28/2010 | 2/28/2010 | 8555 N MERIDIAN STREET | 46032-0000 | 317-580-5900 |
| 5 | LN17344 | IN1784 | CARMEL | HAMILTON | 701 CITY CENTER DR. | IN | NEW LEASE MIDWEST IND. TRANSMISSION SYS. | 5/1/2004 NEW LEASE | 5/1/2004 | 4/30/2008 | 4/30/2008 | 701 CITY CENTER DR. | 46032-0000 | 317-580-5900 |
| 5 | LN17313 | IN1717 | COLUMBUS | BARTHOLOMEW | 2525 CALIFORNIA STREET | IN | EXTENSION TIPTON PARK OFFICES | 5/1/1997 | 5/1/1997 | 4/30/2002 | | 1930 LAFAYETTE STREET | 47201-0000 | 812-372-1143 |
| 5 | LN16159 | IN1760 | COLUMBUS | BARTHOLOMEW | 2553 ARNOLD STREET | IN | NEW LEASE MITCH GILLENWATERS, LLC | 12/20/2005 NEW LEASE | 12/20/2005 | 12/20/2010 | 12/20/2010 | 2801 CALIFORNIA STREET | 47201-0000 | 812-378-6310 |
| 5 | LN16027 | IN1825 | COLUMBUS | BARTHOLOMEW | 3490 COMMERCE DRIVE | IN | NEW LEASE SADLER FAMILY TRUST | 4/14/2011 NEW LEASE | 4/15/2006 | 4/14/2013 | 4/14/2013 | 3596 WALNUT GROVE COURT | 47203-0000 | 812-376-0200 |
| 5 | | | CRAWFORDSVILLE | MONTGOMERY | 1810 LAFAYETTE RD | IN | EXTENSION H & J FINCH REAL ESTATE | | 11/20/2008 | 11/19/2008 | | 506 RIVER DRIVE | 47352-0000 | 317-864-2242 |
| 5 | LN16435 | IN1486 | ELKHART | ELKHART | 231 INTERCHANGE BLVD | IN | NEW LEASE STRAW MAN PROPERTIES | 8/3/2011 SUCCEEDING | 8/3/2001 | 8/2/2011 | 8/2/2011 | P.O. BOX 686 | 46516-0000 | 574-293-2454 |
| 5 | LN17446 | IN1806 | ELKHART | ELKHART | 600 SOUTH MAIN STREET | IN | NEWREPLA-COMMERCE PLAZA L.L.C | 2/20/2010 NEWREPLA | 2/21/2005 | 2/20/2010 | 2/20/2010 | 600 SOUTH MAIN STREET | 46516-0000 | 812-422-6656 |
| 5 | LN16162 | IN1714 | EVANSVILLE | VANDERBURG | 280 PLAZA EAST BLVD | IN | EXTENSION ROGERS FAMILY GROUP, LLC | 4/30/2007 EXTENSION | 4/20/1993 | 4/30/2007 | 4/30/2007 | 1745 SOUTH KENTUCKY AVENUE | 47713-0000 | 812-425-8481 |
| 5 | LN16116 | IN1739 | EVANSVILLE | VANDERBURG | 101 NW MARTIN LUTHER KIN | IN | NEW LEASE EVANSVILLE-VANDERBURGH AIRPORT | 11/30/2009 NEW LEASE | 4/1/2003 | 3/31/2008 | 11/30/2011 | 7801 BUSSING DR. | 47728-0000 | 812-426-0481 |
| 5 | LN17170 | IN1788 | EVANSVILLE | VANDERBURG | 7801 BUSSING DR. | IN | NEW LEASE CAROL ISAAC - FACILITIES - HQ | 10/1/2004 NEW LEASE | 10/1/2004 | 9/30/2009 | 9/30/2009 | 420 WILSON BLVD., STE 300 | 22203-1861 | 703/528-2772 |
| 5 | LN15967 | IN1721 | EVANSVILLE | VANDERBURG | 101 NW MARTIN LUTHER KIN | IN | SUCCEEDING DIRECTORS ROW LLC | 12/1/2003 SUCCEEDING | 12/1/1998 | 11/30/2003 | 11/30/2003 | 4889 ALLEN ROAD | 46268-2100 | 260-435-2200 |
| 5 | LN16273 | IN1667 | FORT WAYNE | ALLEN | 919 S. HARRISON ST | IN | NEW LEASE LEVEL, INC. | 12/1/2003 NEW LEASE | 8/1/1998 | 7/31/2003 | 11/30/2003 | 919 S. HARRISON STREET, STE. 300 | 46802-0000 | 219-424-3311 |
| 5 | LN16363 | IN1756 | FORT WAYNE | ALLEN | 200 EAST MAIN STREET | IN | RENEWAL FTW, LLC | 6/14/2014 RENEWAL | 6/14/2004 | 6/14/2014 | 6/14/2014 | 200 E. MAIN ST | 46802-0000 | 219-424-2240 |
| 5 | LN16969 | IN1655 | FORT WAYNE | ALLEN | 621 S CALHOUN STREET | IN | NEW LEASE JOEL ACOSTA AND SANDRA ACOSTA | 7/9/2017 NEWREPLA | 7/9/2017 | 7/9/2017 | | 3413 LOCKPORTORS ROAD | 46530-0000 | 209-674-1574 |
| 5 | LN17032 | IN1776 | FORT WAYNE | ALLEN | 2122 LINCOLNWAY COURT | IN | NEWREPLA-FT. WAYNE SSA LLC | 7/9/2017 NEWREPLA | 7/9/2017 | 7/9/2017 | | 684 E. GRANDVIEW LANE | 46530-0000 | 209-674-1574 |
| 5 | LN16016 | IN1788 | FORT WAYNE | ALLEN | 3867 W. FERGUSON RD | IN | SUCCEEDING STEVEN L. AND SANDRA K. ... | 1/31/2013 SUCCEEDING | 2/1/2008 | 1/31/2013 | 1/31/2013 | 10600 W FERGUSON RD STE 209 | 46809-3142 | 260-747-4145 |
| 5 | LN17983 | IN1709 | FRANKLIN | JOHNSON | 171 COMMERCE DR. | IN | NEWREPLA-VANJAMIN INCORPORATED | 9/13/2012 NEW LEASE | 9/13/2012 | 9/13/2012 | | 1230 WEST SOUTHPORT ROAD | 46217-0000 | 317-888-3003 |
| 5 | LN16598 | IN1709 | GARY | LAKE | 808 S. LAKE ST | IN | EXTENSION FULL HOUSE LLC | 9/12/2012 EXTENSION | 9/13/2002 | 9/12/2012 | 9/12/2012 | 655 TAFT STREET | 46404-1255 | 219-977-9566 |
| 5 | LN15753 | IN1766 | GARY | LAKE | 504 BROADWAY | IN | NEW LEASE VANJAMIN INCORPORATED | 9/14/2014 NEW LEASE | 9/15/2004 | 9/14/2014 | 9/14/2014 | 604 WABASH AVE | 46402-0000 | 219-949-9722 |
| 5 | LN18000 | IN1764 | GARY | LAKE | 1775 BROADWAY | IN | NEW LEASE VANJAMIN INCORPORATED | 12/24/2012 | 1/25/2002 | 12/24/2012 | 12/24/2012 | 585 SOUTH PARK GSA LLC | 46403-0000 | 219-949-9722 |
| 5 | LN16083 | IN1773 | GREENWOOD | JOHNSON | 1111 SOUTH PARK DRIVE | IN | SUCCEEDING JACK BURBRIDGE | 7/31/2014 SUCCEEDING | 8/1/2007 | 7/31/2017 | 7/31/2017 | 996 N GRIFFITH BLVD | 46319-0000 | 219-923-2611 |
| 5 | LN16753 | IN1678 | GRIFFITH | LAKE | 996 N. GRIFFITH BLVD | IN | EXTENSION WEST OHIO L.L.C | 1/11/2009 EXTENSION | 1/11/1999 | 1/10/2010 | | 210 WEST RITTENHOUSE SQUARE | 46032-0000 | 215-893-6200 |
| 5 | LN17951 | IN1770 | GRIFFITH | LAKE | 996 N. GRIFFITH BLVD | IN | | | | | | | 210 WEST RITTENHOUSE SQUARE | 19103 | |
| 5 | LN14905 | IN1659 | INDIANAPOLIS | MARION | 101 WEST OHIO | IN | | | | | | | | PA | |

