DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
Shalom Jacob
Shmuel Vasser

*Attorneys for the International Ad-Hoc Committee of Wextrust Creditors*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
SECURITIES AND EXCHANGE COMMISSION, :
                                                             :
                                    Plaintiff,               :
                                                             :    Case No. 08-07104 (DC)
                  -against-                                   :
                                                             :    ECF CASE
                                                             :
STEVEN BYERS, et al.,                                        :
                                    Defendants,              :
                                                             :
                  -and-                                       :
                                                             :
                                                             :
ELKA SHERESHEVSKY,                                           :
                                    Relief Defendant.        :
------------------------------------------------------------ X

## MEMORANDUM OF LAW IN SUPPORT OF INTERNATIONAL AD-HOC COMMITTEE OF WEXTRUST CREDITORS' MOTION OBJECTING TO ENTRY AND SEEKING MODIFICATION OF PRELIMINARY INJUNCTION

# **Table of Contents**

Table of Authorities .............................................................................................................. ii

Background .......................................................................................................................... 2

Argument ............................................................................................................................. 4

    A.    The Amended Receiver Order Improperly Designates the
           Receiver as the Debtor-in-Possession or Trustee in Bankruptcy ........................... 4

    B.    Even If This Court Determines It May Enjoin Access to
           Bankruptcy Court, It Should Nevertheless Allow the Wextrust
           Entities' Creditors to File an Involuntary Bankruptcy Petition ............................. 8

    C.    District Courts Cannot Enjoin Creditors
           From Filing An Involuntary Bankruptcy Petition ................................................. 11

Conclusion ........................................................................................................................ 17

**Table of Authorities**

## CASES

Adams v. Marwil (In re Bayou Group, LLC),
    363 B.R. 674 (S.D.N.Y. 2007)....................................................................5, 6, 7

In re Am. & British Mfg. Corp.,
    300 F. 839 (D. Conn. 1924) ...............................................................................13

Barbieri v. Raj Acquisition Corp. (In re Barbieri),
    199 F.3d 616 (2d Cir. 1999)...............................................................................12

In re Bayou Group, LLC,
    372 B.R. 661 (Bankr. S.D.N.Y. 2007),.............................................................11

In re Bd. Of Dirs. Of Telecom Arg. S.A.,
    2006 Bankr. LEXIS 483 (Bankr. S.D.N.Y. Feb. 24, 2006) ...............................9

Eberhardt v. Marcu,
    530 F.3d 122 (2d Cir. 2008)...........................................................................8, 10

Esbitt v. Dutch-Am. Mercantile Corp.,
    335 F.2d 141 (2d Cir. 1964)...........................................................................8, 11

Gilchrist v. General Elec. Capital Corp.,
    262 F.3d 295 (4th Cir. 2001) ..............................................................................9

In re Integrated Telecom Express, Inc.
    384 F.3d 108 (3d Cir. 2004)................................................................................9

Jordan v. Indep. Energy Corp.,
    446 F. Supp. 516 (N.D. Tex. 1978) ..............................................................10, 15

Lankenau v. Coggeshall & Hicks,
    350 F.2d 61 (2d Cir. 1965)..................................................................................8

SEC v. Am. Bd. of Trade, Inc.,
    830 F.2d 432 (2d Cir. 1987)................................................................................8

SEC v. Bartlett,
    422 F.2d 475 (8th Cir. 1975) ............................................................................11

SEC v. Lincoln Thrift Ass'n,
    577 F.2d 600 (9th Cir. 1978) .........................................................................9, 11

In re SGL Carbon Corp.,
    200 F.3d 154 (3d Cir. 1999) .................................................................9

Schwartz v. Aquatic Dev. Group, Inc. (In re Aquatic Dev. Group, Inc.),
    352 F.3d 671 (2d Cir. 2003) ..............................................................12

U.S. v. Royal Bus. Funds Corp.,
    29 B.R. 777 (S.D.N.Y. 1983) ......................................................10, 14

U.S. v. Royal Bus. Funds Corp.,
    724 F.2d 12 (2d Cir. 1983) ...............................................8, 13, 14, 15

U.S. v. Vulpis,
    961 F.2d 368 (2d Cir. 1992) ..............................................................15

**STATUTES**

17 C.F.R. § 240.10b-5 ..................................................................................3

11 U.S.C. § 101(11) .....................................................................................6

11 U.S.C. § 105(a) ......................................................................................12

11 U.S.C. § 105(b) .......................................................................................5

11 U.S.C. § 303 ..........................................................................................11

11 U.S.C. § 543 .........................................................................................4, 6

11 U.S.C. §§ 544, 548, 550 ........................................................................10

11 U.S.C. § 701 ............................................................................................4

11 U.S.C. § 701(a)(1) ...................................................................................5

11 U.S.C. § 702 ............................................................................................4

11 U.S.C. § 702(b) ........................................................................................5

11 U.S.C. § 1104(b) ......................................................................................4

11 U.S.C. § 1104(d) ......................................................................................5

15 U.S.C. § 77q(a) ........................................................................................2

15 U.S.C. § 78aa ........................................................................................14

15 U.S.C. § 78j(b) .................................................................................................. 2

15 U.S.C. § 687c(b) ............................................................................................. 14

28 U.S.C. 157(a) ................................................................................................... 7

28 U.S.C. § 157(d) ................................................................................................ 7

**MISCELLANEOUS**

Fed. R. Civ. P. 65 ................................................................................................ 15

