ANDREW M. CALAMARI (AC-4864)
ASSOCIATE REGIONAL DIRECTOR
Alistaire Bambach (AB-5891)
Alex M. Vasilescu (AV-2575)
Steven G. Rawlings (SR-0623)
Danielle Sallah (DS-8686)
Neal Jacobson (NJ-3937)
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
3 World Financial Center
New York, New York 10281
(212) 336-1100
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------------x

SECURITIES AND EXCHANGE COMMISSION  :
:
Plaintiff,  :
: 08 Civ. 07104 (DC)
- against -  : ECF CASE
:
STEVEN BYERS, et al.,  :
:
Defendants.  :

-------------------------------------------------------------------------------x


PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S BRIEF IN
OPPOSITION TO WEXTRUST CREDITORS' MOTION OBJECTING TO
ENTRY AND SEEKING MODIFICATION OF PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…..…………………………….………………………ii

INTRODUCTION………..………………………………….………………………1

FACTS…………………………………………….………...………….………....2

ARGUMENT…………………………………….………...…………….…..........5

A. The District Court Has Discretion to Enjoin Filing of Bankruptcy Petitions and
Should Continue to Do So Here ………....................................................................5

B. The Preliminary Injunction Order Appropriately Enables the Receiver to File
Bankruptcy Cases as Trustee or Debtor-In-Possession….…………..…........…….13

CONCLUSION……………………………………………………………….......15

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

Adams v. Receiver Jeff J. Marwill, et al.

07-1508-bk (2d Cir.)................ .......................................................14

In re Am. & British Mfg. Corp.

 300 F. 839 (D. Conn. 1924)................................................................9

In re Bayou Group, L.L.C.

363 B.R. 674 (S.D.N.Y. 2007) ...........................................................14

Eberhardt v. Marcu

530 F.3d 122 (2d Cir. 2008)........................................................12, 13

Esbitt v. Dutch-American Mercantile Corp.

 335 F. 2d 141 (2d Cir. 1964)......................................................11, 12

Jordan v. Ind. Energy Corp.

 446 F. Supp. 516 (N.D. Tex. 1978)......................................................9

Liberte Capital Group, LLC v. Capwill

 462 F.3d 543 (6th Cir. 2006)..........................................................6, 7

Scholes v. Lehmann

56 F.3d 750 (7th Cir. 1995)...............................................................13

SEC v. Am. Board of Trade, Inc.

830 F.2d 431 (2d Cir. 1987)...............................................................11

SEC v. Bartlett

422 F.2d 475 (8th Cir. 1970)...............................................................12

SEC v. Credit Bancorp, Ltd.

290 F.3d 80 (2d Cir. 2002)..................................................................12

SEC v. Manor Nursing Ctrs., Inc.

458 F.2d 1082 (2d Cir. 1972).... .........................................................14

SEC v. TLC Investments and Trade Co.

147 F. Supp. 2d 1031 (C.D. Ca. 2001)..................................................13

SEC v. Wencke

622 F.2d 1363 (9th Cir. 1980)...............................................................6

US v. Acorn Technology Fund, LP
429 F.3d 438 (3d Cir. 2005)…….………………………………………… …………6

US v. Royal Business Funds Corp.
724 F.2d 12 (2d Cir. 1983)…………………………….………………5, 7, 8, 9, 11

US v. Vulpis
961 F.2d 368 (2d Cir. 1992)……………..……………………………………………….………………8

In re Yaryan Naval Stores Co.
214 F. 563 (6th Cir. 1914)……………………………………………….………………9

