UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>      Plaintiff,<br><br>–against–<br><br>STEVEN BYERS, JOSEPH SHERESHEVSKY, WEXTRUST CAPITAL, LLC, WEXTRUST EQUITY PARTNERS, LLC, WEXTRUST DEVELOPMENT GROUP, LLC, WEXTRUST SECURITIES, LLC, and AXELA HOSPITALITY, LLC,<br><br>      Defendants,<br><br>    - and -<br><br>ELKA SHERESHEVSKY,<br>      Relief Defendant. | No. 08 Civ. 7104 (DC)<br>ECF Case |

**DECLARATION OF MITCHELL P. KAHN IN SUPPORT OF
RECEIVER'S OPPOSITION TO INTERNATIONAL AD-HOC COMMITTEE OF
WEXTRUST CREDITORS' MOTION OBJECTING TO ENTRY AND SEEKING
MODIFICATION OF PRELIMINARY INJNUCTION**

STATE OF ILLINOIS  )
          ) ss.:
COUNTY OF LAKE   )

    MITCHELL P. KAHN, being duly sworn, deposes and says:

    1.  I am a Chief Executive Officer of Hilco Real Estate, LLC ("Hilco"). This declaration (the "Declaration") is submitted in support of the Opposition of Timothy J. Coleman, duly appointed receiver herein ("Receiver"), to the International Ad-Hoc Committee of Wextrust Creditors' Motion Objecting to Entry and Seeking Modification of Preliminary Injunction (the

"Opposition"). Except as otherwise indicated, I have personal knowledge of the matters set forth herein and, if called as a witness, would testify competently thereto.[1]

2. Upon entry of the initial Receivership Order[2] and the retention of Hilco by the Receiver, I and others under my direction, have been assisting the Receiver in ascertaining, among other things, (i) the financial condition of the Wextrust Entities and Affiliates and, particularly, the real estate interests held by the Wextrust Entities and Affiliates and the loans held by the High Yield portfolio; (ii) measures needed to prevent further dissipation of the property and assets of Wextrust Entities and Affiliates; and (iii) whether one or more of the Wextrust Entities and Affiliates should undertake a bankruptcy filing.

3. In addition to ascertaining the financial condition of the Wextrust Entities and Affiliates, the Receivership Order also empower the Receiver to "preserve the *status quo*" and "prevent further dissipation of the property and assets" of the Wextrust Entities and Affiliates.

4. As noted above, the Receiver oversees numerous investments encompassing, among other things, real estate, debt offerings, and investment securities. Due to market conditions or circumstances particular to that entity or asset, the Receiver may need, from time to time, to use, sell, lease, convert or dispose of property of the Wextrust Group, either in public or private sales or other transactions on terms the Receiver reasonably believes to be most beneficial to the Wextrust Group.

5. Pursuant to the Receivership Order, the Receiver has directed us to perform valuations of the numerous properties held or controlled by the Wextrust Entities and Affiliates and make recommendations regarding the course of action, including sale, retention, relinquishment of interest and/or completion of projections.

---

[1] Certain of the disclosures set forth herein relate to matters within the knowledge of other members at Hilco, and are based on information provided by them.

[2] Capitalized terms not expressly defined herein shall have the meanings ascribed to them in the Opposition.

6. We are performing the requested analyses, but do not presently believe there is a need to file bankruptcies for any of the properties. In fact, until the analysis is complete, we cannot make an informed recommendation regarding the benefit of filing single or multiple bankruptcy cases. Although the Receiver may recommend filing bankruptcy cases for some of the Wextrust Entities after review of the real estate valuations and recommendations and other factors in consultation with his advisors, uninformed decisions to file cases without a sufficient basis or strategic plan can adversely affect the properties and put a taint on the properties. A premature bankruptcy case can necessitate an emergency sale. It can prevent adequate marketing efforts. It can prevent required capital improvements and other efforts to improve and prepare the property for sale, in order to maximize the potential return to the seller.

7. Indeed, with informed strategic and factual analyses, a bankruptcy sale process may benefit the receivership. For instance, a bankruptcy case can aid in facilitating transfers of good title. A bankruptcy case may increase the sale price if properly planned and executed. However, unplanned bankruptcy cases exacerbate distressed situations and can cause premature sales at fractions of real value.

8. We continually monitor the assets for any situation where an asset may need or benefit from a bankruptcy because a secured lender or creditor is enforcing rights or preventing continued operations that the Receiver deemed necessary or beneficial to the property. None of the properties have experienced that situation.

9. We also continue to perform the valuations and prepare recommendations. Although not yet final, we have found that many of the properties do not have significant equity.

10. I declare under penalty of perjury that the foregoing is true.

/s/ Mitchell P. Kahn
Mitchell P. Kahn

CH 23729.1 100196 000001 11/6/2008 12:25pm