UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE COMMISSION,

                Plaintiff,

  –against–

STEVEN BYERS, JOSEPH SHERESHEVSKY, WEXTRUST CAPITAL, LLC, WEXTRUST EQUITY PARTNERS, LLC, WEXTRUST DEVELOPMENT GROUP, LLC, WEXTRUST SECURITIES, LLC, and AXELA HOSPITALITY, LLC,

                Defendants,

    - and -

ELKA SHERESHEVSKY,

                Relief Defendant.

No. 08 Civ. 7104 (DC)
ECF Case

**DECLARATION OF JOHN SORDILLO IN SUPPORT OF
RECEIVERS' OPPOSITION TO INTERNATIONAL AD-HOC COMMITTEE OF
WEXTRUST CREDITORS' MOTION OBJECTING TO ENTRY AND SEEKING
MODIFICATION OF PRELIMINARY INJUNCTION**

STATE OF NEW YORK )
                              ) ss.:
COUNTY OF NEW YORK )

        JOHN SORDILLO, being duly sworn, deposes and says:

        1.      I am a partner of Deloitte Financial Advisory Services, LLP ("Deloitte"). This declaration (the "Declaration") is submitted in support of the Opposition of Timothy J. Coleman, duly appointed receiver herein (the "Receiver"), to the Motion of the International Ad-Hoc Committee of Wextrust Creditors Objecting to Entry and Seeking Modification of Preliminary Injunction ("Motion"). Except as otherwise indicated, I have personal knowledge of the matters set forth herein and, if called as a witness, would testify competently thereto.[1]

        2.      Upon entry of the Interim Receivership Order,[2] I, and others under my direction, have been assisting the Receiver in ascertaining, among other things, (a) the financial condition of the Wextrust Entities and Affiliates; (b) measures needed to prevent further dissipation of the property and assets of the Wextrust Entities and Affiliates; and (c) whether any or all of the entities within Wextrust should commence bankruptcy cases. In furtherance of our tasks, we have analyzed information regarding, among other things, Wextrust's cash management system, operations, real and tangible assets and secured and unsecured debt.

        3.      The Defendant Wextrust Entities either control or have ownership interests in over **240** legal entities, located in the United States, Israel and Africa, many with their own offices, assets and liabilities, operations, and books and records. The Wextrust Affiliates are usually organized as limited liability companies and hold title to real estate and other specific property. There are approximately 67 properties owned by Wextrust Affiliates. These properties are controlled by 39 legal entities in 13 states.

---

[1] Certain of the disclosures set forth herein relate to matters within the knowledge of other members of Deloitte, and are based on information provided by them and various pleadings and documents reviewed in this matter.

[2] Capitalized terms not expressly defined herein shall have the meanings ascribed to them in the Opposition.

4.  The majority of the properties owned by the Wextrust Affiliates generate very little or no cash flow. Overall the Wextrust Affiliates are forecasted to have negative cash flow totaling approximately $145,000 for the period from October 1, 2008 through January 31, 2009 (the "Forecast Period"). This amount does not take into account approximately $400,000 of property taxes which have not been included in the forecast. Among the Wextrust Affiliates that own properties, the Wextrust Equity Partners ("WEP") properties generate the majority of the cash flow. Over the Forecast Period, WEP properties are expected to generate approximately $809,000 of net cash flow after debt service and tenant improvement requirements. This amount does not include property taxes due in the amount of approximately $400,000. Of the 23 active WEP entities, 10 of those entities are forecasted to generate Net Operating cash flow greater than $150,000 over the Forecast Period. After taking into account debt service, those 10 entities are forecasted only to generate $1.15 million. This amount does not include required tenant improvements and the property taxes. The other 13 WEP properties are forecasted to generate approximately $285,000 after debt service during the Forecast Period. Only one property is forecasted to generate negative cash flow after debt service during the forecast period. In total, the 23 entities are forecasted to generate approximately $16,000 of cash flow after debt service, on average, per month. Again, this amount does not include required tenant improvements and property taxes.

