USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1-7-09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - -x

SECURITIES AND EXCHANGE
COMMISSION,

               Plaintiff,

       - against -

STEVEN BYERS, JOSEPH SHERESHEVSKY,
WEXTRUST CAPITAL, LLC, WEXTRUST
EQUITY PARTNERS, LLC, WEXTRUST
DEVELOPMENT GROUP, LLC, WEXTRUST
SECURITIES, LLC, and AXELA
HOSPITALITY, LLC,

               Defendants.

- - - - - - - - - - - - - - - - -x

**MEMORANDUM DECISION**

08 Civ. 7104 (DC)

**APPEARANCES:**    MERINGOLO & ASSOCIATES, P.C.
                      By: John C. Meringolo, Esq.
               116 West 23rd Street, Suite 500
               New York, New York 10011
               Attorneys for Intervenors
               Avrohom and Chana Shereshevsky

               ANDREW M. CALAMARI
               ASSOCIATE REGIONAL DIRECTOR
               SECURITIES AND EXCHANGE COMMISSION
                  By: Alexander M. Vasilescu, Esq.
                     Steven G. Rawlings, Esq.
                     Danielle Sallah, Esq.
               Three World Financial Center
               New York, New York 10281
               Attorneys for Plaintiff
               Securities and Exchange Commission

**CHIN, District Judge**

       On August 11, 2008, the Securities and Exchange Commission (the "SEC") filed a complaint against Joseph Shereshevsky, accusing him of a massive securities fraud in which hundreds of investors were defrauded of hundreds of millions of dollars. Weeks later, on August 28, 2008, the SEC amended the complaint to add Elka Shereshevsky, Joseph's wife, as a Relief

Defendant based on evidence that Joseph Shereshevsky regularly transferred investors' assets into accounts controlled by his wife.

On the same day the complaint was amended, the SEC sought and obtained an order freezing the assets of Joseph and Elka Shereshevsky and the Wextrust entities they controlled (the "Asset Freeze Order"). One of the properties frozen was a home at 125 12th Street in Lakewood, New Jersey (the "Lakewood Property") currently occupied by the Intervenors in this action, Avrohom and Chana Shereshevsky ("Intervenors"),[1] who are, respectively, the brother and sister-in-law of Joseph Shereshevsky. Intervenors, who have not been implicated in any crime or named as relief defendants, move for an order releasing the Lakewood Property from the Asset Freeze Order on the ground that the SEC has not met its evidentiary burden to freeze the property of a person who has not been accused of wrongdoing or named as a relief defendant. The SEC argues that the evidence in the record is sufficient to meet its burden. For the reasons set forth below, I agree.

## BACKGROUND

The parties do not disagree much on the facts, just on their interpretation. Unless otherwise indicated, the following

---

[1] The SEC does not object to Avrohom and Chana Shereshevsky's motion to intervene as of right. (See Nov. 5, 2008 SEC Letter to the Court).

facts -- drawn from the affidavits, documents, and briefs submitted by the parties -- are undisputed:

On March 4, 1991 Hadassah Horowitz, Joseph Shereshevsky's sister, purchased the Lakewood Property "exclusively for the benefit and use of" Avrohom Shereshevsky, her brother, and his family. (Horowitz Aff. ¶¶ 1-3). Because the Lakewood Property was too small to accommodate Avrohom Shereshevsky's large family, he spent approximately $70,000 before the family moved in to finance the addition of a second story. (A. Shereshevsky Aff. ¶ 7). Until July 2004 Horowitz and her husband made all the mortgage payments on the Lakewood Property. (Id. ¶ 5).

On July 2, 2004, Horowitz deeded the Lakewood Property to Elka Shereshevsky, Joseph Shereshevsky's wife, "with the understanding between us that the [Lakewood Property] would continue [to] be the property of my brother, Intervenor, Avrohom Shereshevsky, and his wife, Chana Shereshevsky, for the benefit of his family." (Horowitz Aff. ¶ 6). According to the deed, Elka Shereshevsky paid $178,000 in consideration for the property. (Intervenor Mem. Exh. F). According to Horowitz, Chana Shereshevsky, and Avrohom Shereshevsky, however, no money ever changed hands. (Horowitz Aff. ¶ 7; C. Shereshevsky Aff. ¶ 10; A. Shereshevsky Aff. ¶ 10).

