ANDREW M. CALAMARI (AC-4864)  Hearing Date:
ASSOCIATE REGIONAL DIRECTOR  May 21, 2009
Alistaire Bambach (AB-5891)  at 10:00 am
Steven G. Rawlings (SR-0623)
Danielle Sallah (DS-8686)
Neal Jacobson (NJ-3937)
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
3 World Financial Center
New York, New York 10281
(212) 336-1100

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION       :
                                         :
              Plaintiff,                 :
                                         : 08 Civ. 07104 (DC)
         - against -                     : ECF CASE
                                         :
STEVEN BYERS, et al.,                    :
                                         :
              Defendants.                :
------------------------------------------------------------------------x

**PLAINTIFF SECURITIES AND EXCHANGE
COMMISSION'S STATEMENT IN SUPPORT OF
RECEIVER'S PROPOSED PLAN OF DISTRIBUTION
AND JOINDER IN RECEIVER'S RESPONSE TO
<u>OBJECTIONS TO PROPOSED PLAN OF DISTRIBUTION</u>**

# TABLE OF AUTHORITIES

<u>SEC v. Credit Bancorp, Ltd.,</u> 290 F.3d 80 (2d Cir. 2002)………………………..………………….…………………1, 4

<u>SEC v. Wang,</u> 944 F.2d 80 (2d Cir. 1991)…………..………………..……………………………………………1, 5

<u>Official Committee of Unsecured Creditors of WorldCom, Inc. v. SEC,</u>

 467 F.3d 73 (2d Cir. 2006) …………..………………………………….5

The Securities and Exchange Commission ("SEC") submits this statement in support of the Receiver's Proposed Plan of Distribution, dated March 27, 2009 (the "Distribution Plan") and joins the Receiver's Response to Objections to the Proposed Plan of Distribution ("Receiver's Response"), dated May 11, 2009.

The Distribution Plan was formulated by the Receiver in collaboration with the SEC staff. The SEC fully supports the Distribution Plan and believes that it provides for a fair, reasonable, and equitable allocation of the Wextrust estate's assets among the estate's constituencies. *See, e.g., SEC v. Wang*, 944 F.2d 80, 85 (2d Cir. 1991) (district court may adopt any distribution plan that is "fair and reasonable."). Here, the SEC believes that the heart of the Distribution Plan – a *pro-rata* distribution to investors and unsecured creditors who are all victims of the Wextrust Ponzi scheme – is fair, reasonable, and equitable, and is consistent with Second Circuit and other legal authority. *See, e.g., SEC v. Credit Bancorp, Ltd.,* 290 F.3d 80 (2d Cir. 2002).

The SEC has reviewed the objections filed to the Distribution Plan. The SEC staff has also discussed the objections with the Receiver and his counsel. While the SEC understands the frustrations and disappointment experienced by all Wextrust investors and creditors, it believes that the Distribution Plan provides for the most fair, reasonable and equitable distribution of the Wextrust estate's property to Wextrust's investors and creditors consistent with applicable legal principles. The SEC agrees with the Receiver that, at bottom, each of the objections is an attempt by the objector to elevate his or her claim in equity at the expense of the remaining victims. For this reason, the SEC also joins the Receiver's Response to the various objections to the Distribution Plan. Because the Distribution Plan and the Receiver's Response already provide detailed factual and

legal support for implementation of the Distribution Plan over the various objections lodged against it, the SEC will only touch briefly on some of the main objections.

**Objections Based on Alternatives to the *Pro Rata* Distribution Approach**

As set forth in the Receiver's Response, a number of objections propose alternative approaches to the *pro-rata* distribution contemplated in the Distribution Plan. Specifically, certain investors believe that the Distribution Plan should take into account the timing of the investment (under the rationale that the later the investment was made, the more likely it can be traced and the less likely it was commingled); the performance and quality of the investment the investor thought he or she was investing in (under the rationale that certain investments may have performed better than others or can be attributable to a separate company); the risk profile of the investment (under the rationale that certain investors opted to invest in less risky investments than others); the nature of the investment (equity vs. debt investments); whether the investment can be traced (under the rationale that traced funds should be returned to individual investors); and whether investors in certain investments are willing to take over management of specific assets at their own expense.

All or most of these issues were considered by the Receiver and the SEC staff at the time the Distribution Plan was crafted and were addressed in the Distribution Plan itself. The Distribution Plan is premised upon the belief that a *pro-rata* distribution will provide the most equitable outcome in this case. These other possible methods of distribution ignore the fact that Wextrust investor funds were extensively commingled, Wextrust principals ignored corporate formalities, and that the Wextrust defrauded investors and creditors are similarly situated. Moreover, the *pro-rata* distribution

contemplated by the Distribution Plan is the most cost-effective and easily managed plan and would make more funds available for distribution to a wider pool of claimants.

**Treatment of Cash and In-Kind Distributions**

As set forth in the Receiver's Response, there are four principal methods that can be used to account for cash and in-kind distributions in cases where a *pro-rata* distribution to similarly situated victims is authorized. The SEC believes that the "net investor" method proposed in the Receiver's Response – subtracting prior cash distributions from the amount of the victim's allowed claim and adding in-kind distributions to the amount of the victim's allowed claim – is the most fair under the circumstances of this case. This method will allow for a recovery for the largest number of victims while at the same time striking a balance between the interests of both investors who received the majority of their prior distributions in cash and those who either received no distributions or chose to roll-over their distributions into other Wextrust investments.

