UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

                Plaintiff,

- against -

STEVEN BYERS, JOSEPH SHERESHEVSKY, WEXTRUST CAPITAL, LLC, WEXTRUST EQUITY PARTNERS, LLC, WEXTRUST DEVELOPMENT GROUP, LLC, WEXTRUST SECURITIES, LLC, and AXELA HOSPITALITY, LLC,

                Defendants,

- and -

ELKA SHERESHEVSKY,

                Relief Defendant.

08 Civ. 7104 (DC)

ECF Case

---

# RESPONSE TO SUPPLEMENTAL OBJECTIONS TO THE RECEIVER'S PROPOSED PLAN OF DISTRIBUTION

TIMOTHY J. COLEMAN
Receiver for Wextrust Entities

DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, NY 10019-6092
Tel. (212) 259-8000

June 5, 2009                      Attorneys for Receiver

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT** .................................................................................................. 1

**DISCUSSION** ............................................................................................................................. 2

    I.    This Court Has Jurisdiction to Order a Plan of Distribution in this Case ......................... 2

    II.   The Commodity Fund Victims are Similarly Situated to the Other Wextrust Victims and the Wextrust Commodity Funds Were Part and Parcel of the Ponzi Scheme ........... 6

    III.  The Receiver's Plan Outlines a Defined Claims Process Whereby the Court May Employ Summary Proceedings to Adjudicate and Subordinate Claims of Creditors ...... 8

    IV.  This Court has Inherent Equitable Authority to Subordinate Claims of Creditors ......... 11

    V.   Treatment of Cash Distributions and Reinvestments ...................................................... 13

**CONCLUSION** ........................................................................................................................ 14

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Stephens*,
  875 F.2d 76 (4th Cir. 1989) .................................................................................................. 11

*FDIC v. Bernstein*,
  786 F. Supp. 170 (E.D.N.Y. 1992) ...................................................................................... 10

*Holmes v. NBC/GE*,
  168 F.R.D. 481 (S.D.N.Y. 1996) ........................................................................................... 5

*John Gil Const., Inc. v. Riverso*,
  99 F. Supp. 2d 345 (S.D.N.Y. 2000) ..................................................................................... 4

*Knipe v. Skinner*,
  19 F.3d 72 (2d Cir. 1994) ...................................................................................................... 3

*McFarland v. Winnebago South, Inc.*,
  863 F. Supp. 1025 (W.D. Mo. 1994) ................................................................................... 10

*New York State Nat'l Org. for Women v. Terry*,
  886 F.2d 1339 (2d Cir. 1989) ................................................................................................ 4

*Official Committee of Unsecured Creditors of Worldcom, Inc. v. SEC*,
  467 F.3d 73 (2d Cir. 2006) .................................................................................................. 11

*SEC v. Elliott*,
  953 F.2d 1560 (11th Cir. 1992) ........................................................................................... 10

*SEC v. Haligiannis*,
  1:04-cv-06488, 2009 U.S. Dist. LEXIS 11503 (S.D.N.Y. Feb. 11, 2009) ............................ 13

*SEC v. Wang*,
  944 F.2d 80 (2d Cir. 1991) .................................................................................................. 10

*Webb v. GAF Corp.*,
  78 F.3d 53 (2d Cir. 1996) ...................................................................................................... 4

## Statutes

28 U.S.C. § 1292(a) (2007) ............................................................................................................ 3

## Rules

Fed. R. Civ. P. 62 ........................................................................................................................... 4

## Treatises

13 Moore's Federal Practice (3d ed.) § 66.06[4][b] ..................................................................... 10

19 Moore's Federal Practice § 203.10 (Matthew Bender 3d ed. 2004) ......................................... 3

Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2962 .................................... 4

Timothy J. Coleman, Receiver for the Defendant Wextrust Entities ("Receiver"), respectfully submits this Supplemental Response to Objections to the Receiver's Proposed Plan of Distribution for the Defendant Wextrust Entities and all entities they control or in which they have an ownership interest (collectively, the "Wextrust Entities and Affiliates").

