# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE
COMMISSION,

  Plaintiff,

    - against -

STEVEN BYERS, et al.,

  Defendants.

08 Civ. 7104 (DC)

ECF Case

## Courtesy Copy of Evidence and Correspondence Relating to the September 22, 2009 Hearing to Resolve Outstanding Claims Disputes Relating to the Plan of Distribution

# VOLUME 3 OF 5
### (Partially and Fully Disqualified Investors)

| Tab | ID # | Claimant | Status (Active/Inactive) | Page Range |
|---|---|---|---|---|
| 1 | 1204 | | Inactive | 03154-03161 |
| 2 | 754 | | Inactive | 03162-03169 |
| 3 | 1650 | | Inactive | 03170-03178 |
| 4 | 740 | | Inactive | 03179-03184 |
| 5 | 1517 | | Inactive | 03185-03191 |
| 6 | 1147 | | Inactive | 03192-03204 |
| 7 | 1103 | | Inactive | 03205-03219 |
| 8 | 305 | | **Active** | **03220-03227** |
| 9 | 820 | | Inactive | 03228-03244 |
| 10 | 1662 | | **Active** | **03245-03249** |

| | | | Status | Range |
|---|---|---|---|---|
| **11** | **1460** | | **Active** | **03250-03253** |
| **12** | **1416** | | **Active** | **03254-03261** |
| **13** | **1556** | | **Active** | **03262-03266** |
| 14 | 26 | | Inactive | 03267-03271 |
| **15** | **71** | | **Active** | **03272-03277** |
| **16** | **1094** | | **Active** | **03278-03300** |
| **17** | **1486** | | **Active** | **03301-03307** |
| 18 | 1413 | | Inactive | 03308-03311 |
| **19** | **1534** | | **Active** | **03312-03316** |
| 20 | 544 | | Inactive | 03317-03323 |
| **21** | **1441** | | **Active** | **03324-03328** |
| 22 | 835 | | Inactive | 03329-03332 |
| **23** | **1520** | | **Active** | **03333-03341** |
| 24 | 1617 | | Inactive | 03342-03345 |
| **25** | **189** | | **Active** | **03346-03351** |

8

# Investor Submission of Evidence

August 20 2009

**VIA ELECTRONIC MAIL AND FACSIMILE**
Dewey & LeBoeuf LLP
1101 New York Avenue, NW
Washington, DC 20005-4213

Subject: <u>Notification of Reduction of Wextrust Claim-Dispute claim Amount</u>
Dewey & LeBoeuf LLP: August 14, 2009

Dear Sir or Madam:

1. Regarding your letter in the above reference.

2. Viewing the reference document ████████ 2007 YTD Finder's Fees" upon, the calculation of finder fees came to $10,719.21. Please note that this amount include of $1,000.00 compensation regarding my (████████) investment in Block III and $400 compensation regarding my ████████ investment in Hammond. This $1,400.00 should be reduced from the $10,719.21 and it will be $9,319.21.

3. Further more, I myself is victim of the the two Gentleman's fraud. I invest more than $200,000 of my personal money which I saved during over 25 years of hard working, I am asking you to reconsider your decision.

4. I am getting here punishment two times of being misleading by the two Gentlemen's, once loosing my money and second cutting my investment by 50%. you can see that during all the time until last minute I keep believe and invested my money last time was Hammond investment.

5. I am asking you to relate to me as an <u>investor</u> like all other who are <u>victims</u> of Wextrust fraud, and live the amount of <u>**$195,609.65**</u> as a basis for net investor claim.

Sincerely,

PHONE: ████████ • FAX: +████████

03222

# Receiver Submission of Evidence

# Finder Fee's-2005

**Referee:** ▮▮▮▮▮

| Date | Property | Investor | Finder's Fee | | Check # |
|------|----------|----------|--------------|---|---------|
| 07/18/05 | Grant St | ▮▮▮▮ | $ | 1,000.00 | wire |
| 09/29/05 | W Bearden | ▮▮▮▮ | $ | 500.00 | 2228 |

**YTD Finder F▮▮** | $ | 1,500.00

**2005 Compensation** $ 1,500.00

# Referral Compensation-2006

**Referee:** 

| Date | Property | Investor | Amount | % | Referral Comp | Check # |
|---|---|---|---|---|---|---|
| 01/10/06 | West Belmont | | 25,000.00 | 1% | $ 250.00 | 2720 |
| 03/07/06 | West Belmont | | 50,000.00 | 1% | $ 500.00 | 2918 |
| 04/11/06 | West Belmont | +Add 1% | 50,000.00 | 1% | $ 500.00 | 2945 |
| 05/03/06 | WHYF | | 120,000.00 | 2% | $ 2,400.00 | 3101 |
| 08/31/06 | GSA | | 40,000.00 | 2% | $ 800.00 | 3311 |
| 10/25/06 | GDR Tier 3YR no w/d | | 40,000.00 | 2% | $ 800.00 | 3490 |
| 11/22/06 | W 82nd Sr. | | 90,000.00 | 2% | $ 1,800.00 | 3553 |

**YTD Finder Fee** $ 7,050.00

(per Weldon's email dated 4-11-06)
stop Pymt Placed-Funds wired-Advice# ...728

Referral Fees Payable upon closing.

| Date | Property | Investor | Amount | % | Referral Comp | Check # |
|---|---|---|---|---|---|---|
| | | | | | $ | |

**Total Compensation Due Upon Closing**

**TOTAL 2006 COMPENSATION -** $ 7,050.00

Bank Name: New York, NY

Contact:

R/T Routing# 41-32

Bank Acc#

Acc Name.

03225



# — 2007 YTD Finder's Fees

| Date | Property | Investor | Amount | Draws | % | Compensation | Balance | Paid | Check# / Advice# |
|---|---|---|---|---|---|---|---|---|---|
| 01/24/07 | W.82ndSt. | | $ 30,000.00 | | 1.00% | $ 300.00 | $ 300.00 | | WTC # 3853 |
| 02/23/07 | WHYF III | | $ 20,000.00 | | 0.67% | $ 133.00 | $ 433.00 | | WTC # 3853 |
| 04/09/07 | | Referral Compensation Pymt | | | | | | $ (433.00) | WTC # 3853 |
| 06/18/07 | Block III | | $ 50,000.00 | | 2.00% | $ 1,000.00 | $ 1,000.00 | | |
| 06/30/07 | | Referral compensation pymt-Jun 07 | | | | $ - | $ - | $ (1,000.00) | WTC-Ck# 8-07 |
| 07/19/07 | Hammond | | $ 40,000.00 | | 1.00% | $ 400.00 | $ 400.00 | | |
| 07/31/07 | | Referral Compensation-Jul 07 | | | | $ - | $ - | $ (400.00) | WTC Ck# 4131 |
| **2007 YTD TOTALS** | | | $ 140,000.00 | - | | $ 1,833.00 | $ - | $ (1,833.00) | |

$ 1,833.00 | Total 2007 Compensation

Bank Name: New York, NY

Contact:

R/T Routing#

Bank Acc# 41-32

Acc Name:

| Date | Property | Investor | Amount | Draws | % | Compensation | Balance | Paid | Check# / Advice# |
|---|---|---|---|---|---|---|---|---|---|
| 03/01/08 | Drake | | $ 33,621.39 | | 1.00% | $ 336.21 | $ 336.21 | | WTC Ck # 4585 |
| 04/30/08 | | Referral Compensation-Apr 08 | | | | | $ 0.00 | (336.21) | WTC Ck # 4585 |
| | | | | | | | | | |
| 2008 YTD TOTALS | | | $ 33,621.39 | $ - | | $ 336.21 | $ - | $ (336.21) | |

$ 336.21 | 2008 Compensation          1099 Misc to be issued by WTC

03227

**10**

# Investor Submission of Evidence

03246

I am utterly in shock at the letter that I just received. For some reason, you have arbitrarily decided, that those making 10,000 in commissions or finders fees should forfeit 25% of their investment. This makes no sense. There is no relationship to the finders fee and the amount being deducted. In my case, I received a mere $1,500 in finders fees and a net reduction of my share of the investment of $19,131!! That means my 'punishment' is over 10 times of what I made. I have heard of trebling damages in some lawsuites but TEN TIMES!! This is outrageous! And what if I had investment 500,000 instead of 100,000. Then my 'punishment would have been $100,000 (25% of net), over FIFTY times my fees received. Does this make any sense?

# Receiver Submission of Evidence

## 2006 Referral Compensation

| Date | Property | Investor | Amount | % | Compensation | Check # | Salesperson | Date Pd |
|------|----------|----------|--------|---|--------------|---------|-------------|---------|
| 02/09/06 | Days Inn |  | $ 100,000.00 | 0.50% | $ 500.00 | 2695 | | 02/09/06 |
| 07/05/06 | Tennessee | | $ 50,000.00 | 0.50% | $ 250.00 | 3364 | | 10/03/06 |
| 07/05/06 | Tennessee | | $ 70,000.00 | 0.50% | $ 350.00 | 3364 | | 10/03/06 |
| 07/10/06 | Tennessee | | $ 80,000.00 | 0.50% | $ 400.00 | 3364 | | 10/03/06 |

**YTD Compensation** $ 300,000.00 $ 1,500.00

**Total: YTD 2006 Compensation** $ 1,500.00

SSN# 6027

Address: Clifton, NJ

03249

11

# Investor Submission of Evidence

# Receiver Submission of Evidence

# 2008 YTD Finder's Fees

| Date | Property | Investor | Amount | Draws | % | Compensation | Balance | Paid | Check# / Advice# |
|------|----------|----------|--------|-------|---|--------------|---------|------|------------------|
| 06/09/08 | Drake | | $ 150,000.00 | | 1.00% | $ 1,500.00 | $ 1,500.00 | | |
| **2008 YTD TOTALS** | | | $ 150,000.00 | $ - | | $ 1,500.00 | $ 1,500.00 | $ - | |

← Owed Finder

**2007 YTD TOTALS** $ -

· No 1099 to be issued-Finder's Fee not paid

Rep:

2008 Compensation

Address: Lakewood, NJ
SSN# ...5197

03253

12

# Investor Submission of Evidence

August 18, 2009

Wextrust Investor Relations
C/O Dewey & LeBoeuf, LLP
1101 New York Avenue, NW
Washington D.C. 2005-4213

To whom it may concern,

I am writing this letter to appeal the "Notification of Reduction of Wextrust Claim" letter I received several days ago. I would like to express my objection to a fifty percent reduction in my claim which would result in the exclusion of almost $370,000. I would like to state up front that along with the many other investors, I personally lost a sum which amounted to over ninety percent of my net worth. In the following paragraphs I aim to show that I should not be included in this clause and appreciate your time in going over the facts of the nature of my involvement with Wextrust.

