UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

                 Plaintiff,

- against -

STEVEN BYERS, JOSEPH SHERESHEVSKY, WEXTRUST CAPITAL, LLC, WEXTRUST EQUITY PARTNERS, LLC, WEXTRUST DEVELOPMENT GROUP, LLC, WEXTRUST SECURITIES, LLC, and AXELA HOSPITALITY, LLC,

                 Defendants,

- and -

ELKA SHERESHEVSKY,

                 Relief Defendant.

No. 08 Civ. 7104 (DC)

ECF Case

---

**DECLARATION OF HARVEY KURZWEIL IN SUPPORT OF RECEIVER'S RESPONSE TO THE COURT'S ORDER OF AUGUST 18, 2009 AND IN SUPPORT OF FOURTH AND FIFTH JOINT MONTHLY APPLICATIONS OF RECEIVER AND DEWEY & LEBOEUF, LLP FOR ALLOWANCE OF <u>COMPENSATION AND REIMBURSEMENT OF EXPENSES</u>**

STATE OF NEW YORK    )
                              ) ss
COUNTY OF NEW YORK  )

      I, HARVEY KURZWEIL, under penalty of perjury, declare as follows:

      1.    I am a partner in the law firm of Dewey & LeBoeuf LLP ("D&L") resident in the firm's New York office. I became a member of the firm's predecessor,

Dewey Ballantine LLP, in 1977. I am admitted to the bar of the State of New York, and I am also a member of the bar of this Court.

2. I submit this declaration in support of the response of my partner, Timothy J. Coleman, duly appointed receiver ("Receiver") for the Defendant Wextrust Entities and all entities they control or in which they have an ownership interest (collectively, the "Wextrust Entities and Affiliates") to the Court's Order of August 18, 2009 and in support of the Fourth and Fifth Interim Applications of the Receiver and D&L for Compensation and Reimbursement of Expenses (Dkt. Nos. 359 and 429). D&L has acted as counsel to the Receiver since prior to the commencement of this case ("Receivership Case") on August 11, 2008. Except as may otherwise be indicated, I have personal knowledge of the matters set forth herein based on my review of documents and other sources of information and, if called as a witness, could testify competently as to the matters addressed herein.

3. At the outset I want to address the Court's concern expressed in its Order of August 18, 2009 ("August Fee Order") with respect to the amount of the legal fees of D&L in light of the limited expected recovery for the victims of the Wextrust fraud. With hindsight, the amount of attorney time spent on this matter is arguably disproportionate to the amount to be recovered by investors. However, the ultimate results could not have been known at the outset of a complex investigation into what the Securities and Exchange Commission ("SEC") alleged was a $300 million fraud involving extensive real estate holdings and worldwide operations. The details of Wextrust operations and the complexity of legal issues confronted by the Receiver and D&L are set forth in the prior applications of the Receiver for allowance of compensation

and will not be reiterated here.  However, it is important to note that the legal issues the Receiver confronted were complex and could not be assigned to junior lawyers.  Indeed, it is apparent that the reason the SEC recommended Mr. Coleman and D&L was because it recognized that the Receiver would need sophisticated and extensive legal advice.

4. Faced with the daunting task the Receiver confronted, D&L assigned a large team of lawyers to the task of investigating the byzantine transactions of Wextrust and marshaling and preserving its assets.  We would have done no less for any other major client, and the time charges incurred were appropriate in light of the complexity of the legal issues confronted and the need to accomplish as much as possible, as quickly as possible.  Thus, it would be reasonable to ask the Court to approve all of D&L's fees on the basis of the fee structure proposed to the SEC prior to the commencement of the receivership.

5. However, we also recognize that the amounts generated by the Receiver's efforts will result in a lower recovery by the victims of the Wextrust fraud than either the Receiver or the SEC had originally contemplated.  As we have noted previously, we also recognize the public service nature of the receivership.  We are, therefore, prepared to accept payment for our services at rates that are significantly less than we might charge in a normal commercial representation.  In this light, and as is more fully set forth below and in our accompanying memorandum, we are proposing an additional 10% discount on fees incurred by D&L from November 2008 through the end of the case.

