UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------
SECURITIES AND EXCHANGE COMMISSION,

                        Plaintiff,

    v.

STEVEN BYERS, JOSEPH SHERESHEVSKY,
WEXTRUST CAPITAL, LLC, WEXTRUST
EQUITY PARTNERS, LLC, WEXTRUST           Civil Action No. 08-CV-07104 (DC)
DEVELOPMENT GROUP, LLC, WEXTRUST
SECURITIES, LLC, and ALEXA HOSPITALITY,     (Electronically filed)
LLC,

                        Defendants,

    - and -

ELKA SHERESHEVSKY,

                        Relief Defendant.
-----------------------------------------------------------------

# TCF NATIONAL BANK'S MEMORANDUM OF LAW IN OPPOSITION TO THE RECEIVER'S MOTION FOR RECONSIDERATION

BOND, SCHOENECK & KING, PLLC
One Lincoln Center
Syracuse, NY 13202
Telephone: (315) 218-8000
Fax: (315) 218-8100

Attorneys for TCF National Bank

## PRELIMINARY STATEMENT

TCF National Bank ("TCF") submits this memorandum in opposition to the Receiver's motion for reconsideration of this Court's order directing the Receiver to segregate TCF's Cash Collateral.[1] TCF's loan documents plainly grant TCF a present security interest in all the Cash Collateral. The segregation of TCF's Cash Collateral is necessary and appropriate to affect the Court-approved Distribution Plan that provides, *inter alia*, "secured creditors [shall] receive the value of their collateral." (Distribution Plan, p. 30). The Receiver's letter motion for reconsideration does not, and cannot, identify any provision of TCF's loan documents or the Distribution Plan to support his request for reconsideration of this matter.

## DISCUSSION

"Reconsideration of a court's previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Watson v. U.S.*, No. 90 CR 653 (RWS), 04 Civ. 2222 (RWS), 2005 U.S. Dist. LEXIS 23393, at * 7 (S.D.N.Y., Oct. 12, 2005) (internal citations omitted). As this Court has previously explained: "The standard for granting a motion for reconsideration is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry.*, 553 F. Supp. 2d 348, 350 (S.D.N.Y. 2008) (Chin, J.), citing *Shrader v. CSX Transp.*, 70 F.3d 255, 257 (2d Cir. 1995) (internal punctuation omitted). Furthermore, a motion for reconsideration should not be lightly entertained where, as here, the moving party expressly consented to the underlying order. Where a party has freely entered into a stipulation and order, it bears a heavy burden in escaping the

---

[1] "Cash Collateral" and the other capitalized terms used herein have the same meanings as in the Reply of TCF National Bank filed on September 23, 2009 (Docket No. 499).

agreed terms upon which another party has relied, and the Court should therefore hold its request for modification to close scrutiny. *See Pellegrino v. United States*, No. 89 Civ. 8406 (CSH), 1992 U.S. Dist. LEXIS 5129, at *11 (S.D.N.Y., Apr. 15, 1992). Under federal law, a presumption exists in favor of the validity of a stipulation entered by the court, and it may be vacated only upon a finding of mistake, inadvertence, surprise, or excusable neglect. *See Geller v. Delta Air Lines, Inc.*, 717 F. Supp. 213, 215 (S.D.N.Y. 1989).

The Receiver had a duty to this Court and to TCF to be familiar with the terms of TCF's security interests long before the September 24, 2009 hearing concerning TCF's claim in this matter. In fact, the June 26, 2009 Claim and Invoice of Secured Creditor TCF National Bank and Reservation of Rights and Objections identified the nature and scope of TCF's lien and security interests. (*See* Docket No. 465, pp. 04820-04887). At the hearing, the Receiver consented to the segregation of TCF's Cash Collateral, and the Court's resulting order to that effect should stand. The Receiver does not present any new or overlooked authority or data to support its motion for reconsideration. The Receiver does not identify any mistake of law or fact. The Receiver does not, and cannot, identify any provision of TCF's loan documents to suggest that TCF has less than a present and perfected security interest in the Cash Collateral. To the contrary, the loan documents plainly grant TCF a present security interest in all of the Cash Collateral.

Specifically, pursuant to the Mortgage and the Lease Assignment, TCF holds a lien and security interest in all rents, income, issues and profits (and proceeds thereof) due or to become due with respect to, or derived from, the Mortgaged Premises, and all leases relating to the Mortgaged Premises. (*See* Docket No. 465, pp. 04853, 04870). In addition, pursuant to the Pledge Agreement, TCF holds a lien and security interest covering the Reserve Account, which

2

currently has a balance of more than $700,000. (*See id.* at 04885). The Receiver's letter motion for reconsideration does not, and cannot, argue otherwise. This Court noted in its Approval Order (Docket No. 428) that, under the Distribution Plan, "creditors holding perfected liens on collateral . . . must be paid out of the proceeds of that collateral." (Approval Order, p. 8). The Distribution Plan itself provides that "[t]hese creditors demanded and received secured liens, which they perfected, and thus have recourse against specific collateral and *must be paid out of the proceeds of that collateral*. This same principle applies whether in equity or in bankruptcy." (Distribution Plan, p. 30). It was precisely this right to collateral that the Court found to justify the Receiver's request that secured creditors like TCF be precluded from asserting deficiency claims against the "receivership estate." (Approval Order, pp. 36-37).

