Randy Paar (rpaar@kasowitz.com)
John P. Winsbro (jwinsbro@kasowitz.com)
Tamara Bruno (tbruno@kasowitz.com)
KASOWITZ. BENSON, TORRES
    & FRIEDMAN LLP
1633 Broadway
New York, NY 10019
(212) 506-1700
Attorneys for Timothy J. Coleman
as Receiver for Wextrust Capital, LLC,
Wextrust Equity Partners, LLC,
Wextrust Development Group, LLC,
Wextrust Securities, LLC and
Alexa Hospitality LLC

Carletta F. Higginson (chigginson@jenner.com)
Stephen L. Ascher (sascher@jenner.com)
JENNER & BLOCK LLP
919 Third Avenue
New York, NY 10022
(212) 891-1600

Attorneys for Much Shelist Denenberg
Ament & Rubenstein, P.C.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                Plaintiff,<br><br>  -against-<br><br>STEVEN BYERS, JOSEPH SHERESHEVSKY, WESTRUST CAPITAL, LLC WEXTRUST EQUITY PARTNERS, LLC, WEXTRUST DEVELOPMENT GROUP, WEXTRUST SECURITIES, LLC, and AXELA HOSPITALITY, LLC,<br><br>                Defendants.<br><br>TIMOTHY J. COLEMAN, RECEIVER for WEXTRUST CAPITAL, LLC, WEXTRUST EQUITY PARTNERS, LLC, WEXTRUST DEVELOPMENT GROUP, LLC, WEXTRUST SECURITIES, LLC and AXELA HOSPITALITY, LLC; and MUCH SHELIST DENENBERG AMENT & RUBENSTEIN, P.C.,<br><br>                Third-Party Plaintiffs,<br>  -against-<br><br>WESTPORT INSURANCE CORPORATION and LIBERTY MUTUAL INSURANCE COMPANY,<br><br>                Third-Party Defendants. | **THIRD-PARTY COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY JUDGMENT**<br><br>No. 08 Civ. 7104 (DC) |

Third-Party Plaintiff, Timothy J. Coleman (the "Receiver"), as Receiver for Wextrust Capital, LLC, Wextrust Equity Partners, LLC, Wextrust Development Group, LLC, Wextrust Securities LLC, and Axela Hospitality, LLC, and their subsidiaries and affiliated entities (collectively, the "Wextrust Entities"), by and through his undersigned counsel, Kasowitz, Benson, Torres & Friedman LLP, hereby files this Third-Party Complaint for Breach of Contract and Anticipatory Breach of Contract, Violation of Illinois Insurance Code section 155 and Declaratory Judgment against Westport Insurance Corporation ("Westport") and Liberty Mutual Insurance Company ("Liberty") (collectively, "Third-Party Defendants") and alleges as follows:

## NATURE OF THIS ACTION

1. In this action, the Receiver seeks damages for breach of contract, anticipatory breach of contract and breach of the implied duty of good faith and fair dealing, as well as a declaration of the Receiver's entitlement to coverage under certain malpractice liability insurance policies ("Policies") that Third-Party Defendants sold to the law firm of Much Shelist Denenberg Ament & Rubenstein, P.C. ("Much Shelist"), the Wextrust Entities' former outside securities counsel. The Receiver previously asserted a claim against Much Shelist, on behalf of certain Wextrust Entities, for Much Shelist's alleged errors and omissions in providing legal services to the Wextrust Entities. Much Shelist has since resolved the Receiver's claim pursuant to the terms of a settlement agreement, which assigns to the Receiver all of Much Shelist's (i) rights to payment under the Policies for Much Shelist's settlement with the Receiver and (ii) claims and rights to extra-contractual damages from Westport.

