UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

                Plaintiff,

- against -

STEVEN BYERS, JOSEPH SHERESHEVSKY, WEXTRUST CAPITAL, LLC, WEXTRUST EQUITY PARTNERS, LLC, WEXTRUST DEVELOPMENT GROUP, LLC, WEXTRUST SECURITIES, LLC, and AXELA HOSPITALITY, LLC,

                Defendants,

- and -

ELKA SHERESHEVSKY,

                Relief Defendant.

No. 08 Civ. 7104 (DC)

ECF Case

---

## NINTH INTERIM REPORT OF RECEIVER

TIMOTHY J. COLEMAN
Receiver for Wextrust Entities

FRESHFIELDS BRUCKHAUS DERINGER US LLP
701 Pennsylvania Avenue, NW
Washington, DC 20004
Tel. (202) 777-4500

August 11, 2011          *Attorneys for Receiver*

**Page**

I. LIQUIDATION OF WEXTRUST ASSETS ........................................................................1

    A. Liquidation of U.S. Assets ........................................................................1

    B. Liquidation of Wextrust Interests in Africa ..............................................3

II. DISTRIBUTION TO THE WEXTRUST VICTIMS ..........................................................4

III. ESTATE MANAGEMENT OPERATIONS .....................................................................4

    A. Management of Remaining Real Estate Properties ..................................4

        1. U.S. Real Estate Operations ..........................................................4

        2. High Yield Loans ..........................................................................5

    B. Other Business and Financial Management ..............................................6

IV. FINANCIAL CONDITION OF THE WEXTRUST ENTITIES AND AFFILIATES .......6

V. INVESTIGATIONS AND LITIGATION .........................................................................10

    A. Claims Against Third Parties ...................................................................10

    B. Ancillary Litigation ..................................................................................10

    C. Appellate Litigation .................................................................................12

    D. Developments in the Criminal Cases Against Byers and Shereshevsky ...............12

VI. CONCLUSION..................................................................................................................12

Timothy J. Coleman, Receiver for the Wextrust Entities and Affiliates ("Receiver"), respectfully submits this Ninth Interim Report, pursuant to the Court's Order Appointing Temporary Receiver, dated August 11, 2008, as amended by order dated September 11, 2008 (Dkt. No. 36) ("Receiver Order").

In the six months since the filing of the Eighth Interim Report, the Receiver has continued to carry out the work mandated by the Receiver Order while reducing estate expenses and administrative costs. He has supervised the logistics of the first interim distribution of more than $5 million to qualified victims. He has continued to manage and liquidate receivership assets, which are producing an increased net cash flow. Additionally, the Receiver has conducted ongoing settlement negotiations to resolve complex claims against third parties in a manner calculated to realize the maximum possible return for the receivership estate.

This Ninth Interim Report describes the Receiver's efforts since February 11, 2011. Section I summarizes the status of the liquidation of Wextrust assets. Section II reports on the status of the first interim distribution. Section III provides an overview of the Receiver's continuing management of the Wextrust Entities and Affiliates, including the management of Wextrust real estate operations and other business and financial aspects of the Wextrust enterprise. Section IV reports on the current financial condition of the receivership estate and the estate's administrative costs. Section V discusses the status of Wextrust-related litigation in the United States, including the Receiver's handling of affirmative claims against third parties.

## I.   **LIQUIDATION OF WEXTRUST ASSETS**

### A.   **Liquidation of U.S. Assets**

The Receiver has continued to oversee liquidation of the U.S. assets in the receivership estate, in conformity with the Court's plan of distribution order entered on July 23, 2009 (the "Distribution Order") (Dkt. No. 428). The U.S. assets consist of 1) commercial real estate

properties owned and operated by Wextrust Equity Partners ("WEP"), which account for the largest portion of the remaining estate; 2) two high yield loan portfolios; and 3) residential real estate formerly owned by Byers and Shereshevsky personally.

The Receiver has supervised the ongoing management of the remaining thirteen commercial real estate assets located in Alabama, Illinois, Mississippi, New York, Tennessee, and Wisconsin. These properties are being managed and marketed by the Receiver's real estate advisors, The Hilco Organization ("Hilco") and Badger Real Estate Advisors, LLC ("Badger").

