UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x

SECURITIES AND EXCHANGE
COMMISSION,

         Plaintiff,

   - against -

STEVEN BYERS et al.,

         Defendants,

   - and -

ELKA SHERESHEVSKY,

         Relief Defendant.
- - - - - - - - - - - - - - - - - -x

**ORDER**

08 Civ. 7104 (DC)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/24/11

**CHIN, Circuit Judge:**

       Before the Court are the following applications:

1. A motion by Timothy J. Coleman (the "Receiver") to approve a proposed settlement and release between the Receiver and Wextrust's former law firm, Much Shelist Denenberg Ament & Rubenstein, P.C. ("Much Shelist"), relating to the estate's malpractice claims against Much Shelist;

2. The tenth interim fee application from the Receiver's former law firm, Dewey & LeBoeuf LLP ("D&L"), for fees and expenses, covering the period from November 1, 2009

      through June 30, 2010. D&L seeks approval of $619,181.21 in fees and $24,524.26 in expenses to D&L, and $22,900 in fees to the Receiver;

3. The third interim fee application from Badger Real Estate Advisors, LLC, seeking approval of $260,000 in fees and $2,760.24 in expenses, covering the period from December 1, 2009 through December 31, 2010;

4. The first interim fee application from the Receiver and the Receiver's law firm, Freshfields Bruckhaus Deringer US LLP ("Freshfields"), for fees and expenses covering the period from March 1, 2010 to December 31, 2010. Freshfields seeks approval of $272,699 in fees and $19,129.06 in expenses to Freshfields, and $34,875 in fees to the Receiver; and

5. The first interim fee application from Arent Fox LLP, a law firm retained by the Receiver, seeking approval of $66,433 in fees and $1,916.83 in expenses, covering the period from June 1, 2010 to May 31, 2011.

The Court rules upon each application as follows:

A. **<u>The Proposed Much Shelist Settlement & Release Agreement</u>**

      On May 6, 2011, the Receiver moved for an order approving a settlement and release agreement with Much Shelist

-2-

relating to the estate's professional malpractice claims against the law firm. While the SEC approved of the proposed settlement, I received objections to this motion from seven individuals, all of whom were Wextrust investors. On August 3, 2011, I held a hearing on the motion at which I posed numerous questions to the Receiver, Much Shelist, and the malpractice insurers. The Receiver and his proposed insurance coverage counsel, Kasowitz, Benson, Torres & Friedman LLP ("Kasowitz"), submitted follow-up reports. For the following reasons, the Receiver's motion is DENIED.

As an initial matter, the proposed settlement requires no payment from Much Shelist and would bar any future claims by the Receiver or third parties, including Wextrust investors. I am troubled by a proposal that would not require Much Shelist to pay even a nickel, while giving it the equivalent of a general release. The settlement would even reimburse Much Shelist for its expenses in connection with the coverage litigation. Moreover, between January 2005 and December 2008, Much Shelist billed Wextrust $2.8 million in fees, and was paid approximately $2.38 million. I have difficulty understanding why, under the circumstances, Much Shelist should also be permitted to retain these fees. While I appreciate that there are some benefits to

an agreement whereby Much Shelist agrees to set damages at $13 million with assignment of its claims against the insurers to the Receiver, still, the agreement provides for no money in hand.

In support of the settlement, the Receiver states that there would be an issue of collectability as to Much Shelist. But public records show that the firm generates more than $15 million in income a year.  (Dun & Bradstreet Dun's Market Identifiers (last updated Aug. 10, 2011)).  Furthermore, even without this settlement, the Receiver may be able to pursue claims against the malpractice insurers.

The Court is also concerned with the Receiver's selection of Kasowitz to pursue the coverage claims against the insurers.  While Kasowitz is an excellent law firm, the Receiver also received a proposal from a prominent national law firm that was willing to litigate the action on a full contingency basis. One of the partners on that firm's proposed team was formerly Chief of the Criminal Division of the U.S. Attorney's Office for the Southern District of New York.

In light of all the circumstances, including my consideration of the possible risks and rewards of litigation against Much Shelist and the insurers, I conclude that the settlement as currently negotiated is not in the best interest of

the receivership estate. The motion is hereby denied, without prejudice to renewal if the Receiver is able to negotiate more favorable terms.

## B. The Fee Applications

The Court appreciates the diligence, competence, and skill of the professional services firms in assisting the Receiver with administration of the estate. Nonetheless, I must be mindful of the fact that at this point, the receivership estate has paid nearly $15.5 million in professional fees -- more than three times the approximately $5 million paid to the victims. (See Ninth Interim Report of the Receiver 4, 10). I address each of the fee applications in turn.

### 1. D&L's Tenth Interim Fee Application

D&L seeks approval of $666,605.47 in fees and expenses, which includes $22,900 in fees for the Receiver while he was still at D&L. This application is DENIED WITHOUT PREJUDICE to its renewal at the conclusion of this case. At this point, D&L has been paid $9,423,212 in fees -- nearly twice the amount the victims have received. The Securities and Exchange Commission ("SEC") has taken the position that consideration of D&L's tenth fee application should be deferred until the end of the case.

(5/20/2011 SEC Ltr. 1-2). I agree. Accordingly, D&L's tenth interim fee application is denied without prejudice.

2. Badger Real Estate's Third Interim Fee Application

The Receiver's real estate advisor, Badger Real Estate, seeks approval of $260,000 in fees and $2,760.24 in expenses. The SEC has no objections to this request. I also note that the commercial real estate properties owned and operated by the receivership estate account for the largest portion of the remaining estate. (Ninth Interim Report of the Receiver 2). Badger Real Estate's third interim fee application for $262,760.24 in fees and expenses is GRANTED.

3. Freshfields's First Interim Fee Application

Freshfields and the Receiver seek approval of $326,703.06 total in fees and expenses. The SEC supports Freshfield's application. I have some concerns. Although the amount reflects a thirty-five percent discount of the total fees accrued, the pre-discount hourly rates charged still range from $275 to $975. (Freshfields First Joint Appl. Ex. A). Moreover, because the portion of the receivership estate that is liquid remains relatively small at present, this Court imposes a fifty percent hold-back of fees. At the conclusion of this case, Freshfields may apply to the Court for payment of the remaining

-6-

fifty percent of fees held back from this application. Accordingly, Freshfield's first interim fee application is GRANTED IN PART, to the extent that Freshfields is allowed $136,349.50 in fees, $19,129.06 in expenses, and the Receiver is allowed $17,437.50 in fees.

4. <u>Arent Fox's First Interim Fee Application</u>

Arent Fox LLP seeks approval of $66,433 in fees and $1,916.83 in expenses. The SEC has no objection to this application. For the reasons discussed above, the Court imposes a fifty percent hold-back of fees. At the conclusion of this case, Arent Fox may apply to the Court for payment of the remaining fifty percent of fees held back from this fee application. Arent Fox's first interim fee application is GRANTED IN PART, to the extent that it is allowed $33,216.50 in fees and $1,916.83 in expenses.

Accordingly, the Wextrust Entities, as the term is defined in the Receivership Order, are hereby authorized and directed on an interim basis to pay the Receiver, Badger Real Estate Advisors, LLC, Freshfields, and Arent Fox LLP the amounts awarded in Section B herein within ten (10) business days from available funds.

The parties are HEREBY ORDERED to appear for a conference on September 7, 2011 at 11 a.m., in Courtroom 11A, to discuss, <u>inter alia</u>, the litigation against Much Shelist and the two coverage actions.

SO ORDERED.

Dated: New York, New York
August 24, 2011

DENNY CHIN
United States Circuit Judge
Sitting by Designation