**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

SECURITIES AND EXCHANGE COMMISSION,

                 Plaintiff,

    - against -

STEVEN BYERS, JOSEPH SHERESHEVSKY,
WEXTRUST CAPITAL, LLC, WEXTRUST
EQUITY PARTNERS, LLC, WEXTRUST
DEVELOPMENT GROUP, LLC, WEXTRUST
SECURITIES, LLC, and AXELA HOSPITALITY,
LLC,

                 Defendants,

      - and -

ELKA SHERESHEVSKY,

             Relief Defendant.

---

No. 08 Civ. 7104 (DC)

ECF Case

---

**MEMORANDUM OF LAW IN SUPPORT OF RECEIVER'S MOTION FOR AN**
**ORDER APPROVING SETTLEMENT AGREEMENT WITH POOLE MAHONEY P.C.**

Mia L. Havel, *pro hac vice*
Jonathan W. Ware, *pro hac vice*
FRESHFIELDS BRUCKHAUS DERINGER US LLP
701 Pennsylvania Avenue NW
Washington, D.C. 20004
Tel. (202) 777-4500
Fax (202) 777-4555

May 14, 2012                *Attorneys for Receiver*

TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

FACTUAL BACKGROUND ......................................................................................3

    I.   The Receiver's Investigation Of Claims Against Third Parties..............................3

    II.  Investigation Of Claims Against HPM ...................................................................4

    III. Settlement Of Wextrust's Claims Against HPM ....................................................6

    IV. The Settlement Agreement ......................................................................................6

APPLICABLE LEGAL STANDARDS AND DISCUSSION ...........................................7

    I.   The Settlement Agreement Is in the Best Interests of the Receivership.................7

    II.  The Settlement Agreement Does Not Implicate the Concerns Raised By
        the Court In Connection with the Original Much Shelist Settlement ...................10

    III. This Court Has Broad Authority to Enter a Bar Order in the Exercise of its
        Equitable Discretion.............................................................................................11

CONCLUSION.........................................................................................................16

# TABLE OF AUTHORITIES

**US Cases**

*Baldwin-United Corp.*,
    770 F.2d 328 (2d Cir. 1985)..................................................................................13

*CFTC v. Equity Fin. Group*,
    No. 04-Civ-1512, 2007 WL 2139399 (D.N.J. July 23,
    2007) ...............................................................................................................11

*Davis v. Lifetime Capital*,
    No. 3:04CV0059, 2006 U.S. Dist. LEXIS 15727 (S.D. Ohio Apr. 4, 2006).......7-8

*First Empire Bank-New York v. FDIC*,
    572 F.2d 1361 (9th Cir. 1978) ............................................................................14

*Gordon v. Dadante*,
    336 Fed. Appx. 540 (6th Cir. Ohio 2009)....................................................11-12

*Harmelin v. Man Fin., Inc.*,
    No. 06-Civ-1944, 2007 WL 4571021 (E.D. Pa. Dec. 28, 2007).....................11-12

*Hendrix v. Daugherty*,
    249 Va. 540, (Va. 1995)....................................................................................4-5

*Klay v. United Healthgroup, Inc.*,
    376 F.3d 1092 (11th Cir. 2004) ..........................................................................13

*Miller v. Brooks*,
    315 F.3d 417 (4th Cir. 2003) ..............................................................................13

*Scholes v. Lehmann*,
    56 F.3d 750 (7th Cir. 1995) ..................................................................................5

*Scholes v. Stone, McGuire, and Benjamin*,
    786 F. Supp. 1385 (N.D. Ill. 1992) .......................................................................5

*SEC v. Am. Capital Invs., Inc.*,
    98 F.3d 1133 (9th Cir. 1996) ..............................................................................13

*SEC v. An-Car Oil Co.*,
    604 F.2d 114 (1st Cir. 1979)...............................................................................13

*SEC v. Capital Consultants, LLC*,
    No. 00-1290, 2002 U.S. Dist. LEXIS 6765 (D. Or. Mar. 8, 2002).....................7-8

*SEC v. Capital Consultants, LLC,*
    No. 00-Civ-1290, 2002 WL 31470399 (D. Or. Mar. 8, 2002).............................11

*SEC v. Credit Bancorp, Ltd.,*
    No. 99-CV-11395, 2001 U.S. Dist. LEXIS 21717 (S.D.N.Y. Dec. 20, 2001) ........7

*SEC v. Credit Bancorp, Ltd.,*
    No. 99-CV-11395, 2002 U.S. Dist. LEXIS 14033 (S.D.N.Y. July 31, 2002) ..... 7-8

