**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                              Plaintiff,<br><br>    - against -<br><br>STEVEN BYERS, JOSEPH SHERESHEVSKY, WEXTRUST CAPITAL, LLC, WEXTRUST EQUITY PARTNERS, LLC, WEXTRUST DEVELOPMENT GROUP, LLC, WEXTRUST SECURITIES, LLC, and AXELA HOSPITALITY, LLC,<br><br>                              Defendants,<br><br>    - and -<br><br>ELKA SHERESHEVSKY,<br><br>                              Relief Defendant. | No. 08 Civ. 7104 (DC)<br><br>ECF Case |

**MEMORANDUM OF LAW IN SUPPORT OF RECEIVER'S MOTION FOR AN ORDER APPROVING SETTLEMENT AGREEMENT WITH MUCH SHELIST PC, WESTPORT INSURANCE CORPORATION <u>AND LIBERTY MUTUAL INSURANCE COMPANY</u>**

 

Randy Paar
Kenneth H. Frenchman
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
1633 Broadway
New York, NY  10019
Tel. (212) 506-1700
Fax (212) 506-1800

May 14, 2012                      *Attorneys for Receiver*

# TABLE OF CONTENTS

**Page**

**PRELIMINARY STATEMENT ..........1**

**FACTUAL BACKGROUND..........2**

I. The Receiver's Investigation Of Claims Against Third Parties..........2

II. Investigation Of Claims Against Much Shelist..........3

III. The SEC's Administrative Action..........4

IV. Settlement Of Wextrust's Claims Against The Much Shelist Parties..........5

V. The Settlement Agreement..........6

**APPLICABLE LEGAL STANDARDS AND DISCUSSION..........7**

I. The Settlement Agreement Should Be Approved..........7

II. This Court Has Broad Equitable Authority To Extend The Bar Order And Tailor Other Appropriate Relief To The Circumstances Of This Case..........9

**CONCLUSION..........13**

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Baldwin-United Corp.*,
  770 F.2d 328 (2d Cir. 1985) ........................................................................................................10

*Davis v. Lifetime Capital*,
  No. 3:04CV0059, 2006 U.S. Dist. LEXIS 15727 (S.D. Ohio Apr. 4, 2006) .............................8

*First Empire Bank-New York v. FDIC*,
  572 F.2d 1361 (9th Cir. 1978) ....................................................................................................11

*Klay v. United Healthgroup, Inc.*,
  376 F.3d 1092 (11th Cir. 2004) ..................................................................................................10

*Miller v. Brooks*,
  315 F.3d 417 (4th Cir. 2003) ......................................................................................................10

*Nettleton v. Stogsdill*,
  899 N.E.2d 1252 (Ill. App. Ct. 2008)...........................................................................................3

*Scholes v. Stone, McGuire & Benjamin*,
  821 F. Supp. 533 (N.D. Ill. 1993) ................................................................................................4

*Scholes v. Stone, McGuire, and Benjamin*,
  786 F. Supp. 1385 (N.D. Ill. 1992) ..............................................................................................3

*SEC v. An-Car Oil Co.*,
  604 F.2d 114 (1st Cir. 1979).......................................................................................................11

*SEC v. Capital Consultants, LLC*,
  No. 00-1290-KI, 2002 U.S. Dist. LEXIS 6765 (D. Or. Mar. 8, 2002) ......................................8

*SEC v. Credit Bancorp, Ltd.*,
  No. 99-CV-11395, 2001 U.S. Dist. LEXIS 21717 (S.D.N.Y. Dec. 20, 2001) ...........................7

*SEC v. Credit Bancorp, Ltd.*,
  No. 99-CV-11395, 2002 U.S. Dist. LEXIS 14033 (S.D.N.Y. July 31, 2002)............................8

*SEC v. Elliott*,
  953 F.2d 1560 (11th Cir. 1992) ........................................................................................... 10, 11

*SEC v. Great White Marine & Recreation, Inc.*,
  428 F.3d 553 (5th Cir. 2005) ......................................................................................................10

