**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SECURITIES AND EXCHANGE COMMISSION,

                        Plaintiff,

     - against -

STEVEN BYERS, JOSEPH SHERESHEVSKY,
WEXTRUST CAPITAL, LLC, WEXTRUST
EQUITY PARTNERS, LLC, WEXTRUST
DEVELOPMENT GROUP, LLC, WEXTRUST
SECURITIES, LLC, and AXELA HOSPITALITY,
LLC,

                        Defendants,

     - and -

ELKA SHERESHEVSKY,

                  Relief  Defendant.

No. 08 Civ. 7104 (DC)

ECF Case

**MUCH SHELIST PC'S MEMORANDUM OF LAW
IN SUPPORT OF RECEIVER'S MOTION FOR
AN ORDER APPROVING SETTLEMENT AGREEMENT WITH
MUCH SHELIST PC, WESTPORT INSURANCE CORPORATION
AND LIBERTY MUTUAL INSURANCE COMPANY**

Howard S. Suskin
JENNER & BLOCK LLP
353 N. CLARK STREET
Chicago, IL  60654
Tel. (312) 923-2604
Fax (312) 840-7604

Paula E. Litt
SCHOPF & WEISS LLP
One S. Wacker Drive
Chicago, IL  60606
Tel. (312) 701-9317
Fax (312) 701-9335

June 20, 2012                    *Attorneys for Much Shelist PC*

Much Shelist PC ("Much Shelist), by its attorneys, respectfully submits this memorandum of law in support of the Receiver's Motion for an Order Approving the Settlement Agreement with Much Shelist and its insurance carriers.   Through the dedicated efforts of Magistrate Judge Theodore H. Katz, who presided over an in-person mediation and numerous follow-up sessions telephonically, the parties have reached a new settlement that will provide very substantial benefits to the Wextrust receivership - - including an immediate cash payment of $7,000,000, of which Much Shelist itself is paying out of pocket $1,000,000.     The settlement facilitated by Magistrate Judge Katz is fair and reasonable, and specifically addresses this Court's prior concerns about an earlier proposed settlement for which recovery by the Wextrust receivership would have been contingent on the success of future litigation against Much Shelist's insurance carriers.     For these reasons, and those set forth below, Much Shelist joins in the Receiver's motion seeking approval of the settlement and respectfully urges this Court to grant approval.

<u>Background and Defenses</u>

Much Shelist was founded as a law firm in Chicago in 1970.  The firm currently has approximately 85 attorneys and focuses on middle market clients.  Its values include an emphasis on client-focused work ethic; service; integrity and professional ethics; diversity; and social responsibility.  Much Shelist has a sterling reputation in the Chicago legal community and has never faced the type of claim presented by the Receiver here.

Much Shelist had the extreme misfortune to be retained by a client, Wextrust, that we now are informed was an entity used by Wextrust's principals to perpetuate a fraud against Wextrust's investors.  Throughout the time of its engagement, Much Shelist was unaware of the fraud, did not condone it, and did not knowingly facilitate it.  Just as investors evidently were

duped by Wextrust through its principals, Much Shelist too was misled.  We believe that it is undisputed, including by the Receiver and the SEC, that none of Much Shelist's attorneys were aware that Wextrust's principals were perpetuating a fraud.  Indeed, the Receiver's proposed claims against Much Shelist are grounded on theories of malpractice and negligence, not intentional or scienter-based misconduct.

Throughout the time that Much Shelist was retained by Wextrust, the two Much Shelist attorneys who worked primarily on the drafting of private-placement memoranda for Wextrust, Don Hershman and Leslee Cohen, consistently advised Wextrust to comply with all laws and regulations.  For example, when Ms. Cohen and Mr. Hershman learned that Wextrust was engaged in transactions that were not in accordance with what had been described in private-placement memoranda, they advised Wextrust that amendments should be made to the placement memoranda and that letters offering rescission should be sent to investors who already had subscribed.  Ms. Cohen and Mr. Hershman drafted the appropriate documents to effect their recommendations, and they were informed by Wextrust that the amendments and rescission letters had been transmitted to investors.  Similarly, when Mr. Hershman discovered in November 2007 that one of Wextrust's principals, Joseph Shereshevsky, had a previously undisclosed criminal conviction, he promptly informed Wextrust's Chief Financial Officer Tom Coorsh (who, to our knowledge, has not been accused of being involved in any wrongdoing).  Moreover, Mr. Hershman advised Mr. Coorsh that Mr. Shereshevsky should not be permitted to have a controlling role with the company.  In fact, Mr. Hershman had previously introduced Mr. Coorsh to Wextrust, which led to Mr. Coorsh being hired by Wextrust, as part of Mr. Hershman's recommendation that Wextrust upgrade its operations and compliance functions.

