UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -x

SECURITIES AND EXCHANGE          :
COMMISSION,
                                 :

            Plaintiff,
                                 :

      - against -
                                 :                    **OPINION & ORDER**

STEVEN BYERS <u>et</u> <u>al.</u>,
                                 :                    08 Civ. 7104 (DC)

            Defendants.
                                 :

- - - - - - - - - - - - - - - - - -x

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #:_____           │
│ DATE FILED: 12/23/2014           │
└─────────────────────────────────┘
```

**APPEARANCES:**          (See last page)

**CHIN, District Judge:**

        In this securities fraud case brought by the Securities

and Exchange Commission (the "SEC") against Steven Byers, Joseph

Shereshevsky, and affiliated entities, before the Court are the

following applications:

        1.    Application of FTI Consulting, Inc. ("FTI"), in

its capacity as Secured Lender Trustee of the Dewey & LeBoeuf,

LLP ("Dewey") Secured Lender Trust, for fees and expenses of

$1,256,886.68 as requested in Dewey's Tenth Fee Application and

for payment of holdbacks of $3,446,019.10 (Dkt. No. 1048);

        2.    Application of Arent Fox LLP ("Arent Fox") for

payment of holdbacks of $33,216.50 (Dkt. No. 1049);

3.    Application of Badger Real Estate Advisors ("Badger") for the period July 1, 2012 through February 28, 2013 for $160,000 in fees (Dkt. No. 1055);

4.    Application of Deloitte Financial Advisory Services ("Deloitte") for the period January 1, 2013 through September 30, 2014 for fees and expenses of $55,720 (Dkt. No. 1047) and for payment of holdbacks of $735,245 (Dkt. No. 1051);

5.    Fifth Interim Joint Application of the Receiver Timothy J. Coleman and his counsel Freshfields Bruckhaus Deringer U.S. LLP ("Freshfields") for the period October 1, 2013 through August 31, 2014 for $844,591.75 in fees and $26,042.52 in expenses (Dkt. No. 1045) and for the payment of holdbacks of $882,781.72 (Dkt. No. 1052).

The applications are **GRANTED** in part and **DENIED** in part as set forth below.

## BACKGROUND

The facts and procedural history of this case are set forth in the Court's prior decisions and orders as well as in decisions of the Second Circuit. See, e.g., SEC v. Orgel, F. App'x 504 (2d Cir. 2010) (holding district court did not abuse its discretion in approving plan to distribute receivership assets on pro rata basis); SEC v. Malek, 397 F. App'x 711 (2d

Cir. 2010) (affirming district court's order approving distribution plan); SEC v. Byers, 609 F.3d 87 (2d Cir. 2010) (affirming district court's injunction barring non-parties from filing involuntary bankruptcy proceedings against defendants and upholding anti-litigation injunction); SEC v. Byers, 637 F. Supp. 2d 166 (S.D.N.Y. 2009) (approving distribution plan); SEC v. Byers, No. 08 Civ. 7104 (DC), Order filed Aug. 18, 2009 (Dkt. No. 439) (expressing concern over fees incurred by Receiver and Dewey, in light of uncertainty in recovering substantial assets); SEC v. Byers, No. 08 Civ. 7104 (DC), 2009 WL 1505674 (S.D.N.Y. May 29, 2009) (granting third application by Receiver and Dewey for fees and expenses); SEC v. Byers, 590 F. Supp. 2d 637 (S.D.N.Y. 2008) (approving fee applications, but substantially reducing Dewey's fees and imposing 20% holdback).  I summarize certain facts relevant to the pending applications.

A.   **The Applications**

     1.   **Dewey**

          From the filing of this case on August 11, 2008 through September 30, 2011, Dewey provided legal services to the Receiver.  (Dkt. No. 1048, ¶¶ 1, 7, 43).  Based on the first nine fee applications, Dewey was awarded $9,423,211.76 in fees, for the period from August 11, 2008 through October 31, 2009.  (See

id., ¶¶ 14, 34 & Ex. A (sum of fees awarded for first nine applications)).  Substantial amounts were held back from the first nine applications, totaling $3,446,019.10, including a 50% holdback on the Eighth and Ninth applications.  (See id. ¶¶ 38, 39 & Ex. A (sum of holdbacks for first nine applications)). Dewey made a Tenth Application for fees of $1,238,362.42, which I denied without prejudice.  (Id. ¶¶ 40-42 & Ex. A).  From July 1, 2010 through September 30, 2011, Dewey spent an additional $603,009 in time on the case and incurred an additional $35,412.91 in expenses which have not been billed.  On Dewey's behalf, FTI is waiving these unbilled amounts "[a]s a gesture of goodwill, given the nature of this case and the losses of the victims of the Ponzi scheme, and in further recognition of the public service nature of [Dewey]'s representation of the Receiver."  (Id. ¶ 43).