July 2008 Lease Inventory
sorted by State
www.gsa.gov

| Region | Lease No | Bldg No | City | County | St | Building Address | Original Start Date | Original End Date | Current End Date | Right Date | Termination Date | Last Term Related Action | Lessor/Owner | Lessor Address | Lessor St | Lessor Zip | Lessor Phone |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5 | LIN15557 | IN5579 | INDIANAPOLIS | MARION | IN | 151 N. DELAWARE STREET | 4/29/1992 | 8/28/2002 | 8/28/2008 | | 9/1/2008 | SUCCEED/NN | HERTZ INDIANA DELAWARE STREET | 151 N. DELAWARE STREET SUITE 250 | IN | 47259-0000 | 765-728-2248 |
| 5 | LIN15329 | IN1669 | INDIANAPOLIS | MARION | IN | 950 N. MERIDIAN ST. | 1/4/1992 | 1/3/2002 | 1/3/2011 | | | EXTENSION | TENTH AND MERIDIAN ASSOCIATES | 950 N MERIDIAN STREET | IN | 46204-0000 | 317-636-3000 |
| 5 | LIN15191 | IN1146 | INDIANAPOLIS | MARION | IN | 101 W. LYNHURST DR. | 4/20/1994 | 4/19/2004 | 9/30/2009 | | 3/1/2004 | EXTENSION | NEFF REALTY LLC | 109 WEST HUNTINGTON STREET | IN | 47259-0000 | 765-728-2248 |
| 5 | LIN16053 | IN1653 | INDIANAPOLIS | MARION | IN | 3849 ROCKVILLE ROAD | 11/8/1996 | 11/9/2006 | 11/9/2006 | | | EXTENSION | MAIN STREET | 5683 BASH STREET | IN | 46250-0000 | 317-849-4242 |
| 5 | LIN16132 | IN1719 | INDIANAPOLIS | MARION | IN | SHAFER RD | 6/4/1996 | 6/3/2006 | 6/3/2008 | | 12/31/2007 | EXTENSION | BURNS DEVELOPMENT, INC | 9152 KENT AVENUE | IN | 46216-0000 | 317-677-5421 |
| 5 | LIN16135 | IN1740 | INDIANAPOLIS | MARION | IN | 4259 LAFAYETTE ROAD | 1/1/1997 | 12/31/2006 | 12/31/2006 | | 12/31/2007 | EXTENSION | CALEAST INDUSTRIAL INVESTORS, LLC | 65 EAST STATE STREET SUITE 1750 | OH | 43215-0000 | 614-460-4444 |
| 5 | LIN16201 | IN1720 | INDIANAPOLIS | MARION | IN | REACH RD | 9/24/1999 | 9/23/2019 | 9/23/2019 | | 12/31/2007 | NEWREPLA | CALEAST INDUSTRIAL INVESTORS, LLC | 65 EAST STATE STREET SUITE 1750 | OH | 43215-0000 | 614-460-4444 |
| 5 | LIN17026 | IN1797 | INDIANAPOLIS | MARION | IN | 5507 LAKESIDE BOULEVARD | 4/7/1999 | 3/31/2003 | 3/31/2009 | | 3/31/2004 | SUCCEED/NN | CALEAST INDUSTRIAL INVESTORS LLC | 65 EAST STATE STREET SUITE 1750 | OH | 43215-0000 | 614-460-4444 |
| 5 | LIN16531 | IN1659 | INDIANAPOLIS | MARION | IN | 101 WEST OHIO | 3/30/1998 | 3/31/2008 | 3/31/2008 | | 3/31/2003 | NEW LEASE | WEST OHIO II, L.L.C. | 1800 MOLER ROAD | OH | 19103-0000 | 215-633-6200 |
| 5 | LIN16317 | IN1659 | INDIANAPOLIS | MARION | IN | 10 W. MARKET STREET | 5/1/1998 | 4/30/2008 | 4/30/2008 | | | NEWREPLA | TRUSS REALTY | 210 WEST RITTENHOUSE SQUARE | PA | 19103-0000 | 215-633-6200 |
| 5 | LIN15657 | IN1616 | INDIANAPOLIS | MARION | IN | 10 WEST MARKET STREET | 12/16/1999 | 12/15/2009 | 12/15/2009 | | 12/15/2004 | NEW LEASE | WEST OHIO I, L.L.C. | 210 RITTENHOUSE SQUARE | PA | 19103-0000 | 215-633-6200 |
| 5 | LIN15332 | IN1616 | INDIANAPOLIS | MARION | IN | 8801 PIERSON | 1/19/2001 | 1/18/2011 | 1/18/2011 | | | SUCCEED/NN | WEST OHIO II, L.L.C. | 1200 MARKET TOWER | PA | 46204-0000 | 215-633-6200 |
| 5 | LIN16467 | IN1724 | INDIANAPOLIS | MARION | IN | 8900 PURDUE ROAD | 8/16/1995 | 8/15/2005 | 8/15/2009 | | 8/16/2004 | NEWREPLA | INDIANAPOLIS AIRPORT AUTHORITY | 2500 S HIGH SCHOOL ROAD | IN | 46241-4841 | 317-487-5135 |
| 5 | LIN16626 | IN1753 | INDIANAPOLIS | MARION | IN | 101 WEST OHIO | 3/11/1999 | 2/28/2009 | 2/28/2009 | | 3/1/2004 | SUCCEED/NN | WEST OHIO I, L.L.C. | 6200 THE CORNERS PARKWAY, STE | GA | 30092-0000 | 212-882-6533 |
| 5 | LIN16851 | IN1659 | INDIANAPOLIS | MARION | IN | 10 WEST MARKET STREET | 5/30/2000 | 5/29/2005 | 5/31/2011 | | 5/30/2005 | EXTENSION | MT ACQUISITIONS, LLC | 201 RITTENHOUSE SQUARE | PA | 19103-0000 | 215-633-6200 |
| 5 | LIN16763 | IN1748 | INDIANAPOLIS | MARION | IN | 10 WEST MARKET STREET | 1/6/2001 | 1/7/2011 | 1/7/2011 | | | NEW LEASE | MANN PROPERTIES LLP | 1200 MARKET TOWER | IN | 46204-0000 | 317-655-7700 |
| 5 | LIN16907 | IN1797 | INDIANAPOLIS | MARION | IN | 6866 EAST 75TH STREET | 11/1/2001 | 10/31/2011 | 10/31/2011 | | 11/1/2006 | NEWREPLA | FOR 100 HERITAGE PARK II LLC | 8833 BASH STREET | IN | 46256-0000 | 317-849-4252 |
| 5 | LIN17043 | IN1579 | INDIANAPOLIS | MARION | IN | 151 N. DELAWARE STREET | 4/4/2006 | 4/3/2016 | 4/3/2016 | | | NEWREPLA | HERTZ INDIANAPOLIS ONE LLC | 12429 N EXPLORER DRIVE | IN | 48237-0000 | 204-489-2440 |
| 5 | LIN17076 | IN1797 | INDIANAPOLIS | MARION | IN | 5420 SOUTH BLVD. | 8/12/2002 | 7/31/2012 | 7/31/2012 | | 8/1/2007 | NEWREPLA | HERTZ INDIANAPOLIS ONE LLC | MARKET SQUARE CENTER, SUITE 11 | IN | 46204-0000 | 317-236-2000 |
| 5 | LIN17169 | IN1786 | INDIANAPOLIS | MARION | IN | 2850 S. HIGH SCHOOL RD. | 5/1/2003 | 4/30/2013 | 4/30/2013 | | 7/1/2008 | NEW LEASE | 455 PARK FLETCHER ASSOCIATES, LLC | 34975 WEST TWELVE MILE ROAD | MI | 48331-0000 | 248-848-4383 |
| 5 | LIN17373 | IN1797 | INDIANAPOLIS | MARION | IN | 5728 PROFESSIONAL CIRCLE | 3/8/2004 | 3/7/2014 | 3/7/2014 | | 10/2/2007 | NEWREPLA | INDIANAPOLIS AIRPORT AUTHORITY | 2500 S. HIGH SCHOOL ROAD, SUITE 1 | IN | 46241-0000 | 317-487-5029 |
| 5 | LIN17423 | IN1579 | INDIANAPOLIS | MARION | IN | 151 N. DELAWARE STREET | 12/16/2004 | 12/31/2016 | 12/31/2016 | | 12/16/2011 | NEWREPLA+ | HERTZ INDIANA ONE, LLC | 100 WILSHIRE BOULEVARD | CA | 90401-0000 | 317-281-3870 |
| 5 | LIN17465 | IN1797 | INDIANAPOLIS | MARION | IN | 4720 KENTUCKY AVE | 4/7/2005 | 4/24/2015 | 4/24/2015 | | 4/7/2008 | NEWREPLA | SOUTH MERIDIAN ASSOCIATES LLC | 50 SOUTH MERIDIAN ST., STE. 202 | IN | 46204-0000 | 317-636-3800 |
| 5 | LIN17653 | IN1659 | INDIANAPOLIS | MARION | IN | 8850 KEYSTONE CROSSING | 7/1/2005 | 6/30/2020 | 6/30/2020 | | 4/7/2008 | NEWREPLA | PORMANIK INDIANAPOLIS A LLC | 8410 WEST BRYN MAWR AVENUE | IL | 60631-0000 | 773-486-4600 |
| 5 | LIN17555 | IN1659 | INDIANAPOLIS | MARION | IN | 6850 TELECOM DRIVE | 11/1/2005 | 10/31/2015 | 10/31/2015 | | 11/1/2010 | NEWREPLA | KEYSTONE INVESTORS, LLC | 200 SOUTH MICHIGAN AVENUE | IL | 60604-0000 | 312-673-3380 |
| 5 | LIN17553 | IN1807 | INDIANAPOLIS | MARION | IN | 5420 SOUTH BLVD. | 12/11/2005 | 12/10/2015 | 12/10/2015 | | | NEW LEASE | LAZER REALTY GROUP, INC | 4440 S. HIGH SCHOOL ROAD | IN | 46241-8422 | 317-631-1550 |
| 5 | LIN16807 | IN1725 | INDIANAPOLIS | MARION | IN | 111 MONUMENT CIRCLE | 4/14/1999 | 6/30/2008 | 6/30/2008 | | 2/28/2017 | NEW LEASE | PORMANIK INDIANAPOLIS A LLC | 8410 WEST BRYN MAWR AVENUE | IL | 60631-0000 | 847-849-5500 |
| 5 | LIN00724 | IN1520 | INDIANAPOLIS | MARION | IN | 1201 EAST 10TH STREET | 4/15/1945 | 11/30/2013 | 11/30/2013 | | 11/30/2012 | SUCCEED/NN | MACQUARIE OFFICE MONUMENT CENTER | 131 N WACKER DRIVE | IL | 60606-0000 | 847-849-8600 |
| 5 | LIN00530 | IN1520 | JEFFERSONVILLE | CLARK | IN | 1201 EAST 10TH STREET | 4/15/1945 | 9/30/2012 | 9/30/2012 | | 9/15/1945 | OLD LEASE-CSX TRANSPORTATION | 500 WATER STREET | | FL | 21201-0000 | 904-359-1397 |
| 5 | LIN00735 | IN1520 | JEFFERSONVILLE | CLARK | IN | 1201 EAST 10TH STREET | 1/28/1959 | 9/30/2012 | 9/30/2012 | | 9/15/1960 | OLD LEASE-CSX TRANSPORTATION | 500 WATER STREET | | FL | 21201-0000 | 904-359-1397 |
| 5 | LIN00736 | IN1520 | JEFFERSONVILLE | CLARK | IN | 1201 EAST 10TH STREET | 9/20/1946 | 9/19/1980 | 9/19/1980 | | 9/20/1946 | OLD LEASE-CSX TRANSPORTATION | 500 WATER STREET | | FL | 21201-0000 | 904-359-1397 |
| 5 | LIN00520 | IN1520 | JEFFERSONVILLE | CLARK | IN | 229 AMERICA PLACE | 11/29/2000 | 11/28/2011 | 11/28/2011 | | 11/29/2009 | NEW LEASE | JEFFERSONVILLE PUBLIC WAREHOUSE | 228 AMERICA PL | | | 317-844-2200 |
| 5 | LIN15896 | IN1608 | KOKOMO | HOWARD | IN | 3115 S. WEBSTER | 8/16/1999 | 5/31/2008 | 5/31/2008 | | | EXTENSION | STINEHART REALTY | 399 WEST ELEVENTH ST | | 46007-0000 | 317-641-2000 |
| 5 | LIN15708 | IN1698 | LAFAYETTE | TIPPECANOE | IN | 820 MORO DRIVE | 2/1/2001 | 2/11/2004 | 2/11/2004 | | 8/11/2008 | EXTENSION | RIOT LAF SSA PARTNERSHIP | 1521 SOUTH 11TH STREET | IN | 60435-0000 | 708-799-4500 |
| 5 | LIN16391 | IN1749 | LAFAYETTE | TIPPECANOE | IN | 10 SOUTH SECOND STREET | 5/24/2000 | 10/23/2000 | 10/23/2009 | | 10/24/2013 | NEW LEASE | RIOT LAF SSA PARTNERSHIP | 1149 W 175 STREET | IL | 60435-0000 | 708-799-4500 |
| 5 | LIN17447 | IN1783 | LAFAYETTE | TIPPECANOE | IN | 8 NORTH 3RD STREET | 3/15/2005 | 3/14/2010 | 3/14/2010 | | 4/13/2010 | SUCCEED/NN | BIG REALTY, LLC | 2879 WINDY KNOLL LN | IN | 46074-6236 | 765-497-2351 |
| 5 | LIN16970 | IN1783 | MADISON | JEFFERSON | IN | 150 DEMAREE DRIVE | 3/6/1997 | 3/5/2007 | 3/5/2007 | | 3/15/2009 | NEW LEASE | MECCA INVESTMENTS, LLC | 2879 WINDY KNOLL LN | IN | 47250-0000 | 812-265-5122 |
| 5 | LIN17031 | IN1777 | MARION | GRANT | IN | 844 MILLER AVENUE | 12/22/2003 | 12/21/2008 | 12/21/2008 | | 12/22/2014 | NEWREPLA | WELLS REIT II FRANCH REAL ESTATE | 1315 CLIFFY DRIVE | FL | 47250-0000 | 765-664-2242 |
| 5 | LIN16387 | IN1760 | MERRILLVILLE | LAKE | IN | 1278 EAST 85TH AVENUE | 3/8/2001 | 3/7/2011 | 3/7/2011 | | 3/8/2006 | NEWREPLA | PATRICK SCHICHI | 500 RIVER DRIVE | FL | 48853-0000 | 765-664-4242 |
| 5 | LIN16575 | IN1759 | MERRILLVILLE | LAKE | IN | 233 EAST 84TH DRIVE | 12/7/2001 | 12/6/2011 | 12/6/2011 | | 12/8/2006 | NEWREPLA | GRAND PARK MANAGEMENT CORPORA | P.O. BOX 404 | FL | 48384-0000 | 219-465-7065 |
| 5 | LIN16883 | IN1808 | MERRILLVILLE | LAKE | IN | 233 EAST 84TH DRIVE | 9/23/2002 | 9/22/2007 | 9/22/2008 | | 2/28/2010 | NEWREPLA | PATRICK SCHICHI | 294 WEST JOLIET ROAD | IN | 48384-0000 | 219-465-7065 |
| 5 | LIN16884 | IN1759 | MERRILLVILLE | LAKE | IN | 8420 INDIANA STREET | 2/14/2006 | 2/28/2011 | 2/28/2010 | | 2/28/2010 | EXTENSION | GRAND CORPORATION | 294 WEST JOLIET ROAD | IN | 48384-0000 | 219-465-7065 |
| 5 | LIN17764 | IN1759 | MERRILLVILLE | LAKE | IN | 233 EAST 84TH DRIVE | 10/4/2002 | 10/3/2012 | 10/3/2012 | | 10/3/2012 | NEW LEASE | GRAND CORPORATION | 294 W JOLIET ROAD | IN | 48384-0000 | 219-465-7065 |
| 5 | LIN18003 | IN1705 | MERRILLVILLE | LAKE | IN | 1571 E. 85TH PLACE | 4/25/2006 | 4/24/2016 | 4/24/2016 | | 4/25/2016 | NEWREPLA | STARWOOD PROPERTIES | 294 WEST JOLIET ROAD | IN | 48385-0000 | 219-465-7065 |
| 5 | LIN16016 | IN1732 | MICHIGAN CITY | LA PORTE | IN | 606 NORTH PINE STREET | 9/1/2007 | 8/31/2017 | 8/31/2017 | | 10/14/2016 | NEW LEASE | STARWOOD PROPERTIES, LLC | 501 EAST LAKE AVENUE | IL | 60616-0000 | 312-842-5565 |
| 5 | LIN15908 | IN1732 | MUNCIE | DELAWARE | IN | 630 S. WALNUT ST. | 10/15/1999 | 10/14/2019 | 10/14/2019 | | 10/14/2019 | NEWREPLA | SSP LAKE MANAGEMENT AND DEVELO | 2950 SOUTH MICHIGAN AVENUE | IL | 60616-0000 | 765-643-3395 |
| 5 | LIN15909 | IN1568 | MUNCIE | DELAWARE | IN | 225 N HIGH STREET | 8/1/1988 | 7/31/2008 | 7/31/2008 | | 6/15/2007 | OLD LEASE-SSP PROPERTIES IAN A INDIANA | P.O. BOX 1075 | | MI | 49085-0000 | 231-845-4451 |