Nicholas Quinn Rosenkranz, Federal Rules of Statutory Interpretation, Harv. L. Rev.
    2085, 2107 (2002) ....................................................................................... 16

Senate Report No. 05-989, 95th Cong. 2d Sess. 29 (1978) ................................... 5

2B Sutherland Statutory Construction § 50:1 (7th ed.) ....................................... 16

DECHERT LLP
1095 Avenue of the Americas
New York, New York  10036
Telephone:  (212) 698-3500
Facsimile:  (212) 698-3599
Shalom Jacob
Shmuel Vasser

*Attorneys for the International Ad-Hoc Committee of Wextrust Creditors*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
SECURITIES AND EXCHANGE COMMISSION, :
                                                                          :
                                           Plaintiff,          :
                                                                          :      Case No. 08-07104 (DC)
                         -against-                              :
                                                                          :      ECF CASE
                                                                          :
STEVEN BYERS, et al.,                                  :
                                           Defendants,      :
                                                                          :
                         -and-                                   :
                                                                          :
                                                                          :
ELKA SHERESHEVSKY,                               :
                                           Relief Defendant.   :
------------------------------------------------------------- X

### MEMORANDUM OF LAW IN SUPPORT OF INTERNATIONAL AD-HOC COMMITTEE OF WEXTRUST CREDITORS' MOTION OBJECTING TO ENTRY AND SEEKING MODIFICATION OF PRELIMINARY INJUNCTION

The International Ad-Hoc Committee of Wextrust Creditors (the "Committee"),

comprised of more than ninety individuals and entities that loaned and/or invested funds in one

or more of Wextrust Capital, LLC ("Wextrust"), Wextrust Equity Partners, LLC ("WEP"),

Wextrust Development Group, LLC ("WDG"), Wextrust Securities, LLC ("Wextrust

Securities"), Axela Hospitality, LLC ("Axela," and together with Wextrust, WEP, WDG and

Wextrust Securities, the "Wextrust Entity Defendants") and the other entities listed on Exhibit A

to the Order on Consent Imposing Preliminary Injunction and Other Relief Against Defendants and Relief Defendant (the "Wextrust Entities"), Docket No. 65 (the "PI Order"), by and through its undersigned attorneys, Dechert LLP, submits this memorandum of law in support of its motion objecting to entry and seeking modification of the PI Order and the Amended Receiver Order Appointing Temporary Receiver, dated September 11, 2008 (the "Amended Receiver Order") which Amended Receiver Order is incorporated in the PI Order, to strike language (i) restricting the access to involuntary bankruptcy for any of the Wextrust Entities, and (ii) providing for the Receiver's participation as trustee or debtor-in-possession in the potential bankruptcy case of any Wextrust Entity (the "Motion").

## Background

1.      On August 11, 2008, the Plaintiff Securities and Exchange Commission ("SEC") filed a complaint (the "Complaint") against defendants Joseph Shereshevsky ("Shereshevsky"), Steven Byers ("Byers"), and the Wextrust Entity Defendants (together the "Defendants"), to halt ongoing fraudulent offerings of securities by convicted felon Shereshevsky and his partner Byers (the "Individual Defendants"). The Individual Defendants, acting through the Wextrust Defendant Entities, had raised at least $255 million from at least 1,196 investors throughout the U.S. and abroad. See Complaint, Doc. No. 1, at 2.

2.      On August 27, 2008, the SEC filed the First Amended Complaint (the "Amended Complaint"), including Elka Shereshevsky as a relief defendant. See Amended Complaint, Doc. No. 16.

3.      The SEC alleged the Defendants directly or indirectly had engaged or were engaging in schemes that constituted violations of Section 17(a) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77q(a) and Section 10(b) of the Securities Exchange Act of

1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5. See *Amended Complaint*, Doc. No. 16, at 5.

4.      The SEC sought to restrain and enjoin permanently the Defendants from engaging in the acts alleged. In addition, the SEC sought final judgments (i) ordering the Defendants to disgorge their ill-gotten gains with pre-judgment interest and (ii) ordering the Defendants to pay civil penalties. See *Amended Complaint*, Doc. No. 16, at 5-6.

5.      On August 11, 2008, this Court entered an Order Appointing Temporary Receiver, Docket No. 2, and on September 11, 2008, the Court entered the Amended Receiver Order. The Amended Receiver Order contains two provisions with respect to bankruptcy. First, the Amended Receiver Order enjoins the commencement of bankruptcy cases for the Wextrust Entities by any party other than the Receiver. See *Amended Receiver Order*, Doc. No. 36, at 6. This provision was included in the August 11 order as well. Second, the Amended Receiver Order provides that if the Receiver determines that any of the Wextrust Entities should file for bankruptcy, the Receiver is authorized to commence the cases and shall remain in possession and control of the chapter 11 estates with the same rights and powers of a chapter 11 trustee, subject to parties' rights to seek a determination from this Court, and not the bankruptcy court, whether the Receiver should be deemed a trustee or a debtor in possession and whether the Receiver should retain possession and control of property of the debtors' estates. See *Amended Receiver Order*, Doc. No. 36, at 10. This provision was not included in the August 11 order.