**Statutes**

11 U.S.C. § 702………………………………….…………………………….…………15

11 U.S.C. § 1104………………………………….…………………………….…………15

## INTRODUCTION

Before the Court is a Motion by two committees (the "Movants") alleging to represent approximately one hundred persons and entities who invested in numerous of the Wextrust entities that are subject to the equity receivership that is pending in this Court. In the Motion, the Movants request that the Court delete two important provisions from its Preliminary Injunction Order dated October 24, 2008. These provisions enjoin third parties from filing involuntary bankruptcy cases against the entities contained within the receivership and enable the Receiver to file bankruptcy cases as either a debtor-in-possession or as a trustee as determined by this Court. The challenged provisions are critical to the Court's continued jurisdiction over the cases and protect the investors and creditors of the Wextrust entities from chaotic piecemeal litigation and substantial additional administrative expenses. The injunctive provisions are entirely within the Court's authority and provide the defrauded investors and creditors with an orderly process by which the Receiver can evaluate the best way to maximize value and return money to victims of this fraud. It also enables the Receiver to investigate and report on the assets and liabilities of all the entities within the receivership without being subjected to litigation in multiple forums across the country. If and when the Receiver determines that a bankruptcy filing of one, several, or all of the entities in the receivership is appropriate, the second challenged provision enables the Receiver to file such cases in an orderly and coordinated proceeding without a disruption in the management of the various operating entities when the filings occur.

The relief sought by the Movants will not simplify or streamline this enforcement case or remove jurisdiction of all of the receivership's assets from this Court. Instead, if

involuntary bankruptcy cases are filed against certain of the assets as the Movants propose, the Receiver and this Court will continue to administer the remaining assets but will be faced with expensive and uncoordinated litigation between multiple different entities and possibly bankruptcy trustees all over the country. Because the many filings will not be pursuant to a coordinated plan before this Court, investors and creditors will lose the significant benefits afforded to them by the centralized equity receivership. For the reasons stated below, the Movants request should be denied.

## FACTS

On August 11, 2008, the Securities and Exchange Commission filed a Complaint and requested emergency relief against defendants Steven Byers ("Byers") and Joseph Shereshevsky ("Shereshevsky") (the "Individual Defendants") and Wextrust Capital, LLC ("Wextrust"), Wextrust Equity Partners, LLP ("WEP"), Wextrust Development Group ("WDG"), Wextrust Securities, LLC ("Wextrust Securities") and Axela Hospitality, LLC ("Axela") (the "Wextrust Entity Defendants," collectively "the Defendants") to halt an ongoing securities fraud that raised at least $255 million from at least 1,196 investors. The Complaint alleges that the Defendants have raised money in at least 60 different offerings of securities, usually in the form of private placements and have created at least 150 limited liability companies to act as issuers or facilitators of the offerings. While the Defendants owned a number of actual operating properties, many of the private placement memoranda misrepresented to investors that funds raised will be used for specific investments in real estate or other assets identified in offering memoranda, when in fact some or all of the offering proceeds were immediately diverted to undisclosed uses, typically to make payments to prior investors in earlier unrelated

securities offerings or to meet shortfalls at other Wextrust related entities. The SEC's expedited investigation had revealed that Defendants had diverted over $100 million from issuer LLC entities to other Wextrust entities.

As is essential in SEC enforcement actions to protect assets for investors, on August 11 the SEC requested, and the Court signed, an Order Freezing Assets (Dkt. 3) and an Order Appointing Temporary Receiver, whereby Timothy Coleman was charged, among other things, to (1) preserve the *status quo*, (2) ascertain the true financial condition of the Wextrust Entities, (3) determine the extent of commingling between the Wextrust Entities and (4) determine if the Wextrust Entities and all entities they control or in which they have an ownership interest should undertake a bankruptcy filing. To provide the Receiver time in which to make such a determination, the Order provided that, "no person or entity, including any creditor or claimant against the Defendants, . . . . shall take any action to interfere with the taking control, possession, or management of the assets, including, but not limited to, the filing of any lawsuits, liens, or encumbrances, or bankruptcy cases to impact the property and assets subject to this order." (Dkt. 2 at 3-4.) The Order Appointing Temporary Receiver also provided in relevant part that the Receiver "is empowered to . . . succeed to all rights to manage all properties owned or controlled, directly or indirectly, by the Wextrust Defendants, including, but not limited to, those entities listed on Exhibit A, pursuant to the LLC and operating agreements relating to each entity." (Dkt. 2 at 3.) On September 11, 2008, the Court entered an Amended Order Appointing Temporary Receiver that also contained the prior language enjoining bankruptcy filing and also provided in relevant part:

> [I]f in accordance with this order the Receiver determines that any
> of the Wextrust Entities and entities they own or control should

undertake a bankruptcy filing, the Receiver, be and he hereby is, authorized to commence cases under title 11 of the United States Code for such entities in this district, and in such cases the Receiver shall prosecute the bankruptcy petitions in accordance with title 11 subject to the same parameters and objectives as a chapter 11 trustee and shall remain in possession, custody, and control of the title 11 estates subject to the rights of any party in interest to challenge such possession, custody, and control under 11 U.S.C. § 543 or to request a determination by this Court as to whether the Receiver should be deemed a debtor in possession or trustee, at a hearing, on due notice to all parties in interest, before the undersigned.

(Dkt. 36 at 10.) Nothing in the Amended Order prevented any party to petition the Court for relief from any part of the Amended Order, as now Objectors have done. On October 24, 2008, the Court entered the Order on Consent Imposing Preliminary Injunction and Other Relief Against the Defendants and Relief Defendant (Dkt.65), which incorporates the Amended Receivership Order as Exhibit D.

Since being appointed, the Receiver provided immediate value to the estate by identifying assets that should be subject to the asset freeze. On August 28, 2008, the SEC, based on information discovered and provided by the Receiver, filed an Amended Complaint (Dkt.16) and sought and received emergency relief to freeze the assets of Relief Defendant Elka Shereshevsky. (Dkt. 14.) The Receiver, assisted by expert accountants and real estate advisors, has continued to undertake an extensive investigation of the Wextrust Entities' financial condition and recently represented to the Court how it has been presented with a complex legal and factual scenario implicating (we now know) over 1,400 victims who invested in approximately 60 securities offerings that raised over $250 million. (Dkt. 54 at 8.) The Receiver's task is further compounded by a complex web of roughly 120 affiliated Wextrust entities and operations distributed throughout the Middle East, Africa and the United States. *Id.* The Receiver is in the

4

process of preparing an analysis of the financial condition of the estate and will be filing

it before November 14, 2008. The Receiver's professionals have only recently completed

their analysis of the financial condition of the various real estate projects and are

continuing to identify the appropriate disposition for many of the properties. The

Receiver's real estate consultant has commenced the process of identifying possible

purchasers for the various properties and will also recommend to the Receiver how to

maximize value for other properties where a sale is impracticable. As part of this

process, the professionals will recommend asset sales, abandonment of insolvent

properties to secured creditors and possible spinoffs of such properties to investors either

through a plan in the receivership court or through targeted pre-packaged bankruptcy

cases, or traditional bankruptcy filings. In addition, the Receiver has not completed the

process of determining how best to maximize value for the various mining assets and

overseas mineral interests and is formulating a plan to do so. The continuation of this

ongoing work is vital to maximizing the assets available for eventual distribution to the

more than 1,400 defrauded investors.

## ARGUMENT

### A. The District Court has Discretion to Enjoin Filing of Bankruptcy Petitions and Should Continue to Do So Here

It is well-established in the Second Circuit that a receivership debtor has no

absolute right to file a bankruptcy petition. *U.S. v. Royal Business Funds Corp.*, 724 F.2d

12, 16 (2d Cir. 1983) ("a debtor subject to a federal receivership has no absolute right to

file a bankruptcy petition and federal courts have disallowed petitions where a liquidation

under a receiver is substantially underway.").