5.  The only other Wextrust Affiliate entities generating cash flow are two of the hotel properties, the CP Phoenix and the Drake Hotel. Those properties are currently managed by third party managers and are cash flow positive and currently sustaining themselves. Over the Forecast Period, CP Phoenix is forecasted to generate approximately $155,000 in positive net operating cash flow. The Drake Hotel is forecasted to generate approximately $6,000 of positive net operating cash flow over the Forecast Period. The Wexford Development assets which make

3

up the bulk of the remaining properties are development properties and are not forecasted to generate operating cash flow.

6. We have assisted the Receiver with the development of monthly cash forecasts for the Wextrust Entities. The Receiver's assets are limited but appear to be sufficient to satisfy the ongoing business operations and preserve value during the time necessary for the Receiver to analyze and develop a strategic plan. Any additional unbudgeted costs and expenses may severely impact the Receiver's ability to preserve value, maintain the operations and assets of the estate, conduct the analyses required by the Court pursuant to the Receivership Order and ultimately make distributions to investors and creditors.

7. The filing of bankruptcy cases will greatly increase the cost of administering the Wextrust estate. While it is not possible to estimate these costs accurately, many of the individual legal entities do not appear to generate sufficient cash flow to support the costs of administration and other costs common to a bankruptcy proceeding.

8. Bankruptcy cases will be a burden on the resources of the estate. The cost of bankruptcy is significant and cannot be sustained by some of the Entities. There are filing costs that must be paid. Each filing will also require the submission of affidavits, first day motions and possibly financing plans. There may be increased capital needs placed on the Wextrust estate as a result of deposit requirements for utilities and potentially increases in working capital requirements as a result of the reduction in vendor payment terms. Monthly utilities are currently forecasted to cost the WEP entities about $117,000 per month. The combination of bankruptcy administration costs and increased working capital requirements would reduce the cash available to maintain and preserve the value of the estate, which are predominantly real estate assets.

9. During the pendancy of each bankruptcy case, administrative costs will be incurred, including the costs associated with filing the Statement of Financial Affairs and Schedules, monthly operating reports and the cost of statutory committees and their professionals (legal, accounting and financial advisory professionals). While it is no one's intent to increase the costs of administering the estates, each committee is likely to instruct their professionals to conduct site visits, interview management, perform the other normal due diligence involved in a bankruptcy proceeding, investigate transactions and prepare separate valuations. Unless utilized for a specific strategic purpose, investors will ultimately receive less in distributions to the extent the expense of prosecuting multiple insolvency proceeding consumes assets otherwise available for distribution.

10. In addition to the cost, bankruptcy cases place substantial burdens on the limited management resources available to administer to the day-to-day operations. For example, management would need to renegotiate with at least 26 financial institutions that currently finance approximately 63 properties that represent in some cases the only asset in a given estate. In some cases, management would also be required to seek sources of debtor-in-possession financing, which would require substantial amounts of time and due diligence.

11. There are other costs that cannot be calculated, but may arise nevertheless. For, example, assets sold in bankruptcy proceedings often carry a negative perception. People often view the assets of a bankruptcy estate as impaired. The potential loss in value may be viewed as a cost of a bankruptcy filing. Given the marginal cash positions of some estates, the Receiver may be forced to sell assets immediately, under less than optimal economic conditions. This also may give rise to lower recoveries to the estate.

12. In such bankruptcy cases, the debtors also incur non-traditional expenses not otherwise incurred by the Wextrust Entities and Affiliates. For example, the debtors would incur

5

the administrative cost of quarterly fees to the United States Trustee simply to operate as debtors in possession.

13. The Receiver presently incurs some additional administrative costs associated with the receivership. Such costs include public reporting of the receivership status through the Standardized Fund Accounting Report (SFAR), the filing of Interim Receiver Reports, filing professional fee applications for submission to the SEC, the Court and other parties to review, and filing and providing notice to parties in interest of various requests for authority to conduct certain actions/transactions, such as sale/dispositions. The costs incurred for these protective measures, however, are likely to be less than what would be incurred if multiple, separate bankruptcy filings are initiated prior to a determination of the need to implement a bankruptcy strategy.

14. I declare under penalty of perjury that the foregoing is true.

John Sordillo

CH 23741.5 100196 000001 11/6/2008 11:52am