On July 12, 2004, Elka Shereshevsky refinanced the Lakewood Property with a $100,000 mortgage from First Financial Equities. (A. Shereshevsky Aff. ¶ 11). In a rider to the 2004

mortgage,[2] Elka Shereshevsky agreed to occupy and use the Lakewood Property as her second home and "not subject the Property to any timesharing or other shared ownership arrangement or to any rental pool or agreement that requires Borrower either to rent the Property or give a management firm or any other person any control over the occupancy or use of the Property." (Sallah Decl. Exh. A). It does not appear that Elka Shereshevsky ever intended to comply with this requirement. At the time she signed this Rider, Elka Shereshevsky was permanently living in Norfolk, Virginia with her husband, Joseph Shereshevsky; Chana and Avrohom Shereshevsky were permanently living in the Lakewood Property. (A. Shereshevsky Aff. ¶¶ 15-16; C. Shereshevsky Aff. ¶¶ 15-16).

The parties dispute how the proceeds of the mortgage refinancing were used. Intervenors claim Elka Shereshevsky used the proceeds to pay off the previous mortgage on the Lakewood Property and to make the mortgage payments on the home through July 2008. (A. Shereshevsky Aff. ¶¶ 11-12). This assertion is contradicted by evidence uncovered by the Receiver. According to the Receiver, at least $47,501 of the funds used to pay the mortgage on the Lakewood Property through 2008 were drawn from accounts into which funds from Wextrust investors and other third parties were also deposited. (Warren Decl. ¶¶ 32-38).

---

[2] Notably, Intervenors did not attach this rider to the copy of the 2004 mortgage they provided to the Court with their brief. The rider is only before the Court because the SEC provided a copy.

-4-

On July 3, 2008, Elka Shereshevsky conveyed the Lakewood Property, subject to the outstanding mortgage, to Intervenors for $1. (A. Shereshevsky Aff. ¶ 13). On August 1, 2008, Wachovia Corporation froze the assets in several Wextrust accounts in response to a Department of Justice request. (Am. Compl. ¶ 85). Days later, Joseph Shereshevsky directed his wife, Elka, to open an account with BB&T Bank in Norfolk, Virginia, into which he deposited assets from various Wextrust entities. (Id. ¶ 86). On August 11, 2008, the SEC filed the complaint in this action against, inter alia, Joseph Shereshevsky and the Wextrust entities under his control.[3] On August 15, 2008, Elka Shereshevsky made a mortgage payment on the Lakewood Property from the BB&T Bank account she had opened earlier that month, after her husband's primary bank accounts were frozen by the Department of Justice, and after she had allegedly conveyed the property to Intervenors. (Warren Decl. ¶¶ 27-30). The BB&T Bank account, among others, was frozen when the SEC filed an Amended Complaint on August 28, 2008 adding Elka Shereshevsky as a Relief Defendant. (Am. Compl. ¶¶ 128-31).

## DISCUSSION

Intervenors bring this action to have the Lakewood Property released from the Asset Freeze Order on the ground that the SEC has not made the evidentiary showing required for an

---

[3] Joseph Shereshevsky has also been arrested and charged criminally with securities fraud.

-5-

asset freeze.[4] Specifically, they argue that no ill-gotten gains were used to purchase or make mortgage payments on the Lakewood Property, and that they are the legitimate owners of the home. They are unable, however, to rebut much of the SEC's evidence suggesting that the Lakewood Property was inextricably intertwined with Joseph Shereshevsky's allegedly fraudulent business dealings. Their failure to do so is fatal to their motion.

## A. Applicable Legal Standards

In a securities fraud case brought by the SEC, a federal court has the authority to freeze the assets of a party not accused of wrongdoing where that party: "(1) has received ill-gotten funds; and (2) does not have a legitimate claim to those funds." SEC v. Cavanagh, 155 F.3d 129, 136 (2d Cir. 1998); accord SEC v. Cherif, 933 F.2d 403, 414 n.11 (7th Cir. 1991). An asset freeze is a provisional remedy, the purpose of which is to ensure that, in the event the SEC obtains a judgment, money will be available to satisfy that judgment. See SEC v. Unifund Sal, 910 F.2d 1028, 1041 (2d Cir. 1990). In this respect, an asset freeze "functions like an attachment." Id. Perhaps for this reason, the SEC's burden of proof on an asset freeze is not as onerous as its burden would be for an injunction. See id. ("[A]n

---

[4] Although Intervenors make a handful of references to this Court's lack of subject matter jurisdiction, it is clear that the basis of their motion is that the Court exceeded its equitable authority when it included the Lakewood Property in the Asset Freeze Order.

-6-

ancillary remedy [such as an asset freeze] may be granted, even in circumstances where the elements required to support a traditional SEC injunction have not been established."); SEC v. Gonzalez de Castilla, 145 F. Supp. 2d 402, 419 (S.D.N.Y. 2001) (noting the "lesser standard applicable for extending the asset freeze").