**Wextrust Commodity Funds Objections**

Investors in the Wextrust commodity funds have objected to the Distribution Plan on the grounds that (i) they are not similarly situated to other Wextrust investors because they were not defrauded; (ii) the funds were properly operated and segregated; and (iii) Wextrust did not exercise control over the Commodity Funds.

As set forth in the Receiver's Response, the evidentiary record supports the conclusions that the Wextrust commodity funds investors were subject to the same fraudulent scheme as other Wextrust investors, their investments were used by the Wextrust principals to attract additional investors, their funds were commingled by the Wextrust principals with funds of other investors, and the Wextrust principals exercised

3

control over their funds as they did over other investor funds. Under these circumstances there is no legal or factual basis to distinguish the Wextrust commodity funds investors from other Wextrust investors and it would be inequitable to elevate their claims over those of other investors. Accordingly, their objections to the Distribution Plan should be overruled.

**TCF National Bank**

TCF National Bank ("TCF") objects to the Distribution Plan on the grounds that (i) neither the Receiver Order nor the Freeze Order authorizes the Receiver to liquidate and distribute the receivership assets in the manner set forth in the Distribution Plan; (ii) the Distribution Plan contravenes Second Circuit authority that equity receiverships not be used to effect liquidations; (iii) the Distribution Plan attempts to emulate a bankruptcy liquidation process without oversight of a bankruptcy court; and (iv) the Distribution Plan improperly strips TCF of its deficiency claim against the Wextrust estates.

As set forth in the Receiver's Response, the Receiver Order and Freeze Order contemplate the possibility of a future plan of distribution. In addition, the Second Circuit has recognized that liquidation by a receiver and a *pro-rata* distribution to victims of a Ponzi scheme supervised by a district court is perfectly appropriate. *E.g.*, *SEC v. Credit Bancorp Ltd.*, 290 F.3d 80. This is particularly true where, as here, the Receiver is in the process of actively managing estate businesses and enlarging the estate while engaged in simultaneous liquidation operations. As set forth in the Receiver's Response, a bankruptcy filing for the Wextrust estate would likely reduce the value of Wextrust's real estate holdings and increase transaction costs, thereby diluting recoveries to defrauded investors and creditors. Finally, the Distribution Plan's proposed restriction on

4

deficiency claims in the context of this equity receivership is appropriate and lawful. The Distribution Plan requires that secured creditors be paid out of their collateral. As a result, secured creditors will likely recover a much larger percentage of their claims than defrauded investors and unsecured creditors. Because secured creditors will receive a larger percentage recovery on their claims by virtue of their security interests in specified property, it is fair and reasonable for this Court to limit their deficiency claims so that sufficient funds will be available to provide a distribution to defrauded investors and unsecured creditors. *See SEC v. Wang*, 944 F.2d 80, 85 (2d Cir. 1991) (court may approve distribution plan so long as it is "fair and reasonable."). *Cf. Official Committee of Unsecured Creditors of WorldCom, Inc. v. SEC*, 467 F.3d 73, 84-85 (2d Cir. 2006) (upholding SEC distribution plan that excluded creditors who had received a 36% distribution in WorldCom's bankruptcy case in favor of other creditors and shareholders who received less or nothing in bankruptcy case and noting that SEC was not required to follow Bankruptcy Code's claims priorities when developing distribution plan).[1]

**Lower or No Distributions to Certain Wextrust Employees**

The Distribution Plan proposes to reduce or eliminate distributions to Wextrust employees based upon the employee's level of involvement in implementing the fraudulent scheme. The SEC believes that this result is fair because whether or not a specific employee was aware of the Wextrust fraudulent enterprise, the employees are nevertheless not similarly situated to unaffiliated innocent investors. The Distribution Plan also takes into account the amount of commissions and/or finder fees received by an employee when determining the amount of the employee's allowed claim, so that the

---

[1] This reasoning applies equally to all other objections by secured creditors who claim that the Distribution Plan impermissibly limits their deficiency claims.

amount of the employee's allowed claim will be reduced proportionately to the amount the employee received in commissions and/or finder fees. In light of the limited pool available for distribution, a reduction or elimination of employee investment claims is warranted in order to provide a recovery to unaffiliated, innocent investors.

## Conclusion

The Receiver worked closely with the SEC staff to devise a fair and reasonable Distribution Plan that would provide the highest possible returns to the largest number of investors and creditors. The SEC believes that the Distribution Plan is fair, reasonable and equitable. Accordingly, the SEC requests that the Court overrule the objections to the Distribution Plan, approve the Distribution Plan, and grant the Receiver and the SEC such other and further relief as is just.

Dated: New York, New York
May 11, 2009

/s/ Neal Jacobson
Alistaire Bambach (AB-5891)
Neal Jacobson (NJ-3937)
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
3 World Financial Center, Room 4300
New York, New York 10281

*Of Counsel:*
Alistaire Bambach
Steven G. Rawlings
Danielle Sallah

# DECLARATION OF SERVICE

Neal Jacobson declares under penalty of perjury as follows:

I am a lawyer employed by the New York Regional Office of the Securities and Exchange Commission. On May 11, 2009, I caused a true and correct copy of **Plaintiff Securities and Exchange Commission's Statement in Support of Receiver's Proposed Plan of Distribution and Joinder in Receiver's Response to Objections to Proposed Plan of Distribution** to be served by overnight mail on

Joseph Shereshvsky, 35857-054
MDC Brooklyn
Metropolitan Detention Center
Att'n: Warehouse
80 29th Street
Brooklyn, NY 11232


Dated: New York, New York
       May 11, 2009

                                              /s/Neal Jacobson
                                              Neal Jacobson