## PRELIMINARY STATEMENT

On March 27, 2009, the Receiver filed a proposed plan of distribution ("Receiver's Plan") (Dkt. No. 243). The Receiver's Plan proposes a *pro rata* distribution of estate assets, based on findings that Wextrust engaged in systemic and pervasive commingling of victim funds, and that victims were similarly situated with respect to their relationships with Wextrust. The Receiver solicited comments, questions, and advice on the proposed plan from all interested parties after providing a copy to all known investors who had provided contact information.

During the six weeks following the filing of the Receiver's Plan, more than 100 Wextrust victims – both investors and creditors – submitted written statements supporting or objecting to the Receiver's Plan. The Receiver also held town hall meetings in Jerusalem, Israel and Norfolk, Virginia on April 2, 2009 and April 23, 2009, respectively, to answer questions related to the Receiver Plan. In addition, on May 11, 2009, the Receiver submitted a Response to Objections to the Receiver's Proposed Plan of Distribution ("Receiver's Response") (Dkt. No. 304). On the same day, the Securities and Exchange Commission ("SEC") filed a Statement in Support of Receiver's Proposed Plan of Distribution and Joinder in Receiver's Response to Objections to Proposed Plan of Distribution ("SEC's Joinder") (Dkt. No. 315). The SEC's Joinder supported and adopted the Receiver's position with respect to the equitable principles and administrative procedures outlined in the Receiver's Plan. On May 21, 2009, the Court held a hearing in which it invited all interested parties to this action to attend and be heard regarding the Receiver's Plan.

During the hearing, the Court heard from the Receiver and his counsel, counsel for the SEC, and 16 individual victims or their counsel.

At the conclusion of the hearing, the Court permitted those in attendance to supplement their objections by May 28, 2009. (May 22, 2009 Hearing Tr. ("Hearing Tr."), 91:17-18.)[1] Eight interested parties submitted supplemental objections to the Receiver's Plan. On the whole, the supplemental objections proffer the same or similar arguments embodied in the interested parties' prior objections and oral arguments. As these arguments have already been addressed in the Receiver's Plan, the Receiver's Response, or elsewhere in the record, only non-cumulative, non-duplicative objections have been addressed in detail below.

## DISCUSSION

### I. This Court Has Jurisdiction to Order a Plan of Distribution in this Case

The International Ad-Hoc Committee of Wextrust Creditors and the International Consortium of Wextrust Creditors (collectively, the "Creditors Committees") contend that, as a result of their appeal of this Court's Memorandum Decision of December 17, 2008 (Dkt. No. 148) ("Creditors Committees Decision"), the Court has been divested of jurisdiction to approve a plan of distribution in this case.

By way of background, in the Creditors Committees Decision, the Court ruled on the Creditors Committees' motion to modify the Court's October 24, 2008 preliminary injunction order (Dkt. No. 65). The Court granted in part and denied in part the relief requested by the Creditors Committees. First, the Court found that, pursuant to its *in rem* jurisdiction and its equitable discretion to administer the assets subject to the Amended Order Appointing

---

[1] A copy of the hearing transcript has been attached as Ex. A to the Declaration of John K. Warren in Support of Response to Supplemental Objections to the Receiver's Proposed Plan of Distribution ("Warren Decl."), filed concurrently herewith. A copy of the transcript is also publicly available on the Receiver's webpage. *See* http://www.wextrustreceiver.com/documents/court_papers/May21Hearing.pdf (last visited June 5, 2009).

Temporary Receiver ("Receiver Order") (Dkt. No. 36), it had the authority to preliminarily enjoin non-parties from filing involuntary bankruptcy petitions against the Wextrust Entities and Affiliates. Second, based on the size and complexity of the Wextrust enterprise, the Court held that it would undermine the effectiveness – and indeed the very purpose – of the receivership for the District Court to permit such filings. Finally, the Court modified the Receiver Order to permit any party or non-party – including the Creditors Committees – to apply to the Court on three days' notice for an order seeking permission to file an involuntary bankruptcy petition upon a showing that such a petition is appropriate and would benefit the receivership estate. To date, no such application has been made by the Creditors Committees or any other party.