My association with Wextrust: (All dates are to the best of my recollection)

I was introduced to Wextrust through Rabbi Joseph Friedman in late 2005. He was very well regarded in the Memphis community from his earlier years of work and as a well known and respected Rabbi of the Orthodox Jewish congregation in Norfolk, VA. He has worked very hard to establish a trusted name in the Jewish community and I would vouch, even today, for his honesty and integrity. In September of 2005, he presented to me and my wife's family an opportunity to invest in a Chicago hotel that Wextrust had purchased and was converting into an upscale residential property. My mother-in-law and a family trust invested $75,000 each into this investment.

Approximately two months later, in November of 2005, Rabbi Friedman first mentioned a Wextrust offering involving a diamond mine in South Africa. Without giving a long summary of the investment, there was already equipment on the ground and it was producing a small amount of diamonds at that point. Mr. Shereshevsky personally flew into Memphis to present the investment to myself and my mother-in-law. Mr. Shereshevsky, as a senior officer, represented Wextrust as a registered financial company with an impressive track record. He described a history of conservative real estate investments that never missed paying a monthly dividend payment in the company's ten years of existence.

Rabbi Friedman knew Mr. Shereshevsky very well through their years of association in the synagogue in Norfolk. As I understand the story, Rabbi Friedman decided to leave the Rabbinate and Mr. Shereshevsky offered him a job as an equity raiser with Wextrust. Over the course of several years Rabbi Friedman had witnessed first-hand many congregants who had successfully invested in Wextrust offerings. Wextrust also had the *Coldwell Banker* Commercial brand in their portfolio and this along with the satisfied clients convinced Rabbi Friedman (and eventually myself) of the company's legitimacy.

At this time in the real estate market, I personally knew of several successful companies doing the same thing Wextrust was doing in real estate. Circa 2005, the returns they were boasting were not out of the ordinary and not cause to raise any suspicions. During the aforementioned meeting between Mr. Shereshevsky, Rabbi Friedman, my mother in law and myself, Mr. Shereshefsky continually stressed his company's conservative approach to stable commercial and residential property investments. These were investments paying about eight percent monthly with expectations of twenty percent annualized when the property was sold three to five years down the road. Knowing several people that had successfully invested with Wextrust and relying on Rabbi Friedman's integrity, I believed in the authenticity of Mr. Shereskevsky and his company. At that time I decided to invest $400,000 into the IDEX Mines and my wife's family invested $1,000,000.

Because of the large amount we invested, I was flown in January of 2006 to see the mine operation firsthand. It was a two day trip to see several mine sites. It was very impressive to say the least. There was a significant amount of machinery on the ground with a large processor in a secure building extracting actual diamonds. While I was in South Africa, I mentioned to Mr. Shereskevsky that I would like to introduce a couple of people I knew to future Wextrust investments. He suggested that I could become a part-time independent contractor for the company and that I should partner with Rabbi Friedman because I had wealthy friends outside of Memphis, I was a large investor, and my wife's family has been in the community for over 60 years and was very well respected.

This was at most a side job to me. My primary business in rental properties occupied most of my time. I bought and sold over 50 homes during the time I was involved with Wextrust. Over the course of my involvement in 2006, I only actually presented the deals to four investors: two of my good friends, my investment advisor and my wife's family. One friend, ██████████, put $500,000 into IDEX and the other, ███████████ invested in IDEX, Interstate Park, and West 82nd Street. These deals always sold out quickly. I personally invested in three of the offerings that I sold and always put in as much or more than my two friends. My other commissions were from investors Rabbi Friedman knew and made presentations to. During that brief period, from February 2006 to August 2006, we split everything 50/50. I went with Rabbi Friedman to at most four presentations as someone who personally invested in the company. Most of these were people that I recently met through the Jewish community in Memphis, but Rabbi Friedman did the actual presenting of the company and its offerings. After that, Rabbi Friedman decided that I should work on my own since he was working full time, received larger allotments on deals, and I was not prospecting anyone new. As I mentioned, I was very busy in my real estate business. From September 2006 until April 2007 I only spoke to my family and Mr. ███████ about four deals. Mr. Shereshevsky, in early 2007, actually told me that I would not be receiving any more allotments on future deals because almost all of my commissions were from me and my family. He wanted me to get other affluent people to invest with Wextrust.

I have personally lost over ninety percent of my net worth in this fiasco, and now to pour salt into the wound I receive this letter stating that because I was so fooled by Mr. Shereshevsky and Mr. Byers I am now going to have my claim reduced by fifty percent, a sum of over $360,000. To raise the money for these investments, I pulled out almost all the equity from my rental properties and drained my other investment accounts. I completely understand the perspective of punishing people that have knowingly misled others, lied, broken the law, or somehow benefitted from this ordeal. I have done none of the above and I never even worked in any of the Wextrust offices. As I mentioned above, I acted in the capacity of a limited independent contractor. I was told that they were an SEC registered company with a large national accounting firm maintaining their books. I would also like it noted that I had already invested $400,000 before I ever spoke to Mr. Shereshevsky about being an independent contractor. I feel that money should not be subject to any penalty. I hope that the judge will consider these events and my complete innocence when reviewing this petition. Further, I would ask that my claim be reinstated at the value of $739,052.05. Out of the $63,000 earned in commissions, $31,500 was from me or my wife's family. I could even understand deducting the $63,000 from my claim that I earned in commissions, but beyond that, it seems very unfair to penalize me more than I already have been. I would be happy to provide any supporting documentation to assist you in investigating my claims.

I thank you for your time and consideration and can be reached by phone or e-mail if you have any questions or need clarification on any of the above.

Sincerely,

# Receiver Submission of Evidence

| Date | Property | Investor | Amount | % | Compensation | Fees Pd | Check # | Salesperson |
|---|---|---|---|---|---|---|---|---|
| 02/22/06 | IDEX | | $150,000.00 | 1.50% | $2,250.00 | $2,250.00 | 3089 | |
| 03/03/06 | IDEX | | $150,000.00 | 2.00% | $3,000.00 | $3,000.00 | 3089 | |
| 03/06/06 | Homer | | $100,000.00 | 1.00% | $1,000.00 | $1,000.00 | 3089 | |
| 03/08/06 | Homer | | $100,000.00 | 2.00% | $2,000.00 | $2,000.00 | 3089 | |
| 03/10/06 | IDEX | | $100,000.00 | 1.00% | $1,000.00 | $1,000.00 | 3089 | |
| 03/16/06 | IDEX | | $100,000.00 | 1.00% | $1,000.00 | $1,000.00 | 3089 | |
| 03/17/06 | IDEX | | $100,000.00 | 1.00% | $1,000.00 | $1,000.00 | 3089 | |
| 05/05/06 | IDEX | | $300,000.00 | 1.00% | $3,000.00 | $3,000.00 | 3089 | |
| | IDEX | | $200,000.00 | 2.00% | $4,000.00 | $4,000.00 | 3089 | |
| 05/08/06 | IDEX | | $50,000.00 | 1.00% | $500.00 | $500.00 | 3089 | |
| 05/08/06 | IDEX | | $50,000.00 | 1.00% | $500.00 | $500.00 | 3089 | |
| 05/11/06 | IDEX | | $(100,000.00) | 1.00% | $(1,000.00) | $(1,000.00) | 3089 | |
| 05/11/06 | IDEX | | $(100,000.00) | 1.00% | $(1,000.00) | $(1,000.00) | 3089 | |
| 05/11/06 | IDEX | | $500,000.00 | 2.00% | $10,000.00 | $10,000.00 | 3089 | |
| 05/11/06 | IDEX | | $200,000.00 | 1.00% | $2,000.00 | $2,000.00 | 3089 | |
| 05/15/06 | IDEX | | $50,000.00 | 1.00% | $500.00 | $500.00 | 3089 | |
| 06/29/06 | Tennessee | | $50,000.00 | 1.00% | $500.00 | $500.00 | 3159 | |
| 05/08/06 | IDEX | | | 1.00% | $500.00 | $500.00 | 3159 | |
| 05/08/06 | IDEX | | | | $500.00 | $500.00 | 3159 | |
| 08/29/06 | WHYF III | | $100,000.00 | 1.00% | $1,000.00 | $1,000.00 | 3303 | |
| 08/28/06 | WHYF III | | $100,000.00 | 2.00% | $2,000.00 | $2,000.00 | 3303 | |
| 11/16/06 | W 82nd St | | $100,000.00 | 3.00% | $3,000.00 | $3,000.00 | 3498 | |
| 11/17/06 | W 82nd St | | $125,000.00 | 3.00% | $3,750.00 | $3,750.00 | 3498 | |
| 11/16/06 | W 82nd St | | $50,000.00 | 1.50% | $750.00 | $750.00 | 3498 | |
| 12/04/06 | Interstate Park | | $100,000.00 | 3.00% | $3,000.00 | $3,000.00 | 3618 | |
| 12/06/06 | Interstate Park | | $150,000.00 | 3.00% | $4,500.00 | $4,500.00 | 3618 | |
| **YTD TOTALS** | | | $2,725,000.00 | | $49,250.00 | $49,250.00 | | |

| Total 2006 Compensation | $ | 49,250.00 |
|---|---|---|

03259

2007 YTD Compensation

| Date | Property | Investor | Amount | Draws | % | Compensation | Balance | Paid | Check# / Advice# |
|------|----------|----------|--------|-------|---|--------------|---------|------|------------------|
| 01/16/07 | Interstate | | $ 150,000.00 | | 3.00% | $ 4,500.00 | $ 4,500.00 | | WTC 3715 |
| 02/06/07 | | | | | | | $ - | $ (4,500.00) | WTC 3715 |
| 03/27/07 | Hamptons of Hinsdale | | $ 100,000.00 | | 2.00% | $ 2,000.00 | $ 2,000.00 | | WTC 3854 |
| 03/27/07 | Hamptons of Hinsdale | | $ 100,000.00 | | 2.00% | $ 2,000.00 | $ 4,000.00 | | WTC 3854 |
| 04/10/07 | | | | | | | $ - | $ (4,000.00) | WTC 3854 |
| 04/25/07 | Block III | | $ 200,000.00 | | 3.00% | $ 6,000.00 | $ 6,000.00 | | WTC#3938/3942 |
| 05/10/07 | | | | | | | $ - | $ (6,000.00) | WTC#3938/3942 |
| | | | | | | | | | |
| **2007 YTD TOTALS** | | | $ 550,000.00 | $ - | | $ 14,500.00 | $ - | $ (14,500.00) | |

$ 14,500.00 | 2007 Compensation

2008 YTD Compensation

| Date | Property | Investor | Amount | Draws | % | Compensation | Balance | Paid | Check# / Advice# |
|------|----------|----------|--------|-------|---|--------------|---------|------|------------------|
| | | No Activity-2008 | | | | | | | |
| 2008 YTD TOTALS | | | $ - | $ - | | $ - | $ - | $ - | |

03261

**13**

# Investor Submission of Evidence

03263

**From:** ████████████████████████████████

**Sent:** Thursday, August 20, 2009 8:30 PM

**To:** WexTrust Receiver

**Subject:** RE: Wextrust Claim

| | |
|---|---|
| To: | Wextrust Receiver |
| From: | ████████████ |
| Date: | August 20, 2009 |
| RE: | Wextrust Claim for ████████████ |

I am writing to dispute the claim amount and your decision to disqualify certain claims pursuant to your correspondence dated August 13, 2009.