6. As the Court knows from prior submissions, upon commencement of the Receivership Case, the Receiver directed D&L to assist him in satisfying the extensive requirements placed upon him by the Court's Order Appointing Temporary Receiver

(Dkt. No. 2) and an amended version of the Order entered on September 11, 2008 (Dkt. No. 36) (collectively, the "Receiver Order"). Compliance with the Receiver Order required the immediate mobilization of dozens of D&L lawyers and paralegals to prevent any further dissipation of assets, stabilize Wextrust's numerous operating businesses and preserve the books and records of the Wextrust Entities and Affiliates. These actions were specifically taken at the request of the SEC.

7. D&L's efforts in preserving the company's books and records (a complex process involving the recovery and organization of substantial amounts of electronically-stored data) did not in itself relate directly to the recovery of any funds or assets of Wextrust. As noted in our prior interim fee applications, this data gathering and organizational function in many instances benefited the SEC, other federal authorities and the National Futures Association in their criminal and other investigations.

8. Nor did this assistance end after the initial period of the case. We have continued to assist federal authorities in their investigations by providing evidence gathered and organized by us or other receivership professionals under our direction, by meeting with the SEC, the U.S Attorney's office and prosecutors in South Africa on numerous occasions to inform them of case developments and discuss overall strategy and by attending to specific assignments made by the SEC and the U.S. Attorney's office to assist in their investigations.

9. It is also true that much of the litigation in this case has been generated by third parties (for example, the over 100 objections to the Plan of Distribution) and the Receiver and D&L have been compelled to respond or otherwise address that litigation. That work does not necessarily translate into direct recoveries of funds or assets.

10. Based on information provided to me, it now appears that a substantial amount of the Wextrust funds and assets has been dissipated by the former principals of Wextrust or persons acting in concert with them or that these funds and assets are otherwise not subject to recovery, in large part due to the decline in the real estate market. In recognition, however, of the diminution of potential sources of recovery, and based on the concerns expressed in the Court's August Fee Order, the Receiver and D&L are prepared to agree to additional concessions with respect to D&L's interim fee requests as noted below:

(a) With respect to its Fourth and Fifth Interim Fee Applications (the subject of the Court's August Fee Order), the Receiver and D&L have already agreed to an aggregate reduction of $1,368,393.45 for both periods. (*See* Fourth Interim Application at ¶ 44 & n.2 ($823,067.20 for November); Fifth Interim Application at ¶ 45 & n.2 ($545,326.25 for December)). For the Fourth Application Period (November 2008), the aggregate reduction results in D&L receiving payment of approximately 55% of the D&L base lodestar amount. (*See* Fourth Interim Application at ¶ 24.) For the Fifth Application Period, the aggregate reduction results in D&L receiving payment of approximately 58% of the D&L base lodestar amount. (*See* Fifth Interim Application at ¶ 27.)

(b) With respect to the Fourth and Fifth Application Periods, the Receiver and D&L would be prepared to agree to an additional deduction of 10% from the adjusted D&L lodestar amount (i.e. the amount remaining after applying the various discounts agreed to by D&L, including its self-audit restrictions, but before taking the 20% hold-back). This additional deduction would reduce D&L's interim

requests for November 2008 from $916,432.80 to $824,789.52 and for December 2008 from $674,399 to $606,959.10, resulting in an interim request of $1,431,748.62 for the two periods.

    (c)  With respect to the fees accrued by the Receiver and D&L for the period January 1, 2009 through July 31, 2009 (the "Additional Accrued Fee Period"), the Receiver and D&L would further agree to an additional deduction of 10% of the adjusted lodestar amount to be set forth in its future interim fee requests for this period as well.

    (d)  D&L would continue to retain the right to seek payment of its 20% hold-back amounts at the conclusion of the case, but would not seek to recoup the additional absolute 10% reduction implemented on fees incurred from November 2008 through the end of the case.

    (e)  With respect to future billings, the Receiver and D&L at this time cannot provide a reliable estimate of the time needed to complete the case. However, we are able to estimate that the total D&L fee requests for the next six months of the case (from August 1, 2009 to January 31, 2010) after the various current reductions, the additional 10% deduction, and then the 20% hold-back are applied, will be within a range of $1.5 million to $2.5 million. D&L will review future amounts extending beyond this period in light of the results accomplished and other applicable factors and will take additional discounts as appropriate.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 14, 2009          s/ Harvey Kurzweil_____
                                                     Harvey Kurzweil
                                                     DEWEY & LEBOEUF LLP
                                                     1301 Avenue of the Americas
                                                     New York, NY 10019-6092
                                                     (212) 259 8000 (t)
                                                     (212) 259 6333 (f)