The Receiver would have this Court recognize at the present time only TCF's security interest in the Mortgaged Premises. (Docket No. 520, at p. 2). However, by urging this Court to ignore TCF's security interests in the Cash Collateral, the Receiver is effectively asking this Court to reconsider its July 23, 2009 Approval Order and the Distribution Plan itself. The Court-approved Distribution Plan plainly provides that secured creditors shall receive the value of their collateral, and does not limit "collateral" to real property. Of course, as a motion for reconsideration of the Approval Order, the Receiver's request is both untimely under Local Rule 6.3, and barred because the Approval Order is currently on appeal. "The filing of a notice of appeal is an event of jurisdictional significance – it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Lupo v. Human Affairs Int'l*, 28 F.3d 269, 272 (2d Cir. 1994), *citing Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, 74 L. Ed. 2d 225, 103 S. Ct. 400 (1982) (per curiam); *see also New York v. Nuclear Regulatory Com.*, 550 F.2d 745, 759 (2d Cir. 1977) ("the district

3

court lacked jurisdiction to tamper in any way with the order then on interlocutory appeal other than to issue orders designed to preserve the status of the case as it sat before the court of appeals").

The Receiver would have this Court excuse him from his obligation to segregate TCF's Cash Collateral "until and unless (1) there is an existing Event of Default *and* (2) TCF exercises its rights and remedies on account of such event of default." (Docket No. 520, p. 2). This "two prong" proposal is patently unfair, and lacks any basis under either TCF's loan documents or the prior orders of this Court. As for the first prong, an Event of Default *has already occurred.* Under subsection 8.8(h) of the Loan Agreement, an Event of Default occurs when the Borrower or a Guarantor has *a receiver appointed* for any of its assets (with or without its consent). (Docket No. 465, p. 04838). As for the second prong, this Court's injunction *prohibits* TCF from exercising its rights and remedies on account of an Event of Default. (Indeed, but for this Court's injunction, the Receiver's appointment would have given TCF the right under Article VIII of the Loan Agreement to declare the unpaid principal balance and accrued interest due under the Note to be immediately due and payable. (*Id.* at 04839)). Thus, the Receiver's proposal finds no support in law or equity. Nonetheless, TCF intends to make immediate application to this Court to modify the injunction to enforce its lien and security interests.

The Receiver suggests that the Court should lift its order calling for the segregation of the Peoria Office Holdings bank accounts "unless and until there is an actual event of monetary default" (Docket No. 520, p. 3), but that is unfounded and unfair. In essence, the Receiver suggests that he should only be required to segregate TCF's Cash Collateral *after* it has been irretrievably dispersed. That, of course, would render meaningless the Distribution

4

Plan's promise that "secured creditors [shall] receive the value of their collateral and may pursue deficiency claims, if any, against the property specific limited liability companies with which they contracted initially." (Distribution Plan, p. 30).

The Receiver proffers no factual support whatsoever for his vague and conclusory assertion that "[t]he funds are needed to fund ongoing expenses for . . . the larger receivership estate." (*See* Docket No. 520, p. 3). In any event, however, the Receiver's desire to divert TCF's Cash Collateral for unrelated estate purposes would run impermissibly counter to the Distribution Plan itself, for all the reasons discussed above. As for the Receiver's contention that the funds are needed to fund expenses for the Peoria property, that too fails to state a ground for reconsideration of this Court's segregation order. The Court expressly provided at the September 24, 2009 hearing that the Receiver could continue to draw from the segregated accounts to fund building operations. (*See* Transcript, p. 53 (Appendix A)). That said, the Receiver's representative recently admitted to TCF that the Receiver was unwilling to pay costs associated with necessary tenant improvements because doing so would not benefit the receivership estate, and at the same time he threatened to squander TCF's Cash Collateral on unnecessary improvements and defeat the purpose of this Court's segregation order. (*See* Declaration of Russ McMinn, executed on October 22, 2009, at ¶¶ 14-18 (Appendix B)[2]). Such conduct cannot be countenanced.

## CONCLUSION

For the reasons stated herein, and for those additional reasons stated in TCF's previous claim filings, including the Reply that TCF filed on September 23, 2009, the Receiver's

---

[2] TCF intends to submit the appended McMinn Declaration with its forthcoming application to this Court to modify the injunction to enforce its lien and security interests.

5

motion for reconsideration should be denied, and the Receiver expressly instructed to segregate TCF's Cash Collateral except as required to fund *reasonable and necessary* operations of the Peoria property.

Dated: October 23, 2009

BOND, SCHOENECK & KING, PLLC

By: *[signature]*
Louis Orbach (LO 9611)
E-mail: lorbach@bsk.com
One Lincoln Center
Syracuse, NY 13202
Telephone: (315) 218-8000
Fax: (315) 218-8100

Attorneys for TCF National Bank