## THE SEC ENFORCEMENT ACTION AND
## THE APPOINTMENT OF THE RECEIVER

2. On August 11, 2008, the United States Securities and Exchange Commission ("SEC") commenced this action in the United States District Court for the Southern District of

2

New York against certain Wextrust Entities and individuals seeking an order enjoining those defendants from violations of the Securities Act of 1933 (the "1933 Act") and the Securities Exchange Act of 1934 (the "1934 Act") and granting other equitable and monetary relief. This case (the "SEC Enforcement Action") was given Case No. 08 Civ. 07104 and assigned to the Honorable Denny Chin. In its original complaint (and in its Amended Complaint filed on August 27, 2008), the SEC invoked this Court's jurisdiction pursuant to §22(a) of the 1933 Act and §§21(e) and 27 of the 1934 Act.

3. As part of the SEC Enforcement Action, by order dated September 11, 2008 (the "September 2008 Order"), Judge Chin appointed Third-Party Plaintiff, Timothy J. Coleman, as Receiver for the Wextrust Entities, specifically, the named corporate defendants, "Wextrust Capital, LLC; Wextrust Equity Partners, LLC; Wextrust Development Group, LLC; Wextrust Securities, LLC; and Axela Hospitality, Inc.," and "all entities they control or in which they have an ownership interest."

4. The September 2008 Order further provides that the Receiver is empowered to:

> Take and retain immediate possession and control of all of the assets and property of the Defendant Wextrust Entities and all entities they control or in which they have an ownership interest… and all books, records, and documents of Defendant Wextrust Entities and all entities they control or in which they have an ownership interest, and the rights and powers of it with respect thereto.

5. To enable the Receiver to marshal the Wextrust Entities' assets, the September 2008 Order empowers the Receiver to:

> investigate, prosecute, defend, intervene in, and otherwise participate in, compromise and adjust actions in any state, federal, or foreign tribunal of any kind as the Receiver believes in his sole discretion advisable or proper to collect, conserve, or otherwise recover assets of the Wextrust Entities or entities they own or control.

6. This third-party action is brought pursuant to the Receiver's authority under the September 2008 Order and this Court's equity power.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this third-party action pursuant to 28 U.S.C. § 1367 and § 1651(a).

8. In addition, this Court has jurisdiction over this third-party action pursuant to 28 U.S.C. § 1332. The Receiver is a citizen of the State of Maryland. Nominal Third-Party Plaintiff Much Shelist is incorporated under the laws of the State of Illinois and maintains its principal place of business in Illinois. Upon information and belief, (i) Third-Party Defendant Westport is incorporated under the laws of the State of Missouri and maintains its principal place of business in the State of Kansas and (ii) Third-Party Defendant Liberty is incorporated under the laws of the Commonwealth of Massachusetts and also maintains its principal place of business in Massachusetts.

9. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1) because Third-Party Defendants Westport and Liberty both do business within the Southern District of New York. Venue also is proper pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to the claim occurred within this District, *inter alia:* (i) the SEC Enforcement Action is pending in this District; (ii) the Receiver was appointed by order of the United States District Court of the Southern District of New York; and (iii) a substantial number of the losses that underlie the Receiver's claims against the Third-Party Defendants occurred within this district.

10. Upon information and belief, Third-Party Defendants are in the business of selling insurance throughout the United States, including within the Southern District of New York.

## THE POLICIES AT ISSUE

11. The Policies at issue were brokered and sold to Much Shelist in the State of Illinois.

12. Westport Policy No. LLF010227-0 ("Westport Policy") is a primary claims-made legal malpractice liability policy. It provides $10,000,000 in coverage (subject to a $100,000 "per claim" deductible) for "Claims" that (i) are "first made" against Much Shelist during the September 18, 2007 - September 18, 2008 period of that Policy and (ii) arise from "any act, error, omission, circumstance. . . or breach of duty in the rendition of PROFESSIONAL SERVICES."

13. The Westport Policy defines "Claim" to include "a written demand" that is made upon Much Shelist for "Loss," which is defined as "the monetary and compensatory portion of any judgment, award or settlement."

14. The Westport Policy also requires that Westport "defend any claim" against Much Shelist that could result in a covered judgment or settlement. Under the Policy terms, Westport's defense obligation extends to claims that are "groundless, false or fraudulent."