In the past six months, the Receiver has completed the sale of one commercial property and entered into five condominium sales contracts. On June 1, 2011, the Receiver closed on the sale of the New Salem property in Tennessee for $4 million after negotiating a loan extension and new lease for the property. *See* Order To Confirm Sale of New Salem Property (Dkt. No. 824). The secured debt on this property was $3.2 million. After fees and related expenses, the sale satisfied the outstanding secured debt and contributed more than $423,000 to the receivership estate. Additionally, the Receiver closed on the sale of five condominium units in the 47 Dean Street property (the "Dean Street property"), a luxury condominium building in Brooklyn, pursuant to the process approved by the Court in its July 9, 2010 Order Granting Receiver's Motion to Implement the Sale of the 47 Dean Units ("Order Granting Sale of 47 Dean Units") (Dkt. No. 656). The proceeds from those sales were approximately $5.6 million. These efforts are described more fully in section III.A.1 below.

The Receiver has also continued efforts, as described in prior interim reports, to maximize the value of the commercial properties by making improvements, renewing profitable leases, and negotiating new leases. Specifically, the Receiver has renewed 24 leases and negotiated 10 new leases on properties over the past six months. The Receiver estimates that

these leases will produce revenues of approximately $2.4 million over the life of the leases, thereby enhancing the value of the properties and the expected proceeds of their liquidation.

To diminish the ongoing expense of managing multiple properties, the Receiver is negotiating with lenders and tax authorities.  For example, the Receiver is negotiating a restructuring of the loan on the Park Village property with the lender, while continuing discussions with potential buyers.  The Receiver has also renewed or negotiated extensions for loans on three other properties.  Additionally, the Receiver has filed property tax appeals with the State of Alabama to lower the operating expenses of the Interstate Park property.

Finally, the Receiver continues to explore more cost-effective ways to realize value for the victims by liquidating the residential real estate assets formerly owned by Defendants Byers and Shereshevsky in their personal capacity.  As discussed in the Seventh Interim Report, the Receiver reached an agreement with a secured lender that holds mortgage interests in five residential residences owned by Shereshevsky and/or his wife.  These residences are heavily leveraged and, based on market conditions and projected maintenance costs, cumulatively represent little to no value to the receivership estate.  The Receiver is negotiating with the attorney for Relief Defendant Elka Shereshevsky to have her disclaim any ownership rights in the residences and other affiliated assets, to limit the possibility of future costly litigation over the residences.

The Receiver is negotiating with the attorney for Defendant Byers' wife relating to residential residences and other assets held in the name of Byers and/or his wife.  Byers and his wife have agreed to release any claim to two frozen accounts held solely in the name of Defendant Byers, which had a combined balance of approximately $160,000.  Although the Receiver monitored the frozen funds since the inception of the receivership, the Court did not

release the funds to the receivership until consent was obtained in May 2011. *See* Letter to Judge Denny Chin from John K. Warren, Endorsed May 26, 2011 (May 11, 2011) (Dkt. No. 826). Through those ongoing discussions, the Receiver is attempting to mitigate the risk of any future litigation regarding competing ownership of these assets.

## II.     DISTRIBUTION TO THE WEXTRUST VICTIMS

After winning a lengthy appeal process initiated by one investor that delayed the distribution to all investors, the Receiver obtained Court approval and proceeded with the first interim distribution of approximately $5 million in December 2010. As of July 2011, 1269 checks totaling $4,889,143.36 had been cashed. Additionally, 35 checks totaling $61,576.78 remain outstanding and 18 checks totaling $52,856.66 were returned as undeliverable as addressed. A.B. Data, the vendor hired to manage the logistics of the distribution, is working to identify updated contact information for these returned checks.

The timing and amounts of future distributions will be based on sales of Wextrust assets and other recoveries and subject to court approval. The Receiver encourages victims to provide any updated contact information to the Receiver's claims administrator by calling the Wextrust Hotline at 1-888-518-2410 or by sending an email to wextrustreceiver@dl.com.