*SEC v. Elliott,*
    953 F.2d 1560 (11th Cir. 1992) ............................................................... 12-13, 13

*SEC v. Great White Marine & Recreation, Inc.,*
    428 F.3d 553 (5th Cir. 2005) ...............................................................12

*SEC v. Hardy,*
    803 F.2d 1034 (9th Cir. 1986) ...............................................................12, 13, 14

*SEC v. Learn Waterhouse, Inc.,*
    No. 04-CV-2037, 2008 U.S. Dist. LEXIS 45825 (S.D. Cal. June 11, 2008).......7-8

*SEC v. Lincoln Thrift Ass'n,*
    577 F.2d 600 (9th Cir. 1978) ...............................................................13

*SEC v. Parish,*
    No. 07-CV-00919, 2010 U.S. Dist. LEXIS 11786 (D.S.C. Feb. 10, 2010)...........11

*SEC v. Safety Fin. Service, Inc.,*
    674 F.2d 368 (5th Cir. 1982) ...............................................................12, 13, 14

*SEC v. Shiv,*
    379 F. Supp. 2d 609 (S.D.N.Y. 2005)....................................................5

*SEC v. Wencke,*
    783 F.2d 829 (9th Cir.1986) ...............................................................14

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta,*
    552 U.S. 148 (2008)...........................................................................14

*United States v. Vanguard Inv. Co.,*
    6 F.3d 222 (4th Cir. 1993) ...................................................................12, 13, 14

**Statutes**

28 U.S.C. § 1367 ....................................................................................................7

28 U.S.C. § 1651 ..................................................................................................13

**Other Authorities**

3 Ralph Ewing Clark, A TREATISE ON THE LAW AND PRACTICE OF
        RECEIVERS, § 770 (3d ed. 1959) ........................................................ 7-8

United States Securities and Exchange Commission, BILLING
        INSTRUCTIONS FOR RECEIVERS IN CIVIL ACTIONS
        COMMENCED BY THE U.S. SECURITIES AND EXCHANGE
        COMMISSION, 1, 7 (2008) ................................................................... 3-4

Timothy J. Coleman (the "Receiver"), Receiver for Wextrust Capital, LLC and its related entities (collectively, the "Wextrust Entities and Affiliates"), respectfully submits this memorandum of law in support of his motion for an order approving the Settlement Agreement and Release (the "Settlement Agreement") entered into by the Receiver and Poole Mahoney P.C., formerly operating as Huff, Poole & Mahoney P.C.[1]  The Settlement Agreement provides for an immediate cash payment to the receivership estate of $900,000.  For the reasons set forth below, the Receiver respectfully requests that the Court approve the Settlement Agreement and enter an order substantially in the form of the proposed order submitted herewith.  Plaintiff Securities and Exchange Commission ("SEC") also supports and recommends approval of the Settlement Agreement.

## PRELIMINARY STATEMENT

Poole Mahoney P.C. is a law firm founded in 1987 with approximately 22 attorneys in four offices centered in the Norfolk, Virginia area.  The firm was known by the name of Huff, Poole & Mahoney P.C. ("HPM," as defined in the Settlement Agreement) until name partner Glen Huff was appointed to the Virginia Court of Appeals in July 2011.  Because the firm was named Huff, Poole & Mahoney P.C. for the entire period relevant to the Settlement Agreement, it is referred to as Huff Poole or HPM herein.

HPM represented various Wextrust Entities and Affiliates prior to the commencement of this action by the SEC.  The legal work performed by HPM was

---

[1]     A true and correct copy of the fully-executed Settlement Agreement is attached as **Exhibit A** to the Declaration of Jonathan W. Ware in Support of the Receiver's Motion for an Order Approving the Settlement Agreement with Poole Mahoney P.C. ("Ware Decl.").

primarily corporate and commercial litigation-related legal work.  Other outside legal counsel, including the Much Shelist law firm, were retained by Wextrust to provide counsel on securities-related legal work.  HPM provided legal advice to the Wextrust entities as early as June 2003.  HPM received a total of approximately $275,000 in fees for all legal work during the course of its representation of Wextrust.

Based on the Receiver's investigation of HPM's representation of various Wextrust Entities and Affiliates, the receivership believes it has valid claims against HPM for breach of its professional obligations.  HPM has maintained, and continues to maintain that the Receiver has no viable claims to assert and that it is not liable to Wextrust, that it fulfilled its professional duties and obligations, and, to the extent viable claims could be asserted, that it has valid defenses to the Receiver's claims.  To avoid the costs, disruption, and uncertainties of protracted litigation, HPM, through its insurance carrier, and the Receiver have negotiated a proposed resolution to the Receiver's claims. The parties reached an agreement in principle on December 12, 2011, and signed the Settlement Agreement on May 14, 2012.