*SEC v. Hardy*,
  803 F.2d 1034 (9th Cir. 1986) ............................................................................................ 10, 11

*SEC v. Learn Waterhouse, Inc.*,
  No. 04-CV-2037, 2008 U.S. Dist. LEXIS 45825 (S.D. Cal. June 11, 2008) ............................8

*SEC v. Lincoln Thrift Ass'n*,
  577 F.2d 600 (9th Cir. 1978) .................................................................................... 10, 11

*SEC v. Parish*,
  No. 07-00919, 2010 U.S. Dist. LEXIS 11786 (D.S.C. Feb. 10, 2010) ......................................9

*SEC v. Safety Fin. Service, Inc.*,
  674 F.2d 368 (5th Cir. 1982) ...................................................................................... 10, 11

*SEC v. Wencke*,
  783 F.2d 829 (9th Cir.1986) ................................................................................................11

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148 (2008) ..................................12

*United States v. Vanguard Inv. Co.*,
  6. F.3d 222 (4th Cir. 1993) ......................................................................................... 10, 11

*Wendt v. Handler, Thayer & Duggan, LLC*,
  613 F. Supp. 2d 1021 (N.D. Ill. 2009) ..................................................................................3

**STATUTES**

28 U.S.C. § 1367 .............................................................................................................................7

28 U.S.C. § 1651 ...........................................................................................................................10

**OTHER AUTHORITIES**

United States Securities and Exchange Commission, BILLING INSTRUCTIONS FOR RECEIVERS IN
  CIVIL ACTIONS COMMENCED BY THE U.S. SECURITIES AND EXCHANGE COMMISSION, 1, 7
  (2008) ...................................................................................................................................3

**TREATISES**

3 Ralph Ewing Clark, A TREATISE ON THE LAW AND PRACTICE OF RECEIVERS
  § 770 (3d ed. 1959) ..........................................................................................................7, 8

Timothy J. Coleman (the "Receiver"), Receiver for Wextrust Capital, LLC and its related entities (collectively, the "Wextrust Entities and Affiliates"), respectfully submits this memorandum of law in support of his motion for an order approving the Settlement Agreement and Release (the "Settlement Agreement") entered into by the Receiver on the one hand, and Much Shelist PC ("Much Shelist"), Westport Insurance Corporation ("Westport") and Liberty Mutual Insurance Company ("Liberty" and together with Much Shelist and Westport, the "Much Shelist Parties") on the other (collectively, the "Parties").[1]  For the reasons set forth below, the Receiver respectfully requests that the Court approve the Settlement Agreement and enter an order substantially in the form of the proposed order submitted herewith.

## PRELIMINARY STATEMENT

Much Shelist is a law firm based in Chicago, Illinois.  It represented the Wextrust Entities and Affiliates prior to the commencement of this case.  Based on an investigation of Much Shelist's representation of Wextrust, the Receiver has determined that the receivership estate has valid claims against Much Shelist for breach of its professional obligations.

On April 11, 2011, the Receiver reached a settlement with Much Shelist.  The settlement provided for an agreement as to a $13 million settlement amount.  As a "non-recourse" settlement, it also provided that Much Shelist itself would have no payment obligation and that rather, through an assignment, the Receiver would pursue the claim against Westport and Liberty, Much Shelist's insurers, who refused at that time to participate in the settlement.

In an Order dated August 24, 2011, this Court denied the Receiver's motion to approve the April 11, 2011 settlement agreement with Much Shelist.  Among the reasons for the denial

---

[1]   A true and correct copy of the fully-executed Settlement Agreement is attached as **Exhibit A** to the Declaration of Randy Paar in Support of the Receiver's Motion for an Order Approving the Settlement Agreement with the Much Shelist Parties ("Paar Decl."), sworn to May 14, 2012.

stated by the Court was the fact that Much Shelist was given a full release but was not required to make any payment itself. Moreover, while Much Shelist was assigning its claims against its insurers to the Receiver, the receivership estate would receive no guaranteed payment whatsoever and was required to litigate with Liberty and Westport to obtain any recovery.