We understand that the Receiver would contend if this matter were litigated that Much Shelist should have done more, including withdrawing from the Wextrust representation upon discovery of Shereshevsky's conviction.  However, Mr. Hershman's good faith belief that he was carrying out his responsibilities to his client by reporting the previously undisclosed conviction to other senior officers at Wextrust and urging that Shereshevsky be removed from control raises substantial defenses to the Receiver's malpractice claim.

Much Shelist also has legal defenses to a potential malpractice claim, including proximate cause and in pari delicto.   Those defenses were described in submissions made by Much Shelist's primary-layer professional-liability insurance carrier, Westport Insurance Corporation, in connection with the parties' mediations, and presumably were considered in the Receiver's analysis of the risks of pursuing litigation and his decision to agree to a settlement. The defense of proximate cause relates to the point (discussed in further detail below) that the overwhelming amount of the funds raised by Wextrust was completed prior to November 2007, when the alleged negligence of Much Shelist is claimed to have occurred, and that Much Shelist cannot be held legally responsible for that prior fundraising.    The defense of in pari delicto relates to the point that even if the Receiver could prove that Much Shelist breached a duty it owed to the Wextrust Entities and that Much Shelist's alleged breach proximately caused them to sustain damages (all of which Much Shelist denies), his claim against Much Shelist would be barred because the fraud committed by Byers and Shereshevsky would be imputed as a matter of law to the Wextrust Entities and bar them from pursuing a negligence claim.   Given these defenses, the Receiver faces a considerable risk of a disappointing result - - or no recovery at all. Further, protracted litigation will cause both sides to incur substantial costs that could be better

applied to a reasonable settlement.  Accordingly, a global resolution of all outstanding claims as proposed here is in all parties' interests.

Prior Efforts At Settlement

The parties have been engaged in efforts to resolve this matter for two years.  In March 2010, the parties participated in a private JAMS mediation session with former California state court Judge Daniel Weinstein.  The mediation was attended by representatives of Much Shelist, the Receiver, Westport, and Much Shelist's first layer excess carrier, Liberty Mutual Insurance Company.

Following the mediation, Much Shelist requested that its insurers authorize a settlement in an amount and on terms acceptable to the Receiver and Much Shelist.  Despite Much Shelist's repeated demands, Westport offered only a small portion of its policy limits--substantially less than what was needed to fund the Receiver's demand.  As an excess insurer, Liberty asserted that it had no obligation to fund a settlement until Westport's policy limits were tendered.

Thereafter, the Receiver and Much Shelist engaged in further settlement negotiations and agreed to propose for the Court's approval a settlement in the amount of $13 million that would be recoverable solely from the insurers through an assignment of Much Shelist's rights under its insurance policies.  The Illinois Supreme Court has approved of settlements on such terms. *Guillen v. Potomac Ins. Co.*, 203 Ill. 2d 141, 158-65 (2003).

By Order filed August 24, 2011, following objections from seven Wextrust investors, the Court declined to accept the settlement and directed the parties to attempt to reach a new agreement.   The Court expressed several reservations regarding the previously proposed settlement, all of which have been addressed in the current proposed settlement.   The Court expressed concern about the contingent nature of the settlement and the costs and uncertainty of

further litigation to collect against Much Shelist's insurance carriers.  The Court also expressed concern that the previous proposal would not require Much Shelist to contribute any of its own funds.   Further, the Court expressed concern that the previously proposed settlement would have allowed Much Shelist to be reimbursed for its travel expenses in connection with the coverage litigation after Wextrust investors were paid in a successful pursuit of the insurance carriers. The Court concluded that the previous proposed settlement was not in the best interest of the receivership estate and denied the motion for approval without prejudice to renewal if the Receiver were able to negotiate more favorable terms.