On May 28, 2012, Dewey filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York. (Id. ¶ 44).  FTI, as secured lender trustee, now seeks the holdbacks of $3,446,019.10 and, with respect to the Tenth Application, fees of $1,238,362.42 and costs of $24,524.26, for a total request at this time of $4,708,905.78.  Any award, of

-4-

course, would inure to the benefit of the Dewey bankruptcy estate and, in particular, creditors.  (12/18/14 Tr. 16).

### 2.  Arent Fox

Arent Fox made one fee application during the case, for $66,216.50 in fees and expenses of $1,916.83, covering the period from June 1, 2010 through May 31, 2011.  (Dkt. No. 1049, ¶¶ 3, 4, 6).  This engagement resulted when Mark Radke, Esq., withdrew from Dewey and joined Arent Fox.  (Id. ¶¶ 2, 7).  After Radke withdrew from Arent Fox on February 28, 2013, Arent Fox ceased its representation of the Receiver.  (Id. ¶ 7).  Apparently, Arent Fox provided additional services for the Receiver between June 1, 2011 and May 30, 2012, totaling some $6,413.50 in time, which it has waived.  (Id. ¶ 10).  It also previously wrote-off $767 in fees.  (Id.).  Arent Fox's fee application noted certain discounts, such as billing for non-working travel time at 50% of the standard rate and billing for "non-legal" services at $200 per hour, but no "public service" discount was provided.  (Id. ¶¶ 19, 27).

### 3.  Deloitte

Deloitte had previously made ten applications for fees and costs.  The first six applications were granted, and certain amounts were held back from the Seventh through Tenth applications as follows:

| Application | Amount Awarded | Amount Held Back |
|---|---|---|
| First | 80,242.49 | 0 |
| Second | 626,016.43 | 0 |
| Third | 965,481.40 | 0 |
| Fourth | 865,013.15 | 0 |
| Fifth | 877,561.38 | 0 |
| Sixth | 728,211.45 | 0 |
| Seventh | 242,932.26 | 238,437.50 |
| Eighth | 132,831.94 | 389,445.00 |
| Ninth | 82,547.50 | 82,547.50 |
| Tenth | 74,445.00 | 24,815.00 |

The total amount awarded to Deloitte for the first ten applications, covering the period from August 18, 2008 through December 31, 2012, was $4,674,283.00; some $735,245.00 was held back. (Dkt. 1047-1, ¶¶ 14-23). These amounts reflect a cap on Deloitte's blended hourly rate through the case as well as holdbacks of 25% to 75% on the Seventh through Tenth applications. (Id. ¶ 7 & n.4, ¶¶ 20-23).

In its Eleventh Application, Deloitte seeks fees of $55,720, for the period from January 1, 2013 through September 30, 2014. (Id. ¶ 7). This amount reflects a reduction of $64,713.50 from Deloitee's "current standard hourly rates." (Id.).

### 4.   Badger

Badger's Fifth Interim Application seeks fees of $160,000 for the period July 1, 2012 through February 28, 2013.

(Dkt. 1055).  In four previous applications, it was awarded a total of $751,179.49, without any holdbacks.  (Id. ¶ 5).  Badger has provided real estate consulting services and has participated in a number of real estate transactions, including sales and leases, for properties for the receivership estate.  (Id. ¶¶ 14, 18, 22, 23).

The Receiver objects to Badger's Fifth Interim Application, noting, inter alia, that Badger did not submit the application to the Receiver or the SEC for approval before filing it and that Badger failed to adequately describe the services for which it is seeking compensation.  (Dkt. 1061, at p. 3).

### 5.  The Receiver and Freshfields

While the Receiver was affiliated with Dewey, he made ten applications for fees and was paid $378,062.50 for the period August 11, 2008 through February 28, 2010.  (Dkt. No. 1045, ¶ 5).  The tenth application for $22,900 was not paid.  (Id.).