July 2008 Lease Inventory
sorted by State
www.gsa.gov

| Region | Lease No | Bldg No | City | County | Building Address | St | Original Start Date | Original End Date | Current End Date | Termination Right Date | Last Term Related Action | Lessor/Owner | Lessor Address | Lessor City | Lessor St | Lessor Zip | Lessor Phone |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5 | LW116313 | WI1600 | MADISON | DANE | 660 W. WASHINGTON AVE. | WI | 9/11/1998 | 4/30/2008 | 4/30/2008 | | EXTENSION | CITY STATION ASSOCIATES LTD. PTN. | 145 EAST BADGER ROAD | | WI | 53713-0000 | 608-256-5580 |
| 5 | LW116233 | WI1600 | MADISON | DANE | 4511 HELGESEN DRIVE | WI | 9/15/1997 | 9/14/2008 | 9/14/2008 | | EXTENSION | CENTRAL WISCONSIN PARK | 200 OWEN ROAD | | WI | 53707-7000 | 608-244-2100 |
| 5 | LW116276 | WI1602 | MADISON | DANE | 2810 CROSSROADS DRIVE | WI | 1/1/1998 | 12/31/2002 | 12/31/2002 | | EXTENSION | PARK PLAZA AT HIGH CROSSING L.L.C | P. O. BOX 7700 | | WI | 53707-7700 | 608-241-2100 |
| 5 | LW116834 | WI1631 | MADISON | DANE | 7488 PARR PLACE | WI | 8/21/2000 | 4/30/2010 | 4/30/2010 | | NEW LEASE | 740 REGENT STREET ASSOCIATES | 145 EAST BADGER ROAD | | WI | 53703-0000 | 608-273-2499 |
| 5 | LW116931 | WI1600 | MADISON | DANE | 6011 ODANA ROAD | WI | 1/15/2002 | 1/31/2022 | 1/31/2012 | | NEWREPL | THE ALEXANDER COMPANY, INC. | 1148 WEST 125TH STREET | | WI | 60430-0000 | 708-225-5550 |
| 5 | LW117251 | WI1600 | MADISON | DANE | 660 W. WASHINGTON AVE. | WI | 2/22/2002 | 2/21/2012 | 2/21/2012 | | NEWREPL | AURORA CITY STATION ASSOCIATES LIMITED PA | 680 N WASHINGTON DR. SUITE 303 | | WI | 53703-0000 | 608-256-5580 |
| 5 | LW116846 | WI1600 | MADISON | DANE | 559 DONOFRIO DRIVE | WI | 12/1/2000 | 11/30/2010 | 11/30/2010 | | NEWREPLA | CITY STATION ASSOCIATES | % THE ALEXANDER COMPANY | | WI | 53719-1235 | 608-256-5580 |
| 5 | LW116865 | WI1604 | MADISON | DANE | 955 RESEDA DRIVE | WI | 1/1/2002 | 12/31/2011 | 12/31/2011 | | NEWREPLA HIGH POINT OFFICE PARK, LLC | 2418 CROSSROADS DRIVE | | WI | 53707-0000 | 608-256-5580 |
| 5 | LW116975 | WI1701 | MADISON | DANE | 6030 EXCELSIOR DRIVE | WI | 4/15/2007 | 4/15/2012 | 4/15/2012 | | SUCCEED HIGH POINT OFFICE PARK, LLC | 510 CHARMANY DRIVE | | WI | 53719-1235 | 608-238-2677 |
| 5 | LW117057 | WI1600 | MADISON | DANE | 660 W. WASHINGTON AVE. | WI | 7/21/2003 | 12/31/2011 | 12/31/2011 | | SUCCEEDING WISCONSIN RESEARCH PARK, INC. | 8020 EXCELSIOR DRIVE | | WI | 53717-1914 | 608-236-8000 |
| 5 | LW117113 | WI1600 | MADISON | DANE | 660 W. WASHINGTON AVE. | WI | 12/1/2002 | 11/30/2012 | 11/30/2012 | | NEW LEASE CITY STATION ASSOCIATES | % THE ALEXANDER COMPANY | | WI | 53719-0000 | 608-256-5580 |
| 5 | LW117146 | WI1702 | MADISON | DANE | 2701 INTERNATIONAL LANE | WI | 9/30/2004 | 9/29/2014 | 9/29/2014 | | NEW LEASE CITY STATION ASSOCIATES | P.O. BOX 8886 | | WI | 53708-8886 | 608-242-5566 |
| 5 | LW117268 | WI1602 | MADISON | DANE | 4802/44 E. BROADWAY | WI | 8/1/2003 | 7/31/2013 | 7/31/2013 | | SUCCEEDIN INTERNATIONAL PROPERTIES | 5900 MONONA DRIVE | | WI | 53716-3784 | 608-221-3854 |
| 5 | LW116916 | WI1610 | MADISON | DANE | 543 20TH AVENUE PLACE | WI | 8/1/2003 | 7/31/2013 | 7/31/2013 | | SUCCEEDIN HIGH POINT OFFICE PARK, LLC | 2418 CROSSROADS DRIVE | | WI | 53707-0000 | |
| 5 | LW117364 | WI1632 | MADISON | DANE | 256 CORPORATE DRIVE | WI | 7/1/2003 | 6/30/2008 | 6/30/2008 | | SUCCEEDIN 256 CORPORATE COMMONS ASSO., LLC | P.O. BOX 342 | | WI | 53701-0342 | 608.576.3525 |
| 5 | LW117193 | WI1728 | MADISON | DANE | 222 W. WASHINGTON AVE. S.W | WI | 6/21/2006 | 6/20/2016 | 6/20/2016 | | NEW LEASE WEST WASHINGTON COMMONS LLC | 150 E. GILMAN STREET, SUITE 1800 | | WI | 53703-0000 | 608-255-5580 |
| 5 | LW117348 | WI1719 | MADISON | DANE | 700 RAYOVAC DRIVE | WI | 7/1/2007 | 6/30/2017 | 6/30/2017 | | NEW LEASE 700 RAYOVAC DRIVE ASSOCIATES | 700 RAYOVAC DRIVE SUITE B | | WI | 53711-2970 | 608.274.5100 |
| 5 | LW117739 | WI1739 | MADISON | DANE | 4000 INTERNATIONAL LANE | WI | 7/8/2007 | 7/7/2012 | 7/7/2012 | | EXTENSION DANE COUNTY REGIONAL AIRPORT | 4000 INTERNATIONAL LANE | | WI | 53704-3120 | 608.246.3500 |
| 5 | LW117788 | WI1744 | MADISON | DANE | 525 JUNCTION ROAD | WI | 2/1/2008 | 1/31/2013 | 1/31/2013 | | NEW LEASE UNIVERSITY RESEARCH PARK, INC. | 510 CHARMANY DRIVE | | WI | 53705-9607 | 608-663-7650 |
| 5 | LW117849 | WI1746 | MADISON | DANE | 485 SCIENCE DRIVE | WI | 2/1/2008 | 1/31/2013 | 1/31/2013 | | NEW LEASE UNIVERSITY RESEARCH PARK, INC. | 510 CHARMANY DRIVE | | WI | 53705-9607 | 608-663-7650 |
| 5 | LW116035 | WI1485 | MANITOWOC | MANITOWOC | 1819 GOLDEN COURT | WI | 2/1/1998 | 1/31/2008 | 1/31/2008 | | OLD BUILD DBR PROPERTIES | P.O. BOX 209 | | WI | 54220-0000 | 920-682-8327 |
| 5 | LW115599 | WI1485 | MARINETTE | MARINETTE | 1701 DUNLAP AVENUE | WI | 11/1/2006 | 10/31/2011 | 10/31/2011 | | NEW LEASE WARREN MARCUS LLC | % DUI PODIAL LLC | | WI | 54143-0000 | |
| 5 | LW117881 | WI1730 | MERRILL | LINCOLN | 201 E. FIRST ST. | WI | 8/1/2003 | 7/31/2013 | 7/31/2013 | | NEWREPL SUCCEEDIN HARVEY A. AND EVELYN M. WOODWARD | N1230 HERITAGE RD. | | WI | 54452-0000 | 715-536-1700 |
| 5 | LW117870 | WI1852 | MERRILL | LINCOLN | 1004 E. FIRST ST. | WI | 7/1/2003 | 6/30/2008 | 6/30/2008 | | EXTENSION RANDEL HALVERSON | 1004 E. FIRST STREET | | WI | 54452-2580 | 715.536.5594 |
| 5 | LW117882 | WI1637 | MIDDLETON | DANE | 8505 RESEARCH WAY | WI | 6/25/1997 | 5/31/2007 | 5/31/2007 | | NEWREPL SUCCEEDIN MR. JEFF STRAUBEL | 8505 RESEARCH WAY | | WI | 54452-2580 | 715.536.5594 |
| 5 | LW116112 | WI1592 | MILWAUKEE | MILWAUKEE | 330 E. KILBOURN AVE | WI | 6/15/1996 | 5/31/2008 | 5/31/2008 | | NEWREPLA GREENWAY OFFICE CENTER LLC | 8551 RESEARCH WAY | | WI | 53562-4683 | 608.341.2100 |
| 5 | LW116381 | WI1542 | MILWAUKEE | MILWAUKEE | 310 W. WISCONSIN STREET | WI | 11/23/1992 | 11/22/2012 | 11/22/2012 | | OLD LEASE AAP PROPERTIES | 2929 ARCH STREET, 17TH FLOOR | | PA | 19104-2870 | 414-273-5500 |
| 5 | LW115388 | WI1542 | MILWAUKEE | MILWAUKEE | 310 W. WISCONSIN | WI | 3/4/1993 | 3/3/2008 | 3/3/2008 | | EXTENSION AAP PROPERTIES | 840 GREENWAY BOULEVARD | | PA | 53202-0000 | 414-273-5500 |
| 5 | LW115560 | WI1584 | MILWAUKEE | MILWAUKEE | 310 W. WISCONSIN AVE | WI | 9/28/1992 | 3/31/2011 | 4/30/2008 | | EXTENSION AAP PROPERTIES | 1000 NORTH WATER ST. | | PA | 53202-0000 | 414-273-5500 |
| 5 | LW116089 | WI1635 | MILWAUKEE | MILWAUKEE | 6300 W. FOND DULAC | WI | 10/10/1997 | 10/9/2017 | 10/9/2017 | | OLD LEASE S.S.A. MILWAUKEE FEDERAL PLAZA, LLC | 2929 ARCH STREET, 17TH FLOOR | | PA | 19104-2870 | 414-273-5500 |
| 5 | LW116558 | WI1584 | MILWAUKEE | MILWAUKEE | 211 W. WISCONSIN AVE | WI | 1/26/1998 | 1/25/2012 | 1/26/2012 | | OLD LEASE AAP PROPERTIES | 2929 ARCH STREET, 17TH FLOOR | | PA | 19104-2870 | 414-273-5500 |
| 5 | LW116727 | WI1650 | MILWAUKEE | MILWAUKEE | 310 EAST KILBOURN | WI | 2/1/2000 | 1/31/2010 | 1/31/2010 | | NEW LEASE RAIT PARTNERSHIP | 100 QUARRY ROAD, SUITE B | | PA | 07415-1338 | 973-523-3140 |
| 5 | LW117877 | WI1588 | MILWAUKEE | MILWAUKEE | 310 W. WISCONSIN AVE | WI | 2/1/2000 | 1/31/2010 | 1/31/2010 | | NEW LEASE RAIT PARTNERSHIP | 269 ARCH STREET, 17TH FLOOR | | PA | 19104-2870 | 973-523-3140 |
| 5 | LW116864 | WI1542 | MILWAUKEE | MILWAUKEE | 700 MILWAUKEE ST | WI | 5/15/2001 | 5/14/2011 | 5/14/2011 | | NEWREPLA WEST PARTNERSHIP II ASSO. LTD. PARTNERSHIP | 733 NORTH VAN BUREN STREET | | WI | 53202-0000 | 414-272-5600 |
| 5 | LW116884 | WI1720 | MILWAUKEE | MILWAUKEE | 1710 SOUTH 7TH STREET | WI | 11/27/2002 | 11/26/2012 | 11/26/2012 | | EXTENSION CPS PARKING | 200 OAK DRIVE | | WI | 53233-0000 | 414-273-5500 |
| 5 | LW117290 | WI1741 | MILWAUKEE | MILWAUKEE | 211 W. WISCONSIN AVENUE | WI | 3/1/2006 | 2/28/2016 | 2/28/2016 | | NEW LEASE 211 W WISCONSIN MASTER LLC | 740 NORTH PLANKINTON | | WI | 53186-0000 | 262-446-2746 |
| 5 | LW117111 | WI1607 | MILWAUKEE | MILWAUKEE | 5027 S. HOWELL AVENUE | WI | 9/27/2002 | 9/26/2024 | 9/26/2024 | | EXTENSION AIRPORT ATRIUM OPERATING ASSOCIA | 530 GARFIELD STREET | | WI | 87501-0000 | 505-982-5100 |
| 5 | LW117144 | WI1607 | MILWAUKEE | MILWAUKEE | 1000 NORTH WATER STREET | WI | 3/1/2004 | 2/28/2014 | 2/28/2014 | | EXTENSION NORTH AURORA REALTY LLC | 1000 N WATER STREET, SUITE 900 | | WI | 53202-3157 | 414-277-1000 |
| 5 | LW116407 | WI1712 | MILWAUKEE | MILWAUKEE | 4915 SOUTH HOWELL AVENUE | WI | 3/1/2004 | 2/28/2014 | 2/28/2014 | | NEWREPLA AAP PROPERTIES | TOWNE REALTY, INC | | WI | 53203-0000 | 414-274-2637 |
| 5 | LW117317 | WI1741 | MILWAUKEE | MILWAUKEE | 5000 W. NORTH AVENUE | WI | 12/28/2006 | 12/27/2016 | 12/27/2016 | | NEWREPLA NORTH AURORA REALTY HOLDINGS | 100 QUARRY ROAD, SUITE B | | WI | 07419-1339 | 414-274-2637 |
| 5 | LW117241 | WI1724 | MILWAUKEE | MILWAUKEE | 615 E. MICHIGAN ST. | WI | 11/1/2004 | 10/31/2014 | 10/31/2014 | | EXTENSION MORTIMER LEVITT FOUNDATION | 100 QUARRY ROAD, SUITE B | | WI | 07419-1339 | 973-523-3140 |
| 5 | LW117724 | WI1725 | MILWAUKEE | MILWAUKEE | 11050 WEST LIBERTY DRIVE | WI | 7/1/2003 | 6/30/2018 | 6/30/2018 | | EXTENSION IMPERIAL PARKING, INC. | 833 W. WISCONSIN AVE | | WI | 53222-0000 | 414.273-7241 |
| 5 | LW117243 | WI1741 | MILWAUKEE | MILWAUKEE | 5000 SOUTH HOWELL AVE | WI | 7/1/2003 | 6/30/2018 | 6/30/2018 | | NEWREPLA MORTIMER LEVITT LIMITED PART. | 1414 WEST PARK PLAZA | | WI | 53222-0000 | |
| 5 | LW117422 | WI1717 | MOSINEE | MARATHON | TERMINAL BUILDING | WI | 11/15/2002 | 11/14/2004 | | | EXTENSION CENTRAL WISCONSIN AIRPORT | 931 NORTH 4TH STREET | | WI | 53233-0000 | |
| 5 | LW117426 | WI1708 | MARATHON | MARATHON | ORBITING DRIVE | WI | 1/1/2003 | 12/31/2005 | 12/31/2005 | | EXTENSION JOSEPH J. SWIDERSKI, TRUSTEE | E WISCONSIN AVE | | WI | 53233-0000 | 414747500 |
| 5 | LW117443 | WI1622 | MOSINEE | MARATHON | 1029 PARK PLACE | WI | 1/1/2003 | 12/31/2009 | 12/31/2009 | | SUCCEEDIN PRAECAVEO, LLC | 3200 CRYSTAL BREEZE LANE | | WI | 24785-0000 | 715-359-3147 |
| 5 | LW117960 | WI1621 | ONALASKA | LA CROSSE | 551 LESTER AVENUE | WI | 2/1/2007 | 1/31/2017 | 1/31/2017 | | SUCCEEDI CEDAR HILLS MULTI-FAMILY PROPERTIES | 221 STEWART AVE. P.O. BOX 1762 | | WI | 54402-1762 | 715-842-2121 |

165

**71**

## Unknown

| | |
|---|---|
| **From:** | Jen Edmiston [JEdmiston@wextrust.com] |
| **Sent:** | Monday, March 03, 2008 12:41 PM |
| **To:** | Avraham Ingber; Weldon Turner; Michael Mostofsky; Steve Byers; Ralph Sabine; Stuart Jacobowitz |
| **Cc:** | Joseph Shereshevsky |
| **Subject:** | Re: Commission Schedule |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Green |
| **Attachments:** | Commission Schedule.xls |

Gentlemen,


Please find attached the proposed Commission Schedule as requested by Joe in his email below.  Let me know if you have any questions, comments or suggestions for improvement as Joe would like to distribute the chart to all brokers on Wednesday, March 5, 2008.

Thank you,
**Jen Edmiston**
Accounting Specialist
WexTrust Capital, LLC
999 Waterside Drive, Ste 2220
Norfolk, VA  23510
757.623.0246 (Office)
757.213.5222 (Direct)
757.213.5231 (Fax)
jedmiston@wextrust.com

**From:** Joseph Shereshevsky
**Sent:** Thursday, January 24, 2008 3:27 AM
**To:** Avraham Ingber; Weldon Turner
**Cc:** Jen Edmiston; Michael Mostofsky; Steve Byers
**Subject:** CHART

WELDON,AVI,MIKE

If you feel that anything is wrong please let me know so . thanks . I think I covered everything, if not let me know. Only I can make exceptions , no one else.


A COMMISSION CHART WITH ALL THE UOPDATES WILL BE READY BY FRIDAY. JEN IS PUTTING IT TOGETHER RIGHT NOW WITH ALL THE NEW TYPES OF DEALS.

However as a reference just the following.