6.      By a letter, dated October 6, 2008 the Committee sought this court's permission to file a motion seeking modification of the Amended Receiver Order. On October 9, 2008, the SEC submitted to the Court the PI Order. By letter, dated October 14, 2008, the Committee opposed entry of the PI Order.

7.      At a pre-motion conference held on October 23, 2008, the Court permitted the

Committee to file the Motion and set a briefing schedule.

8.      On October 24, 2008 the Court entered the PI Order.

**Argument**

**A.      The Amended Receiver Order Improperly Designates the
Receiver as the Debtor-in-Possession or Trustee in Bankruptcy**

The Amended Receiver Order authorizes the Receiver to commence bankruptcy cases for

the Wextrust Entities and that "in such cases the Receiver shall prosecute the bankruptcy

petitions in accordance with title 11 subject to the to the same parameters and objectives as a

chapter 11 trustee and shall remain in possession, custody, and control of the title 11 estates

subject to the rights of any party in interest to challenge such possession, custody and control

under 11 U.S.C. § 543 or to request a determination by this Court as to whether the Receiver

should be deemed a debtor in possession or trustee, at a hearing…before the undersigned." See

*Amended Receiver Order*, Doc. No. 36, at 10.  The problem with this provisions is twofold:

First, it circumvents the statutory provisions of the Bankruptcy Code dealing with appointment

and selection of bankruptcy trustees.  Second, it attempts to withdraw the reference from the

bankruptcy court with respect to certain issues even prior to the filing of an actual bankruptcy

case and without any showing of the "cause" statutorily required for such relief.

The Bankruptcy Code contains specific sections and procedures dealing with the

appointment of trustees in chapter 7 and 11 cases.  See 11 U.S.C.[1] §§ 701, 702, 1104(d) & (b).

In a case under Chapter 7, the Office of the United States Trustee (the "UST") appoints an

---

[1] Title 11 of the United States Code is hereafter referred to as the "Bankruptcy Code."  Unless
stated otherwise, reference to sections means sections of the Bankruptcy Code.

interim trustee, <u>see</u> 11 U.S.C. § 701(a)(1), and creditors may elect the permanent trustee. <u>See</u> 11 U.S.C. § 702(b).

In a case under Chapter 11, to the extent there is cause for the appointment of a trustee, which in this case there clearly is under section 1104(a)(1) (providing that the court shall order the appointment of a trustee "for cause, including fraud, dishonesty… or gross mismanagement of the debtor" or "if such appointment is in the bets interests of creditors, any equity security holders and other interests of the estate…"), the UST appoints a trustee, <u>see</u> 11 U.S.C. § 1104(d), and the creditors may elect a trustee. <u>See</u> 11 U.S.C. § 1104(b)(2). In this regard, the Amended Receiver Order attempts an end-run around these established procedures enumerated in the Bankruptcy Code.

What the SEC would have the Court do, is essentially allow the Receiver to continue to act as a trustee post bankruptcy. This provision is in direct conflict with the Bankruptcy Code, which specifically prohibits courts from appointing a receiver in bankruptcy cases. 11 U.S.C. § 105(b) ("Notwithstanding subsection (a) of this section, a court may not appoint a receiver in a case under this title."). The legislative history on section 105(a) is clear: "The Bankruptcy Code has ample provision for the appointment of a trustee when needed. Appointment of a receiver would simply circumvent the established procedures." <u>See</u> Senate Report No. 05-989, 95th Cong., 2d Sess. 29 (1978); <u>accord</u> <u>Adams v. Marwil</u> (In re Bayou Group, LLC), 363 B.R. 674, 684 (S.D.N.Y. 2007) (receiver's corporate management powers terminate upon a bankruptcy filing).

This provision is also in direct conflict with an explicit provision of the Bankruptcy Code requiring a receiver to relinquish control over the debtor's property once the debtor becomes the

subject of a bankruptcy case. 11 U.S.C. § 543(b).[2] Section 543(d) allows the bankruptcy court, after a notice and a hearing, to excuse compliance with said turn-over provision if the interests of parties in interest would be better served by excusing compliance. The Amended Receiver Order short circuits this in various improper ways: (i) no bankruptcy case has been filed, thus no order under section 543 can be issued, (ii) no evidentiary showing has been made as to what best serves the interests of parties in interest and (iii) it turns section 543 on its head; the section provides that the custodian "shall" turn-over property thus requiring parties who seek relief under Section 543(d) to file an appropriate motion. The Amended Receiver Order essentially *a-priori* relieves the Receiver of his turn-over obligation and shifts the burden to other parties to require his compliance with section 543(a).