This authority is consistent with the well-settled proposition that a district court overseeing a receivership has authority to enter a blanket stay of all litigation against the receivership. *SEC v. Wencke*, 622 F.2d 1363, 1369-70 (9th Cir. 1980) ("The power of the district court to issue a stay, effective against all persons, of all proceedings against the receivership entities rests as much on its control over the property placed in receivership as on its jurisdiction over the parties to the securities fraud action."). In *Wencke*, the Court held that providing the receiver time to sort out the financial status of the receivership entities, to disentangle the obscure or complex finances of the receivership entities, and to prevent expensive litigation against the receivership were all legitimate reasons for a district court to enter a blanket stay of litigation against the receivership, subject to the right of third-parties to seek leave of court to modify the stay. *Id.* at 1373. The Ninth Circuit further held that when deciding whether to lift the blanket stay, the district court should "compar[e] . . . the interests of the receiver (and the parties the receiver seeks to protect) and of the moving party." *Id.* at 1374. According to the Ninth Circuit, when a motion for relief from the stay is made soon after the receivership is commenced, "the receiver's need to organize and understand the entities under his control may weigh more heavily than the merits of the party's claim." *Id. See also U.S. v. Acorn Technology Fund, LP*, 429 F.3d 438, 443 (3d Cir. 2005) (adopting subsequent articulation of *Wencke* test for lifting blanket stay of litigation against receivership: "(1) [w]hether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party's underlying claim"); *Liberte Capital Group, LLC v.*

*Capwill*, 462 F.3d 543, 551-52 (6th Cir. 2006) (district court has power to enter blanket stay of litigation against non-parties to protect receivership assets based upon its "power over the assets in question").

As discussed briefly above, the Court's power to enter a blanket stay of litigation to protect the receivership assets extends to an injunction against the filing of a bankruptcy petition. Contrary to the Movants' contention, the Second Circuit has held that a district court overseeing a receivership may restrain parties from filing for bankruptcy protection for the receivership estate. In *Royal Business Funds*, the Second Circuit affirmed a district court's injunction that prohibited a receivership debtor that had consented to a Small Business Administration receivership and that had been advanced funds by the SBA from filing a bankruptcy petition. The Court held that the following facts justified the injunction: there were no significant creditors other than the SBA; the debtor consented to the receivership and had been advanced $4 million by the SBA; "[t]he receiver has been operating the company for over a year"; the bankruptcy filing would "*disrupt the receiver's attempts to improve the company's fortunes*"; and, the movant "*offered no reasons justifying the filing of a petition at this time but merely asserted an unqualified right to do so.*" *Id.* (emphasis added) [1]

---

[1]     The Movants argue that the district court decision enjoining the bankruptcy filing in *Royal Business Funds* was grounded in explicit statutory language contained in the Small Business Administration Act that evidenced a countervailing Congressional intention to the general rule that the right to file a bankruptcy petition cannot be stayed or enjoined. Movants' Memorandum at 14. Be that as it may, the Second Circuit did not adopt the district court's reasoning and affirmed the injunction based upon the facts set forth above. The Second Circuit also stated explicitly that an SBA receivership is governed by the same principles that govern any other federal equity receivership, apparently going out of its way to disavow the district court's reasoning. *Royal Business Funds*, 724 F.2d at 16 (noting decisions that permit injunctions against bankruptcy petitions when a receivership is substantially under way apply to the SBA receivership because "a receivership created under the [Act] is governed by principles applicable to federal equitable receivers generally.")