To obtain an asset freeze either against a party accused of actual wrongdoing or a relief defendant, the SEC must show either a likelihood of success on the merits,[5] or that an inference can be drawn that the party has violated the federal securities laws. See Cavanagh, 155 F.3d at 136 ("The standard of review for an injunction freezing assets of a relief defendant is whether the SEC has shown that it is likely to succeed on the merits; the SEC need not make any showing that a future violation is likely, because it is not accusing the nominal defendant of any wrongdoing."); Unifund Sal, 910 F.2d at 1041 (holding that SEC could obtain asset freeze order because "[t]here is a basis to infer that [defendants] traded on inside information."); see also SEC v. Heden, 51 F. Supp. 2d 296, 298 (S.D.N.Y. 1999) ("To obtain an asset freeze, all the SEC need show is that it is likely to succeed on the merits, or that there is a basis to

---

[5] To show likelihood of success on the merits, the party seeking the injunction "need not show that success is an absolute certainty. He need only make a showing that the probability of his prevailing is better than fifty percent. There may remain considerable room for doubt." Abdul Wali v. Coughlin, 754 F.2d 1015, 1025 (2d Cir. 1985).

infer that the appellants traded on inside information.") (internal citations and quotations omitted).

Intervenors in this case are, for all intents and purposes, relief defendants, even though they have not been formally named as such. Just like a relief defendant, they have not been accused of wrongdoing, but are merely in possession of assets or property that the SEC claims is ill-gotten and seeks to recover. See SEC v. George, 426 F.3d 786, 798 (6th Cir. 2005) (defining relief defendant). I will therefore apply the burden of proof applicable to relief defendants in this case.

## B. **Application**

Under the circumstances of this case, I conclude that the SEC has adduced sufficient evidence from which a reasonable fact finder could infer that Intervenors have received ill-gotten funds in the form of mortgage payments on the Lakewood Property and that they do not have a legitimate claim to the property. Hence, the Cavanagh factors have been met.

As to the first Cavanagh factor -- that the party has received ill-gotten funds -- there is evidence, discussed above, that some of the mortgage payments on the Lakewood Property were made from accounts containing Wextrust investor funds. While Intervenors argue that this does not prove the mortgage payments were made with ill-gotten gains -- in the sense that money is fungible, and it would be difficult, if not impossible, to trace specific Wextrust funds to specific mortgage payments -- "a freeze order need not be limited only to funds that can be

directly traced to defendant's illegal activity" for the reason that "the defendant should not benefit from the fact that he commingled his illegal profits with other assets." SEC v. Sekhri, No. 98 Civ. 2320 (RPP), 2000 U.S. Dist. LEXIS 10449, at **3-4 (S.D.N.Y. July 26, 2000) (internal citations omitted); see also SEC v. Egan, 856 F. Supp. 401, 402 (N.D. Ill. 1993) ("To be sure, Relief Defendants may not have been directly culpable in the securities violations, but what the SEC seeks to have them disgorge are the benefits that they derived from the violations by the culpable defendants."). This is sufficient evidence from which one could infer that certain mortgage payments made on the Lakewood Property were made with ill-gotten gains.

As to the second Cavanagh factor -- that the party has no legitimate claim to the frozen asset -- the suspicious circumstances under which Intervenors came to hold title to the Lakewood Property are sufficient to raise an inference as to the legitimacy of Intervenors' claim to the home. The evidence adduced by the SEC suggests that the Lakewood Property has been inextricably intertwined with the allegedly fraudulent dealings of Joseph Shereshevsky. It was not until July 3, 2008 -- just over a month before the SEC filed its complaint against Joseph Shereshevsky -- that Elka Shereshevsky, named by the SEC as a Relief Defendant, "sold" the Lakewood Property to Intervenors for $1. Elka Shereshevsky also made at least one mortgage payment on the Lakewood Property after she purportedly "sold" it to Intervenors. Based on the totality of the circumstances, I

conclude that the evidence adduced by the SEC raises an inference as to the legitimacy of the Intervenors' claim to the Lakewood Property. Cf. SEC v. Gonzalez de Castilla, 145 F. Supp. 2d 402, 420 (S.D.N.Y. 2001) (holding that SEC's asset freeze could continue against defendant because "in the totality of circumstances, the SEC has raised an inference" that defendant had violated federal securities laws).

Intervenors also argue that the SEC could recoup the losses to investors through other sources, without having to freeze the assets of Intervenors, who are innocent third parties. (Intervenor Mem. 9-10). This argument is without merit. Even if the argument were true -- and Intervenors offer no evidence to support it -- Intervenors should not be permitted to benefit from Joseph Shereshevsky's illegal activities. Cf. SEC v. Glauberman, No. 90 Civ. 5205 (MBM), 1992 U.S. Dist. LEXIS 10982, at **3-4 (S.D.N.Y. July 16, 1992).

## CONCLUSION

For the reasons set forth above, the motion to release the Lakewood Property from the Asset Freeze Order is denied.

SO ORDERED.

Dated: New York, New York
January 7, 2009

DENNY CHIN
United States District Judge

-10-