The Creditors Committees assert that this Court has no jurisdiction to rule on the Receiver's Plan because their appeal from the Court's order on their motion to modify the Receiver Order is pending in the Second Circuit.[2] Although the Creditors Committees cite several cases for the general proposition that the filing of an appeal divests the district court of jurisdiction, they omit controlling authority that directly contradicts their position.[3]

As stated above, the Creditors Committees moved for a modification of the Receiver Order to amend the preliminary injunction and lift the prohibition against the filing of involuntary bankruptcy petitions. The Court granted that motion in part and denied it in part. The grant or denial of a preliminary injunction is appealable under 28 U.S.C. § 1292(a) (2007), as is the grant or denial of a motion to amend a preliminary injunction. *See* 19 Moore's Federal Practice § 203.10 (Matthew Bender 3d ed. 2004). With respect to the district court's jurisdiction,

---

[2] The Receiver Order was specifically incorporated by reference as Exhibit D to the Court's October 24, 2008 Order on Consent Imposing Preliminary Injunction (Dkt. No. 65).

[3] The Creditors Committees' omission of adverse controlling precedent is troubling. *See Knipe v. Skinner*, 19 F.3d 72, 75 (2d Cir. 1994) ("An attorney's good faith belief in his or her argument must be supported by an objectively reasonable inquiry into its viability.").

the Second Circuit has stated expressly that: "[a]lthough the filing of a notice of appeal ordinarily divests the district court of jurisdiction over issues decided in the order being appealed, jurisdiction is retained where, as here, the appeal is from an order granting or denying a preliminary injunction." *Webb v. GAF Corp.*, 78 F.3d 53, 55 (2d Cir. 1996) (citing *New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1350 (2d Cir. 1989) (holding district court retains jurisdiction over case where order appealed from does not dispose of entire action and finding that an order granting or denying a preliminary injunction "does not prevent the district court from proceeding on the merits")).

In failing to note this exception to the general rule that the filing of a notice of appeal divests the district court of jurisdiction, the Creditors Committees flatly ignore black letter law. As one well-known commentator has stated:

> An appeal from the grant or denial of a preliminary injunction does not divest the trial court of jurisdiction or prevent it from taking other steps in the litigation while the appeal is pending. According to Rule 62(a) there is no automatic stay of the judgment in an injunction suit pending an interlocutory appeal. Indeed, Rule 62(c) specifically provides that the district court may "suspend, modify, restore, or grant an injunction during the pendency of the appeal." Accordingly, the district court retains jurisdiction to enforce its prior order and the case may proceed to a trial on the merits. The only restriction on the trial court's power occurs if the appellate court enters an order staying the lower court until the appeal has been completed.

Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2962 (quoting Fed. R. Civ. P. 62) (citations omitted).

Courts in this District routinely proceed to the merits of a case during the pendency of interlocutory appeals such as the one at issue here. For example, courts rule on dispositive motions and conduct pretrial proceedings without awaiting the outcome of such appeals. *See, e.g.*, *John Gil Const., Inc. v. Riverso*, 99 F. Supp. 2d 345, 350 n.7 (S.D.N.Y. 2000) (dismissing complaint during pendency of appeal from denial of preliminary injunction); *Holmes v. NBC/GE*,

168 F.R.D. 481, 482 (S.D.N.Y. 1996) (district court conducted pretrial conferences and discovery during pendency of appeal from denial of preliminary injunction). Thus, the Creditors Committees' claim that this Court lacks jurisdiction is meritless.

In the alternative, the Creditors Committees argue that the Court should refrain from ruling on the Receiver's Plan "as a matter of fairness." They predict that the Second Circuit "could" hear oral argument on their appeal "soon," and represent that they will seek an expedited decision. However, they fail to disclose that their motion for an expedited briefing schedule was denied by the Second Circuit, after they waited until the eleventh hour to file a notice of appeal, and did not seek expedition until the briefing schedule was already set.[4] The Creditors Committees argument that "[a]ny minimal delay" would not be prejudicial ignores the fact that an interim distribution could be postponed by months, to the detriment of Wextrust victims who face desperate economic circumstances as a result of the alleged fraud in this case. Consequently, the Creditors Committees' objection should be overruled.