First, although I do not dispute that I received $16,220.51 in distributions over a four-year period as you indicate in your letter, I do want to go on the record as stating that I dispute the Receiver's procedure in calculating net investor claims. I still claim that cash distributions were related to cash flow from the specific property (Highland Park), analogous to interest on a bond or dividends on a stock. From my perspective, my "net investor claim" should be $50,000.00.

Second, I dispute the Receiver's intention to recommend that my net investor claim be reduced by 25%. The ONLY commissions I EVER received from Wextrust were the $1,500.00 related to an investment in the same First Highland LLC that I personally invested in. The implication by the Receiver is that I should have my net investor claim reduced because of the Receiver's proposal "to treat differently those involved in the fraudulent scheme." It is not fair and it makes no sense to penalize me for receiving commissions related to an investment in the same property THAT I INVESTED $50,000.00 OF MY OWN MONEY IN. Put another way, the Receiver intends to penalize my net investor claim by 25%, or $8,444.87, because I received a $1,500.00 commission on an investment in First Highland LLC – the same LLC into which I PUT $50,000.00 OF MY OWN MONEY? Does that really seem fair to the court? Does the Receiver really believe that I would be willing to receive a $1,500.00 commission AND PUT $50,000.00 OF MY OWN MONEY into an investment if I thought that it was a "fraudulent scheme"? Does this make any sense to the Receiver? I am trying to make the point on what I feel is a rather arbitrary and capricious determination by the Receiver regarding the 25% reduction in net investor claims without first looking at the facts of each individual case.

I am available by email or you can phone me at ████████ to discuss.

Sincerely,

████████████

**From:** WexTrust Receiver [mailto:wextrustreceiver@deweyleboeuf.com]
**Sent:** Friday, August 14, 2009 1:14 PM
**To:** ████████
**Subject:** Wextrust Claim

To Whom it May Concern:

Please see the attached correspondence in the Wextrust matter. A hard copy will follow via Federal Express or

8/25/2009

03264

# Receiver Submission of Evidence

## - 2004 Commissions

| Date | Property | Investor | Amount | | Commission | | Check # |
|------|----------|----------|--------|---|-----------|---|---------|
| 9/23/2004 | Highland Park | Jeff Wohlwend | $ | 50,000.00 | $ | 1,500.00 | 1137 |
| | | | | | | | |
| TOTAL | | | $ | 50,000.00 | $ | 1,500.00 | |

03266

15

# Investor Submission of Evidence

**From:** ⬛⬛⬛⬛⬛⬛ ⬛⬛⬛⬛@cox.net)
**Sent:** Monday, August 24, 2009 5:46 AM
**To:** WexTrust Receiver
**Subject:** RE: Wextrust Claim

As for evidence, the burden of proof is on you. I didn't do anything wrong. Read the contract between CH & Wextrust. CH did all the investigation of the company not me. To be penalized 90% as I stated in a previous letter I believe is illegal and unconstitutional since I didn't do anything wrong. If there was any proof I am sure you would have proceeded more than with the few minute interview that we had when I first gave you the information on my investments rather than any follow-up. I also feel your accounting of how you came up with the figures is like double billing and if necessary I will plead my case in front of Judge Chinn if allowed and you aren't afraid of being reversed.

Since you have given me this week I am also going to try and find out what is acceptable proof that myself and my uncles were all invested in PAM as well as ⬛⬛⬛⬛⬛⬛⬛⬛ even I realize as a principle you are penalizing him even more. I believe an attorney will agree that since we were all together when the promise was made that written statements collaborating what was told to us would not be considered hearsay but proof of a verbal contract. There were others that were not part of this whom I told about the investment years ago that could substantiate this but that I realize would be heresay.

⬛⬛⬛⬛⬛⬛⬛

**From:** WexTrust Receiver [mailto:wextrustreceiver@deweyleboeuf.com]
**Sent:** Friday, August 21, 2009 11:46 AM
**To:** ⬛⬛⬛⬛@cox.net
**Subject:** RE: Wextrust Claim

⬛⬛⬛⬛⬛⬛

We did send out a hard copy to your address. We can send out another one if you like. Would you confirm that the address is correct on the letter? However, if you wish to dispute the contents of the letter, you still must let us know today, and you can submit evidence on your behalf until next Friday.

Thank you,

Office of the Wextrust Receiver

**From:** ⬛⬛⬛⬛⬛ [mailto:⬛⬛⬛⬛@cox.net]
**Sent:** Friday, August 21, 2009 5:30 AM
**To:** WexTrust Receiver
**Cc:** ⬛⬛⬛⬛ ; ⬛⬛⬛⬛⬛
**Subject:** FW: Wextrust Claim

I have not received my hard copy as of close of business Thursday.

⬛⬛⬛⬛cox.net

**From:** WexTrust Receiver [mailto:wextrustreceiver@deweyleboeuf.com]
**Sent:** Friday, August 14, 2009 3:48 PM
**To:** ⬛⬛⬛⬛@cox.net

9/9/2009

03274

# Receiver Submission of Evidence

## Compensation-2003-2008

| Year | Equity Raised | Referral Compensation | Referral Compensation Earned Not Paid |
|---|---|---|---|
| 2003 | Not Available | $ 17,850.00 | |
| 2004 | $ 2,142,391.97 | $ 42,273.91 | |
| 2005 | $ 1,977,333.23 | $ 41,362.70 | |
| 2006 | $ 4,150,000.00 | $ 109,050.00 | |
| 2007 | $ 4,150,000.00 | $ 51,756.59 | |
| 2008 | $ 600,000.00 | $ 5,000.00 | $ 14,500.00 |
| Totals | $ 13,019,725.20 | $ 267,293.20 | $ 14,500.00 |

⇧ WTC-CK Ck Voided by Wachovia SEC Freeze Order

Note: Excel Workbook has (7) Tabs of Supporting Documents



**COMMISSIONS PAID OUT IN 2003**

Individual Referral Compensation Schedule Not Available

| NAME | AMOUNT |
|---|---|
| | $ 189,364.81 |
| | $ 17,850.00 |
| | $ 6,850.00 |
| | $ 3,000.00 |
| | $ 1,800.00 |
| | $ 1,500.00 |
| | $ 1,500.00 |
| | $ 750.00 |
| **Total** | **$ 222,314.81** |

1094   $1,050.00   11/24/2003

Unable to locate supporting documents for the remaining $12,500.00 of the 2003 Compensation

1067   $3,600.00   11/07/2003

1088   $600.00   11/17/2003

03277

**16**

# Investor Submission of Evidence

# MORVILLO, ABRAMOWITZ, GRAND, IASON, ANELLO & BOHRER, P.C.

ELKAN ABRAMOWITZ
RICHARD F ALBERT
ROBERT J ANELLO
LAWRENCE S BADER
BARRY A BOHRER
CATHERINE M FOTI
PAUL R GRAND
LAWRENCE IASON
STEPHEN M JURIS
JUDITH L MOGUL
ROBERT G MORVILLO
BARBARA MOSES*
JODI MISHER PEIKIN
ROBERT M RADICK
JONATHAN S SACK**
EDWARD M SPIRO
JEREMY H TEMKIN
BARBARA L TRENCHER
CYRUS R VANCE, JR
RICHARD D WEINBERG

*ALSO ADMITTED IN CALIFORNIA AND
WASHINGTON D C
**ALSO ADMITTED IN CONNECTICUT

565 FIFTH AVENUE

NEW YORK, N.Y. 10017

TELEPHONE
(212) 856-9600

www.maglaw.com

FACSIMILE
(212) 856-9494

WRITER'S DIRECT DIAL

(212) 880-9579
jhayes@maglaw.com

COUNSEL
CHRISTOPHER J MORVILLO
E SCOTT MORVILLO
GREGORY MORVILLO

SENIOR ATTORNEY
THOMAS H KEANE

MICHAEL C. SILBERBERG
1940-2002
JOHN J TIGUE JR
1939-2009

August 21, 2009

**Via E-Mail**
Wextrust Investor Relations
c/o Dewey LeBoeuf, LLP
1101 New York Avenue, NW
Washington DC 20005-4213
e-mail: WextrustInvoice@dl.com

  Re: **Creditor and Investor Claims for** ▓▓▓▓▓▓

Dear Wextrust Investor Relations:

  This firm represents ▓▓▓▓▓▓▓▓ a former employee of Wextrust and also a Wextrust creditor and investor. We write to object to the Receiver's August 14, 2009 letters informing Mr. Mostofsky that he has been disqualified from receiving any distributions as a Wextrust creditor or investor.

  We wish to state at the outset that our client is fully aware of the devastating impact that this affair has had upon other Wextrust investors and their family members, who have been unfairly victimized through no fault of their own, and for whom he has nothing but sympathy. However, ▓▓▓▓▓▓ has also been unfairly victimized as a Wextrust creditor and investor.

  Your position appears to be that ▓▓▓▓▓ should be denied recovery because he "facilitated" the fraud merely by virtue of his position in the company, and because he received commissions beyond an arbitrary amount that you do not define. We challenge your decision to disqualify him on the following bases. First, at no point has there been any determination, evidence—or even any accusation—that ▓▓▓▓▓ was knowingly involved in any fraud. You present no evidence that he knowingly participated in any fraud, and provide no basis to

03280

believe that he did anything more than his job, in good faith.[1]  Second, ███████████loaned
much of the compensation he received back to Wextrust as a good-faith creditor, and likewise
invested a portion of his salary and commissions in what he believed to be bona fide Wextrust
investments.  As a result, he never retained much of the compensation that you seem to believe is
a basis for denying him recovery.  He made his claims as a creditor for these loans to Wextrust,
for which he was never repaid, and for his Wextrust investments, just as any other innocent
creditor or investor.