15. The Westport Policy authorizes Much Shelist to provide Westport with written notice of any "Potential Claim" of which Much Shelist becomes aware during the Policy period. The Policy defines "Potential Claim" as (i) "any act, error, omission [or] circumstance … which might reasonably be expected to give rise to a claim against any INSURED under the Policy" or (ii) "any breach of duty to a client or third party which might reasonably result in a CLAIM against an insured."

16. The Westport Policy further provides that, if Much Shelist notifies Westport of a "Potential Claim" during the Westport Policy period, Westport will assign for handling and payment under the Westport Policy any future claim that is encompassed by the earlier notice.

5

> If, during the POLICY PERIOD, any INSURED first becomes aware of a POTENTIAL CLAIM and gives written notice of such POTENTIAL CLAIM to the Company during the POLICY PERIOD, any CLAIMS subsequently made against any INSURED arising from the POTENTIAL CLAIM shall be considered to have been made during the POLICY PERIOD the INSURED first became aware of the POTENTIAL CLAIM.

17. Liberty Policy No. 190188-017 ("Liberty Policy") provides $10,000,000 in "follow form" excess liability coverage above the Westport Policy.

18. The Liberty Policy expressly "incorporates by reference the insuring clauses, warranties, definitions, terms, conditions, exclusions and other provisions contained in the [Westport] Policy." Thus, the Liberty Policy provides coverage for claims against Much Shelist on the same terms as the Westport Policy, subject only to the higher Liberty Policy attachment point.

### THE RECEIVER'S LEGAL MALPRACTICE CLAIM AGAINST MUCH SHELIST

19. Throughout the 2002-2008 period, Wextrust Capital LLC ("Wextrust Capital"), an Illinois limited liability company, solicited investments through private placement offerings into a variety of investment vehicles. Wextrust Capital managed those investments through numerous other Wextrust Entities that Wextrust Capital created for that purpose.

20. At some point during this period, certain Wextrust Capital corporate officers embarked on a "Ponzi" scheme. To facilitate the scheme, the officers regularly commingled funds that belonged to different Wextrust Entities. For example, funds that were raised for one Wextrust Entity were frequently diverted to pay investors in, and the operating expenses of, other Wextrust Entities.

21. From 2005 to 2008, Much Shelist served as the Wextrust Entities' primary outside securities counsel. In this capacity, Much Shelist prepared or reviewed for disclosure

documents that were disseminated to potential investors in approximately 16 private placement offerings.

22. The Receiver alleged that, over the course of its representation, Much Shelist gradually came to learn of facts that were material to investors but were not disclosed in the private placement memoranda. The Receiver further alleged that Much Shelist nonetheless failed to take appropriate action and continued to work on private placement offerings for Wextrust Entities.

23. The Receiver alleged that, after learning of the material omissions, Much Shelist negligently authorized corporate management to raise additional funds from outside investors for a number of Wextrust Entities. The Wextrust Entities in question incurred increased indebtedness as a result.

24. The Receiver alleged that numerous Wextrust Entities sustained losses because of Much Shelist's negligent provision of legal services, and that Much Shelist's legal malpractice facilitated the diversion of corporate assets pursuant to the ongoing "Ponzi" scheme and exposed Wextrust Entities to increased liabilities to investors and creditors.

25. The SEC filed the SEC Enforcement Action on August 11, 2008. The SEC's original and First Amended Complaints alleged that Wextrust Capital's former Chairman and Chief Operating Officer fraudulently raised money for investors without disclosing that they were (i) using funds to pay prior investors in unrelated offerings and (ii) making unauthorized payments to fund the operations of certain Wextrust Entities at the expense of other Wextrust Entities.

26. On August 27, 2008, Much Shelist notified Westport and Liberty of a "Potential Claim" arising from Much Shelist's representation of the Wextrust Entities.

27. On June 11, 2009, counsel for the Receiver sent a letter to Much Shelist (the "Demand Letter") demanding compensation for the losses that certain Wextrust Entities had allegedly incurred on account of Much Shelist's legal malpractice.

### MUCH SHELIST'S CLAIMS UNDER THE POLICIES

28. The Demand Letter constitutes a covered "Claim" (the "Malpractice Claim") for negligence in the provision of professional services within the terms of the Westport and Liberty Policies.