## III.    ESTATE MANAGEMENT OPERATIONS

### A.    Management of Remaining Real Estate Properties

#### 1.    U.S. Real Estate Operations

As directed by the Court, the Receiver has assumed control of all U.S. real estate assets of the Wextrust Entities and Affiliates, which, as previously mentioned, now consist primarily of the WEP commercial properties. In the six months ending August 11, 2011, the Receiver collected approximately $7.8 million in rent. As discussed in Section I.A above, the Receiver has renewed 24 leases and negotiated 10 new leases on properties during this period.

The Receiver continues to manage the development, construction, and sales efforts for the Dean Street property, a residential condominium in the Boerum Hill neighborhood of Brooklyn.  The Dean Street property construction is complete and it received its Temporary Certificate of Occupancy on May 5, 2011.  Nine of the ten units are under contract at, or close to, the offering price.  The Receiver has closed on five of these units for sales totaling $5.6 million.  Under the terms of the 47 Dean loan agreement, 90 percent of the revenue from closings is retained by the bank until the loan of approximately $6.4 million is repaid.  Based on current market conditions, the remaining unit is expected to sell at or near the offering price.

2. **High Yield Loans**

The Receiver has continued ongoing management and sales efforts for Wextrust's two high yield loan portfolios: 1) the Wexford High Yield Debt Fund I, LLC ("High Yield I") consisting of 5 loans in which Wextrust has an aggregate direct and joint-venture participation interest of approximately $1.75 million, all of which are in default; and 2) the Wexford High Yield Debt Fund III, LLC ("High Yield III") and its offshore participant, Wexford High Yield Debt Offshore Fund, Ltd. ("Offshore Fund"), presently include 10 loans for which Wextrust has a combined direct and joint-venture participation interest of approximately $6 million.  The loans in those portfolios are secured by a variety of commercial and residential real estate assets.

In the last six months, the Receiver has continued his efforts to obtain value from the high yield loan portfolios, and his advisors are conducting ongoing conversations with joint venture partners on both portfolios to sell the receivership's interests.  As to High Yield I, the Receiver is currently considering a buyout proposal on one asset, and may take title soon on several other assets, which would allow the Receiver's advisors to market and sell the properties.  However, the Receiver is carefully considering whether the potential sale income on these properties would be negated by the costs involved in their maintenance and marketing, and will

ultimately move forward with the approach that offers that maximum net benefit to the receivership estate.  Additionally, the Receiver's advisors continue in their efforts to obtain the final pricing elements on a proposal from joint venture partners to buy the receivership's interest in the portfolio.

   **B.**  **Other Business and Financial Management**

The Receiver has continued to emphasize cost reductions across all professionals and within the Wextrust Entities and Affiliates.  In comparison to the last interim period, legal fees were reduced by an estimated 34 percent.  The Receiver has also continued to seek cost-saving measures in the real estate operations.  During this interim period, the Receiver consolidated a Wextrust corporate position by restructuring duties.  The Receiver has also engaged local tax consultants to conduct all appropriate appeals of property tax assessments in order to realize additional value for investors.  Wextrust also continues to bid out service contracts at the properties and only perform repairs and maintenance on an as-needed basis.

The Receiver is awaiting a response from the IRS to a proposal submitted by his tax counsel with respect to the federal income tax obligations of the Wextrust Entities and Affiliates.  In that proposal, submitted on December 23, 2010, the Receiver's tax counsel requested that the IRS work with the Receiver to resolve the estate's federal tax obligations as soon as possible and afford the most favorable tax status to the receivership for the benefit of its many victims.

**IV.**  **FINANCIAL CONDITION OF THE WEXTRUST ENTITIES AND AFFILIATES**

As in previous reports, Deloitte has assisted in compiling financial information from the financial systems and books and records of the Wextrust Entities and Affiliates.  Those financial records reflect the book value of the principal real estate assets, as recorded in the company's books and records, but may not be recorded in accordance with generally accepted accounting principles.  As shown in Table 1, the total book value of the remaining Wextrust real estate

portfolio is approximately $130.4 million. This value is based on the accounting records and other information maintained by Wextrust and does not represent current market value. Moreover, as discussed in previous reports, these properties were purchased at the height of the commercial real estate boom and are heavily leveraged by secured debt. The Receiver contemplates that most of the proceeds of the sales of these properties will be used to repay such debt, pursuant to the Court's Distribution Order.