As outlined below, the Settlement Agreement, if approved by the Court, would provide for an immediate cash payment to the receivership estate in the amount of $900,000.  That is more than three times what HPM received in fees from Wextrust during the course of its representation and is reflective of the financial realities associated with the sort of protracted litigation the parties contemplated in the event they were unable to resolve their differences.  In exchange, HPM and its present and former owners and employees would be granted a release by the Receiver from any and all claims connected to the work it performed for Wextrust, as well as entry of a bar order by the

Court prohibiting additional claims by third parties against HPM and its present and former owners and employees related to representation of Wextrust.

The Receiver respectfully submits that the Settlement Agreement is fair and reasonable, and will provide a substantial monetary recovery to the receivership estate and its victims.  As described below, on the advice of his counsel, with the approval of the SEC, and after considering all relevant factors, the Receiver has determined that the Settlement Agreement is in the best interests of the receivership estate.  Accordingly, the Receiver respectfully requests that the Court approve the Settlement Agreement.

## FACTUAL BACKGROUND

### I.      The Receiver's Investigation Of Claims Against Third Parties

On August 11, 2008, the Court entered the first Order Appointing Temporary Receiver (Dkt. No. 2) in this matter, which was subsequently amended on September 11, 2008 (Dkt. No. 36) (the "Receiver Order").  Pursuant to the Receiver Order, the Receiver is empowered to "investigate, prosecute, defend, intervene in, and otherwise participate in, compromise and adjust actions . . . as [he] believes in his sole discretion advisable or proper to collect, conserve, or otherwise recover assets" of the Wextrust Entities and Affiliates.  (Receiver Order at 8.)

Since his appointment, the Receiver has investigated several claims against professional firms in connection with services they provided to the Wextrust Entities and Affiliates.  Pursuant to the SEC's receivership guidelines, the Receiver has analyzed whether the pursuit of claims against third parties would be likely to produce a net

economic benefit to the estate.[2]  Accordingly, the Receiver has evaluated the merits and

net benefit of such claims in consultation with his legal advisors and the SEC.

The Receiver has also pursued claims against the Chicago law firm of Much

Shelist Denenberg Ament & Rubenstein, P.C. ("Much Shelist"), which was the subject of

an earlier settlement approval motion in May 2011.  (Dkt. No. 704.)  As discussed below,

the Receiver has carefully considered the Court's August 24, 2011 Order denying the

settlement agreement with Much Shelist, and respectfully submits that this settlement

with HPM does not implicate the same concerns raised by the Court in that Order.

**II.**      **Investigation Of Claims Against HPM**

The Receiver and his counsel began investigating claims against HPM early in the

receivership, focusing their attention on possible actions for negligence grounded in

professional malpractice.  The SEC conducted its own investigation of HPM in

connection with Wextrust and determined not to bring any enforcement action against the

law firm and any of its attorneys who represented Wextrust.  The Receiver has considered

a variety of possible legal theories including legal malpractice and breach of contract.

In order to state a breach of contract action for legal malpractice under Virginia

law, a plaintiff "must plead and prove that a relationship existed between them which

gave rise to a duty, that the attorney neglected or breached the duty, and that the neglect

or breach was a proximate cause of loss to the plaintiff."  *Hendrix v. Daugherty*, 249 Va.

---

[2]      *See* United States Securities and Exchange Commission, BILLING INSTRUCTIONS FOR RECEIVERS IN CIVIL ACTIONS COMMENCED BY THE U.S. SECURITIES AND EXCHANGE COMMISSION, 1, 7 (2008).

540, 544 (1995).  The Receiver stands in the shoes of the Wextrust Entities and Affiliates for purposes of pursuing an action for professional malpractice against HPM.[3]

The Receiver's claims focused on, among other things, HPM's actions in connection with the preparation of drafts of legal documents such as subscription agreements which may subsequently have been used by Wextrust as part of offering materials, as well as legal advice provided by HPM to Wextrust on corporate matters and in connection with prior investigations by the SEC and the Virginia State Corporations commission.   The Receiver alleged that HPM knew of and failed to respond appropriately to certain "red flags" that  might, upon further inquiry, have revealed the Wextrust Ponzi scheme being perpetrated by Defendants Byers and Shereshevsky.  The Receiver's claims were not focused on actual participation in or knowledge of the Wextrust Ponzi scheme by any HPM lawyer.

 HPM has at all times disputed the Receiver's claims and allegations and denied that it ever represented Wextrust in connection with any securities or disclosure matters. The Settlement Agreement does not contain any admission of liability or wrongdoing by HPM in connection with any of the legal services it performed.