In light of the Court's August 24 Order, the Court subsequently referred the Parties to Magistrate Judge Katz for mediation. The Parties engaged in mediation and Judge Katz spent significant time with the Parties in subsequent negotiations in order to arrive at a settlement that addressed the Court's concerns. The Parties – and Much Shelist's insurers – have now reached an agreement. As reflected in the Settlement Agreement, in exchange for a full release, this settlement requires the Much Shelist Parties to pay the Receiver $7 million immediately, including $1 million to be paid directly by Much Shelist itself.

As described in greater detail below, after considering the Court's concerns, the merits of the claim against the Much Shelist Parties, the costs of pursuing such claims, the risks of recovery, and the delay that further litigation would cause, on the advice of his advisors and with the approval of the SEC, the Receiver has determined that the present Settlement Agreement is in the best interests of the receivership estate. Accordingly, the Receiver respectfully requests that the Court approve the Settlement Agreement.

## FACTUAL BACKGROUND

### I.  The Receiver's Investigation Of Claims Against Third Parties

On August 11, 2008, the Court entered the first Order Appointing Temporary Receiver (Dkt. No. 2) in this matter, which was subsequently amended on September 11, 2008 (Dkt. No. 36) (the "Receiver Order"). Pursuant to the Receiver Order, the Receiver is empowered to "investigate, prosecute, defend, intervene in, and otherwise participate in, compromise, and

adjust actions . . . as [he] believes in his sole discretion advisable or proper to collect, conserve, or otherwise recover assets" of the Wextrust Entities and Affiliates.  (Receiver Order at 8.)

Since his appointment, the Receiver has investigated several claims against professional firms in connection with services they provided to the Wextrust Entities and Affiliates.  In view of these considerations, the Receiver is obligated to determine whether the pursuit of claims against third parties would be likely to produce a net economic benefit to the estate.[2]  Accordingly, throughout this case, the Receiver has evaluated the merits and net benefit of such claims in consultation with his legal advisors and the SEC.

## II.   Investigation Of Claims Against Much Shelist

The Receiver and his counsel began investigating claims against Much Shelist early in the receivership, focusing their attention on possible actions for negligence grounded in professional malpractice.  To prevail on an action for legal malpractice, a plaintiff must prove the following elements: (1) the existence of an attorney-client relationship; (2) a negligent act or omission constituting a breach of that duty; (3) proximate cause establishing that but for the attorney's negligence, the plaintiff would not have suffered an injury; and (4) damages.  *See, e.g.*, *Wendt v. Ahndler, Thayer & Duggan, LLC*, 613 F. Supp. 2d 1021, 1034 (N.D. Ill. 2009); *Nettleton v. Stogsdill*, 899 N.E.2d 1252, 1257 (Ill. App. Ct. 2008).

The Receiver stands in the shoes of the Wextrust Entities and Affiliates for purposes of pursuing an action for professional malpractice against Much Shelist.[3]  The Receiver's claims

---

[2]   *See* United States Securities and Exchange Commission, BILLING INSTRUCTIONS FOR RECEIVERS IN CIVIL ACTIONS COMMENCED BY THE U.S. SECURITIES AND EXCHANGE COMMISSION, 1, 7 (2008).

[3]   *Scholes v. Stone, McGuire, and Benjamin*, 786 F. Supp. 1385, 1392-93 (N.D. Ill. 1992) ("*Stone I*") (holding that a receiver had standing to bring legal malpractice claims on behalf of partnerships that were part of the receivership estate because the partnerships were clients of the law firms, to whom the firms owed a duty).

arise out of, among other things, Much Shelist's actions in connection with the preparation of offering materials such as private placement memoranda for Wextrust and its legal advice concerning Wextrust's securities disclosures and reporting obligations. Much Shelist disputed the Receiver's claims and allegations, and contends that it has viable defenses available. The Settlement Agreement does not contain an admission of liability or wrongdoing by Much Shelist.