After the Court's order, Much Shelist re-engaged its insurers and commenced negotiations with the Receiver's counsel to construct a settlement that would include the insurers' participation and provide for an immediate cash payment without contingencies for future litigation.   As a result of those negotiations, shared discovery, and a forensic accounting analysis, the Receiver adjusted his damages estimate significantly downward.   On November 17, 2011, the parties participated in a full day mediation session facilitated by Magistrate Judge Katz.   The parties were unable to reach a settlement at the in-person session, but Judge Katz continued thereafter to work with the parties via shuttle mediation sessions telephonically over the subsequent months.   Judge Katz's efforts ultimately resulted in the settlement proposal that is now before the Court.

<u>The Current Settlement Proposal Addresses The Court's Concerns</u>

Each of the concerns expressed by the Court in the August 24, 2011 Order have been addressed in the current settlement proposal.

First, the recovery is no longer contingent on an assignment of Much Shelist's rights against its insurers and the outcome of future litigation against the insurers.   Instead, the settlement provides for an immediate cash payment of $7,000,000 to the receivership estate.

Second, the settlement includes a direct out-of-pocket payment by Much Shelist of $1,000,000.   This out-of-pocket payment by Much Shelist is highly extraordinary, compared with what usually occurs in malpractice litigation, where a settlement is covered entirely by insurance.   Respectfully, Much Shelist believes that requiring it to make an out-of-pocket contribution is antithetical to the purpose of legal malpractice insurance coverage, for which the firm paid hundreds of thousands of dollars in premiums over the years.   Moreover, Much Shelist already is out-of-pocket on the more-than-$450,000 uncollectible receivable for work it performed but was not compensated.   Nonetheless, in deference to this Court's concerns, Much Shelist is agreeing to make its own out-of-pocket contribution of $1,000,0000 cash to facilitate the settlement if that is what it will take to achieve a global resolution acceptable to the Court.

Significantly, Much Shelist's $1,000,000 contribution to the settlement far exceeds the amount of fees that Much Shelist received after November 2007, when Mr. Hershman learned of the Shereshevsky conviction.   It also far exceeds the amount that the Receiver would be able to recover from Much Shelist if this settlement were not approved.   Under Illinois law, an attorney's alleged breach of fiduciary duty does not automatically lead to forfeiture of all compensation received; instead, courts look to apportion the amount of fees earned that related to the alleged breach. *See Clinton Imperial China, Inc. v. Lippert Mktg., Ltd.*, 377 Ill. App. 3d 474, 481-82 (1st Dist. 2007) (in determining whether an agent who has breached his fiduciary duties to the principal should forfeit right to compensation, the trial court may consider (1) the seriousness and timing of the violation, (2) the willfulness of the breach, (3) the potential for, or

- 6 -

actual harm to the principal, and (4) whether the agent completed a divisible portion of his contract duties before the breach occurred for which compensation can be determined); *Lurz v. Panek*, 172 Ill. App. 3d 915, 927 (2d Dist. 1988) ("[W]e do not believe [defendant attorney] should have to forfeit the entire fee. . . .  Rather, we agree with the trial court that the jury was capable of apportioning the contingent fee."); *U.S. v. Cancer Treatment Ctrs. of Am.*, 2005 WL 300414, at *2 (N.D. Ill. Feb. 4, 2005) ("salary forfeiture is limited to the period during which the breach occurs").  New York law is in accord.  *See Mar Oil, S.A. v. Morrissey*, 982 F.2d 830, 840 (2d Cir. 1993) ("[W]e reject [plaintiff's] contention that [defendant attorney] must be denied any fee whatever.  The fact that an attorney has breached his fiduciary duty to his client does not necessarily mean that he must forfeit fees for services he had already performed or would thereafter perform."); *See also In re Austrian and German Bank Holocaust Litig.*, 317 F.3d 91, 103 (2d Cir. 2003) ("Fee forfeiture is an equitable remedy that requires careful consideration of all the relevant circumstances."); *Musico v. Champion Credit Corp.*, 764 F.2d 102, 112-13 (2d Cir. 1985) (describing trend in New York law away from automatic full fee forfeiture, and holding that attorney fee forfeiture should be limited to those tasks in which the attorney engaged in misconduct).

The total amount of fees that Much Shelist received for work performed after November 2007 was only $139,777.   Under the proposed settlement, Much Shelist will contribute out-of-pocket an amount over seven times that figure.   Further, when combined with the over $450,000 uncollectable receivable for pre-November 2007 work that Much Shelist is foregoing as part of the settlement, Much Shelist's out-of-pocket contribution is over ten times the amount of fees received after November 2007.   Insofar as the Court believes that exacting a penalty against Much Shelist is an important component of a settlement, this settlement does that.