| Application | Amount Awarded | Amount Held Back |
|---|---|---|
| 1 | 57,300.00 | 0 |
| 2 | 51,562.50 | 0 |
| 3 | 41,725.00 | 0 |
| 4 | 32,887.50 | 0 |
| 5 | 24,975.00 | 0 |
| 6 | 20,350.00 | 0 |
| 7 | 54,637.50 | 0 |
| 8 | 61,537.50 | 0 |
| 9 | 33,087.50 | 0 |
| 10 | 0 | 22,900 |

After he joined Freshfields,[1] the applications for compensation were submitted jointly with Freshfields.  (Id.). They previously made four applications with the following payments and holdbacks for the period March 1, 2010 through September 30, 2013 (Dkt. No. 1052, at p. 5):

| Application | Amount Awarded | Amount Held Back |
|-------------|----------------|------------------|
| 1 | 153,787.00 | 153,787.00 |
| 2 | 310,463.55 | 103,487.85 |
| 3 | 441,868.13 | 147,289.37 |
| 4 | 478,217.50 | 478,217.50 |

The total awarded (and paid) was $1,384,336.18 and $882,781.72 was held back, reflecting holdbacks applied to all four applications.  (Dkt. No. 1052, at p. 1).

In their Fifth Joint Application, the Receiver and Freshfields seek fees of $844,591.75 and expenses of $26,042.52. (Dkt. No. 1045, at p. 1).  These amounts reflect a discount of $612,732.73, or 41% of the total amount incurred.  (Id.).

B.   **The Objections and Responses**

The Court received objections to the applications from certain investors, including G&H Partners AG, Richard J. Puleo,

---

[1]     The Receiver withdrew as a partner at Dewey and joined Freshfields on March 5, 2010.  (Dkt. No. 1045, at p. 4 n.1). Dewey continued to provide certain services to the receivership through 2011.  (Dkt. No. 1048, ¶ 43).

Doug Kawulych, Frank L. Sterling, Jay C. Starling (and MoveOn.org and certain additional investors), Patti Robertson, Vivian Orgel, Alan M. Gold, Paul Faraone, Linda P. Snellinger, Donald J. and Juanita Dukinys, and Mark D. Johnson. (See Dkt. Nos. 1059, 1062, 1064). Certain of the objectors also spoke at the hearing on December 18, 2014, either in person or through counsel. (12/18/14 Tr. 17-24, 26-27, 29-34).

The Receiver objected to certain of the fee applications and requests for holdbacks. (Dkt. 1061).

The SEC also responded to the applications. (Dkt. No. 1060, at p. 3). In its written submission, it (1) urged the Court to deny all requests for holdbacks; (2) opposed the payment of any additional fees to Dewey; (3) did not object to Badger's request, but suggested a 50% holdback; and (4) did not oppose Freshfield's and the Receiver's Fifth Joint Application, subject to a 20% holdback; and (5) did not object to Deloitte's present application. (Id.).

At the December 18th hearing, however, the SEC modified its positions in several respects. First, it explained that it would not oppose the payment of holdbacks to Freshfields and Deloitte:

> [A]fter reviewing the submissions by Deloitte
> and by Freshfields and after consulting with

> senior SEC staff that are responsible for
> overseeing receivership program[s]
> nationally, we determined that the most
> consistent way for us to approach this case
> at this point, at the end of the case, with
> the holdbacks is to agree to payment of 71
> percent of the amount held back for each of
> the applicants.

(12/18/14 Tr. 8-9).  Second, instead of requesting a 20% holdback

for the Receiver's and Freshfields's Fifth Joint Application, it

asked for a 6% reduction -- or payment of 94%.  (Id. 10-11).

Third, it agreed to payment of 71% of Deloitte's request for

holdbacks.  (Id. 11).  Fourth, it agreed to payment of 71% of

Arent Fox's request for holdbacks.  (Id. 11-12).  Finally,

although it had previously consented to payment of 50% of

Badger's present application, it objected to any part of the

request being granted.  (Id. 12-13).