GDR

1 year      1%   however when rolled into deal for no penalty then the balance of 2% will be paid.     ( if we would of paid then all someone has to do it to keep locking up their client for 1 year at a time and walk away with a 6%        commission while not doing the best interests          Of the clients and causing us to be an exuberant interest rate on basically a 1 year lock up period)

18 month    3%

3 year     3%

3 year with no potential for early withdrawal even with penalty        3%

8/4/2008

All cash flow deals        3%

All development deals      3%

Mezz deals                 2%

HYF                        2%

HYF off shore              20/20

Managed futures            20/20    or 2% commission 1 time


SPECIAL RULES

All commissions only apply for  when minimum investment  is made.

As a rule of thumb minimum investments are 100,000

Below 100,000 commission cut by 1 point

Below 50,000 commission cut by another point is deducted

On GDR in any month that's someone gets 300,000 or over  in at least the 18 month lockup then there will be an extra point paid.

On GDR the minimum is 50,000


THESE RATES MAY CHANGE AT ANY TIME. WE MAY GO TO A LOWER  or HIGHER COMMISSION SCHEDULE AT ANY TIME FOR MONEY NOT YET RAISED.

ONLY JOE CAN MAKE EXCEPTIONS. HOWEVER AS EVERYONE KNOWS THE EXCEPTIONS RARELY HAPPEN.

PLEASE USE THIS AS A DRAFT ONLY UNTIL JEN MAKES IT READY IN A NICE EXCEL SHEET.

I AM NOT RESPONSIBLE FOR ANY MISTAKES THAT ARE IN HERE IF THERE ARE ANY. I REREAD IT, AND IT DOESN'T LOOK LIKE THERE IS.


JOE



JOE



**Joseph Shereshevsky**
**COO**
**WexTrust Capital, LLC**
999 Waterside Drive, Suite 2220
Norfolk, VA 23510
josephs@wextrust.com
Office: (757) 623-0246

8/4/2008

Direct: (757) 213-5223
Cell: (732) 904-3368
Fax: (757) 623-6215


Beth McClung
Executive Assistant to COO / Office Manager
999 Waterside Drive, Suite 2220
Norfolk, VA 23510
bmcclung@wextrust.com
Office: (757) 623-0246
Direct: (757) 213-5223
Fax: (757) 623-6215

This e-mail transmission may contain information that is proprietary, privileged and/or confidential and
is intended exclusively for the person(s) to whom it is addressed. Any use, copying, retention or
disclosure by any person other than the intended recipient or the intended recipient's designees is
strictly prohibited. If you are not the intended recipient or their designee, please notify the sender
immediately by return e-mail and delete all copies.

8/4/2008

**WexTrust Capital Commission Schedule**
**Effective: March 1, 2008**

**GSPN 12 Month Maturity (7.00%)**

1.00%   Note:
If the investor elects to roll their investment into an offering, the remaining commission will be paid based on the guidelines of minimum investments and type of offering (please see examples below).

Example 1:
Scenario : We receive an investment of $100,000.00 for GSPN 12 Month Maturity (7.00%). During the commission month that we received the funds, we will pay 1.00% commission on $100,000.00. Several weeks later, your investor wishes to transfer his investment to a cash flow deal.
Decision: We will pay the remaining commission (if any) during the next commission month process.

Example 2:
Scenario : We receive an investment of $40,000.00 for GSPN 12 Month Maturity (7.00%). During the commission month that we received the funds, we will pay 1.00% commission on $40,000.00. Several weeks later, your investor wishes to transfer his investment to the WHYF III. Decision: No additional commission is due. The minimum investment for WHYF III is $100,000.00. Because we received less than the minimum investment, the commission is reduced and equals the same amount paid when the funds were originally received.

Commission Guidelines:
Minimum investment amount is $50,000.00 . Commissions paid on investments less than $49,999.99 are subject to managements' discretion and reviewed on a case-by-case basis which can result in a commission less than or equal to 1.00%.

**GSPN 18 Month Maturity (7.75%)**

3.00%   Note:
For investments received totaling to $300,000.00 or more during a given commission month, management will increase the commission paid from 3.00% to 4.00% on all funds received in GSPN 18 Month Maturity (7.75%) and in either of the GSPN 3 Year Maturity investment options. Investments received in GSPN 12 Month Maturity option are not eligible for the additional 1.00% commission and are excluded from the monthly total.

Commission Guidelines:
Minimum investment amount is $50,000.00 with a 1.00% reduction in commission for investments less than or equal to $49,999.99.

**GSPN 3 Year Maturity (9.00%)**

3.00%   Note:
For investments received totaling to $300,000.00 or more during a given commission month, management will increase the commission paid from 3.00% to 4.00% on all funds received in GSPN 18 Month Maturity (7.75%) and in either of the GSPN 3 Year Maturity investment options. Investments received in GSPN 12 Month Maturity option are not eligible for the additional 1.00% commission and are excluded from the monthly total.

Commission Guidelines:
Minimum investment amount is $50,000.00 with a 1.00% reduction in commission for investments less than or equal to $49,999.99.

**GSPN 3 Year Maturity, no ability to withdraw (9.00% paid current with additional 3.00% per annum paid at maturity)**

3.00%   Note:
For investments received totaling to $300,000.00 or more during a given commission month, management will increase the commission paid from 3.00% to 4.00% on all funds received in GSPN 18 Month Maturity (7.75%) and in either of the GSPN 3 Year Maturity investment options. Investments received in GSPN 12 Month Maturity option are not eligible for the additional 1.00% commission and are excluded from the monthly total.

Commission Guidelines:
Minimum investment amount is $50,000.00 with a 1.00% reduction in commission for investments less than or equal to $49,999.99.

**Cash Flow Deals**

3.00%   Commission will be paid for any investment greater than or equal to $100,000.00
2.00%   Commission will be paid for any investment less than or equal to $99,999.99 but greater than or equal to $50,000.00
1.00%   Commission will be paid for any investment less than or equal to $49,999.99
Commission Guidelines:
Minimum investment amount is $100,000.00 with a 1.00% reduction in commission using the above scale.

**Development Deals**

3.00%   Commission will be paid for any investment greater than or equal to $100,000.00
2.00%   Commission will be paid for any investment less than or equal to $99,999.99 but greater than or equal to $50,000.00
1.00%   Commission will be paid for any investment less than or equal to $49,999.99
Commission Guidelines:
Minimum investment amount is $100,000.00 with a 1.00% reduction in commission using the above scale.

| **Mezzanine Deals** | |
| --- | --- |
| 2.00% | Commission will be paid for any investment greater than or equal to $100,000.00 |
| 1.50% | Commission will be paid for any investment less than or equal to $99,999.99 but greater than or equal to $50,000.00 |
| 1.00% | Commission will be paid for any investment less than or equal to $49,999.99 |
| | *Commission Guidelines:* |
| | Minimum investment amount is **$100,000.00** with a 0.5% reduction in commission using the above scale. |

| **High Yield Fund** | |
| --- | --- |
| 2.00% | Commission will be paid for any investment greater than or equal to $100,000.00 |
| 1.50% | Commission will be paid for any investment less than or equal to $99,999.99 but greater than or equal to $50,000.00 |
| 1.00% | Commission will be paid for any investment less than or equal to $49,999.99 |
| | *Commission Guidelines:* |
| | Minimum investment amount is **$100,000.00** with a 0.5% reduction in commission using the above scale. |

| **High Yield Fund (Offshore)** | |
| --- | --- |
| 20/20 | Commission schedule |
| | *Commission Guidelines:* |
| | Minimum investment amount is **$100,000.00** |

| **Managed Futures** | |
| --- | --- |
| 20/20 | Commission schedule option |
| One-time 2.00% | Commission option |
| | *Commission Guidelines:* |
| | Minimum investment amount is **$100,000.00** |

## Important:

⇨ **This document is to serve as a GUIDE ONLY and is not to be perceived as a contact nor distributed to persons outside of the WexTrust Capital, LLC organization.**

⇨ **Each investment is evaluated based on undisclosed factors and are subject to change without notice or explanation.**

⇨ Exceptions to the above guidelines can only be made and approved by Joseph Shereshevsky.

⇨ Finders must be disclosed before processing commissions, generally by the last business day of the month. Please note that we will require a Tax Identification Number and address before issuing a check to a finder.

⇨ Any corrections/adjustments are made at the end of the month during the normal commission process. Exceptions can only be made and approved by Joseph Shereshevsky.

⇨ Commissions are only paid only after a property/deal closes unless approved by Joseph Shereshevsky.

⇨ Commissions are paid only after all debts to WexTrust Capital, LLC are fulfilled (loans, draws etc.).

72

## Unknown

| | |
|---|---|
| **From:** | Weldon Turner [wjturner@netvision.net.il] |
| **Sent:** | Thursday, April 03, 2008 3:28 PM |
| **To:** | Joseph Shereshevsky; Steve Byers |
| **Subject:** | Re: managers meeting |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Red |
| **Attachments:** | Agenda Tentative Agenda Management Meeting.doc |

Gentlemen:

Per your request, attached please find a tentative agenda.  Just a reminder, you wanted to use this to see who you wanted at the meeting.

Best,

> ----- Original Message -----
> **From:** Joseph Shereshevsky
> **To:** Weldon Turner ; Steve Byers
> **Sent:** Wednesday, April 02, 2008 10:22 PM
> **Subject:** RE: managers meeting
>
> Steve
> Weldon
> avi
> however if you can me an agenda what you want to talk about I can answer that question better.
> joe
> **Joseph Shereshevsky**
> **COO**
> **WexTrust Capital, LLC**
> 999 Waterside Drive, Suite 2220
> Norfolk, VA 23510
> josephs@wextrust.com
> Office: (757) 623-0246
> Direct: (757) 213-5223
> Cell: (732) 904-3368
> Fax: (757) 623-6215
> Beth McClung
> Executive Assistant to COO / Office Manager
> 999 Waterside Drive, Suite 2220
> Norfolk, VA 23510
> bmcclung@wextrust.com
> Office: (757) 623-0246
> Direct: (757) 213-5223
> Fax: (757) 623-6215

**From:** Weldon Turner [mailto:wjturner@netvision.net.il]
**Sent:** Wednesday, April 02, 2008 3:14 PM
**To:** Joseph Shereshevsky; Steve Byers
**Subject:** Re: managers meeting
Who do you think should be in the meeting?

> ----- Original Message -----
> **From:** Joseph Shereshevsky
> **To:** Weldon Turner ; Steve Byers

**Sent:** Wednesday, April 02, 2008 8:10 PM
**Subject:** RE: managers meeting
Ok. Set up the time and I will be there.
I am back in the states . I am in ny office right now
jowe
**Joseph Shereshevsky**
**COO**
**WexTrust Capital, LLC**
999 Waterside Drive, Suite 2220
Norfolk, VA 23510
josephs@wextrust.com
Office: (757) 623-0246
Direct: (757) 213-5223
Cell: (732) 904-3368
Fax: (757) 623-6215
Beth McClung
Executive Assistant to COO / Office Manager
999 Waterside Drive, Suite 2220
Norfolk, VA 23510
bmcclung@wextrust.com
Office: (757) 623-0246
Direct: (757) 213-5223
Fax: (757) 623-6215

---

**From:** Weldon Turner [mailto:wjturner@netvision.net.il]
**Sent:** Wednesday, April 02, 2008 10:25 AM
**To:** Steve Byers; Joseph Shereshevsky
**Subject:** managers meeting
Gentlemen:
I'd like to suggest something that I think I may have  mentioned to one or both of you before. I think would be a very valuable ( if not imperative ) to have a face to face managers meeting to discuss things like a) the direction of Wextrust b) new products and areas of focus c) client relations d) communications etc.
My feeling is that we need to sit with one another and openly discuss these issues, I feel it would be informative and would help you both in managing the firm.
Keep in mind I don't think we have to spend an enormous amount of time, I think if we're productive 1/2 a day would suffice.
Your thoughts?
Weldon Turner
C.E.O.
Wextrust Securities
Aviv Tower
7 Jabotinsky Street
34th Floor
Ramat Gan, Israel 52520
Cellular: 972 54 484 4391
Office: 972 3 575 7181
U.S. Phone: 1 914 380 4133
U.S. Tel: 1 212 561 5142
U.S. Cellular: 914 563 3027
European Cellular: 41 44 580 1349
wjturner@netvision.net.il
wjturner@wextrust.com

This e-mail transmission may contain information that is proprietary, privileged and/or confidential and is intended exclusively for the person(s) to whom it is addressed. Any use, copying, retention or disclosure by any person other than the intended recipient or the intended recipient's designees is strictly prohibited. If you are not the intended recipient or their designee, please notify the sender immediately by return e-mail and delete all copies.

_____ NOD32 2693 (20071129) Information _____

This message was checked by NOD32 antivirus system.
http://www.eset.com

8/4/2008

This e-mail transmission may contain information that is proprietary, privileged and/or confidential and is intended exclusively for the person(s) to whom it is addressed. Any use, copying, retention or disclosure by any person other than the intended recipient or the intended recipient's designees is strictly prohibited. If you are not the intended recipient or their designee, please notify the sender immediately by return e-mail and delete all copies.

_____ NOD32 2693 (20071129) Information _____

This message was checked by NOD32 antivirus system.
http://www.eset.com

This e-mail transmission may contain information that is proprietary, privileged and/or confidential and is intended exclusively for the person(s) to whom it is addressed. Any use, copying, retention or disclosure by any person other than the intended recipient or the intended recipient's designees is strictly prohibited. If you are not the intended recipient or their designee, please notify the sender immediately by return e-mail and delete all copies.

8/4/2008

Tentative Agenda Management Meeting

I.      Wextrust Capital Board of Directors:  a) having an active board b) board members who are responsible for certain segments of the business i.e. Finance, c) developing a  long term strategy for Capital, d) periodic reports from corporate division heads to board.

II.      Customer Service: a) communication i) quarterly reports ii) web site updates iii) k-1's 1099's iv) e mail correspondence v) quarterly company update, b) distributions by wire,

III.      Third Party Raises: a) product focus, b) marketing team, c) due diligence, d) pricing.

IV.      Equity Raising: a) do we have the right structure, b) are commissions competitive, c) do we have the right type of salesperson, d) is the sales force being educated properly, e) are we communicating properly with the sales force, f) allocation process.

V.      New Businesses:  a) setting up new business committee to screen new ventures, b) develop long term strategy to help focus new business ventures,

**Unknown**

| | |
|---|---|
| **From:** | Steve Byers [SByers@wextrust.com] |
| **Sent:** | Wednesday, April 09, 2008 1:55 PM |
| **To:** | Liz Thorpe |
| **Subject:** | FW: managers meeting |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Red |

Confirm these meetings with Weldon and Joe to make sure I attend.

---

**From:** Weldon Turner [mailto:wjturner@netvision.net.il]
**Sent:** Wednesday, April 09, 2008 12:36 PM
**To:** Steve Byers; Joseph Shereshevsky
**Subject:** Re: managers meeting

Let's try for next Monday the 14th either before or after the Pure Africa call.