In its letter, dated October 21, 2008, the SEC relies on the <u>Bayou</u> decision to support the challenged relief. <u>Bayou</u>, however, clearly does not support the SEC's position. In <u>Bayou</u>, unlike herein, the district court specifically appointed Mr. Marwil as "the sole and exclusive managing member and representative of each of the Bayou entities." <u>Bayou</u>, 363 B.R. at 680. Thus, the <u>Bayou</u> court concluded that "while the 'receivership qua receivership' ends with the filing of the bankruptcy petition, the corporate governance appointment survives." <u>Id.</u>, at 685. The Amended Receiver Order granted the Receiver broad *in rem* power over the Wextrust Entities' assets but, unlike <u>Bayou</u>, it did not appoint him as their sole corporate director.

More significantly, the <u>Bayou</u> court expressed regrets over its appointment order and noted that its holding "exposes a loophole in the bankruptcy code." <u>Bayou</u>, 363 B.R. at 688. First, with respect to the language in the order allowing Mr. Marwil to act as a debtor in

<hr>

[2] Section 543(b) provides that "[a] custodian shall deliver to the trustee any property of the debtor held by or transferred to such custodian . . . ." Section 101(11)(A) defines "custodian" to include a receiver.

possession the District Court noted: "I agree that, if I could turn back the clock, I would not have included any reference to 'debtor-in-possession' in the Order. <u>Deciding whether Marwil qualified as a debtor-in-possession under the Bankruptcy Code was quintessentially the province of a bankruptcy judge.</u> It was not this court's intention to predetermine this issue." <u>Id.</u> at 686 (emphasis added).

Second, the District Court explained that allowing parties to appoint a receiver having dual capacities, *i.e.* as a receiver and corporate manager, runs afoul of the clear legislative intent of the Bankruptcy Code "to supplant federal equity receivers from bankruptcy proceedings with the United States Trustee." <u>Bayou</u>, 363 B.R. at 688. If anything, the <u>Bayou</u> decision supports the Committee's objection in this regard.

Finally, the language requiring this Court to hear disputes with respect to the Receiver's post-bankruptcy capacity and his authority to maintain possession of the (yet to be filed) bankruptcy estates' assets, runs afoul of Title 28 of the United States Code. Under 28 U.S.C. § 157(a) and pursuant to an order of referral dated July 10, 1984 (Ward, D.J.), this Court referred all bankruptcy matters to the bankruptcy court for this district. Pursuant to 28 U.S.C. § 157(d), the district court is within its powers to withdraw the reference "for cause shown," including if the Court determines that the matter requires consideration of other federal laws affecting interstate commerce. The Amended Receiver Order constitutes a preemptive withdrawal of the reference, prior to the filing of any bankruptcy case, and without any proper evidentiary record demonstrating the existence of any "cause." We are simply not aware of any authority supporting such extraordinary relief.

**B.**	**Even If This Court Determines It May Enjoin Access to Bankruptcy Court, It Should Nevertheless Allow the Wextrust Entities' Creditors to File an Involuntary Bankruptcy Petition**

Assuming arguendo that the Court may enjoin creditors from filing involuntary bankruptcy petitions, a point we address infra, Second Circuit precedents mandate the denial of such relief herein, as the Bankruptcy Code provides a more appropriate framework for a proceeding of this type.

Receivers appointed at the SEC's request are empowered to preserve the status quo, conserve the existing estate, marshal the assets to prevent their dissipation and investigate the defendants' actions.  See  Eberhardt v. Marcu, 530 F.3d 122, 131 (2d Cir. 2008).

The power of the receiver, however, is not without limits:  "'[W]e have expressed strong reservations as to the propriety of allowing a receiver to liquidate [an estate].'  In addition, because receiverships should not be used as an alternative to bankruptcy, we have disapproved of district courts using receiverships as means to process claim forms and set priorities among various classes of creditors."  Eberhardt, 530 F.3d at 132 (quoting Lankenau v. Coggeshall & Hicks, 350 F.2d 61, 63 (2d Cir. 1965) and citing SEC v. Am. Bd. of Trade, Inc., 830 F.2d 432, 437-38 (2d Cir. 1987) (emphasis added)); accord U.S. v. Royal Bus. Funds Corp., 724 F.2d 12, 15 (2d Cir. 1983) ("We by no means intend to disturb the general rules that . . . the pendency of an equitable receivership rarely precludes a petition in bankruptcy [citations omitted, emphasis added], or that equity receiverships should not 'perform the functions of a bankruptcy court'." (citation omitted).

These principles apply in full force to an SEC recievership.  See  Esbitt v. Dutch-Am. Mercantile Corp., 335 F.2d 141, 143 (2d Cir. 1964) ("We see no reason why violation of the

Securities Act should result in the liquidation of an insolvent[3] corporation via an equity

receivership instead of the normal bankruptcy procedures, which are much better designed to

protect the rights of interested parties.").