The Second Circuit also cited approvingly to *SEC v. Lincoln Thrift Assoc.*, 577

F.2d 600 (9th Cir. 1978), for the proposition that a district court may enjoin the filing of a

bankruptcy petition when a receivership liquidation is substantially underway.  In *Lincoln*

*Thrift*, the Ninth Circuit upheld a district court's injunction that prohibited non-party

creditors of an SEC receivership debtor from filing a bankruptcy petition for the debtor

and its refusal to transfer the receivership case to bankruptcy court.  The Ninth Circuit

held that it would be "impractical" to turn the receivership over to a bankruptcy court

because of the district court's knowledge of the case, the receiver's expertise developed

in making his liquidation recommendation, and the fact that a distribution had already

been made.  *Lincoln Thrift Assoc.*, 577 F.2d at 609.  The Ninth Circuit also noted that

"[n]ewly instituted bankruptcy proceedings would result in expending additional

expenses and fees over and beyond the [funds] already paid out."  *Id.*  Finally, the court

held that, although liquidation in bankruptcy is generally preferable to liquidation in a

receivership, a district court may exercise its discretion and continue the receivership

when the receivership is preferable to a bankruptcy liquidation.  *Id.  See also U.S. v.*

*Vulpis*, 961 F.2d 368, 371 (2d Cir. 1992) (rejecting contention that receivership court can

never enjoin bankruptcy filing and affirming injunction where debtor's principal agreed

to restraining order enjoining interference with assets).  These cases make clear that,

contrary to the Movants' assertion, the Court has discretion to stay or enjoin the filing of

a bankruptcy petition by a receivership debtor *and by non-party creditors* of a

receivership debtor when the estate's interests would be better served by the receivership.

The Movants make much of the fact that the Second Circuit in *Royal Business*

*Funds* cited to a 95-year old Sixth Circuit case that held, under the former Bankruptcy

Act, that the right to file a bankruptcy case may not be restrained except by Congressional authority. Objectors' Memorandum at 12-13 (citing *In re Yaryan Naval Stores Co.*, 214 F. 563 (6th Cir. 1914). As discussed above, the Second Circuit held in *Royal Business Funds* that there is no absolute right to file a bankruptcy petition and merely cited *Yaryan Naval Stores* for the proposition that "pendency of an equitable receivership rarely precludes a petition in bankruptcy," and not for the proposition that Congressional authority is necessary to restrain the right to file bankruptcy. *Royal Business Funds*, 724 F.2d at 15. Similarly, the other cases cited by the Movants were decided under the former Bankruptcy Act, are from other jurisdictions, and their holdings are inconsistent with subsequent Second Circuit authority that recognizes a district court's authority to enjoin the filing of a bankruptcy petition for a receivership debtor. *See In re Am. & British Mfg. Corp.*, 300 F. 89 (D. Conn. 1924) (85-year old district court case that held that bankruptcy is an absolute right notwithstanding existence of receivership proceeding); *Jordan v. Ind. Energy Corp.*, 446 F. Supp. 516 (N.D. Tex. 1978) (court held that district court could never enjoin bankruptcy filing because, under preliminary injunction standard, injunction against bankruptcy filing would always cause debtor irreparable harm).

Here, continuation of the receivership is in the best interests of the investors and creditors. The Receiver is in the process of preparing an analysis of the financial condition of the estate and will shortly make a recommendation on how the cases should proceed. The Receiver's professionals have only recently completed their analysis of the financial condition of the various real estate projects and their appropriate disposition. The Receiver's real estate consultant is identifying possible purchasers for the various

properties and will also recommend how to maximize value for other properties where a sale is impracticable through, for example, asset sales, abandonment of insolvent properties to secured creditors and possible spinoffs of such properties to investors either through a plan in the receivership court or through targeted pre-packaged bankruptcy cases, or traditional bankruptcy filings. Moreover, the Receiver has not completed the process of determining how best to maximize value for the various mining assets and overseas mineral interests and is formulating a plan to do so. To permit deviation from this process could derail potential asset sales if the property proposed for sale was subject to bankruptcy filings and would certainly disrupt any effort by the Receiver to formulate a coordinated plan to dispose of the properties. Elimination of the injunction would also permit numerous potential bankruptcy filings in different jurisdiction across the country, depriving the defrauded investors of the protections afforded to them by the receivership and could render any plan or recommendation put forward by the Receiver meaningless.