Moreover, the issue currently on appeal is whether the Creditors Committees possess the abstract right to file involuntary bankruptcy petitions without notice; yet, they have not stated whether or when they would exercise such a right, and for which Wextrust Entities or Affiliates. The notion then that they would be prejudiced if this Court were to approve a plan of distribution is particularly puzzling in light of the fact that the Creditors Committees consist of individuals and entities who invested in shares of limited liability companies. As the Receiver's Plan proposes to equitably subordinate the deficiency claims of secured creditors (*see* Receiver's

---

[4] The International Ad-Hoc Committee of Wextrust Creditors' motion to expedite the appeal was denied on February 11, 2009. The International Consortium of Wextrust Creditors' motion to expedite the appeal was subsequently denied as moot on February 19, 2009. (*See* Ex. B to Warren Decl.) The Creditors Committees waited 4 weeks to file their initial notice of appeal and 7 weeks to file their amended notice of appeal. (*See* Dkt. Nos. 170, 183.)

Response at 29-31), the Creditors Committees' members would fare significantly better under the Receiver's Plan than they would under the Bankruptcy Code.

## II. The Commodity Fund Victims are Similarly Situated to the Other Wextrust Victims and the Wextrust Commodity Funds Were Part and Parcel of the Ponzi Scheme

The issue of whether the victims who purchased securities issued by four Wextrust Affiliates that were involved in commodities speculation (collectively, the "Wextrust Commodity Funds") are part of the larger Wextrust fraud has been briefed exhaustively on several prior occasions.[5] Most recently, on pages 13-28 of the Receiver's Response, the Receiver demonstrated that the objections of those victims (the "Commodity Fund Victims") are wholly unsupported by the factual record, applicable case law, and the balance of the equities in this case.

The new documents and information requested by, and provided to, the Commodity Fund Victims do not change this analysis. Specifically, at the request of one of the Commodity Fund Victims, Gerald Jaffe, counsel for the Receiver provided the monthly statements that NAV Consulting Inc. ("NAV Consulting") had prepared for Wextrust Affiliate Wextrade Commodity Managers LLC ("WCM"). By way of background, WCM hired NAV Consulting to serve as the Net Asset Value Calculation Agent for, and to provide accounting services to, the Wextrust Commodity Funds. (Warren Decl. ¶ 4.) The primary focus of NAV Consulting's work was to: (1) ensure that each of the four Wextrust Commodity Funds maintained the appropriate, proportional, contribution to the Master Fund;[6] (2) prepare daily reports assessing the risk posed by each Commodity Trading Advisor's ("CTA") trades; and (3) prepare daily and monthly

---

[5] *See* Receiver's Response at 13-28; Receiver's Memorandum of Law in Opposition to the Proposed Intervening Defendants' Motion to Intervene ("Commodity Opposition") (Dkt. No. 154); Sordillo Declaration in Support of Commodity Opposition (Dkt. No. 158).

[6] Unless provided otherwise, all capitalized terms herein are to be ascribed the same meanings as the defined terms in the Receiver's Plan or the Receiver's Response.

reports tracking the movement of money in the Master Fund as well as the gains, losses, income, and expenses of each Fund. (*Id.* ¶ 5.) NAV Consulting's monthly reports (which the Receiver provided to Mr. Jaffe) included cash flow statements, balance sheets, equity schedules, and individual investor account statements. (*Id.* ¶ 6.) The equity schedules provide a detailed accounting, on a monthly, quarterly, and yearly basis, of each investor's gains and losses as well as the expenses they owed to WCM. (*Id.* ¶ 7.) The individual account statements show each investor's account balance, any additions or redemptions in the account, and the rate of return. (*Id.* ¶ 8.)

In order to prepare these materials, NAV Consulting had access to daily broker statements and trading position information from the CTAs as well as the bank accounts for the Wextrust Commodity Funds and the Master Fund. (*Id.* ¶ 9.) But, contrary to Mr. Jaffe's counsel's assertion during the May 21, 2009 hearing, NAV Consulting did not "hold" investors' funds. (Hearing Tr. 26:1-2.)