Finally, we wish to point out that many of the facts on which you rely in denying██████
██████ claim as an investor are plainly incorrect. ████████████ investment in IDEX
was reduced by $50,000 in September 2007 by Wextrust's unilateral decision to convert this
portion of ███████████ investment to a loan to <u>Wextrust</u>, which your records reflect.  There
is no evidence that ███████████investment in IDEX had anything to do with████████
and we are aware of no evidence that ██████████IDEX investment was provided to ODM
and/or tied to ███████. To the extent that you have documents or other evidence showing
that ████████████investment is somehow connected with ODM, please provide us with that
information.  Finally, the fact that you have a promissory note for ████████loan to
Brandon Investments does not mean that this loan was repaid, and we are not aware of any
evidence that it was.  Indeed, the continued existence of a promissory note that has not been
canceled evidences that this loan has not been repaid.  If you have any proof that this loan was
repaid, we would request that you provide it to us.[2]

---

[1] And we submit that █████████████ loans to and investments in Wextrust are strong (and
rather obvious) evidence of his good faith and lack of knowledge of any fraud, as is the fact that
he encouraged various members of his family to invest in Wextrust.

[2] Based on your letters, it is clear that you do not deny the existence of ███████████ loans to
or investments in Wextrust.  Indeed, it is our understanding that the company's records reflect all
of ███████████ investments, and that certain Wextrust employees have already provided you
with sufficient documentation and information attesting to the validity of his loans, and his good
faith.  Given this fact, any additional supporting documentation is unnecessary. ████████████
cannot provide additional supporting documentation or other evidence beyond what you already
have.

In conclusion, we submit that ██████████ is being unfairly punished by you and that he is entitled to a fair distribution as a creditor and investor, and that your decision to completely deny him any recovery simply compounds his injury. On this basis, we object to your decision to deny him any recovery and request a hearing before Judge Chin to resolve this matter.

Sincerely

Catherine M. Foti
James V. Hayes
*Attorneys for* ███████████

cc: John Warren, Esq. (via e-mail)

MORVILLO, ABRAMOWITZ, GRAND, IASON, ANELLO & BOHRER, P.C.

ELKAN ABRAMOWITZ
RICHARD F ALBERT
ROBERT J ANELLO
LAWRENCE S. BADER
BARRY A BOHRER
CATHERINE M. FOTI
PAUL R GRAND
LAWRENCE IASON
STEPHEN M JURIS
JUDITH L. MOGUL
ROBERT G. MORVILLO
BARBARA MOSES*
JODI MISHER PEIKIN
JONATHAN S. SACK**
EDWARD M SPIRO
JEREMY H TEMKIN
JOHN J TIGUE, JR
BARBARA L TRENCHER
CYRUS R VANCE, JR
RICHARD D WEINBERG

*ALSO ADMITTED IN CALIFORNIA AND
 WASHINGTON, D C
**ALSO ADMITTED IN CONNECTICUT

565 FIFTH AVENUE
NEW YORK, N.Y. 10017

TELEPHONE
(212) 856-9600

www.maglaw.com

FACSIMILE
(212) 856-9494

WRITER'S DIRECT DIAL

(212) 880-9579
jhayes@maglaw.com

COUNSEL
CHRISTOPHER J MORVILLO
E SCOTT MORVILLO
GREGORY MORVILLO

SENIOR ATTORNEY
THOMAS M KEANE

MICHAEL C SILBERBERG
1940-2002

June 29, 2009

**BY FEDERAL EXPRESS AND**
**ELECTRONIC MAIL**
Timothy J. Coleman—Receiver for Wextrust Entities
Dewey & LeBoeuf LLP
1101 New York Avenue, N.W.
Washington, DC 20005-4213
e-mail: tcoleman@dl.com, and WexTrustInvoice@dl.com

    Re:    Creditor Claim for ███████████

Dear Mr. Coleman:

    On behalf of our client, ████████████ the following letter serves as█████ ██████████'s claim as a creditor. ██████████ total claim is $590,000, as explained below.

    We have been informed by various governmental authorities that the company already has records in its possession to verify ██████████ claim; in addition, we understand that certain Wextrust employees also have confirmed the information described below. First, ████ ████████ made personal loans totaling $650,000 to Wextrust, and was repaid only $260,000, thereby leaving a balance due him of $390,000. Second, ████████ principal in two investment vehicles was converted into loans to the company—specifically $50,000 of his original $80,000 investment in IDEX Mines and Minerals, LLC, and his entire $150,000 investment in Skeleton Coast Bret Investors, LLC—totaling $200,000.[1] Therefore, the total of ██████████ claim as a creditor is $590,000.

---

[1] Our position is that ██████████ investments converted into loans to the company are part of his claim as a creditor, but we note that, in the alternative, this $200,000 total must at least be treated as part of his investor claim.

03283

Mr. Timothy J. Coleman, Esq.
June 29, 2009
Page 2

Please let us know your response as soon as possible, and please contact us if you have any questions.

Sincerely,

James V. Hayes

cc: John Warren, Esq. (via e-mail)

# MORVILLO, ABRAMOWITZ, GRAND, IASON, ANELLO & BOHRER, P. C.

ELKAN ABRAMOWITZ
RICHARD F ALBERT
ROBERT J ANELLO
LAWRENCE S BADER
BARRY A BOHRER
CATHERINE M FOTI
PAUL R GRAND
LAWRENCE IASON
STEPHEN M JURIS
JUDITH L. MOGUL
ROBERT G MORVILLO
BARBARA MOSES*
JODI MISHER PEIKIN
JONATHAN S SACK**
EDWARD M SPIRO
JEREMY H. TEMKIN
JOHN J TIGUE, JR
BARBARA L TRENCHER
CYRUS R. VANCE JR
RICHARD D WEINBERG

*ALSO ADMITTED IN CALIFORNIA AND
 WASHINGTON D C
**ALSO ADMITTED IN CONNECTICUT

565 FIFTH AVENUE
NEW YORK, N.Y. 10017

TELEPHONE
(212) 856-9600

www.maglaw.com

FACSIMILE
(212) 856-9494

WRITER'S DIRECT DIAL

(212) 880-9579
jhayes@maglaw.com

COUNSEL
CHRISTOPHER J. MORVILLO
E SCOTT MORVILLO
GREGORY MORVILLO

SENIOR ATTORNEY
THOMAS M KEANE

MICHAEL C SILBERBERG
1940-2002

April 29, 2009

**BY FEDERAL EXPRESS AND**
**ELECTRONIC MAIL**
Timothy J. Coleman—Receiver for Wextrust Entities
Dewey & LeBoeuf LLP
1101 New York Avenue, N.W.
Washington, DC 20005-4213
e-mail: tcoleman@dl.com

    Re:    Investor Claim for █████████

Dear Mr. Coleman:

    On behalf of our client, ████████████, we submit the following information as ████ ████████ formal net investor claim as an investor in various Wextrust LLCs. According to our records—which we believe you can verify—████████ made the following investments:

| Entity | Date of Investment | Amount |
|---|---|---|
| Brandon Inv. LLC | 11/30/04 | $35,000. |
| IDEX Mines and Minerals | 11/2006 | $80,000. |
| Skeleton Coast Bret Inv. | 5/9/07 | $150,000. |
| Freemac Holdings | 6/16/04 | $40,000. |
| 2400 McCue Inv. | 10/13/04 | $20,000. |

03285

GDR                          11/04-0808                    $57,755.50.

**Total net investor claim:**                             **$382,755.50**

    In addition, for the sake of a complete record, we note that ▮▮▮▮▮▮▮ invested $150,000 in Dean Street LLC on July 7, 2005, and it is our understanding that the funds for this investment were distributed.

    We understand that you have been reviewing Wextrust's records and will be providing adjusted net investor claims to all Wextrust investors by May 15, 2009, and will be sending these adjusted net investor claims to each individual investor by May 15, 2009, via e-mail and/or regular mail for verification. ▮▮▮▮▮▮▮▮ contact information for purposes of this investor claims verification process is listed below:



Norfolk, VA ▮▮▮▮▮▮
e-mail: ▮▮▮▮▮▮▮▮

    Please contact us if you have any questions.

                    Sincerely,

                    James V. Hayes

Below please find the total amounts we have validated for your investor claims:

| Fund Name | Investments In Cash | Fund Income Accumulation (In-Kind) | Principal Withdrawals | Cash Distributions | Transfers Between Funds | Transfers To/From Third Parties | Total |
|---|---|---|---|---|---|---|---|
| Dean Street Investors, LLC | $150,000.00 | $0.00 | ($150,000.00) | ($24,659.99) | $0.00 | $0.00 | ($24,659.99) |
| FreeMac Holdings | $40,000.00 | $0.00 | $0.00 | ($5,589.03) | $0.00 | $0.00 | $34,410.97 |
| Guaranteed Depository Receipts | $3,464.49 | $53,686.32 | ($0.00) | ($415.81) | $605.51 | $0.00 | $57,339.71 |
| IDEX Mines and Minerals, LLC | $30,000.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $30,000.00 |
| McCue | $20,000.00 | $0.00 | ($2,485.59) | ($3,709.42) | ($605.51) | $0.00 | $13,199.48 |
| Skeleton Coast Bret Investors, LLC | $150,000.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $150,000.00 |
| Net Investor Claim | | | | | | | $260,290.17 |

After carefully reviewing your claim, please check one of the following boxes below and return this letter to us. If you are disputing your net investor claim, please include documentation if available to corroborate your claim.

Net Investor Claim is Correct

**Please consult Subscription Agreements and periodic investment statements provided by the company.**

[ ] My claim is correct. I do not dispute my net investor claim.

Net Investor Claim is Incorrect – I dispute my claim for the following reason.

[ X ] The amount of my 'fund investment' is incorrect.

Name of fund: **Brandon Investments, LLC (investment missing)**

Correct amount: **$35,000**

Name of fund: **IDEX Mines and Minerals, LLC**

Correct amount: **$80,000 (See explanation on next page)**

Name of fund: _____

Correct amount: _____

[ ] The amount of my 'fund withdrawal' is incorrect.

Name of fund: _____

Correct amount: _____

03287

Name of fund:_____

Correct amount:_____

Name of fund:_____

Correct amount:_____

[X]   Other

Explanation: Both ██████████ $50,000 investment

in IDEX and his $150,000 investment in Skeleton Coast Bret Investors, LLC

were converted by the company into a loan. (See ████████ June 29, 2009

Creditor Claim letter).

Please feel free to append additional pages for your investments or explanations to the extent needed. Please also include any statements or materials you deem helpful in determining your claim.

Address where Notices and Distributions will be sent:       Change of Address:

Norfolk, VA ████████

Sign and print the name and title, if any, of the investor or other person authorized to review and submit this claim (attach copy of power of attorney if any)

Name:_____

Title:_____

Date: 6/30/09

03288

# Receiver Submission of Evidence



**From:**
**To:**
**Sent:** Tuesday, June 20, 2006 8:50 AM
**Subject:** RE: It's

My pleasure  Have a safe and enjoyable trip  I will speak to you when I return.

will take good care of you.