29. On June 16, 2009, Much Shelist provided Westport with a copy of the Demand Letter. In a June 16, 2009 letter, Much Shelist demanded that Westport pay Much Shelist's costs of defending the Malpractice Claim.

30. In a July 22, 2009 letter, Westport's counsel stated that Westport would pay Much Shelist's costs of defending that Claim, subject to a reservation of Westport's right to deny coverage for "Loss" that Westport contended would not be covered under the Westport Policy.

31. Much Shelist retained the law firm of Jenner & Block as independent counsel to defend it against the Malpractice Claim.

32. Although Westport ultimately accepted Much Shelist's retention of Jenner & Block, Westport refused without justification to pay any more than a portion of the defense costs that Much Shelist submitted to Westport for reimbursement.

### THE SETTLEMENT OF THE RECEIVER'S CLAIM AND MUCH SHELIST'S ASSIGNMENT TO THE RECEIVER UNDER THE POLICIES

33. Before they reached a final resolution of their dispute, the Receiver and Much Shelist engaged in settlement discussions over an extended period of time. Over the course of those negotiations, Much Shelist repeatedly demanded that Westport tender the Westport Policy limit to effectuate a settlement with the Receiver.

8

34. Liberty also demanded that Westport tender its limit toward a settlement, stating that if "Westport refuses, its conduct will be unreasonable" and "also a breach of its obligations under its contract of insurance and under Illinois law."

35. Westport nonetheless refused to contribute any more than a fraction of the Westport Policy limit toward a potential Malpractice Claim settlement. Liberty similarly maintained that the Receiver's settlement demands were excessive and unreasonable and specifically objected to the Receiver's demand for a payment of $13,000,000.

36. Accordingly, Much Shelist was forced to protect itself by negotiating a settlement directly with the Receiver and without funding from Westport or Liberty. Much Shelist notified Westport and Liberty of its intent to do so if they did not settle the matter on Much Shelist's behalf.

37. On April 11, 2011, the Receiver and Much Shelist executed a settlement agreement that resolved the Malpractice Claim.

38. Under the terms of the settlement agreement, Much Shelist assigned to the Receiver Much Shelist's (i) rights to payment under the Policies for the Malpractice Claim settlement amount and (ii) claims and rights for extra-contractual damages from Westport.

39. The assignment of Much Shelist's rights under the Policies for the Malpractice Claim settlement is subject to the Court's approval and is otherwise valid and binding. If the Court approves the Malpractice Claim settlement, the Receiver will be entitled to recover payments under the Policies for the Malpractice Claim settlement to the same extent that Much Shelist would be had no assignment occurred.

40. The Malpractice Claim settlement amount of $13,000,000 in compensable damages is reasonable in view of the liability risks that Much Shelist faced on the Malpractice

Claim. The Receiver might have recovered more from Much Shelist in a lawsuit than the Receiver accepted from Much Shelist in settlement.

41. The Court has scheduled a hearing for August 3, 2011 to hear argument on the Receiver's motion that the Much Shelist settlement be approved.

42. After being served with a copy of the Much Shelist settlement agreement, four Wextrust Entity investors objected on the ground that the $13,000,000 settlement amount is unreasonably low. Those objections will be addressed at the August 3, 2011 hearing.

43. The Receiver has provided Liberty and Westport with copies of the papers that the Receiver submitted in support of its motion for approval of the Much Shelist settlement agreement and has notified Liberty and Westport of the August 3, 2011 hearing on that motion. Liberty and Westport advised that they would not be bound by any determination this Court makes as to the reasonableness of the Much Shelist settlement agreement on the ground that they were not parties to the present action.

44. On July 14, 2011, Liberty filed an action in the United States District Court for the Northern District of Illinois (the "Illinois Action") against the Receiver, Much Shelist and Westport. In that action, Liberty seeks, among other things, a declaration that it has no duty to pay any portion of the Malpractice Claim settlement on the ground that the settlement amount is excessive and unreasonable.