**Table 1: Book Value of Wextrust Real Estate Assets**

Wextrust Capital, LLC, et al.
Net Book Value (1) (2)
as of May 31, 2011

|  | **Axela (3)** | **WEP (4)** | **WDG (5)** | **Consolidated** |
|---|---|---|---|---|
| Property |  |  |  |  |
|   Building / Land | - | 126,070,344 | 4,336,616 | 130,406,960 |
|   Loan Payable on Property | - | 100,844,080 | 2,865,279 | 103,709,359 |
| **Net Book Value (6)** | $ - | $ 25,226,264 | $ 1,471,337 | $ 26,697,601 |
|  |  |  |  |  |
| Capitalized Costs: |  |  |  |  |
|   Tenant Improvements | - | 1,641,692 | - | 1,641,692 |
|   Capital Improvements | - | 1,992,452 | - | 1,992,452 |
| **Total Capitalized Costs** | $ - | $ 3,634,144 | $ - | $ 3,634,144 |
|  |  |  |  |  |
| **Net Book Value (6)** | $ - | $ 28,860,407 | $ 1,471,337 | $ 30,331,744 |

**(1)** - Where possible, net book values were obtained from accounting information as of May 31, 2011 provided by Wextrust. However, the cost of the building and the balance of the loan payable on the property were not always recorded in the accounting system. To the extent available, these amounts were obtained from other internal sources as of the most recent date available. In some cases, loan payable amounts include accrued interest and late fees assessed by the lender.
**(2)** - The amounts shown do not include properties that were sold or where the relinquishment process was initiated or had been relinquished as of May 31, 2011.
**(3)** - As of August 31, 2009, the United States District Court for the Southern District of New York had entered orders permitting the relinquishment of all hotel properties.
**(4)** - First Highland, LLC and Commerce Center Holdings, which are TIC properties, are included at 100% even though the Wextrust interest is less (78.21% and 35%, respectively). The balance excludes: <1> property owned by Hammond Industrial Holdings, LLC that was sold on December 17, 2010 and <2> property owned by New Salem Holdings, LLC that was sold on May 31, 2011.
**(5)** - There may be other payable amounts due upon sale of property, including property taxes, etc.
**(6)** - The decrease in the building / land and loan amount is due to the sale of units at 47 Dean Street. The reduction in the loan amount was obtained by taking the change between the 11/30/2010 and 05/31/2011. This change in loan amount was then used to decrease the building value.

For the six months ending May 31, 2011, Wextrust had a positive net cash flow of $1.665 million. The positive cash flow of is approximately 200 percent higher than the projected cash flow reported in the Eighth Interim Report for this period, largely as a result of the timing of receipt of the Hammond Industrial Holdings, LLC sale proceeds. Total receipts were $10.6

million against $9.0 million in expenses authorized by the Receiver to preserve the status quo of the Wextrust enterprise, as shown in Table 2 below. The vast majority of those expenses were paid in connection with operating the WEP real estate portfolio, including approximately $3.1 million in debt service payments; $1.73 million in ordinary course expenses; and $1.6 million in capital expenditures, tenant improvements, and leasing commissions. When compared to the six month period of one year ago (December 1, 2009 through May 31, 2010) and excluding revenue from settlements and asset sales, Wextrust's cash generation improved by approximately $115,000. As of May 31, 2011, the Wextrust Entities and Affiliates had approximately $7.84 million in cash in approximately 90 U.S. bank accounts.

## Table 2: Receipts and Disbursements

Wextrust Capital, LLC, et al.
Consolidated Cash Receipts and Disbursements - Rounded (1) (2)
from 12/01/10 through 05/31/2011