HPM agreed to enter into a series of tolling agreements with the Receiver so the parties could fully investigate matters and work to resolve them without concern for applicable statutes of limitation.

---

[3]     *See SEC v. Shiv*, 379 F. Supp. 2d 609 (S.D.N.Y. 2005) (involving SEC receiver with standing to bring state law claims on behalf of corporations for which he was appointed); *Scholes v. Lehmann*, 56 F.3d 750 (7th Cir. 1995) (same); *Scholes v. Stone, McGuire, and Benjamin*, 786 F. Supp. 1385, 1392-93 (N.D. Ill. 1992) (holding receiver had standing to bring legal malpractice claims on behalf of partnerships that were part of receivership estate)

After a thorough investigation, the Receiver made a demand on HPM seeking substantial damages.[4]  This damages calculation was based on the Receiver's analysis of the direct and consequential losses suffered by Wextrust investors in matters in which the Receiver believed HPM had some responsibility.  HPM denied that it caused any damage, direct or consequential, to Wextrust or its investors.

### III.    Settlement Of Wextrust's Claims Against HPM

Following the Receiver's investigation and the settlement demand on HPM, the Parties engaged in negotiations to resolve the Wextrust Entities, and Affiliates' claims.  The negotiations focused on potential liability, defenses available to all claims, and risks to the parties, the financial and other burdens associated with protracted litigation, and the parties' respective valuation of the Receiver's claims.  As a result of these negotiations, the Settlement Agreement was reached, which provides for a resolution of the Receiver's claims in the amount of $900,000.  In deciding to accept this amount from HPM in resolution of all claims, the Receiver considered a number of significant factors, as discussed below

### IV.    The Settlement Agreement

The Settlement Agreement includes mutual releases and covenants not to sue.[5] HPM, through its  insurance carrier, also agreed to pay $900,000 in cash to the Receiver

---

[4]    On November 17, 2008 the Receiver issued a subpoena to HPM.  On December 18, 2008, Huff Poole filed a motion to quash the Receiver's subpoena in the U.S. District Court for the Eastern District of Virginia, Norfolk Division.  The Receiver opposed the motion, which was denied after a hearing.  Huff Poole subsequently produced documents to the Receiver.

[5]    The release covers potential claims by HPM for any amount of unpaid legal fees by the Wextrust Entities and Affiliates.

to settle all claims, payable within ten business days of approval of the Settlement

Agreement by the Court.  In consideration for the release and cash settlement amount, the

Receiver has agreed to seek a bar order from this Court, substantially in the form of the

proposed order submitted concurrently herewith.  The bar order would enjoin the filing of

or continued prosecution of claims by all third parties (including investors and creditors

of the Wextrust Entities and Affiliates) against HPM in connection with HPM's role as

counsel to Wextrust.  As explained in greater detail below, courts have issued similar bar

orders in connection with settlements proposed by equity receivers, and entry of a bar

order here is appropriate for several reasons.

## APPLICABLE LEGAL STANDARDS AND DISCUSSION

### I.     The Settlement Agreement Is in the Best Interests of the Receivership

Disputes concerning property of any kind belonging to the Wextrust Entities and

Affiliates are within this Court's jurisdiction.  *See, e.g.*, 28 U.S.C. § 1367 (referring to the

district court's supplemental jurisdiction in a receivership action).  Thus, the Court has

authority to approve the resolution of any such disputes.  *See, e.g., SEC v. Credit

Bancorp, Ltd.*, No. 99-CV-11395, 2001 U.S. Dist. LEXIS 21717, at *6 (S.D.N.Y. Dec.

20, 2001).[6]

The threshold for approval of settlements by a court-appointed equity receiver is

straightforward:  the settlement must be in the best interests of the receivership.  Clark on

---

[6]     The court in *Credit Bancorp* cited 3 Ralph Ewing Clark, A TREATISE ON THE LAW
AND PRACTICE OF RECEIVERS, § 770 (3d ed. 1959) ("Clark on Receivers"), which
provides that "[s]ince the court has authority to authorize a receiver to collect assets of a
corporation, it has the further authority to authorize the receiver to sue to collect the
assets of the corporation.  It naturally follows, as a necessary corollary of the foregoing,
that the receiver has the power, when so authorized by the court, to compromise claims
either for or against the receivership and whether in suit or not in suit."