After an investigation of these claims and a preliminary discovery phase that included the production and analysis of voluminous documents and depositions of two Much Shelist attorneys, the Receiver made a demand on Much Shelist seeking substantial damages. This damages calculation was based on an analysis of the direct and consequential losses caused by Much Shelist's actions.[4]

### III. The SEC's Administrative Action

On February 2, 2011, the SEC filed a settled administrative action against a former Much Shelist partner, Don Hershman. The SEC alleged that Hershman, over the course of his representation of Wextrust, became aware of facts that he knew or should have known were material facts that were not disclosed to investors. Despite Hershman's alleged knowledge, however, the SEC found that Hershman did not advise that Wextrust disclose such material facts in its offering materials to investors. By virtue of this conduct, the SEC alleged that Hershman was a cause of Wextrust's violations of the Securities Act. Without admitting or denying the SEC's allegations, Hershman submitted a settlement offer to the SEC in which he consented to

---

[4] *See Scholes v. Stone, McGuire & Benjamin*, 821 F. Supp. 533, 537 (N.D. Ill. 1993) ("*Stone II*") (holding that a receiver could recover damages of losses of the funds invested in receivership entities and increased liabilities to trade creditors and others to the extent that the wrongful actions of the defendants resulted in the loss of such funds).

the entry of a cease and desist order and paid a disgorgement amount with prejudgment interest.[5] This amount was paid to the Receiver.

## IV.     Settlement Of Wextrust's Claims Against The Much Shelist Parties

Following the Receiver's investigation and the issuance of a demand letter to Much Shelist, the Parties engaged in negotiations to attempt to resolve the Wextrust Entities and Affiliates' claims.  Much Shelist initially represented that it was willing to settle the Receiver's claims, but that it did not have sufficient resources to fund a cash settlement in the proposed settlement amount, and that its Insurers were unwilling to fund a settlement at or near that amount.  In a further attempt to avoid litigation, the Receiver, Much Shelist, Westport, and Liberty participated in a voluntary, non-binding mediation in April 2011 to resolve the ongoing dispute.  Following the mediation, on April 11, 2011, the Receiver and Much Shelist entered into a settlement agreement subject to this Court's approval.  That settlement agreement did not contemplate any payment from Much Shelist and instead was an agreement as to amount and an assignment of the claim so that the Receiver could pursue Westport and Liberty for actual payment.

In an Order dated August 24, 2011, this Court denied the Receiver's motion to approve the settlement agreement with Much Shelist.  In denying the motion, the Court stated:

> As an initial matter, the proposed settlement requires no payment from Much Shelist and would bar any future claims by the Receiver or third parties, including Wextrust investors.  I am troubled by a proposal that would not require Much Shelist to pay even a nickel, while giving it the equivalent of a general release.

---

[5]     A true and correct copy of the settlement agreement is attached as **Exhibit B** to Paar Decl.  Hershman is no longer associated with Much Shelist.

- 5 -

8/24/11 Order at 3.  The Court went on to explain that while it appreciated "some benefits" of the agreement, the fact that it provided for "no money in hand" was clearly an additional concern.  *Id.* at 4.

Following the Court's denial of the initial settlement agreement with Much Shelist, by a Referral Order dated September 26, 2011, the Court referred the Parties to United States Magistrate Judge Theodore Katz to explore a resolution of their disputes in the context of a confidential mediation session.  To facilitate the settlement discussions, the Receiver responded to various information requests from Westport and Liberty, and made its outside accounting professionals available for questioning by Westport's and Liberty's consultants.  Much Shelist, Westport and Liberty also exchanged mediation statements and, on November 17, 2011, appeared before Judge Katz for a one-day mediation session.  While the parties did not reach an agreement during the mediation, they continued their involved discussions for months thereafter, with the assistance of Judge Katz.  Ultimately, in March 2012, the parties were able to reach an agreement in principle to settle the Receiver's claims against Much Shelist.