While we empathize with the plight of the two investors who have objected to the current settlement, we respectfully believe that their objections are misdirected.   The proposed settlement with Much Shelist will bring a substantial cash infusion of $7,000,000 into the receivership estate, far more than has been achieved from any other source to date.   This contribution will come from a law firm whose conduct is alleged to have been negligent, not intentional.   Further, the alleged negligence did not arise until shortly before Wextrust's operations were shut down, at a point when the vast majority of the funds already had been raised from investors and therefore cannot legally be the responsibility of Much Shelist.   Even if the Receiver were to prevail in his contention that Mr. Hershman committed malpractice by not taking a different course of action following discovery of Shereshevsky's conviction, a point with which Much Shelist disagrees, it is undisputed that the discovery of the conviction did not occur until November 2007.  By that time, the overwhelming bulk of the funds that Wextrust received already had been raised from investors.  Wextrust was shut down by the Government less than a year later, in early August 2008.  Much Shelist cannot be held responsible for damages that were incurred by Wextrust prior to November 2007.

After November 2007, the total amount of funds raised by Wextrust was less than $20 million, and we understand that a significant portion of those were recovered or otherwise do not constitute cognizable damages.  Indeed, a forensic accounting analysis performed in connection with the mediation demonstrated that of the funds raised by Wextrust after November 2007, approximately $12.8 million was used to purchase property and pay other expenses consistent with the terms of the private placement memoranda.  Thus, the $7 million settlement closely

approximates 100% of the difference between the amount raised after November 2007 and the money that so far has been traced to legitimate uses.[1]

The objectors also fail to address the factual and legal defenses available to Much Shelist which, if fully litigated, present a very substantial risk that the receivership estate might recover absolutely nothing from Much Shelist, let alone $7,000,000 or anything close to it. Under these circumstances, the objections of the two investors, which would thwart the settlement and the substantial benefit it offers to the receivership estate, should not be sustained.

<u>Conclusion</u>

The Receiver has acknowledged in his filings with the Court that he faces a number of defenses and litigation risks in this matter. Further, the Receiver has acknowledged that pursuing litigation against Much Shelist would be protracted and expensive. Much Shelist shares those concerns and believes that Judge Katz's mediated settlement that has been presented for this Court's approval, is in all parties' interests.

---

[1]    Of the remaining money, it is not possible to tell from the data produced to date the precise amount that was used for proper or improper purposes. The Receiver would, of course, bear the burden to prove the existence and amount of damages at trial. Nonetheless, it is clear based on the above that, even if successful at trial under the best of circumstances, the Receiver likely would not be able to recover any amount higher than the current settlement amount.

For the foregoing reasons, Much Shelist respectfully requests that the Court enter an order in the form submitted by the Receiver, granting the relief requested and approving the Settlement Agreement.

Dated: June 20, 2012

s/ Howard S. Suskin_____
Howard S. Suskin
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL  60654
Tel. (312) 923-2604
Fax (312) 840-7604

Paula E. Litt
SCHOPF & WEISS LLP
One S. Wacker Drive
Chicago, IL  60606
Tel. (312) 701-9317
Fax (312) 701-9335

*Attorneys for Much Shelist PC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, states that I am one of the attorneys for Much Shelist PC, in this matter and do hereby certify that on June 20, 2012, I directed the service of a true and correct copy of the following document upon the following individuals in the manner so described:  Memorandum of Much Shelist PC in Support of an Order Approving Settlement Agreement with Much Shelist PC, Westport Insurance Company and Liberty Mutual Insurance Corporation.

**<u>Via First Class Mail</u>**
Joseph Shereshevsky,
Registry No. 35857-054
c/o GEO Group
Queens Private Correctional Facility
182-22 150th Avenue
Jamaica, NY 11413
Pro Se Defendant

**<u>Via ECF Notification & Electronic Mail</u>**
Randy Paar
Kenneth H. Frenchman
Attorneys for Receiver

**<u>Via ECF Notification & Electronic Mail</u>**
Christopher A. Wadley, Esq.
Attorney for non-party Westport Insurance
Corporation

**<u>Via ECF Notification & Electronic Mail</u>**
Charles F. Morrissey, Esq.
Attorney for non-party Liberty Mutual
Insurance Corporation

**<u>Via ECF Notification & Electronic Mail</u>**
Alexander M. Vasilescu, Esq.
Andrew M. Calamari, Esq.
Steven G. Rawlings, Esq.
Alistaire Bambach, Esq.
Neal R. Jacobson, Esq.
Philip Moustakis, Esq.
Danielle Sallah, Esq.
Attorneys for Plaintiff SEC

**<u>Via ECF Notification & Electronic Mail</u>**
Barry S. Pollack, Esq.
Joshua L. Solomon, Esq.

**<u>Via ECF Notification & Electronic Mail</u>**
Martin Siegel, Esq.
Attorney for non-party Int'l Consortium of
Wextrust Creditors

**<u>Via ECF Notification & Electronic Mail</u>**
Paul A. Levine, Esq.
Attorney for non-party Key Equipment
Finance, Inc.