C.   **The Status of the Receivership**

     The receivership estate has approximately $21.3 million

in cash.  (Dkt. No. 1045, ¶ 6).  There are estimated accrued,

unpaid administrative expenses of approximately $1.2 million,

exclusive of the applications presently before the Court.  (Id.,

¶ 6(a)).  It appears that the ongoing issues with the Internal

Revenue Service ("IRS") have been largely resolved, favorably to

the estate as the IRS has provided "no change" letters for the

2008 through 2011 returns, reflecting no tax liability when the potential exposure was estimated to be between $10 million and $20 million. (Id., ¶ 8; Dkt. No. 1071, at pp. 1-2; 12/18/14 Tr. 36). The estate has an interest in 13 properties owned by Tennessee Office Holdings, LLC, but the Receiver has yielded control of the properties to the secured lender, and the properties are now being managed and marketed for sale by a State Court receiver. (Dkt. No. 1045, ¶¶ 8, 10(b)). There are certain deficiency claims against certain defaulted borrowers on loans funded by certain Wextrust entities, totaling in excess of $500,000. (Id., ¶ 10(c)). The Receiver is still managing and marketing for sale one commercial property. (Id., ¶ 8). The claims of creditors have been largely resolved. (Id., ¶ 9). Hence, the receivership affairs are winding down, and the Receiver is now in a position to make a substantial distribution to investors. (Dkt. No. 1071, at pp. 1-2).

In the six years that the receivership has been pending, the Receiver and his counsel and advisors have provided substantial services to the estate. Significantly, this case did not involve just a Ponzi scheme -- rather, there were numerous businesses, high-yield loan assets, and more than 60 properties involved, located across three continents, including hotels,

-11-

office buildings, shopping centers, and residential projects.
(Dkt. No. 1068, at 2).  There were some 1,300 creditors and over
half a billion dollars in claims.  (Dkt. No. 1067, at p. 4-5;
Dkt. No. 1068, at p. 3).  There were 300 bank accounts at more
than 50 banks in multiple states and countries.  (Dkt. No. 1068,
at p. 3).  The case did not just involve investors in the highly
speculative and deceptive ventures engaged in by Byers and
Shereshevsky, but many secured creditors who invested in
legitimate transactions were involved as well.  The benefits to
the estate achieved by the Receiver include, <u>inter alia</u>, the
following:

- $108.4 million in income to the estate, comprised
  of $80.1 million in tenant receipts, $10.7 million
  in net cash from the sale of receivership assets,
  $4.3 million in construction draws, and $13.3
  million in settlements and other recoveries;

- $46 million to be made available for distribution
  to investors and unsecured creditors and for
  payment of administrative expenses;

- $68.6 million paid to secured creditors in cash
  from the sale of properties as well as another $34
  million paid to secured creditors in monthly debt
  service;

- More than $198.8 million in collateral released to secured creditors without deficiency claims against the estate and other debt forgiven;

- The management of more than $49.7 million in receivership and property-related expenses (excluding professional fees), such as capital expenditures, tenant improvements, leasing commissions, insurance, management fees, and the like;

- Substantial resolution of the tax issues; and

- The defense of certain claims and appeals.

(Dkt. No. 1067, at pp. 4-6; Dkt. No. 1071, at pp. 2-3; see also Dkt. No. 1045, at p. 2).