> ----- Original Message -----
> **From:** Steve Byers
> **To:** Weldon Turner ; Joseph Shereshevsky
> **Sent:** Wednesday, April 09, 2008 8:26 PM
> **Subject:** RE: managers meeting
>
> I am sorry I have been out all Monday and Tuesday.

**From:** Weldon Turner [mailto:wjturner@netvision.net.il]
**Sent:** Monday, April 07, 2008 10:03 AM
**To:** Steve Byers; Joseph Shereshevsky
**Subject:** Re: managers meeting

Gentlemen:

I'm working out of Amnon's office this Monday, Tuesday and Wednesday. Please let me know a couple of times we can meet over the next couple of days and I'll call with Amnon.

thx

> ----- Original Message -----
> **From:** Steve Byers
> **To:** Joseph Shereshevsky ; Weldon Turner
> **Sent:** Friday, April 04, 2008 9:43 PM
> **Subject:** RE: managers meeting
>
> Guys, lets just meet with the three of us and Amnon right now. Than we can work on expanding it.
>
> ---
>
> **From:** Joseph Shereshevsky

8/4/2008

**Sent:** Friday, April 04, 2008 9:20 AM
**To:** Weldon Turner; Steve Byers
**Subject:** RE: managers meeting

On #1 of the agenda. We need to have Steve, Joe, Amnon,Mike gorney,
On #2 of the agenda:  same as above, CFO ( whomever it may be),nick,welson,
On #3  weldon,steve,joe,avi
On#4steve,joe,mike Mostofsky,Weldon, avi
On #5steve,joe,Weldon,avi
What I think is that the core of Weldon,avi steve and joe should have a premeeting to set up the meeting and agenda.
Then we decide who should come to each meeting. We don't need all the same people at the same meeting or phone call. .
The concept that you have in mind is 100% what we should be doing. We need you and avi involved because you will press for action and then I will make it happen.
So lets do a preliminary conference call to set up teams and then we do conference calls with those teams.
Each team had a head, and each head reports to to the core of the four I mentioned once a month or when necessary
joe
**Joseph Shereshevsky**
**COO**
999 Waterside Drive, Suite 2220
Norfolk, VA  23510
josephs@wextrust.com
Office:  (757) 623-0246
Direct:  (757) 213-5223
Cell:  (732) 904-3368
Fax:  (757) 623-6215
**Beth McClung**
Executive Assistant to COO
999 Waterside Drive, Suite 2220
Norfolk, VA  23510
bmcclung@wextrust.com
Office:  (757) 623-0246
Direct:  (757) 213-5223
Fax:  (757) 623-6215

**From:** Weldon Turner [mailto:wjturner@netvision.net.il]
**Sent:** Thursday, April 03, 2008 3:28 PM
**To:** Joseph Shereshevsky; Steve Byers
**Subject:** Re: managers meeting
Gentlemen:
Per your request, attached please find a tentative agenda.  Just a reminder, you wanted to use this to see who you wanted at the meeting.
Best,

----- Original Message -----
**From:** Joseph Shereshevsky
**To:** Weldon Turner ; Steve Byers
**Sent:** Wednesday, April 02, 2008 10:22 PM
**Subject:** RE: managers meeting
Steve
Weldon
avi
however if you can me an agenda what you want to talk about I can answer that question better.
joe
**Joseph Shereshevsky**
**COO**
**WexTrust Capital, LLC**
999 Waterside Drive, Suite 2220
Norfolk, VA 23510
josephs@wextrust.com
Office: (757) 623-0246
Direct: (757) 213-5223
Cell: (732) 904-3368
Fax: (757) 623-6215
Beth McClung
Executive Assistant to COO / Office Manager

999 Waterside Drive, Suite 2220
Norfolk, VA 23510
bmcclung@wextrust.com
Office: (757) 623-0246
Direct: (757) 213-5223
Fax: (757) 623-6215

**From:** Weldon Turner [mailto:wjturner@netvision.net.il]
**Sent:** Wednesday, April 02, 2008 3:14 PM
**To:** Joseph Shereshevsky; Steve Byers
**Subject:** Re: managers meeting
Who do you think should be in the meeting?

----- Original Message -----
**From:** Joseph Shereshevsky
**To:** Weldon Turner ; Steve Byers
**Sent:** Wednesday, April 02, 2008 8:10 PM
**Subject:** RE: managers meeting
Ok. Set up the time and I will be there.
I am back in the states . I am in ny office right now
owe
**Joseph Shereshevsky**
**COO**
**WexTrust Capital, LLC**
999 Waterside Drive, Suite 2220
Norfolk, VA 23510
josephs@wextrust.com
Office: (757) 623-0246
Direct: (757) 213-5223
Cell: (732) 904-3368
Fax: (757) 623-6215
Beth McClung
Executive Assistant to COO / Office Manager
999 Waterside Drive, Suite 2220
Norfolk, VA 23510
bmcclung@wextrust.com
Office: (757) 623-0246
Direct: (757) 213-5223
Fax: (757) 623-6215

**From:** Weldon Turner [mailto:wjturner@netvision.net.il]
**Sent:** Wednesday, April 02, 2008 10:25 AM
**To:** Steve Byers; Joseph Shereshevsky
**Subject:** managers meeting
Gentlemen:
I'd like to suggest something that I think I may have  mentioned to one or both of you before. I think would be a very
valuable ( if not imperative ) to have a face to face managers meeting to discuss things like a) the direction of Wextrust b)
new products and areas of focus c) client relations d) communications etc.
My feeling is that we need to sit with one another and openly discuss these issues, I feel it would be informative and would
help you both in managing the firm.
Keep in mind I don't think we have to spend an enormous amount of time, I think if we're productive 1/2 a day would
suffice.
Your thoughts?
Weldon Turner
C.E.O.
Wextrust Securities
Aviv Tower
7 Jabotinsky Street
34th Floor
Ramat Gan, Israel 52520
Cellular: 972 54 484 4391
Office: 972 3 575 7181
U.S. Phone: 1 914 380 4133
U.S. Tel: 1 212 561 5142

8/4/2008

U.S. Cellular: 914 563 3027
European Cellular: 41 44 580 1349
wjturner@netvision.net.il
wturner@wextrust.com

This e-mail transmission may contain information that is proprietary, privileged and/or confidential and is intended exclusively for the person(s) to whom it is addressed. Any use, copying, retention or disclosure by any person other than the intended recipient or the intended recipient's designees is strictly prohibited. If you are not the intended recipient or their designee, please notify the sender immediately by return e-mail and delete all copies.

_____ NOD32 2693 (20071129) Information _____

This message was checked by NOD32 antivirus system.
http://www.eset.com

This e-mail transmission may contain information that is proprietary, privileged and/or confidential and is intended exclusively for the person(s) to whom it is addressed. Any use, copying, retention or disclosure by any person other than the intended recipient or the intended recipient's designees is strictly prohibited. If you are not the intended recipient or their designee, please notify the sender immediately by return e-mail and delete all copies.

_____ NOD32 2693 (20071129) Information _____

This message was checked by NOD32 antivirus system.
http://www.eset.com

This e-mail transmission may contain information that is proprietary, privileged and/or confidential and is intended exclusively for the person(s) to whom it is addressed. Any use, copying, retention or disclosure by any person other than the intended recipient or the intended recipient's designees is strictly prohibited. If you are not the intended recipient or their designee, please notify the sender immediately by return e-mail and delete all copies.

This e-mail transmission may contain information that is proprietary, privileged and/or confidential and is intended exclusively for the person(s) to whom it is addressed. Any use, copying, retention or disclosure by any person other than the intended recipient or the intended recipient's designees is strictly prohibited. If you are not the intended recipient or their designee, please notify the sender immediately by return e-mail and delete all copies.

his e-mail transmission may contain information that is proprietary, privileged and/or confidential and is ntended exclusively for the person(s) to whom it is addressed. Any use, copying, retention or disclosure y any person other than the intended recipient or the intended recipient's designees is strictly rohibited. If you are not the intended recipient or their designee, please notify the sender immediately y return e-mail and delete all copies.

\-\-\-\-\-\_extPart_001_01C89A6A.EB6406

73

O = SALES REPS

## SCHEDULE C
## SCHEDULE OF BRANCH OFFICES

WESTRUST SECURITIES, LLC
REGISTRANT

4/25/08
DATE

| ADDRESS, CITY, STATE, ZIP | BRANCH MANAGER | NO. OF RRS | NO. OF CUSTOMER ACCTS. CASH/MARGIN/OPTIONS | O.S.J. YES - NO | INDEPENDENTLY MAKES MARKETS YES - NO | INDEPENDENTLY OWNED YES - NO |
|---|---|---|---|---|---|---|
| 9149 WATERSIDE DRIVE NORFOLK, VA 23510 | MICHAEL MASTROISKY | 2 (O) | O | YES | No | No |
| 7 JABOTINSKI, ST Ramat Gan (Israel) | WELDON TURNER | (3) | 6 | Peonix | No | No |
| 333 W. WACKE DR. CHICAGO IL 60606 | | 3/(6) | O | NO | NO | NO |
| 15900 W 10 MILE RD SOUTHFIELD, MI 48075 | YOSEF LANGE | 1 | O | No | No | No |
| 2424 N FEDERAL HWY BOCA RATON FL 33431 | PAUL ZIVAVICH | 1 | O | No | No | No |

2-12
Closed 5-17-07

74

# Organization Registration Status

| | |
|---|---|
| **Organization CRD#: 137559** | **Organization Name: WEXTRUST SECURITIES LLC** |
| **Organization SEC#: 8-67099** | **Applicant Name: WEXTRUST SECURITIES LLC** |
| **No IA Record** | |

| SEC / Jurisdiction / FINRA | Registration Status | Status Effective Date |
|---|---|---|
| SEC | Approved  - | 03/30/2006 |
| FINRA | Approved  - | 03/30/2006 |
| VA | Approved  - | 04/18/2006 |

| SEC / SRO / Jurisdiction | Registration Status | Status Effective Date |
|---|---|---|
| SEC | Approved  - | 03/30/2006 |
| FINRA | Approved  - | 03/30/2006 |
| AL | Approved  - | 10/17/2006 |
| AZ | Approved  - | 04/11/2007 |
| AR | Approved  - | 02/28/2007 |
| CA | Approved  - | 05/16/2006 |
| CO | Approved  - | 01/08/2007 |
| CT | Approved  - | 02/27/2007 |
| DE | Approved  - | 11/13/2006 |
| DC | Approved  - | 04/25/2007 |
| FL | Approved  - | 08/02/2006 |
| GA | Approved  - | 09/14/2006 |
| HI | Approved  - | 05/29/2007 |
| ID | Approved  - | 01/08/2007 |
| IL | Approved  - | 07/11/2006 |
| IN | Approved  - | 09/28/2006 |
| IA | Approved  - | 04/05/2007 |
| KS | Approved  - | 10/20/2006 |
| KY | Approved  - | 01/09/2007 |
| LA | Approved  - | 01/12/2007 |
| ME | Approved  - | 10/25/2006 |
| MD | Approved  - | 08/10/2006 |
| MA | Approved  - | 05/18/2006 |

Web CRD - Organization Registration Status [User Name: theller, OrgID: 50000]

| MI | Approved  - | 05/26/2006 |
|----|-------------|------------|
| MN | Approved  - | 09/05/2006 |
| MS | Approved  - | 01/09/2007 |
| MO | Approved  - | 09/28/2006 |
| MT | Approved  - | 02/05/2007 |
| NE | Approved  - | 05/30/2007 |
| NV | Approved  - | 09/14/2006 |
| NH | Approved  -PLA,OTH | 03/19/2007 |
| NJ | Approved  - | 08/30/2006 |
| NM | Approved  -DP: RALPH G. SABINE CRD 3176977 | 03/15/2007 |
| NY | Approved  - | 04/26/2006 |
| NC | Approved  - | 05/03/2006 |
| ND | Pending Approval  -STATE REQUIRES AFFIDAVIT OF ACTIVITY | 01/16/2007 |
| OH | Approved  - | 08/07/2006 |
| OK | Approved  - | 01/08/2007 |
| OR | Approved  -PLA & OTH | 02/15/2007 |
| PA | Approved  - | 08/17/2006 |
| RI | Approved  - | 09/11/2006 |
| SC | Approved  - | 02/08/2007 |
| SD | Approved  - | 01/04/2007 |
| TN | Approved  - | 07/10/2006 |
| TX | Approved  - | 09/20/2007 |
| UT | Approved  - | 01/09/2007 |
| VT | Approved  - | 02/27/2007 |
| VA | Approved  - | 04/18/2006 |
| WA | Approved  - | 09/14/2006 |
| WV | Approved  - | 09/18/2006 |
| WI | Approved  - | 05/17/2006 |
| WY | No Status  - | 01/03/2007 |

Investor Statement

guest1 >> Logout



WEXTRUST
CAPITAL

View ▲

Drake Oak Brook Investors, LLC

AccountID:        51.
As of Date:       7/22/2008

**Investor Statement Mailing Address**

WILLIAM KAELIN, TOD

[Edit Info]

**Account Officer**

Michelle Cote

Norfolk, VA

Investor Statement

## Capital
## Investments/Divestments

| Transaction ID | Date of Investment | Amount | Totals |
|---|---|---|---|
| 21217 | 07/21/2008 | $100,000.00 | $100,000.00 |

## Dividends

No Dividends to display

© 2006-2008 Wextrust Capital LLC. All information provided as-is and is property of Wextrust Capital.

Investor Statement

guest1 >> Logout



WEXTRUST
CAPITAL

View ▲

# 625 Paragon Investors, LLC

AccountID:      51
As of Date:     7/22/2008

**Investor Statement Mailing Address**
MYH INVESTMENTS ZWEIG (2005) LTD

[Edit Info]

**Account Officer**
Avraham Ingber

Ramat Gan, ר

Investor Statement

## Capital Investments/Divestments

| Transaction ID | Date of Investment | Amount | Totals |
|---|---|---|---|
| 21165 | 06/24/2008 | $50,000.00 | $50,000.00 |
| 21166 | 07/02/2008 | $100,000.00 | $150,000.00 |

## Dividends

No Dividends to display

© 2006-2008 Wextrust Capital LLC.  All information provided as-is and is property of Wextrust Capital.

Investor Statement

guest1 >> Logout

WEXTRUST
CAPITAL

View ▲

625 Paragon Investors, LLC

AccountID:       51.
As of Date:      7/22/2008

**Investor Statement Mailing Address**
JOSEPH KELLY & JANINE PRYBYLA

[Edit Info]

**Account Officer**
Michelle Cote

Norfolk, VA ·

Investor Statement

## Capital
## Investments/Divestments

| Transaction ID | Date of Investment | Amount | Totals |
|---|---|---|---|
| 21216 | 07/10/2008 | $100,000.00 | $100,000.00 |

## Dividends

No Dividends to display

© 2006-2008 Wextrust Capital LLC. All information provided as-is and is property of Wextrust Capital.