    As courts recognized, public policy mandates that insolvency and liquidation proceedings

be administered pursuant to the comprehensive scheme found in the Bankruptcy Code.  See

Gilchrist v. General Elec. Capital Corp., 262 F.3d 295, 304 (4th Cir. 2001) ("To resolve claims

involving a large corporation with multiple places of business in different districts and thousand

of creditors, a bankruptcy court has judicial tools better suited and more specifically tailored to

the task….  While it is true that the district court has broad equity power, any attempt to use that

power to supervise a complex corporate liquidation, in the absence of special circumstances,

would ultimately be more clumsy and expensive than long-established bankruptcy procedures.");

SEC v. Lincoln Thrift Ass'n, 577 F.2d 600, 605 (9th Cir. 1978) ("There are sound policy reasons

for allowing liquidation to take place only in a court of bankruptcy [referencing the formation of

a creditors' committee, election of  a bankruptcy  trustee and detailed procedures dealing with

sales of assets.]").

    Recently, the Second Circuit provided another powerful ground for utilizing the

bankruptcy process:  Equity receivers are not authorized to sue to avoid and recover fraudulent

---

[3] We do not believe that this reasoning applies only to liquidation cases or insolvent debtors.
The Bankruptcy Code allows both for liquidation and reorganization of debtors.  No rationale
support can be found allowing district courts to handle reorganization cases but not liquidation
cases.  If anything, reorganization are significantly more complex than liquidations.  In addition,
a debtor does not have to be insolvent to be eligible for bankruptcy.  See In re Bd. Of Dirs. Of
Telecom Arg. S.A., 2006 Bankr. LEXIS 483 (Bankr. S.D.N.Y. Feb. 24, 2006); see also In re
Integrated Telecom Express, Inc.), 384 F.3d 108, 112 (3d Cir. 2004) ("[A] debtor need not be
insolvent before filing for bankruptcy protection."); In re SGL Carbon Corp., 200 F.3d 154, 163
(3d Cir. 1999) ("It is well-established that a debtor need not be insolvent before filing for
bankruptcy protection).

transfers under New York's Debtor and Creditor Law.  See Eberhardt, 530 F.3d at 133-35.

Juxtapose this with the statutory authority of a bankruptcy trustee to do so.  See  11 U.S.C. §§

544, 548, 550.

This case, without cavil, fits the precedents cited above requiring a bankruptcy

administration.  As the SEC states in its Memorandum of Law in Support of Application for

Emergency Relief (the "SEC Memo"), dated August 11, 2008, Docket No. 18, at p. 36:  "[A]

receiver is necessary to marshal what may be substantial real estate and other assets and devise a

plan for administering these assets, including making determinations about whether assets can be

sold to recover proceeds to distribute to investors and whether entities should be placed in

bankruptcy (emphasis added)."

Furthermore, in Jordan v. Indep. Energy Corp., 446 F. Supp. 516, 529-30 (N.D. Tex.

1978), the court, respecting the same principles, held that "[a]n injunction limiting access to the

bankruptcy courts will never satisfy this test [i.e., the standards that must be met for a

preliminary injunction].  Congress has created a uniform federal policy and has granted the

bankruptcy courts power to fairly adjudicate and administer disputes between debtors and

creditors . . . and creditors would be irreparably harmed by their inability to secure access to the

rights afforded to creditors under the Act.  An order restricting access to the bankruptcy court,

other than as specifically provided by Congress in the Bankruptcy Act, would not be in the

public interest."  This District Court has cited Jordan with approval.  U.S. v. Royal Bus. Funds

Corp., 29 B.R. 777, 779 (S.D.N.Y. 1983), aff'd, 724 F.2d 12 (2d Cir. 1983).

Finally, the facts under which circuit courts of appeal refused to direct district courts to

allow bankruptcy cases to be filed, involved receivership cases that were administered for a

substantial amount of time and were in advance stages of administration such that the

commencement of a bankruptcy case would have been costly and impractical.  See e.g., Esbitt v. Dutch-Am. Mercantile Corp., 335 F.2d 141, 143 (2d Cir. 1964) (holding that because the receivership had progressed almost to completion without objection it would not be in the best interests of the parties to direct that further proceedings be diverted into bankruptcy proceedings); SEC v. Bartlett, 422 F.2d 475, 480 (8th Cir. 1975) (court upheld the district court's order refusing to vacate a receivership, noting that the receiver had already made substantial progress toward liquidating the corporation and that the district court had ordered an early pro rata distribution of the assets);  SEC v. Lincoln Thrift Ass'n, 577 F.2d 600, 609 (9th Cir. 1978) (where the receivership was already two years old; held: "[o]ur decision is to a large extent controlled by the consideration that the liquidation proceedings were in an advanced stage before appeal was brought to this court.  We do not, therefore, view this case as a precedent for approving receivership liquidations under the supervision of the district court rather than under the jurisdiction of the court in bankruptcy.").

Most important, the transparency, notice requirements and creditor participation that are the hallmark of bankruptcy cases make bankruptcy administration of these cases substantially superior to any receivership.  The members of the Committee, as the real parties-in-interest, want to directly protect their own interests and view bankruptcy as by far their best opportunity to do so.