Most importantly, the proposed modification to the preliminary injunction would not terminate this receivership. Instead, it could result in piecemeal bankruptcy filings all over the country. Because the process would not be coordinated with the receivership, the Receiver could be caught right in the middle of lawsuits in multiple jurisdictions where the various bankruptcy cases could be filed and this Court could be inundated with litigation by other claimants. The receivership would continue in this Court, hampered by numerous competing claims by different trustees presiding over the various bankruptcy cases which would substantially multiply the expenses of administering the various estates and substantially diminish financial recoveries for the investors.

While purporting to protect a select group of investors' interests, the Movants are inviting chaos, without any articulated benefit to the receivership estate. The filing of insolvency bankruptcy cases could cost investors many thousands of dollars per case. In addition, the receivership could be forced to defend or oppose such filings since many of the Movants do not appear to have standing as creditors to file bankruptcy cases in light of the fact that they are equity interest holders in LLCs that own real estate, mining and other assets, or have equity investment in certain high-yield debt funds, none of which appear to satisfy the Bankruptcy Code's requirements for filing an involuntary petition.

Notwithstanding these overwhelming facts that favor continuation of the receivership, the Movants erroneously contend that their request to file involuntary bankruptcy petitions for one or more of the receivership entities is "mandated" by Second Circuit precedent that favors bankruptcy liquidations over receivership liquidations. Movants' Memorandum at 8-11. Although the Second Circuit has stated in *dicta* in various cases a general preference for bankruptcy liquidations over receivership liquidations, this result is far from mandatory. In fact, in none of the cases cited by the Movants did the Second Circuit require the receiverships to file for bankruptcy. Moreover, the cases cited by the Movants actually make clear that whether a bankruptcy liquidation is preferable to a receivership liquidation depends upon the facts and circumstances of each case. *See SEC v. Am. Board of Trade, Inc.*, 830 F.2d 431, 438 (2d Cir. 1987) (stating in *dicta* that district court should not transform itself into a court of bankruptcy); *U.S. v. Royal Business Funds*, 724 F.2d 12 (2d Cir. 1983) (discussed in detail above); *Esbitt v. Dutch-American Mercantile Corp.*, 335 F.2d 141, 143 (2d Cir. 1964) (where receivership was almost completed "it would apparently not be in the

11

interests of the parties to direct that further proceedings be diverted into bankruptcy channels"). *See also SEC v. Bartlett*, 422 F. 2d 475, 478 (8th Cir. 1970) ("The observations of the Second and Ninth Circuits in these two cases enunciate the familiar equity rule that the federal courts should sparingly exercise their powers to appoint receivers and to administer and liquidate corporations. *Whether it is appropriate to do so depends on the underlying circumstances*.") (emphasis added).

Rather than mandating the filing of a bankruptcy case, the Second Circuit recently approved of a receivership liquidation and equitable distribution in a case very similar to the one pending before the Court. In *SEC v. Credit Bancorp, Ltd.*, 290 F.3d 80 (2d Cir. 2002), the Second Circuit affirmed a district court order that permitted the receivership liquidation of an entity that perpetrated a Ponzi scheme and approved of the receiver's equitable *pro rata* plan of distribution of the proceeds to injured investors. The Second Circuit held that the district court had the "equitable authority . . . to treat all of the fraud victims alike (in proportion to their investments) and order a *pro rata* distribution." *Id.* at 89.[2]

Finally, the Movants contend that the Second Circuit's decision in *Eberhardt v. Marcu*, 530 F.3d 122 (2d Cir. 2008) stands for the proposition that "equity receivers are not authorized to sue to avoid and recover fraudulent conveyances under New York's Debtor and Creditor law," and, therefore, the Court should prefer bankruptcy over the receivership. Movants' Memorandum at 9-10. In that case, the Court reasoned that a receiver stands in the shoes of the entity over which he serves as receiver and may only