Furthermore, NAV Consulting had no responsibility for analyzing – and did not analyze – cash inflows and outflows to and from bank accounts for the Wextrust Commodity Funds or the escrow accounts in which Wextrust held money before the Wextrust Commodity Funds began trading. (*Id.* ¶ 10.) In other words, NAV Consulting's monthly analysis of each investor's holdings in the Wextrust Commodity Funds did not take into account where each investor's contribution originally came from (*i.e.*, whether Wextrust had transferred money into the Wextrust Commodity Funds from a previously commingled and unrelated Wextrust account or investment). Accordingly, NAV Consulting's records provide no evidence – one way or the other – as to whether money in the Wextrust Commodity Funds was commingled with money

from other Wextrust investments or properly segregated in accordance with CFTC and NFA regulations.

Nonetheless, the Commodity Fund Victims continue to contend that there is "no indication the [Wextrust Commodity Funds] were part of the Ponzi scheme," that the pervasive and unauthorized commingled identified by the Receiver and the National Futures Association was merely a series of "loans," and that the Commodity Fund Victims' funds were "accounted for" on the date the Receiver was appointed.[7]  These arguments are belied by the facts.  As the Receiver has demonstrated, the Commodity Fund Victims were subjected to the same pattern of fraud as other investors, their money was neither "segregated" nor "accounted for," and the defrauders had control over the Wextrust Commodity Funds just as they did other Wextrust investments.  For this reason, the Court correctly concluded on January 30, 2009 that the Commodity Fund Victims' position is "no different from that of the other creditors and victims in this case."  (Mem. Decision at 2) (Dkt No. 181.)  Not only were the management and the operations of the Wextrust Commodity Funds inextricably intertwined with the larger Wextrust scheme, but the Wextrust Commodity Funds were similarly marketed, pervasively commingled, and looted in the same manner and pattern as the other, unrelated Wextrust Entities and Affiliates.

### III. The Receiver's Plan Outlines a Defined Claims Process Whereby the Court May Employ Summary Proceedings to Adjudicate and Subordinate Claims of Creditors

As the Court suggested at the hearing on May 21st, a procedure should be put in place to afford victims the opportunity to dispute the Receiver's calculation of their claims amounts and/or provide evidence that their claims ought to be considered separately from those of other

---

[7] *See* Supplemental Objection Letter from Harris L. Kay, counsel to certain Commodity Fund Victims, to the Court dated May 28, 2009.

parties.  (*See* Hearing Tr., 79:3-7.)  The Receiver respectfully submits that the Receiver's Plan provides such a mechanism.

In order to ease the burden on victims in approving or disputing the Receiver's calculation of their claims, the Receiver is extending all deadlines by filing herewith a second amended notice of motion.  Upon approval by the Court, the proposed order attached thereto would set the following dates and processes for the adjudication of the claims of investors and creditors:

### Claims of Investors

| | |
|---|---|
| **June 30, 2009:** | Investors must object to their statement amounts by this date; any investors who did not receive statements must submit all new claims to the Receiver by this date. |
| **August 7, 2009:** | The Receiver will attempt to resolve all disputes by this date.  The Receiver will request a hearing to resolve any remaining disputes. |

### Claims of Creditors

| | |
|---|---|
| **June 30, 2009:** | By this date, all creditors – whether secured, unsecured, liquidated, unliquidated, or government – **MUST** submit detailed, dated, and complete invoices to the Receiver at the following email address: WexTrustInvoice@dl.com . |
| **July 7, 2009:** | The Receiver will post a spreadsheet of all unpaid, unsecured claims of creditors on his website under the tab "Information for Creditors."  Creditors will then be given the opportunity to review and dispute their claims amounts. |
| **August 7, 2009:** | The Receiver will endeavor to resolve disputes with unsecured creditors by this date.  The Receiver will request a hearing on any unresolved claims. |

As detailed in the Receiver's Plan, and as the Court acknowledged at the hearing on May 21, Second Circuit case law makes it clear that the preferred approach in structuring plans of distribution in SEC receivership actions involving Ponzi schemes is a *pro rata* distribution of

estate assets. (Receiver's Plan at 4-16; Hearing Tr., 13:8-14.) The Court, however, has broad discretion to fashion any plan of distribution that is fair and reasonable, and is not bound by any specific rule or formula. *See SEC v. Wang*, 944 F.2d 80, 85 (2d Cir. 1991).