Norfolk, VA

(Office) —
(Direct)
(Mobile)
(Fax)

Registered Representative of, and securities offered through WEXTRUST SECURITIES LLC. Supervisory Office:

999 Waterside Drive Ste. 2220
Norfolk, VA 23510
(757) 623-0246

**From:** [mailto:
**Sent:** Tuesday, June 20, 2006 7:21 AM
**To:**
**Subject:** Re: It's

thank you for clarifying my understanding of the investment I'm about to make.  I will call Lisa next week and ask that she send the paperwork to me.  This Thursday am we are leaving (driving) to Indiana for a wedding Saturday. We'll return Sunday or Monday, but then I have to work so I really won't have time to drive to Norfolk. (though I would like to, I love all the harbor activity)

Yes, hopefully the money will hit the account soon, it's taking longer than I expected.  Thank you for all your help, I

03290

(copy of my email to ████████ at ████████ Tues. 6-20-06.

████████ thank you for clarifying my understanding of the investment I'm about to make. I will call Lisa next week and ask that she send the paperwork to me. This Thursday am we are leaving (driving) to Indiana for a wedding Saturday. We'll return Sunday or Monday, but then I have to work so I really won't have time to drive to Norfolk. (though I would like to, I love all the harbor activity)

Yes, hopefully the money will hit the account soon, it's taking longer than I expected. Thank you for all your help, I really appreciate it.



----- Original Message -----
From:
To: ████████
Cc: ████████
Sent: Monday, June 19, 2006 5:54 PM
Subject: RE: It's ████████

████████ the SAFEST! You told me of the GSA deal, 8.5% annually, 3 yrs. minimum, interest on $100,000.
Its not 3 years. It will last as long as the market determines. We expect it to last 5-7 but were being cautious and saying 7-10. Its not "interest" its profit from operations paid to you in a preferred return.

You told me to go to Schwab, liquidate my IRA's, and transfer them to Schwab. Then they would be held in a Schwab IRA account invested in WexTrust Capital through your San Francisco office.
Schwab has a san Francisco office that handles these types of investments. That is who we deal with to get things finalized.

This was on a GSA deal, 7-10 years at most, you thought it would end in about 5-7 years, (5 more likely) govt. is the tenant, mortgage very high, cannot prepay etc. You said "Potential return on money is 16.9%, 8.50% per year, and 8.42% long term capital gain (approx. amt. depends on the year of the sale) A K1 every year defers some of the taxes. You also said WexTrust does not get their money until the investors gets theirs first. (I was the one who ate most of the M & M's one afternoon in your conference room!)
I remember your M&M binge. You have the right property. It is the safest deal we have ever done as far as we underwrite it. It is available for you. I set aside the money for you. We need to hear from you that the money has finally "hit" the account so we can finish the transaction. Meanwhile while we wait you can come in and fill out the paperwork necessary.
You can contact ████ br ████████, who is the one who handles the paperwork, or ████ who is ████ ██ direct supervisor ████ is on vacation this week) to facilitate the paperwork. They are very easy to work with and much nicer than I am.

Please let me know if you have any questions. There is no need to wait until anything else happens to get the paperwork settled. I will wait to hear from you

Yours truly,

Per ▓▓▓▓▓▓▓▓ — Westrust 5-19-06
Capital

100,000 — 3 yrs. — 8.5% annually
minimum

1- go to Schwab
2- liquidate annuity & IRA
3- tef to IRA with Schwab

Can't add John's name to acct. as he isn't named on my
accounts I'm transferring.

GSA deal — Triple net lease — 7-10 yrs. @ most — thinks it will end abt. 5-7 yrs.
(5 more likely) Very secure, govt. is the tenant, mortgages
very high — cannot "prepay" —

Potential return on money is 16.9% — 8.50 per year
and 8.42 longterm cap. gain * K-1 every year defers
some of the taxes. *-approximate amt. depends on
year of the sale.

Westrust does not get their $ until investors
get theirs first. Westrust here deals with the
San Francisco office — so do not mention Westrust
@ Richmond Schwab office — will only confuse
them.

Schwab san fran will hold my funds with Westrust
Capital! For now — hopefully soon Westrust holds!

→ Schwab will send $ (cks.) to me. I ASK for tax to be withheld.

5-23-06 — Left word for Michael — acct. is officially open!
Schwab is custodian of my acct. now.

Monthly cks. go
to Schwab. I close
on $ from then

**COMPENSATION**

2004 THRU 2008

| Year | Amount |
|------|--------|
| 2004 | $ 40,226.64 |
| 2005 | $ 569,484.32 |
| 2006 | $ 461,378.29 |
| 2007 | $ 764,279.60 |
| 2008 | $ 234,028.42 |
| **Total** | **$ 2,069,397.27** |

Note: Figures do not reflect compensation that may have been paid by Jen Edmiston thru one of the SA Entities

03293

## [redacted] COMPENSATION-2005

| Date | Bonus/Adv | Salary | Draw | Charity | Commission Pymts | Ck# | Total | Notes |
|---|---|---|---|---|---|---|---|---|
| | Compensation | | | | | | | |
| 01/03/05 | | | | | $ 3,800.00 | 1423 | $ 3,800.00 | Commissions 12/29/04-01-03-05 |
| 01/13/05 | | | | | $ 2,750.00 | 1448 | $ 2,750.00 | Commissions 01/1/05-01/12/05 |
| 01/14/05 | | | $ 1,500.00 | | | Payroll | $ 1,500.00 | Draw |
| 01/26/05 | | | | $ 1,000.00 | | 1466 | $ 1,000.00 | TDSV |
| 01/26/05 | | | | | $ 7,913.50 | 1467 | $ 7,913.50 | Commissions 01/14/05-01/16/05 |
| 01/31/05 | | | $ 3,500.00 | | | Payroll | $ 3,500.00 | Draw |
| 02/02/05 | | | | | $ 3,500.00 | 1495 | $ 3,500.00 | Commissions 01/26/05-02/01/05 |
| 02/15/05 | | | $ 3,500.00 | | | Payroll | $ 3,500.00 | Draw |
| 02/15/05 | | | | | $ 12,950.00 | 1527 | $ 12,950.00 | Commissions 02/01/05-02/15/05 |
| 02/28/05 | | | $ 3,500.00 | | | Payroll | $ 3,500.00 | Draw |
| 02/28/05 | | | | | $ 11,230.00 | 1561 | $ 11,230.00 | Commissions 02/16/05-02/28/05 |
| 02/28/05 | | | | $ 1,000.00 | | 1562 | $ 1,000.00 | TDSV |
| 03/15/05 | | | $ 3,500.00 | | | Payroll | $ 3,500.00 | Draw |
| 03/16/05 | | | | | $ 20,400.00 | 1612 | $ 20,400.00 | Commissions 03/01/05-03/15/05 |
| 03/16/05 | | | | $ 1,800.00 | | 1613 | $ 1,800.00 | TDSV |
| 03/31/05 | | | $ 3,500.00 | | | Payroll | $ 3,500.00 | Draw |
| 03/31/05 | | | | | $ 17,400.00 | 1674 | $ 17,400.00 | Commissions 03/16/05-03/31/05 |
| 03/31/05 | | | | $ 1,000.00 | | 1675 | $ 1,000.00 | TDSV |
| 04/15/05 | | | $ 3,500.00 | | | Payroll | $ 3,500.00 | Draw |
| 04/18/05 | | | | $ 1,500.00 | | 1724 | $ 1,500.00 | Camp Dora Golding |
| 04/18/05 | | | | | $ 72,337.90 | 1725 | $ 72,337.90 | Commissions 04/01/05-04/15/05 |
| 04/29/05 | | | $ 3,500.00 | | | Payroll | $ 3,500.00 | Draw |
| 04/30/05 | | | | | $ 9,222.50 | 1760 | $ 9,222.50 | Camp Dora Golding |
| 04/30/05 | | | | $ 1,500.00 | | 1761 | $ 1,500.00 | Commissions 04/16/05-04/30/05 |
| 05/05/05 | | | | | $ 69,500.00 | 1771 | $ 69,500.00 | Commissions-Per Joe Sherehsevsky |
| 05/06/05 | | | | | $ 7,800.00 | 1774 | $ 7,800.00 | Commissions-Per Joe Sherehsevsky |
| 05/13/05 | | | $ 3,500.00 | | | Payroll | $ 3,500.00 | Draw |
| 05/18/05 | | | | | $ 4,407.90 | 1810 | $ 4,407.90 | Commissions 05/01/05-05/15/05 |
| 05/31/05 | | | | | $ 18,280.00 | 1850 | $ 18,280.00 | 05/15/05-05/31/05 Pymt#1 |
| 05/31/05 | | | | $ 1,200.00 | $ - | 1851 | $ 1,200.00 | Camp Dora Golding |
| 05/31/05 | | | | | $ 1,370.00 | 1854 | $ 1,370.00 | 05/01/05-05/15/05 Pymt#2 |
| 05/31/05 | | | $ 3,500.00 | | | Payroll | $ 3,500.00 | Draw |
| 06/15/05 | | | $ 3,500.00 | | | Payroll | $ 3,500.00 | Draw |
| 06/16/05 | | | | | $ 5,450.00 | 1916 | $ 5,450.00 | Commissions 06/01/05-06/15/05 |
| 06/30/05 | | | $ 3,500.00 | | | Payroll | $ 3,500.00 | Draw |
| 07/15/05 | | | $ 3,500.00 | | | Payroll | $ 3,500.00 | Draw |
| 07/18/05 | | | | | $ 2,000.00 | 2206 | $ 2,000.00 | NCSY |
| 07/18/05 | | | | | $ 25,014.52 | 2009 | $ 25,014.52 | Commissions 07/01/05-07/15/05 |
| 07/31/05 | | | $ 3,750.00 | | | Payroll | $ 3,750.00 | Draw |
| 07/31/05 | | | | | $ 17,361.30 | 2044 | $ 17,361.30 | Commissions 07/16/05-07/31/05 |
| 08/15/05 | | | $ 3,750.00 | | | Payroll | $ 3,750.00 | Draw |
| 08/19/05 | | | | | $ 24,452.04 | 2087 | $ 24,452.04 | Commissions 08/01/05-08/15/05 |
| 08/31/05 | | | $ 3,750.00 | | | Payroll | $ 3,750.00 | Draw |
| 09/01/05 | | | | | $ 31,293.31 | 2137 | $ 31,293.31 | Commissions 08/16/05-08/31/05 |
| 09/15/05 | | | $ 3,750.00 | | | Payroll | $ 3,750.00 | Draw |
| 09/30/05 | | | | | $ 44,869.71 | 2216 | $ 44,869.71 | Commissions 09/01/05-09/30/05 |
| 09/30/05 | | | | | $ 988.46 | 2217 | $ 988.46 | Commissions - Elmhurst |
| 09/30/05 | | | $ 3,750.00 | | | Payroll | $ 3,750.00 | Draw |
| 10/14/05 | | | $ 3,750.00 | | | Payroll | $ 3,750.00 | Draw |
| 10/31/05 | | | | | $ 25,506.22 | 2313 | $ 25,506.22 | Commissions 10/01/05-10/30/05 |
| 10/31/05 | | | $ 3,750.00 | | | Payroll | $ 3,750.00 | Draw |
| 11/15/05 | | | $ 3,750.00 | | | Payroll | $ 3,750.00 | Draw |
| 11/30/05 | | | $ 3,750.00 | | | Payroll | $ 3,750.00 | Draw |
| 12/01/05 | | | | | $ 18,306.47 | 2414 | $ 18,306.47 | Commissions 11/01/05-11/30/05 |
| 12/15/05 | | | $ 3,750.00 | | | Payroll | $ 3,750.00 | Draw |
| 12/30/05 | | | $ 3,750.00 | | | Payroll | $ 3,750.00 | Draw |
| 12/31/05 | | | | | $ 10,098.99 | 2520 | $ 10,098.99 | Commissions 12/01/05-12/31/05 |
| | | | | | | | $ - | |
| Totals 2005 | $ - | $ - | $ 84,750.00 | $ 8,290.00 | $ 469,880.37 | | $ 562,920.37 | |