45. Westport has refused without justification to fund the settlement of the Malpractice Claim.

46. Liberty likewise has refused without justification to fund that portion of the Malpractice Claim settlement that exceeds the Westport Policy limit.

47. Much Shelist has complied with all conditions precedent to coverage under the Policies.

## FIRST CAUSE OF ACTION

**(Breach or Anticipatory Breach of Contract Against Westport and Liberty – Duty to Indemnify)**

48. Third-Party Plaintiffs repeat and re-allege the allegations set forth in Paragraphs 1 through 47 as if fully set forth herein.

49. The settlement of the Malpractice Claim constitutes a covered "Loss" under the Westport and Liberty Policies.

50. Westport and Liberty have breached their obligations under their Policies by their failure and refusal to pay their respective shares of the Malpractice Claim settlement.

51. As a direct and proximate result of their breaches or anticipatory breaches of their obligations to pay their respective shares of the Malpractice Claim settlement, Westport and Liberty have deprived Much Shelist of the benefit of insurance coverage for which Much Shelist paid substantial premiums.

52. The Receiver is entitled, as Much Shelist's assignee, to recover damages in an amount to be proven at trial for Westport's and Liberty's breaches or anticipatory breaches of their obligations to pay their respective shares of the Malpractice Claim settlement.

## SECOND CAUSE OF ACTION

**(Violation of 215 Ill. Comp. Stat. 5/155 Against Westport)**

53. Third-Party Plaintiffs incorporate each of the allegations set forth in Paragraphs 1 through 52 as if fully set forth herein.

54. Westport has violated section 155 of the Illinois Insurance Code by refusing to pay its share of the Malpractice Claim settlement.

55. Westport has engaged in vexatious and unreasonable acts and omissions including, but not limited to, the following:

   a. Westport refused to attempt in good faith to effectuate a prompt settlement of the Receiver's claims in which Westport's liability had become reasonably clear;

   b. Westport refused to fund a reasonable settlement with the Receiver although there was no bona fide dispute as to coverage; and

   c. Westport failed to take Much Shelist's interests and potential liability into account in responding to the Receiver's claims.

56. Westport acted towards Much Shelist with conscious disregard of Much Shelist's rights and Illinois law, and with the intent to vex and injure Much Shelist, so as to justify damages pursuant to Illinois Insurance Code section 155.

57. The Receiver is entitled, as Much Shelist's assignee, to recover damages pursuant to 215 Ill. Comp. Stat. 5/155 for Westport's vexatious and unreasonable failure to pay its share of the Malpractice Claim settlement.

## THIRD CAUSE OF ACTION

**(Declaratory Relief Against Westport and Liberty)**

58. Third-Party Plaintiffs incorporate each of the allegations set forth in Paragraphs 1 through 57 as if fully set forth herein.

59. An actual and justiciable controversy exists among the Receiver, Much Shelist, Westport and Liberty regarding the existence and scope of Westport's and Liberty's obligations under the Policies for the Malpractice Claim.

60. Pursuant to 28 U.S.C. § 2201, the Court should enter a declaratory judgment determining the parties' rights, duties and obligations under the Policies for the Malpractice Claim.

## PRAYER FOR RELIEF

WHEREFORE, Third-Party Plaintiffs pray for relief as follows:

A. On the First Cause of Action, Third-Party Plaintiffs request that the Court enter judgment against Westport and Liberty awarding the Receiver damages in an amount equal to the settlement amount that the Receiver accepted to resolve the Malpractice Claim;

B. On the Second Cause of Action, Third-Party Plaintiffs request that the Court enter judgment against Westport awarding damages to the Receiver in an amount that the Court or jury deems just and proper as authorized by Illinois Insurance Code section 215 Ill. Comp. Stat. 5/155;

C. On the Third Cause of Action, Third-Party Plaintiffs request that the Court enter a declaratory judgment in favor of the Receiver and against Westport and Liberty declaring that the Malpractice Claim settlement is covered under the Westport and Liberty Policies;