| RECEIPTS | Wextrust Capital, LLC and Affiliates | Commodity Funds | Wextrust Equity Partners, LLC and Affiliates | PAM | Wexford Development Group, LLC and Affiliates | Axela Hospitality, LLC and Affiliates | TOTAL |
|---|---|---|---|---|---|---|---|
| Tenant Receipts **(3)** | - | - | 7,750,000 | - | - | - | 7,750,000 |
| Sale of Receivership Assets **(4)** | 1,260,000 | - | - | - | 250,000 | - | 1,510,000 |
| Construction Draws | - | - | - | - | 890,000 | - | 890,000 |
| Other Receipts | 180,000 | - | 300,000 | - | - | - | 480,000 |
| **TOTAL RECEIPTS** | **1,440,000** | **-** | **8,050,000** | **-** | **1,140,000** | **-** | **10,630,000** |
| **DISBURSEMENTS** | | | | | | | |
| Capital Expenditures, Tenant Improvements & Leasing Commissions | - | - | 670,000 | - | 940,000 | - | 1,610,000 |
| Insurance | 15,000 | - | 160,000 | - | - | - | 175,000 |
| Loan Payments | - | - | 2,940,000 | - | 170,000 | - | 3,110,000 |
| Management Fees | - | - | 330,000 | - | - | - | 330,000 |
| Ordinary Course Expenses | 140,000 | - | 1,590,000 | - | - | - | 1,730,000 |
| Labor Costs | 148,000 | - | 380,000 | - | - | - | 528,000 |
| Professional Expenses - Non-Receiver **(5)** | 52,000 | - | 40,000 | - | - | - | 92,000 |
| Taxes | 20,000 | - | 1,370,000 | - | - | - | 1,390,000 |
| Other | - | - | - | - | - | - | - |
| **TOTAL DISBURSEMENTS** | **375,000** | **-** | **7,480,000** | **-** | **1,110,000** | **-** | **8,965,000** |
| **NET CASH GENERATION / (BURN)** | **1,065,000** | **-** | **570,000** | **-** | **30,000** | **-** | **$ 1,665,000** |

**(1)** - The receipts and disbursements in this analysis are cash transactions that are grouped by the entities that initiated the transaction, however, in some cases the cash transactions were executed on behalf of other Wextrust entities. The cash transactions have been categorized by type based on information contained within the books and records of the Wextrust Entities. The sources of cash receipts and disbursements data were a combination of general ledgers and bank transaction data. Not all bank accounts or general ledgers were included in this analysis; entities with no or insignificant transaction activity during the period presented may not have been included.
**(2)** - This analysis was prepared on a cash basis, therefore the timing of receipts and disbursements are different than what may be contained in accrual based financial reports. For example, receipts may not be matched to related disbursements, or vice versa. In addition, some disbursements included in this analysis had not cleared the bank as of May 31, 2011.
**(3)** - Approximately $847,000 was collected, in addition to monthly rent, from tenants for property taxes and insurance.
**(4)** - The $1.51 million in Sale of Receivership Assets represent the net proceeds, after debt repayments, received from the sale of property held by Hammond Industrial Holdings, LLC in December 2010 of approx. $1.26 million and the sale of property developed by 47 Dean Street Holdings, LLC in May 2011 of approx. $250,000. Please note that the property held by New Salem Holdings, LLC was sold in May 2011 but funds of approximately $423,000 was not received until June 1, 2011.
**(5)** - Receivership professional expenses are not included in this analysis. The payment of Professional Expenses - Non-Receiver represent fees relating to the marketing of properties for sale, etc.

- 8 -

Deloitte has also assisted management in preparing a cash forecast for Wextrust for three three-month periods through February 28, 2012, as shown in Table 3. The net cash flow is projected to be a net positive of $1.09 million. The period ending February 28, 2011 shows a comparatively lower net cash flow because of property taxes and insurance payments, which are paid during the period but funded in part by the monthly and annual collections of tenants' fees.

**Table 3: Wextrust Cash Forecast**

Base Cash Flow Projections for Wextrust Capital, LLC and Affiliates, et al. for the Nine Months Ending February 28, 2012 (1) (2)