Receivers § 655 ("The only justification for the compromise of claims is that it is done for the best interests of the receivership and the estate under the control and possession of the court.").[7]

Pursuant to this legal standard, the Receiver respectfully submits that the Settlement Agreement is in the best interests of the receivership estate and the victims of the Wextrust fraud.  The Settlement Agreement is the result of arms-length negotiations between the parties and is consistent with similar agreements approved in other SEC enforcement actions.  It also provides for an immediate cash payment to the estate to be used in future distributions to victims.

The Receiver considered a number of significant factors in determining whether to agree to the terms of the Settlement Agreement, in close consultation with his legal advisors and the SEC.  First, the Receiver considered the risks associated with litigating its claims.  HPM would have colorable legal defenses if the case were brought to trial. Although the Receiver is confident that the Receiver would prevail, the Receiver took account of the litigation risk in proceeding with the claims.

---

[7]     *See also* Order Approving Plan of Distribution (Dkt. No. 428); Clark on Receivers § 770 ("The court appointing a receiver must use its discretion in determining whether it is for the best interests of the estate that the receiver be authorized to compromise a claim, and when the appointing court has not abused its discretion in giving instructions to the receiver, its orders will not be disturbed or reviewed in the appellate court."); *SEC v. Learn Waterhouse, Inc.*, No. 04-CV-2037, 2008 U.S. Dist. LEXIS 45825, at *5-6 (S.D. Cal. June 11, 2008) (approving settlement after a finding that it was in the best interests of the receivership estate and was fair and reasonable); *Davis v. Lifetime Capital*, No. 3:04CV0059, 2006 U.S. Dist. LEXIS 15727, at *4 (S.D. Ohio Apr. 4, 2006) (same); *SEC v. Credit Bancorp, Ltd.*, No. 99-CV-11395, 2002 U.S. Dist. LEXIS 14033, at *17 (S.D.N.Y. July 31, 2002) (finding that the receiver properly determined that benefit of settlement to estate outweighed the likely benefit from a legal challenge to validity of liens); *SEC v. Capital Consultants, LLC*, No. 00-1290, 2002 U.S. Dist. LEXIS 6765, at *6-7 (D. Or. Mar. 8, 2002) (approving settlement as being fair and equitable and in the best interests of the receivership estate).

Second, the ultimate determination of the value of the Receiver's claims following a trial on the merits could vary significantly, depending upon the prevailing legal theory, the fact finder's view of causation, relative apportionment of losses between HPM and other alleged tortfeasors, and other factors.

Third, litigation would likely require the expenditure of substantial receivership resources, with no guarantee of a recovery.  In contrast, HPM has access to malpractice insurance in an amount sufficient to fund protracted litigation through trial and appeal.[8] Further, the amount available for recovery from malpractice insurance proceeds, should the Receiver ultimately prevail in litigation, would be reduced by the amount of defense fees and costs expended.

Fourth, in considering settlement, the Receiver analyzed confidential financial performance data provided by HPM to the Receiver on an agreed, confidential basis,  and found the $900,000 settlement figure to be reasonable with respect to the firm's ability to pay.  (*See* Mahoney Decl. Exh. B.)

Based on these and other factors, and in consultation with his advisors and the SEC, the Receiver contends that the settlement amount constitutes a fair value of potential liability for HPM and collectability by the Receiver given the applicable claims, defenses, and risks of litigation.

---

[8]     The remaining amount in HPM's malpractice insurance policy has been provided to the Court under seal in the Declaration of Reeves Mahoney in Support of the Receiver's Motion for an Order Approving the Settlement Agreement with Poole Mahoney P.C. ("Mahoney Decl."), sworn to April 9, 2012.

## II.     The Settlement Agreement Does Not Implicate the Concerns Raised By the Court In Connection with the Original Much Shelist Settlement

In denying the Receiver's earlier proposed settlement with Much Shelist, the Court identified a number of concerns that should guide further negotiations with that firm and future claims against third parties.  Notably, the Court indicated that it had reservations about the possible additional litigation costs posed by the claim assignment structure of the Much Shelist settlement, the fact that Much Shelist was not contributing any of its own funds – let alone disgorging the fees it received during its representation of Wextrust – and the fact that Much Shelist appeared to have sufficient income to contribute a significant portion of the settlement amount.  (*See* Dkt. No. 704.)  The Receiver respectfully submits that none of these considerations should preclude the proposed settlement with HPM.

First, the Settlement Agreement provides for an immediate, straightforward cash payment to the receivership, and forecloses the possibility of costly future litigation. Second, the settlement amount equates to more than three times the total amount of fees received by HPM from its representation of the Wextrust Entities and Affiliates.  Third, HPM has provided financial information and representations supporting its claim that the settlement is reasonable in light of the firm's financial performance and ability to pay. (*See* Mahoney Decl. Exh. B.)