## V.     The Settlement Agreement

The Settlement Agreement incorporates the structure and some of the terms that were contained in the initial agreement and utilized in other SEC enforcement actions.  More importantly, the Receiver believes that the Settlement Agreement addresses the concerns raised by the Court in its rejection of the initial agreement by changing the structure of the settlement and enhancing the benefits to the receivership estate.  The Settlement Agreement still includes mutual releases and covenants not to sue.[6]  However, (1) both Liberty and Westport are now parties to the Settlement Agreement; (2) rather than an assignment of a claim to pursue money

---

[6]     The release covers potential claims by Much Shelist for a substantial amount of unpaid legal fees.

from Liberty and Westport, the insurers are now paying money directly to the Receiver; and (3) Much Shelist is contributing $1 million of its own funds to the settlement. Indeed, while in the initial settlement agreement Much Shelist agreed to assign its claims and rights to payment against the Insurers, valued at <u>up to</u> $13 million to the Receiver, this Settlement Agreement contemplates <u>actual</u> payment of $7 million (the "Settlement Amount"), of which $1 million is being paid by Much Shelist.

In consideration for the payment of the Settlement Amount by the Much Shelist Parties, the Receiver has agreed to release the Much Shelist Parties and to seek a bar order from this Court, substantially in the form of the proposed order submitted herewith. The bar order would enjoin the filing of or continued prosecution of claims by all third parties (including investors and creditors of the Wextrust Entities and Affiliates) against the Much Shelist Parties in connection with Much Shelist's role as counsel to Wextrust.

**APPLICABLE LEGAL STANDARDS AND DISCUSSION**

**I.      The Settlement Agreement Should Be Approved**

Disputes concerning property of any kind belonging to the Wextrust Entities and Affiliates are within this Court's jurisdiction. *See, e.g.*, 28 U.S.C. § 1367 (referring to the district court's supplemental jurisdiction in a receivership action). Thus, the Court has authority to approve the resolution of any such disputes. *See, e.g.*, *SEC v. Credit Bancorp, Ltd.*, No. 99-CV-11395, 2001 U.S. Dist. LEXIS 21717, at *6 (S.D.N.Y. Dec. 20, 2001).[7]

---

[7]     The court in *Credit Bancorp* cited 3 Ralph Ewing Clark, A TREATISE ON THE LAW AND PRACTICE OF RECEIVERS § 770 (3d ed. 1959) ("Clark on Receivers"), which provides that "[s]ince the court has authority to authorize a receiver to collect assets of a corporation, it has the further authority to authorize the receiver to sue to collect the assets of the corporation. It naturally follows, as a necessary corollary of the foregoing, that the receiver has the power, when

The threshold for approval of settlements by a court-appointed equity receiver is straightforward: the settlement must be in the best interests of the receivership. Clark on Receivers § 655 ("The only justification for the compromise of claims is that it is done for the best interests of the receivership and the estate under the control and possession of the court.").[8]

Pursuant to this legal standard, the Receiver respectfully submits that the Settlement Agreement is in the best interests of the receivership estate and the victims of the Wextrust fraud. The Settlement Agreement is the result of arms-length negotiations between the Parties and is consistent with similar agreements approved in other SEC enforcement actions. It also provides the most efficient and expeditious means to bring all of the pending disputes and issues between the Parties to a close.

Specifically, the agreement provides for a $7 million recovery for the receivership estate, which will be available to fund a distribution to victims. The Settlement Agreement addresses the concerns that the Court had when rejecting the initial agreement because, rather than the settlement being merely a step to collecting monies for victims, this Settlement Agreement will

---

so authorized by the court, to compromise claims either for or against the receivership and whether in suit or not in suit."