**<u>Via ECF Notification & Electronic Mail</u>**
Harris Kay, Esq.
Marc X. LoPresti, Esq.
Attorneys for various non-party investors

**<u>Via ECF Notification & Electronic Mail</u>**
Ethan Holtz, Esq.
Edward P. Gilbert, Esq.
Attorneys for non-party RAIT Partnership

**<u>Via ECF Notification & Electronic Mail</u>**
Francesca Morris, Esq.
Attorney for non-parties Ticor Title Insurance
Co. and Heritage Community Bank

**<u>Via ECF Notification & Electronic Mail</u>**
John M. Bradham, Esq.
Peter B. Katzman, Esq.
Attorneys for non-parties Space Park AIM and
ISSB Partnerships

**<u>Via ECF Notification & Electronic Mail</u>**
Beth L. Kaufman, Esq.
Attorney for non-party Lawrence Costa

Attorneys for non-party G&H Partners AG

**Via ECF Notification & Electronic Mail**
Barry S. Zone, Esq.
Jason Canales, Esq.
Attorneys for Defendant Steven Byers

**Via ECF Notification & Electronic Mail**
Michael Fred Bachner, Esq.
Attorney for Relief Defendant Elka
Shereshevsky

**Via ECF Notification & Electronic Mail**
Philip A. Byler, Esq.
Andrew T. Miltenberg, Esq.
Ira S. Nesenoff, Esq.
James B. Daniels, Esq.
Attorneys for non-party Broadway Bank

**Via ECF Notification & Electronic Mail**
Shalom Jacob, Esq.
Shmuel Vasser, Esq.
Attorneys for non-party Int'l Ad-Hoc
Committee of Wextrust Creditors

**Via ECF Notification & Electronic Mail**
Emily S. Alexander, Esq.
Attorney for non-party Martin Malek

**Via ECF Notification & Electronic Mail**
Elizabeth P. Gray, Esq.
Attorney for non-party Gerald Jaffe

**Via ECF Notification & Electronic Mail**
John P. Doherty, Esq.
Attorney for non-party Wells Fargo Bank N.A.

**Via ECF Notification & Electronic Mail**
Jeffrey L. Schwartz, Esq.
John P. Amato, Esq.
Stephen W. Ragland, Esq.
Clarence A. Wilbon, Esq.
Attorneys for non-party First Tennessee Bank
National Association

**Via ECF Notification & Electronic Mail**
Alan E. Marder, Esq.
Attorney for non-parties Nashville Warehouse
Partners and Southeast Warehouse Partners

**Via ECF Notification & Electronic Mail**
Edward F. Malone, Esq.
George R. Mesires, Esq.
Attorneys for non-parties Barrington and
Hinsdale Banks

**Via ECF Notification & Electronic Mail**
Susan F. Balaschak, Esq.
Keith N. Costa, Esq.
Randal S. Mashburn, Esq.
John H. Rowland, Esq.
Attorneys for non-party Regions Bank

**Via ECF Notification & Electronic Mail**
Louis Orbach, Esq.
Charles J. Sullivan, Esq.
Amy Marie Culver, Esq.
Attorneys for non-party TCF National Bank

**Via ECF Notification & Electronic Mail**
David B. Grantz, Esq.
Scott T. McCleary, Esq.
Attorneys for non-party Bank of America

**Via ECF Notification & Electronic Mail**
Adam W. Downs, Esq.
Gerard P. Brady, Esq.
Attorneys for non-party Erin Construction &
Development Co., Inc.

**Via ECF Notification & Electronic Mail**
Alexander S. Lorenzo, Esq.
Attorney for non-party LNR Partners, Inc.

**Via Electronic Mail**
Leslie K. Diamond

**Via Electronic Mail**
Vivian Orgel

s/ Howard S. Suskin_____