<u>DISCUSSION</u>

A.   <u>Applicable Law</u>

A receiver appointed by a court who reasonably and diligently discharges his duties is entitled to be fairly compensated for services rendered and expenses incurred.  <u>Mishcon de Reya New York LLP v. Grail Semiconductor, Inc.</u>, No. 11 Civ. 4971 (JMF), 2014 WL 656062, at *3 (S.D.N.Y. Feb. 20, 2014); <u>SEC v. Byers</u>, 590 F. Supp. 2d 637, 644 (S.D.N.Y. 2008); <u>see generally</u> 65 Am. Jur. 2d, <u>Receivers</u> § 219 (2d ed. 2008); Jeffrey

-13-

F. Ghent, Annotation, "Measure and Amount of Compensation of Receiver Appointed By Federal Court," 6 A.L.R. Fed. 817, §§ 3-9 (1971 & Supp. 2008). The amount of the compensation is to be determined by the court in the exercise of its reasonable discretion. <u>SEC v. Northshore Asset Mgmt.</u>, No. 05 Civ. 2192 (WHP), 2009 WL 3122608, at *3 (S.D.N.Y. Sept. 29, 2009); <u>Mgmt.Gaskill v. Gordon</u>, 27 F.3d 248, 253 (7th Cir. 1994); <u>United States v. Code Prods. Corp.</u>, 362 F.2d 669, 673 (3d Cir. 1966). In setting a reasonable fee, the court is to consider "all of the factors involved in a particular receivership." <u>Gaskill</u>, 27 F.3d at 253. These factors include, <u>inter alia</u>, "the complexity of problems faced, the benefit to the receivership estate, the quality of work performed, and the time records presented." <u>SEC v. Fifth Ave. Coach Lines, Inc.</u>, 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973); <u>accord</u> <u>Code Prods. Corp.</u>, 362 F.2d at 673 ("In allowing fees 'the considerations are the time, labor and skill required, but not necessarily that actually expended, in the proper performance of the duties imposed by the court upon the receivers, the fair value of such time, labor and skill measured by conservative business standards, the degree of activity, integrity and dispatch with which the work is conducted and the result obtained.'") (quoting <u>Coskery v. Roberts & Mander Corp.</u>,

-14-

200 F.2d 150, 154 (3d Cir. 1952)); <u>see also</u> 6 A.L.R. Fed. 817, at §§ 7-12 (discussing factors).

　　While the results obtained by a receiver clearly are important, the benefits to a receivership estate may take "more subtle forms than a bare increase in monetary value." <u>Gaskill</u>, 27 F.3d at 253 (quoting <u>SEC v. Elliott</u>, 953 F.2d 1560, 1577 (11th Cir. 1992)).  In addition, in a securities receivership, "[o]pposition or acquiescence by the SEC to the fee application will be given great weight." <u>Fifth Ave. Coach Lines</u>, 364 F. Supp. at 1222.

　　Courts typically determine reasonable attorneys' fees based on "(i) the percentage of recovery method or (ii) the lodestar method." <u>SEC v. Goren</u>, 272 F. Supp. 2d 202, 206 (E.D.N.Y. 2003) (citing <u>Goldberger v. Integrated Resources, Inc.</u>, 209 F.3d 43, 47 (2d Cir. 2000)).  In this case, given the XX circumstances, it makes sense only to apply the lodestar method.

　　Under the lodestar method, the Court first ascertains the number of hours reasonably billed and then multiplies that figure by the appropriate hourly rates to reach the lodestar amount. <u>See</u> <u>Baird v. Boies, Schiller & Flexner LLP</u>, 219 F. Supp. 2d 510, 518 (S.D.N.Y. 2002) (citing <u>Blum v. Stenson</u>, 465 U.S. 886 (1984)).  "Hours that are excessive, redundant, or otherwise

-15-

unnecessary are not 'reasonably expended' and should be excluded
from the initial fee calculation." Goren, 272 F. Supp. 2d at
208-09 (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)).
In making a fee request, counsel should exercise billing judgment
to eliminate hours not reasonably expended; counsel "must act as
he would under the ethical and market restraints that constrain a
private sector attorney's behavior in billing his own clients."
Lunday v. City of Albany, 42 F.3d 131, 133 (2d Cir. 1994) (citing
Hensley, 461 U.S. at 434).   The requested hourly rates are
appropriate if they "are in line with those prevailing in the
community for similar services by lawyers of reasonably
comparable skill, experience, and reputation." Blum, 465 U.S. at
896 n.11.

Once the lodestar amount is determined, adjustments can
then be made up or down to arrive at a reasonable fee, based on
traditional factors such as the quality and expertise of counsel,
the magnitude and complexities of the litigation, the risks
involved, the relation of the fees to any recovery, and other
public policy considerations. Goldberger, 209 F.3d at 47, 50;
Goren, 272 F. Supp. 2d at 206.