**78**



# OFFICE OF THE ATTORNEY GENERAL
## STATE OF ILLINOIS

**Lisa Madigan**
ATTORNEY GENERAL

June 4, 2008

**Securities and Exchange Commission**
**175 W. Jackson, 9th Floor**
**Chicago, IL 60604**

SECURITIES & EXCHANGE COMMISSION
R E C E I V E D

JUN 0 6 2008

CHICAGO REGIONAL OFFICE

Re: Wextrust Capital LLC
File No: 2008-CONSC-00219301

Dear Sir/Madam:

The Consumer Protection Division of the Attorney General's Office has received a consumer complaint about a business whose practices you may have an interest in reviewing. This complaint is being sent to you for your information and review only and the consumer who filed this complaint with the Illinois Attorney General's Office has not been notified that we have copied your offices on the attached complaint.

Thank you for your attention.

Sincerely,

ATTORNEY GENERAL
State of Illinois

*Dolores Rodman*

Dolores Rodman
Citizen's Advocate
Consumer Protection Division
(312) 814-3811

jsm



# LISA MADIGAN
Illinois Attorney General
Consumer Fraud Bureau
500 South Second Street
Springfield, IL 62706
217-782-1090
1-800-243-0618 (Toll free in IL)
TTY: 1-877-844-5461
www.IllinoisAttorneyGeneral.com

ATTORNEY GENERAL OFFICE
MAY 2 1 2008
CONSUMER FRAUD
CHICAGO

Office Use Only

CLMS: 219381

AG:

Fill out the form online, then print and mail to the address above. Include copies (no originals please) of any supporting documents.

| YOUR INFORMATION: | NAME OF SELLER OR PROVIDER OF SERVICE: |
|---|---|
| **Name: Mr., Mrs., Ms. (circle one)**<br>Larry J. Herbst | **Name:**<br>Wextrust Capital, LLC |
| **Address:**<br>6000 Olde Hartley Place | **Address:**<br>333 W. Wacker Drive, Suite 1600 |
| **City:** Glen Allen  **State:** Va.  **Zip code:** 23060  **County:** Henrico | **City:** Chicago  **State:** Ill.  **Zip code:** 60606 |
| **Your Telephone Number:**<br>Daytime ( 804  ) 468 1697<br>Evening ( 804  ) 270 2567 | **Telephone** (312 ) 881 6000<br>**Website:** |
| **Your e-mail address (optional):**<br>ran4-1nan5-4zrich@verizon.net | **Additional seller or provider of service involved in transaction:**<br>**Name:** Michael Mostofsky |
| **Are you a senior citizen?**<br>Yes ✓  No ☐ | **Address:** 333 W. Wacker Drive, Suite 1600 |
| **Who referred you to this office?**<br>Myself | **City:** Chicago, Ill. 60606  **State:**  **Zip code:**<br>**Telephone** (561 ) 702 0097<br>**Website:** |

Has this matter been submitted to another government agency, an arbitration service, or to an attorney?  Yes ☐ No ✓
If yes, please give name, address, telephone number #. _____
Is court action pending?  Yes ☐  No ☐

## INFORMATION ABOUT THE TRANSACTION

| Date of Transaction:<br>May 10, 2005 | Did you sign a contract?  Yes ✓ No ☐<br>(If yes, please attach a copy) | Date contract was signed:<br>May 10, 2005 |
|---|---|---|

Was the product or service advertised?  Yes ☐  No ☐  When?  _____  (Please attach a copy of the advertisement, if available)

**How was the service advertised?**
- • Newspaper/magazine
- • Radio advertisement
- • Television advertisement
- • Internet advertisement
- • E-mail solicitation
- • Direct mail solicitation
- • Telephone solicitation
- • Yellow pages of the telephone book
- • Facsimile solicitation
- • Door-to-door solicitation
- • Display at merchant's place of business
- • Display at a trade show/convention, etc.
- • Other  Offering Momorandum

Total Cost of product/service: $ 50,000.00

Amount paid to date/down payment: $ 50,000.00

Method of payment (check one) (Please attach a copy)
Cash ☐  Check ✓  Money Order ☐  Credit Card ☐  Debit Card ☐ Bank Draft ☐
Wire Transfer ☐  Automatic Debit ☐  Other

*If you paid with a credit card, have you contacted your credit card company to register a dispute?*  Yes ☐  No ☐

*(Under the Federal Fair Credit Billing Act, you have 60 days from the time that you receive your statement to dispute the charge.)*

| Where did the transaction take place? | Have you complained to the company or individual? |
|---|---|
| • At my home | Yes ☑  No ☐ |
| • Over the telephone | |
| • By mail | If yes, provide name and phone number of the individual(s): |
| • Over the Internet | |
| • Trade show/convention/home show | Joe Shereshevsky 757 213 5213/732 904 3368-c |
| • At the firm's place of business | |
| • By facsimile | Barry Tennant 1-888-293-9878 |
| • Other (please specify ) By mail | |
| • There was no transaction | Michael Mostofsky 757 213 5213/561 702 0097-c |

**FOR COMPLAINTS REGARDING MOTOR VEHICLES, PLEASE COMPLETE THIS BOX:**

| Make: | Model: | Year: | New:  Yes ☐ No ☐ | As-Is:  Yes ☐ No ☐ |
|---|---|---|---|---|
| Warranty: Yes ☐ No ☐ Expiration Date: | Name of Extended Warranty: | Purchase Date: | Current Mileage: | Mileage at Purchase: |

Briefly describe the transaction and your complaint. You may use additional sheets if necessary. **Please attach copies of all contracts, letters, receipts, cancelled checks (front and back), advertisements, or any other documents that relate to your complaint. PLEASE DO NOT SEND ORIGINALS.**

Wextrust has many REITs and financial products. The REIT I am invested in is First Wyoming Plaza, LLC. Per the Offering Memorandum I am to receive a monthly distribution of $500 per month. During the first year I regularly received these distributions within 2 or 3 weeks after the end of the month.

However, for the past several months these distributions have been coming later and later. They are now arriving up to 6 weeks after the month and I'm starting to smell a rat. I have tried but failed to get any plausible answer as to why the distributions are being delayed from Wextrust. My "account executive" Joe Shereshevsky, refuses to return my calls (757 213 5213) (732 904 3368-c).My previous "account executive" Mike Mostofsky, refuses to return my calls ( 757 213 5213, 561 702 0097-c)

The Wextrust "investor relations" person in Chicago, Barry Tennant (1-888-293-9878), has given me terse, unsatisfactory information. When my Feb. distribution was not received until April 14, 2008, Mr. Tennant said that it was due to "the tax season and our resources are strained". "Our internal process is 'under review'".

As of today, May 13, the March distribution has not been received. I corresponded with Mr. Tennant by email regarding the March distribution and received the two replies included. These guys are smooth and have a great line when they're trying to get you to invest, always returning calls 24/7. Now, they avoid calls and provide no plausable explanation to investors. This is smelling like a giant PONZI scheme. My belief is that Wextrust could be playing a huge, financial shell game. Their financial situation may be so bad that they're delaying distributions to earn the float, and paying our late distributions out of new investors dollars. I fear their house of cards is about to collapse, leaving investors holding the bag.

I sense something is very wrong here. I urge you to conduct an immediate investigation into the finances of Wextrust Financial,LLC.

What form of relief are you seeking? (E.g. exchange, repair, money back, product delivery, etc.)
Either payments no later than the 20th of the month following the distribution month, or a complete and immediate return of $50,000.

**READ THE FOLLOWING BEFORE SIGNING BELOW:**

In filing this complaint, I understand that the Attorney General is not my private attorney, but rather enforces laws designed to protect the public from misleading or unlawful business practices. I also understand that if I have any questions concerning my legal rights or responsibilities, I should contact a private attorney. I have no objection to the contents of this complaint being forwarded to the business or the person the complaint is directed against, unless box checked below. The above complaint is true and accurate to the best of my knowledge.

Signature: _____     **Date:** May 13, 2008

• • Check here if you only want to notify our office of your concerns and do not want a mediation process initiated.

**Please print and send the completed form to the address at the top of this complaint form. Incomplete forms may be returned.**

ATTORNEY GENERAL
CONSUMER PROTECTION
MAY 19 2008
SPRINGFIELD, ILLINOIS
Assigned to _____

# W

**WEXTRUST CAPITAL**

333 W. WACKER, SUITE 1600
CHICAGO, IL 60606
(312) 881-6000
FAX (312) 881-6001
www.wextrust.com

June 28, 2005

Dear Investor

Attached are copies of the following fully executed agreement for your files:

- Subscription Agreement for First Wyoming Investors, LLC
- Operating Agreement for First Wyoming Investors, LLC

Please feel free to contact me if you have any questions regarding your investment account.

Best regards,

Jordan Lex
Investment Services

enclosures

**Verizon Webmail**

**From:**    "Bryan Tennant" <BTennant@wextrust.com>
**To:**      ran4-1nan5-4zrich@verizon.net
**Date:**    05/01/2008 11:50:52 CDT
**Subject: RE: March check**

Thank you for your email. We expect distribution checks to be mailed within the next 7 to 10 days. Best Regards,

**WexTrust Capital Investor Services**

Tel: 888 . 293 . 9878

Fax: 312 . 881 . 6001

333 W. Wacker Dr. Ste. 1600

Chicago, IL 60606

www.wextrust.com

-----Original Message-----
**From:** ran4-1nan5-4zrich@verizon.net
[mailto:ran4-1nan5-4zrich@verizon.net]
**Sent:** Wednesday, April 30, 2008 5:05 PM
**To:** Bryan Tennant; Bryan Tennant
**Subject:** March check

Bryan,

It's April 30 and the check for the First Wyoming March distrubition has

not arrived?
This e-mail transmission may contain information that is proprietary, privileged and/or confidential and is intended exclusively for the person(s) to whom it is addressed. Any use, copying, retention or disclosure by any person other than the intended recipient or the intended recipient's designees is strictly prohibited. If you are not the intended recipient or their designee, please notify the sender immediately by return e-mail and delete all copies.

12/2?/04  14:14 FAX 312 583 1700          GARFIELD & MEREL LTD.                    ☒036

*See PAGES 4 AND 8*

# OPERATING AGREEMENT
# OF
# First Wyoming Investors, LLC

**THIS OPERATING AGREEMENT** is entered into as of this December 14, 2004 by and among the persons listed on Schedule 1.8 to this Agreement, as such Schedule may be constituted from time to time.

## RECITALS

In consideration of the mutual covenants of the parties hereinafter set forth, and other good and valuable consideration, the receipt, and sufficiency of which are acknowledged, the parties agree as follows:

## ARTICLE I

## DEFINITIONS

As used in this Agreement, the following terms shall have the following meanings:

1.1    "Act" means the Illinois Limited Liability Company Act, as is may be amended from time to time, and any successor statute thereto.

1.2    Affiliate means any person or entity which directly or indirectly through one or more intermediaries controls, is controlled by or is under common control with a Member. For purposes hereof, the terms "control", "controlled", or "controlling" shall include, without limitation, (i) the ownership, control or power to vote ten percent (10%) or more of (x) the members or (y) the Company or beneficial interests of any such person or entity, as the case may be, directly or indirectly, or acting through one or more persons or entities, (ii) the control in any manner over the managing member(s) or the election of more than one director or trustee (or persons exercising similar functions) of such person or entity, or (iii) the power to exercise, directly or indirectly, control over the management or policies of such person or entity.

1.3    "Agreement" means this Operating Agreement, as amended from time to time.

1.4    "Code" means the Internal Revenue Code of 1986 and all regulations promulgated there under, as they may be amended from time to time, and any successors thereto.

1.5    "Company" means the limited liability company formed pursuant to this Agreement, as it may from time to time be constituted.

1.6    "Interest" means a Member's share of the profits and losses of the company, a Member's right to receive distributions of the Company's assets and all of the other rights and interests of a Member of the Company.

1.7    "Majority Approval" means (a) approval in writing by a majority of the

1

12/28/04  14:14 FAX 312 583 1700        GARFIELD & MEREL LTD.                                    Ø037

Members or (b) approval by a majority of Members voting at a meeting at which not less than a majority of Members are present.

1.8    "Member" means an owner of an Interest with the rights and obligations specified in this Agreement, as such owners may be constituted from time to time.

1.9    "Participating Percentage" means the percentage assigned to each Member as set forth in Schedule 1.9 attached hereto and as amended from time to time.

## ARTICLE II

## FORMATION OF LIMITED LIABILITY COMPANY

Effective upon the filing of Articles of Organization for the Company in the form attached to this Agreement as Exhibit 2.1, the parties hereby form the Company under the provisions of the Act and, except as herein otherwise expressly provided, the rights and liabilities of the Members shall be as provided in the Act. The parties agree to take such actions as are necessary or appropriate to effect the filing of such Articles.

## ARTICLE III

## NAME

The business of the Company shall be conducted under the name First Wyoming Investors, LLC, or such other name as may be determined with Majority Approval.

## ARTICLE IV

## NATURE AND PURPOSE OF BUSINESS

The sole purpose of the Company is to acquire, own, hold, operate, and maintain 70% of all rights, title and interest in and associated with First Wyoming Plaza, LLC (the "LLC Interests"), which in turn owns 100% of certain real estate property known as the Rogers Plaza Town Center, a retail center located in Wyoming, Michigan (the "Property"), together with such other activities as may be necessary or advisable in connection with the ownership of the Interests. Notwithstanding anything contained herein to the contrary, the Company shall not engage in any business, and it shall have no purpose, unrelated to the Interests and shall not acquire any real property or own assets other than those related to the Interests and/or otherwise in furtherance of the purposes of the Company.

## ARTICLE V

## MEMBERS

The names and addresses of the Members are as set forth in Schedule 1.8.

First Wyoming Managers, LLC shall own 1% of the Company and be responsible for the daily operations of the company.    A total of 99% of the membership units shall be owned in accordance with the amounts invested as set forth in Schedule 1.8. "Limited Member" shall mean any member other than First Wyoming Managers, LLC.

Section 5.1    Members Fees:
  a.     In general unless expressly approved by all the members or as approved through a budget, no member shall be paid any compensation by the company for

3

12/28/04  14:14 FAX 312 583 1700        GARFIELD & MEREL LTD.                    Ø039

services to the company, or for overhead or general administrative expenses.