**C.**     **District Courts Cannot Enjoin Creditors**
          **From Filing An Involuntary Bankruptcy Petition**

Section 303 of the Bankruptcy Code provides creditors with the ability to commence an involuntary chapter 7 or 11 cases against a debtor.[4]  There is no provision in the Bankruptcy

---

[4] A list of the Committee members, as of this date, and their interests was delivered together with this memorandum to Chambers, the SEC and the Receiver but has not been filed with the Court. Counsel representing other investors asked the SEC and the Receiver to consent to this method

Code authorizing courts to abridge or restrict that right.  Even section 105(a)[5] of the Bankruptcy

Code, the bankruptcy equivalent of the All Writs Act, does not provide courts with the power to

over-ride explicit sections of the Bankruptcy Code.  See  Schwartz v. Aquatic Dev. Group, Inc.

(In re Aquatic Dev. Group, Inc.), 352 F.3d 671, 680-81 (2d Cir. 2003):

> This Court has repeatedly cautioned that § 105(a) does not
> authorize the bankruptcy courts to create substantive rights that are
> otherwise unavailable under applicable law, or constitute a roving
> commission to do equity.  While perhaps expansive, the equitable
> power conferred on the bankruptcy court by section 105(a) is the
> power to exercise equity in carrying out the *provisions* of the
> Bankruptcy Code not the broader power to invoke equity to further
> the purposes of the Code generally, or otherwise to do the right
> thing.
>
> Thus, the general grant of equitable power contained in section
> 105(a) cannot trump specific provisions of the Bankruptcy Code,
> but must instead be exercised within the parameters of the Code
> itself.  *Id.* at 680-81 (emphasis added; citations and internal
> quotations omitted).

Accord  Barbieri v. Raj Acquisition Corp. (In re Barbieri), 199 F.3d 616, 620-21 (2d Cir. 1999).

Although, the Second Circuit has not squarely addressed the issue of whether district

courts may enjoin access to bankruptcy courts to preserve assets under the control of the

---

of disclosing the identity of his clients but the SEC and the Receiver objected.  We respectfully
submit that since only the SEC and the Receiver requested us to identify our clients, we have
fully satisfied their request.  These Committee members are creditors of the Wextrust Entities to
which they advanced funds based, among other things, on their fraud and rescission claims
resulting from the fraudulent activities alleged by the SEC in the First Amended Complaint, see
In re Bayou Group, LLC, 372 B.R. 661, 665 (Bankr. S.D.N.Y. 2007) (non-redeeming investors
in a hedge fund that was run as a ponzi scheme are creditors based on their tort claims for
rescission or damages), and, in certain cases, also hold mortgage notes and/or other debt
instruments, such as personal or corporate guarantees.

[5] Section 105(a) provides:  "The court may issue any order, process or judgment that is necessary
or appropriate to carry out the provisions of this title.  No provision of this title providing for the
raising of an issue by a party in interest shall be construed to preclude the court from, sue sponte,
taking any action or making any determination, necessary or appropriate to enforce or implement
court orders or rules, or to prevent an abuse of process."

receiver, the Second Circuit has cited with approval a case holding that the right to file for

bankruptcy may not be restrained except by Congressional authority.  Royal Business, 724 F.2d

at 15, citing In re Yaryan Naval Stores, 214 F. 563, 565 (6th Cir. 1914).

In Yaryan Naval Stores, a case under the former Bankruptcy Act, creditors filed a

bankruptcy case in violation of a district court order appointing a receiver and enjoining any

action to interfere with the company's property and the receivership.  The receivers and certain

creditors objected to the bankruptcy adjudication of the debtor arguing that the filing of the

petition was made in contempt of the injunction and thus void.  The Circuit Court disagreed:

> [The language of the Bankruptcy Act] manifests the intention of
> Congress to confer the rights and privileges of the Bankruptcy Act
> upon all persons and corporation except those exempted from its
> operation.  Rights and privileges so positively bestowed cannot be
> destroyed, denied, or abridged by any power save that which
> created and brought them into being….  The settled rule is that the
> jurisdiction of the courts in bankruptcy in the administration of the
> affairs of insolvent persons and corporations is exclusive and
> paramount.  214 F. at 565.

The Sixth Circuit further held that the petitioning creditors were "clearly within their

rights when they applied for and obtained from the court having jurisdiction an order adjudging

the company a bankrupt."  Id.  The court held that the order appointing a receiver and issuing the

injunction must be read in connection with the explicit provisions of the controlling act of

Congress, the Bankruptcy Act, and that therefore, the order must be interpreted as allowing

application to the bankruptcy court.  Id.  Accord In re Am. & British Mfg. Corp., 300 F. 839,

849-51 (D. Conn. 1924) (bankruptcy petition was filed notwithstanding injunctions issued by a

recievership court; held: "[N]otwithstanding the receivership proceedings, the absolute right

exists in a person or corporation that is insolvent to admit its insolvency by filing a petition in

bankruptcy and thereby secure a release of all of its debts.").

There is no Second Circuit authority specifically authorizing district courts to enjoin the filing of involuntary bankruptcy petitions or to serve as screening tribunal whose permission is required prior to the filing of bankruptcy petitions.