---

[2]    Judge Newman, who authored the *Credit Bancorp* decision, also sat on the panel that decided the *American Board of Trade* decision cited by the Movants for the proposition that Second Circuit jurisprudence mandates that bankruptcy always be preferred over a receivership liquidation.

assert claims that could otherwise be asserted by that entity. *Id.* at 132-134. Because the

receiver in *Eberhardt* was only the receiver over the individual transferor of the property,

and not the receiver for any of Eberhardt's creditors, he did not have creditor standing to

assert a fraudulent conveyance claim to recover Eberhardt's transfer of property. *Id.*

Here, of course, the Receiver is receiver for all of the entities in the receivership and thus

would have creditor standing to bring fraudulent conveyance claims to recover property

transferred to third parties. *Id.* at 133-34 (noting that receiver over corporate entities

manipulated by individual would had standing to bring fraudulent conveyance claims

against transferees of individual's property because they are creditors of the individual).[3]

### B. The Preliminary Injunction Order Appropriately Enables the Receiver to File Bankruptcy Cases as Trustee or Debtor- In- Possession

The Movants contend that the Court lacks the power to appoint a receiver as

trustee or debtor-in-possession in the event that the Receiver determines that the best

interests of one or more of the receivership estates requires the filing of a bankruptcy

petition. Movants' Memorandum at 4-7. The Movants, however, have not contested the

Court's authority to exercise its inherent equitable powers and its powers under the

federal securities laws to appoint new management for the receivership debtors as was

---

[3]     *See also Scholes v. Lehmann*, 56 F.3d 750, 755 (7th Cir. 1995) (Posner, *J.*) (noting that, as compared to equity receiverships, "[c]orporate bankruptcy proceedings are not famous for expedition"). In *SEC v. TLC Investments and Trade Co.*, 147 F. Supp. 2d 1031 (C.D. Ca. 2001), a group of approximately 35 percent of the 2,000 investors in a Ponzi scheme who were unsatisfied with the receiver's administration of the estate requested that the court order him to administer the receivership as a trustee would administer a bankruptcy estate under the Bankruptcy Code, including notice to them of asset sales and the appointment of a creditors' committee. 147 F. Supp. 2d at 1036. The district court denied the investors' request, finding that it was in the best interests of all investors for the receiver to liquidate the receivership estate's assets, which included distressed real estate and other assets located throughout the United States, and other assets located both in the United States and offshore. *Id.*

done by the district court in *In re Bayou Group, L.L.C.*, 363 B.R. 674 (S.D.N.Y. 2007) (McMahon, J.).[4] As the *Bayou Group* court held, once the receiver in that case was appointed as manager of the debtor entities in addition to his appointment as receiver, he was authorized to continue to manage the entities as debtor-in-possession once the entities filed for bankruptcy protection. *Bayou Group,* 363 B.R. at 684-88.[5]

Here, the Court's order appointing the Receiver states explicitly that the Receiver "is empowered to . . . succeed to all rights to manage all properties owned or controlled, directly or indirectly, by the Wextrust Defendants, including, but not limited to, those entities listed on Exhibit A, pursuant to the LLC and operating agreements relating to each entity." (Dkt. 65 at 31 (Exh. D at 10).). The Court's order further empowers the Receiver to take possession and control of all of the Wextrust Defendants' assets, have exclusive control over all of their accounts, and engage employees to carry out the Receiver's duties. (Dkt. 65 at 26 (Exh. D at 5.) For all intents and purposes, this language gives the Receiver the power of the managing member of the LLCs. The language in the Court's order is similar to the language used by the *Bayou* court when appointing the receiver there as manager of the receivership debtors. *Bayou*, 363 B.R. at 681 ("[The receiver] shall succeed to be the sole and exclusive managing member and representative of each of the Bayou Entities with the sole and exclusive power and authority to manage and direct the business and financial affairs of the Bayou Entities."). Although the Court did not identify the Receiver here specifically as "the sole and

---

[4]     *See also SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1103 (2d Cir. 1972) ("Once the equity jurisdiction of the district court has been properly invoked by a showing of a securities law violation, the court possesses the necessary power to fashion an appropriate remedy.").