In implementing a plan of distribution, the district court's use of summary proceedings to allow, disallow, and subordinate the claims of interested parties has been approved as an appropriate and efficient adjudication mechanism, so long as potential claimants are afforded an opportunity to be heard and present claims. *SEC v. Elliott*, 953 F.2d 1560, 1567 (11th Cir. 1992) ("[A] district court does not generally abuse its discretion if its summary procedures permit parties to present evidence when the facts are in dispute and to make arguments regarding those facts."); *McFarland v. Winnebago South, Inc.*, 863 F. Supp. 1025, 1034 (W.D. Mo. 1994) ("[T]he receivership court has the power to use summary procedures in allowing, disallowing, and subordinating claims of creditors, so long as creditors have fair notice and a reasonable opportunity to respond."); *FDIC v. Bernstein*, 786 F. Supp. 170, 177 (E.D.N.Y. 1992) ("[a] district court has extremely broad discretion in supervising an equity receivership and in determining the appropriate procedures to be used in its administration."); 13 Moore's Federal Practice (3d ed.) § 66.06[4][b] ("The powers of the courts include the allowance, disallowance, and subordination of the claims of creditors."). Indeed, the use of these summary proceedings "promotes judicial efficiency and reduces litigation costs to the receivership, thereby preserving receivership assets for the benefit of [claimants]." *Bernstein*, 786 F. Supp. at 177 (internal citations omitted).

Accordingly, the supplemental objections filed by the Commodity Fund Victims, Space Park AIM Partnership, Space Park ISSB Partnership, Nashville Warehouse Partners, and Southeast Warehouse Partners contending that a claims process needs to be established to allow

the Court to determine whether they should properly be included within the receivership estate overlook the procedure already outlined and provided for by the Receiver's Plan.

**IV.    This Court has Inherent Equitable Authority to Subordinate Claims of Creditors**

Regions Bank and TCF National Bank argue that the Court is not empowered to disallow their potential deficiency claims as secured creditors.[8] This proposition is inaccurate for several reasons. First, as discussed in the preceding section, this Court has the equitable authority to employ summary proceedings to allow, disallow, and subordinate the claims of creditors – including secured creditors – as long as those parties are provided notice and an opportunity to be heard. Accordingly, notwithstanding these objections, this Court has inherent equitable authority to both (1) approve a plan of distribution in this matter and (2) employ summary procedures to reprioritize or subordinate claims of creditors upon notice and a hearing to such parties in order to realize a just and equitable result. As the Court is exercising its equity jurisdiction, its ability to employ such summary proceedings to adjudicate these claims while respecting rights of due process is not constrained by the Bankruptcy Code or New York State's corporate statutes.[9] The simple yet sad reality is that receivership claims are far in excess of currently available funds, and thus the Court must make hard choices to reach the most equitable result under these difficult circumstances. *See Worldcom*, 467 F.3d at 84 (finding that "when

---

[8]    TCF contends that the Receiver was mistaken in arguing that there was no default on the property and that it is adequately secured. Two days before the May 21 hearing, TCF issued a notice of default on the Peoria Property dated May 19, 2009. A copy was not provided to the Receiver or his counsel in time for the hearing. It is important to note, however, that TCF does not allege a monetary default – the Receiver has been paying debt service since the inception of the receivership. Instead, it alleges a covenant default – the appointment of a receiver over the Peoria property. Counsel for the Receiver has since attempted to make contact with TCF, but it has not responded.

[9]    *See Anderson v. Stephens*, 875 F.2d 76, 79 n. 6 (4th Cir. 1989) (setting forth a distribution scheme of estate assets in which tax claims and claims of third party creditors were paid after those of defrauded investors); *cf Official Committee of Unsecured Creditors of Worldcom, Inc. v. SEC*, 467 F.3d 73, 84-85 (2d Cir. 2006) (upholding SEC's proposed distribution plan that excluded certain creditors in favor of other creditors and shareholders who received substantially less, and noting that the SEC was not required to follow the Bankruptcy Code's priority scheme when proposing a plan of distribution).

funds are limited, hard choices must be made" and in such a circumstance, the Court may permissibly adhere to the principle that "the most grievously injured claimants should receive the greatest share" of any recovery).