4/16/2008 Note, Unable to verify with Chicago whether [redacted] was receiving his $1,250 per payroll salary compensation or not.

Was told that payroll was done by Patti Davis at the time and location of those records are not known

Note Charity acronym TDSV stands for Torah day School of Virginia

**Auto Lease Compensation**

| Year | | 2005 |
|------|---|------|
| Jan | $ | 547.00 |
| Feb | $ | 547.00 |
| Mar | $ | 547.00 |
| Apr | $ | 547.00 |
| May | $ | 547.00 |
| Jun | $ | 547.00 |
| Jul | $ | 547.00 |
| Aug | $ | 547.00 |
| Sep | $ | 547.00 |
| Oct | $ | 547.00 |
| Nov | $ | 547.00 |
| Dec | $ | 547.00 |

**Total 2005 Auto Com**     **$   6,564.00**

**Total Auto Lease Contributions   $   6,564.00**

████████████

Charitable Contributions paid by Wextrust Capital from Earned

**Year     2005**

**TDSV       Torah Day School of Virginia**

| Date | Ck# | | Amt |
|------|-----|---|-----|
| 1/26/05 | 1466 | $ | 1,000.00 |
| 2/28/05 | 1562 | $ | 1,000.00 |
| 3/16/05 | 1613 | $ | 1,000.00 |
| 3/31/05 | 1675 | $ | 1,000.00 |
| **Total TDSV** | | **$** | **4,000.00** |

**Camp Dora Golding**

| Date | Ck# | | Amt |
|------|-----|---|-----|
| 4/18/05 | 1724 | $ | 1,500.00 |
| 4/30/06 | 1761 | $ | 1,500.00 |
| 5/31/05 | 1851 | $ | 1,290.00 |
| **Total Camp Dora Golding** | | **$** | **4,290.00** |

| **Total Charitable Contributions** | | **$** | **8,290.00** |

## COMPENATION THRU WEXCAPLLC ADMINISTAFF PAYROLL-2007

| Month | Compensation | | | | 2007 Override Comp Pd in Jan 08 | Total | Notes |
|---|---|---|---|---|---|---|---|
| | Bonus/Adv | Salary | Draw | Override Comp | | Compensation | |
| Jan-07 | | $ 2,500.00 | $ 7,500.00 | $ 22,121.85 | | $ 32,121.85 | |
| Feb-07 | | $ 2,500.00 | $ 7,500.00 | $ 5,187.69 | | $ 15,187.69 | |
| Mar-07 | | $ 2,500.00 | $ 7,500.00 | $ 51,107.31 | | $ 61,107.31 | |
| Apr-07 | $ 70,000.00 | $ 2,500.00 | $ 7,500.00 | $ 42,885.00 | | $ 122,885.00 | |
| May-07 | | $ 2,500.00 | $ 7,500.00 | $ 15,025.79 | | $ 25,025.79 | |
| Jun-07 | | $ 2,500.00 | $ 7,500.00 | $ 67,515.93 | | $ 77,515.93 | |
| Jul-07 | | $ 2,500.00 | $ 7,500.00 | $ 45,104.82 | | $ 55,104.82 | |
| Aug-07 | | $ 2,500.00 | $ 7,500.00 | $ 13,342.51 | | $ 23,342.51 | |
| Sep-07 | | $ 2,500.00 | $ 7,500.00 | $ 50,793.77 | | $ 60,793.77 | |
| Oct-07 | | $ 2,500.00 | $ 7,500.00 | $ 18,772.89 | | $ 28,772.69 | |
| Nov-07 | | $ 2,500.00 | $ 7,500.00 | $ 5,000.00 | | $ 15,000.00 | |
| Dec-07 | | $ 2,500.00 | $ 7,500.00 | $ - | 16,104.27 | $ 26,104.27 | Dec 07 Finder's Fee Pd. Jan 15,08 Payroll |
| | $ 70,000.00 | $ 30,000.00 | $ 90,000.00 | $ 336,867.56 | 16,104.27 | $ 542,971.83 | |

| WexCapLLC Auto Compensation | |
|---|---|
| Jan-07 | $ 547.00 |
| Feb-07 | $ 547.00 |
| Mar-07 | $ 547.00 |
| Apr-06 | $ 547.00 |
| May-06 | $ 547.00 |
| Jun-06 | $ 547.00 |
| Jul-06 | $ 547.00 |
| Aug-06 | $ 547.00 |
| Sep-06 | $ 547.00 |
| Oct-06 | $ 547.00 |
| Nov-06 | $ 547.00 |
| Dec-06 | $ 547.00 |
| Total Comp | $ 6,564.00 |

Note: Reimbursement thru Expense

| 2007 Compensation Pd in 2007 | |
|---|---|
| WexSecLLC | $ 230,846.04 |
| WexCapLLC | $ 526,867.56 |
| Auto Payments | $ 6,564.00 |
| Total 2007 Comp | $ 764,279.60 |

Notes
WexSecLLC OP Acc't070
Administaff Payroll

| 2007 Compensation Pd in 2008 | |
|---|---|
| WexSecLLC | $ 24,189.94 |
| WexCapLLC | $ 16,104.27 |
| Total 2007 Unpaid | $ 40,294.21 |

Notes
Nov/Dec 07 Commisions
Dec 07 Overrides

03297

## *WexSec LLC 2007 Compensation-* ████████████

| Month | Ck# | Amt Pd-2007 | Amt Pd-2008 | Date Paid |
|-------|-----|-------------|-------------|-----------|
| Jan-07 | 1111 | $ 16,300.00 | | 02/06/07 |
| Feb-07 | 1123 & 1125 | $ 17,763.96 | | 03/02/07 |
| Mar-07 | 1137 | $ 1,880.00 | | 04/10/07 |
| Apr-07 | 1141 | $ 18,400.00 | | 05/11/07 |
| May-07 | 1156 | $ 70,815.79 | | 06/13/07 |
| Jun-07 | 1165 | $ 12,360.87 | | 07/24/07 |
| Jul-07 | 1172 | $ 30,987.64 | | 08/16/07 |
| Aug-07 | 1179 | $ 11,910.00 | | 09/18/07 |
| Sep-07 | 1182 | $ 4,280.00 | | 11/14/07 |
| Oct-07 | 1183 | $ 46,149.78 | | 11/14/07 |
| Nov-07 | 1187 | | $ 8,464.94 | 01/17/08 |
| Dec-07 | 1189 | | $ 15,725.00 | 01/30/08 |
| **Totals** | | **$ 230,848.04** | **$ 24,189.94** | **$ 255,037.98** |

**WexSec LLC 2008 Compensation ▮▮▮▮▮▮**

| Month | Ck# | Amt Pd-2008 | Owed not Pd | Date Paid |
|-------|-----|-------------|-------------|-----------|
| Nov-07 | 1187 | $ 8,465.94 | $ - | 01/17/08 |
| Dec-07 | 1189 | $ 15,725.00 | $ - | 01/31/08 |
| Jan-08 | Advice# ▮▮▮▮0602 | $ 24,350.00 | $ - | 02/22/08 |
| Feb-08 | Advice# ▮▮▮6819 | $ 3,236.00 | $ - | 03/17/08 |
| Mar-08 | 1229 | $ 6,700.00 | $ - | 04/21/08 |
| Apr-08 | Advice#▮▮▮2244 | $ 18,234.06 | $ - | 06/06/08 |
| May-08 | Advice#20080801-00074197 | | $ 9,564.13 | Commissions-May 08 Advice# ▮▮▮▮4197 $9,564.13 wired but was cancelled by SEC Freeze Order 08/01/08 |
| Jun-08 | | | $ 10,550.00 | Owed to ▮▮▮ |
| Jul-08 | | | $ 1,000.00 | Owed t ▮▮▮ |
| Aug-08 | | | | |
| Sep-08 | | | | |
| Oct-08 | | | | |
| Nov-08 | | | | |
| Dec-08 | | | | |
| Totals | | $ 76,711.00 | $ 21,114.13 | |

**Note: These Figures may not include any compensation that may have been paid by ▮▮▮ ▮▮▮▮ thru any of the S African Accounts**

| WexCapLLC Auto Compensation-2008 | |
|-------------------------------------|------------|
| Jan-08 | $ 547.00 |
| Feb-08 | $ 547.00 |
| Mar-08 | $ 547.00 |
| Apr-08 | $ 547.00 |
| May-08 | $ 547.00 |
| Jun-08 | $ - |
| Jul-08 | $ - |
| Aug-08 | $ - |
| Sep-08 | $ - |
| Oct-08 | $ - |
| Nov-08 | $ - |
| Dec-08 | $ - |
| Total Comp | $ 2,735.00 |



17

# Investor Submission of Evidence

**From:** ████████████████████████████████████████████████

**Sent:** Monday, August 31, 2009 3:01 PM

**To:** WexTrust Receiver

**Subject:** Potential Disqualification of Net Investor Claim (part 2)

Andrew:

Thank you for explaining what information the Receiver is requesting. I hope the following fully addresses the issue:

1. None of the fees I received from Wextrust were earned as a result of my efforts to solicit investors for their projects.