D. On all Causes of Action, Third-Party Plaintiffs request that this Court enter a judgment in favor of the Receiver and Much Shelist and against Westport and Liberty severally for all costs incurred in (i) defending against the Illinois Action, (ii) moving by Order to Show Cause for an Order protecting this Court's jurisdiction to manage the Receivership, and (iii) bringing this third-party action, including awards of attorneys' fees and pre-judgment and post-judgment interest to the fullest extent permitted by law; and

E. Additionally, Third-Party Plaintiffs request such other and further relief as the Court deems just and proper.

DATED:   July 26, 2011

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

By: _____
    Randy Paar (rpaar@kasowitz.com)
    John P. Winsbro (jwinsbro@kasowitz.com)
    Tamara D. Bruno (tbruno@kasowitz.com)

1633 Broadway
New York, NY 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

Attorneys for Timothy J. Coleman, as
Receiver for Wextrust Capital, LLC,
Wextrust Equity Partners, LLC,
Wextrust Development Group, LLC,
Wextrust Securities, LLC and Axela Hospitality LLC

JENNER & BLOCK LLP

By: _____
    Carletta F. Higginson (chigginson@jenner.com)
    Stephen L. Ascher (sascher@jenner.com)

919 Third Avenue
New York, NY 10022
Telephone: (212) 891-1600
Facsimile: (212) 891-1699

Howard S. Suskin (hsuskin@jenner.com)
353 N. Clark Street
Chicago, IL 60654-3456
Telephone: (312) 222-9350
Facsimile: (312) 527-0484

SCHOPF & WEISS LLP
Paula Litt (litt@sw.com)
One South Wacker Drive
Chicago, IL 60606
Telephone: (312) 701-9300
Facsimile: (312) 701-9335

Attorneys for Much Shelist Denenberg Ament & Rubenstein, P.C.

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

By: _____
    Randy Paar (rpaar@kasowitz.com)
    John P. Winsbro (jwinsbro@kasowitz.com)
    Tamara D. Bruno (tbruno@kasowitz.com)

1633 Broadway
New York, NY 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

Attorneys for Timothy J. Coleman, as Receiver for Wextrust Capital, LLC, Wextrust Equity Partners, LLC, Wextrust Development Group, LLC, Wextrust Securities, LLC and Axela Hospitality LLC

JENNER & BLOCK LLP

By: _____
    Carletta F. Higginson (chigginson@jenner.com)
    Stephen L. Ascher (sascher@jenner.com)

919 Third Avenue
New York, NY 10022
Telephone: (212) 891-1600
Facsimile:   (212) 891-1699

Howard S. Suskin (hsuskin@jenner.com)
353 N. Clark Street
Chicago, IL 60654-3456
Telephone: (312) 222-9350
Facsimile:   (312) 840-7604

SCHOPF & WEISS LLP
Paula Litt (litt@sw.com)
One South Wacker Drive
Chicago, IL 60606
Telephone: (312) 701-9300
Facsimile:   (312) 701-9335

Attorneys for Much Shelist Denenberg Ament & Rubenstein, P.C.

14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                   Plaintiff,<br><br>- against -<br><br>STEVEN BYERS, JOSEPH SHERESHEVSKY, WEXTRUST CAPITAL, LLC, WEXTRUST EQUITY PARTNERS, LLC, WEXTRUST DEVELOPMENT GROUP, LLC, WEXTRUST SECURITIES, LLC, and AXELA HOSPITALITY, LLC,<br><br>                   Defendants,<br><br>- and -<br><br>ELKA SHERESHEVSKY,<br><br>                 Relief Defendant. | No. 08 Civ. 7104 (DC)<br><br>ECF Case |

**CERTIFICATE OF SERVICE OF THIRD-PARTY COMPLAINT**

- 1 -

I, JOHN K. WARREN, do hereby certify under penalty of perjury that on the 26th day of July, 2011, I caused true and correct copies of the following document:

**Third-Party Complaint for Breach of Contract and Declaratory Judgment**

to be served on the individuals listed below in the manner so described:

**Via First Class Mail**
Joseph Shereshevsky,
Registry No. 35857-054
c/o GEO Group
Queens Private Correctional Facility
182-22 150th Avenue
Jamaica, NY 11413
Pro Se Defendant

**Via Electronic Mail**
Alexander M. Vasilescu, Esq.
Andrew M. Calamari, Esq.
Steven G. Rawlings, Esq.
Alistaire Bambach, Esq.
Neal R. Jacobson, Esq.
Philip Moustakis, Esq.
Danielle Sallah, Esq.
Attorneys for Plaintiff SEC

**Via Electronic Mail**
Barry S. Pollack, Esq.
Joshua L. Solomon, Esq.
Attorneys for non-party G&H Partners AG

**Via Electronic Mail**
Barry S. Zone, Esq.
Jason Canales, Esq.
Attorneys for Defendant Steven Byers

**Via Electronic Mail**
Michael Fred Bachner, Esq.
Attorney for Relief Defendant Elka Shereshevsky

**Via Electronic Mail**
Martin Siegel, Esq.
Attorney for non-party Int'l Consortium of Wextrust Creditors

**Via Electronic Mail**
Paul A. Levine, Esq.
Attorney for non-party Key Equipment Finance, Inc.

**Via Electronic Mail**
Harris Kay, Esq.
Marc X. LoPresti, Esq.
Attorneys for various non-party investors

**Via Electronic Mail**
Ethan Holtz, Esq.
Edward P. Gilbert, Esq.
Attorneys for non-party RAIT Partnership

**Via Electronic Mail**
Francesca Morris, Esq.
Attorney for non-parties Ticor Title Insurance Co. and Heritage Community Bank

**Via Electronic Mail**
John M. Bradham, Esq.
Peter B. Katzman, Esq.
Attorneys for non-parties Space Park AIM and ISSB Partnerships

**Via Electronic Mail**
Beth L. Kaufman, Esq.
Attorney for non-party Lawrence Costa

**Via Electronic Mail**
Philip A. Byler, Esq.
Andrew T. Miltenberg, Esq.
Ira S. Nesenoff, Esq.
James B. Daniels, Esq.
Attorneys for non-party Broadway Bank

**Via Electronic Mail**
Shalom Jacob, Esq.
Shmuel Vasser, Esq.
Attorneys for non-party Int'l Ad-Hoc Committee of Wextrust Creditors

**Via Electronic Mail**
Emily S. Alexander, Esq.
Attorney for non-party Martin Malek

**Via Electronic Mail**
Elizabeth P. Gray, Esq.
Attorney for non-party Gerald Jaffe

**Via Electronic Mail**
John P. Doherty, Esq.
Attorney for non-party Wells Fargo Bank N.A.

**Via Electronic Mail**
Jeffrey L. Schwartz, Esq.
John P. Amato, Esq.
Stephen W. Ragland, Esq.
Clarence A. Wilbon, Esq.
Attorneys for non-party First Tennessee Bank National Association

**Via Electronic Mail**
Alexander S. Lorenzo, Esq.
Attorney for non-party LNR Partners, Inc.

**Via Electronic Mail**
Alan E. Marder, Esq.
Attorney for non-parties Nashville Warehouse Partners and Southeast Warehouse Partners

**Via Electronic Mail**
Edward F. Malone, Esq.
George R. Mesires, Esq.
Attorneys for non-parties Barrington and Hinsdale Banks

**Via Electronic Mail**
Susan F. Balaschak, Esq.
Keith N. Costa, Esq.
Randal S. Mashburn, Esq.
John H. Rowland, Esq.
Attorneys for non-party Regions Bank

**Via Electronic Mail**
Louis Orbach, Esq.
Charles J. Sullivan, Esq.
Amy Marie Culver, Esq.
Attorneys for non-party TCF National Bank

**Via Electronic Mail**
David B. Grantz, Esq.
Scott T. McCleary, Esq.
Attorneys for non-party Bank of America

**Via Electronic Mail**
Adam W. Downs, Esq.
Gerard P. Brady, Esq.
Attorneys for non-party Erin Construction & Development Co., Inc.

JOHN K. WARREN