| | WexTrust Capital, LLC, et al. for the 3 - Months Ending August 31, 2011 | WexTrust Capital, LLC, et al. for the 3 - Months Ending November 30, 2011 | WexTrust Capital, LLC, et al. for the 3 - Months Ending February 28, 2012 | Total | |
|---|---|---|---|---|---|
| Total Effective Income | $ 3,565,554 | $ 3,564,757 | $ 3,771,142 | $ 10,901,452 | (3) |
| Total Operating Expenses | 1,436,421 | 1,366,462 | 2,125,317 | 4,928,200 | |
| Net Operating Income | 2,129,133 | 2,198,295 | 1,645,825 | 5,973,252 | |
| Non Operating Expenses: | | | | | |
| Debt Service - Interest (Including Swap Payments) | 1,225,360 | 1,284,744 | 1,232,566 | 3,742,671 | |
| Debt Service - Principal | 237,941 | 246,741 | 246,741 | 731,423 | |
| Capital Expenditures (4) | 121,000 | 15,000 | 15,000 | 151,000 | (5) |
| Tenant Improvements & Lease Commissions | 7,720 | - | - | 7,720 | |
| Reserves | 22,013 | 22,013 | 22,013 | 66,038 | |
| Other Non-Operating Expenses | 61,114 | 60,896 | 62,879 | 184,889 | |
| Total Non-Operating Expenses | 1,675,148 | 1,629,394 | 1,579,199 | 4,883,741 | |
| Net Cash Flow (6) | $ 453,985 | $ 568,901 | $ 66,626 (7) | $ 1,089,512 | |

(1) - Does not include any distributions under the Plan of Distribution. As of August 31, 2009, the United States District Court for the Southern District of New York approved orders to relinquish all hotel properties.
(2) - Amounts include First Highland, LLC, which is a TIC property, at 100% even though the Wextrust interest is less (78.21%). Amounts exclude Commerce Center Holdings, which is a TIC property where Wextrust interest is 35%. The cash projections include the expected cash activity for properties that are currently in sale negotiations but do not include the expected net sale proceeds. For information on the expected sale of Receivership assets, please refer to Section I.A.
(3) - Amount includes approx. $500,000 in tenant rent receipts from approx. 26 tenants who are assumed to renew their leases.
(4) - Net of escrow draws available for capital expenditures.
(5) - In order to better manage cash flow on a per-property basis, Capital Expenditures projects are evaluated on an as-needed basis. Due to that methodology, a minimal amount of Capital Expenditures are projected unless there is a known, necessary repair or replacement imminent.
(6) - Does not include Receivership related professional fees.
(7) - The decrease in net cash flow projected for the 3 months ended February 28, 2012 is mainly attributable to the projected payment of 2011 property taxes and insurance in February of 2012 totaling approximately $730,000. This payment is funded in part by the monthly and annual collections of CAM fees from tenants.

The above analysis does not include expenses associated with the administration of the receivership, the largest component of which is professional legal fees due to the Receiver and receivership counsel, Freshfields Bruckhaus Deringer US LLP ("Freshfields") (since March 2010) and Arent Fox LLP (since June 2010). Dewey & LeBoeuf LLP ("D&L") provided services to the Receiver through December 2010. Legal fees during the Ninth Interim Period

were an estimated $301,000, compared to $456,160 in the prior period, a 34 percent decrease. As shown in Table 4, fees for the Receiver and these firms have continued to decline.

**Table 4:  Administrative Costs**

[Bar chart showing Total Fees and Fees Requested by month from Aug-08 through Jun-11. Values decline from approximately $3,000,000 in Sep-08 to under $100,000 by mid-2011. A vertical dashed line marks the boundary after which values include estimated amounts.]

The Court did not approve any fee applications in the last six month period. For all professionals, Wextrust has incurred and paid $15,456,350.80[1] in professional fees as of June 30, 2011 as follows: Freshfields, $0; Arent Fox, $0; D&L, $9,423,211.76; Deloitte, $4,079,576; Hilco, $940,500; Receiver, $378,062.50; various South African professionals, $338,553; Badger, $120,000; and other professionals, $176,448.

## V.     INVESTIGATIONS AND LITIGATION

### A.     Claims Against Third Parties

The Receiver is continuing to make progress in his efforts to investigate and prosecute possible claims against third parties in the United States. He has worked with the Securities and Exchange Commission ("SEC") and U.S. Attorney's Office to ensure that recoveries are pursued in the most efficient and cost-effective manner. The focus of the Receiver's efforts continue to

---

[1] A slightly larger amount was reported in Eighth Interim Report as a result of an inadvertent mathematical error.

be on former providers of professional services to the Wextrust Entities and Affiliates.