Based on the foregoing, the Receiver submits that the Court should not have the same reservations with the settlement with HPM under consideration as it did with the earlier proposal to settle the Receiver's claims against Much Shelist.

**III.     This Court Has Broad Authority to Enter a Bar Order in the Exercise of its Equitable Discretion**

As discussed above, the Settlement Agreement is conditioned on this Court's entry of a bar order prohibiting the prosecution of claims by individual Wextrust investors and creditors and other third parties relating to HPM's representation of Wextrust.  Entry of a bar order here is within the Court's broad power to administer the receivership, and courts have issued bar orders in connection with settlements proposed by equity receivers on several prior occasions.  For example, a similar bar order was approved by the court with the same concept and structure used by the Receiver in reaching a similar settlement in *SEC v. Parish*.[9]  In that recent case, the court approved a bar order imposing an injunction against both the continuation of pending suits and the filing of future suits by investors against a wealth management company.

In addition, in *CFTC v. Equity Fin. Group*, No. 04-Civ-1512, 2007 WL 2139399 (D.N.J. July 23, 2007), the court approved a settlement between an equity receiver and a firm retained by receivership entities to perform accounting services, and entered a bar order after finding that "the Receiver established th[e] settlement is in the best interest of the Receivership estate, and that federal law and public policy favor the entry of the Bar Order to facilitate settlement of th[e] matter."  *Id.* at *2.  The Court also found that the bar order would not prejudice investors because of the difficulties investors would have to bring claims directly against the settling defendant.  *Id.*; *see also SEC v. Capital Consultants, LLC*, No. 00-Civ-1290, 2002 WL 31470399 (D. Or. Mar. 8, 2002) (approving settlement and entering bar order); *Gordon v. Dadante*, 336 Fed. Appx. 540

---

[9]     *SEC v. Parish*, No. 07-CV-00919, 2010 U.S. Dist. LEXIS 11786 (D. S.C. Feb. 10, 2010) (approving settlement agreement and injunctive relief).

(6th Cir. Ohio 2009) (same); *Harmelin v. Man Fin., Inc.*, No. 06-Civ-1944, 2007 WL 4571021 (E.D. Pa. Dec. 28, 2007) (same).

The Receiver respectfully submits that the proposed settlement and related termination of all issues and claims regarding HPM's potential liability is fundamentally fair and in the best interests of all concerned.  All investors will benefit from the proposed settlement.  Not only does it provide for final liquidation of the Receiver's claims against HPM, it provides for an orderly and effective way to administer any monies ultimately paid by the Insurers for the benefit of all investors and creditors without interference by competing claimants.  The Settlement Agreement thus provides for the possibility of maximum return for *all* Wextrust victims, and realizes efficiencies and economies of scale.

The bar order is ancillary relief in furtherance of this Court's equitable jurisdiction.  The Court's authority to administer this receivership and determine appropriate ancillary relief is broad.  "It is a recognized principle of law that the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership."  *SEC v. Great White Marine & Recreation, Inc.*, 428 F.3d 553, 556 (5th Cir. 2005) (quoting *SEC v. Lincoln Thrift Ass'n*, 577 F.2d 600, 606 (9th Cir. 1978)); *SEC v. Safety Fin. Service, Inc.*, 674 F.2d 368, 372-73 (5th Cir. 1982); *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986) ("A district judge simply cannot effectively and successfully supervise a receivership and protect the interests of its beneficiaries absent broad discretionary power."); *United States v. Vanguard Inv. Co.*, 6 F.3d 222, 226 (4th Cir. 1993); *SEC v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992) ("This discretion derives

from the inherent powers of an equity court to fashion relief.").  The contemplated bar order falls within the ambit of such ancillary relief.[10]

Given the complex nature of receiverships and the multitude of parties and facts implicated in a receivership's administration, appellate courts have shown great deference to the district court's supervisory determinations.  *Hardy*, 803 F.2d at 1038 ("A district judge supervising an equity receivership faces a myriad of complicated problems in dealing with the various parties and issues involved in administering the receivership . . . We would be remiss were we to interfere with a district court's supervision of an equity receivership absent a clear abuse of discretion."); *Lincoln Thrift*, 577 F.2d at 608-09 ("[I]t would be a cumbersome situation at best were this Court to actively intervene in the operation of the receivership, a position which should be avoided."); *SEC v. Am. Capital Invs., Inc.*, 98 F.3d 1133, 1144 (9th Cir. 1996); *Vanguard*, 6. F.3d at 226; *Elliott*, 953 F.2d at 1569-70; *Safety Fin.*, 674 F.2d at 373; *SEC v. An-Car Oil Co.*, 604 F.2d 114, 119 (1st Cir. 1979).