[8] *See also* this Court's Order Approving Plan of Distribution (Dkt. No. 428); Clark on Receivers § 770 ("The court appointing a receiver must use its discretion in determining whether it is for the best interests of the estate that the receiver be authorized to compromise a claim, and when the appointing court has not abused its discretion in giving instructions to the receiver, its orders will not be disturbed or reviewed in the appellate court."); *SEC v. Learn Waterhouse, Inc.*, No. 04-CV-2037, 2008 U.S. Dist. LEXIS 45825, at *5-6 (S.D. Cal. June 11, 2008) (approving settlement after a finding that it was in the best interests of the receivership estate and was fair and reasonable); *Davis v. Lifetime Capital*, No. 3:04CV0059, 2006 U.S. Dist. LEXIS 15727, at *4 (S.D. Ohio Apr. 4, 2006) (same); *SEC v. Credit Bancorp, Ltd.*, No. 99-CV-11395, 2002 U.S. Dist. LEXIS 14033, at *17 (S.D.N.Y. July 31, 2002) (finding that the receiver properly determined that benefit of settlement to estate outweighed the likely benefit from a legal challenge to validity of liens); *SEC v. Capital Consultants, LLC*, No. 00-1290-KI, 2002 U.S. Dist. LEXIS 6765, at *6-7 (D. Or. Mar. 8, 2002) (approving settlement as being fair and equitable and in the best interests of the receivership estate).

provide money in hand, including $1 million paid by Much Shelist itself. The Receiver respectfully submits that this Settlement Amount is in the best interest of the receivership estate and should be approved, when considering (1) the costs of litigation, (2) the defenses that Much Shelist has to the malpractice claims, (3) Much Shelist's likely inability to satisfy any significant judgment, and (4) the defenses that Westport and Liberty could raise with respect to their coverage obligation to Much Shelist.

## II. This Court Has Broad Equitable Authority To Extend The Bar Order And Tailor Other Appropriate Relief To The Circumstances Of This Case

As discussed above, the Settlement Agreement is conditioned on this Court's entry of a bar order prohibiting the prosecution of claims by individual Wextrust investors and creditors and other third parties relating to Much Shelist's representation of Wextrust. Such orders are not uncommon in SEC receivership cases. For example, a similar bar order was approved by the court with the same concept and structure used by the Receiver in reaching a similar settlement in *SEC v. Parish*.[9] In that recent case, the court approved a bar order imposing an injunction against both the continuation of pending suits and the filing of future suits by investors against a wealth management company.

The Receiver respectfully submits that the proposed settlement and related termination of all issues and claims regarding Much Shelist's potential liability is fundamentally fair and in the best interests of all concerned. All investors will benefit from the proposed settlement. Not only does it provide for final liquidation of the Receiver's claims against Much Shelist, it provides for an orderly and effective way to administer settlement monies for the benefit of all investors and creditors without interference by competing claimants. The Settlement Agreement thus provides

---

[9]   *SEC v. Parish*, No. 07-00919, 2010 U.S. Dist. LEXIS 11786 (D.S.C. Feb. 10, 2010) (approving settlement agreement and injunctive relief).

for the possibility of maximum return for *all* Wextrust victims, and realizes efficiencies and economies of scale.

The bar order is ancillary relief in furtherance of this Court's equitable jurisdiction and jurisdiction over this Receivership. The Court's authority to administer this Receivership and determine appropriate ancillary relief is broad. "It is a recognized principle of law that the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership." *SEC v. Great White Marine & Recreation, Inc.*, 428 F.3d 553, 556 (5th Cir. 2005) (quoting *SEC v. Lincoln Thrift Ass'n*, 577 F.2d 600, 606 (9th Cir. 1978)); *SEC v. Safety Fin. Service, Inc.*, 674 F.2d 368, 372-73 (5th Cir. 1982); *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986) ("A district judge simply cannot effectively and successfully supervise a receivership and protect the interests of its beneficiaries absent broad discretionary power."); *United States v. Vanguard Inv. Co.*, 6. F.3d 222, 226 (4th Cir. 1993); *SEC v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992) ("This discretion derives from the inherent powers of an equity court to fashion relief."). The contemplated bar order falls within the ambit of such ancillary relief.[10]