In considering applications for compensation by
receivers and their attorneys, the courts have long applied a

-16-

rule of moderation, recognizing that "receivers and attorneys engaged in the administration of estates in the courts of the United States . . . should be awarded only moderate compensation." In re New York Investors, Inc., 79 F.2d 182, 185 (2d Cir. 1935). Courts are not to award receivers and their attorneys "extravagant fees," but only "moderate ones." Id.; see also 6 A.L.R. Fed. 817, at § 4 ("[M]any courts have declared that the receiver's compensation should be moderate or no more than reasonable, rather than liberal or generous."). Courts should take particular care to scrutinize fee applications "to avoid even the appearance of a windfall." Goren, 272 F. Supp. 2d at 206 (citing City of Detroit v. Grinnell Corp., 495 F.2d 448, 469 (2d Cir. 1974)); see also id. at 213 (in substantially reducing fee application, court noted that it was "especially concerned by the threatened appearance of a windfall, an important public policy concern"). As a policy matter, the rule of moderation makes particular sense in circumstances such as those here, where hundreds of investors and creditors have been defrauded and victims are likely to recover only a fraction of their losses.

B.  **Application**

     I address each of the applications.

-17-

### 1.   Dewey

Dewey seeks $1,256,886.68 with respect to its Tenth Application and holdbacks of $3,446,019.10 for a total of $4,702,905.78.  The requests are denied; I will not award Dewey any additional fees.

Dewey has already been paid $9,423,211.76 in fees for its work in this case, and it has been reimbursed some $719,000 in expenses.  (Dkt. No. 1061, at p. 1).  From the first fee application, I expressed concern over the reasonableness of Dewey's fees.  See, e.g., SEC v. Byers, 590 F. Supp. 2d 637 (S.D.N.Y. 2008); SEC v. Byers, No. 08 Civ. 7104 (DC), Order filed Aug. 18, 2009 (Dkt. No. 439). I imposed holdbacks because I believed the fees requested were not reasonable.  I was open to revisiting the issue at the conclusion of the case when we would know the results of the receivership.  The results are essentially in, and they do not justify a further award.  While the success of this receivership cannot be measured solely against the recovery to the investors, the investors will receive only a small fraction of their claims.  In comparison to the results achieved by Freshfields at a much lower cost, the services provided by Dewey were not cost-effective, given its extraordinarily high billing rates and apparent penchant for

-18-

running the meter.  In light of all the circumstances, I do not believe it is fair or appropriate to award Dewey an additional $4.7 million in fees or, indeed, any additional amount, particularly when any award will go to the benefit of the Dewey bankruptcy estate and, in particular, its creditors.

### 2.   Arent Fox

Arent Fox's request for holdbacks of $33,216.50 is denied, in its entirety.  Its involvement in the case was limited.  While its fees reflected some discounts, there was no public service discount.  It did receive payment of $33,216.50. In the circumstances of this case, I exercise my discretion to deny the holdbacks.

### 3.   Badger

Badger's request for $160,000 is denied, in its entirety.  It has been paid a total of $751,179.49 -- without any holdbacks.  Moreover, the Receiver notes several deficiencies in the application.  In the circumstances of this case, I exercise my discretion to deny the request.

### 4.   Deloitte

Deloitte seeks fees and expenses of $55,720 for the period January 1, 2013 through September 30, 2014 and holdbacks of $735,245.

The request for fees and expenses of $55,720 for some 21 months of work is reasonable, and it is granted.

The request for holdbacks of $735,245 is troubling. While Deloitte has provided important services in this complex case, it has already been paid $4,674,283.00. This amount reflects the holdbacks of $735,245 on the Seventh through Tenth Applications ranging from 25% to 75%. But no holdbacks were imposed with respect to the first six applications, and they accounted for the vast majority of Deloitte's work on the case. This was still a highly profitable endeavor for Deloitte, and although the firm provided accounting and financial services rather than legal work, I do believe there should be a public service aspect to its work as well, and that the rule of moderation applies to its fees as well. In light of the overall circumstances of the receivership, Deloitte's request for holdbacks is denied in its entirety.

5. **The Receiver and Freshfields**

Finally, the Receiver and Freshfields seek fees and expenses for the period October 1, 2013 through August 31, 2014 of $824,066.75 and $26,042.52, respectively, and payment of holdbacks of $882,781.72.

For the period March 1, 2010 through September 30,
2013, some 43 months, the Receiver and Freshfields were paid
$1,384,336.18.  Holdbacks have been applied to all of these
applications, some as high as 50%.  In contrast, for only 14
months of work, Dewey was paid $9,423,211.76.  Freshfields has
been much more efficient in its representation of the Receiver,
and it has accomplished much more for the receivership than Dewey
accomplished at a much higher cost.  The lead has been taken for
Freshfields by Jonathan Ware, Esq., an associate with a
substantially lower billing rate; he has provided excellent
representation.  Freshfield has been paid a reasonable blended
rate for its legal work of $278 per hour ($457 for partners, $274
for associates, and $63 for paralegals).  (Dkt. No. 1068, at 3).