Section 5.2    Member/Investor Rights Summary:

The following summarizes the investor rights of First Wyoming Investors, LLC and are documented in the operating agreements of First Wyoming Plaza, LLC and First Wyoming Managers, LLC.

a.    A Limited Member does not have to provide or participate in any guarantees associated with the financing or operation of the Property.

b.    Subject to distributions for debt service to Republic Bank ("Senior Lender") and RAIT Partnership, L.P. ("Mezzanine Lender"), a Limited Member will come out first on any distribution, by percentage ownership, as set out below, whether out of the Net Operating Cash Flow (as defined below), or out of the proceeds from selling the subject property.

c.    Limited Members are informed, on a monthly basis, through a printed report, of the financial performance of the subject property. Periodic meetings will be held with the Limited Members to discuss any suggestions or concerns they may have on the performance of the Rogers Plaza Town Center.

d.    Limited Members will have no direct ownership interest in the subject property, but will own 70% of the entity which owns Rogers Plaza. First Wyoming Investors, LLC will receive the greater of a 12% annual preferred return, or 70% of the available cash flow from the property after the payment of operating expenses, reserves, and debt service. Debt service is defined as payments to Republic Bank (Senior Lender) and RAIT Partnership, L.P. (Mezzanine Lender). Together, the Senior Lender and Mezzanine Lender are hereinafter referred to as ("Lender"). The investors will also receive the greater of 70% of the net proceeds from a capital event (sale or refinance of the property), or a minimum annual "look-back" IRR of 20% on their investment.

e.    The Operating Agreement for First Wyoming Plaza, LLC shall provide for the distribution structure as detailed in this Operating Agreement.

f.    The Limited Members may sell their units in the Company without the consent of the Managing Member.

g.    The Limited Members may request WexTrust Capital to introduce the investors to a potential buyer or purchase their units with a 90-day notice provision. Notwithstanding the above, WexTrust Capital will arrange an introduction to purchase units or purchase the investor units on a best-efforts basis without a fee due to WexTrust Capital.   The Limited Members have pledged their interests in First Wyoming Plaza, LLC to RAIT Partnership, L.P. as collateral.

h.    Upon majority approval of the Limited Members, the Limited Members may elect to require management of First Wyoming Plaza, LLC as well as First Wyoming Investors, LLC to use a different third party accounting firm of their choosing  to complete quarterly and annual financial statements, as well as to complete any audits for the property, as is deemed reasonably appropriate, provided that the accounting firm currently completing such work fails to produce reports that are standard within the industry and fails to produce reports in a timely manner.

i.    Upon a vote of the majority of the Limited Members, and subject to the rights of RAIT Partnership, L.P. pursuant to that certain collateral assignment of Property Management Agreement by and between RAIT Partnership, L.P., First Wyoming Plaza, LLC, and the Property Manager, the Limited Members may elect to require

4

First Wyoming Plaza, LLC to hire a new third-party property and leasing management company if, and only if, a) the investors have not received their required return and any other requirements as stated within the operating agreements, including the operating agreements of First Wyoming Plaza, LLC and any agreements between Wexford Equity Partners, LLC and First Wyoming Plaza, LLC (or between Wexford Equity Partners and First Wyoming Investors, LLC) have not been completed in accordance with the terms as herein stated and b.) the third-party management has the same or better qualifications as the current management and is experienced managing properties similar to the subject in similar demographics.

## ARTICLE VI

### TERM

The Company shall continue until October 31, 2054 unless sooner terminated or extended as hereinafter provided.

12/28/04  14:15 FAX 312 583 1700     GARFIELD & MEREL LTD.                    ☑041

### ARTICLES VII

## PRINCIPAL PLACE OF BUSINESS

The principal place of business of the Company shall be 318 West Adams Street, Chicago, Illinois, unless and until changes as provided in this Agreement.

### ARTICLE VIII

## CAPITAL AND CONTRIBUTIONS

The initial capital of the Company shall be as shown on Schedule 1.8. Each of the Members is, contemporaneously with the execution and delivery of this Agreement, contributing to the capital of the Company in cash the amounts as indicated in Schedule 1.8.

### ARTICLE IX

## OPERATING DISTRIBUTIONS

9.1     The Company shall distribute to the members 100% of Net Operating Cash Flow in accordance with their percentage ownership as indicated in Schedule 1.8. The company shall receive distributions through its 70% ownership of First Wyoming Plaza, LLC which in turn owns 100% of certain real estate known as Rogers Plaza Town Center, Wyoming, Michigan. Net Operating Cash Flow of the Rogers Plaza Town Center property shall be distributed as follows according to the First Wyoming Plaza, LLC Operating Agreement.

   i.     The Company shall entitle First Wyoming Investors, LLC to the greater of 70% of the net cash flow from operations or a minimum 12% annual preferred return distributed monthly.

   ii.    Net Operating Cash Flow shall be defined as the net proceeds from the Property's operations after payment of operating expenses, TI/LC's, reserves, and debt service.

   iii.   Annual preferred return shall be defined as the minimum rate of return to be paid to the Limited Members before the Managing Members start to take their share of the profits from Net Operating Cash Flow. The preferred return is a preferential distribution of partnership cash flow to an investor with respect to capital contributed to the partnership by the investor.

   iv.    Should Net Operating Cash Flow exceed the amount of the preferred payment, the excess distributions (after distribution of the monthly preferred payment) will be distributed quarterly.

   v.     First Wyoming Managers, LLC shall receive 30% of the cash flow from operations.

6

vi.   First Wyoming Investors, LLC will receive a "catch up" on their minimum preferred return to the extent they did not receive the full amount in any given month. The catch up of the unpaid minimum return as herein stated shall be paid to First Wyoming Investors, LLC prior to any operating distributions to First Wyoming Managers, LLC.

vii.   The Company acknowledges that a mezzanine loan has been provided to First Wyoming Managers, LLC by RAIT Partnership, L.P. The operating distributions structure, as detailed in this Agreement, is subject to the provisions as detailed in Article 22.3 (J) and the distribution provisions of the Operating Agreement of First Wyoming Managers, LLC and First Wyoming Plaza, LLC.

### ARTICLE X

### ALLOCATIONS OF PROFITS AND LOSSES

Profits and Losses shall be allocated in accordance with the Members' ownership percentage interests subject to any provisions in the operating agreement as herein stated.

### CAPITAL EVENT PROCEED ALLOCATIONS

Net proceeds from a capital event shall be distributed according to the Members' ownership percentage interests subject to the following:

a.   A Capital Event shall be defined as a sale or refinance of the property owned by First Wyoming Plaza, LLC.

b.   Net Proceeds shall be defined as proceeds less any reasonable third-party sales costs, Outstanding Debt (either secured or unsecured), unpaid minimum return due to First Wyoming Investors, LLC and unpaid principal investment contributed by First Wyoming Investors, LLC (and/or additional capital contributed by First Wyoming Managers, LLC).

c.   Outstanding Debt shall be defined as the amount of the payoff required to completely satisfy a mortgage loan or other loan, or lien on the Property. The payoff will include, but be limited to, the principal balance on the loan, unpaid interest, late charges, etc of both the senior loan and mezzanine loan.

d.   First Wyoming Investors, LLC will receive the greater of 70% of the net proceeds from a capital event, or a minimum "look-back" IRR of 20% on their investment. At reversion, in the event a minimum "look-back" IRR of 20% is not achieved by First Wyoming Investors, LLC, First Wyoming Managers, LLC's percentage distribution of the net proceeds from a capital event may be reduced until First Wyoming Investors, LLC achieves a minimum "look-back" IRR of 20%.

7

## ARTICLE XI

## BOOKS AND RECORDS

The Company books and records shall be kept on a monthly cash and annual accrual basis, unless a different accounting method is permitted under applicable law and the Members by Majority Approval elect to employ such method.

Each Member shall receive a copy of the annual financial statements of the Company compiled by its accountants promptly after they are available.

*This has Neve[r] Been done !*

## ARTICLE XII

## FISCAL YEAR

The fiscal year of the Company shall end on December 31.

## ARTICLE XIII

## COMPANY FUNDS

The funds of the Company shall be deposited in such bank, money market, brokerage, operating or other account or accounts, or invested in such interest-bearing or non-interest-bearing investments, as shall be designated by the majority of the limited members. All withdrawals from any such bank or other accounts shall be made by the authorized agent or agents of the Company as designated by the Managing Member.  If the requirements of First Wyoming Managers, LLC, the managing member of the Company or Manager of First Wyoming Plaza, LLC have not been meet as stated within this operating agreement, the majority of the limited members may choose a new bank account for which all excess funds will be deposited subject to the requirements of the first mortgage lender and RAIT. Company funds shall be separately identifiable from and not commingled with those of any other person.

## ARTICLE XIV

## RIGHTS AND DUTIES OF MEMBERS: RESIGNATION

14.1 The Members shall have no personal liability whatever, whether to the Company, to any of the Members or to the creditors of the Company, for the debts of the Company or any of its losses.

14.2 Except as provided in Article XVI, no Member shall be permitted to resign voluntarily from the LLC at any time. If a Member resigns voluntarily from the Company

8

12/28/04  14:15 FAX 312 583 1700        GARFIELD & MEREL LTD.                    ☒044

other than as provided in Article XVI, the Company shall be entitled to offset the damages resulting from such withdrawal against amounts otherwise distributable to the resigned Member pursuant to Article IX.

## ARTICLE XV

### Intentionally Omitted

9

## ARTICLE XVI

### TRANSFER OF MEMBERSHIP INTEREST

16.1 A Member shall not voluntarily assign, sell, transfer (except for transfers occurring by reason of the death of any Member), its interest, without Majority Approval. In case of any permitted transfer, the instrument of transfer shall be in form and substance satisfactory to counsel to the Company. The Company shall not be obligated to make distributions or allocations of tax incidents to or otherwise recognize the transferee of an Interest unless and until the Company has received copies of documents evidencing such transfer (whether voluntary or involuntary) in form satisfactory to its counsel.

16.2 Unless otherwise agreed by the transferee and transferor of an Interest, the transferee shall automatically be admitted as a Member to the extent of the transferred Interest.

16.3 Notwithstanding the foregoing, no voluntary sale or assignment of an Interest may be made if the sale or assignment would result in the termination of the Company under the Code, and no such sale or assignment may be made unless the Company receives an opinion of counsel, satisfactory in form and substance to counsel to the Company, to the effect that the transfer is covered by proper exemptions from registration under applicable securities laws; provided, that the requirement of such opinion may be waived by the Administrative Member or with Majority Approval.

## ARTICLE XVII

### CAUSES OF DISSOLUTION OF THE COMPANY

17.1 The happening of any of the following events shall work an immediate dissolution of the Company:

(a)     The disposition of all or substantially all of the assets of the Company other than cash and marketable securities;

(b)     Approval in writing by a majority of the Members or approval by such number of Members voting at a meeting; or

(c)     The expiration of the term of the Company as provided in Article VI of this Agreement.

Members shall not be required to contribute funds upon a capital call by the Company's Managing Member.

17.2 Without limiting the generality of the foregoing, the death, retirement, bankruptcy, court declaration of incompetence with respect to, or dissolution of, a Member, or the occurrence of any other event that terminates the continued membership of a Member, shall not precipitate

10

12/28/04   14:15 FAX 312 583 1700          GARFIELD & MEREL LTD.                                    ☑048

the dissolution of the Company.

## ARTICLE XVIII

### ADDITIONAL PROVISIONS
### CONCERNING DISSOLUTION OF THE COMPANY

18.1 In the event of the dissolution of the Company for any reason, a liquidator or a liquidating committee selected with Majority Approval shall wind up the affairs of the Company or, in the absence of and pending such selection, the Administrative Member may so act. The Members shall continue to share distributions, profits, and losses during the period of liquidation in the same proportion as before the dissolution. The liquidator or liquidating committee shall have full right and unlimited discretion to determine the time, manner, and terms of any sale or sales of Company property pursuant to such liquidation, subject to any limitations determined by Majority Approval when the liquidator or liquidating committee was appointed. The liquidator or liquidating committee shall be entitled to receive such compensation in connection with the winding up of the Company as is determined by Majority Approval.

18.2 Following the payment of all debts and liabilities of the Company and all expenses of liquidation, and subject to the right of the liquidator or liquidating committee to set up such reserves as it may deem reasonably necessary for any contingent or unforeseen liabilities or obligations of the Company (any remainder of which shall be distributed as provided below when the liquidator or liquidating committee determines that such reserves are not longer required), the proceeds of the liquidation and any other funds of the Company shall be distributed (a) first, to Members for the return of their contributions, (b) second, to former Members for distributions owed on account of their Interests as provided in Section 9.2 hereof and (c) third, to the Members pro rata in accordance with their Participating Percentages.

18.3 Each Member shall look solely to the assets of the Company for all distributions with respect to the Company and for the return of his/her capital contribution and shall have no recourse therefore against any other Member. The Members shall not have any right to demand or receive property other than cash upon dissolution and termination of the Company or to demand the return of their capital contributions to the Company prior to dissolution and termination of the Company.

18.4 Upon the completion of winding up of the Company, the Administrative Member (or, if the Administrative Member shall fail to act, any Member with Majority Approval) shall have the authority to execute and record Articles of Dissolution for the Company as well as any and all other documents required to terminate the Company.

## ARTICLE XIX

### NOTICES

All notices and demands required or permitted under this Agreement shall be in writing and may be sent by U.S. mail, certified or registered mail, postage prepaid, overnight courier or personal delivery to the Members at their addresses as shown from time to time on the records of the Company. Any Member may specify a different address by notifying the Administrative Member in writing of such different address. Such notices shall be deemed given three business days after mailing, the business day after deposit with an overnight courier for next business day delivery or when delivered in person, as the case may be.

12

## ARTICLE XX

### RESTRICTIONS AND COVENANTS

20.1 Anything in this Agreement to the contrary notwithstanding, no Member shall have the authority to perform any act in respect of the Company in violation of any (i) applicable laws or regulations or (ii) any agreement between the Company, First Wyoming Plaza, LLC or First Wyoming Managers, LLC, and the Lender. .

20.2 Anything in this Agreement to the contrary notwithstanding, so long as any indebtedness remains outstanding by the Company, First Wyoming Plaza, LLC or First Wyoming Managers, LLC to the Lender, the Company shall not:

(a)    make any loans to the Manager or its Affiliates;

(b)    except as permitted by the Lender in writing, sell, encumber (except with respect to the Lender) or otherwise dispose of all or substantially all of the properties of the Company (a sale or disposition will be deemed to be "all or substantially all of the properties of the Company" if the sale or disposition includes the Property or if the total value of the properties sold or disposed of in such transaction and during the twelve months preceding such transaction is 66-2/3% or more in value of the Company's total assets as of the end of the most recently completed Company fiscal year);

(c)    dissolve, wind-up, or liquidate the Company;

(d)    merge, consolidate, or acquire substantially all the assets of another person or entity;

(e)    change the nature of the business conducted by the Company; or

(f)    except as permitted by the Lender in writing, amend, or modify this Agreement.