In Royal Business, the district court pointed out that the Royal Business receiver was appointed pursuant to the 15 U.S.C. § 687c(b), an *express* Congressional enactment authorizing the receiver to take 'exclusive jurisdiction' over the company, meaning that the appointment of the receiver was to the exclusion of all other courts. 29 B.R. at 779. The court distinguished receiverships under 15 U.S.C. § 687c(b) from those pursuant to § 27 of the Securities and Exchange Act of 1934, noting that § 27 does not contain the same express authorization of exclusive jurisdiction. Id. at 780. Therefore, the court held the company was without power to file a bankruptcy petition. Id. at 780. The Second Circuit affirmed.[6] U.S. v. Royal Business Funds Corp., 724 F.2d 12, 14-16 (2d Cir. 1983).

In affirming, the Court of Appeal emphasized that the debtor in the case entered into a stipulation consenting the SBA recievership and obtained significant benefit under said stipulation: "At the time Royal entered into the stipulation, its choice was between a petition in bankruptcy and an SBA receivership…. Having chosen the latter and enjoyed the benefit of more than $3.5 million in new SBA loans, Royal now seeks to file bankruptcy petition…."

---

[6] Even if this Court determines that Royal Business provides support for injunctions barring access to bankruptcy courts, our facts are distinguishable. The Second Circuit's decision was predicated on numerous facts that are absent in this case, including that (i) the board consented to the receivership order, (ii) the Small Business Administration (the "SBA") relied upon this order when it subsequently made new loans to the company, (iii) the company was subject to the distinctive regulatory scheme of the SBA, (iv) the company had no significant creditors apart from the SBA, (v) the receiver had been operating the company for more than a year, and (vi) the party filing the bankruptcy petition was the debtor rather than the creditors. Royal Business, 724 F.2d at 14-16.

Royal Business, 724 F.2d at 15. Thus, the Court of Appeals essentially enforced a debtor agreement not to file a bankruptcy petition.

Similarly, in U.S. v. Vulpis, 961 F.2d 368 (2d Cir. 1992), the Court affirmed an order enjoining a part owner of a company from filing a bankruptcy petition after he signed an agreement pursuant to which a trustee was appointed for the company, and a restraining order was to remain in effect until the government was paid in full: "Dominic's position is thus not significantly different from that of the debtor in [Royal Business]. His right to file bankruptcy petition, after signing the Agreement, was significantly limited." 961 F.2d at 372.

In Jordan v. Indep. Energy Corp., 446 F.Supp. 516, 529 (N.D. Tex. 1978), the court held that it "may theoretically restrain" the filing of a bankruptcy petition, id., at 529, but when tested the relief in the prism of Rule 65 of the Federal Rules of Civil Procedure, held that "[a]n injunction limiting access to the bankruptcy courts will never satisfy this test. Congress has enacted uniform federal bankruptcy policy and has granted the bankruptcy courts power to fairly adjudicate and administer disputes between debtors and creditors…. creditors would be irreparably harmed by their inability to secure access to the rights afforded creditors under the Act. An order restricting access to the bankruptcy court, other than as specifically provided by Congress in the Bankruptcy Act, would not be in the public interest." Id., at 529-30.

We agree with the result reached by the Jordan court, although we disagree that, under current law, the district court has even a theoretical power to enjoin a bankruptcy filing by creditors. As the SEC admits, the securities laws "do not specifically vest the Court with the power to appoint a temporary receiver" and such power is judge made law. See SEC Memo, Docket No. 18 at p. 34.

Thus, the SEC essentially argues that judge made law developed in the context of equity receiverships can be used to abridge or curtail specific rights and powers granted by the Bankruptcy Code. Based on the authorities discussed herein we find this view meritless. "In cases of conflict between legislation and the common law, legislation will govern because it is the latest expression of the law." 2B Sutherland Statutory Construction § 50:1 (7th ed.); See also, Nicholas Quinn Rosenkranz, Federal Rules of Statutory Interpretation, Harv. L. Rev. 2085, 2107 (2002) ("the Constitution always trumps statutes, but statutes always trump the common law").

Furthermore, the SEC asserts that when seeking temporary relief, unlike private litigants, it does not have to show irreparable injury and that the balance of equities tips in its favor. See SEC Memo, Docket No. 18, at p. 24. As the SEC admits, however, that is because it "must only make a 'proper showing' of violative activity" and it satisfies this burden "when it makes a substantial showing of (i) a current violation, and (ii) the risk of repetition." Id. These principles are obviously applicable to the SEC's attempts to obtain injunctive relief against the wrongdoers; not the victims. The Amended Receiver Order contains injunctive relief against the creditors and investors in the Wextrust Entities. The SEC does not allege that any of the investors and creditors engaged in any violation of the securities laws or that they are likely to repeat their violative conduct. Thus, the SEC should satisfy the traditional test for a preliminary injunction which it cannot do.

## **Conclusion**

Based on all of the foregoing, the Committee respectfully requests that this Court enter orders substantially in the form of Exhibit A and Exhibit B attached to the Notice of Motion, modifying the PI Order and the Amended Receiver Order as provided therein, and grant the Committee such other and further relief as is just and proper.