[5]     Indeed, Dechert LLP is supporting this reading of the *Bayou Group* district court opinion in its representation of the Bayou Group and its receiver on appeal to the Second Circuit. *See Adams v. Receiver Jeff J. Marwill et al.*, 07-1508-bk (2d Cir.).

exclusive managing member and representative" of the entities, the effect of the Court's order, empowering the receiver to succeed to all rights of the Wextrust Defendants to manage all of their properties and be the sole authorized signatory on their accounts, is functionally equivalent to the language used by the court in the *Bayou* case.

If the Court were to accept the Movants' argument that the Receiver cannot continue in possession of the entities after the receiver files one or more voluntary petitions (or the Movants file one or more involuntary petitions), then chaos would ensue upon a bankruptcy filing because, under the Movants' rationale, no one would be authorized to manage the entities unless and until a trustee is appointed. Movants argue that the provision amounts to withdrawal of reference without a demonstration of "cause" and a pre-emptive strike at the jurisdiction of the Bankruptcy Court and the power of the U.S. Trustee's Office. This is also incorrect. All the provision does is ensure that bankruptcy cases are filed by one with authority and standing to do so. If creditors desire to elect a trustee once a bankruptcy case is filed, nothing prevents them from exercising statutory rights under the Bankruptcy Code. This provisions does not impair creditors' rights under section 702 and 1104 of the Bankruptcy Code which describe the process for trustee appointment and election. [6]

## CONCLUSION

For the reasons set forth above, the Court should deny the Movants request to enable the Receiver in this complicated enforcement proceeding an opportunity to

---

[6]     The SEC does not contest the Movants' right to seek the appointment of a Chapter 11 trustee once a bankruptcy case is filed by the receiver under the legal standard for appointment of a trustee contained in 11 U.S.C. § 1104. Nor does the SEC contest the ability of the Movants to seek appropriate relief from this Court on notice. In fact, the SEC staff has indicated that it is willing to amend the Preliminary Injunction Order to permit any creditor to apply to this Court on three days notice for an order enabling the filing of an involuntary bankruptcy case upon a showing that such relief is appropriate and beneficial to the receivership estate.

propose an orderly plan to maximize value for the investors in the various Wextrust entities. We are not ruling out the filing of bankruptcy cases by the Receiver. Rather, the protective provisions contained in the Preliminary Injunction simply maintain an orderly process that enables the Receiver, creditors and investors to assess whether one or many bankruptcy cases will benefit the hundreds of investors whose investments in the Wextrust entities are in jeopardy. To modify the Preliminary Injunction Orders as the Movants request would enable numerous bankruptcy filings to occur all over the country, eviscerating this Court's jurisdiction, and subjecting the various investors and creditors to tremendous expenses without any clear financial benefit. The Receiver appointed in this case is a fiduciary to this Court and to the receivership estate as a whole—including investors and creditors. He has an obligation to recommend to the Court and the stakeholders the best method to maximize recoveries, while at the same time providing the investors and creditors with a forum in which to voice their concerns and evaluate his proposals. Granting of the relief sought here would severely hamper the Receiver's ability to perform these important tasks.

Dated: New York, New York
      November 6, 2008

                              _Alistaire Bambach_/sk
                              Alistaire Bambach (AB-5891)
                              Neal Jacobson (NJ-3937)
                              Attorney for Plaintiff
                              SECURITIES AND EXCHANGE COMMISSION
                              New York Regional Office
                              3 World Financial Center, Room 4300
                              New York, New York 10281

***Of Counsel:***
      Alex M. Vasilescu
      Steven G. Rawlings
      Danielle Sallah