Regions Bank argues that the Receiver has not fully explained his rationale regarding his proposed treatment of the claims of secured creditors vis-à-vis other victims. On the contrary, the Receiver has been very clear on this point. The Receiver respectfully submits that the Court should exercise its inherent equitable discretion with respect to the treatment of secured claimants because, unlike common shareholders who make investments and must accept their risks, the equity investors in this case have been defrauded and victimized. Although the defrauded investors still took on a certain degree of risk in making their original investments, so too did the secured creditors in this case by making high-risk real estate loans to the Wextrust Entities and Affiliates. These secured lenders were sophisticated financial institutions who had the benefit of more information and bargaining power than the individual investors. They were therefore in a better position to notice clear red flags such as the unrealistic returns promised to many investors. In addition, they are in a much better position to absorb losses than individual defrauded investors in this case, particularly in light of their access to funding under the federal government's Troubled Asset Relief Program ("TARP").[10]

Here, the Receiver is not proposing to strip Regions Bank, TCF National Bank, or any other secured creditors of their rights to bring one or more deficiency claims against the particular entity to which they loaned funds. Indeed, these parties would like this Court to believe that secured parties had the right to bring deficiency claims against all Wextrust Entities

---

[10] Indeed, according to a report prepared by the United States Department of the Treasury to Congress, as of December 31, 2008, TCF Financial Corporation had accepted $361 million in TARP funds and Regions Financial Corporation had accepted $3.5 billion in TARP funds. (Ex. C to Warren Decl. at 8.)

and Affiliates as a conglomerate in the first place, which is not so. Instead, the Receiver is simply requesting that the Court exercise its discretion in not extending that right to secured creditors for the reasons already articulated. Namely, by virtue of their security interests, secured creditors are entitled to payment out of the proceeds of sales of collateral and thus secured creditors will likely recover a significantly higher percentage of their losses in a more expedited fashion than investors and unsecured creditors. In order to balance the equities and mitigate the disparity between the treatment of secured creditors and other victims, the Receiver's Plan thus proposes that the Court subordinate the remaining deficiency claims of these creditors to those of the other victims – who have not yet received any form of remuneration. Contrary to TCF National Bank's assertion, this is not an abrogation of contract rights, but rather an exercise of this Court's inherent equitable authority to allow, disallow, and subordinate the claims of creditors in this action.[11] Accordingly, these objections should also be overruled.

## V. <u>Treatment of Cash Distributions and Reinvestments</u>

In its supplemental objection, G&H Partners AG ("G&H") takes issue with the Receiver and the SEC's proposed treatment of investors' cash distributions and reinvestments for the purpose of calculating their *pro rata* shares. The Receiver and the SEC's rationale for adopting this approach is set forth in detail on pages 9-12 of the Receiver's Plan. The Receiver and the SEC's proposed formula seeks to strike a balance between the interests of investors who received the majority of their prior distributions in cash and those who received no distributions or chose to reinvest their distributions in other Wextrust investments. However, this Court has broad

---

[11] TCF's citation of *SEC v. Haligiannis*, 1:04-cv-06488, 2009 U.S. Dist. LEXIS 11503 (S.D.N.Y. Feb. 11, 2009) is thus inapposite. In that case, the court noted, in *dicta*, that the court would not abrogate property rights in evaluating the validity of various judicial liens that had been placed on a personal residence. The Court's exercise of its equitable jurisdiction to allow, disallow, and subordinate the claims of unsecured creditors in this action is not similarly limited.

discretion to fashion any plan of distribution that is fair and reasonable, and is not bound by any specific rule or formula – much less the Receiver or the SEC's recommendation. Although the Receiver respectfully submits that the net investor approach as outlined in the Receiver's Response is the most equitable and practical approach in this case, the Receiver stands ready to implement any plan of distribution that the Court may order.