2. The fees I received were to recognize the funds raised by my long time friend and charitable fund raiser, ████████████ who, in an attempt to help find him an additional source of income, I unfortunately introduced to Wextrust.

Very truly yours,

████████████████████████

Aug 31, 2009, at 12:33 PM, WexTrust Receiver wrote:

████████████████

> Thank you for your email. In the previously sent email, your letter to the trustee objects to the investor claim, with documents regarding your claim. However, this email was sent in regards to the potential partial disqualification of your claim, in the amount of 25%. In your email you, you address your particular investments, but not your potential disqualification. I hope this email clarifies.
>
> Thank you,
>
> Office of the Wextrust Receiver

**From:** ████████████████████████ ████████████████████

**Sent:** Friday, August 28, 2009 7:06 PM

**To:** WexTrust Receiver

**Subject:** Potential Disqualification of Net Investor Claim (part 2)

This is a part of a previous email addressing this matter with the same subject and sent on August 28, 2009.

Begin forwarded message:

**From:** ████████████████████████████████

**Date:** August 19, 2009 10:13:12 PM EDT

9/9/2009

# Receiver Submission of Evidence

## COMMISSIONS PAID OUT IN 2003

| NAME | AMOUNT |
|------|--------|
|  | $ 189,364.81 |
| | $ 17,850.00 |
| | $ 6,850.00 |
| | $ 3,000.00 |
| | $ 1,500.00 |
| | $ 1,500.00 |
| | $ 1,500.00 |
| | $ 750.00 |
| Total | $ 222,314.81 |

| Date | Property | Investor | Amount | Commission | Check # |
|---|---|---|---|---|---|
| 9/29/2003 | Uptowne Square | | $ 50,000.00 | $ 1,500.00 | 1047 |
| 5/4/2004 | Hilltop Ridge | | $ 50,000.00 | $ 1,000.00 | 5064 |
| 5/5/2004 | | | $ 50,000.00 | $ 500.00 | 5071 |
| 6/22/2004 | | | $ 50,000.00 | $ 500.00 | 1004 |
| 8/27/2004 | Belle Meade | | $ 50,000.00 | $ 500.00 | 1094 |
| 8/27/2004 | High Yield Fund | | $ 50,000.00 | $ 500.00 | 6014 |
| 9/20/2004 | Belle Meade | | $ 50,000.00 | $ 500.00 | 1131 |
| 11/30/2004 | McCue | | $ 90,000.00 | $ 900.00 | 1322 |
| 12/28/2004 | Various | | $ 100,000.00 | $ 1,000.00 | 1405 |
| Total | | | $ 490,000.00 | $ 6,900.00 | |

03306

## 2005 Commissions



| Date | Property | Investor | Amount | Commission | Check # | |
|---|---|---|---|---|---|---|
| 12/29/04 | Rogers Plaza | | $ 100,000.00 | $ 1,000.00 | 1418 | Paid on 1/3/05 |
| 04/06/05 | Days Inn | | $ 50,000.00 | $ 250.00 | 1710 | |
| | | | | | | |
| **TOTAL YTD COMMISSIONS** | | | **$ 150,000.00** | **$ 1,250.00** | | |

| 2005 Compensation | $ | 1,250.00 |
|---|---|---|

03307

**19**

# Investor Submission of Evidence

| From: | █████████████████████ |
|---|---|
| **Sent:** | Friday, August 21, 2009 7:54 PM |
| **To:** | Schmeltz III, Vincent P. |
| **Cc:** | WexTrust Receiver |
| **Subject:** | RE: Discussion Regarding Investor Claim Amount and Disputing Receiver's Determination |
| **Importance:** | High |

Dear Trace:

Were you able to speak with Tim Coleman or others regarding my two investor claim amounts and the fact that I was not providing referral services in exchange for
compensation? My gross pay and bonus pay was for my position as Senior Investment Analyst and that's all. As I explained to you, the $3,520.38 under commissions
was given to me by ████ as his way of paying me more because Steve refused to give me a proper raise at the beginning of 2008. The only reason I got thrown in under
the commission group was because of my licenses. I told Ralph and Paul I had no interest in selling anything; that was not my strong point. I hated sales. Another
item I forgot to mention when I spoke to you is this: Whenever we went anywhere, whether it was to see a CTA or speak with an institution, I had no choice but to go
because of my title and the fact that ████ could not answer statistical questions about the Fund. I had to be there in order to explain the pro forma and other how the
Fund operated. This put me in the middle of ████ selling and I having to be there because of my position and job. So because of this, now your team is branding me
as being part of this mess, which I was not! I am disputing The Receiver's determination with this e-mail for both of my claim amounts which are $74,938.56 and
$215,805.76. One is for the GDR fund and the other in my investment in the WPPF.

Please let me know if you spoke with them and what the outcome was.

Best regards,

████████████

9/9/2009

03314

# Receiver Submission of Evidence

## 2008 YTD Compensation

| Date | Property | Investor | Amount | Draws | % | Compensation | Balance | Paid | Check# / Adv/coa |
|---|---|---|---|---|---|---|---|---|---|
| 01/01/08 | | Balance forward-Dec-07 | $ | | | | $ 3,000.00 | | |
| 12/28/07 | Drake | | 100,000.00 | | 3.0% | $ 3,000.00 | $ 3,000.00 | (3,000.00) | AMS-FEB 29th P/R |
| 02/2008 | | Commission Compensation-Jan 08 | | | | | | $ (3,000.00) | |
| | | | | | | | | | |
| **2008 YTD TOTALS** | | | $ 100,000.00 | $ | | | $ 3,000.00 | $ (3,000.00) | |

13,000.00 2008 Compensation

Recieves compensation thru payroll
Administaff W2

## 01-31-08 Commissions - Payable on Feb29th Payroll

| Name Last | First | SS# | Location | Compensation Salary | Bonus Adv | Draw | Sheder's Fee | Adjustments | Total Commission | Notes |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Chicago | $ | $ | $ | $ 3,000.00 | $ | $ 3,000.00 | Commission Compensation-Jan 08 |
| Totals | | | | $ | $ | $ | $ 3,000.00 | $ | $ 3,000.00 | Note Referral Compensation Based on Jan 08 Activity |

Special Payroll Commission Amt

03316

21

# Investor Submission of Evidence

# Receiver Submission of Evidence

| NAME | | | TOTAL 2003 COMP | TOTAL 2004 COMP | TOTAL 2005 COMP | TOTAL 2006 COMP | TOTAL 2007 COMP | TOTAL 2008 COMP | Total Compensation | Accurate Net Investment Amount | Reduction Percentage | Reduction Amount | Adjusted Net Investor Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Last | Title | First | | | | | | | | | | | |
| | Mr. | | $ 160,304.81 | $ 140,780.01 | $ 433,776.52 | $ 608,568.30 | $ 1,051,276.52 | $ 258,408.84 | $ 2,652,802.99 | $223,951.12 | 100% | $223,951.13 | $ - |
| | Ms. | | $ 888,771.79 | $ 888,771.79 | $ 883,263.56 | $ 438,215.88 | $ 1,167,049.14 | $ 1,021,156.29 | $ 3,349,413.54 | $324,290.97 | 100% | $324,290.97 | $ - |

| NAME | | | | TOTAL 2003 COMP | TOTAL 2004 COMP | TOTAL 2005 COMP | TOTAL 2006 COMP | TOTAL 2007 COMP | TOTAL 2008 COMP | Total Compensation | Accurate Net Investment Amount | Reduction Percentage | Reduction Amount | Adjusted Net Investor Amount |
|------|-------|-------|-------|-----------------|-----------------|-----------------|-----------------|-----------------|-----------------|-------------------|-------------------------------|---------------------|------------------|------------------------------|
| Last | Title | First | | | | | | | | | | | | |
| | Ms. | | | $ 189,364.81 | $ 868,771.78 | $ 853,253.66 | $ 438,215.88 | $ 1,167,549.14 | $ 1,302,158.29 | $ 3,549,413.54 | $324,290.97 | 100% | $324,290.97 | $ |

23

# Investor Submission of Evidence

**From:** ██████████████

**Sent:** Monday, August 31, 2009 3:55 PM

**To:** WexTrust Receiver

**Subject:** Dispute

I am ████████████, why is my claim being reduced by 50% I did not work for Wextrust?

Pleae let me know why?

████████████████

Virginia Beach, Va ██████
██████████████

Judge Chin, Dewey & LeBoeuf, LLP & To Whom it May Concern.

This may be the last letter I will write about how I feel about the Wextfraud case.

How do I explain to my family that my/our investment will be reduced to almost nothing!
I AM NOT a "less then honest" person. Why should my wife suffer a major reduction in her investment
BECAUSE I had a "JOB" working for those crooks? She did nothing wrong! I did nothing wrong! Yet
you group us all together as crooks. Prove it! I invested much more then I every received from
Wextfraud, that ██████████████████████ for me! $59k over almost five years (5) is just
(10%) ten percent of my total investments. That money came from our savings, not Wextfraud! I can
not afford a lawyer to fight my case, all I ever asked was you-all to do the correct thing.
My wife will be going back to work in week (██████████████████ she is just turning sixty, she
WILL have to work forever! She came to me tonight just before she went to bed " don't let this whole
Wextfraud thing get you crazy, you tried your best for us, will be OK".
I am so angry at myself for letting someone else ruin our lives, now another "company" is taking what is
left and leaving us nothing.
How can that be fair? I did nothing wrong........the SEC, Banks, Charles Schwab etc all did business with
Wextfraud not one saw what was going on, so why say I did! Will they loose there profit from dealing
with Wextfraud, I think not; but I will!