On May 6, 2011, the Receiver filed a motion for an order approving the settlement agreement reached by the Receiver and Much Shelist Denenberg Ament & Rubenstein, P.C. ("Much Shelist"), dated April 11, 2011 (the "Settlement Agreement") (Dkt. No. 704).  Much Shelist is a law firm based in Chicago, Illinois.  It represented the Wextrust Entities and Affiliates from approximately January 2005 through the commencement of this case.  Based on an investigation of Much Shelist's representation of Wextrust, the Receiver determined that the receivership estate had valid claims against Much Shelist for breach of its professional obligations.  Although Much Shelist sought to reach a settlement of the Receiver's claims, its professional liability insurers refused to fund a settlement at or near the amount demanded by the Receiver.  Much Shelist proposed and funded a confidential mediation, which was attended by Much Shelist, its insurers, representatives of the SEC, and counsel for the Receiver.

After further negotiations between the Receiver and Much Shelist, the parties entered into the Settlement Agreement.  The Settlement Agreement does not provide for an immediate cash payment by Much Shelist to the receivership estate.  Rather, it settles the claims for $13 million, but provides for the Receiver to recover from Much Shelist's professional liability insurers through an assignment of Much Shelist's rights under its insurance policies.

The Receiver and his advisors have concluded that there is a substantial likelihood of success on the claims against Much Shelist's insurers.  However, a recovery may require additional litigation, and there is no guarantee of success.  In addition, the Receiver was only able to conclude the agreement with Much Shelist by agreeing to condition it on the Court issuing a bar order against claims by third parties against Much Shelist connected to the work it performed for Wextrust, which would include individual investments.

The Court held on hearing on August 3, 2011 to discuss the proposed settlement with Much Shelist, and has requested additional information from the Receiver to make a decision on whether to approve the agreement. Future updates regarding recoveries from former professional firms will be posted to the receivership website.

### B. Ancillary Litigation

As directed by the Receiver Order, the Receiver and his advisors are periodically required to participate in ancillary litigation that may impact receivership assets and interests. During the past six months, counsel for the Receiver have monitored a series of ongoing cases in both state and federal bankruptcy courts that implicate receivership property interests. They will continue to do so, in consultation with the SEC, to preserve and protect the receivership estate's rights.

### C. Developments in the Criminal Cases Against Byers and Shereshevsky

On April 11, 2011, Judge Chin sentenced Defendant Steven Byers to a term of imprisonment of 13 years and 4 months. Byers was also ordered to pay $7.7 million in restitution and forfeit $9.2 million in proceeds from the crimes to the U.S. Government. On July 18, 2011, Judge Chin sentenced Defendant Joseph Shereshevsky to a term of imprisonment of 21 years and 10 months. Like Byers, Shereshevsky was ordered to pay $7.7 million in restitution and forfeit $9.2 million. Transcripts from both sentencing hearings can be found on the receivership website. The Receiver believes that all or substantially all assets that could be subject to forfeiture have been made a part of the receivership estate. With respect to the restitution payments to be made by Defendants Byers and Shereshevsky, such payments would be made to specific victims upon Byers and Shereshevsky's release. The payments will be subject to Byers and Shereshevsky's future earning capacity.

**VI.    CONCLUSION**

The Receiver continues to implement the Court's instructions in the Receiver Order by managing the receivership estate, liquidating the U.S. real estate assets at the greatest return possible, resolving federal tax issues, and accomplishing further distributions to victims. The Receiver will continue to report on the financial condition of the receivership estate on a periodic basis, and will continue to take steps to inform investors and other interested parties of significant developments.

Dated: Washington, DC
August 11, 2011

>                               Respectfully submitted,
>
>                               Timothy J. Coleman
>                               Receiver for Wextrust Entities
>
>
>                               s/ Jonathan W. Ware_____
>                               Jonathan W. Ware, *pro hac vice*
>                               John K. Warren, *pro hac vice*
>                               FRESHFIELDS BRUCKHAUS DERINGER US LLP
>                               701 Pennsylvania Avenue, NW
>                               Washington, DC 20004
>                               Tel. (202) 777-4500
>
>                               *Attorneys for Receiver*

Of Counsel:
Mia L. Havel

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on **August 11, 2011** I directed the service of a true and correct copy of the foregoing **NINTH INTERIM REPORT OF RECEIVER** upon the following individuals in the manner indicated below:

**Via First Class Mail**
Joseph Shereshevsky,
Registry No. 35857-054
c/o GEO Group
Queens Private Correctional Facility
182-22 150th Avenue
Jamaica, NY 11413
Pro Se Defendant

**Via Electronic Mail**
Alexander M. Vasilescu, Esq.
Andrew M. Calamari, Esq.
Steven G. Rawlings, Esq.
Alistaire Bambach, Esq.
Neal R. Jacobson, Esq.
Philip Moustakis, Esq.
Danielle Sallah, Esq.
Attorneys for Plaintiff SEC

**Via Electronic Mail**
Barry S. Pollack, Esq.
Joshua L. Solomon, Esq.
Attorneys for non-party G&H Partners AG

**Via Electronic Mail**
Barry S. Zone, Esq.
Jason Canales, Esq.
Attorneys for Defendant Steven Byers

**Via Electronic Mail**
Michael Fred Bachner, Esq.
Attorney for Relief Defendant Elka Shereshevsky

**Via Electronic Mail**
Martin Siegel, Esq.
Attorney for non-party Int'l Consortium of Wextrust Creditors

**Via Electronic Mail**
Paul A. Levine, Esq.
Attorney for non-party Key Equipment Finance, Inc.

**Via Electronic Mail**
Harris Kay, Esq.
Marc X. LoPresti, Esq.
Attorneys for various non-party investors

**Via Electronic Mail**
Ethan Holtz, Esq.
Edward P. Gilbert, Esq.
Attorneys for non-party RAIT Partnership

**Via Electronic Mail**
Francesca Morris, Esq.
Attorney for non-parties Ticor Title Insurance Co. and Heritage Community Bank

**Via Electronic Mail**
John M. Bradham, Esq.
Peter B. Katzman, Esq.
Attorneys for non-parties Space Park AIM and ISSB Partnerships

**Via Electronic Mail**
Beth L. Kaufman, Esq.
Attorney for non-party Lawrence Costa

**Via Electronic Mail**
Philip A. Byler, Esq.
Andrew T. Miltenberg, Esq.
Ira S. Nesenoff, Esq.
James B. Daniels, Esq.
Attorneys for non-party Broadway Bank

**Via Electronic Mail**
Shalom Jacob, Esq.
Shmuel Vasser, Esq.
Attorneys for non-party Int'l Ad-Hoc Committee of Wextrust Creditors

**Via Electronic Mail**
Emily S. Alexander, Esq.
Attorney for non-party Martin Malek

**Via Electronic Mail**
Elizabeth P. Gray, Esq.
Attorney for non-party Gerald Jaffe

**Via Electronic Mail**
John P. Doherty, Esq.
Attorney for non-party Wells Fargo Bank N.A.

**Via Electronic Mail**
Jeffrey L. Schwartz, Esq.
John P. Amato, Esq.
Stephen W. Ragland, Esq.
Clarence A. Wilbon, Esq.
Attorneys for non-party First Tennessee Bank National Association

**Via Electronic Mail**
Alexander S. Lorenzo, Esq.
Attorney for non-party LNR Partners, Inc.

**Via Electronic Mail**
Alan E. Marder, Esq.
Attorney for non-parties Nashville Warehouse Partners and Southeast Warehouse Partners

**Via Electronic Mail**
Edward F. Malone, Esq.
George R. Mesires, Esq.
Attorneys for non-parties Barrington and Hinsdale Banks

**Via Electronic Mail**
Susan F. Balaschak, Esq.
Keith N. Costa, Esq.
Randal S. Mashburn, Esq.
John H. Rowland, Esq.
Attorneys for non-party Regions Bank

**Via Electronic Mail**
Louis Orbach, Esq.
Charles J. Sullivan, Esq.
Amy Marie Culver, Esq.
Attorneys for non-party TCF National Bank

**Via Electronic Mail**
David B. Grantz, Esq.
Scott T. McCleary, Esq.
Attorneys for non-party Bank of America

**Via Electronic Mail**
Adam W. Downs, Esq.
Gerard P. Brady, Esq.
Attorneys for non-party Erin Construction & Development Co., Inc.

s/ Jonathan W. Ware
**Jonathan W. Ware**