---

[10]    The All Writs Act, 28 U.S.C. § 1651, also provides this Court authority to enter the contemplated bar order.  This Act authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  The Act allows for injunctions that are "calculated in [the court's] sound judgment to achieve the ends of justice entrusted to it."  *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1100 (11th Cir. 2004); *Miller v. Brooks*, 315 F.3d 417, 437 (4th Cir. 2003).  Courts have ruled that the All Writs Act authorizes injunctions by district courts to prevent the frustration of the terms of settlement agreements.  *See, e.g.,* *Miller*, 314 F.3d at 438-39 (confirming the district court's authority under the All Writs Act to issue an injunction in order to prevent ongoing litigation of matters resolved by a settlement agreement and "direct frustration of the district court's Settlement Approval Order"; *Baldwin-United Corp.*, 770 F.2d 328, 337 (2d Cir. 1985) (affirming the district court's injunction barring future parties from "seeking recovery of money to be paid to the plaintiffs").

Finally, a significant benefit and "primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *Hardy*, 803 F.2d at 1038; *see also Vanguard*, 6 F.3d at 226 (acknowledging the district court's broad discretion in supervising an equity receivership and affirming the trial court's denial of certain remedies and claims in favor of a more equitable result as to all investors); *SEC v. Wencke*, 783 F.2d 829, 837 n.9 (9th Cir.1986); *First Empire Bank-New York v. FDIC*, 572 F.2d 1361, 1368 (9th Cir. 1978); *Safety Fin.*, 674 F.2d at 373.

Wextrust victims will have an opportunity to consider and be heard on this motion, and object to the terms of the Settlement Agreement.  In addition, based on the fact that the Wextrust scheme collapsed more than three years ago, the Receiver is unaware of any pending actions that could be brought by investors against HPM, and the fact that contemplated investor actions would be more difficult and potentially barred by the statute of limitations, it is unlikely that investors would be prejudiced by entry of a bar order.

Notably, investors likely would not have standing to bring breach of contract or breach of duty claims against HPM because they do not have attorney-client relationships with HPM.  The investors likely would be limited to asserting claims for violations of securities laws, which are difficult to prosecute and have been significantly narrowed. For example, in *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148 (2008), the Supreme Court confirmed that there is no private right of action for aiding and abetting a violation of Section 10(b) of the Securities Exchange Act of 1934. Accordingly, an investor would have to prove, among other things, that HPM was a

primary actor engaged in securities fraud.  In light of these issues, investors are unlikely to obtain a greater recovery from HPM than that obtained by the Receiver and reflected in the Settlement Agreement.  Finally, HPM has insisted that as a requirement for any business resolution of this dispute, all claims and potential claims be resolved in any settlement.  Under all of the circumstances presented, the Receiver agrees that this is a reasonable condition of settlement.

The Receiver, in consideration of the above equitable principles, respectfully submits that granting the requested bar order is within the authority of this Court and would lead to a result that is in the best interests of all Wextrust victims.  Without such an order, the settlement with HPM will be null and void, and the Receiver would be left to pursue claims separately, which would be costly and inefficient.

## CONCLUSION

For the foregoing reasons, the Receiver respectfully requests that the Court enter an order, substantially in the form submitted herewith, granting the relief requested, approving the Settlement Agreement, and providing such other relief as the Court deems appropriate.

Dated: May 14, 2012

s/ Mia L. Havel_____
Mia Havel, *pro hac vice*
Jonathan W. Ware, *pro hac vice*
FRESHFIELDS BRUCKHAUS DERINGER LLP
701 Pennsylvania Avenue NW
Washington, D.C. 20004
Tel. (202) 777-4500
Fax (202) 777-4555

*Attorneys for Receiver*

Of Counsel:
John K. Warren

## CERTIFICATE OF SERVICE

The undersigned, an attorney, states that I am one of the attorneys for Timothy J. Coleman, Receiver, in this matter and do hereby certify that on May 14, 2012, I directed the service of a true and correct copy of each of the following documents upon the following individuals in the manner so described:

**Via First Class Mail**
Joseph Shereshevsky,
Registry No. 35857-054
c/o GEO Group
Queens Private Correctional Facility
182-22 150th Avenue
Jamaica, NY 11413
Pro Se Defendant

**Via ECF Notification & Electronic Mail**
Christopher A. Wadley, Esq.
Attorney for non-party Westport Insurance Corporation

**Via ECF Notification & Electronic Mail**
Charles F. Morrissey, Esq.
Attorney for non-party Liberty Mutual Insurance Corporation