Given the complex nature of receiverships and the multitude of parties and facts

---

[10] The All Writs Act, 28 U.S.C. § 1651, also provides this Court authority to enter the contemplated bar order. This Act authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." The Act allows for injunctions that are "calculated in [the court's] sound judgment to achieve the ends of justice entrusted to it." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1100 (11th Cir. 2004); *Miller v. Brooks*, 315 F.3d 417, 437 (4th Cir. 2003). Courts have ruled that the All Writs Act authorizes injunctions by district courts to prevent the frustration of the terms of settlement agreements. *See, e.g.*, *Miller*, 314 F.3d at 438-39 (confirming the district court's authority under the All Writs Act to issue an injunction in order to prevent ongoing litigation of matters resolved by a settlement agreement and "direct frustration of the district court's Settlement Approval Order"; *Baldwin-United Corp.*, 770 F.2d 328, 337 (2d Cir. 1985) (affirming the district court's injunction barring future parties from "seeking recovery of money to be paid to the plaintiffs").

implicated in a receivership's administration, appellate courts have shown great deference to the district court's supervisory determinations. *Hardy*, 803 F.2d at 1038 ("A district judge supervising an equity receivership faces a myriad of complicated problems in dealing with the various parties and issues involved in administering the receivership . . . . We would be remiss were we to interfere with a district court's supervision of an equity receivership absent a clear abuse of discretion."); *Lincoln Thrift*, 577 F.2d at 608-09 ("[I]t would be a cumbersome situation at best were this Court to actively intervene in the operation of the receivership, a position which should be avoided."); *SEC v. Am. Capital Invs., Inc.*, 98 F.3d 1133, 1144 (9th Cir. 1996); *Vanguard*, 6. F.3d at 226; *Elliott*, 953 F.2d at 1569-70; *Safety*, 674 F.2d at 373; *SEC v. An-Car Oil Co.*, 604 F.2d 114, 119 (1st Cir. 1979).

      A significant benefit and "primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *Hardy*, 803 F.2d at 1038; *see also Vanguard*, 6 F.3d at 226 (acknowledging the district court's broad discretion in supervising an equity receivership and affirming the trial court's denial of certain remedies and claims in favor of a more equitable result as to all investors); *SEC v. Wencke*, 783 F.2d 829, 837 n. 9 (9th Cir.1986); *First Empire Bank-New York v. FDIC*, 572 F.2d 1361, 1368 (9th Cir. 1978); *Safety Fin.*, 674 F.2d at 373.

      Wextrust victims will have an opportunity to consider and be heard on this motion, and object to the terms of the Settlement Agreement. The Receiver, however, in consideration of the above equitable principles, respectfully submits that the issuance of the requested bar order is within the authority of this Court and would effectuate a result that is in the best interests of all Wextrust victims. Without such an order, the settlement with the Much Shelist Parties would be

- 12 -

null and void, and the Receiver would be left to pursue claims separately, which would be costly and inefficient.

Based on the fact that the Wextrust scheme collapsed more than three years ago, the Receiver is unaware of any pending actions that could be brought by investors against Much Shelist. Based on the fact that contemplated investor actions would be more difficult and potentially barred by the statute of limitations, there is no reason to believe that investors would be prejudiced by entry of a bar order. Moreover, investors likely would not have standing to bring breach of contract or breach of duty claims against Much Shelist because they do not have attorney-client relationships with Much Shelist. The investors likely would be limited to asserting claims for violations of securities laws, which are difficult to prosecute and have been significantly narrowed. For example, in *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148 (2008), the Supreme Court confirmed that there is no private right of action for aiding and abetting a violation of Section 10(B) of the Securities Exchange Act of 1934. Accordingly, an investor would have to prove, among other things, that Much Shelist was a primary actor engaged in securities fraud. In light of these issues, investors are unlikely to obtain a greater recovery – or any recovery at all – from Much Shelist than that obtained by the Receiver and reflected in the Settlement Agreement.

## CONCLUSION

For the foregoing reasons, the Receiver respectfully requests that the Court enter an order, substantially in the form submitted herewith, granting the relief requested, approving the Settlement Agreement, and providing such other relief as the Court deems appropriate.

Dated: May 14, 2012

                                                        s/ Randy Paar_____
Randy Paar
Kenneth H. Frenchman
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
1633 Broadway
New York, NY  10019
Tel. (212) 506-1700
Fax (212) 506-1800

*Attorneys for Receiver*