In fact, because the holdbacks were applied to his already
substantially-reduced rate, the Receiver has been effectively
paid only $158.53 an hour since March 2010.  (Dkt. No. 1067, at
p. 2).

The investors are distressed by the fact that they will
recover only a fraction of their losses.  That is understandable.
But the Receiver and Freshfields are not to blame.  Rather, the
investors placed their trust in Byers and Shereshevsky, both of
whom are now in prison serving substantial sentences, and they
are the ones to blame for the investors' predicament.

With the benefit of hindsight, it is apparent that Dewey was not the best choice as counsel, not with the fee arrangement that was put in place at the outset of the case, given the limited likely recovery. Indeed, the first fee application requested $2.1 million for 20 days' work. Byers, 590 F. Supp. at 638. The answer is not, however, to penalize the Receiver and Freshfields now. Rather, I have dealt with the Dewey situation by denying its requests for additional fees and holdbacks, and I must consider Freshfields' applications based on the quality of its work and the results it has achieved since taking over the case. Its work has been excellent, and the receivership estate has greatly benefitted.

With respect to the Fifth Interim Joint Application seeking $824,066.75 in fees and $26,042.52 in expenses, I will allow 71% of the fees ($585,087.39) and all the expenses.

With respect to the request for payment of holdbacks of $882,781.72, I will allow 71% ($626,775.02).

<u>CONCLUSION</u>

To summarize, IT IS HEREBY ORDERED AS FOLLOWS:

1.    FTI's application for the fees and expenses of $1,256,886.68 and for payment of holdbacks of $3,446,019.10 is DENIED in all respects;

-22-

2.   Arent Fox's application for payment of holdbacks of $33,216.50 is DENIED in its entirety;

3.   Badger's application for fees of $160,000 is DENIED in its entirety;

4.   Deloitte's application for fees and expenses for the period January 1, 2013 through September 30, 2014 of $55,720 is GRANTED in full and its request for payment of holdbacks of $735,245 is DENIED in its entirety;

5.   The Fifth Interim Joint Application of the Receiver and Freshfields for the period October 1, 2013 through August 31, 2014 is GRANTED to the extent of $585,087.39 in fees and $26,042.52 in expenses and their request for the payment of holdbacks is GRANTED to the extent of $626,775.02;

6.   The Receiver is authorized to pay the above approved amounts forthwith; and

7.   The Receiver shall submit a proposed order authorizing a distribution of an amount calculated by deducting from the $21.3 million in cash on hand (1) the above-approved awards, (2) the amount to be paid to Regions Bank as set forth in my opinion dated December 22, 2014; and (3) a reserve of $2.2

million to be held for further administrative expenses and pending proceedings and developments.

        SO ORDERED.

Dated:    New York, New York
           December 23, 2014

                        DENNY CHIN
                        United States Circuit Judge
                        Sitting By Designation

**APPEARANCES**


For the SEC:

      Neil Jacobson, Esq.
      Alistaire Bambach, Esq.
      Securities and Exchange Commission
      New York, NY


For the Receiver, Freshfields:

      Jonathan W. Ware, Esq.
      Freshfields Bruckhaus Deringer US LLP
      Washington, DC


For FTI Consulting, Inc., as Trustee for Dewey:

      Joseph C. Corneau, Esq.
      Tracy L. Klestadt, Esq.
      Klestadt & Winters LLP
      New York, NY


For Deloitte:

      P. Gregory Schwed, Esq.
      Daniel B. Besikof, Esq.
      Loeb & Loeb LLP
      New York, NY


For Badger Real Estate Advisors, LLC:

      Steven E. Fox, Esq.
      Riemer Braunstein LLP
      New York, NY

For Arent Fox:

    George P. Angelich, Esq.
    Arent Fox LLP
    New York, NY


For G&H Partners A.G.:

    Barry S. Pollack, Esq.
    Joshua L. Solomon, Esq.
    Pollack Solomon Duffy LLP
    New York, NY


Individual Investors, Appearing Pro Se