13

20.3 All funds of the Company shall be deposited in such checking accounts, savings accounts, time deposits, or certificates of deposit in the Company's name or shall be invested in the Company's name, in such manner as shall be designated by the Managing Member from time to time. Company funds shall not be commingled with those of any other person or entity. Company funds shall be used by the Managing Member only for the business of the Company.

20.4 Title to Company assets shall be held in the Company's name.

20.5 The Company shall not, without the affirmative vote of 100 percent of the Members institute proceedings to be adjudicated bankrupt or insolvent; or consent to the institution of bankruptcy or insolvency proceedings against it; or file a petition seeking, or consent to, reorganization or relief under any applicable federal or state law relating to bankruptcy; or consent to the appointment of a receiver, liquidator, assignee, trustee, sequestrator (or other similar official) of the Company or a substantial part of its property; or make any assignment for the benefit of creditors; or admit in writing its inability to pay its debts generally as they become due; or take any action in furtherance of any such action.

20.6 The Company shall have no indebtedness or incur any liability other than accrued expenses incurred in the ordinary course of business of operating the Company.

20.7 The Company shall not terminate solely as a consequence of the bankruptcy, insolvency, appointment of a receiver, liquidator, assignee, trustee or sequestrator (or other similar official) of a member of the Company or a substantial part of such member's property, or assignment for the benefit of its creditors, or an admission in writing of the inability to pay its debts generally as they become due, or any similar action, of one or more of the members, so long as there remains a solvent manager of the Company.

## ARTICLE XXI

## ADMISSION OF NEW MEMBERS; AMENDMENT OF AGREEMENT

21.1 New Members may be admitted to the Company with Majority Approval on such terms and conditions as are determined with Majority Approval; provided, that no admission that would reduce the Participating Percentage of a Member on any basis other than pro rata in accordance with the Participating Percentages of all Members may be effected without the consent of the affected Member.

21.2 This Agreement may be amended with Majority Approval; provided, that no amendment that would reduce the Participating Percentage of a Member on any basis other than pro rata in accordance with the Participating Percentages of all Members may be effected without the consent of the affected Member.

14

## ARTICLE XXII

### SPE PROVISIONS

### POWERS AND DUTIES

22.1 Notwithstanding any contrary or inconsistent provision in this operating agreement or any other document or instrument governing the affairs of the Company or any provision of law that otherwise so empowers the Company, so long as:

a.      The first mortgage loan in the initial principal amount of $17,700,000.00 to First Wyoming Plaza, LLC (the "Senior Loan") and any other obligations secured by that certain Mortgage in favor of Republic Bank, Ann Arbor, MI (or other bank as the Managing Member shall designate) as lender (the "First Mortgage") remain outstanding and not discharged in full, without the prior written consent of the holder of the Mortgage (the "Senior Lender"), and

b.      The mezzanine loan in the initial principal amount of $3,000,000.00 to First Wyoming Managers, LLC (the "Mezzanine Loan") and any other obligations secured by an assignment of the membership interests in the Company owned by First Wyoming Managers, LLC and First Wyoming Investors, LLC in favor of RAIT Partnership, L.P., Philadelphia, PA   as lender (the "Mezzanine Loan") remain outstanding and not discharged in full, without the prior written consent of the Mezzanine Lender.

The Managing Member (as hereinafter defined) and the Company shall have no authority to:

(i)      conduct its affairs in any manner contravening or inconsistent with the provisions of this Article XXII;

(ii)     dissolve or liquidate the Company or consent to any such dissolution or liquidation;

(iii)    sell or lease, or otherwise dispose of all or substantially all of the assets of the Company; or

(iv)     amend, modify, or alter this Agreement.

Additional leasing and improvement costs will be funded by an earn-out provided by the bank of up to $1,800,000. This will pay the costs for tenant improvements, leasing commissions and construction costs for new buildings located on the "out-lots" of the property.

### TITLE TO COMPANY PROPERTY

22.2 All property owned by the Company shall be owned by the Company as an entity and, insofar as permitted by applicable law, no Member shall have any ownership interest in any

Company property in its individual name or right, and each Member's interest in the Company shall be personal property for all purposes. The foregoing provisions shall govern over any contrary or inconsistent provision in this operating agreement or any other document or instrument governing the affairs of the Company.

## SEPARATENESS/OPERATIONS MATTERS

22.3  The Company has heretofore conducted and shall at all times hereafter conduct its business and operations in strict accordance and compliance with the following provisions:

(a)    The Company has not and shall not own any asset or property other than (i) interests in First Wyoming Plaza, LLC, the entity that owns the Property, and (ii) incidental personal property necessary for the ownership or operation of the Property;

(b)    The Company has not and shall not engage in any business or activity other than the ownership, management, and operation of the Company. The Company has conducted and operated, and will conduct and operate, its business as presently conducted and operated;

(c)    The Company has not and shall not enter into or be a party to any transaction, contract or agreement with any guarantor of the debt secured by the Mortgage or any part thereof (a "Guarantor") or with any Affiliate, except upon terms and conditions that are intrinsically fair and substantially similar to those that would be available on an arms-length basis with unrelated third parties;

(d)    The Company has not and shall not make any loans or advances to any Guarantor, Affiliate or other person or entity;

(e)    The Company has remained and shall remain solvent and shall pay its debts from its assets as the same shall become due;

(f)    The Company has done and shall do all things necessary to preserve its existence, and the Company has not and shall not, nor shall the Company permit a Guarantor to amend, modify or otherwise change the partnership certificate, partnership agreement, articles of incorporation and bylaws, operating agreement, trust or other organizational documents of the Company or a Guarantor in a manner which would adversely affect the Company's existence as a single-purpose entity, without the prior written consent of Lender;

(g)    The Company has maintained and shall maintain its financial statements, accounting records, books and records, bank accounts and other entity documents separate from those of its Affiliates, any constituent party of the Company or any other person or entity, and the Company has filed and will file its own tax returns. The Company has maintained and shall maintain its books, records, resolutions and agreements as official records;

(h)    The Company has been and shall be, and at all times has held and will hold itself out to the public as, a legal entity separate and distinct from any other entity (including any Affiliate, any constituent party of the Company or any Guarantor), shall correct any known misunderstanding regarding its identity or status as a separate entity, has conducted and shall conduct business in its own name, has held and shall hold its assets in its own name, has maintained and shall maintain and utilize a separate telephone number and separate stationery,

16

invoices and checks, has allocated and shall allocate fairly and reasonably any overhead for shared office space and has not and shall not identify itself as a division or part of any Affiliate or other person or entity, or any Affiliate or other person or entity as a division or part of the Company.

(i)      The Company acknowledges that the Mezzanine Loan has been provided to First Wyoming Managers, LLC by RAIT Partnership, L.P., and was made for the benefit of the acquisition. The mezzanine loan is be secured by an assignment of 100% of the partnership interests of both First Wyoming Managers, LLC and First Wyoming Investors, LLC in First Wyoming Plaza, LLC. RAIT Partnership, L.P. shall receive Interest Payments (as defined in the Loan Agreement), and the repayment of the outstanding balance of the Mezzanine Loan (in the case of a capital transaction) ahead of any distributions or other payments to the Members of First Wyoming Plaza, LLC.

## EFFECT OF BANKRUPTCY, DEATH OR INCOMPETENCY OF A MEMBER; TERMINATION EVENT

22.7 The following provisions shall govern over any contrary or inconsistent provision in this operating agreement or any other document or instrument governing the affairs of the Company:

(a)    The bankruptcy, death, dissolution, liquidation, termination or adjudication of incompetency of a member shall not cause the termination or dissolution of the Company and the business of the Company shall continue. Upon any such occurrence, the trustee, receiver, executor, administrator, committee, guardian or conservator of such member shall have all the rights of such member for the purpose of settling or managing its estate or property, subject to satisfying conditions precedent to the admission of such assignee as a substitute member. The transfer by such trustee, receiver, executor, administrator, committee, guardian or conservator of any membership interest in the Company shall be subject to all of the restrictions, hereunder to which such transfer would have been subject if such transfer had been made by such bankrupt, deceased, dissolved, liquidated, terminated or incompetent member.

(b)    If notwithstanding the provisions of the foregoing subsection (a), a termination event occurs with respect to the Company, the vote of a majority-in-interest of the remaining member of the Company shall be sufficient to continue the life of the Company, and if the vote of a majority-in-interest of the remaining members is not obtained to continue the life of the Company upon a termination event, the Company shall nevertheless not dissolve or liquidate its assets without the consent of the Lender.

## ARTICLE XXIII

### MISCELLANEOUS

23.1 This Agreement constitutes the entire agreement between the parties relating to the subject matter hereof. It supersedes any prior agreement or understandings between them relating to the subject matter hereof, and it may not be modified or amended in any manner other than as set forth herein.

23.2 This Agreement and the rights of the parties hereunder shall be governed by and interpreted in accordance with the internal laws of the State of Illinois without regard to conflicts of law principles.

23.3 Except as herein otherwise specifically provided, this Agreement shall be binding upon and inure to the benefit of the parties and their legal representatives, heirs, administrators, executors, successors and assigns.

23.4 Captions contained in the Agreement are inserted only as a matter of convenience and in no way define, limit or extend the scope or intent of this Agreement or any provision thereof.

18

23.5 If any provision of this Agreement, or the application of such provision to any person or circumstance, shall be held invalid, the remainder of this Agreement, or the application of such provision to persons or circumstances other than those to which it is held invalid, shall not be affected thereby.

23.6 This Agreement may be executed in two or more counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument.

23.7 Each Member understands and acknowledges that he/her has had the opportunity to be represented by his/her own counsel in connection with the preparation, execution and delivery of this Agreement.

23.8 Whenever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in either the masculine, the feminine or the neuter gender shall include the masculine, feminine and neuter.

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first set forth above.

Wexford Equity Partners, LLC

By: _____

Print Name: Steve Byers, Manager

Date: _____12-15-04_____

First Wyoming Managers, LLC
By: Wexford Equity Partners, LLC, its Managing Member

By: _____

Print Name: Steve Byers, Manager

Date: _____12-15-04_____

19

**SCHEDULE 1.8**
**TO LIMITED LIABILITY COMPANY AGREEMENT OF**

| Name of Member Address City, State, Zip Code Telephone Number | Amount of Capital Contribution | Participating Percentage |
|---|---|---|
| First Wyoming Managers, LLC 318 W. Adams, Chicago, IL  Wexford Equity Partners, LLC 318 W. Adams, Chicago, IL | | |

20

## SCHEDULE 1.8
## TO LIMITED LIABILITY COMPANY AGREEMENT OF

| Name of Member<br>Address<br>City, State, Zip Code<br>Telephone Number | Amount of<br>Capital Contribution | Participating Percentage |
|---|---|---|
| First Wyoming Managers,<br>. LLC<br>318 W. Adams, Chicago, IL | | 1% |
| Wexford Equity Partners, LLC<br>318 W. Adams, Chicago, IL | | 99% |

21

## FIRST AMENDMENT & PARTICIPATION AGREEMENT TO OPERATING AGREEMENT OF FIRST WYOMING INVESTORS, LLC

This First Amendment & Participation Agreement to the Operating Agreement of First Wyoming Investors, LLC is made and entered into this _10_ day of _May_____, 200_5_.

This Amendment states that First Wyoming Managers, LLC, the sole Managing Member of First Wyoming Investors, LLC, shall give ___% ownership interest in First Wyoming Investors, LLC in consideration for receiving $_50,000____. The ownership rights are detailed in the prospectus dated October 20, 2004.

Net Operating Cash Flow of the Rogers Plaza Town Center property shall be distributed as follows according to the First Wyoming Plaza, LLC Operating Agreement.

i.  First Wyoming Investors, LLC is entitled to the greater of 70% of the net cash flow from operations or a minimum 12% annual preferred return distributed monthly.

ii. Net Operating Cash Flow shall be defined as the net proceeds from the Property's operations after payment of operating expenses, TI/LC's, reserves, and debt service.

iii. Annual preferred return shall be defined as the minimum rate of return to be paid to the Limited Members before the Managing Members start to take their share of the profits from Net Operating Cash Flow. The preferred return is a preferential distribution of partnership cash flow to an investor with respect to capital contributed to the partnership by the investor.

iv. Should Net Operating Cash Flow exceed the amount of the preferred payment, the excess distributions (after distribution of the monthly preferred payment) will be distributed quarterly.

v.  First Wyoming Investors, LLC will receive a "catch up" on their minimum preferred return to the extent they did not receive the full amount in any given month. The catch up of the unpaid minimum return as herein stated shall be paid to First Wyoming Investors, LLC prior to any operating distributions to First Wyoming Managers, LLC.

Net proceeds from a capital event shall be distributed according to the Members' ownership percentage interests subject to the following:

i.  A Capital Event shall be defined as a sale or refinance of the property owned by First Wyoming Plaza, LLC.

ii. Net Proceeds shall be defined as proceeds less any reasonable third-party sales costs, Outstanding Debt (either secured or unsecured), unpaid minimum return due to First Wyoming Investors, LLC and unpaid principal investment contributed by First Wyoming Investors, LLC (and/or additional capital contributed by First Wyoming Managers, LLC).

iii. Outstanding Debt shall be defined as the amount of the payoff required to completely satisfy a mortgage loan or other loan, or lien on the Property. The payoff will include, but be limited to, the principal balance on the loan, unpaid interest, loan prepayment penalties, late charges, etc., if any, of both the senior loan and mezzanine loan.

iv. First Wyoming Investors, LLC will receive the greater of 70% of the net proceeds from a capital event, or a minimum "look-back" IRR of 20% on their investment. At reversion, in the event a minimum "look-back" IRR of 20% is not achieved by First Wyoming Investors, LLC, First Wyoming Managers, LLC's percentage distribution of the net proceeds from a capital event may be reduced until First Wyoming Investors, LLC achieves a minimum "look-back" IRR of 20%.

Payments are based upon the individual investor's proportionate share of the $6,750,000 offering.

1

In Witness Whereof the Investment Entity/Individual _Larry J. Herbst_ has invested $ _50,000_ , as evidenced by a Cashier's Check or other good form of payment. If no payment has been received by the investor, then the investor is not entitled to any ownership interest and this amendment shall be null and void.

**Managing Member:**

First Wyoming Managers, LLC
By: Wexford Equity Partners, LLC, its Managing Member

By: _Steve Byers_

Steve Byers, Manager

Date: _06-22-05_

**Investor Entity/Individual:**

By: _Larry J. Herb_

Print Name: _LARRY J. HERBST_

Date: _5/10/05_

**Amount Contributed:**  _$ 50,000.00_

*Identify Members of the Investor Entity if Applicable and Capital Contributed.*

| Member Name | Capital Contribution | Participating Percentage |
|---|---|---|
| Larry J. Herbst | $50,000 | One (1) Unit |
| | | |
| | | |
| | | |

2