Dated: New York, New York
     October 30, 2008

DECHERT LLP

By:   */s/ Shalom Jacob*
     Shalom Jacob
     Shmuel Vasser
     1095 Avenue of the Americas
     New York, New York  10036
     Telephone:  (212) 698-3500
     Facsimile:  (212) 698-3599

     *Attorneys for the International Ad-Hoc*
     *Committee of Wextrust Creditors*

## CERTIFICATE OF SERVICE

I, ANDREA CHOUPROUTA, hereby certify that:

I am not a party to the action, am over the age of eighteen years of age, and reside in Nassau County, New York.

On October 30, 2008 I caused to be served, true and correct copies of the Motion of International Ad-Hoc Committee of Wextrust Creditors Objecting to Entry and Seeking Modification of Preliminary Injunction *and* Memorandum of Law in Support of International Ad-Hoc Committee of Wextrust Creditors' Motion Objecting to Entry and Seeking Modification of Preliminary Injunction, upon the parties listed on attached hereto by E-Mail and Overnight Courier where indicated.

  */s/ Andrea Chouprouta*
Andrea Chouprouta

Alexander Mircea Vasilescu, Esq. – Phone: (212) 336-0178
Andrew M. Calamari, Esq.  -- Phone: (212) 336-0042
Danielle Sallah, Esq. – Phone: (212) 336-0130
U.S. Securities and Exchange Commission
Three World Financial Center
New York, NY 10281
vasilescua@sec.gov
calamaria@sec.gov
sallahd@sec.gov
Fax: 212-336-1322

Steven G. Rawlings, Esq.
Securities and Exchange Commission
Branch Chief
New York Regional Office
3 World Financial Center
New York, NY 10281
rawlingss@sec.gov
Phone: (212) 336-0149
Fax: (212) 336-1322

Barry S. Zone, Esq. –Phone: (212) 752-9700  Fax : (212)-752-3868
Jason Canales, Esq. –Phone: (212)752-9700  Fax: (212)-980-5192
Steven R. Popofsky, Esq. - Phone: (212) 752-9700 Fax: (212) 980-5192
Gerstsen, Savage, Kaplowitz, Wolf, & Marcus, LLP
600 Lexington Avenue
New York, NY 10022
bzone@gskny.com
jcanales@gskny.com
spopofsky@gskny.com
*Counsel to Steven Byers*

John C. Meringolo, Esq.
Meringolo & Associates, P.C.
11 Evans Street
Brooklyn, NY 11201
jmeringolo@aol.com
Phone: 646-319-9020
*Counsel to Joseph Shereshevsky*

Michael Fred Bachner, Esq.
Bachner & Herskovits, P.C.
26 Broadway, Ste. 2310
New York, NY 10004
mb@bhlawfirm.com
Phone: (212) 344-7778
Fax: (212) 344-7774
*Counsel to Elka Shereshevsky*

Harvey Kurzweil, Esq. – Phone: 212-259-8000  Fax: 212-259-6333
Mark S. Radke, Esq. –Phone: (202) 346-8000  Fax: (202) 346-8102
Leo V. Gagion, Esq. –Phone: (212) 259-8000  Fax: (212) 259-6333
Dewey & LeBoeuf, L.L.P.
1301 Avenue of the Americas
New York, NY 10019
hkurzweil@dl.com
mradke@dl.com
lgagion@dl.com
*Counsel to Receive, Timothy J. Coleman*

Vincent Schmeltz III, Esq.
Dewey & LeBoeuf, L.L.P.
Two Prudential Plaza
Suite 3700
180 North Stetson Avenue
Chicago, IL 60601
tschmeltz@dl.com
Phone: 312 794 8095
Fax: 312 794 8100
*Counsel to Receiver, Timothy J. Coleman*

Timothy J. Coleman, Receiver
c/o Dewey & LeBoeuf LLP
1101 New York Ave NW
Suite 1100
Washington, D.C. 20005
tcoleman@dl.com
Phone: (202) 346-8000
Fax: (202) 346-8102
*Receiver*

George R. Mesires, Esq.
Edward F. Malone, Esq.
Barack, Ferrazzano, Kirschbaum, & Nagelberg LLP
200 West Madison Street
Suite 3900
Chicago, IL 60606
George.mesires@bfkn.com
Edward.malone@bfkn.com
Phone: (312) 984-3100
Fax: (312) 984-3150
*Counsel to Barrington, Bank & Trust Company, N.A*
*Counsel to Hinsdale Bank & Trust Co.*

Barry S. Pollack, Esq.
Sullivan & Worcester LLP
One Post Office Square
Boston, MA 02109
bpollack@sandw.com
Phone: 617-338-2800
Fax:  617-338-2880
*Counsel to G&H Partners AG*

Martin S. Siegel, Esq.
Brown Rudnick
Seven Times Square
New York, NY 10036
msiegel@brownrudnick.com
Phone: 212.209.4829
Fax: 212.209.4801
*Interested Party*

**<u>BY FEDERAL EXPRESS ONLY</u>**

Amnon Cohen
811 Country Club Dr.
Teaneck, New Jersey 07666-5613
*Third Party Defendant*