**CONCLUSION**

Based on the foregoing, and the evidence and arguments set forth in the Receiver's Plan and the Receiver's Response, none of the supplemental objections identifies any facts or authorities that would preclude the Court from approving the Receiver's Plan. The Receiver respectfully submits that the overwhelming weight of the evidence and authority supports the principles and procedures outlined in the Receiver's Plan. Accordingly, the Receiver respectfully requests that the Court approve the Receiver's Plan in all respects.

Dated: Washington, D.C.
June 5, 2009

Respectfully submitted,

TIMOTHY J. COLEMAN
Receiver for Wextrust Entities

s/ Mark S. Radke
Mark S. Radke, *pro hac vice*
Dewey & LeBoeuf LLP
1101 New York Avenue, NW
Washington, D.C. 20005-4213
Tel: (202) 346-8000
Fax: (202) 346-8102

*Attorneys for the Receiver*

*Of Counsel:*
John K. Warren

# CERTIFICATE OF SERVICE

The undersigned, an attorney, states that I am one of the attorneys for Timothy J. Coleman, Receiver, in this matter and do hereby certify that on **June 5, 2009** I directed the service of a true and correct copy of the foregoing **Response to Supplemental Objections to the Receiver's Proposed Plan of Distribution, the Second Amended Notice of Motion for an Order Approving the Receiver's Proposed Plan of Distribution, and the accompanying Declaration of John K. Warren with Exhibits** upon the following individuals in the manner indicated below:

**Via First Class Mail**
Joseph Shereshevsky, 35857-054
MDC Brooklyn
Metropolitan Detention Center
P.O. Box 329002
Brooklyn, New York 11232
Pro Se Defendant

**Via ECF Notification**
Alexander M. Vasilescu, Esq.
Andrew M. Calamari, Esq.
Steven G. Rawlings, Esq.
Alistaire Bambach, Esq.
Danielle Sallah, Esq.
Philip Moustakis, Esq.
Neal R. Jacobson, Esq.
Attorneys for Plaintiff SEC

**Via ECF Notification & Electronic Mail**
Barry S. Pollack, Esq.
Joshua L. Solomon, Esq.
Attorneys for non-party G&H Partners AG

Barry S. Zone, Esq.
Jason Canales, Esq.
Stephen Richard Popofsky, Esq.
Attorneys for Defendant Steven Byers

Michael Fred Bachner, Esq.
Attorney for Defendant Elka Shereshevsky

Philip A. Byler, Esq.
Andrew T. Miltenberg, Esq.
Attorneys for non-party Broadway Bank

**Via ECF Notification & Electronic Mail**
Martin Siegel, Esq.
Attorney for non-party Int'l Consortium of Wextrust Creditors

Paul A. Levine, Esq.
Attorney for non-party Key Equipment Finance, Inc.

David B. Gordon, Esq.
Beth L. Kaufman, Esq.
Attorneys for non-party Lawrence Costa

Harris Kay, Esq.
Marc X. LoPresti, Esq.
Attorneys for various non-party investors

Ethan Holtz, Esq.
Edward P. Gilbert, Esq.
Attorneys for RAIT Partnership

Francesca Morris, Esq.
Attorney for Ticor Title Insurance Co. and Heritage Community Bank

John M. Bradham, Esq.
Peter B. Katzman, Esq.
Attorneys for non-parties Space Park AIM and ISSB Partnerships

Alan E. Marder, Esq.
Attorney for non-parties Nashville Warehouse Partners and Southeast Warehouse Partners

**Via ECF Notification & Electronic Mail**
Shalom Jacob, Esq.
Shmuel Vasser, Esq.
Attorneys for non-party Int'l Ad-Hoc
Committee of Wextrust Creditors

Louis Orbach, Esq.
Charles J. Sullivan, Esq.
Attorney for non-party TCF National Bank

Elizabeth P. Gray, Esq.
Attorney for Gerald Jaffe

**Via ECF Notification & Electronic Mail**
Edward F. Malone, Esq.
George R. Mesires, Esq.
Attorneys for Barrington and Hinsdale Banks

Susan F. Balaschak, Esq.
Keith N. Costa, Esq.
Randal S. Mashburn, Esq.
Attorneys for non-party Regions Bank

_____s/ Mark S. Radke_____