████████████

ps; My nane is ███████████████████

9/9/2009

**03336**

# Receiver Submission of Evidence

## 2004

| Date | Property | Investor | Amount | Commission Earned | Salary | Balance | Commission Paid | Check |
|------|----------|----------|--------|-------------------|--------|---------|-----------------|-------|
| 1/15/2004 | | | | | $ 866.67 | $ 866.67 | | |
| 1/23/2004 | Hilltop Investors | | $ 30,000.00 | $ 900.00 | | $ (33.33) | | |
| 1/30/2004 | | | | | $ 866.67 | $ 833.34 | | |
| 2/15/2004 | | | | | $ 866.67 | $ 1,700.01 | | |
| 2/20/2004 | Hilltop Investors | | $ 25,000.00 | $ 750.00 | | $ 950.01 | | |
| 2/24/2004 | HYF | | $ 25,000.00 | $ 750.00 | | $ 200.01 | | |
| 2/27/2004 | | | | | $ 866.67 | $ 1,066.68 | | |
| 3/15/2004 | | | | | $ 866.67 | $ 1,933.35 | | |
| 3/31/2004 | | | | | $ 866.67 | $ 2,800.02 | | |
| 4/15/2004 | | | | | $ 866.67 | $ 3,666.69 | | |
| 4/28/2004 | East Point | | $ 20,000.00 | $ 600.00 | | $ 3,066.69 | | |
| 4/28/2004 | Hilltop Investors | | $ 15,000.00 | $ 450.00 | | $ 2,616.69 | | |
| 4/30/2004 | | | | | $ 866.67 | $ 3,483.36 | | |
| 5/15/2004 | | | | | $ 866.67 | $ 4,350.03 | | |
| 5/31/2004 | | | | | $ 866.67 | $ 5,216.70 | | |
| 6/15/2004 | | | | | $ 866.67 | $ 6,083.37 | | |
| 6/30/2004 | | | | | $ 866.67 | $ 6,950.04 | | |
| 7/15/2004 | | | | | $ 866.67 | $ 7,816.71 | | |
| 7/30/2004 | | | | | $ 866.67 | $ 8,683.38 | | |
| 8/15/2004 | | | | | $ 866.67 | $ 9,550.05 | | |
| 8/31/2004 | | | | | $ 866.67 | $ 10,416.72 | | |
| 9/15/2004 | | | | | $ 866.67 | $ 11,283.39 | | |
| 9/16/2004 | First Highland | | $ 50,000.00 | $ 2,000.00 | | $ 9,283.39 | | |
| 9/30/2004 | | | | | $ 866.67 | $ 10,150.06 | | |
| 10/14/2004 | Belle Meade | | $ 37,000.00 | $ 1,110.00 | | $ 9,040.06 | | |
| 10/15/2004 | | | | | $ 866.67 | $ 9,906.73 | | |
| 10/18/2004 | Belle Meade | | $ 20,000.00 | $ 600.00 | | $ 9,306.73 | | |
| 10/31/2004 | | | | | $ 866.67 | $ 10,173.40 | | |
| 11/15/2004 | | | | | $ 866.67 | $ 11,040.07 | | |
| 11/15/2004 | McCus | | $ 22,000.00 | $ 660.00 | | $ 10,380.07 | | |
| 11/30/2004 | | | | | $ 866.67 | $ 11,246.74 | | |
| 12/15/2004 | | | | | $ 866.67 | $ 12,113.41 | | |
| 12/15/2004 | Rogers Plaza | | $ 20,000.00 | $ 600.00 | | $ 11,513.41 | | |
| 12/31/2004 | | | | | $ 866.67 | $ 12,380.08 | | |
| 1/14/2005 | | | | | $ 866.67 | $ 13,246.75 | | |
| 1/13/2005 | Days Inn | | $ 50,000.00 | $ 1,500.00 | | $ 11,746.75 | | |
| 1/17/2005 | Essex | | $ 25,000.00 | $ 750.00 | | $ 10,996.75 | | |
| 1/31/2005 | | | | | $ 866.67 | $ 11,863.42 | | |
| 2/9/2005 | Days Inn | | $ 50,000.00 | $ 1,500.00 | | $ 10,383.42 | | |
| 2/11/2005 | Days Inn | | $ 30,000.00 | $ 900.00 | | $ 11,883.42 | | 1531 |
| | | | | | | | 2,400.00 | |

## 2006

| Date | Property | Investor | Amount | Referral Compensation | Check |
|---|---|---|---|---|---|
| 01/31/06 | IDEX | | $ 200,000.00 | $ 6,000.00 | 2708 |
| 02/14/06 | IDEX | | $ 200,000.00 | $ 6,000.00 | 2803 |
| 08/14/06 | WHYF II | | $ 10,000.00 | $ 200.00 | 3299 |
| 08/14/06 | WHYF II | | $ 15,000.00 | $ 300.00 | 3299 |
| 08/18/06 | GDR | | $ 50,000.00 | $ 1,000.00 | 3299 |
| 11/09/06 | W.82ndSt. | | $ 80,000.00 | $ 1,600.00 | 3495 |
| 11/14/06 | W.82ndSt. | | $ 25,000.00 | $ 250.00 | 3495 |
| 12/18/06 | W.82ndSt | | $ 23,788.89 | $ 237.89 | 3623 |
| **TOTAL YTD COMMISSIONS** | | | $ 603,788.89 | $ 15,587.89 | |

**Finder's Fees Payable upon Closing of Property**

| Date | Property | Investor | Amount | Referral Compensation |
|---|---|---|---|---|
| 12/19/05 | W Belmont | | $ 100,000.00 | $ 500.00 |
| 12/22/05 | W Belmont | | $ 40,000.00 | $ 1,200.00 |
| 12/28/05 | W Belmont | | $ 50,000.00 | $ 1,500.00 |
| **Total Finder's Fees Payable** | | | $ 190,000.00 | $ 3,200.00 |

| Total 2006 Compensation | $ | 15,587.89 |
|---|---|---|

## 2007 YTD Compensation

| Date | Property | Investor | Amount | Draws | % | Compensation | Balance | Paid | Check# / Advice# |
|---|---|---|---|---|---|---|---|---|---|
| 01/01/07 | Balance Forward | | | | | $ | $ - | | |
| 12/19/05 | West Belmont | | $100,000.00 | | 0.50% | $ 500.00 | $ 500.00 | | |
| 12/22/05 | West Belmont | | $40,000.00 | | 3.00% | $ 1,200.00 | $1,700.00 | | |
| 12/28/05 | West Belmont | | $50,000.00 | | 3.00% | $ 1,500.00 | $3,200.00 | | |
| 03/15/07 | | | | | | $ - | $ - | $(3,200.00) | WTC 3800 |
| 04/19/07 | 9% GDR 3YR Maturity no w/d | $ 50,000.00 | | 3.00% | $ 1,500.00 | $1,500.00 | | |
| 05/10/07 | | Referral Compensation-Apr 07 | | | | $ - | $ - | $(1,500.00) | WTC 9933 |
| 04/29/07 | HHNF | | $ 50,000.00 | | 2.00% | $ 1,000.00 | $1,000.00 | | |
| 05/16/07 | | Referral Pymt Compensation | | | | $ - | $ - | $(1,000.00) | WTC 3946 |
| 09/21/07 | Crowne-Phoenix | | $ 50,000.00 | | 2.00% | $ 1,000.00 | $1,000.00 | | |
| 10/31/07 | | Referral Pymt Compensation-Oct 07 | | | | $ - | $ - | $(1,000.00) | WTC 4322 |
| | | | | | | $ - | | | |
| | | | | | | $ - | | | |
| | | | | | | $ - | | | |
| | | | | | | $ - | | | |
| | | | | | | $ - | | | |
| | | | | | | $ - | | | |
| | | | | | | $ - | | | |
| | | | | | | $ - | | | |
| | | | | | | $ - | | | |
| | | | | | | $ - | | | |
| | | | | | | $ - | | | |
| 2007 YTD TOTALS | | | $340,000.00 | | $ - | $ 6,700.00 | $ - | $ (6,700.00) | |

$ 6,700.00 | 2007 Compensation

Compensation.xls

6

## 2008 YTD Compensation

| Date | Property | Investor | Amount | Drawn | % | Compensation | Balance | Paid | Check# / Advice# |
|---|---|---|---|---|---|---|---|---|---|
| 04/15/08 | Drake | | $28,250.08 | | 1.00% | $ 282.50 | $ 282.50 | | WTC Ck# 4587 |
| 05/06/08 | Drake | | $50,000.00 | | 2.00% | $ 1,000.00 | $1,282.50 | | WTC Ck# 4587 |
| 05/29/08 | | Referral Compensation-April 08 | | | | | $1,000.00 | $(282.50) | WTC Ck# 4587 |
| **2008 YTD TOTALS** | | | $ 178,250.08 | | | $ 1,282.50 | $11,000.00 | 1,282.50 | Compensation still owed!!! |

$ 282.50 | 2008 Compensation
1099 Misc to be issued by WTC
$1K still owed to

## WEXTRUST CAPITAL - DISBURSEMENT ACCOUNT (WACHOVIA)
### 2000020406190
### 2008

Account Charged Off by Bank 10/2008

| Credit | | | | Debit | | | | Explanation |
|---|---|---|---|---|---|---|---|---|
| Date | Wired In | Deposit | Interest | Wired out | Ck# | Amount | Clr | |
| 06/29/08 | | | | | 4587 | $ 282.50 | X | Referral Compensation |
| | | | | | | 437.78 | | |

Note:   PDF File of ck#4587 not available

25

# Investor Submission of Evidence

To the attention of the Wextrust receiver.                    September 6 2009.

Dear Mr. Coleman.

Since I did not receive an answer to my letter send by me August 20 2009 in which I responded to the one send on your behalf by Dewey & Leboeuf I believe it right to send you again an explanation which will throw some light on the reality of my claim.

I will explain here that I do not dispute the $ 1.750 , but object to the determination to reduce my claim as well as those of others in similar circumstances by 25 % for these reasons:

1) I had no knowledge that any wrong was intended. I had prior good experiences investing with Wextrust and my intentions in passing information regarding new investment opportunities to a few relatives and close friends was only to benefit them. I am there fore innocent of any wrongdoing.
2) I lost my life savings and am just another victim of the fraud. To be further penalized by $ 25.000 as a result of receiving only $ 1.750 is unjust.
3) It would be fair to reduce the amount of my claim, as well as those of other innocent parties who received a what you call " finder's" fee by the amount of the compensation which they did receive, unless it can be shown that they were in knowing collusion with the scam and acted in bad faith. Of course they were not and neither was I.
4) The remainder of my investment $ 101.938.54 was at the same risk and should be treated equally with that of all the other victims.
5) That I acted in innocence is clear. The very fact living in another country and not knowing these criminals is enough evidence. I put my life savings at risk and had no reason to expect a lessened risk or a greater benefit from this investment than any other investor and most certainly would not have invested and not recommended this to friends and family members would I have had any idea that our money would be stolen.
6) With all due respect to you, Mr. Coleman as the receiver and the court, a fairer test as to whether an investor should also be penalized as a "perpetrator" would be if you consider me and the others by you so called "finders" were in a position to benefit from any wrong doing. I myself and quite likely others who shared information about these investments with the best intentions, had nothing more to gain, or less to lose, from our own investments than those whom we referred.

Very much looking forward receiving your response as soon as possible,

Sincerely, ████████████

03348

# Receiver Submission of Evidence

# Compensation 2005-2008

| Year | Amount |
|------|--------|
| 2005 | $ 1,000.00 |
| 2006 | $  750.00 |
| 2007 | $   - |
| 2008 | $   - |
| **Total** | **$ 1,750.00** |

141.37  ←——— ck#4589 was not paid due to SEC Freeze Order

Compensation.xls

Comp Summary

1