**Via ECF Notification & Electronic Mail**
Alexander M. Vasilescu, Esq.
Andrew M. Calamari, Esq.
Steven G. Rawlings, Esq.
Alistaire Bambach, Esq.
Neal R. Jacobson, Esq.
Philip Moustakis, Esq.
Danielle Sallah, Esq.
Attorneys for Plaintiff SEC

**Via ECF Notification & Electronic Mail**
Barry S. Pollack, Esq.
Joshua L. Solomon, Esq.
Attorneys for non-party G&H Partners AG

**Via ECF Notification & Electronic Mail**
Martin Siegel, Esq.
Attorney for non-party Int'l Consortium of Wextrust Creditors

**Via ECF Notification & Electronic Mail**
Paul A. Levine, Esq.
Attorney for non-party Key Equipment Finance, Inc.

**Via ECF Notification & Electronic Mail**
Harris Kay, Esq.
Marc X. LoPresti, Esq.
Attorneys for various non-party investors

**Via ECF Notification & Electronic Mail**
Ethan Holtz, Esq.
Edward P. Gilbert, Esq.
Attorneys for non-party RAIT Partnership

**Via ECF Notification & Electronic Mail**
Francesca Morris, Esq.
Attorney for non-parties Ticor Title Insurance Co. and Heritage Community Bank

**Via ECF Notification & Electronic Mail**
John M. Bradham, Esq.
Peter B. Katzman, Esq.
Attorneys for non-parties Space Park AIM and ISSB Partnerships

**Via ECF Notification & Electronic Mail**
Beth L. Kaufman, Esq.
Attorney for non-party Lawrence Costa

**<u>Via ECF Notification & Electronic Mail</u>**
Barry S. Zone, Esq.
Jason Canales, Esq.
Attorneys for Defendant Steven Byers

**<u>Via ECF Notification & Electronic Mail</u>**
Michael Fred Bachner, Esq.
Attorney for Relief Defendant Elka
Shereshevsky

**<u>Via ECF Notification & Electronic Mail</u>**
Philip A. Byler, Esq.
Andrew T. Miltenberg, Esq.
Ira S. Nesenoff, Esq.
James B. Daniels, Esq.
Attorneys for non-party Broadway Bank

**<u>Via ECF Notification & Electronic Mail</u>**
Shalom Jacob, Esq.
Shmuel Vasser, Esq.
Attorneys for non-party Int'l Ad-Hoc
Committee of Wextrust Creditors

**<u>Via ECF Notification & Electronic Mail</u>**
Emily S. Alexander, Esq.
Attorney for non-party Martin Malek

**<u>Via ECF Notification & Electronic Mail</u>**
Elizabeth P. Gray, Esq.
Attorney for non-party Gerald Jaffe

**<u>Via ECF Notification & Electronic Mail</u>**
John P. Doherty, Esq.
Attorney for non-party Wells Fargo Bank
N.A.

**<u>Via ECF Notification & Electronic Mail</u>**
Jeffrey L. Schwartz, Esq.
John P. Amato, Esq.
Stephen W. Ragland, Esq.
Clarence A. Wilbon, Esq.
Attorneys for non-party First Tennessee
Bank National Association

**<u>Via ECF Notification & Electronic Mail</u>**
Alan E. Marder, Esq.
Attorney for non-parties Nashville
Warehouse Partners and Southeast
Warehouse Partners

**<u>Via ECF Notification & Electronic Mail</u>**
Edward F. Malone, Esq.
George R. Mesires, Esq.
Attorneys for non-parties Barrington and
Hinsdale Banks

**<u>Via ECF Notification & Electronic Mail</u>**
Susan F. Balaschak, Esq.
Keith N. Costa, Esq.
Randal S. Mashburn, Esq.
John H. Rowland, Esq.
Attorneys for non-party Regions Bank

**<u>Via ECF Notification & Electronic Mail</u>**
Louis Orbach, Esq.
Charles J. Sullivan, Esq.
Amy Marie Culver, Esq.
Attorneys for non-party TCF National
Bank

**<u>Via ECF Notification & Electronic Mail</u>**
David B. Grantz, Esq.
Scott T. McCleary, Esq.
Attorneys for non-party Bank of America

**<u>Via ECF Notification & Electronic Mail</u>**
Adam W. Downs, Esq.
Gerard P. Brady, Esq.
Attorneys for non-party Erin Construction
& Development Co., Inc.

**<u>Via ECF Notification & Electronic Mail</u>**
Alexander S. Lorenzo, Esq.
Attorney for non-party LNR Partners, Inc.


<u>s/ Jonathan W. Ware</u> _____